# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** § Cr. No. 4:21cr 009 GCH
Plaintiff, § 
v. § **UNITED STATES' MOTION FOR**
 § **DISCOVERY ORDER UNDER RULE 17(C)**
**ROBERT T. BROCKMAN,** § **AND 45 CFR 164.512(e)(1)(i)**
Defendant. § | |

The United States, by and through its attorneys, respectfully requests an Order, pursuant to Fed. R. Crim. P. 17(c) and 45 CFR §164.512(e)(1)(i), compelling Defendant's doctors and medical experts, listed herein, to provide copies of Defendant's historical medical records to the government, for use in Defendant's competency hearing, within thirty days of service of a subpoena.

A Proposed Order is attached for the Court's convenience.

## Table of Contents

| | | |
|---|---|---|
| I. | **Procedural Posture** | **p3** |
| II. | **Summary Argument** | **p3** |
| III. | **Need for Historical Medical Records** | |
| | A.  **Medical Records Provided are Incomplete** | **p4** |
| | B.  **Timing of Claimed Mental Incapacity is Suspect** | **p8** |
| | C.  **Defendant's Recent Conduct is Inconsistent with Claims of Mental Deficiency** | **p10** |
| | D.  **Defendant Has Personal and Financial Ties to his Medical Professionals** | **p12** |
| IV. | **Conclusion** | **p13** |

**I. PROCEDURAL POSTURE**

Subsequent to Defendant's indictment, Defendant's attorneys indicated they intended to file a motion under 18 U.S.C. § 4241 requesting a competency hearing, alleging that Defendant was not competent to assist in his own defense. On November 19, 2020, as a consequence of discussions with counsel, the government stated it would not object to a motion for a competency hearing, and sent Defendant's counsel a letter requesting disclosure of Defendant's historical medical records for the last ten years (See Exhibit 1). The government has not received any of Defendant's historical medical records in response to this request. On December 8, 2020, Defendant filed a motion for a competency hearing under 18 U.S.C. § 4241. *See* 20-cr-371 (N.D. Cal.) ("NDCA") Dkt. No. 64 (the "Motion"). In his Motion, Defendant based his claim of incompetency on the evaluation of four doctors / medical experts whose reports were attached to his Motion.

On December 15, 2020, the government filed its response to Defendant's Motion, *see* NDCA Dkt. No. 69 (the "Response"), agreeing that a competency hearing is appropriate in this case, but that the hearing should not be limited to the medical evaluations provided by the doctors chosen by Defendant, but instead, must include all of Defendant's historical medical records, Defendant's statements to his doctors, and independent medical evaluations of Defendant. Defendant's counsel has stated that they do not object to the production of Defendant's historical medical records in the possession of the six doctors cited by Defendant in support of his Motion; some of whose reports are attached to Defendant's Motion. Defendant also objects to the provision of any of Defendant's statements made to his doctors. Defendant does not object to his examination by the government's medical experts.

On January 4, 2021, on Defendant's motion, this case was transferred from the Northern District of California to this Court. *See* NDCA Dkt. No. 76.

**II. SUMMARY ARGUMENT**

Defendant has put his medical condition at issue by claiming he is not competent to stand trial. In order for a thorough competency hearing to be held, the government's experts need access to Defendant's historical medical records in order to evaluate Defendant's full medical history, the progression (if any) of any mental incapacity, and to determine whether Defendant's assertion of mental

incompetency is genuine, or if Defendant is malingering. This includes Defendant's statements that may be recorded in these medical records. Title 18 U.S.C. §§ 4241 and 4247, enacted in the Insanity Defense Reform Act of 1984, codified the procedure to be followed for a Competency Hearing. Once Defendant has moved for a competency hearing, he has partially waived his Fifth and Sixth Amendment rights, with regard to his historical medical records, for purposes of a competency hearing, including statements he may have made to medical professionals. *Buchanan v. Kentucky*, 483 U.S. 402, 424 (1987).

For reasons stated in the government's Response, and summarized herein, there is reason to question Defendant's current claims of incompetency. Namely: 1) the timing of Defendant's claim; 2) Defendant's contemporaneous and recent conduct that is inconsistent with mental incapacity; and 3) Defendant's patronage of the Baylor College of Medicine and close personal friendship with Dr. Stuart Yudofsky. Review of Defendant's historical medical records, including statements made by Defendant to his doctors prior to learning about this investigation, will give the government (and, ultimately, the Court) a more accurate picture of Defendant's medical condition. Evaluating doctors routinely review historical medical records, which are crucial in coming to an informed opinion, as attested in the expert declarations attached herein. *See* Exs. 2 and 3 – Declarations of Drs. Dietz and Denney. Because Defendant refuses to provide these records, and provide a HIPAA wavier, the government must subpoena them. The Court should order early production of the records so the government's experts can review them before examining Defendant, as such review can often inform the type of testing done during examination. *See* Ex. 3, ¶ 7. Such early production requires the Court to enter a Rule 17(c) Order that also orders production pursuant to 45 C.F.R. § 164.512 to ensure the subpoenaed parties understand that HIPAA is no bar to compliance.

## III.  NEED FOR HISTORICAL MEDICAL RECORDS

### A.  Medical Records Provided are Incomplete

Despite repeated requests for Defendant's medical records, commencing with the government's November 19, 2020 letter, Ex. 1, and attempts to negotiate a stipulation for provision of the same, the government has not received any medical records from Defendant other than those attached to his

Motion.  The only "medical records" provided to the government are 53 pages[1] of summary reports and letters penned by doctors Defendant hired after learning he was under criminal investigation.[2]  The doctors that authored these evaluations are all associated with Baylor College of Medicine, to which Defendant is a major donor and has substantial financial ties.

The medical evaluations attached to Defendant's Motion do not come close to providing Defendant's full medical history.  Defendant's counsel does not object to the government subpoenaing Defendant's medical records from the six medical professionals named in Defendant's Motion; but have objected to the provision of medical records from any of Defendant's other doctors. And specifically, they object to the government being provided any statements Defendant may have made to any of his medical doctors and/or experts.   The medical records and statements sought by the government herein are relevant to legal issues raised by Defendant in his Motion.

The Federal Rules of Evidence succinctly state that evidence is relevant if: "it has any tendency to make a fact more or less probable than it would be without the evidence; …"  Fed. R. Evid. 401. Here, since Defendant, through his Motion, has made his entire medical history relevant, statements Defendant may have made to medical professionals about his mental health are relevant.  *Hernandez v. Johnson*, 248 F.3d 344, 348 (5th Cir. 2001).  Such statements are probative of Defendant's concurrent mental state, which is the central issue in any competency hearing.  Therefore, the evidence should not be limited to the records, evaluations, and testimony of only the six doctors selected by Defendant in support of his Motion, but must include an evaluation of Defendant's historical medical records and doctors who may have recorded relevant observations and statements of Defendant prior to this case.

---

[1] All of which are attached to Defendant's Motion.  *See* NDCA Dkt. No. 64-2.

[2] For example, Defendant has provided no records related to the initial appointment with Dr. Lerner, no records related to the follow up with Dr. Pool, and no records concerning any exam by Dr. Yudofsky despite Dr. Yudofsky being listed as a referring physician at Dr. York's March 1, 2019 exam.

Defendant's comprehensive medical history will assist the Court in determining whether Defendant actually suffers from a mental deficiency and is not competent to assist in his own defense. Indeed, Defendant's own Motion claims that his purported symptoms of dementia were revealed during an unrelated visit with his urologist, Dr. Lerner. These records are also necessary for the government's medical experts to evaluate and examine Defendant *See* Exhibits 2 and 3 – Declarations of Drs. Dietz and Denney. Written observations made prior to the commencement of this criminal investigation are likely to be more accurate than observations and statements made after a motive to exaggerate, or fabricate, existed.

Defense counsel has also refused to assist the government in identifying a full list of medical providers Defendant has seen within the past ten years. It would be easy for defense counsel to review Defendant's calendars or interview his wife, son, secretary, etc. to endeavor to produce a full list of doctors. Unwilling to do that, the government can only ask to subpoena the following providers it has become aware of from its investigation:

- Baylor University,
- Baylor College of Medicine;
- Fondren Orthopedic,
- Lance Gould, MD,
- Julie Wendt, MD,
- Daniel Savitt, DO,
- Komal Stoerr, MD,
- James Pool, MD,
- Michele York, PhD,
- Seth Paul Lerner, MD,
- Joseph Jankovic, MD,
- Melissa Michelle Yu, MD,
- Stuart Yudofsky, MD.

In addition, the records provided to the government should include contemporaneous statements made by Defendant to his doctors. These statements are not protected by Defendants Fifth or Sixth Amendment rights. *See Buchanan v. Kentucky*, 483 U.S. 402, 424 (1987); *United States v. Bolander*, 722, F.3d 199, 222-3 (4th Cir. 2013); *Hernandez v. Johnson*, 248 F.3d 344, 348 (5th Cir. 2001). The federal courts do not recognize a generalized patient/doctor privilege. *United States v. Bercier*, 848 F.2d 917, 920 (8th Cir. 1988). In limited circumstances, the Supreme Court has recognized a patient/psychotherapist privilege regarding confidential communications, however, as discussed by the *Bolander* Court, this privilege is very narrow, limited to psychotherapist treatment session, and is strictly construed. *See Bolander*, 722 F.3d at 223 (citing *Jaffee v. Redmond*, 518 U.S. 1 (1996)).

In contrast to the situation in *Jaffee*, when a defendant requests a § 4241 hearing, he partially waives his Fifth and Sixth Amendment rights for purposes of the competency hearing. *See Buchanan v. Kentucky*, 483 U.S. at 424; *United States v. Bolander*, 722, F.3d at 223; *Hernandez v. Johnson*, 248 F.3d at 348. Here, since Defendant has requested a competency hearing, he has put his medical history at issue, making it relevant to the question presented. The umbrella of relevance includes Defendant's treatment by doctors outside the "mental health" professions, and what Defendant said, or did not say, to his treating medical professionals about his mental health and physical condition. The scope of relevancy should not be limited only to the doctors selected by Defendant. Furthermore, for the reasons stated below, the Court should be skeptical of Defendant's claim of incompetency, thereby warranting further investigation and examination of Defendant's historical medical records.

Defendant has only agreed to execute HIPAA waivers with respect to the six doctors referenced in his Motion. Therefore, to facilitate complete discovery, the Court's Order should clarify that the subpoenaed entities must produce the records despite HIPAA's default privacy protections.[3] Title 45

---

[3] Health Insurance Portability and Accountability Act of 1996 (HIPAA) makes it unlawful to disclose individually identifiable health information to a third party, (without a waiver or other authority) punishable by up to 1 year incarceration and/or a $50,000 fine. 42 U.S.C. 1320d-6.

CFR § 64.512(e)(1)(i) authorizes healthcare providers to disclose otherwise protected health information in response to a court order:

> A covered entity may disclose protected health information in the course of any judicial or administrative proceeding: (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order;

"Covered entities" are defined as any health care provider. *See 45 CFR § 160.103.* The regulation also requires that a protective order be in place to prevent dissemination of records so provided. A Protective Order was entered in this case on November 30, 2020 which specifically covers Defendant's medical records. NDCA Dkt. No. 48.

Accordingly, the government seeks an Order requiring the medical professionals listed above to provide the requested records to the government within thirty days after service of a Rule 17(c) subpoena, and that said records include any contemporaneous statements made by Defendant to his medical professionals which were recorded in these records. *See* Ex. 4 – Proposed Subpoena Attachment.

      B.      <u>Timing of Claimed Mental Incapacity is Suspect</u>

The timing of Defendant's first assertions of "mental incompetence" are suspect when compared to contemporaneous events. On September 5, 2018, the Bermuda Police Service ("BPS") executed a search warrant at the home/office of Defendant's co-conspirator, Evatt Tamine ("Individual One" in the Indictment). The following day, September 6, 2018, Defendant scheduled an appointment with his urologist, Dr. Seth Lerner. That appointment was the first medical exam identified by Defendant where Defendant raised any concerns about any issues with his memory or cognition. The juxtaposition of Defendant's request for an appointment with Dr. Lerner with the execution of the search warrant in Bermuda is noteworthy since the evidence seized from Tamine's home office includes thousands of

emails between Defendant and his co-conspirator, Tamine, regarding Defendant's personal investments, and Defendant's control of the Bermuda trusts and companies which are the subject of this case.

It appears from Defendant's Motion that it was only after September 6, 2018, that Defendant began seeking an evaluation of his mental health. Defendant's discussion of his mental health with Dr. Lerner, a urologist, demonstrates the relevance and probative value of all of Defendant's historical medical records. As Dr. Denney discusses in his declaration, any doctor can observe a sign (objective observation of a behavior) or symptom (subjective report from a patient) of a cognitive condition, even if that doctor is not a brain specialist. *See* Ex. 3, ¶¶ 10, 12. While to date, Defendant has not provided the government with any historical medical records, Defendant apparently suffers from his share of health problems, and has been treated by a variety of medical professionals. Defendant's discussion of his mental condition with his doctors and medical professionals, like Dr. Lerner, both in and out of mental health specialties, are all relevant to the issues raised by Defendant in his Motion.

The possibility that Defendant is seeking to feign mental incapacitation needs to be evaluated in context. As early as 2011, Defendant expressed concern to his co-conspirator Tamine about the consequences to Defendant's activities that may come to light due to Robert Smith's (Individual Two), divorce. *See* Govt Response to Motion for Competency Hearing p6, NDCA Dkt. No. 69. Further, as described in the Indictment, at ¶ 194, there is evidence that Defendant learned of the instant investigation much earlier than alleged in his Motion. In or about June 2016, Defendant directed Tamine to make numerous trips to Defendant's former administrative assistant/nominee's home (deceased) to destroy records, which is the subject of Counts 38 & 39 of the Indictment. June 2016 is also the date the government issued its first Grand Jury subpoenas in the criminal investigation of Robert Smith ("Individual Two" in the Indictment).

While not dispositive, the timing of Defendant's complaints of mental deficiency are suspect when placed in context of the history of this criminal investigation. The timing of these events creates an objective basis for suspicion, counseling in favor of full disclosure and examination of Defendant's

historical medical records to determine if they are consistent with Defendant's current claims.

      C.      <u>Defendant's Recent Conduct is Inconsistent with Claims of Mental Deficiency</u>

From December 11, 2018 through December 3, 2019, Defendant was examined at least eight times by medical professionals to determine the extent of any mental deficiencies. According to the timeline provided by Defendant, on March 1, 2019, Defendant was examined by Dr. York who found that Defendant was operating at an 87 IQ and demonstrated "extremely slowed" processing speed. *See* Motion, Exhibit I. Dr. York was so concerned she recommended Defendant exercise caution operating common household appliances and said he should not cook or drive because he was a potential danger to himself and others. On October 1, 2019, Defendant allegedly scored 12 out of 29 points on a cognitive test indicating a diagnosis of Moderate Dementia. *See* Motion, Exhibit E.

Interspersed among these examinations, however, Defendant: 1) continued to operate the multibillion-dollar software company, Reynolds & Reynolds, and serve as its Chief Executive Officer; 2) was deposed on January 16-17, 2019 in an anti-competitive pricing lawsuit naming Reynolds & Reynolds as a defendant, s*ee* Govt's Response to Motion for Competency Hearing, Exhibit 20, NDCA Dkt. No. 69 – Copy of Deposition Transcript; 3) sat for two days of interviews on September 18-19, 2019 with attorneys from the Federal Trade Commission's Bureau of Competition, which is conducting an investigation into anti-competitive pricing by Reynolds & Reynolds; and 4) planned and engaged in extensive foreign travel on his yacht, s*ee* Exhibits 5, 6, and 7 – Defendant's emails with the captain of the yacht Albula).[4] The "Robert Brockman" presented in these depositions, hearings, emails, and activities is in stark contrast to the "Robert Brockman" that appears in the written evaluations attached to Defendant's Motion. The attorneys who questioned Defendant in these depositions and hearings have stated that when asked, Defendant did not represent that he had any mental deficiency that would

---

[4] Evidence of the same is attached to the Response. The FTC transcript, however, was not previously exhibited, and is attached to this motion as Ex. 8.

prevent him from answering questions related to Reynolds & Reynolds's history, operations, and pricing practices. They will also testify that they observed nothing unusual or out of the ordinary in Defendant's demeanor. Comparing the dates of these depositions and hearings to the dates of the medical examinations sited in his motion is illuminating. The timeline below illustrates:



On January 14 – 17, 2019, less than two weeks before his examination by Dr. Jankovic, Defendant was deposed for two days, during which there was no observable mental lapse or deficiency. Later in 2019, after numerous medical evaluations in which Defendant allegedly exhibited signs of dementia, delusions, and mental incapacity, he was examined again, from September 18 – 19, by the attorneys with the FTC regarding complex historical operations of Reynolds & Reynolds. *See* Exhibit 8 parts 1 and 2 – FTC Hearing Transcripts. One of the attorneys present at the FTC hearing will testify that he observed no noticeable lapses in memory by the Defendant, and in fact Defendant exhibited a high level of cognition.

Defendant's emails regarding fishing trips he planned for the spring of 2019 on his yacht the

Albula evidence a high level of logistical planning and mental health. *See* Exhibits 5, 6 and 7. These email exchanges occurred, and the fishing trips were planned, during the same time period that Defendant was also being evaluated for mental deficiencies by his doctors (2019). Most notably, while planning these trips in 2019, according to these emails, Defendant did not inform the Captain of the Albula of any possible mental deficiencies.

Finally, Defendant's service as CEO at Reynolds and Reynolds is entirely inconsistent with the picture painted by his Motion. Defendant's doctors told his counsel in December 2019 and January 2020 that he could not assist in his defense. Defendant's counsel, in turn, informed the government on April 9, 2020, that Defendant should not even be indicted because of the severity of his medical condition. Despite those assertions, however, Defendant remained CEO of his multibillion-dollar software company until November 6, 2020, stepping down only after his initial appearance in this case.

The government accepts that the timeline cited herein, and its comparison to the medical evaluations submitted with Defendant's Motion, are not dispositive of the question of whether Defendant is mentally competent to assist in his defense. Instead, the government submits that the Defendant's contrasting appearances simply raises questions that must be addressed in a competency hearing. The only way to address these inconsistencies is the full and complete evaluation of Defendant's medical history by independent third-party medical professionals.

D. <u>Defendant has Personal and Financial Ties to his Medical Professionals</u>

As the government detailed in its Response, all the doctors whose evaluations and notes are attached to Defendant's Motion are associated with the Baylor College of Medicine, which is noteworthy because Defendant has donated tens of millions of dollars to the institution. (ET_0002184939). Defendant also approved another million-dollar donation a few days after he was examined by Dr. James Pool, which the Motion cites as the first doctor to diagnose Defendant with dementia and refer him to further specialists. (UCSH 0221292). Within weeks of Dr. Seth Lerner examining Defendant in September 2018, Defendant donated $1 million to the Baylor College of Medicine, to the attention of Dr. Seth Lerner. Exhibit 9 – Defendant email dated September 16, 2018. Furthermore, as detailed in the government's Response, Defendant has long-standing personal ties with

Dr. Yudofsky, who Defendant holds out as the first person Defendant raised the issue of his "mental deficiencies." Defendant claims that that he raised these issues with Dr. Yudofsky in 2017 before he was aware that he was under criminal investigation. This claim is contradicted by the evidence in this case.

As stated, the criminal investigation of Robert Smith became "overt" in June 2016, when the first grand jury subpoenas were issued for records from Vista, the private equity firm he established with Defendant in 2000. It stretches credulity to believe that Defendant was not notified immediately when the government issued its first grand jury subpoena for financial records from Vista. Email exchanges between Defendant and Tamine reveal that well before Defendant's email to Dr. Yudofsky, Defendant was concerned that the criminal investigation of Robert Smith would "compromise" him [Defendant].

Again, the government does not suggest that Defendant's close personal relationship with Dr. Yudofsky, or the fact that all his doctors are associated with Baylor College of Medicine are dispositive of the issues that will be addressed in a competency hearing. Instead, the government brings these facts to the Court's attention to posit that the evidence cited in Defendant's Motion is not dispositive. That serious questions remain concerning Defendant's claim of mental incompetence, and that for this reason, the government requests discovery of Defendant's historical medical records beyond the four doctors Defendant relies upon in his Motion.

### IV. CONCLUSION

Whether or not Defendant is legally competent to assist in his defense, and be tried for the charges pending in the Indictment, is a question enveloping complex Constitutional and medical concepts, in addition to the public's need to have addressed the crimes allegedly committed by Defendant. Evaluation of these questions needs to be based on the totality of medical and circumstantial evidence, not limited to medical professionals hand-picked only by Defendant. For these reasons, and the reasons discussed herein, the government respectfully requests an Order from the Court, under Fed. R .Crim. P. 17(c) and 45 CFR § 164.512(e)(1)(i), requiring the medical professionals listed herein, upon service of a subpoena, to produce all of Defendant's medical and administrative records within 30 days.

Respectfully submitted this 26th day of January 2021,

          DAVID A. HUBBERT
          Deputy Assistant Attorney General
          Tax Division

          <u>s/ Corey J. Smith</u>
          COREY J. SMITH
          Senior Litigation Counsel
          LEE LANGSTON
          CHRIS MAGNANI
          Trial Attorneys
          Department of Justice
          Tax Division

          Attorneys for United States of America

## TABLE OF AUTHORITIES

1) Buchanan v. Kentucky, 483 U.S. 402, 424 (1987)……………………………Page 4, 6, 7

2) Hernandez v. Johnson, 248 F.3d 344 (5th Cir. 2001) …………………....….Page 6

3) United States v. Bolander, 722, F.3d 199 (4th Cir. 2013) ……………….…..Page 6, 7

4) United States v. Jaffee, 518 U.S. 1, 11 (1996) ……………………….....…… Page 6, 7

5) United States v. Bercier, 848 F.2d 917, 920 (8th Cir. 1988) …………….….…Page 6, 7

6) Title 18 United States Code, Section 4241, 4247

7) Federal Rule of Criminal Procedure 17

8) Title 45 CFR §164.512(e)(i)

## EXHIBIT LIST

| | |
|---|---|
| Exhibit 1 | Government's Letter to Counsel dated November 19, 2020 |
| Exhibit 2 | Declaration of Doctor Park Dietz |
| Exhibit 3 | Declaration of Doctor Robert L. Denny |
| Exhibit 4 | Draft Subpoena Attachment under Rule 17(c) |
| Exhibit 5 | Defendant's email dated March 15, 2019 |
| Exhibit 6 | Defendant's email dated February 2, 2019 |
| Exhibit 7 | Defendant's email dated November 16, 2018 |
| Exhibit 8 (parts 1 and 2) | Transcript of Federal Trade Commission Deposition of Defendant dated September 18, 2010 |
| Exhibit 9 | Defendant's email dated December 16, 2018 |

## Certificate of Service

I the undersigned do hereby certify that on the 26th day of January, 2021, I electronically filed the foregoing with the Clerk of Court using the ECF electronic filing system, which will send notice of electronic filing to Defendant's counsel of record.

    /s/ *Corey J. Smith*
Senior Litigation Counsel
Department of Justice
Tax Division
Corey.Smith@usdoj.gov
(202)514-5230

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT T. BROCKMAN,<br><br>Defendant. | § Cr. No. 4:21cr 009 GCH<br>§<br>§ ORDER UNDER RULE 17(C)<br>§ AND 45 CFR § 164.512(e)(1)(i)<br>§ FOR THE PRODUCTION OF<br>§ MEDICAL RECORDS<br>§<br>§<br>§<br>§<br>§ |

**[PROPOSED] ORDER**

For good cause shown, IT IS HEREBY ORDERED that pursuant to Fed. R. Crim. P. 17(c) and 45 C.F.R. § 164.512(e)(1)(i) the following entities and doctors produce to the United States the unredacted documents requested in the attached subpoenas within 30 days after service of a subpoena for the same.

FURTHER, said medical records are to be produced under the exception to the Health Insurance Portability and Accountability Act of 1996 (HIPAA) found at 45 C.F.R. § 164.512(e)(1)(i), and are subject to the Protective Order entered in this case on November 30, 2020.

Records to be produced include the medical records of ROBERT T. BROCKMAN currently in the custody of the following:

- Baylor University;
- Baylor College of Medicine;
- Fondren Orthopedic;
- Lance Gould, MD;
- Julie Wendt, MD;
- Daniel Savitt, DO;

- Komal Stoerr, MD;
- James Poole, MD;
- Michele York, PhD;
- Seth Paul Lerner, MD;
- Joseph Jankovic, MD;
- Melissa Michelle Yu, MD; and
- Stuart Yudofsky, MD.

IT IS FURTHER ORDERED the United States must promptly copy and produce the subpoenaed records with counsel for Defendant.

SO ORDERED this _____ day of _____, 2021.

_____
THE HONORABLE GEORGE C. HANKS
UNITED STATES DISTRICT JUDGE