IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal No. 4:21-cr-00009 |
| | § | |
| ROBERT T. BROCKMAN | § | |

**DEFENDANT'S PARTIAL OPPOSITION TO UNITED STATES' MOTION FOR DISCOVERY ORDER UNDER RULE 17(c) AND 45 CFR 14.512(e)(1)(i)**

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................... - 1 -

ARGUMENT ............................................................................................................ - 3 -

I. THE GOVERNMENT'S DISCOVERY MOTION DOES NOT SUPPORT THE PROPOSED ORDER AND OMITS MATERIAL INFORMATION ............................ - 3 -

    A. The Government's Proposed Order Is Not Consistent With The Government's Motion ............................................................................ - 3 -

    B. The Government Had The Opportunity To Seek Evidence Concerning Mr. Brockman's Competency Prior To The Indictment ................................................................................................ - 4 -

    C. Medical Records From Eight Treating and Diagnostic Doctors Are Sufficient To Meet The Government's Stated Purpose ............... - 6 -

    D. The Government Fails To Meet Its Burden Under *Nixon* .................. - 7 -

II. THE DEFENSE'S PROPOSED ORDER MEETS THE GOVERNMENT'S STATED PURPOSE AND EXCEEDS THE REQUIREMENTS OF 18 U.S.C. § 4241(b) ......................................................................................... - 11 -

CONCLUSION ....................................................................................................... - 12 -

## **INTRODUCTION**

Defendant Robert Brockman is 79 years old and suffers from dementia. Mot. for Hr'g to Determine Whether Mr. Brockman is Competent to Assist in His Defense at 1 (ECF No. 1-3 at 28-172) ("Competency Motion").[1] This Court has scheduled a hearing on June 29, 2021, to determine whether Mr. Brockman is competent to assist in his defense pursuant to 18 U.S.C. § 4241(b). Competency Hearing Scheduling Order at ¶ 1 (ECF No. 36). Pursuant to this Court's order, at the government's request and without objection by Mr. Brockman, the government's experts will conduct an examination of Mr. Brockman in advance of the competency hearing pursuant to 18 U.S.C. § 4241(b). *Id.* at ¶ 2.

The government now seeks a "discovery order" pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, for records of Mr. Brockman's "full medical history" (including dermatological, orthopedic and other medical records, without any temporal limitation, wholly unrelated to his dementia diagnosis) "so the government's experts can review them before examining Defendant, as such review can often inform the type of testing done during examination." Mot. for Discovery Order Under Rule 17(c) and 45 CFR 14.512(e)(1)(i) at 3-4 (ECF No. 26) ("Discovery Motion"). The government also seeks financial and administrative records without explanation. Discovery Motion Ex. 4. The government's request is not only patently overbroad and unsupported, it is also impermissible.

---

[1] On January 4, 2021, United States District Judge William H. Alsup transferred this case from the Northern District of California to the Southern District of Texas at the request of the Defendant. Order Granting Rule 21(b) Mot. to Transfer (ECF No. 1). Included as attachments to that order were the docket sheet and all prior docket filings in this case. (ECF Nos. 1-1, 1-2, and 1-3.). This Partial Opposition to the United States' Motion includes citations to those prior filings.

The government's request for a "discovery order" makes plain the government's misapprehension of the law. Neither Rule 17 nor 18 U.S.C. § 4241(b) authorize discovery, let alone a "fishing expedition," to "assist" the government's experts in conducting a competency examination.[2] *See United States v. Nixon*, 418 U.S. 683, 699–700 (1974) (explaining that to require production under Rule 17(c), the moving party must show, among other things, that "the application is made in good faith and is not intended as a general 'fishing expedition.'").

Mr. Brockman has always been willing to provide to the government's experts access to relevant medical records to assist them in their examination. To this end, Mr. Brockman does not oppose the government's Discovery Motion to the extent that it seeks an order compelling production of medical records from eight medical professionals—James Poole, MD; Michele York, PhD; Seth Paul Lerner, MD; Joseph Jankovic, MD; Melissa Michelle Yu, MD; Stuart Yudofsky, MD; Julie Wendt, MD; and Daniel Savitt, DO. Mr. Brockman objects to the balance of the government's overbroad and impermissible request. Mr. Brockman accordingly submits an alternative Proposed Order ("Defendant's Proposed Order"), which wholly meets the government's stated purpose for seeking Mr. Brockman's relevant medical records.

---

[2] 45 C.F.R. § 164.512(e)(1)(i), which is also cited by the government, does not confer any right to discovery to the government, but rather simply regulates when a health care provider "may use or disclose protected health information without the written authorization of the individual." 45 C.F.R. § 164.512.

**ARGUMENT**

**I. THE GOVERNMENT'S DISCOVERY MOTION DOES NOT SUPPORT THE PROPOSED ORDER AND OMITS MATERIAL INFORMATION**

The government's overbroad and impermissible Proposed Order varies in significant and objectionable ways from how the government describes its request in the Discovery Motion. The government's Discovery Motion also tells an incomplete story, and as a result does not correctly represent Mr. Brockman's position or the history of this matter to date. And while the government devotes much of its Discovery Motion to attacking the ultimate issue of Mr. Brockman's competency and the integrity of his doctors at Baylor College of Medicine, *see* Discovery Motion at 8-13, Exs. 5-9, this is not the proper time to litigate the substance of the competency issue. We will, therefore, spare the Court, and save our reply on the substance of the competency issue until the post-hearing briefing when evidence has been submitted to the Court in the proper procedural posture.

**A. The Government's Proposed Order Is Not Consistent With The Government's Motion**

The government states in its Discovery Motion that it is requesting an order "compelling Defendant's doctors and medical experts, listed herein, to provide copies of Defendant's historical medical records to the government, for use in Defendant's competency hearing, within thirty days of service of a subpoena." Discovery Motion at 1. This is not, however, what the government's Proposed Order asks of this Court.

Most remarkably, the government's Proposed Order wholly fails to attach the referenced "attached subpoenas." Discovery Motion Proposed Order at 1. Instead, the government seemingly buries a single sample of an "Attachment to Subpoena Issued to

Baylor University." Discovery Motion Ex. 4. And that exhibit varies in significant ways from what the government claims it is seeking. First, it is not directed to any doctor, but to Baylor University; second, it would direct the recipient to produce "Administrative, Financial, and Medical Records" relating to Mr. Brockman for the time period "Inception to Present." Discovery Motion Ex. 4. The government does not attempt to explain in its Discovery Motion why any administrative or financial records should be produced pursuant to Rule 17(c).[3] Indeed, the government's request for financial records does not appear anywhere in the government's 14-page Discovery Motion. It takes a close reading of the government's fourth exhibit to its Discovery Motion to understand the full extent of what the government is asking of the Court. This is improper.

**B. The Government Had The Opportunity To Seek Evidence Concerning Mr. Brockman's Competency Prior To The Indictment**

Mr. Brockman's treating and diagnostic doctors have concluded that his current dementia is consistent with Parkinson's disease,[4] parkinsonism,[5] or Lewy body dementia,[6]

---

[3] The government should not raise new arguments in its reply brief that it should have raised in its moving brief. *Cavazos v. JP Morgan Chase Bank Nat. Ass'n*, 388 F. App'x 398, 399 (5th Cir. 2010) ("[W]e will not consider arguments raised for the first time in a reply brief."); *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief . . . are waived."). Should the government do so, we may request leave to file a sur-reply. *See, e.g.*, *Makhlouf v. Tailored Brands, Inc.*, 2017 WL 1092311, at *5 (S.D. Tex. Mar. 23, 2017) ("While the Federal Rules of Civil Procedure and this Court's Local Rules do not expressly permit the filing of a sur-reply by a non-movant to a movant's rebuttal brief, '[a] sur-reply is appropriate by the non-movant only when the movant raises new legal theories or attempts to present new evidence at the reply stage.'") (quoting *Murray v. TXU Corp.*, 2005 WL 1313412, at *4 (N.D. Tex. May 27, 2005)); *Kleppinger v. Texas Dep't of Transportation*, 2012 WL 12894140, at *2 (S.D. Tex. Nov. 8, 2012) (same).

[4] Parkinson's disease is a progressive nervous system disorder that affects movement and may cause dementia. *See* https://www.mayoclinic.org/diseases-conditions/parkinsons-disease/symptoms-causes/syc-20376055.

[5] Parkinsonism is a term used to describe a condition that causes a combination of the movement abnormalities seen in Parkinson's disease, especially resulting from the loss of dopamine-containing neurons. *See* https://www.mayoclinic.org/diseases-conditions/parkinsons-disease/expert-answers/parkinsonism/faq-20058490.

[6] Lewy body dementia results from protein deposits, called Lewy bodies, that develop in nerve cells in the brain regions involved in thinking, memory and movement. Lewy body dementia is incurable, progressive, and

or some combination of the three.

The government unsealed the Indictment against Mr. Brockman on October 15, 2020. The government's Discovery Motion misleadingly states: "Subsequent to Defendant's indictment, Defendant's attorneys indicated they intended to file a motion under 18 U.S.C. § 4241 requesting a competency hearing[.]" Discovery Motion at 3.

In fact, Mr. Brockman's attorneys detailed the medical evidence to the government in an April 9, 2020 letter—over six months before the Indictment was unsealed. Keneally Decl. Ex. 1.[7] Attached to the letter were diagnostic medical reports from Dr. Pool, Dr. Jankovic, Dr. Yu, and Dr. York, as well as letters from three of these doctors, and a forensic report from the fourth doctor. Keneally Decl. Ex. 1. The April 9, 2020 letter described how Mr. Brockman had been referred by his oncologist, Dr. Seth Lerner, to Dr. Pool, who in turn made referrals to the other three doctors. Keneally Decl. Ex. 1 at 4. Defense counsel had also included a May 2017 email from Mr. Brockman to his friend, Dr. Stuart Yudofsky, stating that his wife and son "are after me to consult with the right doctor regarding my loss of my sense of smell. They are afraid that it is an early sign of alzheimer's or dementia. I am feeling good but am having increasing memory problems." Keneally Decl. Ex. 1 at 15 n.17. Mr. Brockman's counsel asked that the government interview these doctors, with a pledge that the defense would not participate, either by preparation of the witnesses in advance or attendance at the interviews, and provided waivers pursuant to the Health

---

terminal, with death resulting on average approximately eight years after the onset of symptoms. *See* https://www.mayoclinic.org/diseases-conditions/lewy-body-dementia/symptoms-causes/syc-20352025.

[7] "Keneally Decl." refers to the Declaration of Kathryn Keneally, affirmed February 10, 2021, and submitted in support of this Partial Opposition to the United States' Motion.

Insurance Portability and Accountability Act ("HIPAA waivers") to allow such interviews. Competency Motion at 4. In a hearing before Hon. William H. Alsup, to whom this matter was assigned prior to its transfer to this District, the government acknowledged that it "spurned" this opportunity prior to seeking an Indictment. Reply In Support of Competency Motion at 6 n.8 (ECF No. 1-3 at 748-755).[8]

Nowhere in its Discovery Motion does the government disclose that it had this unlimited opportunity to investigate the issue of Mr. Brockman's competency well before it chose to seek an indictment.

### C. Medical Records From Eight Treating and Diagnostic Doctors Are Sufficient To Meet The Government's Stated Purpose

The government seeks historical medical records "so the government's experts can review them before examining Defendant, as such review can often inform the type of testing done during examination." Discovery Motion at 4. This purpose is fully met by allowing the government to subpoena the four doctors—Dr. Pool, Dr. Jankovic, Dr. York, and Dr. Yu—who diagnosed Mr. Brockman's dementia. Two additional medical professionals—Dr. Wendt and Dr. Savitt—participated in the medical evaluations and testing directed by Dr. Jankovic, and their records may also logically be included in the proposed Rule 17(c) subpoenas. The defense also makes no objection to the issuance of Rule 17(c) subpoenas to Dr. Yudofsky and Dr. Lerner, with whom Mr. Brockman raised

---

[8] Mr. Brockman has never contended, as the government would suggest, that a competency hearing should be limited to the medical reports and evaluations provided to the government by defense counsel's April 9, 2020 letter. *See* Discovery Motion at 3, 7, 13.

concerns regarding his mental competency.⁹ Accordingly, Mr. Brockman does not oppose the issuance of subpoenas to the eight identified medical professionals with records relevant to Mr. Brockman's dementia diagnosis. We respectfully submit that Mr. Brockman's agreement goes beyond what the government could obtain pursuant to Rule 17.

### D. The Government Fails To Meet Its Burden Under *Nixon*

The balance of the Government's Proposed Order seeks early production of documents unrelated to Mr. Brockman's dementia diagnosis based on (a) the improper purpose of seeking general discovery, and (b) the demonstrably false premise that Mr. Brockman's entire medical history from birth to present is relevant at the competency hearing. Discovery Motion at 4-5. The government's position is without merit.

Rule 17 subpoenas are "not intended to provide a means of discovery for criminal cases." *Nixon*, 418 U.S. at 698 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). Rather, Rule 17 provides a means to obtain specific, relevant and admissible evidence for use at trial or a pre-trial hearing. Pursuant to Rule 17, the government bears the burden of showing that the subpoenaed documents are (1) relevant, (2) admissible, and (3) have been requested with adequate specificity. *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992) (citing *Nixon*, 418 U.S. at 700). Courts have recognized that sweeping

---

⁹The government incorrectly contends that Mr. Brockman "objects to the provision of any of Defendant's statements made to his doctors," and expends considerable effort addressing this point. Discovery Motion at 3. To the contrary, Mr. Brockman has no objection to the production of the medical records from these eight doctors in their entirety. Rather, the government appears to confuse access to any statements with use of those statements. *See* Discovery Motion at 4, 5-6, 7. Issues concerning the extent to which any statements that Mr. Brockman made to his doctors may be used as evidence are not relevant to the Discovery Motion, and will need to be addressed in the appropriate context, if and when the issue arises.

requests for "all" documents or other materials pertaining to an identified category, such as "all medical records," are suspect under the strict standard for Rule 17 subpoenas. *See United States v. Potts*, 2017 WL 1314193, *2 (S.D. Tex. Apr. 4, 2017) (citing *United States v. Louis*, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005)). Indeed, courts have found that "[s]ubpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the [party seeking the subpoena] is engaging in the type of 'fishing expedition' prohibited by *Nixon*." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 512-13 (S.D.N.Y. 2013) (quoting *Louis*, 2005 WL 180885 at *5)); *see also United States v. Skilling*, 2006 WL 1006622, at *3 (S.D. Tex. Apr. 13, 2006) (explaining that specificity requirement under Rule 17 "serves to prevent a subpoena from being converted into a license for what the Supreme Court in *Bowman Dairy*, 71 S. Ct. at 679, decried as a 'fishing expedition to see what may turn up.'") (citation omitted); *United States v. Poimboeuf*, 331 F.R.D. 478, 480 (W.D. La. 2019) ("The subpoena is limited to evidentiary materials, and it cannot be used as a fishing expedition to see what may turn up. Therefore, requests for 'any and all' documents relating to a category of subject matter are not appropriate."); *United States v. White*, 450 F.2d 264, 268 (5th Cir. 1971) (explaining that "the defendant should not be allowed to conduct a fishing expedition" by requesting "any and all reports" under Rule 16). Yet that is what the government attempts here.

The government's argument that all of the defendant's historical medical records will assist its experts in conducting a competency examination is not only factually incorrect, but also misses the point. Section 4241(b), which governs the conduct of competency hearings, provides one specific means for information gathering in advance of

- 8 -

the hearing: "the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court." 18 USC § 4241(b). This provision has been met by the Competency Hearing Scheduling Order entered in this case. *See* Competency Hearing Scheduling Order at ¶ 2 (ECF No. 36).

Nothing in Rule 17 or 18 U.S.C. § 4241 authorizes discovery of a defendant's full medical history in connection with a competency examination. *See* 18 U.S.C. § 4241; *see also United States v. Klat*, 180 F.3d 264 (table opinion), 1999 WL 301320 (5th Cir. Apr. 27, 1999) (affirming denial of Rule 17 subpoena in connection with commitment hearing for defendant's historical medical records and for appearance of medical professionals who treated defendant, stating "Rule 17(b) may not be used as a discovery device").

The government's entire Discovery Motion is based on the false premise that the "Defendant, through his Motion, has made his entire medical history relevant[.]" Discovery Motion at 5. This is incorrect. For example, the notion that records of a bout with skin cancer or care by a podiatrist from 10, 15, or 20 years ago that have nothing to do with the defendant's dementia diagnosis are somehow relevant and admissible at the upcoming competency hearing defies any notion of relevancy grounded in the Federal Rules of Evidence, and is contrary to the authority relied on by the government's own expert. As the American Academy of Psychiatry and the Law recognizes:

> Because the competence evaluation focuses on the defendant's current mental state and ability, it generally requires less evaluation of collateral data [*e.g.*, historical medical records] than does a retrospective evaluation (*e.g.*, evaluations of criminal responsibility). At a minimum, however, the psychiatrist should review police records when they are available and the

indictment concerning alleged incidents leading to the criminal charges. Dietz Decl. Ex. B at S37–S38 (ECF No. 26-2).[10]

This is not to say that certain historical medical records would not be helpful in evaluating a defendant's competence. To the contrary, we recognize that certain medical records are relevant and to this extent do not object to the Discovery Motion. But the government's broad fishing expedition for any and all of the defendant's confidential medical records "from inception to present" is without legal authority.

Moreover, the government's proposed subpoena attachment seeks not only medical records, but also "administrative" and "financial" records. The government's Discovery Motion lacks any argument in support of this request, which alone should be justification to deny the motion. But the government does suggest that it may question the veracity of Mr. Brockman's treating and diagnostic doctors because they are all affiliated with Baylor College of Medicine, and may have been influenced by what the government calls his "patronage" of that institution. Discovery Motion at 4-5, 12-13. Thus, rather remarkably, the government may be seeking these records as an attempt to impeach Mr. Brockman's doctors. Rule 17, however, is not a vehicle to gather impeachment material. *See Nixon*, 418 U.S. at 701–02 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial [under Rule 17(c)]."); *United States v. Gas Pipe, Inc.*, 2018 WL 5262361, at *2 (N.D. Tex. June 18, 2018) ("Materials that have no potential value other than for purposes of impeachment are not subject to pre-trial subpoena

---

[10] "Dietz Decl." refers to the Declaration of Dr. Park Dietz, affirmed January 22, 2021, and submitted by the government in support of its Discovery Motion.

under Rule 17(c).") (citing *United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981)); *United States v. Powell*, 2011 WL 13136828, at *1 (W.D. Tex. Aug. 30, 2011) ("The party seeking a subpoena duces tecum bears the burden of establishing that the evidence it seeks is (1) relevant, (2) admissible, and (3) requested with adequate specificity—meaning it is not merely a fishing expedition for impeachment or otherwise inadmissible evidence.") (citation omitted).[11]  In any event, we should not have to speculate as to the grounds for the government's requests.  The government carries the burden here and has failed.

## II. THE DEFENSE'S PROPOSED ORDER MEETS THE GOVERNMENT'S STATED PURPOSE AND EXCEEDS THE REQUIREMENTS OF 18 U.S.C. § 4241(b)

Mr. Brockman's counsel offered, as far back as April 2020, to make Mr. Brockman available for examination by medical professionals of the government's choosing.  Reply in Supp. of Mot. for a Hr'g to Determine Whether Mr. Brockman is Competent to Assist in His Defense at 2-3 (ECF No. 1-3 at 748-755).  The defense's continued support for such an examination is reflected by the unopposed Competency Hearing Scheduling Order recently entered by this Court.  Competency Hearing Scheduling Order at ¶ 2.  (ECF No.

---

[11] *See also United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1990) (finding Rule 17(c) did not require production of documents merely for impeachment purposes); *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) ("The only evidentiary use that defendants have been able to advance is that the statements and transcribed interviews of witnesses could be used for impeachment purposes.  This use is generally insufficient to justify the pretrial production of documents."); *Cuthbertson*, 651 F.2d at 195 (3d Cir. 1981) (same); *United States v. Poimboeuf*, 331 F.R.D. 478, 480 (W.D. La. 2019) ("Materials that have no potential value other than for purposes of impeachment are not subject to subpoena under Rule 17(c).") (citation omitted); *United States v. Pena*, 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016) ("Rule 17(c) subpoenas may not issue prior to trial to obtain materials usable only to impeach") (citing *United States v. Cherry*, 876 F. Supp 547, 553 (S.D.N.Y. 1995)); *United States v. Treacy*, , 2008 WL 5082884, at *2 (S.D.N.Y. Dec. 1, 2008) (same); *United States v. Ferguson*, 2007 WL 2815068, at *3 (D. Conn. Sept. 26, 2007) ("[I]mpeachment materials are not properly obtained through a 17(c) subpoena.  *Nixon* requires the subpoena's proponent to provide a specific basis for the admissibility of the documents sought[.]") (citation omitted); *United States v. Reyes*, 239 F.R.D. 591, 601 (N.D. Cal. 2006) ("Rule 17(c) does not entitle [the defendant] to the pretrial production of impeachment material."); *United States v. Weissman*, 2002 WL 31875410, at *1–2 (S.D.N.Y. Dec. 26, 2002) (same).

36).  As discussed above, Mr. Brockman does not oppose the issuance of subpoenas to the eight identified medical professionals with records relevant to Mr. Brockman's dementia diagnosis.  This is sufficient for the government's stated purpose for providing relevant collateral medical records to its experts prior to the competency evaluation and exceeds what the government is entitled to obtain under 18 U.S.C. § 4241(b).

## CONCLUSION

For the foregoing reasons, this Court should enter the Defendant's Proposed Order.

Dated:  February 10, 2021

/s/Jason S. Varnado
Jason S. Varnado
Texas Bar No. 24034722
SDTX Ad. ID No. 32166
Email:  jvarnado@jonesday.com
David S. Smith
Texas Bar No. 24117073
SDTX Ad. ID No. 3398393
Email: dssmith@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone:  832-239-3939
Facsimile:  832-239-3600

Kathryn Keneally (*Admitted Pro Hac Vice*)
New York Bar No. 1866250
Email:  kkeneally@jonesday.com
James P. Loonam (*Admitted Pro Hac Vice*)
New York Bar No. 4035275
Email:  jloonam@jonesday.com
Georgina N. Druce (*Admitted Pro Hac Vice*)
New York Bar No. 5267208
Email:  gdruce@jonesday.com
JONES DAY
250 Vesey Street
New York, NY  10281-1047

Telephone: 212-326-3939
Facsimile: 212-755-7306

Conor G. Maloney (*Admitted Pro Hac Vice*)
District of Columbia Bar No. 1632584
Email: cmaloney@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: 202-879-3450
Facsimile: 202-626-1700

*Attorneys for Defendant
Robert T. Brockman*

## CERTIFICATE OF SERVICE

I certify that on this 10th day of February, 2021, this document was served by electronic filing service on all counsel of record.

/s/ *Jason S. Varnado*
Jason S. Varnado