# EXHIBIT A

# CRIMINAL JUSTICE STANDARDS ON MENTAL HEALTH

[Adopted August 8, 2016, to supplant the Third Edition (August 1984) of the ABA Criminal Justice Mental Health Standards, For the version of the Mental Health Standards in effect prior to August 8, 2016, please click here.]

### PART I:  THE CRIMINAL JUSTICE SYSTEM AND THE MENTAL HEALTH SYSTEM

**Standard 7-1.1.  Terminology**

(a)     Unless otherwise specified, these Standards adopt the definition of "mental disorder" found in the current Diagnostic and Statistical Manual of the American Psychiatric Association.[*] In the settings addressed by the Standards, mental disorder is most likely to encompass mental illnesses such as schizophrenia, bipolar disorder, and major depressive disorders; developmental disabilities that affect intellectual and adaptive functioning; and substance use disorders that develop from repeated and extensive abuse of drugs or alcohol or some combination thereof.

(b)     "Mental health professional," as used in these Standards, includes psychiatrists, psychologists, social workers and psychiatric nurses and other clinicians with expertise in the evaluation and treatment of mental disorders.

(c)     "Mental health evaluation," appearing throughout the Standards as "evaluation," means an evaluation by a mental health professional of an individual accused of, charged with, or convicted of a criminal offense or detained by the police for the purpose of assessing:

   i.    mental competence, as defined in (f),

   ii.   mental state at the time of the offense as it relates to the insanity defense and other criminal responsibility issues, including mitigation at sentencing,

   iii.  risk for reoffending (referred to as "risk assessment" herein) or

---

[*] The current edition of the Diagnostic and Statistical Manual, DSM-5, defines mental disorder as "a syndrome characterized by clinically significant disturbance in an individual's cognition, emotion regulation, or behavior that reflects a dysfunction in the psychological, biological, or developmental processes underlying mental functioning. Mental disorders are usually associated with significant distress in social, occupational, or other important activities. An expectable or culturally approved response to a common stressor or loss, such as the death of a loved one, is not a mental disorder. Socially deviant behavior (e.g., political, religious, or sexual) and conflicts that are primarily between the individual and society are not mental disorders unless the deviance or conflict results from a dysfunction in the individual, as described above."

iv.   treatment needs.

(d)   "Mental health treatment," appearing throughout the Standards as "treatment," includes but is not limited to the appropriate use of psychotropic medications, habilitation services, assertive community treatment, supported employment, family psychoeducation, self-management, and integrated treatment for co-occurring mental disorder and substance abuse.

(e)   "Mental health facility" refers to a facility designated for treatment of individuals with mental disorder, such as public and private mental and medical hospitals, community mental health centers, and crisis intervention units, but not including jails or prisons.  A "forensic" mental health facility is a secure government facility reserved for individuals who have been charged with or convicted of crime.

(f)   "Mental competence," appearing throughout the Standards as "competence," is defined in detail in Parts IV and V of these Standards, but at a minimum requires present understanding of the likely consequences of a particular course of action. A valid "assent" requires only this minimal level of competence, accompanied by an affirmative indication of agreement with a particular course of action, after an explanation of the likely consequences of the action.

**Standard 7-1.2. Responding to persons with mental disorders in the criminal justice system**

(a)   Officials throughout the criminal justice system should recognize that people with mental disorders have special needs that must be reconciled with the goals of ensuring accountability for conduct, respect for civil liberties, and public safety.

(b)   Criminal justice officials should work with community mental health treatment providers and other experts to develop valid and reliable screening, assessment, diversion, and intervention strategies that identify and respond to the needs of individuals with mental disorder who come into contact with the justice system, whether the setting is traditional criminal court, problem-solving court, a diversion program, or post-adjudication supervision and monitoring.

(i)   When appropriate, services should be configured to divert people with mental disorders from arrest and criminal prosecution into treatment, consistent with the [draft ABA Diversion Standards].

(ii)   Court systems should consider establishing special dockets for defendants with mental disorders, consistent with the [draft ABA Specialized Courts Standards].

    (iii)    Criminal justice officials should consider consulting mental health professionals knowledgeable about the possible impact of culture, race, ethnicity, and language on mental health in designing strategies to respond to persons with mental disabilities in the criminal justice system.

(c)    Services should be available within correctional and mental health facilities to facilitate both evaluation and treatment during incarceration and planning for treatment upon release.

**Standard 7-1.3. Roles of mental health professionals in the criminal justice process**

(a)    Mental health professionals serve the administration of criminal justice by:

    (i)    Evaluating and offering legally relevant expert opinions and testimony about a particular person's past, present or future mental or emotional condition, capacities, functioning or behavior, and about the effects of interventions, treatments, services or supports on the person's condition, capacities, functioning or behavior (evaluative expert role);

    (ii)    Offering opinions and testimony, with or without an evaluation, within their respective areas of expertise concerning present scientific or clinical knowledge that is relevant to a criminal case (scientific expert role);

    (iii)    Providing consultation about strategy to the prosecution or defense (consultative role);

    (iv)    Providing treatment for individuals charged with or convicted of crimes (treatment role).

    (v)    Providing consultation with the courts, the bar, correctional agencies, legislatures and other stakeholders aimed at establishing appropriate and effective responses to individuals with mental disorder who are involved in the criminal justice system (policy role).

Because these roles involve differing and sometimes conflicting obligations and functions, the nature and limitations of each should be clarified by mental health professionals, courts, attorneys, and criminal justice agencies.  The professional's performance within these roles should be limited to the individual professional's area of expertise and, while responsive to legal obligations, should be consistent with that professional's ethical principles.

(b)    *Evaluative expert role*. When evaluating the condition, capacities, functioning or behavior of a person involved in the criminal justice system, the professional, no

matter by whom retained, has an obligation to make a thorough and impartial assessment based on sound evaluative methods and to reach an objective opinion on each specific matter referred for evaluation.  The qualifications of a professional to serve as a court-appointed evaluator are set out in Standard 7-3.9(a).  The qualifications of a professional to offer expert testimony about a person's mental or emotional condition, capacities, functioning or behavior are set out in Standard 7-3.9(b).  Disclosure of information obtained during the evaluation is governed by limitations set forth in Standards 7-3.2, 7-3.4(b) & (c), and 7-3.7 and presentation of expert testimony is governed by Standard 7-3.11.

(c)     *Scientific expert role*. When offering expert opinions and testimony concerning scientific or clinical knowledge, the witness, no matter by whom retained, should function impartially within the professional's area of expertise.  The qualifications of a witness to offer expert testimony on present scientific or clinical knowledge are established in Standard 7-3.9(c).

(d)     *Consultative role*.  Mental health professionals serving as consultants to the prosecution or defense have the same obligations and immunities as any member of the prosecution or defense team, except as may be limited by law.

(e)     *Treatment role*.  When providing treatment for a person charged with or convicted of a crime, the obligations a mental health professional owes a patient and society derive primarily from those arising in the ordinary treatment relationship.   Correctional and behavioral health agencies, facilities and programs should respect that professional relationship to the maximum extent consistent with public safety and sound institutional management.  When establishing a therapeutic relationship, mental health professionals should advise the person of known limitations on the professional relationship arising from the person's involvement in the criminal process or placement in an institutional setting.

(f)     *Policy role.*  Mental health professionals have at their disposal a wealth of empirical and practical information about the nature of mental disorders, the methods of assessing the treatability of and the risk presented by people with mental disorder, the effectiveness of treatment programs, and the operation of the mental health system.  This knowledge can help policymakers make informed judgments in enacting statutes, regulations and guidelines that will improve the criminal justice system's treatment of people with mental disorder.  Mental health professionals should be encouraged to provide this information to the relevant stakeholders through testimony, contributions to the legal literature, formal and informal consultation, and other mechanisms.

(g)     The prosecutor and defense counsel should respect the mental health professional's professional obligations, whatever role the professional is serving,

4

and as early as possible ascertain how such obligations might affect the legal process. Attorneys should not attempt to compromise either a mental health professional's legal obligations (by, for instance, knowingly encouraging an expert to violate a statutory reporting requirement) or ethical obligations (by, for instance, knowingly providing misleading information to an evaluator, or refusing to pay an expert unless favorable conclusions are reached).

**Standard 7-1.4.  Roles of the attorney representing a defendant with a mental disorder**

(a)     Consistent with the ABA Resolution on Comprehensive Criminal Representation, attorneys who represent defendants with mental disorders should provide client-centered representation that is inter-disciplinary in nature. These attorneys should be familiar with local providers and programs that offer mental health and related services to which clients might be referred in lieu of incarceration, in the interest of reducing the likelihood of further involvement with the criminal justice system.

(b)     Attorneys who represent defendants with mental disorders should work particularly closely with their clients to ensure that the clients understand their options. Attorneys should be prepared to deal with difficulties in communication that can result from the client's mental disorder or from transfers to a different locale necessitated by treatment needs.

(c)     Attorneys who represent defendants with mental disorders should explore all mental state questions that might be raised, including whether the client's capacities at the time of police interrogation bear on the admissibility or reliability of any incriminating statements that were made, whether the client is competent to proceed at any stage of the adjudication, and whether the defendant's mental state at the time of the offense might support a defense to the charge, a claim in mitigation of sentence, or a negotiated disposition.

(d)     Attorneys who represent defendants with mental disorders should seek relevant information from family members and other knowledgeable collateral sources. Attorneys should share information about their clients with family members and knowledgeable collateral sources only with their clients' assent, and in a way that does not compromise the attorney-client privilege.

(e)     Attorneys who represent defendants in specialized courts should be familiar with and abide by the [draft ABA Specialized Court Standards]. Because a defendant may relinquish substantial rights in a specialized court, the attorney's role as counselor is particularly important in this setting.

**Standard 7-1.5.  Role of the judge and prosecutor in cases involving defendants with mental disorders**

(a)     Judges and prosecutors should consider treatment alternatives to incarceration for defendants with mental disorders that might reduce the likelihood of recidivism and enhance public safety.

(b)     Courts and prosecutor offices should facilitate meetings among community organizations interested in assuring that services are provided to justice-involved persons with mental disorders, including local law enforcement agencies, correctional authorities, and the bench and bar, as well as treatment providers, representatives of the public mental health authority, professional organizations, and other community leaders and governmental officials.

(c)     Courts and prosecutor offices that help create diversion programs or specialized courts should be guided by [the draft ABA Standards on Diversion and the Draft ABA Standards on Specialized Courts].

(d)     When making charging or dispositional decisions about a defendant who has a mental disorder, judges and prosecutors should consider referring the defendant for treatment, either voluntarily or, if appropriate, pursuant to existing law relating to involuntary hospitalization or mandated outpatient treatment.

(e)     In determining which defendants should be selected for participation in diversion programs or specialized courts and which forms of intervention to use, judges and prosecutors should, whenever possible, rely on evidence-based practices, including valid and reliable appraisals of relevant risk and treatment needs.

**Standard 7-1.6.  Joint professional obligations for improving the administration of justice in criminal cases involving individuals with mental disorders**

(a)     National, state, and local judicial, legal, and mental health agencies and professional organizations should work cooperatively to monitor the interdependent performance within the criminal process of their members and constituents, and to improve the overall quality of the administration of justice in criminal cases involving mental health issues, including the quality and availability of services for justice-involved individuals with treatment needs.

(b)     Appropriate professional organizations and governmental agencies, including licensing and accreditation bodies, should establish programs and evidence-based practices, including peer review, for monitoring the performance of mental health professionals participating in the criminal process.  Existing professional ethics boards and committees should develop specific criteria and special review procedures designed to address the ethical questions that may arise when mental health professionals participate in the criminal process.

(c)     Appropriate professional, scientific, and governmental organizations should sponsor and disseminate the results of empirical research concerning:

     (i)     the validity and reliability of mental health evaluations employed in criminal cases;

     (ii)     the development of standardized protocols for conducting evaluations in criminal cases;

     (iii)     the application and practical effect of substantive rules and procedures in cases involving people with mental disorder;

     (iv)     the development of programs and services for individuals with mental health conditions, including diversion from arrest and prosecution to mental health treatment, treatment during periods of correctional confinement, and transition from correctional confinement to treatment post-release; and

     (v)     the quality and impact of participation by mental health professionals in the criminal process.

**Standard 7-1.7. Education and training**

(a)     Interdisciplinary cooperation.  Judicial, legal, and mental health professional associations, organizations, and institutions at national, state, and local levels should cooperate in promoting, designing, and offering basic and advanced education and training programs addressing the identification of and responses to individuals with mental disorders involved in or at risk of becoming involved in the criminal justice system. Such programs should include a focus on developing strategies to facilitate diversion from the criminal justice system to the community mental health treatment system before and after arrest, adjudication, and conviction. Such education and training programs should be offered to audiences working in both the criminal justice and mental health systems, including judges, attorneys, mental health professionals, and to students and trainees within these disciplines.

(b)     Lawyers.

     (i)     Law schools should provide the opportunity for students, as a part of their formal legal education, to become familiar with the issues raised in these Standards. In addition to the relevant law, these issues might include the nature and prevalence of mental disorder, methods of screening for and identification of individuals with mental disorders who

are involved in the justice system, risk assessment, problem-solving strategies (including jail diversion programs and mental health courts), the role of mental health professionals in the justice system, and the essential elements of a comprehensive system of care.

(ii)   Bar associations, law schools, and other organizations responsible for providing continuing legal education should develop and regularly conduct programs offering advanced instruction on the topics described in (b)(i), and should be tailored to local needs and resources. Prosecutors, public defenders, and other attorneys who specialize in, or regularly practice, criminal law should participate in these programs.

(c)   Judges.  Each jurisdiction's highest appellate tribunal or its judicial supervisory authority with responsibility for continuing judicial education should develop and regularly conduct education and training programs on the topics identified in (b)(i).  Additionally, such programs should include strategies for presiding over judicial proceedings involving defendants or witnesses with mental disorders, methods of identifying and communicating with participants in the courtroom who have a mental disorder, and the role of judges in criminal justice/mental health collaborations.  Judges who preside over criminal proceedings should participate in these programs.

(d)    Mental health professionals.

(i)   Professional and graduate schools that train mental health professionals should afford the opportunity for students and trainees to become familiar with the issues concerning the participation of mental health professionals in the criminal process and the potential involvement of individuals with mental disorders in the criminal justice system.

(ii)   These professional and graduate schools should also provide advanced instruction for students and trainees who desire to meet the minimum criteria established by Standard 7-3.9(a) for qualifying as court-appointed evaluators and by Standard 7-3.9(b) for qualifying as expert witnesses testifying about a person's mental condition.

(iii)   Professional and graduate schools and other appropriate organizations, including governmental agencies having responsibility for continuing education for and licensure or certification of mental health professionals, should develop and regularly conduct programs offering instruction on the participation of such professionals in the criminal process designed to:

(A)   enable those professionals to meet the minimum criteria established by Standard 7-3.9(a) for qualifying as court appointed

evaluators and by Standard 7-3.9(b) for qualifying as expert witnesses testifying about a person's mental condition; and,

(B)     inform all participants of developments in law and criminal practice, including problem-solving strategies such as diversion programs and mental health courts, in order to improve the competence of those who play scientific, evaluative, consultative, treatment, or policy-making roles in the criminal process.  Mental health professionals who participate in the criminal process should enroll in these programs.

(e)     These Standards should be included among the instructional materials used in all of the training described in this Standard.  Judges, lawyers, mental health professionals and their professional organizations should disseminate these Standards widely to policy makers and others responsible for improving services for individuals with mental disorders who are involved in the criminal justice system and to representatives of the media investigating matters concerning this population or the systems they populate.

### PART II. LAW ENFORCEMENT AND CUSTODIAL ROLES

**Standard 7-2.1.  Specialized training and crisis intervention strategies**

(a)     All law enforcement agencies and detention facilities should provide specialized training to their personnel to assist them in identifying and responding to emergency incidents involving persons with mental disorders.   Qualified mental health professionals and consumers of mental health treatment and their families should be involved in curriculum preparation and training.

(b)     As an adjunct to training, all law enforcement agencies should promulgate written policies detailing department procedures for intervening in emergency situations involving persons with mental disorders.

(c)     Where resources allow, law enforcement agencies should establish specialized police response teams, consisting of officers who have been trained in responding to emergency situations involving individuals with mental disorders. Police dispatchers should be trained to alert these teams whenever a crisis develops requiring police response.

(d)     Law enforcement agencies should develop memoranda of understanding with local mental health authorities regarding the availability of specialized police response teams, crisis beds, and other treatment services available for individuals the police encounter who require prompt referral for evaluation or treatment. These memoranda should specify convenient locations where an officer may transport an individual needing attention.

(e)     All custodial personnel, whether civilian or sworn, as well as dispatchers and other personnel who are involved in interventions should receive training in identifying and responding to the symptoms and behaviors, including self-injurious behavior, associated with mental disorders.  Emphasis should be placed on those symptoms and behaviors that arise or are aggravated by incarceration, particularly as they relate to suicide prevention.  Explicit guidelines for responding to emergency situations, providing first aid, and preventing individuals from harming themselves should be published and made available to all facility personnel.

**Standard 7-2.2.  Preference for voluntary law enforcement disposition**

(a)     Department guidelines should authorize, but not require, law enforcement officers with appropriate training to provide assistance to any person with

mental disorder who, in the officer's discretion, requires care and assents to such care.  The guidelines should stress that even where involuntary detention is permitted under Standard 7-2.3 officers should seek a voluntary disposition whenever feasible and appropriate.

(b)    Voluntary disposition may consist of referral to a mental health facility but may also involve alternatives to treatment, such as summoning the assistance of the person's friends or family.

**Standard 7-2.3.  Law enforcement detention of people with mental disorders for purposes of evaluation and treatment**

(a)    Authority for law enforcement officers to take people with mental disorders into custody for purposes of referral for evaluation or treatment should be statutorily defined and limited to circumstances in which an officer has probable cause to believe that the person has committed a criminal offense or meets criteria for emergency evaluation under applicable state law. Law enforcement agencies should promulgate written procedures to guide the exercise of this authority.

(b)    Departmental guidelines should stipulate that when custodial disposition is appropriate under (a), police should:

> (i) be appropriately trained in crisis intervention or utilize, whenever feasible, the services of mental health professionals to assist them in effecting custody of individuals with mental disorders in emergency situations, and

> (ii)  use only the physical control necessary to effect such custody, taking into consideration the obligation of law enforcement officers to protect the person, themselves, and others from bodily harm.

(c)    Law enforcement officials and administrators of treatment facilities in each locality should cooperate in developing joint guidelines and policies regarding the admission of persons in police custody to mental health facilities for appropriate evaluation or treatment.  These guidelines should be widely disseminated to law enforcement, mental health professionals, and mental health facility personnel.  The guidelines should require law enforcement officials to notify administrators and other appropriate officials when facility officials decline to accept a person in police custody for evaluation or treatment.

(d)     Law enforcement officials and administrators of treatment facilities should periodically conduct a joint review of such guidelines and policies to evaluate performance and effect operational changes and improvements.

**Standard 7-2.4.  Custodial processing of persons with mental disorders by law enforcement officers**

(a)     When arrest of an individual with a mental disorder is based exclusively on minor non-violent criminal behavior, law enforcement officers should follow one of the following options:

(i)  in cases where the law enforcement officer reasonably believes that the mental disorder did not contribute to the crime or is not serious, processing the person in the same manner as any other criminal suspect;

(ii)  facilitating a voluntary disposition under Standard 7-2.2, or

(iii) immediately transporting the person to an appropriate facility for evaluation and treatment under Standard 7-2.3.

Disposition under (ii) and (iii) does not preclude prosecution.

(b)     When a person has been arrested for a crime not covered by Standard 7-2.4(a), law enforcement officers should process the person in the same manner as any other criminal suspect notwithstanding the fact that the arresting officer has reasonable grounds for believing that the person's behavior meets statutory and departmental guideline requirements for emergency detention for mental evaluation.  In such cases, however, law enforcement officers should notify custodial personnel as required in 7-2.5 unless, in the officers' judgment, the need for mental health intervention is so urgent that the evaluation required in 7-2.5 would be insufficiently timely and immediate transfer to a mental health facility under 7-2.3(a) is necessary.

(c)     Upon initial presentation to the mental health facility, detention facility, the prosecutor or the court, the arresting officer should reveal fully those facts which suggest that the arrestee has a mental disorder and is in need of evaluation or treatment and should document the relevant information for reference in future proceedings.

(d)      Consistent with Standard 7-5.4, law enforcement officials who are considering interrogation of a detained person under this Standard should recognize that persons with mental disorders may be unusually susceptible to persuasion and should be alert to the possibility that official conduct may be more likely to constitute impermissible coercion or result in an invalid waiver of rights when an individual with mental disorder is questioned.

**Standard 7-2.5.  Obligations of custodial personnel to detainees**

(a)      Custodial personnel should ensure that treatment services are available to detainees.  To this end, and pursuant to the provisions of Standard 7-2.1, training for all custodial personnel, and especially for personnel responsible for processing newly detained persons, should include instruction in the identifying persons with mental disorder.

(b)      Custodial personnel should screen all detained individuals upon intake for symptoms or behaviors indicative of a mental disorder and, if such symptoms are observed, should promptly report those observations to the official in charge of detention at the holding facility.  Such a report should also be made at any other time custodial personnel observe, or are told by the arresting officer about, a detainee whose conduct or demeanor is indicative of a mental disorder and whose behavior is self-injurious or is indicative of the possibility of suicide.  Upon receiving such a report, the official in charge, after promptly confirming the need to do so, should summon a mental health professional to provide emergency evaluation and treatment, pursuant to Standard 7-2.6.

(i)       Defense counsel should be notified of the evaluation results, whether the evaluation takes place before or after counsel's appointment. The court and the prosecutor should be notified of the fact of the evaluation and treatment, without reference to any findings or opinions resulting from the evaluation or treatment.

(ii)      When the mental health professional determines that a confined person requires immediate evaluation or treatment not available in the holding or detention facility, the detainee should be transferred to a facility capable of providing such services in accordance with Standard 7-2.6.

(c)      If treatment or transfer does not occur pursuant to Standard 7-2.6 and the person is subsequently discharged from custody, custodial personnel should arrange necessary referrals for mental health treatment and related services (including housing if necessary). If a detainee is believed to meet criteria for civil

commitment, custodial officials should initiate proceedings for the detainee's commitment prior to discharge.

**Standard 7-2.6.  Treatment of detainees; voluntary and involuntary transfer; notice to counsel**

(a)     A detainee who in the opinion of a mental health professional who has evaluated the detainee assents, as defined in Standard 7-1.1(f) (i.e., understands the nature and purpose of a recommended treatment and agrees to such treatment), may be treated in the detention or holding facility or may be transferred to a treatment facility in conformity with the statutes or rules governing voluntary treatment and hospitalization.   If treatment takes place in the detention or holding facility, custodial personnel should endeavor to maintain any treatment the detainee was receiving at the time of detention.

(b)     If a detainee lacks the capacity to assent to recommended treatment or transfer to a treatment facility as defined in paragraph (a), treatment or transfer may be provided only if:

   (i)     a court has ordered treatment to restore the detainee's competence pursuant to Standard 7-4.10(b); or

   (ii)    a court or state law has authorized treatment or transfer; or

   (iii)   an administrative panel composed of the treating professional and another qualified treatment professional find that the detainee is experiencing extreme emotional distress or deterioration of functioning that requires immediate treatment in the detention or holding facility or in a treatment facility and that the proposed treatment is likely to stabilize the detainee's condition, is the least intrusive method of doing so, and is medically appropriate. When treatment is provided pursuant to this provision, the continued need for treatment beyond [15 days] should be subject to judicial review under procedures prescribed by statute.

(c)     If a detainee who has the capacity to consent to treatment or transfer as defined in paragraph (a) refuses treatment or transfer, treatment or transfer may be provided only if a court has:

   (i)     ordered treatment to restore the detainee's competence pursuant to Standard 7-4.11(b); or

(ii)     authorized treatment or transfer pursuant to the jurisdiction's civil commitment law.

(d)     The director of the detention or holding facility should notify the detainee's attorney and the prosecuting attorney whenever the detainee is transferred to a mental health or medical facility; when possible, this notice should precede the decision to transfer.

(e)     Information obtained during the course of the evaluations or treatment described in this Standard is admissible in subsequent criminal proceedings only as provided in Standard 7-3.2(a).

**Standard 7-2.7.  Law enforcement and custodial records of contacts with persons with mental disorders**

(a)     Records of significant contacts with persons with mental disorders who are not charged with a crime should be filed separately from arrest records and should be subject to a high degree of confidentiality.

(b)     Records of mental health treatment provided to the detainee should be maintained separately from other records pertaining to the detainee, and access to them should be limited to the professionals providing treatment, the detainee's attorney, and the detainee except as otherwise provided.  Custodial personnel, including supervisory personnel, should not examine these records without prior authorization of the detainee or the detainee's attorney.

(c)     Detainees' access to treatment records maintained by a detention facility should be governed by rules similar to those applicable to patient access to treatment records maintained by other health institutions.

## PART III. EVALUATIONS AND EXPERT TESTIMONY

**Standard 7-3.1.  Authority to obtain mental health evaluations**

(a)     Pre-trial evaluations; when permitted.

    (i)     Law enforcement and prosecution authorities may not seek or obtain a mental health evaluation, as defined in Standard 7-1.1(c), unless the subject of the evaluation has been taken into custody or arrested.

    (ii)    Law enforcement and prosecution authorities may seek and obtain a pretrial evaluation of an individual who has been taken into custody or arrested only under the circumstances referenced in (b), (c), (d) and (e)(i) & (ii) below, or if authorized by the individual's attorney.

(b)     Evaluations to determine whether treatment is warranted for individuals who have been taken into custody or arrested are governed by Standards 7.2-3 through 7.2-7.

(c)     Evaluations of a defendant's competence to proceed are governed by parts IV and V of this chapter.

(d)     Evaluations of a defendant's mental condition at the time of the alleged crime:

    (i)     Defense-initiated evaluations are governed by Standard 7-6.4(a).

    (ii)    Prosecution-initiated evaluations are governed by Standard 7-6.4(b).

(e)     Evaluations on dispositional issues:

    (i)     Evaluations of individuals found not guilty by reason of mental nonresponsibility [insanity] are governed by Standard 7-7.2.

    (ii)    Presentence evaluations of defendants convicted of non-capital crimes are governed by Standards 7-8.1 and 7-8.3.

    (iii)   Presentence evaluations of defendants charged with or convicted of capital crimes are governed by Standards 7-9.3.

    (v)     Evaluations of prisoners being considered for voluntary or involuntary transfer to treatment facilities are governed respectively by Standards 7-10.2 and 7-10.3.

**Standard 7-3.2. Uses of disclosures or opinions derived from pretrial evaluations or treatment**

(a)     Admissibility of disclosure or opinions in criminal proceedings.  No statement made by or information obtained from a person, or evidence derived from such statement or information during the course of any pretrial evaluation or treatment described in 7-3.1, and no opinion of a mental health professional based on such statement, information, or evidence is admissible in any criminal proceeding in which that person is a defendant unless it is otherwise admissible and:

   (i)     it relates solely to the defendant's present competency to proceed and the use of such disclosure or opinion conforms to the requirements of Standard 7-4.7; or,

   (ii)    it is relevant to an issue raised by the defendant concerning the defendant's mental condition and the defendant introduces or intends to introduce the testimony of a mental health professional to support the defense claim on this issue.

(b)     Duty of evaluator to disclose information concerning defendant's present mental condition that was not the subject of the evaluation.

   (i)     If, in the course of any evaluation, the evaluator concludes that the defendant may be incompetent to proceed, the evaluator should notify the defendant's attorney and, if the evaluation was initiated by the court or prosecution, should also notify the court and prosecution.

   (ii)    If in the course of any evaluation, the evaluator concludes that the defendant presents an imminent risk of serious danger to him or herself or to another person or otherwise needs emergency intervention, the evaluator should take appropriate precautionary measures in accordance with applicable professional standards and statutory reporting requirements.

**Standard 7-3.3. Defense, prosecution and court access to mental health professional assistance and evaluation**

(a)     The right to defend oneself against criminal charges includes an adequate opportunity to explore, through a defense-initiated evaluation, the availability of any defense to the existence or grade of criminal liability relating to defendant's or mental condition.  Accordingly, for defendants who cannot afford such an evaluation, each jurisdiction should make available funds in a reasonable amount

to pay for an evaluation by a qualified mental health professional or professionals selected by the defendant.

(b)     In such cases a defense attorney who believes that an evaluation could support a defense claim based on mental disorder should move for the appointment of a professional or professionals in an ex parte hearing.  The court should grant the defense motion if such services are reasonably necessary for an adequate defense.

(c)     The court should grant a defense motion for a consultative expert, as defined in Standard 7-1.3(d), when the defense attorney can establish good cause that such an expert is necessary for an adequate defense.

(d)     Prosecution and court access to the defendant for purposes of an evaluation by a mental health professional depends upon the nature of the evaluation and is governed by the Standards referenced in Standard 7-3.1.

**Standard 7-3.4. Procedures for initiating evaluations**

(a)     The party that initiates an evaluation of defendant's mental condition should inform the evaluator of each matter to be addressed in the evaluation.

(b)     The attorney initiating an evaluation should obtain and provide to the evaluator all records and other information that the attorney believes may be of assistance in facilitating a thorough evaluation on the matter(s) referred.  The attorney should also take appropriate measures to obtain and provide to the evaluator information that the evaluator regards as necessary for conducting a thorough evaluation on the matter(s) referred. If the evaluation is initiated by the court, both the defense attorney and the prosecutor should obtain and provide the information. Such information may include relevant medical and psychological records, social history, police and other law enforcement reports, confessions or statements made by defendant, investigative reports, autopsy reports, toxicological studies, and transcripts of pretrial hearings. If a record provided to the evaluator contains highly sensitive information, either attorney may request a protective order limiting its further disclosure.

(c)     Consistent with discovery laws, the rules of evidence, and the treatment needs of the defendant, reports resulting from the evaluations described in this Standard, and the records and other information relied on by mental health professionals preparing such reports, should be kept confidential until such time as the record is admitted into evidence.  On the motion of either attorney, these reports and records should be sealed.

(d)     An evaluation of the defendant's present competence should not be combined with an evaluation of the defendant's mental condition at the time of the alleged crime, or with an evaluation for any other purpose, unless the defendant so requests or, for good cause shown, the court so orders.  If an evaluation addresses such discrete issues, a separate report should be prepared on each issue.

(e)     When an evaluation is conducted pursuant to court order, that order should:

(i)     identify the initiating party;

(ii)    identify the purpose(s) of the evaluation;

(iii)   describe the circumstances under which statements or other information obtained during the course of the evaluation, and any opinions of the mental health professional based on the evaluation, may be disclosed or used for any purpose in any criminal proceeding;

(iv)    explain all applicable evidentiary privileges;

(v)     specify whether the evaluator is required to prepare a written report, and, if so, delineate the scope, content, and disposition of the written report; and

(vi)    direct that the defendant's relevant health care records be released, upon request, to the attorney for the defendant or the mental health professional conducting the evaluation, with or without the defendant's consent.

(f)     Each jurisdiction should promulgate standard court orders designed to inform mental health professionals who conduct evaluations of the laws and procedures within the jurisdiction applicable to such evaluations.

**Standard 7-3.5. Procedures for conducting evaluations**

(a)     The party that initiates the evaluation should inform the mental health professional conducting the evaluation and ensure that the professional understands:

(i)     specific legal and factual matters relevant to the evaluation;

(ii)    rules governing disclosure of statements or information obtained during the evaluation and governing disclosure of opinions based on such statements or information; and,

(iii)    applicable evidentiary privileges.

(b)    In any evaluation, whether initiated by the court, prosecution, or defense, the defense and the mental health professional conducting the evaluation have independent obligations to explain to the defendant and to ensure that the defendant understands to the extent possible:

    (i)    the purpose and nature of the evaluation;

    (ii)    the potential uses of any disclosures made during the evaluation;

    (iii)    the conditions under which the prosecutor will have access to information obtained and reports prepared, as provided in Standards 7-3.2 and 7-3.7; and,

    (iv)    the consequences of defendant's refusal to cooperate in the evaluation as provided for in Standard 7-6.4(b).

(c)    Presence of attorneys during evaluations that result in reports to the prosecution or court.

    (i)    When the scope of the evaluation is limited to the defendant's competence to proceed, the defense attorney is entitled, but not required unless mandated by law, to be present at the evaluation.  If present, the attorney should actively participate only if requested to do so by the evaluator.

    (ii)    When the scope of the evaluation is not limited to defendant's competence to proceed, the defense attorney should be present at the evaluation only at the request of the evaluator for reasons relating to the effectiveness of the evaluation. If present the attorney may actively participate only if requested to do so by the evaluator.

    (iii)    Attorneys who are present during an evaluation when psychological testing is administered should be aware that test content is protected by law and that disclosure of that content can undermine the test's validity as a measure of a person's functioning.

    (iv)    The prosecutor may not be present at any evaluation of defendant.

(d)    Recording the evaluation

(i) The defense has no obligation to record a defense-initiated evaluation under Standard 7-3.3. However, if the defense records an evaluation of mental state at the time of the offense, copies should be provided promptly to the prosecution when the defendant gives notice, under Standard 7-6.3(b), of an intent to call the mental health professional who conducted the evaluation as an expert witness on the defendant's mental condition at the time of the alleged offense.

(ii) Whenever feasible, recordings should be made of all court-ordered evaluations of defendants initiated by the prosecution or the court. Copies of such recordings should be provided promptly to the defense attorney and the prosecution.

(iii) Jails and other correctional facilities should maintain equipment that evaluators may use to make audio and video recordings of evaluations they conduct in such facilities. The equipment should be available, on request of the evaluator, for use in a private room when feasible and consistent with security requirements.   Alternatively, facilities should allow evaluators to use their own equipment.

(iv) If an evaluation is recorded, video recording should be considered preferable to audio recording.

(e) Joint evaluations should be encouraged.  They should be permitted when agreed upon by the prosecutor and the defense attorney.  A joint evaluation involves either an evaluation conducted by two or more behavioral health professionals or an evaluation by a mental health professional agreed on by both parties.

**Standard 7-3.6. Preparation and contents of written reports of mental evaluations**

(a) Promptly upon concluding the evaluation, the mental health professional should prepare a complete, written report, unless the professional is retained by the defendant and the defense attorney decides that the professional will not be called as an expert witness.

(b) Contents of written report.

(i) The written evaluation report should:

(A) identify the specific matters referred for evaluation;

(B) describe the procedures, tests, and techniques used by the evaluator;

(C)      consistent with Standards 7-3.8 and 7-6.6, state the evaluator's clinical findings and opinions on each matter referred for evaluation and indicate specifically those questions, if any, that could not be addressed;

(D)      identify the sources of information and present the factual basis for the evaluator's clinical findings and opinions; and,

(E)      present the reasoning by which the evaluator utilized the information to reach the clinical findings and opinions.

(ii)     Except as limited by Standard 7-3.7(a), the evaluator should include in the written report any statements or information that serve as necessary factual predicates for the clinical findings or opinions, even if the statements or information are of a personal or potentially incriminating nature.

(c)     The attorney who requested the evaluation should not edit, modify, or otherwise revise the report in any way that would compromise the report's integrity.  However, after the report has been completed and submitted to the attorney, the attorney may correspond in writing or converse with the mental health professional in order to clarify the meaning or implications of the evaluator's findings or opinions.

(d)     Each jurisdiction should promulgate written guidelines regarding the law and procedures within that jurisdiction governing the preparation of written reports in order to inform mental health professionals serving as evaluators.

**Standard 7-3.7.  Discovery of written reports**

(a)     When the court has ordered a pretrial evaluation on any past or present competency issue, the evaluator should prepare a separate report on that issue even if other issues have also been referred for evaluation.  The report should not contain information or opinions concerning either the defendant's mental condition at the time of the alleged offense or any statements made by the defendant regarding the alleged offense or any other offense.  Upon satisfying itself that the report does not contain information or opinions that should have been excluded, the court should promptly provide copies to the prosecutor and to the defense attorney.

(b)     When the defendant gives notice of an intent to rely on an expert,

(i)　　　the defense should promptly provide to the prosecution all written reports on the issue in question prepared by any mental health professional whom the defendant intends to call as an expert witness.  If the defendant intends to call an expert witness who has not previously prepared a written report, a written report conforming to Standard 7-3.6 (b) should be prepared and promptly provided to the prosecution.

(ii)　　　the prosecution should promptly provide to the defense all information, including written reports prepared by mental health professionals, bearing on the issues addressed by the defense expert that have not already been provided through the discovery process.

(c)　　　Upon a showing of good cause by the defendant, the court may order that the delivery of a report or reports be denied, restricted, or deferred until a time certain before trial.  The court may order the defendant to promptly disclose to the prosecutor a list of the sources of information relied upon in any report whose delivery has been denied, restricted, or deferred.

(d)　　　Each jurisdiction should establish, by statute or court rule, detailed guidelines governing discovery of written reports prepared by mental health professionals.

**Standard 7-3.8. Admissibility of expert testimony concerning a person's mental condition or behavior**

(a)　　　Expert testimony, in the form of an opinion or otherwise, concerning a person's past or present mental condition should be admissible whenever the testimony is based on and is within the specialized knowledge of the witness and will assist the trier of fact on an issue relevant to the adjudication.

(b)　　　Expert testimony relating to the person's future mental condition or behavior, including risk of reoffending, should be admissible when relevant to any criminal proceeding or special commitment hearing if the testimony is within the specialized knowledge of the witness and is based on reliable techniques and practices, which may include consideration of:

(i)　　　the clinical significance of the individual's history and current behavior;

(ii)　　　scientific studies involving the relationship between specific behaviors and variables that are objectively measurable and verifiable;

(iii)    the possible psychological or behavioral effects of proposed therapeutic or other interventions;

(iv)    the factors that tend to enhance or diminish the likelihood that specific types of behavior could occur in the future, or

(v)    the defendant's performance on validated instruments for assessing risk and need only when administered, scored, interpreted  and presented in accordance with scientific and professional standards.

(c)    If the jurisdiction requires the evaluator to present his or her opinion on a question requiring a conclusion of law or a moral or social value judgment, the evaluator should use cautionary language to explain the boundaries of the expert's clinical expertise and the limitations of the opinion.

**Standard 7-3.9. Qualifications for evaluating and testifying mental health professionals**

(a)    Court-appointed evaluators. No professional should be appointed by the court to evaluate a person's mental condition unless the court determines that the professional's qualifications include:

(i)    sufficient professional education and clinical training as set out in Standard 7-3.10, as well as sufficient experience, to establish the clinical knowledge required for the specific type(s) of evaluation(s) being conducted; and,

(ii)    sufficient forensic knowledge, gained through specialized training or an acceptable substitute therefor, necessary for understanding the relevant legal matter(s) and for satisfying the specific purpose(s) for which the evaluation is being ordered.

(b)    Evaluators who testify.  No witness should be qualified by the court to present expert opinion testimony on a person's mental condition unless the court determines that the witness:

(i)    has sufficient professional education and clinical training as set out in Standard 7-3.10, as well as sufficient experience, to establish the clinical knowledge required to formulate an expert opinion; and,

(ii)    has either:

(A)    acquired sufficient knowledge, through forensic training or an acceptable substitute therefor, relevant to conducting the specific

type(s) of mental evaluation actually conducted in the case, and relevant to the substantive law concerning the specific matter(s) on which expert opinion is to be proffered; or,

(B)    has had a professional therapeutic relationship with the person whose mental condition is in question and will limit the testimony to matters concerning the defendant's general mental condition as presented during the therapeutic relationship; and

(iii)    has performed an adequate evaluation, including a personal interview with the individual whose mental condition is in question, relevant to the legal and clinical matter(s) upon which the witness is called to testify.

(c)    Scientific experts.  As indicated in Standard 7-1.3(b), expert testimony may involve issues of present scientific or clinical knowledge and may be presented by an expert who has not evaluated the defendant.  No witness should be qualified by the court to present expert testimony on issues of present scientific or clinical knowledge unless the court determines that the witness:

(i)    has a degree in an appropriate medical or scientific discipline; and,

(ii)    has relevant clinical or research experience and demonstrated familiarity with current scientific or clinical information on the specific issue on which the witness is called to testify.

(iii)    Professional credentials and general practical experience should not, in and of themselves, constitute a demonstration of expertise sufficient to warrant qualification as an expert witness on issues of present scientific or clinical knowledge.

### Standard 7-3.10.  Establishing minimum professional education and clinical training requirements for evaluators and expert witnesses; recommended requirements

(a)    Every jurisdiction should establish, by statute, regulation, or court rule, minimum professional education and training requirements necessary to qualify persons for the performance of roles identified in Standard 7-3.9.

(b)    In developing such minimum requirements, jurisdictions should take the following general factors into consideration:

(i)    Necessary and desirable education and training requirements should differ according to the specific subject matter of the evaluation(s) being

performed and the specific legal purpose(s) for which expert opinion is being solicited; and,

(ii)     Sufficient flexibility should be provided to permit the courts to utilize persons who clearly demonstrate the requisite knowledge notwithstanding their lack of the formal education or training that may be specified in the requirements.  However, experience in performing evaluations or in testifying as an expert should not, by itself, constitute a sufficient demonstration of the requisite clinical knowledge.

(c)     In establishing minimum professional and education and clinical training requirements, each jurisdiction should strive for the highest possible qualifications and should adopt the following recommended minimum requirements, their foreign equivalent, or such higher requirements as may be feasible and appropriate:

(i)     When an evaluation concerns a person's competence to proceed and other mental conditions at the time of the evaluation or a person's need for treatment, evaluators and expert witnesses should be either:

(A)     a licensed physician who has successfully completed at least two years of postdoctoral specialty training in a psychiatric residency program approved by the American Board of Psychiatry and Neurology (or one year of internship and one year of such residency training) or its foreign equivalent; or,

(B)     a psychologist who has received a doctoral degree in psychology from an educational institution accredited by an organization recognized by the Council on Postsecondary Accreditation or its foreign equivalent, and who is licensed as a psychologist if the jurisdiction requires licensure; or,

(C)     a clinical social worker who has received a master's degree in social work with an emphasis on clinical practice from an educational institution accredited by the Council on Social Work Education or its foreign equivalent, and who has completed a minimum of two years or three thousand hours of postgraduate supervised clinical experience in the diagnosis, assessment, and treatment of mental disorders in an appropriate clinical setting, and who is licensed or certified as a social worker if the jurisdiction requires licensure or certification; or,

(D)     a clinical specialist in psychiatric nursing or a psychiatric nurse, who has received a master's degree in psychiatric nursing from an educational institution accredited by an organization recognized by the National League of Nursing or its foreign equivalent, and who is licensed or certified if the jurisdiction requires licensure or certification for the respective discipline.

(ii)    When an evaluation concerns a person's mental condition at the time of an alleged crime, or a person's future mental condition or behavior when these issues arise within a sentencing proceeding or a special commitment proceeding held pursuant to Standard 7-4.14 or Standard 7-7.4, the evaluator or expert witness should be either:

(A)     a licensed physician who has completed the postdoctoral specialty training in a psychiatric residency program approved by the American Board of Psychiatry and Neurology or its foreign equivalent; or,

(B)     a psychologist who has received a doctoral degree in psychology from an educational institution accredited by an organization recognized by the Council on Postsecondary Accreditation or its foreign equivalent, and who is licensed as a psychologist if the jurisdiction requires licensure.

(iii)   A licensed physician who does not meet the requirements of specialty training in psychiatry established in this Standard but who has completed the postdoctoral training requirements of another medical specialty, may, upon performing an adequate evaluation, qualify to testify as an expert witness regarding any physical condition or any organically based mental disability within the scope of the professional's specialized knowledge.

(iv)   A certified special education teacher, speech or language pathologist, or an audiologist, who is licensed or certified if the jurisdiction requires licensure or certification for the respective discipline, may, upon performing an adequate evaluation, qualify to testify as an expert witness regarding a disability within the scope of the professional's specialized knowledge.

**Standard 7-3.11.  Presentation of expert testimony**

(a)    An attorney intending to call an expert witness should assist the expert in preparing for trial consistent with Standard 7-3.6(c).

27

(b)     The expert's opinion should be presented in a form consistent with Standard 7-3.8.

(c)     The expert should identify and explain the theoretical and factual basis for the opinion and the reasoning process through which the opinion was formulated. In doing so, the expert should be permitted to describe facts upon which the opinion is based, regardless of their independent admissibility under the rules of evidence, if the court finds that the Sixth Amendment to the U.S. Constitution and similar relevant state provisions permit admission of these facts and that:

    (i)     they are of a type that is customarily relied upon by mental health professionals in formulating their opinions; and

    (ii)    they are relevant to serve as the factual basis for the expert's opinion; and

    (iii)   their probative value outweighs their tendency to prejudice or confuse the trier of fact.

(d)     Every jurisdiction should promulgate written guidelines designed to inform and advise mental health professionals called to testify as expert witnesses about all aspects of the law and procedure within that jurisdiction applicable to the effective presentation of expert opinions.

**Standard 7-3.12.   Jury instructions**

(a)     The court should instruct the jury concerning the functions and limitations of mental health professional expert testimony.  As provided for in Standard 15-4.4(d), preliminary instructions should be given prior to the introduction of the expert testimony.  The jury should be informed that the purpose of such testimony is to identify for the trier of fact the clinical factors relevant to the issues of past, present, and future mental condition or behavior that are under consideration.

(b)     Jurors also should be informed that they are not asked or expected to become experts in medicine, psychology, or other behavioral sciences and that their task is to decide whether the explanation offered by a mental health professional is persuasive.  In evaluating the weight to be given a mental health professional's opinion, the jury should consider the qualifications of the witness, the theoretical and factual basis for the mental health professional's opinion, and the reasoning process by which the information available to the expert was utilized to formulate the opinion.  In reaching its decisions on the ultimate questions in the trial, the jury is not bound by the opinions of expert witnesses.

The testimony of each witness should be considered in connection with the other evidence in the case and given such weight as the jury believes it is fairly entitled to receive.

**PART IV. COMPETENCE TO PROCEED:  GENERAL PROVISIONS**

**Standard 7-4.1.   Competence to proceed; rules and definitions**

(a)     In any criminal proceeding that takes place prior to or during adjudication of guilt and that requires the presence of the defendant, other than a proceeding pertaining to the defendant's competence to proceed and proceedings (such as bail hearings) where a competence requirement would seriously prejudice the defendant, the defendant must be competent to proceed.

(b)     The test for determining the defendant's competence to proceed when the defendant is represented by counsel should be whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and otherwise to assist in the defense, and whether the defendant has a rational as well as factual understanding of the proceedings.

(c)     The tests for determining whether the defendant is competent to waive representation by counsel and to proceed pro se are specified in Standard 7-5.3.

(d)     The terms *competence* and *incompetence* as used with Part IV of this chapter refer to mental competence or mental incompetence.  A finding of incompetence to proceed may arise from any mental disorder or condition as long as it results in a defendant's inability to consult with defense counsel or to understand the proceedings.

**Standard 7-4.2  Competence to Plead**

(a)     No plea of guilty or nolo contendere should be accepted from a defendant who is incompetent to proceed.

(i)     Absent additional information bearing on the defendant's competence, a finding that the defendant is competent to proceed should be sufficient to establish the defendant's competence to enter a plea of guilt or nolo contendere.

(ii)     The test for determining mental competence to proceed with pleading should be whether the defendant has sufficient present ability to consult with defendant's lawyer with a reasonable degree of rational understanding and whether, given the nature and complexity of the charges and the potential consequences of a conviction, the defendant has a rational as well as factual understanding of the proceedings relating to entry of a plea of guilty or nolo contendere.

(b)     Evaluations of persons believed to be incompetent to proceed with pleading and treatment of persons found incompetent to proceed with pleading should take place in accordance with this part.

**Standard 7-4.3.  Responsibility for raising the issue of competence to proceed**

(a)     The court has a continuing obligation, separate and apart from that of counsel for each of the parties, to raise the issue of incompetence to proceed at any time the court has a good faith doubt as to the defendant's competence, and may raise the issue at any stage of the proceedings on its own motion.

(b)     The prosecutor should move for evaluation of the defendant's competence to proceed whenever the prosecutor has a good faith doubt as to the defendant's competence.  The prosecutor should further advise defense counsel and the court of any information that has come to the prosecution's attention relative to defendant's incompetence to proceed.

(c)     Defense counsel may seek an ex parte evaluation or move for evaluation of the defendant's competence to proceed whenever counsel has a good faith doubt about the defendant's competence, even if the motion is over the defendant's objection.

(d)     A motion for evaluation should be in writing and contain a certificate of counsel indicating that the motion is based on a good faith doubt about the defendant's competence to proceed consistent with (f).  Defense counsel should make known to the evaluator the specific facts that have formed the basis for the motion.

(e)     Neither party should move for an evaluation of competence in the absence of a good faith doubt that the defendant is competent to proceed.  Nor should either party use the incompetence process for purposes unrelated to assessing and adjudicating the defendant's competence to proceed, such as to obtain information for mitigation of sentence, obtain a favorable plea negotiation, or delay the proceedings against the defendant.  Nor should the process be used to obtain treatment unrelated to the defendant's competence to proceed; rather such treatment should be sought pursuant to Part II of these Standards, whether the defendant is in jail, the community, or an inpatient facility.

(f)     In making any motion for evaluation, or, in the absence of a motion, in making known to the court information raising a good faith doubt of defendant's competence, the defense counsel should not divulge confidential communications or communications protected by the attorney-client privilege.

**Standard 7-4.4.  Judicial order for competence evaluation**

(a)     Whenever, at any stage of the proceedings, a good faith doubt is raised as to the defendant's competence to proceed and the requirements below are met, the court should order an evaluation and conduct a hearing into the competence of the defendant to proceed.  The court should follow this procedure whether the doubt arises from a motion of counsel, from information supplied by counsel, from the court's own observation of the defendant, or from any information otherwise known to the court.

     (i)     The court should not order an evaluation of a defendant's competence to proceed before there has been a determination of probable cause by a judge, grand jury or prosecutor unless an earlier evaluation is requested by defense counsel.  If it is determined that probable cause for criminal prosecution does not exist, there should be no further inquiry into the defendant's competence to proceed.

     (ii)    An evaluation to determine competence to proceed should not be ordered before the defendant is represented by counsel who has had an opportunity to consult with the defendant and to be heard by the court.

(b)     The evaluator(s) appointed to perform the evaluation of the defendant's competence to proceed should be qualified by training and experience to offer testimony to the court on matters affecting competence.  A mental health professional who is appointed as an evaluator should have the qualifications set forth in Standard 7-3.9.

(c)     The order for evaluation should specify the nature of the evaluation to be conducted and should specify the legal criteria to be addressed by the evaluator in accordance with the requirements set forth in Standard 7-3.4(e).  Unless requested by the defendant, or for good cause shown in accordance with Standard 7-3.4(d), the evaluation should not include an evaluation into the defendant's mental condition at the time of the offense or other matters collateral to the issues of competence to proceed.

(d)     Each jurisdiction should establish time periods by which the evaluation should be concluded and a report returned to the court.  Such periods normally should not exceed [fourteen] days unless good cause is shown that an extension is necessary for an adequate evaluation. Such extensions should last no longer than [fourteen] days.

**Standard 7-4.5.  Location of competence examination**

(a)     Whenever feasible, evaluation of a defendant's competence to proceed should be conducted in the locality in which the defendant is charged. A defendant should be evaluated in jail only when the defendant is ineligible for release to the community. A defendant may be evaluated in an inpatient facility only when

    (i)     an outpatient evaluation of the defendant determines that the defendant must be admitted to the facility for a professionally adequate evaluation to be completed

    (ii)     the defendant is admitted to the facility for treatment unrelated to the evaluation, or

    (iii)     the defendant will not submit to outpatient examination as a condition of pretrial release.

(b)     Confinement authorized under (a) may continue for such time as is necessary for the evaluation to determine competence, consistent with Standard 7-4.4(c).

(c)     Pendency of proceedings to determine competence to proceed should not postpone judicial determination of eligibility for pretrial release.

**Standard 7-4.6.  Report of evaluator**

(a)     The first matter to be addressed in the report should be the defendant's competence to proceed.  If the opinion of the evaluator is that the defendant is competent to proceed, issues relating to treatment should not be addressed.  If the opinion of the evaluator is that the defendant is not competent to proceed, or that the defendant is competent to proceed but that continued competence is dependent upon maintenance of treatment, the evaluator should then report on the treatment necessary for the defendant to attain or maintain competence, with a presumption that such treatment should take place in the community.

(b)     If the evaluator determines that treatment is necessary for the defendant to attain or maintain competence, the report should address the following issues:

    (i)     the condition causing the incompetence;

    (ii)     the treatment required for the defendant to attain or maintain competence and an explanation of appropriate treatment alternatives in order of choice;

(iii)      the availability of the various types of acceptable treatment in the local geographical area.  The evaluator should indicate the agencies or settings in which such treatment might be obtained, including the jail.  Whenever the treatment would be available on an outpatient basis in the community, the evaluating expert should make such fact clear in the report;

(iv)      the likelihood of the defendant's attaining competence under the treatment and the probable duration of the treatment.

(c)      If the evaluator determines that the only appropriate treatment requires that the defendant be taken into custody or involuntarily hospitalized, then the report should include the following:

(i)      an analysis of the defendant's treatment needs that require attention in a custodial or inpatient setting;

(ii)      whether the defendant, because of the condition causing incompetence, meets the criteria for placement in an inpatient setting, as set forth by law;

(iii)      whether there is a substantial probability that the defendant will attain competence to proceed within the reasonably foreseeable future;

(iv)      the nature and probable duration of the treatment required for the defendant to attain competence;

(v)      alternatives to involuntary confinement the evaluator considered and the reasons for the rejection of such alternatives.

**Standard 7-4.7.  Use of reports**

(a)      Any information or testimony elicited from the defendant at any hearing or examination on competence or contained in any motion filed by the defendant or any information furnished by the defendant to the court or to any person evaluating or providing mental health services, and any information derived therefrom, and any testimony of experts or others based on information elicited from the defendant, should be considered privileged information and should be used only in a proceeding to determine the defendant's competence to proceed and related treatment issues unless the privilege is waived.

(b)      The defendant waives the privilege established in (a) by using or indicating an intent to use the report or parts thereof for any other purpose.  Upon such

waiver, the prosecutor should be permitted to use the report or any part of the report to address the mental condition issue for which the defendant uses the report, subject only to the applicable rules of evidence.

(c)     If the privilege is not waived pursuant to (b), the report should be put under seal after its use to determine competence and may only be unsealed if subsequent proceedings relitigate that issue.

**Standard 7-4.8.  Necessity for hearing on competence to proceed**

(a)     In every case in which a good faith doubt of the defendant's competence to proceed has been raised and as soon as practical after receipt of the reports of the evaluators, the court should conduct a hearing on the issue of competence to proceed unless all parties stipulate that no hearing is necessary and the court concurs.  If the defendant has been confined for examination, the hearing should be held within [seven] days of the receipt of the report of the evaluators; if the defendant is at liberty it should be held within [thirty] days.

(b)     If, after the competence evaluation, defense counsel and the defendant disagree about whether a plea of incompetence should be asserted, special counsel should be appointed to represent the defendant's position during the competency hearing.

(c)     If the parties agree on the issue of competence to proceed or issues related to treatment, a stipulation containing the factual basis for the agreement may be accepted by the court.  The court, after review of the factual basis for the stipulation, should enter the appropriate order on the basis of the stipulation.  In the absence of stipulation by the parties and concurrence by the court, a hearing on the issues should occur.

(d)     Trial by jury should not be required for the hearing on competence to proceed, provided that in those jurisdictions which authorize trial by jury for determination of issues of involuntary civil commitment, jury trial should be available to a defendant to determine issues of competence to proceed and of involuntary confinement for treatment to restore competence.

(e)     In lieu of or after a hearing, the parties may request that the court dispose of the case by either dismissing the charges without prejudice or placing the charges in abeyance, pending the defendant's successful participation in treatment, if

    (i)     based on the reports of the evaluators, it appears that the defendant is incompetent to proceed but would be a suitable candidate for mental health treatment,

(ii)      the prosecutor and the defense attorney agree that such diversion would be preferable to an order for restoration of competence to proceed, and

(iii)     the defendant assents to such diversion.

### Standard 7-4.9.   Hearing on competence; defendant's rights, evidence, and priority of issues

(a)     In all hearings regarding competence, a defendant should have:

     (i)     the right to be present at the hearing, to fully cross-examine witnesses, to call independent expert witnesses, to have compulsory process for the attendance of witnesses, and to have a transcript of the proceedings. Either party should have the authority to call and examine any person identified by the evaluators as a source of information for the evaluative report other than the defendant or the defense attorney.

     (ii)     the right to adequate notice and time to prepare for the hearing, including timely disclosure of the report of appointed evaluators and, if necessary, opportunity to interview or, in those jurisdictions that so provide, to depose the evaluators before the hearing.

(b)     Evidence presented at the hearing should conform to rules of evidence applicable to criminal cases within that jurisdiction.  The evaluators, whether called by the court or by either party, should be subject to examination.

     (i)     Defense counsel may elect to relate to the court personal observations of and conversations with the defendant to the extent that counsel does not disclose the substance of confidential communications or violate the attorney-client privilege; counsel so electing may be cross-examined to that extent.  Such testimony does not disqualify the attorney from representing the defendant.

     (ii)     The court may properly inquire of defense counsel about the attorney-client relationship and the client's ability to communicate effectively with counsel.  The defense counsel, however, should not be required to divulge the substance of confidential communications or those that are protected by the attorney-client privilege.  Defense counsel responding to inquiry by the court on its own motion should not be subject to cross-examination by the prosecutor.

(c)     At the hearing, the court should consider separately each discrete issue raised and should first consider the issue of the defendant's competence to proceed.

(i)     The party raising the issue of incompetence should have the burden of going forward with the evidence to show incompetence.

(ii)    If the court, after hearing the evidence, finds by a preponderance of the evidence that the defendant is competent to proceed the matter should proceed to trial; if the defendant is found not competent, the court should proceed to issues of treatment to restore competence.

**Standard 7-4.10. Hearing on competence; dispositional issues**

(a)     Once the court has found that the defendant is not competent to proceed or that competence depends on continuation of treatment, the court should consider issues relating to treatment to restore competence.

(i)     A defendant may be ordered to undergo treatment if the court finds that there is a substantial probability the treatment will restore the defendant to competence in the foreseeable future.

(ii)    The court may order treatment be administered on an outpatient basis (including as a condition of pretrial release), at a custodial facility, or at an inpatient mental health facility.

(iii)   A defendant should not be involuntarily hospitalized to restore or sustain competence unless the court determines by clear and convincing evidence that:

(A)    treatment appropriate for the defendant to attain or maintain competence is available in the facility; and

(B)    no appropriate treatment alternative is available that is less restrictive than placement in the facility.

(b)     At the conclusion of the hearing the court should enter its written order for treatment to restore competence. The order should contain the following:

(i)     written findings of fact setting forth separately and distinctly the findings of the court on the issues of competence, treatment, and involuntary hospitalization, if applicable;

(ii)    information sufficient for a professional involved in providing treatment to ascertain the charge against the defendant and the nature of the condition causing the incompetence;

      (iii)    a finding that the institution, program, or provider to which the defendant is to be committed or referred is sufficiently staffed and equipped to meet that defendant's treatment needs, or a finding that the ordered disposition is the best available option; and

      (iv)    when reports will be required under 7-4.12 from the professionals providing treatment.

(c)    An order adjudicating the defendant incompetent to proceed should be an appealable order.

**Standard 7-4.11.  Right to treatment and to refuse**

(a)    A defendant determined to be incompetent to proceed has a right to prompt and adequate treatment to restore competence and a right to have such services administered by competent and qualified professionals.

(b)    Within [fourteen] days after entry of an order detaining or committing a defendant for treatment or directing that a defendant report for treatment on an outpatient basis, and assuming the person is not already restored to competence, the professional providing such services should develop and file with the court, copies being made available to both parties, an individualized plan of treatment.  Each treatment plan should contain the following:

      (i)    a statement of the specific causes of defendant's incompetence including, where appropriate, diagnosis and description of any mental disorder, and reference to any other factors causing the incompetence to proceed;

      (ii)    a statement of the planned treatment, whether medical, psychological, educational, or social, appropriate to restore competence;

      (iii)    a statement setting forth any restrictions to be placed on the defendant and the reasons for imposing such restrictions;

      (iv)    a statement of the expected duration of treatment required to restore the defendant's competence.

      (v)    provision for periodic review of the plan's efficacy.

(c)    A defendant has a right to treatment in the least restrictive setting appropriate to restore competence to proceed.

(i)     If the criteria for commitment to an inpatient facility in Standard 7-4.10(a) (iii) are met, a defendant may be treated in a forensic facility or a general treatment facility whose staff have training and experience in the treatment of persons under criminal charges.

(ii)    Whenever a defendant who is incompetent to proceed has been denied pretrial release or is unable to meet the release conditions imposed, that defendant may be detained in jail only if adequate treatment to restore competence is provided in that setting.  Otherwise treatment must be in a mental health facility.

(d)     A defendant determined to be incompetent to proceed and committed for treatment should have the right to refuse any treatment that has an unreasonable risk of serious, hazardous or irreversible side effects.  Otherwise, such a defendant may be subject to psychoactive medication over objection if:

(i)     the government's interests in prosecuting the defendant are important;

(ii)    the medication proposed is substantially likely to restore the defendant to competence and substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel;

(iii)   the medication is necessary to restore competence, and any less intrusive treatments are unlikely to achieve the same result; and

(iv)    the medication is in the defendant's best medical interests in light of the defendant's medical condition.

(e)     If a defendant found incompetent to proceed is treated with medication in an inpatient facility, becomes competent, and is returned to jail or to the community to await further legal proceedings, the court should order as a condition of the defendant's return that the receiving facility or local treatment facility continue such treatment as the inpatient facility may recommend to maintain the defendant's competence. Only if such treatment in the local facility is clearly not feasible should the court consider ordering the defendant returned to the inpatient facility pursuant to Standard 7-4.10 (a) (iii) until proceedings against the defendant are ready to commence.

**Standard 7-4.12.  Periodic redetermination of incompetence**

(a)     Defendant's continuing incompetence to proceed should be periodically redetermined by the court without the necessity of motion by either party.  The facility or person responsible for treatment should therefore be required

39

periodically to file with the court a report on the defendant's current status, with copies to the prosecutor and defense counsel and with notice to the defendant. The report should be filed:

(i)    any time the treating facility or person responsible for treatment concludes that the defendant has attained competence to proceed;

(ii)    any time the treating facility or person responsible for treatment concludes that there is not a substantial probability that the defendant will attain competence within the foreseeable future; or

(iii)    at the following intervals: 30 days, 90 days, 180 days, and every 180 days thereafter.

(b)    The report should contain the following:

(i)    a reevaluation of those issues required by Standard 7-4.6 to be contained in the initial report to the court;

(ii)    a description of the treatment administered to the defendant;

(iii)    an evaluation of the defendant's continued progress toward attaining competence within the reasonably foreseeable future, if the report concludes that the defendant remains incompetent to proceed.

(c)    Either party should have the right to contest the report or any issues addressed in the report within such time as is established in that jurisdiction and the right to demand a hearing on the issues contested, pursuant to Standard 7-4.10.

(i)    Before the hearing, upon motion of either party and upon cause shown, the court should order that the defendant be evaluated by independent mental health professionals and that reports be submitted;

(ii)    Each party should have the right to present evidence at the hearing.  At the conclusion of the hearing the court should enter its written order setting forth separately and distinctly the findings of the court on the issues of competence, treatment, and involuntary confinement.

(d)    If neither party contests the report within the time set, the court should independently review the report and:

    (i)     if the court concurs in the report's conclusions the court should enter an order accepting the report and continuing the defendant's treatment or setting the case for trial, as appropriate;

    (ii)    if the court does not concur in the report's conclusions the court, if appropriate, should order an independent reevaluation of the defendant and should hold a hearing on the issues addressed in the report.

(e)    Notwithstanding the availability of periodic redeterminations by the court, either party should, upon good cause to believe that a defendant has attained competence to proceed, be able to initiate a redetermination of the defendant's competence under Standard 7-4.10.

    (i)     The prosecutor or defense counsel, upon a showing of good cause, should be able to make a motion for reevaluation of a defendant by independent evaluators or for rehearing by the court of the issue of the defendant's continuing incompetence.  For good cause shown, the court should be empowered to order such reevaluation or rehearing at any time.

    (ii)    Defense counsel should be permitted to have the defendant reevaluated at defense expense at any time, and the treating institution should be mandated to make the defendant available to the evaluator for reexamination.  All records necessary for independent evaluation should be available to the prosecutor or defense counsel at any time.

### Standard 7-4.13.  Defense motions; proceedings while defendant remains incompetent

The fact that the defendant has been determined to be incompetent to proceed should not preclude further judicial action, defense motions, or discovery proceedings which may fairly be conducted without the personal participation of the defendant.

### Standard 7-4.14.  Disposition of unrestorably incompetent defendants

(a)    A defendant may be adjudged unrestorably incompetent to proceed (unrestorable) if the defendant has previously been adjudged incompetent and the court finds by a preponderance of evidence that there is no substantial probability that the defendant will become competent to proceed within the foreseeable future.

(b)     The court should hold a hearing to determine whether the defendant is unrestorable whenever the issue has been raised by the report of the professional providing treatment, at the expiration of the maximum time of sentence for the crime charged or [twelve/eighteen] months from the date of adjudication of incompetence to proceed, whichever first occurs.

(c)     If the defendant has been found unrestorable then the defendant should be released from any detention or commitment for treatment to attain or restore competence.  If the defendant meets the criteria for involuntary civil commitment, the court may order such commitment and may direct that initial commitment take place in a forensic facility.

### Standard 7-4.15.  Conducting proceedings when the defendant is taking medication

(a)     A defendant should not be considered incompetent to proceed because the defendant's competence is dependent upon continuation of treatment which includes medication, nor should a defendant be prohibited from standing trial or entering a plea solely because that defendant is being provided such services under professional supervision.

(b)     If the defendant proceeds to trial with the aid of treatment that may affect demeanor, either party should have the right to introduce evidence regarding the treatment and its effects, and the jury should be instructed accordingly.

### Standard 7-4.16.  Credit for time served

A defendant who has been detained or committed for examination of competence to proceed or treatment to restore competence to proceed should receive credit against any sentence ultimately imposed for the time of such pretrial confinement.

### PART V. COMPETENCE IN SPECIFIC CONTEXTS

**Standard 7-5.1   Competence to proceed in specific contexts and related issues**

(a)     Legislatures and courts should recognize that special competence issues arise when defense counsel has good faith doubts about the defendant's ability to make significant decisions, when the defendant wants to proceed pro se, when the defendant is subject to police interrogations, and when the proceeding at issue occurs after conviction.

(b)     Standard 7-5.2 applies when defense counsel has doubts about the defendant's competence to make decisions about matters within the defendant's sphere of control.

(c)     Standard 7-5.3 applies when the defendant elects to proceed without counsel and when, after such election, the defendant proceeds pro se.

(d)     Standard 7-5.5 governs the admissibility of statements made by people with mental disorder during interrogation and related issues.

(e)     Standards 7-8.7 and 7-8.8 govern competence to proceed of defendants represented by counsel in noncapital sentencing and post-conviction proceedings and Standards 7-9.8 and 9.9 govern competence issues relating to capital sentencing and post-conviction proceedings.

**Standard 7-5.2   Competence to proceed with specific decisions:  control and direction of case**

(a)     Matters that are under the defendant's sphere of control include the decisions to plead guilty, assert a defense of nonresponsibility [insanity defense], and waive the rights to jury trial, testify, and appeal.

(b)     The test for determining whether the defendant is competent to make a decision regarding control and direction of the case should be whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the defendant has a rational as well as factual understanding of the nature and consequences of the decision or decisions under consideration.

(c)     If the defense attorney has a good faith doubt concerning the defendant's competence to make decisions within the defendant's sphere of control under (a), the defense attorney may make a motion to determine the defendant's competence to proceed under Standard 7-4.3 even if the defendant has previously been found competent to proceed in the case.  Upon such motion,

the court should order a mental health evaluation, if necessary, according to the procedures set forth in Standard 7-4.4, and indicate the specific decisional issue in question.  If, after a hearing, the court finds the defendant competent to proceed, defense counsel should follow the defendant's direction on matters within the defendant's sphere of control. If the defendant is found incompetent, the court should order treatment according to Part IV.

**Standard 7-5.3.  Competence to elect to proceed without representation by counsel; competence to proceed pro se**

(a)     A defendant who is incompetent to elect to proceed without representation by counsel should not be permitted to proceed to trial or enter a plea of guilt or nolo contendere while unrepresented by counsel.

(b)     The test for determining competence to elect to proceed without representation by counsel should be whether the defendant

(i)     is competent to proceed under Standard 7-4.1(b),

(ii)    has a rational and factual understanding of the possible consequences of proceeding without legal representation, including difficulties the defendant may experience due to his or her mental or emotional condition or lack of knowledge about the legal process, and

(iii)   the ability to make a voluntary, knowing, and rational decision to waive representation by counsel.

(c)     A defendant who is competent to elect to proceed without representation by counsel may plead guilty if competent to do so under Standard 7-4.2.

(d)     A defendant who is competent to elect to proceed without representation by counsel may represent him or herself at trial unless the court finds that, as a result of mental disorder,

(i)     the defendant lacks the capacity to carry out the minimum tasks required for self-representation at trial to such a substantial extent as to compromise the dignity or fairness of the proceeding, or

(ii)    the defendant will significantly disrupt the decorum of the proceeding.

(e)     If, after explaining the availability of a lawyer and making sufficient inquiry of a defendant professing a desire to waive representation by counsel and proceed pro se, the trial judge has a good faith doubt about the defendant's competence with respect to either waiver or pro se representation, the judge should order a

pretrial evaluation of the defendant according to the procedures set forth in part IV of this chapter.

(f)     After obtaining the report of the evaluators, the court should hold a hearing at which the defendant is represented on the issues raised according to the procedures set forth in part IV of this chapter.

(i)     If the court determines that the defendant is both competent to elect to proceed without representation by counsel and competent to proceed pro se, the court should proceed with the case. The court in any such case should consider the appointment of standby counsel in accordance with Standard 6-3.7 to assist the defendant or, if it should prove necessary, to assume representation of the defendant.

(ii)    If the court determines that the defendant is incompetent to elect to proceed without representation by counsel, the court should proceed to consider treatment in accordance with part IV of this chapter.

(iii)   If the court determines that the defendant is competent to elect to proceed pro se but is not competent to proceed to trial without representation of counsel, the court should appoint counsel to represent the defendant and should proceed to trial of the case.

### Standard 7-5.4.  Use of statements by people with mental disorder at trial

(a)     This Standard addresses competence and admissibility issues that arise when people with mental disorder make incriminating statements to the police that are potentially:

(i)     unreliable, as described in (b).

(ii)    involuntary, as described in (c),

(iii)   obtained in violation of *Miranda v. Arizona*, as described in (d).

(b)     Where the court finds that the reliability of a statement has been significantly impaired by a person's mental disorder, it should exclude the statement from evidence even in the absence of official misconduct.  Where the statement has not been excluded, the court should permit evidence to be presented to the trier of fact regarding the effect of the defendant's mental disorder on the reliability of the statement.

(c)     Courts should recognize that official conduct that does not constitute impermissible coercion when persons without mental disorder are interrogated may impair the voluntariness of the statements of persons with mental disorder.

Where such impairment of voluntariness is significant, the court should exclude the statement from evidence.  However, in the absence of any such impermissibly coercive official conduct, such statement should not be excluded from evidence solely because it was the product of the person's mental disorder, unless it is found unreliable pursuant to Standard 7-5.4(b).

(d)   Statements made by persons with mental disorder in response to custodial interrogation should be admissible only if the person has a factual and rational understanding of his or her rights and makes a knowing and voluntary waiver of them.  A person's mental disability can affect and impair each element of an otherwise valid waiver.

(d)   The court should admit into evidence at both pretrial hearings and trial otherwise admissible expert testimony by qualified mental health professionals bearing on the effect of a person's disorder on the reliability and voluntariness of a statement and the validity of any waiver of rights that preceded such a statement.

## PART VI. NONRESPONSIBILITY FOR CRIME

**Standard 7-6.1. The defense of mental nonresponsibility [insanity]**

(a)     A person is not responsible for criminal conduct if, at the time of such conduct, and as a result of mental disorder, that person was unable to appreciate the wrongfulness of such conduct.

(b)     When used as a legal term in this Standard, mental disorder refers to any disorder that substantially affected the mental or emotional processes of the defendant at the time of the alleged offense, unless it was a disorder manifested primarily by repeated criminal conduct or was attributable solely to the acute effects of voluntary use of alcohol or other drugs.

**Standard 7-6.2. Admissibility of other evidence of mental condition**

Evidence, including expert testimony, concerning the defendant's mental condition at the time of alleged offense which tends to show the defendant did or did not have the mental state required for the offense charged should be admissible, consistent with Standard 7-3.8(a) restricting experts to testimony based on their specialized knowledge.

**Standard 7-6.3. Control and notice of defense based on mental condition**

(a)     The decision whether to raise a defense of mental nonresponsibility under Standard 7-6.1 is the defendant's.  The decision whether to introduce evidence of mental condition under Standard 7-6.2 is the defense attorney's.

(b)     If the defense intends to rely upon the defense of mental nonresponsibility [insanity] or introduce expert testimony relating to mental condition at the time of the offense charged, it should, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the prosecuting attorney in writing of such intention and file a copy of such notice with the clerk. The court may, for cause shown, allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate. If notice is not given in compliance with the requirements of this Standard, the court may impose sanctions appropriate to the degree of prejudice to the prosecution.

**Standard 7-6.4. Evaluation procedures to determine mental condition at the time of the offense**

(a)     Prior to the notice required in Standard 7-6.3(b) the defense may seek evaluation of the defendant's mental condition at the time of the offense.

Standard 7-3.3(a) governs when the defendant is entitled to funding for this evaluation.

(b)     After the defendant's notice as provided in Standard 7-6.3(b) and a finding that the defendant intends to rely upon expert testimony, the court may, on motion of the prosecuting attorney, order the defendant to be examined by an expert designated in the order for the purpose of determining the mental condition that is being put in issue by the defendant.  **If the court determines that an adequate evaluation of defendant's mental health condition at the time of the alleged crime has been precluded because the defendant has refused to cooperate with the mental health professional, it should adopt remedial measures proportionate to the degree of prejudice to the prosecution and the extent to which the non-cooperation was influenced by the defendant's mental disorder.**

(c)     The court should not on its own motion order an evaluation of the defendant to determine mental condition at the time of the offense and should not grant such a motion from the prosecution except as provided in (b) of this Standard.

(d)     Procedures for conducting evaluations of mental condition at the time of the offense, including the attorneys' duty to provide information, the terms of the court order, the presence of counsel during the evaluation, recording of the evaluation, and the conduct of joint evaluations are governed by Standards 7-3.4 and 7-3.5.

(e)     Procedures for preparing reports on the mental condition at the time of the offense are governed by Standards 7-3.6.

**Standard 7-6.5. Discovery and disclosures**

(a)     Upon giving notice under Standard 7-6.3(b), the defense should provide the prosecution with the results of its evaluation(s), as provided in Standard 7-3.7(b)(i).

(b)     Pursuant to Standard 11-2.1 in the Discovery Standards, the prosecution should timely provide the defense with information bearing on the defendant's mental condition at issue, including expert reports or statements, the results of mental evaluations and tests, and any written or recorded statements and the substance of any oral statements made by the defendant.  Additionally, upon receiving notice under Standard 7-6.3(b), the prosecutor should, as soon as reasonably practicable, disclose to defense counsel:

(i)      any information that tends to rebut the factual data upon which the experts called by the defendant are relying, including documents, names

and addresses of witnesses and their relevant written or recorded statements, and substance of any oral statements;

(ii)    the names, addresses, and statements of any experts whom the prosecutor intends to call for the purpose of discrediting the mental nonresponsibility [insanity] defense or evidence of mental condition.

(c)   Admissibility and disclosure of evaluation results are governed by Standard 7-3.2(a)(on the admissibility of defendant's evaluation statements), Standard 7-3.2(b) (on the use of information relevant to competence to proceed or imminent risk), and Standard 7-3.4(c) (on disclosure of evaluation results to the public).

**Standard 7-6.6. Limitation on opinion testimony concerning mental condition**

Expert testimony as to how the development, adaptation, and functioning of the defendant's mental processes may have influenced the defendant's conduct at the time of the offense charged should be admissible. Consistent with Standard 7-3.8(a), expert reports and testimony should be based on specialized knowledge of the expert and the insanity test language should be used only if the expert can explain its clinical relevance.  Testimony that a defendant is "sane" or "insane" should not be used unless required by the jurisdiction.

**Standard 7-6.7. A unitary trial**

The defense of mental nonresponsibility [insanity] and all other evidence pertaining to the defendant's responsibility for the acts charged should be heard in a unitary trial unless, upon the defendant's request, the court determines that trying the issue of guilt separately from the issue of responsibility is necessary to prevent substantial prejudice to the defendant.

**Standard 7-6.8. Instruction to the jury**

Upon motion of either party, the court may instruct the jury as to the dispositional consequences of a verdict of not guilty by reason of mental nonresponsibility [insanity].

**Standard 7-6.9. Burden of production and burden of persuasion**

(a)    The defense should have the burden of ensuring that evidence of mental nonresponsibility [insanity] is introduced.

(b)    Once evidence of mental nonresponsibility [insanity] has been introduced at trial, the party with the burden of persuasion should prevail if it meets the preponderance of the evidence standard of proof.

(c)     Nothing contained in paragraph (b) above relieves the prosecution of its burden of proving beyond a reasonable doubt all elements of the offense charged including the mental state required for the offense charged.

**Standard 7-6.10. Forms of verdict**

(a)     When the defense of mental nonresponsibility [insanity] has been properly raised, the verdict returned should be in the form of either guilty, not guilty, or not guilty by reason of mental nonresponsibility [insanity]. The jury should be instructed that it may consider the verdict of not guilty by reason of mental nonresponsibility [insanity] only after finding, beyond a reasonable doubt, that the defendant committed the conduct charged.

(b)     Legislatures should not enact statutes that supplant or supplement the verdict of not guilty by reason of mental nonresponsibility [insanity] with a verdict of guilty but mentally ill.

### PART VII. COMMITMENT OF NONRESPONSIBILITY ACQUITTEES

**Standard 7-7.1. Commitment following mental nonresponsibilty [insanity] acquittal**

(a)     Mental nonresponsibility acquittees may be involuntarily confined pursuant to special commitment criteria that:

(i)     are less demanding in certain respects than the criteria typically required for general involuntary civil commitment of individuals with mental disorder who have not been charged with a crime, and

(ii)     if proven, may result in confinement in forensic mental health facilities that are more secure than the civil hospitals relied upon in the general involuntary commitment setting.

(c)     If the commitment of a mental nonresponsibility acquittee is not sought, or if the commitment is sought but the court declines to order such commitment, the acquittee should be released.

(d)     In jurisdictions that confer authority on an administrative board or a statewide forensic director to make commitment and release decisions about individuals acquitted by reason of mental nonresponsibility, the provisions of this part referring to the director of the mental health facility should be modified accordingly.

**Standard 7-7.2. Commitment procedures; special and general**

(a)     Each state should adopt a separate set of special procedures ("special commitment") for seeking the civil commitment of those acquittees who were acquitted by reason of mental nonresponsibility of offenses involving acts causing, threatening, or creating a substantial risk of death or serious bodily harm.  These procedures should include the dispositional option of conditional release, consistent with Standard 7-7.12.

(b)     States may seek the civil commitment of mental nonresponsibility [insanity] acquittees who were acquitted of offenses that did not involve acts causing, threatening, or creating a substantial risk of death or serious bodily harm only by using those procedures used for the general civil commitment (commitment of persons outside the criminal justice system).

**Standard 7-7.3. Evaluation**

(a)     After issuance of a verdict of not guilty by reason of mental nonresponsibility in cases governed by 7-7.2(a), the trial court, upon motion by the prosecution,

should order an evaluation of whether the acquittee meets the commitment criteria set out in Standard 7-7.4(b). The time allotted for evaluation should not exceed [thirty] calendar days except, when for good cause shown, the court extends the period for up to an additional [thirty] calendar days. This evaluation is for the sole purpose of assisting the court in determining whether the acquittee should be committed.

(b)     The court may order that the evaluation be conducted while the mental nonresponsibility acquittee is in the community, in a correctional facility, or in a mental health facility. In choosing the location of the evaluation, the court should be guided by the least restrictive alternative principle and concern for public safety. The evaluation should be conducted by mental health professionals possessing the qualifications required by Standard 7-3.9.

(c)     During the evaluation process, mental nonresponsibility acquittees should have the same rights regarding treatment as do persons subject to general civil commitment stem, consistent with the requirements of institutional and public safety.

(d)     The evaluation should be completed and an evaluation report should be submitted to the court and to all parties within the time allotted for the evaluation under (a). Upon submission of the evaluation report the prosecuting attorney may move for a commitment hearing. If the prosecuting attorney decides to seek commitment, a motion for a hearing must be filed within [five] days. That hearing must be held within [fifteen] days from the court's receipt of the evaluation report.

(e)     If the prosecuting attorney does not file a timely motion seeking commitment, an acquittee in custody should be released.

**Standard 7-7.4. Special procedures; commitment criteria**

(a)     Special commitment procedures for mental nonresponsibility acquittees acquitted of offenses involving acts causing or creating a substantial risk of death or threatening serious bodily harm should afford acquittees the right to a commitment hearing which meets the requirements set forth in Standard 7-7.5

(b)     At the conclusion of the commitment hearing, the court may order the acquittee committed if it finds:

(i)     beyond a reasonable doubt that the acquittee committed the criminal act for which he or she was acquitted by reason of mental nonresponsibility [insanity], unless the trier of fact made such a finding at the acquittee's criminal trial, as provided in Standard 7-6.10(a), and

    (ii)    by a preponderance of the evidence that, due to mental disorder of the type described in Standard 7-6-1(b), the acquittee is at risk for causing a substantial risk of bodily harm to others in the foreseeable future if not committed, or

    (iii)    by a preponderance of the evidence that the acquittee does not meet the criteria in (b)(ii) due to the effect of treatment currently being received, in which case the acquittee may be committed unless the acquittee proves by a preponderance of the evidence that the acquittee will continue to receive such treatment following release for as long as the treatment is required.

(c)    Commitment should result in confinement in a forensic mental health facility unless the acquittee proves by a preponderance of the evidence that conditions imposed pursuant to Standard 7-7.12 will provide adequate protection of the community.

**Standard 7-7.5. Special commitment hearings**

(a)    A special commitment system for mental nonresponsibility acquittees should provide the procedural protections described in this Standard.

(b)    The acquittee should be represented by counsel at the commitment hearing and is entitled to assistance of counsel during this period. If the acquittee is without counsel, the court should appoint counsel. If the acquittee is unable to afford counsel, the cost should be borne by the state. Representation by counsel cannot be waived except as provided in Standard 7-5.3.

(c)    At the hearing, the acquittee is entitled to confront and cross-examine adverse witnesses. The acquittee is also entitled to present witnesses, including an independent expert witness or expert witnesses. For financially eligible acquittees, the reasonable cost of expert witnesses should be borne by the state.

(d)    At the hearing, the rules of evidence should apply.

(e)    An acquittee's refusal to participate in an evaluation under Standard 7-7.3 may be taken into account by the court in determining whether commitment criteria are met.

(f)    The acquittee should have the right to appeal on the record an adverse ruling on the issue of commitment. The appeal should be heard on an expedited basis.

**Standard 7-7.6. Special commitment; conditions of confinement**

Consistent with the requirements of institutional and public safety, persons committed to a mental health facility  pursuant to special commitment statutes should be confined under comparable conditions and with the same rights of persons committed under general commitment statutes.  Placement should be in the least restrictive treatment environment, which can include a civil hospital.

**Standard 7-7.7. Special commitment; maximum duration of commitment order**

(a)     When, pursuant to Standard 7-7.4, a court hospitalizes or conditionally releases a mental nonresponsibility acquittee,  it should also issue an order setting the maximum duration of the acquittee's special commitment. The maximum duration set by the court should not exceed the maximum term of incarceration provided by law for the most serious count in the indictment or information had the acquittee been found responsible for the crime charged. Upon the expiration of the maximum duration of special commitment, the criminal court's jurisdiction over the acquittee should cease, and any confinement or conditional release of the acquittee ordered by such court should terminate.

(b)     In setting the maximum duration for special commitment, as in other commitment proceedings under this chapter, the court should consider the acquittee's need for treatment and its concerns for the public's safety, but it may not consider retribution or punitive factors.

**Standard 7-7.8. Special commitment; periodic review**

(a)     A specially committed acquittee may petition for a judicial hearing to determine whether the acquittee continues to meet the criteria for special commitment set forth in Standard 7-7.4. The acquittee may petition the court for such a hearing [six months] after the acquittee's original special commitment, and every [year] thereafter. At the original commitment hearing, or at subsequent periodic review hearings under this Standard, the court may issue an order allowing the acquittee to petition for a rehearing sooner than the mandatory period stated herein. The court should issue such an order when it appears that the acquittee's mental condition and other relevant factors warrant a shorter interval between periodic review hearings.

(b)     Upon filing of a petition for a review hearing the court should convene a hearing within [thirty] days, which should be conducted in accordance with the procedures set forth in Standard 7-7.5.

(i)    At any hearing held within one year of the acquittee's original special commitment, commitment may continue if the criteria in Standard 7-7.4(b)(ii) or (iii) are met.

(ii)    At any hearing held a year or more after the original special commitment, commitment may continue if the state proves by clear and convincing evidence that the acquittee meets the criteria in Standard 7-7.4(b)(ii) or (iii).

(iii)    If commitment is continued under either (b)(i) or (b)(ii), but the criteria in Standard 7-7.4(c) governing conditional release are met, the acquittee should be placed on conditional release.

(c)    Legal assistance should be regularly available to all specially committed acquittees at the location of their confinement. To ensure that each acquittee's right to periodic review as set forth in paragraph (a) of this Standard is effective, each acquittee should have ready access to counsel, including appointed counsel. When the acquittee is entitled to periodic review, counsel should request a hearing on the acquittee's continuing need for commitment or should notify the court in writing that counsel has conferred with the acquittee and that a hearing is not requested at that time. By declining to request a hearing when the acquittee is entitled to review, the acquittee does not waive the right to any subsequent hearing.

(d)    Nothing in this Standard should be interpreted as limiting the right of a specially committed acquittee to petition for a writ of habeas corpus at any time.

**Standard 7-7.9. Special commitment; petition for acquittee's release**

(a)    When the director of the facility in which a specially committed acquittee is confined determines that substantial clinical evidence indicates that the acquittee meets the criteria for release without conditions or, pursuant to Standard 7-7.12, with conditions, the director should petition the court for the acquittee's release.

(b)    The petitioner should have access to counsel for preparing and presenting the petition to the court.

(c)    The petition should set forth the clinical findings supporting the conclusion in favor of release and should contain a summary of all pertinent clinical data.

(d)    A hearing should be held no later than [fifteen] days after filing the petition and the acquittee should remain confined pending the hearing.

(e)     Following the hearing the court should determine the matter pursuant to Standard 7-7.8(b).

(f)     The acquittee should receive a copy of the petition and should have the right to be present at the hearing, to be represented by counsel, and to present evidence.

(g)     The prosecuting attorney should receive a copy of the petition and should have the right to be present at the hearing and to present evidence.

**Standard 7-7.10. Special commitment; notification of release**

When the release or conditional release of a specially committed acquittee is imminent, the prosecuting attorney should have the authority to notify relevant individuals and agencies.

**Standard 7-7.11. Special commitment; authorized leave**

(a)     Authorized leave means a temporary, finite absence from the facility without staff supervision that is part of a treatment program. Authorized leave for specially committed acquittees should be permitted only by an order from court.

(b)     When the director of the facility concludes that a specially committed acquittee can be granted authorized leave without posing a danger to the community and that such leave would benefit the acquittee's treatment regimen, the director should provide notice of an intent to authorize the leave to the prosecutor and, if the acquittee is represented, to defense counsel.  The notice should indicate the leave's specific conditions and include a summary of all pertinent clinical data. The prosecutor should have the right to challenge the leave authorization in court, which should determine whether the leave is consistent with public safety and whether any additional conditions should be imposed.

(c)     If a specially committed acquittee violates any condition of an authorized leave order, or if the leave is no longer appropriate to the acquittee's treatment regimen or is no longer consistent with public safety, the leave may be terminated by the director or by the court.

**Standard 7-7.12  Special commitment; conditional release**

(a)     Every state should establish procedures for the conditional release of acquittees who can be served in the community without undue risk to public safety. To facilitate conditional release, states should establish conditional release programs (CRP) with sufficient staffing and resources to discharge the following responsibilities:

(i)      Reviewing any proposed plan for conditional release and contacting all service providers named in the plan to determine their capacity and willingness to (a) provide the services specified in the plan, (b) submit periodic reports to the CRP regarding the acquittee's participation in services, and (c) immediately notify the CRP if an acquittee is non-compliant with or otherwise no longer appropriate for services from the provider;

(ii)    Monitoring an acquittee's compliance with the conditional release order by reviewing reports provided by service providers named in the order and maintaining accessibility to providers 24 hours per day, 7 days per week, to receive reports of non-compliance;

(iii)   Immediately notifying the prosecutor of any allegation or other indication that the acquittee has failed to comply with the conditions of a conditional release order or no longer is appropriate for conditional release;

(iv)   Before an acquittee's term of conditional release expires, arranging for providers serving the acquittee to assess the acquittee's likelihood of continuing to receive necessary services without a conditional release order in place and reporting the same to the court and the attorneys for the acquittee and the state; and

(v)    Organizing periodic training for service providers in the jurisdiction regarding the special service needs of individuals on conditional release and the procedures for reporting to the CRP.

(b)    Prior to the first periodic review provided for in (a), for any person who is committed to a mental health facility, the facility, the CRP or both together should, in cooperation with local mental health providers, prepare a conditional release plan or explain in writing why release planning is not appropriate. The acquittee may also proffer a conditional release plan during any special commitment or review hearing.  Every conditional release plan should specify, at a minimum:

(i)      Where the acquittee will reside;

(ii)    The names and contact information for all providers who will serve the acquittee, the frequency of services, and the non-confidential nature of services;

(iii)   The acquittee's daytime activities; and

(iv)     The requirements for drug testing, if applicable.

(c)     Conditional release plans should take effect only if approved by the court.  Every conditional release order issued by the court should specify, at a minimum:

(i)      A plan for services and other conditions of the acquittee's release;

(ii)     The responsibilities of the CRP staff, consistent with section (a)(ii-iv) of this Standard; and

(iii)    The duration of the order.

(d)     If the CRP receives a report alleging that, or otherwise has reason to believe that, an acquittee has failed to comply with the conditions of release or otherwise no longer meets eligibility criteria for conditional release, it should immediately notify the prosecutor. In addition, if the CRP believes that the acquittee requires placement in an inpatient facility without delay, it should initiate proceedings for the acquittee's civil commitment under the jurisdiction's general civil commitment law.

(e)     If a prosecutor receives a report under section (d) of this Standard, he or she may petition the court for revocation of the acquittee's conditional release and an order for placement of the acquittee in a facility pending a revocation hearing.

(f)     If a court finds probable cause to believe that an acquittee on conditional release has failed to comply with the conditions of release or otherwise no longer meets eligibility criteria for conditional release, it should order the acquittee taken into custody, which can include removing the acquittee from a civil hospital to which he or she was committed under (d), and transported to the originating mental health facility or such other facility as the state mental health authority designates pending a revocation hearing.

(g)     If an acquittee on conditional release is placed in a facility under section (f) of this Standard, a court should conduct a hearing within 10 days of the acquittee's placement. The acquittee should be entitled to the procedural protections described in Standard 7-7.5.

(i)      If, at the hearing, the prosecutor proves by clear and convincing evidence that the acquittee no longer meets eligibility requirements for conditional release, the court should revoke the conditional release. Non-compliance with conditions of release may serve as evidence that the

acquittee is ineligible for conditional release, but non-compliance alone is not necessarily sufficient.

(ii)     If the court finds that the acquittee, although ineligible for conditional release under the existing plan for services, would be eligible with modifications to the plan, it may order such modifications and impose such other conditions as it determines appropriate.

(iii)    An acquittee whose conditional release is revoked shall not be precluded from petitioning for release under Standard 7-7.8 or from being released pursuant to Standard 7-7.9.

(h)    Before the expiration of an acquittee's term of conditional release, the CRP should provide the court and the attorneys for the acquittee and the state with reports from providers serving the acquittee assessing the likelihood that the acquittee would continue to receive and comply with necessary services without a conditional release order. Upon the request of either attorney, or sua sponte, the court may order additional evaluations of the acquittee. If the prosecutor petitions for extension of the acquittee's conditional release term, the court should hold a hearing with the procedural protections described in Standard 7-7.5.

(i)      If, at the hearing, the prosecutor proves, by clear and convincing evidence, that the acquittee is not likely to receive or comply with necessary services without a conditional release order, the court may extend the acquittee's conditional release, consistent with durational limits specified in Standard 7-7.7.

(ii)     If the court finds that the acquittee is likely to continue to receive necessary services without a conditional release order in place, it should deny the prosecutor's petition for extension.

**PART VIII.  SENTENCING AND POST-CONVICTION IN NON-CAPITAL CASES**

**Standard  7-8.1. Emergency Treatment**

If after conviction but prior to sentencing an offender requires emergency treatment, the criteria and procedures of Standard 7-10.3(c) should be followed.

**Standard 7-8.2  Contents of Presentence Report**

Consistent with Standard 18-5.4 in the Sentencing Standards, in cases involving an offender with a mental disorder, a presentence report should be prepared. The report should include:

(a)      A summary of the offender's current mental health condition and current and past treatment;

(b)      A description of programs or resources, such as treatment centers, residential facilities, vocational training services, educational and rehabilitative programs, and, in particular, community-based mental health services, that would be appropriate for the offender's condition;

(c)      A description of any condition relating to the offender's likelihood of adhering to treatment;

(d)      An indication of whether assignment of a specialized probation officer or a case manager trained in monitoring offenders with mental disorder would be appropriate in the offender's case.

(e)      When considered necessary to inform the judge about any of the foregoing factors, a recommendation for a comprehensive mental health evaluation.

**Standard 7-8.3  Expert Assistance in Sentencing**

In discharging the duties specified in Standard 18-5.8(a) (requiring notice of an intent to controvert or supplement a presentence report) and Standard 18-5.17(a)(i) (allowing a party to present evidence at sentencing hearings) defense counsel may require the assistance of mental health professionals. Accordingly, each jurisdiction should ensure that this form of assistance is available to indigent defendants who can demonstrate that their mental condition is likely to be a significant factor at sentencing and that expert assistance is needed to evaluate that condition.  This provision does not preclude the court or the prosecutor from seeking a mental health evaluation prior to sentencing.

**Standard 7-8.4  Use of Pretrial Evaluation Results**

Testimony of a mental health professional that is based on a competency evaluation conducted prior to trial is admissible at a sentencing hearing only in accordance with Standard 7-4.7.  Testimony based on other pretrial evaluations of mental condition are admissible only if the offender puts mental condition in issue at the hearing.

**Standard 7-8.5  Diminished Culpability**

Consistent with Standards 18-3.2 and 18-6.3 of the Sentencing Standards, in all non-capital cases evidence of mental disorder at the time of the offense may be a mitigating factor in sentencing a convicted offender.  In particular, conditions that should be considered mitigating if they existed at the time of the offense include:

(a)    Significant limitations in both cognitive functioning and adaptive behavior, as expressed in conceptual, social, and practical adaptive skills, resulting from intellectual disability, dementia, or a traumatic brain injury.

(b)    Severe mental disorder, not manifested primarily simply by repeated criminal conduct or attributable solely to the acute effects of voluntary alcohol or drug use, that significantly impaired the offender's capacity to appreciate the nature, consequences or wrongfulness of conduct, exercise rational judgment in relation to conduct, or conform  conduct to the requirements of the law.

**Standard 7-8.6  Sentence of Probation**

(a)    An offender should not be denied probation solely because the offender requires mental health treatment.

(b)    If a court imposes a sentence of probation the court should, to the extent authorized by applicable law, consider the offender's current mental condition, including the presence of mental disorder and the offender's amenability to treatment in the community for the disorder, and the conditions that could ensure the offender's adherence to recommended treatment.

(c)    Treatment of an offender with mental disorder who is sentenced to probation should be a condition of probation if necessary to protect the safety of the offender or the public or to assure the offender's successful integration in the community.

(d)    If probation is imposed with mental health treatment as a condition of probation, the court and the department of corrections should ensure that

61

specialized probation officers trained in working with people with mental disorder are assigned to the offender**.**

**Standard 7-8.7.  Competence to proceed:  noncapital sentencing**

(a)  A court may not sentence a defendant who is incompetent to proceed at time of sentence.

    (i)  The test for determining competence to proceed at time of sentence should be whether the defendant has the sufficient present ability to consult with the defendant's attorney with a reasonable degree of rational understanding and whether the defendant has a rational as well as factual understanding of the sentence proceedings.

    (ii)  If, at the time of sentencing, a good faith doubt is raised as to the defendant's competence to proceed and the defendant's participation is necessary to ensure a fair sentencing proceeding, the court has an obligation to determine the defendant's competence and, before imposing sentence, should order a presentence evaluation of the defendant and determine whether he or she is competent to proceed at the time of sentence according to the procedures set forth in part IV of these Standards.

(b)  If the defendant is found incompetent to proceed at the time of sentence, the court should order treatment to restore competence pursuant to Standards 7-4.10 through 7-4.12 in part IV of these Standards.

    (i)  If the defendant is restored to competency, sentencing should proceed.

    (ii)  If the defendant is found to be non-restorable, and the defendant was convicted of an offense causing, threatening, or creating a substantial risk of death or serious bodily harm, the court should initiate special commitment under part VII of these Standards. Defendants convicted of other offenses may be subject to general involuntary civil commitment.

**Standard 7-8.8.  Competence to proceed: appealing from conviction in a noncapital case**

(a)  Consistent with Standard 7-5.2, the test for determining whether the defendant is competent to make a decision regarding whether to appeal conviction in a noncapital case should be whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the defendant has a rational as well as factual understanding of the nature and consequences of the decision.

(i)     If the defense attorney believes the defendant is competent under this Standard, then the defense attorney should abide by the defendant's decision about whether to appeal.

(ii)    If the defense attorney believes the defendant is incompetent under this Standard then the attorney may petition the court to permit a next friend acting on the defendant's behalf to initiate or pursue the appeal.

(b)     The decision about which issues to raise on appeal is the defense attorney's. However, incompetence of the defendant during the time of appeal should be considered adequate cause, upon a showing of prejudice, to permit the defendant to raise, in a later appeal or action for postconviction relief, any matter not raised on the initial appeal because of the defendant's incompetence.

**PART IX:   SENTENCING AND POST-CONVICTION IN CAPITAL CASES [NEW]**

**7-9.1 Mental disorder and capital cases**

(a)     As stated in Standard 18-1.1 and except as provided in this Part, the American Bar Association Standards for Criminal Justice do not take a position on whether the death penalty should be an available sentencing alternative.  The sole purpose of Standards 7-9.1 through 7-9.9 is to address unique issues that arise in connection with mental disorder in those jurisdictions that retain the death penalty.  These issues include:

   (i)     When mental disorder is an exemption from imposition of the death penalty.

   (ii)    When mental disorder renders an offender incompetent to be executed.

   (iii)   The effect of mental disorder on post-conviction proceedings in capital cases.

   (iv)    Evaluation and judicial procedures that should be followed when mental disorder is an issue in a capital trial, at capital sentencing, or during the post-conviction process.

(b)     Except as otherwise provided in this Part, procedures governing evaluations, disclosure of evaluation results, and notice of intent to present mental health experts should be consistent with Standards 7-3.2 to 7-3.14 and 7-6.4 and 7-6.5. The provisions in this Part that address those issues are designed to protect against the prosecution's pretrial access to mental condition evidence that is relevant only after conviction.

**7-9.2  Prohibition on execution of people with certain mental conditions[1]**

(a)     Defendants should not be executed or sentenced to death if, at the time of the offense, they had significant limitations in both their intellectual functioning and adaptive behavior, as expressed in conceptual, social, and practical adaptive skills, resulting from intellectual disability, dementia, or a traumatic brain injury.

---

[1] Sections (a), (b) and (c) of this provision are taken verbatim from paragraphs 1 and 2 of American Bar Association Resolution 122A, which passed the House of Delegates on August 8, 2006.  The resolution was also adopted by the American Psychiatric Association, the American Psychological Association, and the National Alliance for the Mentally Ill.

(b)   Defendants should not be executed or sentenced to death if, at the time of the offense, they had a severe mental disorder or disability that significantly impaired their capacity:

   (i)      to appreciate the nature, consequences or wrongfulness of their conduct,

   (ii)     to exercise rational judgment in relation to conduct, or

   (iii)    to conform their conduct to the requirements of the law.

(c)   A disorder manifested primarily by repeated criminal conduct or attributable solely to the acute effects of voluntary use of alcohol or other drugs does not, standing alone, constitute a mental disorder or disability for purposes of this provision.

(d)   Eligibility for exemption from the death penalty under (a) should be determined at a hearing prior to trial.  Eligibility for exemption from the death penalty under (b) should be determined by the judge at the capital sentencing proceeding after the presentation of evidence but before deliberation on a verdict, unless the defense requests a pretrial hearing on the issue. The defendant should bear the burden of proving both exemptions by a preponderance of the evidence.

(e)   A finding of criminal responsibility at trial should not bar a finding of eligibility for the exemption in (a) or (b), and a finding of eligibility for the death sentence under (a) or (b) should not preclude finding a mitigating circumstance at sentencing, even if the language defining the relevant criteria is identical.

### 7-9.3  Evaluation of mental condition relevant to capital trials

(a)   The court should provide funding for one or more qualified mental health professionals to evaluate a defendant charged with capital murder if, upon motion of the defense attorney, the court finds that (i) the defendant's mental condition is likely to be a significant factor at the guilt or penalty phase of the trial or on issues that would exempt the defendant from the death penalty, and (ii) the defendant is financially unable to pay for expert assistance. Consultative mental health professionals may be appointed consistent with Standard 7-1.3(d) upon similar findings by the court.

(b)   Mental health professionals appointed under (a) should satisfy the education, training and experience requirements specified in Standard 7-3.9 and 7-3.11(c)(ii through iv). If the attorney for the defendant establishes that there is reason to believe that the defendant may have significant limitations in both intellectual

functioning and adaptive behavior, as expressed in conceptual, social, and practical adaptive skills, resulting from intellectual disability, dementia, or a traumatic brain injury, at least one of the evaluators should be skilled in the administration, scoring and interpretation of intelligence tests and measures of adaptive behavior.

(c)     Evaluators should prepare separate written reports on each of the issues addressed, including, as applicable, a mental condition defense, exemption from the death penalty based on Standard 7-9.2(a), exemption from the death penalty based on Standard 7-9.2(b), and mitigation.

**7-9.4 Notice of intent to present mental health evidence**

(a)     If the attorney for the defendant intends to present expert evidence in support of a mental condition defense or an exemption described in Standard 7-9.2, or if the defense anticipates it will present expert mental health evidence in mitigation at the penalty phase of the trial, the attorney should so notify the prosecutor at the time of filing pretrial motions.   The notice should also provide:

(i)      the names of the mental health professionals who will testify;

(ii)     their qualifications;

(iii)    the specific nature of any testing the experts have performed or will perform; and

(iv)    a brief, general summary of the topics to be addressed that is sufficient to permit the government to identify an appropriate rebuttal expert witness.

(b)     If, in the event that the defendant is convicted of capital murder and the issue has not been resolved prior to trial, the attorney for the defendant decides to proceed with presentation of expert mental health evidence in support of an exemption from the death penalty under Standard 9.2(b), or the attorney decides to present such evidence in mitigation, the attorney should confirm his or her intent within 24 hours of the defendant's conviction.

(c)    If the defense attorney fails to give the notice required by this Standard, the court may impose sanctions appropriate to the degree of prejudice to the prosecution and the willfulness of the violation.

(d)    Evidence of notice given under this Standard, later withdrawn, is not admissible in any civil or criminal proceeding against the defendant who gave notice.

**7-9.5  Discovery of defense experts' reports and basis of evaluation**

(a)    Reports of experts identified under Standard 7-9.4(a) that concern a mental condition defense or an exemption under 7-9.2(a) should be subject to discovery by the prosecutor responsible for the guilt phase of the trial prior to trial, consistent with Standard 7-3.7(b).

(b)    Reports of experts identified under Standard 7-9.4(a) that concern an exemption from the death penalty under Standard 7-9.2(b) or addressing mitigation should, at the prosecutor's discretion, be provided to either

(i)    a separate prosecutor (a "firewalled" prosecutor), who may not share the reports or otherwise communicate about the evaluation with the prosecutor responsible for the guilt phase of the trial unless the defendant is found guilty of a capital offense and the defendant confirms an intent to claim an exemption or offer mitigation during sentencing under Standard 7-9.4(a), or

(ii)    the prosecutor responsible for the sentencing phase of the trial once the defendant is convicted of a capital offense and confirms an intent to present mental health evidence at sentencing.

(c)    As used in this Standard "reports" include not only the expert's written report but also educational, health care, vocational, social service, military, and mental health records; medical and psychological test data; notes and reports summarizing the experts' work and evaluations; and other materials the experts consulted or relied upon.

(d)    The court may impose sanctions appropriate to the degree of prejudice to the prosecution for failure to comply with the discovery requirements of this Standard.

**7-9.6 Prosecution-initiated evaluation of the defendant and defense discovery**

(a)   If the defendant provides notice under Standard 7-9.4(a), the court should, upon the prosecutor's motion, order the defendant to be evaluated by one or more mental health professionals satisfying qualifications specified in Standard 7-9.3(b). The scope of the evaluation should be limited to issues that are subject of the notice.

(b)   If the notice provided by the defendant under Standard 7-9.4(a) indicates that expert evidence will be used to support a mental condition defense at trial or an exemption under Standard 7-9.2(a), the evaluators should submit written reports on that issue to the prosecution and the defense. If the notice provided by the defendant under Standard 7-9.4(a) indicates that expert evidence will or might be used in support of an exemption under 7-9.2(b) or mitigation at sentencing, the evaluators should submit written reports on that issue to the defense.  If the evaluation takes place prior to trial, the reports should also be submitted, at the prosecutor's discretion, either to

   (i)   the "firewalled" prosecutor described in Standard 7-9.5(b)(i), who should not share the reports or otherwise communicate about the evaluation with the prosecutor responsible for the guilt phase of the trial unless the defendant is found guilty of a capital offense and the defendant confirms an intent to offer mental health evidence during sentencing, or

   (ii)   the prosecutor responsible for the sentencing phase of the trial once the defendant is found guilty of a capital offense and confirms an intent to offer mental health evidence during sentencing.

(c)   If the defendant fails to submit to an evaluation ordered under this Standard or fails to cooperate with the evaluation for reasons unrelated to mental disorder the court may impose sanctions proportionate to the degree of prejudice to the prosecution and the extent to which the failure was influenced by the defendant's mental disorder.

**7-9.7  Inadmissibility of information obtained during an evaluation.**

(a)   No statement made by or information obtained from a defendant, or evidence derived from such statement or information during the course of any mental health evaluation, or during treatment that occurs after arrest for the capital offense, and no opinion of a mental health professional based on such statement, information, or evidence is admissible in the prosecution's case-in-

chief at the sentencing phase of a capital trial for the purpose of proving the aggravating circumstances provided by law.

(b)     Such statements, information, or opinion shall be admissible for rebuttal purposes in a capital sentencing proceeding, but only if relevant to (i) an exemption from the death penalty, (ii) mitigation during sentencing, or (iii) statements made by the defendant under oath where the law permits the use of evaluation statements.

### 7-9.8   Competence to proceed at capital sentencing

(a)     The defendant must be competent to proceed with the capital sentencing proceeding.

(i)     Absent additional information bearing on defendant's competence at the time of capital sentencing, a finding that the defendant was competent to proceed at trial should be sufficient to establish the defendant's competence to proceed with sentencing.

(ii)     A defendant is competent to proceed at capital sentencing if he or she has sufficient present ability to consult with defendant's lawyer with a reasonable degree of rational understanding and, given the nature and complexity of the sentencing issues, has a rational as well as factual understanding of the proceedings, including the consequences of failing to present mitigation evidence and the possibility that a defendant's attitude toward the death penalty and its alternatives will change over time.

(b)     The decisions about whether to challenge the death penalty, present mitigating evidence and present any particular mitigating evidence are defense counsel's, after consultation with the defendant.

### 7-9.9   Mental Disorder or Disability after Sentencing[2]

(a)     *Grounds for precluding execution*.  A sentence of death should not be carried out if the prisoner has a mental disorder or disability that significantly impairs his or her capacity:

---

[2] This provision, through subsection (d), is taken verbatim from paragraph 3 of American Bar Association Resolution 122A, which passed the House of Delegates on August 8, 2006.  The resolution was also adopted by the American Psychiatric Association, the American Psychological Association, and the National Alliance for the Mentally Ill.  The language replaces original standard 7-5.6.  Subsection (e) revises original standard 7-5.7.

(i)     to make a rational decision to forgo or terminate post-conviction proceedings available to challenge the validity of conviction or sentence;

(ii)    to understand or communicate pertinent information, or otherwise assist counsel, in relation to specific claims bearing on the validity of the conviction or sentence that cannot be fairly resolved without the prisoner's participation; or

(iii)   to understand the nature and purpose of the punishment, or to appreciate the reason for its imposition in the prisoner's own case

Procedures to be followed in each of these categories are specified in (b) through (d) below, and procedures to be followed in all three categories are specified in (e) below.

(b)     *Procedure in cases involving prisoners seeking to forgo or terminate post-conviction proceedings.*  If a court finds that a prisoner under sentence of death who wishes to forgo or terminate post-conviction proceedings has a mental disorder or disability that significantly impairs his or her capacity to make a rational decision, the court should permit a next friend acting on the prisoner's behalf to initiate or pursue available remedies to set aside the conviction or death sentence.

(c)     *Procedure in cases involving prisoners unable to assist counsel in post-conviction proceedings.*  If a court finds at any time that a prisoner under sentence of death has a mental disorder or disability that significantly impairs his or her capacity to [rationally] understand or communicate pertinent information, or otherwise to assist counsel, in connection with post-conviction proceedings, and that the prisoner's participation is necessary for a fair resolution of specific claims bearing on the validity of the conviction or death sentence, the court should suspend the proceedings and order an evaluation of the prisoner. If the court finds, after evaluation or after treatment as provided in Part IV, that there is no significant likelihood of restoring the prisoner's capacity to participate in post-conviction proceedings in the foreseeable future, it should reduce the prisoner's sentence to the sentence imposed in capital cases when execution is not an option.

(d)     *Procedure in cases involving prisoners unable to understand the punishment or its purpose.*  If, after challenges to the validity of the conviction and death sentence have been exhausted and execution has been scheduled, a court finds that a prisoner has a mental disorder or disability that significantly impairs his or her capacity to [rationally] understand the nature and purpose of the

punishment, or to appreciate the reason for its imposition in the prisoner's own case, the sentence of death should be reduced to the sentence imposed in capital cases when execution is not an option.

(e) *Evaluation and adjudication procedure*. The evaluation procedure for making the determinations required by this Standard should be as follows:

(i) Any individual, including a correctional official, other state official, the prosecution, counsel for the prisoner, or the court on its own motion, may raise the issue of whether a prisoner is incompetent on the grounds described in Standard 7-9.9(a). If the court finds that there is reason to believe the prisoner may be incompetent, it should appoint counsel for the prisoner if the prisoner is not represented, and, if the prisoner is indigent, provide counsel with adequate resources to retain a mental health professional to evaluate the prisoner. The state should be permitted to have its own qualified professional or professionals conduct an evaluation as well.

(ii) All evaluations of a prisoner's current mental condition for purpose of determining the issue of competence should be conducted by mental health professionals whose qualifications meet the requirements of Standard 7-3.9 through 7-3.12.

(iii) If, after receiving the reports of the evaluation or evaluations, counsel for the prisoner believes that the prisoner is currently incompetent, counsel should move for a hearing on the issue of competence. Upon receiving such a motion, the court should order a hearing unless it finds, under Standard 7-9.9 (e) (vi), that the attorney's motion is improper.

(iv) Following the hearing, if the court finds, by a preponderance of the evidence, that the prisoner is currently incompetent, it should order the appropriate disposition, consistent with Standards 7-9.9(b) through (d).

(v) If evaluations or proceedings under this Standard cannot be accomplished before the scheduled date of the prisoner's execution, the court should order a stay of execution until the proceedings on the issue of competence are completed.

(vi) In the absence of good faith doubt about the prisoner's current competence, it is improper for an attorney to request resources to retain a mental health professional to evaluate the prisoner or move for a hearing to determine the prisoner's competence. It is improper to use proceedings on the issue of current mental condition solely for the purpose of delay.

## PART X. SENTENCED PRISONERS WITH MENTAL DISORDER

**Standard 7-10.1 Services for people with mental disorder**

(a)     Pursuant to Standards 23-6.11 and 23-8.2 in the Standards on Treatment of Prisoners, a correctional facility should provide appropriate and individualized mental health treatment to prisoners with mental disorder.

(b)     Correctional officers should receive appropriate training on how to deal with prisoners who have a mental disorder.

(c)     Segregated housing of persons with mental disorder should only occur under the circumstances defined in Standard 23-2.8.

(d)     Prisoners who require mental health treatment not available in the correctional facility should be transferred to a forensic mental health facility, pursuant to procedures set forth in the following Standards.

**Standard 7-10.2. Voluntary transfer to mental health facility**

(a)     A prisoner desiring treatment in a mental health facility may make an application for voluntary admission to such a facility.

(b)     If the application is endorsed by the chief executive officer of the correctional institution and accompanied by the report of an evaluation conducted by a mental health professional that explains why the prisoner should be transferred to a mental health facility, and the mental health facility accepts the endorsed application, the prisoner should be admitted to the facility.

(c)     If the mental health facility does not accept the application, then the correctional facility may petition a court to order the transfer. The petition should be accompanied by the prisoner's application and the evaluation report, all of which should also be sent to the mental health facility.  The court should set the matter for a prompt hearing. If the court finds, by clear and convincing evidence, that the prisoner has a mental disorder and is in need of treatment for the disorder in a mental health facility, the prisoner should be transferred.

**Standard 7-10.3. Involuntary transfer**

(a)     If the prisoner disagrees with the correctional facility's determination that transfer is needed, the facility may petition a court for involuntary transfer. The decision-maker must find by clear and convincing evidence that the prisoner has a mental disorder and is in need of treatment for the disorder in a mental health

facility rather than in the correctional facility. Expert testimony as to whether a prisoner has a mental disorder and requires treatment in a mental health facility should be admissible.

(b)     Prior to involuntary transfer of a prisoner with a mental disorder to a mental health facility, the prisoner should be afforded, at a minimum, the following procedural protections:

(i)      at least [3 days] in advance of the hearing, written and effective notice of the fact that involuntary transfer is being proposed, the basis for the transfer, and the prisoner's rights under this Standard;

(ii)     decision-making by a judicial or administrative hearing officer independent of the correctional facility, or by an independent committee that does not include any correctional staff but that does include at least one qualified mental health professional, who cannot be responsible for treating or referring the prisoner for transfer;

(iii)    a hearing at which the prisoner may be heard in person and, absent an individualized determination of good cause, present testimony of available witnesses, including the prisoner's treating mental health professional, and documentary and physical evidence;

(iv)    absent an individualized determination of good cause, opportunity for the prisoner to confront and cross-examine witnesses or, if good cause to limit such confrontation is found, to propound questions to be relayed to the witnesses;

(v)     an interpreter, if necessary for the prisoner to understand or participate in the proceedings;

(vi)    counsel, or some other advocate with appropriate mental health care training;

(vii)   a written statement setting forth in detail the evidence relied on and the reasons for a decision to transfer;

(viii)  an opportunity for the prisoner to appeal to a mental health care review panel or to a judicial officer; and

(ix)    a de novo hearing held every [6 months], with the same procedural protections as here provided, to decide if involuntary placement in the mental health facility remains necessary.

(c)     If a mental health professional at the correctional facility concludes that a prisoner with mental disorder requires immediate transfer to a dedicated mental health facility because of a serious and imminent risk to the safety of the prisoner or others, the chief executive of a correctional facility should be authorized to order such a transfer.  However, with 48 hours of admission an involuntary transfer hearing should be conducted pursuant to this Standard.

**Standard 7-10.4. Right of prisoner to refuse treatment**

(a)     Involuntary medication of a prisoner should be permitted only if the prisoner is suffering from a serious mental disorder, non-treatment poses a significant risk of serious harm to the prisoner or others, the treatment is medically appropriate, and no less intrusive alternative is reasonably available.

(b)     Prior to involuntary mental health treatment of a prisoner with a mental disorder, the prisoner should be afforded, at a minimum, the procedural protections specified in Standard 10.3(b) for involuntary mental health transfers, except that:

(i)     the decision-making body in the first instance and on appeal may include appropriate correctional agency staff;

(ii)    the notice should set forth the mental health staff's diagnosis and basis for the proposed treatment, a description of the proposed treatment, including, where relevant, the medication name and dosage, and the less-intrusive alternatives considered and rejected; and

(iii)   the de novo hearing should determine whether to continue or modify any involuntary treatment, and in reaching that decision should consider, in addition to other relevant evidence, evidence of side effects.

(c)     In an emergency situation requiring the immediate involuntary medication of a prisoner with mental disorder, an exception to the procedural requirements described in subdivision (b) of this Standard should be permitted, provided that the medication is administered by a qualified health care professional and that it is discontinued within 72 hours unless the requirements in subdivision (b) of this Standard are met.

(d)     Notwithstanding a finding pursuant to subdivision (b) of this Standard that involuntary treatment is appropriate, mental health staff should continue attempting to elicit the prisoner's consent to treatment.

**Standard 7-10.5. Good time credits and parole**

(a)     A prisoner transferred to a mental health facility should earn good time credits on the same terms as prisoners in adult correctional facilities.

(b)     A prisoner transferred to a mental health facility should be eligible for parole release consideration on the same terms as prisoners in correctional facilities.

(c)     If otherwise qualified for parole, a prisoner should not be denied parole solely because the prisoner had or is receiving treatment in a mental health facility.

(d)     Parole may be conditioned outpatient treatment if the prisoner would benefit from such treatment and it treatment is necessary to protect the safety of the offender or the public or to assure the offender's successful integration in the community parole may be conditioned on such treatment.

**Standard  7-10.6. Return to correctional facility**

(a)     When a transferred prisoner seeks return to a correctional facility and the prisoner was transferred voluntarily under Standard 7-10.2, the prisoner should be returned to the correctional facility unless the mental health facility believes that the prisoner still meets transfer criteria and it is determined, pursuant to a hearing conducted under Standard 7-10.3(b), that continued treatment in the mental health facility is necessary.  If the prisoner seeking return to the correctional facility was transferred involuntarily, the prisoner is entitled to a hearing within [six months], consistent with Standard 7-10.3(b)(ix).

(b)     When the mental health facility determines that the prisoner no longer meets the transfer criteria and decides to return the prisoner, the prisoner, the correctional facility, and the court should receive written notice of this decision at least [fifteen] days prior to the return. The notice should include the factual basis for the return decision and confirmation that the prisoner has been advised of the right to object.

(i)   When the prisoner, the mental health facility, and the correctional facility agree that the prisoner no longer meets the transfer criteria in Standard 7-10.3(a), the prisoner should be returned promptly to the correctional facility.

(ii)  If the prisoner objects to being returned, that objection must be included in the notice sent to the court. The court should determine, at a hearing if necessary, whether the return decision reflects deliberate indifference to the offender's reasonable mental health needs.  If the court so finds, the prisoner should remain in the mental health treatment facility.

**Standard 7-10.7. Civil commitment at expiration of sentence**

(a)     A prisoner who has been hospitalized pursuant to Standard 7-10.3 must either be released or civilly committed pursuant to the state's general civil commitment statute when the sentence expires.

(b)  Statutes that provide for post-sentence commitment of offenders using criteria that differ from the general civil commitment criteria should be repealed.

**Standard 7-10.8 Re-entry**

Provisions for ensuring a smooth transition to the community for prisoners with mental disorder are found in Standard 23-8.9 of the Standards on Treatment of Prisoners, which govern re-entry of prisoners.

**DRAFT REVISION OF THE CRIMINAL JUSTICE MENTAL HEALTH STANDARDS**

**SUBMITTED BY THE CRIMINAL JUSTICE SECTION**
**May 15, 2016**

Christopher Slobogin, *Chair*
> Professor, Vanderbilt University Law School, Nashville, Tn.
W. Lawrence Fitch, *Reporter*
> Professor, University of Maryland School of Law, Baltimore, Md.
Guy Arcidiacono,
> Deputy Chief, Appeals Bureau, Forensic Litigation Unit, Suffolk County, N.Y.
Richard Bonnie,
> Professor, University of Virginia Law School, Charlottesville, Va.
Alex Buchanan, Ph.D., M.D., FRCPsych
> Associate Professor of Law & Psychiatry, Yale University, New Haven, Conn.
Richard Burr
> Defense Attorney, Houston, Tex.
Kirk Heilbrun, Ph.D.
> Professor, Drexel University, Phil., Pa.
Steven K. Hoge, M.D.
> Director, Columbia-Cornell Forensic Psychiatry Fellowship Program, Clinical Professor,
> Columbia University College of Physicians and Surgeons, New York State Psychiatric Inst.
William F. Klumpp, Jr.,
> Office of Attorney General, St. Paul, Minn.
Steve Leifman
> Judge, Eleventh Judicial Circuit of Florida, Miami, Fl.
Virginia Murphrey
> Chief Public Defender, 10th Judicial Circuit, Anoka, Minn.
Randy Otto, Ph.D.
> Florida Mental Health Institute, Tampa, Fl.

**Liaisons**
Nina Ginsberg
> National Association of Criminal Defense Lawyers
Ron Honberg
> National Alliance on Mental Illness
Gwynn X. Kinsey, Jr.
> Deputy Chief, Capital Case Unit, Department of Justice
A.J. Kramer
> Federal Public Defender, Washington, D.C.
E. Gerry Morris (through February, 2014)
> National Association of Criminal Defense Lawyers