UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>ROBERT T. BROCKMAN,<br><br>  Defendant. | §<br>§<br>§<br>§<br>§     Cr. No. 4:21cr 009 GCH<br>§<br>§<br>§<br>§<br>§<br>§ |

### DECLARATION OF DR. ROBERT DENNEY

I, Dr. Robert L. Denney, declare as follows:

I am a psychologist licensed in the state of Missouri. I obtained a Doctor of Psychology (Psy.D.) from the Forest Institute in 1991. I worked at the U.S. Medical Center for Federal Prisoners as a forensic psychologist and clinical neuropsychologist for over 20 years before I retired from the Bureau of Prisons at the end of December 2011.  In my role at the U.S. Medical Center, I completed approximately 1000 psychological and neuropsychological evaluations for the U.S. District Courts. I have continued forensic consulting since that time and also currently hold a neuropsychology position at the Missouri Memory Center and Neurology & Headache Care Center of Citizens Memorial Hospital, Bolivar, Missouri.

I have taught doctoral level coursework (including neuropsychological assessment related courses) and supervised doctoral student research at the Forest Institute from 1996 until 2015, achieved the faculty rank of Professor by Distinction and was Director of Neuropsychology. I am one of 8 individuals in the world who are board certified in both Forensic Psychology and Clinical Neuropsychology with the American Board of Professional Psychology. I am a Fellow of Division 40 (Clinical Neuropsychology) of the American Psychological Association, Fellow

DECLARATION OF DR. ROBERT DENNEY

and past President (2009) of the National Academy of Neuropsychology, Fellow of the American Academy of Forensic Psychology, Fellow of the American Academy of Clinical Neuropsychology, member of the International Neuropsychology Society, and member of the Missouri Psychological Association.

I have published in the scientific literature on such subjects as neuropsychological evaluation of criminal defendants, malingering, evaluating psychological damages, trauma and violence, ethical issues, and professional licensure.  I am co-editor of *Clinical Neuropsychology in the Criminal Forensic Setting* (2008; Guilford Press), co-author of *Detection of Deception* (2007; *Professional Resource Press), co-author of Ethical Practice in Forensic Psychology: A Guide for Mental Health Professionals* (2006; 2nd Ed., 2020; APA), and co-editor of *Detection of Response Bias in Forensic Neuropsychology* (2002; Haworth Press). I have presented throughout the U.S. on neurolitigation, the application of neuropsychology to criminal forensic matters, neuroanatomy, brain injury, malingering, forensic psychology ethics, and admissibility of scientific evidence.

I am opposed to third party observation of neuropsychological test administration, even in the form of video feed, on empirical grounds.  The available empirical research demonstrates that third party observers (including presence of audio and/or video monitoring) alters the testing session in such a manner that test results may no longer reflect a valid performance of the examinee.

The presence of a third party observer or video camera in the testing room is inconsistent with the requirements for standardized test administration as set forth in the *APA's Ethical Principles of Psychologists and Code of Conduct*[1] in that it creates the potential for distraction

---

[1] American Psychological Association (2002). Ethical principles of psychologists and code of conduct. *American Psychologist, 57* (12), 1060-1073.

and/or interruption of the examination.[2] This risk increases when the observer is an active advocate for the subject, and is accustomed to interrupting ongoing processes by stating their objections or concerns; I have personally experienced and published on the fact that closed circuit video observation during forensic interviewing does not eliminate untoward interruption.[3]

Another issue that relates to the potential influence of the presence of a third party observer is our reliance upon normative data. This issue extends to the use of video camera.[4] Neuropsychological test measures have not been standardized in the presence of such observation. In fact, neuropsychological measures have been standardized under a specific set of highly controlled circumstances that do not include the presence of a third party observer or video camera. The presence of a third party observer or video camera introduces an unknown variable into the testing environment which may prevent the examinee's performance from being compared to established norms and potentially precludes valid interpretation of the test results.[5] Observer effects can be such that performance on more complex tasks decline in the observer's presence, leading to a spuriously magnified picture of neuropsychological deficit.[6]

The sum total of the effect is to create unknown variability and cause the test results to not correspond to the established known error rates for each test. Ultimately the effect makes

---

[2] McSweeny, A. J., Becker, B. C., Naugle, R. I., Snow, W. G., Binder, L. M., & Thompson, L. (1998). Ethical issues related to the presence of third party observers in clinical neuropsychological evaluations. *The Clinical Neuropsychologist, 12,* 552-559.

[3] Denney, R. L. (2005). Gambling, Money Laundering, Competency, Sanity, Neuropathology, and Intrigue. In R. L. Heilbronner (Ed.) *Forensic Neuropsychology Casebook* (pp. 305-325). NY: Guilford.

[4] Constantinou, M., Ashendorf, L., & McCaffrey, R. J. (2005). Effects of a third party observer during neuropsychological assessment: When the observer is a video camera. *Journal of Forensic Neuropsychology, 4,* 39-47.

[5] McCaffrey, R. J., Fisher, J. M., Gold, B. A., & Lynch, J. K. (1996). Presence of third parties during neuropsychological evaluations: Who is evaluating whom? *The Clinical Neuropsychologist, 10,* 435-449.

[6] Ibid. Constantinou, M., Ashendorf, L., & McCaffrey, R. J. (2005). Effects of a third party observer during neuropsychological assessment: When the observer is a video camera. *Journal of Forensic Neuropsychology, 4,* 39-47.

test results unreliable. A relatively recent meta-analysis of third-party observer effects reveals that, overall, test results were significantly poorer when such observation occurred.[7] Clinical decisions based on these "altered" results will not have the same level of scientific certainty as decisions based on results obtained from the test under normal conditions. It is difficult enough to perform neuropsychological assessment within the criminal context without adding increased potential error by including third party recording effects.

Likewise, observation of an examination being conducted for a second opinion may fundamentally alter the test session, in comparison to the initial (unobserved) examination that the patient has already undergone, increasing the risk of motivational effects influencing the testing process. Observer effects can be magnified by the presence of involved parties who have a significant relationship with the patient (e.g. legal representatives or parents who have a stake in the outcome of the examination).[8] In that the presence of third parties or video camera has been reported to have largely an adverse effect on test performance, insistence on third party observation may be seen as a cynical attempt by Defense to maximize the likelihood that deficits, even potentially contrived ones, are observed during testing.

Thus, the presence of a third party observer during formal testing represents a threat to the validity and reliability of the data generated by an examination conducted under these circumstances, and compromises the valid use of normative data in interpreting test scores. Observer effects also extend to situations such as court reporters, attorneys, attorney representatives, viewing from behind one-way mirrors, and electronic means of observation,

---

[7] Eastvold, A. D., Belanger, H. G., & Vanderploeg, R. D. (2012). Does third party observer affect neuropsychological performance? It depends. *The Clinical Neuropsychologist, 26,* 520-541.

[8] Binder, L., & Johnson-Greene, D. (1995). Observer effects on neuropsychological performance: A case report. *The Clinical Neuropsychologist, 9,* 74-78.

such as the presence of a video camera.[9] Electronic recording and other observation also raises test security considerations that are detailed in the National Academy of Neuropsychology's position statement on Test Security.[10]

The weight of accumulated scientific and clinical literature with respect to the issue of third party observers in the forensic examination provides clear support for the official position of the National Academy of Neuropsychology[11] that neuropsychologists should strive to minimize all influences that may compromise accuracy of assessment and should make every effort to exclude observers from the evaluation. This also reflects the opinion of the American Academy of Clinical Neuropsychology.[12] The issue is serious enough that the entire American Psychological Association has published concerns regarding the issue.[13]

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 3rd day of March, 2021.

_____
Robert L. Denney, Psy.D., ABPP

---

[9] McCaffrey, R. J., Fisher, J. M., Gold, B. A., & Lynch, J. K. (1996). Presence of third parties during neuropsychological evaluations: Who is evaluating whom? *The Clinical Neuropsychologist, 10,* 435-449.

[10] National Academy of Neuropsychology Policy & Planning Committee (2000). Test Security: Official Position Statement of the National Academy of Neuropsychology. *Archives of Clinical Neuropsychology, 15*, 383-386.

[11] National Academy of Neuropsychology Policy & Planning Committee (2000). Presence of third party observers during neuropsychological testing: Official statement of the National Academy of Neuropsychology. *Archives of Clinical Neuropsychology, 15*, 379-380.

[12] American Academy of Clinical Neuropsychology (2001). Special Presentation: Policy statement on the presence of third party observers in neuropsychological assessments. *The Clinical Neuropsychologist, 15*, 433-439.

[13] Committee on Psychological Tests and Assessment American Psychological Association (2007). Statement on third party observers in psychological testing and assessment: A framework for decision making. http://www.apa.org/science/programs/testing/third-party-observers.pdf