## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **4:21-CR-009 (GCH)** |
| **v.** | **DECLARATION OF DR. PARK DIETZ** |
| **ROBERT T. BROCKMAN** | **REGARDING ATTORNEY PRESENCE** |
| | **DURING COMPETENCY** |
| **Defendant.** | **EXAMINATION** |

I, Park Dietz, M.D., M.P.H., Ph.D., declare under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.   I am a board-certified psychiatrist specializing in forensic psychiatry.  I make this declaration in response to Defendant's Response to United States' Expert Notice, specifically Defendant's request for the Court's permission to have counsel present during the Government's forensic mental health interviews.  My background and qualifications are summarized in my Declaration of January 22, 2021, in this matter and in the *curriculum vitae* submitted as an exhibit thereto.

2.   I write this declaration for the limited purpose of addressing the presence of defense counsel at court-ordered competency evaluations conducted by government experts.

3.   The concern most commonly expressed by forensic mental health professionals and others, both in private conversations and in professional publications,[1] is the potentially disruptive

---

[1]  American Academy of Psychiatry and the Law (1999).  Videotaping of forensic psychiatric evaluations. *Bulletin of the American Academy of Psychiatry and the Law 27*, 345–358; Wettstein, R. M. (2010). The forensic psychiatric examination and report.  In Simon, R. I., Gold, L. H. (Eds.):  *American Psychiatric Publishing Textbook of Forensic Psychiatry*, 2nd Ed. Washington, D.C.: American Psychiatric Publishing, 2010; Simon, R. I. (1996).  "Three's a crowd": The presence of third parties

(continued...)

and distracting effect of attorney presence, particularly on the establishment of rapport between examiner and examinee.  Some of those setting forth this objection[2] cite *Estelle v. Smith* in which the U.S. Supreme Court noted with approval a lower court's opinion that the presence of an attorney during a forensic psychiatric examination "could contribute little and might seriously disrupt the examination."[3]

4.    An experienced forensic psychiatrist who concluded that the forensic psychiatric examination should be conducted in private whenever possible wrote:

> Objectionable aspects of an attorney's presence during a forensic psychiatric examination may include leading or cuing the examinee, interfering with the free flow of the interview, altering the meaningful connectedness and emergence of psychological associations and information, and disrupting the task-specific rapport needed between examiner and examinee. The findings of the psychiatric examination may be invalid under these circumstances.[4]

5. Similar concerns have been expressed by forensic psychologists studying the issue:

> In addition to affecting the examinee's responses, a third party may affect the flow of information during an assessment. For example, an examinee may be distracted by or defer to the third party; the third party might interrupt the examiner or direct the examinee to refuse to answer certain questions; or the third party may otherwise interfere with the examination.[5]

---

during the forensic psychiatric examination. *Journal of Psychiatry & Law*, 24(1), 3-25; Otto, R. K., & Krauss, D. A. (2009).  Contemplating the presence of third party observers and facilitators in psychological evaluations. *Assessment*, 16(4), 362-372; Bursztajn, H. J., & Brodsky, S. L. (2018).  Forensic mental health practice. In: Butcher, J. N., & Hooley, J. M. (Eds.): *APA Handbook of Psychopathology, Vol. 1: Psychopathology: Understanding, Assessing, and Treating Adult Mental Disorders*.  Washington, D.C.:  American Psychological Association, 751-766.

[2] Wettstein (2010), op. cit.; Simon (1996), op. cit.; Otto & Krauss (2009), op. cit.

[3] *Estelle v. Smith*, 451 US 454, 470 n.14 (1981).

[4] Simon (1996), op. cit.

[5] Otto, & Krauss (2009), op. cit.

6.  Other concerns expressed by forensic psychiatrists and forensic psychologists have also contributed to the preponderance of professional opinion opposing the attendance of defense counsel at competency evaluations:

> Generally, concerns about the presence of third parties during psychological evaluations fall into one of four categories: (a) negative effects on the examinee's responses and participation, (b) interruption of the flow of information from the examinee to the examiner, (c) threats to the validity of conclusions that can be drawn from the evaluation, and (d) threats to the security (and future utility) of psychological assessment techniques and tests.[6]

Concerns about test validity, test norms, test security, and the future utility of tests are of particular concern to those evaluators who use standardized tests with known norms and standard conditions of administration, and both the American Academy of Clinical Neuropsychology and the National Academy of Neuropsychology discourage the presence of third parties during neuropsychological evaluations.[7]

7.  In what may be the only survey of its kind, 160 members of the American-Psychology Law Society completed questionnaires exploring their attitudes and beliefs regarding attorney presence during forensic mental health evaluations.  Of these respondents, 46.6% had allowed defense lawyers to be present during their evaluations and 53.4% had not.  In response to the item, "The presence of third parties during the pre-trial forensic evaluation of a criminal defendant may

---

[6]  Otto & Krauss (2009), op. cit., p. 366.

[7]  American Academy of Clinical Neuropsychology. (2001). Policy statement on the presence of third party observers in neuropsychological assessments. *The Clinical Neuropsychologist*, *15*, 433–439; National Academy of Neuropsychology. (2000). Presence of third party observers during neuropsychological testing: Official statement of the National Academy of Neuropsychology. *Archives of Clinical Neuropsychology*, *15*, 379–380.

interfere with the establishment of rapport between the defendant and the examiner," 90.7% agreed, 3.7% disagreed, and 5.6% neither agreed nor disagree.   In response to the item, "Defendant's attorneys may try to shape or limit a defendant's responses during a criminal forensic evaluation," 84.4% agreed, 11.3% disagreed, and 4.4% neither agreed nor disagreed.   In response to the item, "If pressured to allow third party observers during a pre-trial criminal forensic evaluation, examiners should refuse to conduct the evaluation," 71.3% agreed, 10.6% disagreed, and 18.1% neither agreed nor disagreed.   In response to the item, "Third party presence during criminal forensic evaluations alters the standardization of the forensic evaluation," 76.3% agreed, 6.3% disagreed, and 16.9% neither agreed nor disagreed.[8]

8.   The measure most often proposed as a substitute for attorney presence that nonetheless preserves the ability of defense counsel to take measure of opposing experts, identify any interviewing errors (such as the use of leading, confusing, or ambiguous questions), and prepare for cross-examination is the creation of a verbatim record through electronic recording.   Electronic recording of interviews is not without controversy or opposition, but has been recognized as an acceptable practice in forensic psychiatry.[9]

9.   I have personal experience conducting forensic psychiatric interviews in states favoring or permitting the presence of defense counsel during examinations and in which I was required to permit one or more attorneys to be present.   These experiences have varied between minimally

---

[8]   Shealy, C., Cramer, R. J., & Pirelli, G. (2008). Third party presence during criminal forensic evaluations: Psychologists' opinions, attitudes, and practices. *Professional Psychology: Research and Practice*, *39*(6), 561–569.

[9]   American Academy of Psychiatry and the Law (1999). Videotaping of forensic psychiatric evaluations. *Bulletin of the American Academy of Psychiatry and the Law*, *27*, 345–358.

disruptive and extremely disruptive, and I strongly prefer to conduct examinations without attorneys present.   Since July 1982, when I adopted a personal policy of seeking to videotape my examinations of all criminal defendants, I've come to believe that electronic recording of interviews is an appropriate procedure that best preserves the behavioral evidence, provides all parties the opportunity to spot errors and misunderstandings, and protects both the defendant and the examiner from misrepresentations as to what occurred.[10]   Since adopting this technology, I have opposed the presence of lawyers from either side in the interviewing room during my examinations.  I do not recall any case in which a Federal Court authorized defense counsel to be present in the room during any court-ordered pretrial evaluation I have conducted.  On those occasions when I've been preparing to conduct an examination for the Government and Defense counsel have asked to be in the room, I've proposed creating video and audio recordings as a less disruptive means of preserving a verbatim record of all that transpires during the examination.  To the best of my recollection, that has either been accepted without opposition or the Court has so ordered in nearly every case; the only exceptions I recall are one case in which I am informed that the Court limited me to audio recording and one case in which the defendant would only agree to be interviewed if I did not use any recording devices.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   March 1, 2021
            Newport Beach, California

PARK DIETZ, M.D., M.P.H., PH.D.

---

[10] Pitt, S. E., Spiers, E. M., Dietz, P.E., & Dvoskin, J.A. (1999). Preserving the integrity of the interview: The value of videotape. *Journal of Forensic Sciences*, *44*, 1287-1291.