**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal No. 4:21-cr-00009** |
| | § | |
| **ROBERT T. BROCKMAN** | § | |

**DEFENDANT ROBERT T. BROCKMAN'S MOTION FOR A**
**PRETRIAL CONFERENCE PURSUANT TO**
**THE CLASSIFIED INFORMATION PROCEDURES ACT**

The defense has learned of the probable existence of classified information concerning the government's prosecution of Mr. Brockman including, but not limited to, exculpatory material that the government must disclose pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).  This exculpatory material should be disclosed to the defense "reasonably promptly after it is discovered."  U.S. Dep't of Justice, Justice Manual, § 9-5.001(D)(1).  To address this issue, Mr. Brockman requests that the Court schedule a conference pursuant to Section 2 of the Classified Information Procedures Act ("CIPA"). 18 U.S.C. App. 3 § 2.  The government does not object to the request for a conference.

CIPA § 2 provides:

> At any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution.  Following such motion, or on its own motion, the court shall promptly hold a pretrial conference . . . .  [A]t the pretrial conference, the court may consider any matters which relate to classified information or which may promote a fair and expeditious trial.

18 U.S.C. App. 3 § 2.

Matters involving classified information can often be time-consuming and complex, potentially requiring background checks, security clearances, interagency coordination, use authority, declassification requests, special handling of documents, and substantial litigation. *See, e.g.*, U.S. Dep't of Justice, Justice Manual § 9-90.200; 18 U.S.C. App. 3 § 1 *et. seq*. To avoid unnecessary delay or surprise, the defense promptly raised the classification issues with the government. The prosecution team acknowledged that they were working with DOJ's National Security Division ("NSD") on these issues, thereby implicitly confirming the existence of classified information in this case.[1] Yet to the defense's knowledge, the government has not notified the Court of the existence of the classified information, nor has it provided more than the most perfunctory response to the defense.

Although the defense contends that Mr. Brockman is not presently competent to assist in his own defense—and the Court will conduct a competency hearing in this matter later this year—defense counsel have a professional obligation to nevertheless prepare this case for trial in the event Mr. Brockman is deemed competent. Accordingly, Defendant requests that the Court schedule a hearing pursuant to CIPA § 2 to address the requisite next steps on these important issues.

---

[1] NSD "has primary responsibility to assist all Departmental officials and USAOs on all matters related to national security, including approval of requests for production of preexisting classified information in connection with an anticipated or ongoing criminal prosecution." U.S. Dep't of Justice, Justice Manual § 9-90.200.

A.     **Public Reporting Suggests there Is Classified *Brady* Material in this Case**

On February 3, 2021, Bloomberg News published an extensively-sourced article titled "How Billionaire Robert Smith Avoided Indictment in Multimillion-Dollar Tax Case" ("Bloomberg Article").[2]  Robert Smith is central to the government's investigation and prosecution of Mr. Brockman.  Smith, a multi-billionaire, is the founder and Chief Executive Officer of the private-equity firm Vista Equity Partners ("Vista").  Smith is Individual Two in the indictment in this case.  *See* Indictment ¶¶ 8, 34, 36, 57, 94, ECF No. 2.  Vista, together with one of its funds, Vista Equity Fund II, are referenced more than 90 times in the indictment.  *See* Indictment, ECF No. 2.  Defense counsel understands that the government's investigation and prosecution of Mr. Brockman directly flowed from its investigation of Smith.[3]

DOJ's investigation of Smith concerned his involvement "from 2000 through 2015 in an illegal scheme to conceal income and evade millions in taxes by using an offshore trust structure and offshore bank accounts."[4]  The Bloomberg Article described "[a] schism between tax prosecutors and national security officials" concerning the government's case against Smith.[5]  The national security officials reportedly objected to any indictment of

---

[2] N. Weinberg and D. Voreacos, Bloomberg, *How Billionaire Robert Smith Avoided Indictment in Multimillion-Dollar Tax Case*, Feb. 3, 2021, *available at* https://www.bloomberg.com/news/features/2021-02-03/how-billionaire-robert-smith-avoided-indictment-in-multimillion-dollar-tax-case.  Ex. A to the Declaration of James P. Loonam (hereinafter "Loonam Decl.").  The article is "based on interviews with a dozen people involved in the negotiations or briefed on them."  *Id.* at 1.  Indeed, the Bloomberg reporters state that they were given access to at least one email on this matter from then-Acting-Assistant Attorney General of the Tax Division, Richard Zuckerman, to Smith's lawyers.  *Id.* at 2, 3.

[3] *Id.* at 5-6.

[4] Loonam Decl. Ex. B at 1.

[5] Loonam Decl. Ex. A at 2.

Smith because of his "connection to a national security matter."[6]  The matter was deemed sufficiently important to require the intervention of then-Assistant Attorney General for NSD, John Demers, and ultimately then-Attorney General William Barr.[7]  The article describes how Smith's lawyers were given direct access to DOJ leadership, including then-Attorney General Barr (who, as the article noted, "worked before going to the Justice Department" at one of the law firms representing Smith in the criminal investigation, the firm which "Vista had long counted on . . . as its main legal advisor").[8]

According to the Bloomberg Article, then-Attorney General Barr "intervened to settle the dispute," directing the Tax Division to enter into a non-prosecution agreement with Smith on the condition that Smith "cooperate against Brockman and pay a hefty penalty."[9]  According to the Bloomberg Article, "[l]ate in the game, facing an imminent indictment, Smith agreed to cooperate against Brockman" and thereby secured his "stay-out-of-jail card."[10]  Smith received a non-prosecution agreement from DOJ and he remains a control person at Vista's SEC-registered investment adviser, despite admitting to having committed more than $40 million in tax fraud over a decade.[11]

This information is significant for the instant case.  Both (a) the information concerning Smith's dealings with the intelligence community, and (b) the internal DOJ

---

[6] *Id.* at 2-5.

[7] *Id*. at 3.

[8] *Id*. at 1, 3.

[9] *Id*. at 2, 3.

[10] *Id*. at 2.

[11] Loonam Decl. Ex. B at 1; Ex. C at 1.

communications concerning the resolution of Smith's case, are exculpatory material for Mr. Brockman.  Based on the Bloomberg Article, it appears the intelligence community had a motive to protect Smith and his involvement in a national security matter.  The means to offer this protection was to shift culpability from Smith to Mr. Brockman, which former Attorney General Barr facilitated by agreeing to offer his former-firm's client, Smith, a non-prosecution agreement in exchange for Smith's "cooperation" against Mr. Brockman.[12]  In addition, the classified material may contain statements by Smith that are inconsistent with the government's theory or evidence.  Thus, the documents and communications described in the Bloomberg Article trigger the government's *Brady* obligations.  Moreover, the active involvement of NSD in the resolution of Smith's tax case, and Smith's reported involvement in a national security matter, provide a reliable basis to believe that there is discovery material in the files of the U.S. intelligence community.

## B.    The Government's Response to Date

On February 9, 2021, the defense notified the government of the potential existence of classified material in this case.  After explaining the nature of the material, the defense wrote the government the following:

> We ask you to confirm that you have, or will, take all steps necessary to gather and preserve (1) all communications and notes of communications between Smith's lawyers and DOJ, including, but not limited to, the files (electronic and hardcopy) of former Attorney General Barr, former Assistant Attorney General Zuckerman and former Assistant Attorney General Demers; and (2) all internal DOJ communications and notes of communications regarding Smith's case, including, but not limited to, files (electronic and

---

[12] Loonam Decl. Ex. A at 2.

hardcopy) of NSD personnel and DOJ's front office . . . .  We ask you to confirm that you have conducted, or will conduct, a search of the intelligence community's files for such material.  We further request that you have, or will, take all steps necessary to collect and preserve all communications and notes of communications between Smith or his lawyers and Smith's contacts in the intelligence community regarding Mr. Brockman, Vista Equity Partners, and any other subject matter related to DOJ's tax investigation.

We believe the government must review these files and disclose all discoverable information contained therein to comply with the government's various discovery obligations under the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Jenks Act, 18 U.S.C. § 3500.  Please promptly notify us if you disagree.  We recognize that much of this material may be classified.  Please note that members of Mr. Brockman's defense team have previously held TS-SCI clearances.  In addition, we should discuss dates to schedule a CIPA § 2 conference in this matter.  *See* 18 U.S.C. App. 3, § 2.

Loonam Decl. Ex. D at 2-3.

In its response the following day, February 10, 2021, the government characterized its obligations as arising under *Giglio*, rather than *Brady*, noted that it was working with NSD on the issue, and said without explanation that "some of the information in the article you attached to your letter is not accurate."  Loonam Decl. Ex. E at 1.

By letter dated February 25, 2021, the defense responded to make clear that the classified information was *Brady* material in addition to *Giglio* material.  Loonam Decl. Ex. F at 2.  As set out in that letter, the defense explained that pursuant to recent case law, the trial team, not NSD, was required to review the classified information regarding Smith's dealings with the intelligence community.  *See, e.g., United States v. Stillwell*, 986 F.3d 196 (2d Cir. 2021) (finding the Narcotic and Dangerous Drug Section could not relieve the U.S. Attorney's Office for the Southern District of New York of its *Brady* obligations); *United States v. Nejad*, 487 F. Supp. 3d 206, 2020 WL 5549931, at *5-6

(S.D.N.Y. Sept. 16, 2020) (vacating convictions after trial after myriad disclosure violations including government's failure to review and disclose classified files).   The defense summarized:

> We seek to resolve these disclosure issues well in advance of trial and avoid the unfortunate missteps that have occurred in other recent white-collar cases. *See, e.g., United States  v. Nejad*, --- F.Supp.3d ---- , 2021 WL 681427, *4 (S.D.N.Y. Feb 22, 2021) (prosecutors purportedly failed to recognize exculpatory nature of document disclosed midtrial); *see also United States v. Fisher*, 106 F.3d 622, 634-35 (5th Cir. 1997) (*Brady* violation where government failed to disclose interview with individual not called as a witness that undermined the credibility of a key government witness) (abrogated on other grounds); B. Green and E. Yaroshefsky, *Prosecutorial Accountability 2.0*, 92 NOTRE DAME L. REV. 51 (2016).  To this end, we request that the government respond to our outstanding specific questions so we may discern and narrow the issues that require the Court's attention.

Loonam Decl. Ex. F at 3.

The government perfunctorily responded by email that same day with a boilerplate statement that "to the extent that any material is discoverable it will be provided in accordance with applicable Department of Justice policy and procedures."  Loonam Decl. Ex. G at 1.

In the ensuing two months, the government has seemingly ignored its obligations to address the potential presence of classified information in this case:  the government has not disclosed the exculpatory information and has taken no steps to obtain security clearances for defense counsel to view the exculpatory information, nor to our knowledge has the government notified the Court of the existence of the classified information. Loonam Decl. ¶ 9.

The government cannot ignore its current obligations by contending that the materials may be subject to *Giglio* rather than *Brady*.  Moreover, the government cannot dispute that it has an affirmative obligation to disclose impeachment material for Smith if at trial the government intends to either (a) call Smith as a witness, or (b) attempt to admit any of Smith's out-of-court statements through another witness or exhibit.  *See Giglio v. United States*, 405 U.S. 150 (1972); Fed. R. Evid. 806.  To meet this obligation, the existence of classified impeachment material must be addressed promptly, as the need to handle classified material for *Giglio* compliance equally implicates the same time-consuming and complex requirements as the disclosure of *Brady* material.

The government's own guidance succinctly summarizes the government's obligations to this Court and to the defense:

> Assuming that the IC [intelligence community] had no active involvement in the criminal investigation, when must the IC files nevertheless be included in a prosecutor's discovery search?  The question, stated more broadly, is, in addition to the agencies immediately involved in a criminal case, what is the required scope of a prosecutor's search for discoverable material? . . . .
>
> The relevant factors for answering that query are:
> 1. whether the prosecutor has direct or reliable knowledge of potential *Brady* and/or other discovery material in the possession of the IC; or
> 2. assuming no such knowledge by the prosecutor, whether there nevertheless exists any reliable indication suggesting that the IC possesses evidence that meets the *Brady* case law standard of materiality.
>
> A positive answer to either of these questions means that the prosecutor "needs to know" and must conduct a suitable search of the IC files.[13]

---

[13]   U.S. Dep't of Justice, Criminal Resource Manual § 2052(B)(2), *available at* https://www.justice.gov/archives/jm/criminal-resource-manual-2052-contacts-intelligence-community-regarding-criminal-investigations.

In this case, the Bloomberg Article makes plain that the intelligence community played an active role through NSD by securing a non-prosecution agreement for Smith on the condition that Smith cooperate against Mr. Brockman.  The import of this must be addressed promptly by the government.

## CONCLUSION

Mr. Brockman requests the Court schedule a conference pursuant to CIPA § 2 to address the discovery schedule for any classified material involved in this case.  *See* 18 U.S.C. App. 3 § 2.  The government does not object to the request for a conference.

Dated:  April 27, 2021

/s/Jason S. Varnado
Jason S. Varnado
Texas Bar No. 24034722
SDTX Ad. ID No. 32166
Email:  jvarnado@jonesday.com
David S. Smith
Texas Bar No. 24117073
SDTX Ad. ID No. 3398393
Email: dssmith@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone:  832-239-3939
Facsimile:  832-239-3600

Kathryn Keneally (*Admitted Pro Hac Vice*)
New York Bar No. 1866250
Email:  kkeneally@jonesday.com
James P. Loonam (*Admitted Pro Hac Vice*)
New York Bar No. 4035275
Email:  jloonam@jonesday.com
Georgina N. Druce (Admitted Pro Hac Vice)
New York Bar No. 5267208
Email:gdruce@jonesday.com
JONES DAY
250 Vesey Street

New York, NY  10281-1047
Telephone:  212-326-3939
Facsimile:  212-755-7306

Conor G. Maloney (*Admitted Pro Hac Vice*)
District of Columbia Bar No. 1632584
Email: cmaloney@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: 202-879-3450
Facsimile: 202-626-1700

*Attorneys for Defendant*
*Robert T. Brockman*

**CERTIFICATE OF CONFERENCE**

I certify that on this 27th day of April, 2021, I conferred with counsel for the United States regarding the relief sought in this motion.  Counsel indicated that the United States is unopposed to  the request for a conference pursuant to CIPA § 2.

*/s/ Jason S. Varnado*
Jason S. Varnado

**CERTIFICATE OF SERVICE**

I certify that on this 27th day of April, 2021, this document was served by electronic filing service on all counsel of record.

*/s/ Jason S. Varnado*
Jason S. Varnado