# EXHIBIT D

# JONES DAY

250 VESEY STREET • NEW YORK, NEW YORK 10281.1047

TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

Direct Number: (212) 326-3808
jloonam@jonesday.com

JP024329                                       February 9, 2021

VIA E-MAIL COREY.SMITH@USDOJ.GOV

Corey J. Smith
Senior Litigation Counsel
Tax Division
U.S. Department of Justice
150 M Street N.E., Room 2.208
Washington DC 20004

Re:   United States v. Brockman, Criminal No. 4:21-cr-009 (GCH)

Dear Mr. Smith:

We read with interest the recent Bloomberg article titled "How Billionaire Robert Smith Avoided Indictment in Multimillion-Dollar Tax Case."[1] The article is an "account of what went on behind the scenes leading up to the [government's] non-prosecution agreement" with Robert Smith.[2] The article is "based on interviews with a dozen people involved in the negotiations or briefed on them."[3] Indeed, the Bloomberg reporters were given access to at least one email on this matter from Acting-Assistant Attorney General Richard Zuckerman to Smith's lawyers at Kirkland & Ellis.[4] The article raises several important issues regarding the government's case against Mr. Brockman.[5]

The article describes "[a] schism between tax prosecutors and national security officials"[6] concerning the government's case against Robert Smith. The national security officials

---

[1] N. Weinberg and D. Voreacos, Bloomberg, *How Billionaire Robert Smith Avoided Indictment in Multimillion-Dollar Tax Case*, Feb. 3, 2021 available at https://www.bloomberg.com/news/features/2021-02-03/how-billionaire-robert-smith-avoided-indictment-in-multimillion-dollar-tax-case.  Attached as Exhibit A.

[2] *Id.* at 1.

[3] *Id*. at 1.

[4] *Id*. at 3 ("[O]n July 21, Zuckerman reached out to Filip to set up a conference call, saying the Justice Department's tax division 'will not be presenting the indictment of Mr. Smith to a grand jury at this time,' according to an email reviewed by Bloomberg.").

[5] This letter supplements our previous discovery letter to the government, dated November 11, 2020.  *See* Letter from Neal Stephens to Michael Pittman, dated November 11, 2020, attached as Exhibit B.

[6] Ex. A at 2.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MOSCOW • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

**February 9, 2021**
Page 2

reportedly objected to any indictment of Smith because of his "connection to a national security matter."[7]  The matter was deemed sufficiently important to require the intervention of then-Assistant Attorney General for the National Security Division ("NSD"), John Demers, and ultimately then-Attorney General Bill Barr.[8]  The article describes how Smith's lawyers were given direct access to DOJ leadership, including then-Attorney General Barr.  According to the article, then-Attorney General Barr "intervened to settle the dispute" directing the Tax Division to enter into a non-prosecution agreement with Smith on the condition that Smith "cooperate against Brockman and pay a hefty penalty."[9]  According to the article, "[l]ate in the game, facing imminent indictment, Smith agreed to cooperate against Brockman" and thereby secured his "stay-out-of-jail-card."[10]

Smith and his private equity fund, Vista Equity Partners, are central to the government's case against Mr. Brockman and accordingly, of critical importance to any defense.  Of course, the government has an affirmative obligation to disclose impeachment material for Smith if at trial the government intends to either (a) call Smith as a witness, or (b) attempt to admit any of Smith's out-of-court statements through another witness or exhibit.  *See Giglio v. United States*, 405 U.S. 150 (1972); Fed. R. Evid. 806.  In addition, the government's extensive efforts to shield Smith from prosecution to keep a national security matter "under wraps" via Smith's "cooperation" against Mr. Brockman constitutes *Brady* material.

We ask you to confirm that you have, or will, take all steps necessary to gather and preserve: (1) all communications and notes of communications between Smith's lawyers and DOJ, including, but not limited to, the files (electronic and hardcopy) of former Attorney-General Barr, former Assistant Attorney General Zuckerman and former Assistant Attorney General Demers; and (2) all internal DOJ communications and notes of communications regarding Smith's case, including, but not limited to, files (electronic and hardcopy) of NSD personnel and DOJ's front office.  In addition, the active involvement of NSD in the resolution of Smith's tax case, and Smith's reported involvement in a national security matter, provide a reliable basis to believe that there is discovery material in the files of the U.S. intelligence community.[11]  We ask you to confirm that you have conducted, or will conduct, a search of the

---

[7] *Id.* at 2-5.

[8] *Id*. at 3.

[9] *Id*. at 2, 3.

[10] *Id*.at 2.

[11] Per DOJ guidance and applicable case law:

Assuming that the IC [intelligence community] had no active involvement in the criminal investigation, when must the IC files nevertheless be included in a prosecutor's discovery search?  The question, stated more broadly, is, in addition to the agencies immediately

JONES DAY

**February 9, 2021**
Page 3

intelligence community's files for such material.  We further request that you have, or will, take all steps necessary to collect and preserve all communications and notes of communications between Smith or his lawyers and Smith's contacts in the intelligence community regarding Mr. Brockman, Vista Equity Partners, and any other subject matter related to DOJ's tax investigation.

We believe the government must review these files and disclose all discoverable information contained therein to comply with the government's various discovery obligations under the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Jenks Act, 18 U.S.C. § 3500.  Please promptly notify us if you disagree.  We recognize that much of this material may be classified.  Please note that members of Mr. Brockman's defense team have previously held TS-SCI clearances.  In addition, we should discuss dates to schedule a CIPA § 2 conference in this matter.  *See* 18 U.S.C. App.3, § 2.[12]

Very truly yours,

James P. Loonam

---

involved in a criminal case, what is the required scope of a prosecutor's search for discoverable material? ....

…The relevant factors for answering that query are: (1) whether the prosecutor has direct or reliable knowledge of potential *Brady* and/or other discovery material in the possession of the IC; (2) or assuming no such knowledge by the prosecutor, whether there nevertheless exists any reliable indication suggesting that the IC possesses evidence that meets the *Brady* case law standard of materiality.

A positive answer to either of these questions means that the prosecutor "needs to know" and must conduct a suitable search of the IC files.

DOJ, Criminal Resource Manual § 2052, available at https://www.justice.gov/archives/jm/criminal-resource-manual-2052-contacts-intelligence-community-regarding-criminal-investigations.  In this case, the Bloomberg article makes plain that the intelligence community played an active role through NSD by securing a non-prosecution agreement for Smith on the condition that Smith cooperate against Mr. Brockman.

[12] Section 2 of CIPA provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution." 18 U.S.C. App. 3, § 2.  After such a motion is filed, Section 2 states that the district court "shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by Section 5 of [CIPA], and the initiation of the procedure established by Section 6 of [CIPA]." *Id.*