# EXHIBIT F

# JONES DAY

250 VESEY STREET • NEW YORK, NEW YORK 10281.1047

TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

DIRECT NUMBER: (212) 326-3808
JLOONAM@JONESDAY.COM

JP024329                              February 25, 2021

VIA E-MAIL COREY.SMITH@USDOJ.GOV

Corey J. Smith
Senior Litigation Counsel
Tax Division
U.S. Department of Justice
150 M Street N.E., Room 2.208
Washington DC 20004

      Re:  United States v. Brockman, Criminal No. 4:21-cr-009 (GCH)

Dear Mr. Smith:

  We write in response to your email of February 10, 2021, which responded to our letter dated February 9, 2021, regarding the recent Bloomberg article titled "How Billionaire Robert Smith Avoided Indictment in Multimillion-Dollar Tax Case."[1]

  As detailed in our February 9 letter, the Bloomberg article raises important issues that directly bear on the government's case against Mr. Brockman.  These issues include discovery of classified information, which based on experience, can take substantial time to resolve.

  In the spirit of attempting to resolve these issues, or at least raise these issues for timely resolution by the Court, we previously wrote to make explicit two separate sources of the government's disclosure obligations, and the steps required by law to meet those obligations: (1) "the government's extensive efforts to shield Smith from prosecution to keep a national security matter 'under wraps' via Smith's 'cooperation' against Mr. Brockman constitutes *Brady* material," and (2) "the government has an affirmative obligation to disclose impeachment material for Smith if at trial the government intends to either (a) call Smith as a witness, or (b) attempt to admit any of Smith's out-of-court statements through another witness or exhibit."[2]

  Rather than respond to our specific questions, you instead provided the following inadequate response the day after receiving our letter:

  [1] N. Weinberg and D. Voreacos, Bloomberg, *How Billionaire Robert Smith Avoided Indictment in Multimillion-Dollar Tax Case*, Feb. 3, 2021 *available at* https://www.bloomberg.com/news/features/2021-02-03/how-billionaire-robert-smith-avoided-indictment-in-multimillion-dollar-tax-case ("Bloomberg Article").

  [2] Letter from James P. Loonam to Corey J. Smith at 2, dated February 9, 2021.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MOSCOW • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Corey J. Smith
February 25, 2021
Page 2

> We are in receipt of your letter, and are aware of our *Giglio* obligations
> with regarding to Mr. Smith.  We are working with NSD to take the
> appropriate actions.  One note, however, some of the information in the
> article you attached to your letter is not accurate.[3]

Your response is concerning.  You state that you are aware of the government's *Giglio*
obligations regarding Mr. Smith, but fail to address the government's *Brady* obligations.  You
state that you are working with NSD to "take the appropriate actions" but you do not provide any
indication as to the nature of the actions you have deemed "appropriate."  You have not
confirmed that you, or another member of the trial team, has reviewed the classified material, or
will do so, to make the disclosure determinations required by law.  You have not even confirmed
that steps have been taken to preserve the relevant communications.  This is unacceptable.

Both (a) the classified information concerning Mr. Smith's dealings with the intelligence
community, and (b) the internal DOJ communications concerning the resolution of Mr. Smith's
case, are exculpatory material for Mr. Brockman.  Based on the Bloomberg article, it appears the
intelligence community had a motive to protect Mr. Smith and his involvement in a national
security matter.[4]  The means to offer this protection was to shift culpability from Mr. Smith to
Mr. Brockman, which former Attorney General William Barr facilitated by agreeing to offer
Mr. Smith a non-prosecution agreement in exchange for Mr. Smith's "cooperation" against
Mr. Brockman.[5]  In addition, the classified material may contain statements by Mr. Smith that
are inconsistent with the government's theory or evidence.  Thus, contrary to the suggestion in
your February 10 email, the documents and communications described in the Bloomberg article
implicate not only the government's *Giglio* obligations, but *Brady* obligations as well.  Any
*Brady* material must be produced "reasonably promptly."  *See, e.g.*, DOJ Justice Manual § 9-
5.001 (2020).  We recognize that the issues around disclosure of classified information may take
substantial time to work through.  In other words, this cannot wait until after the competency
hearing.

Moreover, we believe that you and the trial team, not NSD, are required to review the
classified information regarding Mr. Smith's dealings with the intelligence community.  The
Second Circuit recently addressed this issue in *United States v. Stillwell*.  986 F.3d 196 (2d Cir.
2021).  In that case, the Narcotic and Dangerous Drug Section ("NDDS") of DOJ obtained a
sealed *ex parte* protective order, which barred prosecutors in the U.S. Attorney's Office for the
Southern District of New York ("SDNY") and defense counsel from reviewing certain classified

---

[3] Email from Corey J. Smith to James P. Loonam, dated February 10, 2021.

[4] *See* Bloomberg Article at 2-5.

[5] *See id*. at 2-3.

JONES DAY

Corey J. Smith
February 25, 2021
Page 3

documents related to a criminal case prosecuted by SDNY.  *See id*. at 198-99.  The defendant
was convicted at trial.  On appeal, the Second Circuit "vacated the District Court's protective
order" and ordered "disclosure of the materials, first to the U.S. Attorney for the Southern
District of New York and then to defense counsel, consistent with the prosecution's obligations
under *Brady v. Maryland*, 373 U.S. 83, 82 S. Ct. 1194 10 L.Ed.2d 215 (1963) and *Giglio v.
United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and related authorities."  *Id.* at
at 197-99.  The Court remanded the case for further proceedings to determine whether the
defendant's trial conviction should be vacated.  *See id*. at 201-02.

NDDS could not relieve SDNY of its *Brady* obligations in *Stillwell*, and NSD cannot
relieve the Tax Division of its obligations in this case.  *See also United States v. Nejad*, ---
F.Supp.3d ---- , 2020 WL 5549931, at *5-6 (S.D.N.Y. Sept. 16, 2020) (vacating convictions after
trial after myriad disclosure violations including government's failure to review and disclose
classified files).  As we stated in our February 9 letter, the trial team must review Mr. Smith's
classified files and disclose all discoverable information contained therein to comply with the
government's various discovery obligations under the Federal Rules of Criminal Procedure,
*Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the
Jenks Act, 18 U.S.C. § 3500.  Please promptly notify us if you disagree.

We seek to resolve these disclosure issues well in advance of trial and avoid the
unfortunate missteps that have occurred in other recent white-collar cases.  *See e.g.*, *United
States v. Nejad*, 2021 WL 681427, *4 (S.D.N.Y. Feb. 22, 2021) (prosecutors purportedly failed
to recognize exculpatory nature of document disclosed midtrial); *see also United States v.
Fisher*, 106 F.3d 622, 634-35 (5th Cir. 1997) (*Brady* violation where government failed to
disclose interview with individual not called as a witness that undermined the credibility of a key
government witness) (abrogated on other grounds); B. Green and E. Yaroshefsky, *Prosecutorial
Accountability 2.0*, 92 NOTRE DAME L. REV. 51 (2016).  To this end, we request that the
government respond to our outstanding specific questions so we may discern and narrow the
issues that require the Court's attention.

Very truly yours,

James P. Loonam