1            IN THE UNITED STATES DISTRICT COURT

2           FOR THE SOUTHERN DISTRICT OF TEXAS

3                    HOUSTON DIVISION

4   UNITED STATES OF AMERICA      §    CASE NO. 4:21-CR-9
                                  §    HOUSTON, TEXAS
5   VERSUS                        §    MONDAY,
                                  §    MAY 10, 2021
6   ROBERT T. BROCKMAN            §    11:55 A.M. TO 12:26 P.M.

7

                    STATUS CONFERENCE (VIA ZOOM)
8
            BEFORE THE HONORABLE GEORGE C. HANKS
9                UNITED STATES DISTRICT JUDGE

10

11

12     APPEARANCES:                    SEE NEXT PAGE

13     ELECTRONIC RECORDING OFFICER: OLIVIER L.

14

15

16

17

18

19

20               TRANSCRIPTION SERVICE BY:

21          JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                 935 Eldridge Road, #144
22                Sugar Land, TX 77478
                     281-277-5325
23            www.judicialtranscribers.com

24
       Proceedings recorded by electronic sound recording;
25        transcript produced by transcription service.

1                    <u>APPEARANCES (VIA ZOOM)</u>:

2

3  FOR THE PLAINTIFF:          US DEPARTMENT OF JUSTICE
                               Corey J. Smith, Esq.
4                              Tax Division
                               150 M Street NE, Room 2208
5                              Washington, DC  20002
                               202-514-9623
6

7

8  FOR THE DEFENDANT:          JONES DAY
                               Jason S. Varnado, Esq.
9                              717 Texas, Ste. 3300
                               Houston, TX  77002
10                             832-239-3694

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      HOUSTON, TEXAS; MONDAY, MAY 10, 2021; 11:55 A.M.

2           THE COURT:  Good morning, everyone.  The case

3    before the Court is Cause No. 4:21-CR-9-1, the United States

4    of America versus Robert T. Brockman.

5           Can counsel on the line just introduce themselves

6    to the Court and state the party they represent, starting

7    with the Government?

8           MR. SMITH:  Good afternoon, Your Honor.  It's

9    Corey Smith on behalf of the United States.  I've got to

10   apologize.  Apparently my video has frozen (glitch in the

11   audio) --

12          THE COURT:  Not a problem, okay.

13          MR. VARNADO:  Good morning, Your Honor.  This is

14   Jason Varnado on behalf of Mr. Brockman, and I am joined by

15   my colleagues, Kathryn Keneally and James Loonam, and then

16   Mr. Brockman is also on the line, I believe you can see him

17   on camera there also.

18          THE COURT:  Yes, welcome, Mr. Brockman.

19          DEFENDANT BROCKMAN:  Thank you.

20          THE COURT:  Okay.  Anyone else want to introduce

21   themselves that will be speaking?  I see there's a lot of

22   folks on the line.  Anyone else that will be speaking?

23      (No audible response.)

24          THE COURT:  Okay.  Well, welcome to the status

25   conference.  There are several things that I wanted to talk

1    to the parties about.  The first thing -- well, you guys

2    have some issues, I have some issues, as well, but first

3    thing I wanted to -- there you are, Mr. Smith.  You just

4    popped up.  Can you hear me?

5              MR. SMITH:  Yes, Your Honor.  I hear you fine.

6              THE COURT:  Okay.  It looks like -- yes, you are

7    -- you are there (glitch in the audio) A.

8              First thing I wanted to talk to the parties was

9    the issue of disclosure of the classified information based

10   on the Bloomberg article.  I mean, I've got two basic

11   questions on that and then the parties are having issues of

12   the parties.

13             First, does the information exist?  I mean, it's

14   -- this is in a Bloomberg article.  I mean, they don't

15   really say what the information whether it exists or not, so

16   the question is:  (a) Does the information exist?  And (b)

17   if it does exist, is it exculpatory?

18             That seems like the two questions I need to answer

19   from the get-go before I can even address the parties'

20   concerns in this regard.

21             So would anyone like to begin?

22             MR. VARNADO:  Yes.  This is Jason Varnado for

23   Mr. Brockman.  We've obviously, you know, made the motions.

24   I'll be first and then let Mr. Smith follow up.

25             I mean, we believe this information exists, Your

1  Honor, based on public reforming, as well as unclassified

2  communications with the Government.  We put that in our

3  motion and again, as stated in our motion, which is Document

4  No. 52, according to the public reporting, you know, the

5  case against Mr. Brockman is seemingly derived from a case

6  that began against Mr. Robert Schmidt and then ultimately,

7  you know, Mr. Schmidt was allowed to get a non-prosecution

8  agreement as long as he cooperated against Mr. Brockman and

9  we think that there are, indeed -- at least a possibility of

10  exculpatory communications and information there.

11        All we're asking for right now, Judge, is just a

12  hearing under CIPA Section 2, nothing more at this stage,

13  just to simply have that hearing while we're waiting to hear

14  back from the Government why they would oppose.  Just having

15  the discussion, which would be -- address probably some of

16  the Court's concerns, as well as the process forward.

17        THE COURT:  Okay.  From the Government at this

18  point?

19        MR. SMITH:  Well, the entire motion, Your Honor,

20  is based on a newspaper article.  I think this entire

21  section is entirely based on speculation and we are

22  preparing a response and that would be filed today or

23  tomorrow.  If there is classified information, I'm not

24  authorized to discuss it in open court.

25        And if it is -- if it does exist and if it's

1  classified -- and I'm not admitting or denying its existence

2  -- it's not something that we can talk about openly.

3        And -- but with that said, the entire motion the

4  defense filed is based on a newspaper article from <u>Bloomberg</u>

5  <u>News</u>, we're not aware of any other support for that motion

6  and at some point we will address it, but I think we need to

7  address it in the proper way under CIPA.

8        And addressing it in open court in open filings on

9  the docket is not the proper way to discuss this issue.

10        MR. VARNADO:  Your Honor, I'd like to just

11  briefly?

12        THE COURT:  Well, sure, no problem, but I think

13  we're just addressing, you know, concern in the process, he

14  then wants to discuss it on the Record right now.  I mean,

15  basically what we're doing is saying, hey, we think it's out

16  there.  We think it's exculpatory.  Let's get the ball

17  rolling.  I'm requesting a CIPA hearing and then,

18  Government, your job is -- I'm saying, Government, it's your

19  job, but I'm telling you guys this is what we need to do:

20  Figure out, one, does the information exist?  Is it just

21  from -- I mean, right now we've got a <u>Bloomberg</u> article and

22  some circumstantial evidence that would support the fact

23  that the information is doubly good, but there's nothing --

24  you know, there's no way to confirm that yet.

25        So what the Government needs to do is, first,

1    figure out is there approximate information, yes or no, as

2    stated in the Bloomberg article and then once that question

3    is decided, then is it exculpatory?  And then be prepared

4    for the CIPA hearing so we can talk about -- you know, solve

5    what we're talking about.

6           We really can't have a CIPA hearing until the

7    Government does two things:  One, does the information exist

8    as described by the Bloomberg article, and then two, is it

9    exculpatory?  Once the Government gets that information,

10   then we can have a meaningful hearing; otherwise, we're just

11   kind of, you know, shooting in the wind basically.  I don't

12   know what's out there.

13          So I think that we do need definitely to have the

14   hearing, but what the Government needs to do before the

15   hearing is answer those two questions.

16          And Mr. Varnado, I didn't mean to interrupt, but I

17   just wanted to jump in there because it just made sense to

18   say that as fact one.

19          MR. VARNADO:  I don't have concern.  I apologize

20   if I spoke over you, it's just the nature of the Zoom call.

21          And I would just -- a couple of things.  You know,

22   we put in our amended certificate of conference at the

23   Government's request, which I'd refer the Court to Docket

24   No. 55, which said, you know, the Government does (glitch in

25   the audio) conference until it's determined that counsel

1  possesses appropriate security clearance, sort of implying

2  that there is, in fact, classified information.

3         And again, all we're asking for at this stage is

4  the conference, not -- you know, just to have the discussion

5  as you pointed out.  Then lastly, I would just note that,

6  you know, it's not prohibited just to talk about whether the

7  classified information exists.  I mean, the Government does

8  that all the time and it's a very public discussion about

9  that in the (indiscernible) case, so not everything -- you

10 know, we can have a discussion about this without actually

11 talking about the classified information itself, as you

12 indicated.

13        THE COURT:  And Mr. Smith, I think I'll let you

14 speak, but I think the next step is Government needs to

15 figure out what's there, is it exculpatory, and let's set it

16 up for a hearing.

17        I've got, you know, classified -- I've got

18 clearance, I've got a law clerk that's gone through the

19 process in other cases, so that law clerk is classified

20 through top secret information.  I also have this one court

21 reporter that has also got security clearance, as well.

22        So we can get this done.  I just need to get the

23 ball rolling.

24        MR. SMITH:  Yes, Your Honor.  I understand.

25        I am somewhat in a -- with all due respect to

1 Mr. Varnado, in certain situations, there is existence of

2 some information in itself is classified and not proper to

3 discuss.

4            THE COURT:  Sure.

5            MR. SMITH:  Do you understand what at -- I'm

6 sorry.

7            THE COURT:  Oh, no.  I said, "Sure."  Definitely.

8 I mean, I'm with you on that.  I mean, you know, you don't

9 want to run into a situation where you discuss what

10 information you might have which might disclose the way that

11 information was obtained and that can cause problems.

12            So that's why I proposed, let's, you know, do it

13 -- follow the procedures as is set forward.  Again,

14 Government, figure out what's going on, figure out if it's

15 exculpatory, set the hearing, make sure everybody has got

16 the right clearances to discuss the information, and then --

17 and I want you guys to cooperate to make sure that everybody

18 is comfortable with the hearing, and let's go forward.

19            MR. SMITH:  And we are preparing written responses

20 to the motion, which I think would be very informative and

21 some of these responses may or may not be sealed.  In the

22 meantime --

23            THE COURT:  We can seal everything.  That's not a

24 problem.  If you wish to have this matter sealed, we can do

25 that.

1          MR. SMITH:  That may be where we go, Your Honor.

2     I'm -- and Judge, I'm in between a rock and a hard place

3     because I'm limited to what I can admit or deny -- admit or

4     deny what exists and what doesn't exist because, as I said,

5     in some situations -- I'm not saying that it's this

6     situation -- the very existence of some information is

7     itself classified.

8          But I hear what Your Honor is saying and what I

9     want to respond is since that newspaper article came out,

10    we, at the Government, we have not been twiddling our

11    thumbs.  So we are doing what the Court suggests that we do.

12    We've been doing it.  We were very concerned about a public

13    disclosure in a news article about classified information

14    that we did not know was coming.

15         And so since that article appeared, things have

16    been happening behind the scenes and very shortly, we're

17    going to bring all of this to the Court's attention.

18         THE COURT:  Great.  So the bottom line again, I

19    want you guys to get together and figure out the appropriate

20    forum to address all of this in.  I mean, the proper

21    hearing, I think a CIPA hearing is the way to go.  But I

22    want you guys to work out the details, request a hearing,

23    and I'll take it from there.

24         MR. VARNADO:  Thank you, Judge.  That's what we

25    wanted to just get the ball rolling and begin getting our

1  clearances (indiscernible) have been previously, but

2  hopefully it won't be a lengthy process, but that's the

3  reason we raised this to the Court when we did.

4          THE COURT:  Okay, great.  Well, I charge you guys

5  in moving forward and getting all that to me.

6          Can I ask you to give me a status in two weeks to

7  let me know where you are in that process?  And just

8  basically setting forth, okay, Judge, here's how we could

9  handle it.  You know, not assuming any confidential

10 information or the thought that there might be confidential

11 information, I'm saying, here's how we want to handle it, we

12 want everything that's filed sealed and just forward

13 documents under seal and I'll make sure that they --

14 Ms. Clair is my Case Manager -- I'll make sure that remains

15 under seal.

16         And again, don't disclose anything that could

17 possibly, you know, compromise the security of -- or secrecy

18 of what the information is.  It can be general.  That's

19 fine.  The whole goal is to tee this up for a CIPA hearing.

20         MR. SMITH:  That's fine, Your Honor, very well.

21         THE COURT:  Great.  And that was the first thing

22 that I wanted to talk to everyone about.

23         The second was this issue of the Government's

24 motion for protective order.  It seems like, first of all,

25 several things.  I need you-all to be sure to comply with my

1   Local Rules regarding, you know, discovery.  It applies in

2   civil cases and in criminal cases, which is before you guys

3   file motions to strike or motions discovery-related, I want

4   you-all to talk to each other about those motions and figure

5   out whether or not you have some agreement.  If you don't

6   have any agreement, then let the Court know by letter as to

7   where you are on that.  I'll set a hearing and move forward.

8          And this case is kind of like the best example of

9   that because the Government is moving for protective order

10  and I think the Defendants agree that this information

11  shouldn't be disclosed.  I think the Defendants agree that

12  information is governed -- or subject to a third-party

13  privilege, shouldn't be -- you know, shouldn't be out there.

14         I think you guys are talking across each other.  I

15  think the real issue is, is that this shouldn't ever come

16  before the Court in the first place.  It should have stayed

17  in the other case and not before us.

18         If you guys would have talked about that, then we

19  would have been able to avoid that situation, you know, and

20  even getting to this point.  So I just want to impress upon

21  both of you on both sides, in the future, discovery matters

22  before you file anything like this, I need you to talk to

23  each other about it and see if there's some agreement.

24         If there's no agreement, provide me a letter with

25  each side's position, then I'll figure out what needs to be

1   done if you can't reach an agreement.

2          But in this case, you know, the Government's

3   motion for protective order, I think is moot because the

4   Defendants agree that this stuff shouldn't be before the

5   Court.

6          I mean, am I wrong, or it's -- I don't see why the

7   Court needs to rule on it.

8          MR. SMITH:  Your Honor, I --

9          MR. VARNADO:  No, go ahead, Corey, please.  Sorry.

10          MR. SMITH:  Yeah, if I could respond to that?  I

11   mean, first of all, Your Honor, I want to apologize to the

12   Court.  We inadvertently left out the history of the

13   discussions that counsel have already had on these issues

14   regarding this FD search warrant, and we are prepared to

15   file an Amended Order -- I'm sorry, amended motion in the

16   motion for protective order explaining that there have been

17   extensive discussions regarding the FD search warrant and

18   it's very complicated because there are filter teams.  We

19   are trying to provide -- in many cases we provide evidence

20   to the defense that we don't even have about what have the

21   working third parties are focusing.

22          Now in this situation we should have told the

23   Court that there have been discussions and there is a slight

24   apprehension and we do not agree.  And I'm willing to admit

25   that error as inadvertent and to file an amended motion to

1  explain to the Court per the Local Rules that there is this

2  one area we disagree.

3         And this area we disagree is that we don't have

4  these emails from the search warrant in North Carolina --

5  North California yet.  We're due to get them soon.  The

6  Judge in California has ruled that we can have some of them

7  and we can't have other of them.

8         Until recently, what's been represented to us by

9  counsel is they wanted everything in the Texas search

10 warrants.  And we sent letters that I should have given to

11 the Court as attachments, but these are written requests by

12 the Defendants for all of the FD search warrant material in

13 both search warrants.

14        Now they're saying that they're not interested in

15 privileged material.  That's great, but regardless of that

16 position, it's the Government's position that if the

17 Government is technically in possession of search warrant

18 material, which we're not giving to the Defendant because

19 another Court has held that's privileged, Government, he

20 can't have it.  The Government needs a protective order to

21 explain and to protect itself.  This is why we are not

22 providing potentially Rule 16 evidence and the reason we're

23 not providing it is because this other Court has done a

24 privilege review and has told the Government that we can't

25 have it.

1          So that's all we're seeking to do.  And I think we

2    are in pretty much in agreement with Defense, they want this

3    evidence.  We want to give it to them; however, there is a

4    small body of evidence of emails that's being withheld from

5    us.  The Government believes it needs a protective order to

6    protect itself.  Where we disagree -- and where I don't

7    think there will ever be an agreement, the Defense does not

8    want this Court to see what the other Court ruled on the

9    privilege review.

10         We don't see any reason that should be concealed

11   from this Court.  They may have given us no authority for

12   that.  They simply said, "We object to Judge Hanks seeing

13   what the Magistrate Judge ruled in California."

14         Well, that ruling is critical to this case, Your

15   Honor.  The Defendants have clearly stated they kept the

16   search warrant material in both search warrants in

17   California and Texas that's relevant to this case.  They've

18   asked for it repeatedly.

19         You cannot separate the ruling of the Magistrate

20   Judge that did the privilege review on the FD search warrant

21   material from the FD search warrant material.  They're

22   clearly intertwined.  We simply want on the record --

23         THE COURT:  Hold on.  I need to stop you real

24   quick.  None of that was what this motion is about, though.

25   I mean, I hear that that's what you guys disagree on, but

1    what is before me is the motion for a protective order and a

2    motion to strike.  It looks like everybody is in agreement

3    on the issue that, you know, you want to give the

4    information to the Defendants that they want, except for the

5    information that involves third-party privilege.  They don't

6    want the information regarding third-party privilege, so

7    what's before me is a motion to strike and a motion for a

8    protective order -- that seems to be basically moot.  It

9    could be an agreed motion for a protective order possibly,

10   if you guys get together and agree on it.  And that's great.

11           This other issue needs to be teed up in a separate

12   motion.  I mean, you know, if that's the issue that you guys

13   have been fighting about, then you need to file that in

14   another motion and I'll consider it.  But that's not what's

15   before me right now.  I understand that you guys want to

16   talk about that, but that's not what's before me.

17           What's before me is a motion -- the Government's

18   motion for protective order and then the Defendant's motion

19   to strike.  And it sounds like the motion for protective

20   order could be an agreed protective order because --

21   Mr. Varnado, you don't want the information that's covered

22   by the third-party privilege, do you?

23           MR. VARNADO:  No, Your Honor.  You said the issue

24   exactly.  There actually is no contention between the

25   parties.  I would want to suggest that the Government filed

1   that motion in part as a pretext to get a lot of information

2   before this Court.  But setting that aside, we can certainly

3   agree on some sort of protective order that, you know, gives

4   the Government what cover it needs to not provide those

5   privileged materials.

6          Now we are not seeking anything, and so whether

7   you want to call their motion moot, I think it is, or strike

8   it, which we, you know, moved for, we'll do whatever the

9   Court requires or requests.  But we can certainly get

10  together and get -- come to an agreed order that dealt with

11  those specific subset of emails that, again, we are not

12  seeking.

13         THE COURT:  So here's the deal.  I want you guys

14  to come up with that Order by Friday and submit it to me and

15  I'll enter it and that will resolve the issue in the motion.

16         Now the other issue, Mr. Smith, that you want to

17  talk about, which is the one I see on the in-camera

18  inspection, I need a motion, I need a response, and we need

19  to tee it up for hearing.  You know, that's an issue that's

20  coming up and needs to be presented to me, and I will look

21  at it.

22         So right now, I'll have this motion, this issue,

23  which is the Order and motion to strike.  I've dealt with

24  that.

25         Now any other motion that we need to deal with,

1   you can present it to me in a motion and (glitch in the

2   audio) sounds like you've already discussed it and you're

3   already at an impasse on it, so what I need at this point,

4   I'm not going to have like a sealed motion conference, I'm

5   just going to let you both file whatever motions you want.

6   It sounds like you've talked about it, you're at an impasse.

7         Defendants don't want to have that (glitch in the

8   audio) from the in-camera review.  The Government wants me

9   to look at the in-camera review.  I'm not really sure at

10  this point why I need to or not need to because that's not

11  the issue before me.  But tee it up as a motion and explain

12  to me how I'm -- you know, how it's going to come into this

13  case and why I need to make the decision on that issue right

14  now.

15        And I'll -- if it's before me in a motion, then

16  I'll rule on it.  But what I want to be clear to the

17  parties, I'm (indiscernible) you from any pre-motion

18  conference, it sounds like you guys have already talked

19  about it.  You're at an impasse.  The problem I have is I'm

20  not sure (a) the issue is not before me yet, and (b) I'm not

21  sure exactly how it's going to come before me.

22        So you guys need to flesh that out in a motion and

23  the response, and I'll rule on it as quickly as I can.

24        MR. VARNADO:  Yes, very well, Your Honor.  We'll

25  do that.

1          THE COURT:  Okay.  Mr. Smith, do you understand

2     that?  Or is anything I said that's not clear maybe?

3          MR. SMITH:  Your Honor, oh, no, that's clear, Your

4     Honor.  That's what -- we'll do that, as you suggested that

5     we do.  Yes.

6          THE COURT:  Great.  Well, let's do this.  When I

7     looked at the files and the status conference that I really

8     thought that we needed to address, are there any other

9     issues that I missed when I was going through the file that

10    you think we need to resolve now?  And the caveat is if I

11    can resolve now easily, we'll do that.  But if it requires

12    briefing, then we'll have to set another hearing.

13         MR. VARNADO:  Judge, there is another issue and

14    that is fully briefed and before the Court and that is --

15    and I'll just give you the docket numbers.  It's what

16    ultimately evolved into the motion for a protective order

17    and the designation of the United States' experts related to

18    the competency hearing, and frankly the parties contested

19    back and forth at Docket Nos. 44, 45 and 46, and ultimately

20    reached a resolution.

21         So Docket No. 47 is Mr. Brockman's reply with an

22    agreed protective order and designation of the United

23    States' experts.  And so you know, with the Court's consent,

24    if you could enter that order, it actually sets forth some

25    procedures surrounding the examinations of Mr. Brockman

1   leading up to the competency hearing and now a statement can

2   be used and designates the Government's actual experts and

3   we've actually been operating under that already because

4   some of that activity has begun.

5          So I think Mr. Smith would be in agreement that

6   it's again, 47-1, the protective order -- I mean, the

7   proposed order attached to that reply, if -- would the Court

8   consent, the parties are in full agreement and that issue

9   can be taken off the table.

10          THE COURT:  Great.  I wasn't sure if it was agreed

11   to, but if you tell me that that's agreed, I'll get it

12   signed and my law clerk is on the line.  That Order -- the

13   Court is granting that Order.  I will sign it this

14   afternoon.

15          MR. SMITH:  Yes, that's agreed to, Your Honor.

16          THE COURT:  Okay, great.  It's granted and it will

17   be entered this afternoon.

18          MR. SMITH:  There is one more issue, Your Honor,

19   and the purpose of the Government's motion that we filed at

20   Docket No. 26, that we filed back in February when we

21   started issuing subpoenas to gather evidence for the

22   competency hearing.  And the hearing subpoenas on a Rule 17

23   only mandate that the witnesses bring evidence to the

24   hearing on the date of the hearing, which would be

25   September 13th.  So we filed a motion asking the Court for a

1    Rule 17(c) Order that we could also accompany with the

2    subpoenas asking the witnesses to give us documents within

3    30 days of service.

4              And there's a couple of reasons we really need

5    that 17(c) order to prepare for the competency hearing.

6    Number one is some of these medical records are voluminous

7    and our expert would like to look at them before they

8    examine the Defendant, which is due to happen next week, the

9    18th, 19th, and 20th.  And while some subpoenas have been

10   complied with voluntarily, we have nine subpoenas

11   outstanding served in February and we're in the process of

12   serving new subpoenas with the new date, September 13th,

13   that have not been complied with.

14             So we're waiting for these records and it's

15   starting to get late here with the examinations happening

16   next week and having the experts that are going to write

17   reports.  And they have been reporting to us they would like

18   to see the Defendant's records -- medical records before

19   they write their reports.

20             The other reason we need the Order is because with

21   regard to the medical records, some of the doctors and

22   medical professionals, they're concerned about their HIPAA

23   exposure.  Now the regulation does give them exemption with

24   regards to core proceedings to HIPAA that even though the

25   regulation makes it merely automatic, just as a core

1   proceeding, they still are asking for form orders or letters

2   of assurance.

3            A Rule 17(c) Order from the Court ordering them to

4   produce the records only would satisfy them and give them

5   cover with regard to their HIPAA obligations.

6            So we're asking the Court -- and they're -- this

7   has been fully briefed back and forth.  The records that are

8   really the focus of our motion are some historical medical

9   records of the Defendant and there are some other

10  non-medical records we're also seeking, so we may have to

11  supplement that request with a 17(c) subpoena for

12  non-medical records, financial records, and the like,

13  because we have some subpoenas that are still have not been

14  responded to for some financial records.

15           And we suspect the reason they're not responding

16  to it is because they don't have to.  Technically under the

17  subpoena they don't have to bring them on Rule 17.  They can

18  bring them on the day of the hearing, which of course, is

19  not in anybody's interest.

20           MR. VARNADO:  Your Honor, can I respond briefly?

21           THE COURT:  Sure.  I'd like to hear some -- I'm

22  just looking at this.  I didn't know your position or

23  exactly what to do.

24           MR. VARNADO:  Yes, again, this is Jason Varnado

25  for Mr. Brockman.

1            So Judge, I want to be clear about what the

2    Government has done here.  So they filed a motion seeking

3    Rule 17 subpoenas, which do actually have to relate to

4    specific relevant admissible information.  It cannot just be

5    some fishing expedition.

6            What the Government's position is in Document

7    No. 26 is that any medical provider that Mr. Brockman has

8    ever seen in the history of his life is fair game and

9    unfounded by time or specialty and as Mr. Smith said, there

10   are also keeping financial records from the Baylor College

11   of Medicine, you know, that can only be used for potential

12   impeachment purposes -- things that fall far outside of

13   Rule 17 and that are not provided for under 18 USC 4241(b),

14   which is in this competency matter.

15           And so our response in Docket No. 41, we think

16   we've done a very -- went far beyond what would actually be

17   required and we've agreed with these medical professionals

18   that, okay, fine.  We'll issue the Rule 17 subpoenas to

19   those professionals that all associated -- affiliated with

20   the Baylor Medical College, and that they are Mr. Brockman's

21   treating physicians, but these other requests that go far

22   beyond what's appropriate for these competency issues and

23   you know, their experts can -- I'm sure they have a wish

24   list of things that they'd like to have, but the issue isn't

25   something provided for under the process of this competency

1 hearing under Title 18 or is inappropriate material for

2 Rule 17 subpoenas.

3          And also, the Government, again, went ahead and

4 cut trial subpoenas and so when they have the June 29th date

5 on the books for the hearing, he issued trial subpoenas and

6 are creating purpose because they're trying some of those

7 records over to us, but I'm not sure why this motion is even

8 still necessary.  But in any event, it wasn't appropriate in

9 the first place, given its breadth, and we think that what

10 we've agreed to in our response and our proposed order that

11 deals with the specific echelon (phonetic) is more than

12 reasonable and as far as the Court should go in indulging

13 this effort under Rule 17 to get us what is essentially

14 discovery, which is not what Rule 17 is for and it's not

15 appropriate for this proceeding.

16          MR. SMITH:  If I could respond, Your Honor?

17          THE COURT:  Well, one second.  Is everything fully

18 briefed on it?  I mean, I don't want to get into argument.

19 If it's fully briefed, then present papers and get a ruling

20 as quickly as possible.

21          MR. VARNADO:  It is, Judge.

22          MR. SMITH:  Yes, I'm --

23          THE COURT:  I really don't want to get into

24 argument on it.  I see the point.  I mean, not that, I want

25 to hear from you-all, but it seems like sort of a waste of

1  everybody's resources to rehash what's already in the

2  responses and replies and do it all over again, so.

3       I don't mean to cut anyone off, but if it's fully

4  briefed, you're telling me it's ready, ripe for the Court to

5  rule, I will get it ruled on this week and get you an

6  answer.

7       MR. VARNADO:  Very good.

8       MR. SMITH:  Yes, that's very helpful, Judge.

9  Yeah, I apologize.  I just wanted to say that we do disagree

10 with Mr. Varnado's representation of our case and our

11 subpoenas that's in the papers and I leave that to the

12 Court's review.

13      THE COURT:  Okay.  I mean, I assumed that you

14 disagree and I assumed (glitch in the audio) disagree with

15 Mr. Smith.  I mean, that's the nature of the game.

16      I just don't want to waste everyone's time, you

17 know, rehashing what's already in the pleadings and if I

18 have questions, of course, I will set it for a hearing and

19 go forward.

20      MR. VARNADO:  So Judge, just for your records -- I

21 apologize to the Court.

22      THE COURT:  That's all right.

23      MR. VARNADO:  And just for your records, their

24 motion is Document No. 26, our opposition, partial

25 opposition is Document No. 41 and then the Government's

1    reply is Document No. 43 for the Record.

2           THE COURT:  Okay.  I've got it and I will take a

3    look at this week and get you an answer out.

4           MR. SMITH:  Thank you, Your Honor.

5           THE COURT:  No problem.

6           Anything else, counsel?

7           MR. SMITH:  I think that about does it, Your

8    Honor.

9           THE COURT:  Great.

10          Mr. Varnado, do you need help?

11          MR. VARNADO:  Nothing, nothing from the defense.

12   Thank you so much for your time, Your Honor.

13          THE COURT:  Not a problem at all.  If counsel will

14   -- if you could, just get me the agreed upon order by

15   Friday, that would be great.

16          And then on the other issue with respect to the

17   in-camera review, if you could just submit that as, you

18   know, briefing and send it out as a motion and explain to me

19   why I need to consider it and you know, at this point in

20   time and the case law or authority to consider or not

21   consider it.  Then we'll move forward from there.

22          MR. SMITH:  Very well, Your Honor.

23          THE COURT:  Great.  Well everyone (glitch in the

24   audio) this afternoon, thank you for your time and I'll see

25   you at our next status conference.

1        (The parties thank the Court.)

2        (Proceedings adjourned at 12:26 p.m.)

3                    *  *  *  *  *

4            *I certify that the foregoing is a correct*

5    *transcript to the best of my ability produced from the*

6    *electronic sound recording of the ZOOM/telephonic*

7    *proceedings in the above-entitled matter.*

8    */S/ MARY D. HENRY*

9    *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

10   *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

11   *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

12   *JTT TRANSCRIPT #63976*

13   *DATE FILED:  MAY 14, 2021*

14

15

16

17

18

19

20

21

22

23

24

25