1                    IN THE UNITED STATES DISTRICT COURT

2                   FOR THE SOUTHERN DISTRICT OF TEXAS

3                            HOUSTON DIVISION

4   UNITED STATES OF AMERICA        §      CASE NO. 4:21-CR-9
                                    §      HOUSTON, TEXAS
5   VERSUS                          §      MONDAY,
                                    §      MAY 10, 2021
6   ROBERT T. BROCKMAN              §      11:55 A.M. TO 12:26 P.M.

7
         STATUS CONFERENCE -- AMENDED TRANSCRIPT (VIA ZOOM)
8
                BEFORE THE HONORABLE GEORGE C. HANKS
9                    UNITED STATES DISTRICT JUDGE

10

11

12      APPEARANCES:                      SEE NEXT PAGE

13      ELECTRONIC RECORDING OFFICER: OLIVIER L.

14

15

16

17

18

19

20                   TRANSCRIPTION SERVICE BY:

21           JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                   935 Eldridge Road, #144
22                 Sugar Land, TX 77478
                     281-277-5325
23              www.judicialtranscribers.com

24
      Proceedings recorded by electronic sound recording;
25        transcript produced by transcription service.

1                        APPEARANCES (VIA ZOOM):

2

3   FOR THE PLAINTIFF:            US DEPARTMENT OF JUSTICE
                                  Corey J. Smith, Esq.
4                                 Tax Division
                                  150 M Street NE, Room 2208
5                                 Washington, DC  20002
                                  202-514-9623
6

7

8   FOR THE DEFENDANT:           JONES DAY
                                 Jason S. Varnado, Esq.
9                                717 Texas, Ste. 3300
                                 Houston, TX  77002
10                               832-239-3694

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          HOUSTON, TEXAS; MONDAY, MAY 10, 2021; 11:55 A.M.

2          THE COURT:  Good morning, everyone.  The case

3    before the Court is Cause No. 4:21-CR-9-1, the United States

4    of America versus Robert T. Brockman.

5          Can counsel on the line just introduce themselves

6    to the Court and state the party they represent, starting

7    with the Government?

8          MR. SMITH:  Good afternoon, Your Honor.  It's

9    Corey Smith on behalf of the United States.  I've got to

10   apologize.  Apparently my video has frozen (glitch in the

11   audio) --

12         THE COURT:  Not a problem, okay.

13         MR. VARNADO:  Good morning, Your Honor.  This is

14   Jason Varnado on behalf of Mr. Brockman, and I am joined by

15   my colleagues, Kathryn Keneally and James Loonam, and then

16   Mr. Brockman is also on the line, I believe you can see him

17   on camera there also.

18         THE COURT:  Yes, welcome, Mr. Brockman.

19         DEFENDANT BROCKMAN:  Thank you.

20         THE COURT:  Okay.  Anyone else want to introduce

21   themselves that will be speaking?  I see there's a lot of

22   folks on the line.  Anyone else that will be speaking?

23      (No audible response.)

24         THE COURT:  Okay.  Well, welcome to the status

25   conference.  There are several things that I wanted to talk

1  to the parties about.  The first thing -- well, you guys

2  have some issues, I have some issues, as well, but first

3  thing I wanted to -- there you are, Mr. Smith.  You just

4  popped up.  Can you hear me?

5          MR. SMITH:  Yes, Your Honor.  I hear you fine.

6          THE COURT:  Okay.  It looks like -- yes, you are

7  -- you are there (glitch in the audio) A.

8          First thing I wanted to talk to the parties was

9  the issue of disclosure of the classified information based

10 on the Bloomberg article.  I mean, I've got two basic

11 questions on that and then the parties are having issues of

12 the parties.

13         First, does the information exist?  I mean, it's

14 -- this is in a Bloomberg article.  I mean, they don't

15 really say what the information is or whether it exists or

16 not, so the question is:  (a) Does the information exist?

17 And (b) if it does exist, is it exculpatory?

18         That seems like the two questions I need to answer

19 from the get-go before I can even address the parties'

20 concerns in this regard.

21         So would anyone like to begin?

22         MR. VARNADO:  Yes.  This is Jason Varnado for

23 Mr. Brockman.  We've obviously, you know, made the motions.

24 I'll be first and then let Mr. Smith follow up.

25         I mean, we believe this information exists, Your

1   Honor, based on public reporting, as well as unclassified

2   communications with the Government.  We put that in our

3   motion and again, as stated in our motion, which is Document

4   No. 52, according to the public reporting, you know, the

5   case against Mr. Brockman is seemingly derived from a case

6   that began against Mr. Robert Smith and then ultimately, you

7   know, Mr. Smith was allowed to get a non-prosecution

8   agreement as long as he cooperated against Mr. Brockman and

9   we think that there are, indeed -- at least a possibility of

10  exculpatory communications and information there.

11          All we're asking for right now, Judge, is just a

12  hearing under CIPA Section 2, nothing more at this stage,

13  just to simply have that hearing while we're waiting to hear

14  back from the Government why they would oppose.  Just having

15  the discussion, which would be -- address probably some of

16  the Court's concerns, as well as the process forward.

17          THE COURT:  Okay.  From the Government at this

18  point?

19          MR. SMITH:  Well, the entire motion, Your Honor,

20  is based on a newspaper article.  I think this entire

21  section is entirely based on speculation and we are

22  preparing a response and that would be filed today or

23  tomorrow.  If there is classified information, I'm not

24  authorized to discuss it in open court.

25          And if it is -- if it does exist and if it's

1    classified -- and I'm not admitting or denying its existence

2    -- it's not something that we can talk about openly.

3            And -- but with that said, the entire motion the

4    defense filed is based on a newspaper article from Bloomberg

5    News, we're not aware of any other support for that motion

6    and at some point we will address it, but I think we need to

7    address it in the proper way under CIPA.

8            And addressing it in open court in open filings on

9    the docket is not the proper way to discuss this issue.

10           MR. VARNADO:  Your Honor, I'd like to just

11   briefly?

12           THE COURT:  Well, sure, no problem, but I think

13   we're just addressing, you know, Mr. Varnado's concern is

14   the process, he doesn't wish to discuss it on the Record

15   right now.  I mean, basically what we're doing is saying,

16   hey, we think it's out there.  We think it's exculpatory.

17   Let's get the ball rolling.  I'm requesting a CIPA hearing

18   and then, Government, your job is -- I'm saying, Government,

19   it's your job, but I'm telling you guys this is what we need

20   to do:  Figure out, one, does the information exist?  Is it

21   just from -- I mean, right now we've got a Bloomberg article

22   and some circumstantial evidence that would support the fact

23   that the information better be good, but there's nothing --

24   you know, there's no way to confirm that yet.

25           So what the Government needs to do is, first,

1   figure out is there classified information, yes or no, as

2   stated in the Bloomberg article and then once that question

3   is decided, then is it exculpatory?  And then be prepared

4   for the CIPA hearing so we can talk about -- you know, solve

5   what we're talking about.

6          We really can't have a CIPA hearing until the

7   Government does two things:  One, does the information exist

8   as described by the Bloomberg article, and then two, is it

9   exculpatory?  Once the Government gets that information,

10  then we can have a meaningful hearing; otherwise, we're just

11  kind of, you know, shooting in the wind basically.  I don't

12  know what's out there.

13         So I think that we do need definitely to have the

14  hearing, but what the Government needs to do before the

15  hearing is answer those two questions.

16         And Mr. Varnado, I didn't mean to interrupt, but I

17  just wanted to jump in there because it just made sense to

18  say that as fact one.

19         MR. VARNADO:  I don't have concern.  I apologize

20  if I spoke over you, it's just the nature of the Zoom call.

21         And I would just -- a couple of things.  You know,

22  we put in our amended certificate of conference at the

23  Government's request, which I'd refer the Court to Docket

24  No. 55, which said, you know, the Government does object to

25  the CIPA conference until it's determined that counsel

1   possesses appropriate security clearance, sort of implying

2   that there is, in fact, classified information.

3          And again, all we're asking for at this stage is

4   the conference, not -- you know, just to have the discussion

5   as you pointed out.  Then lastly, I would just note that,

6   you know, it's not prohibited just to talk about whether the

7   classified information exists.  I mean, the Government does

8   that all the time and it's a very public discussion about

9   that in the *Huawei* case, so not everything -- you know, we

10  can have a discussion about this without actually talking

11  about the classified information itself, as you indicated.

12         THE COURT:  And Mr. Smith, again, I will let you

13  speak, but I think the next step is Government needs to

14  figure out what's there, is it exculpatory, and let's set it

15  up for a hearing.

16         I've got, you know, classified -- I've got

17  clearance, I've got a law clerk that's gone through the

18  process in other cases, so that law clerk is classified

19  through top secret information.  I also have this one court

20  reporter that has also got security clearance, as well.

21         So we can get this done.  I just need to get the

22  ball rolling.

23         MR. SMITH:  Yes, Your Honor.  I understand.

24         I am somewhat in a -- with all due respect to

25  Mr. Varnado, in certain situations, there is existence of

1  some information in itself is classified and not proper to

2  discuss.

3           THE COURT:  Sure.

4           MR. SMITH:  Do you understand what was -- I'm

5  sorry.

6           THE COURT:  Oh, no.  I said, "Sure."  Definitely.

7  I mean, I'm with you on that.  I mean, you know, you don't

8  want to run into a situation where you discuss what

9  information you might have which might disclose the way that

10  information was obtained and that can cause problems.

11          So that's why I proposed, let's, you know, do it

12  -- follow the procedures I've set forward.  Again,

13  Government, figure out what's going on, figure out if it's

14  exculpatory, set the hearing, make sure everybody has got

15  the right clearances to discuss the information, and then --

16  and I want you guys to cooperate to make sure that everybody

17  is comfortable with the hearing, and let's go forward.

18          MR. SMITH:  And we are preparing written responses

19  to the motion, which I think would be very informative and

20  some of these responses may or may not be sealed.  In the

21  meantime --

22          THE COURT:  We can seal everything.  That's not a

23  problem.  If you wish to have this matter sealed, we can do

24  that.

25          MR. SMITH:  That may be where we go, Your Honor.

1    I'm -- and Judge, I'm in between a rock and a hard place

2    because I'm limited to what I can admit or deny -- admit or

3    deny what exists and what doesn't exist because, as I said,

4    in some situations -- I'm not saying that it's this

5    situation -- the very existence of some information is

6    itself classified.

7            But I hear what Your Honor is saying and what I

8    want to respond is since that newspaper article came out,

9    we, at the Government, we have not been twiddling our

10   thumbs.  So we are doing what the Court suggests that we do.

11   We've been doing it.  We were very concerned about a public

12   disclosure in a news article about classified information

13   that we did not know was coming.

14           And so since that article appeared, things have

15   been happening behind the scenes and very shortly, we're

16   going to bring all of this to the Court's attention.

17           THE COURT:  Great.  So bottom line again, I want

18   you guys to get together and figure out the appropriate

19   forum to address all of this in.  I mean, the proper

20   hearing, I think a CIPA hearing is the way to go.  But I

21   want you guys to work out the details, request a hearing,

22   and I'll take it from there.

23           MR. VARNADO:  Thank you, Judge.  That's what we

24   wanted to just get the ball rolling and begin getting our

25   clearances (indiscernible) have been previously, but

1  hopefully it won't be a lengthy process, but that's the

2  reason we raised this to the Court when we did.

3          THE COURT:  Okay, great.  Well, I charge you guys

4  with moving forward and getting all that to me.

5          Can I ask you to give me a joint status letter in

6  two weeks to let me know where you are in that process?  And

7  just basically setting forth, okay, Judge, here's how we

8  could handle it.  You know, not assuming any confidential

9  information or the thought that there might be confidential

10  information, I'm saying, here's how we want to handle it, we

11  want everything that's filed sealed and just forward

12  documents under seal and I'll make sure that they --

13  Ms. Clair is my Case Manager -- I'll make sure that remains

14  under seal.

15          And again, don't disclose anything that could

16  possibly, you know, compromise the security of -- or secrecy

17  of what the information is.  It can be general.  That's

18  fine.  The whole goal is to tee this up for the CIPA

19  hearing.

20          MR. SMITH:  That's fine, Your Honor, very well.

21          THE COURT:  Great.  And that was the first thing

22  that I wanted to talk to everyone about.

23          The second was this issue of the Government's

24  motion for protective order.  It seems like, first of all,

25  several things.  I need you-all to be sure to comply with my

1   Local Rules regarding, you know, discovery.  It applies in

2   civil cases and in criminal cases, which is before you guys

3   file motions to strike or motions discovery-related, I want

4   you-all to talk to each other about those motions and figure

5   out whether or not you have some agreement.  If you don't

6   have any agreement, then let the Court know by letter as to

7   where you are on that.  I'll set a hearing and move forward.

8           And this case is kind of like the best example of

9   that because the Government is moving for protective order

10  and I think the Defendants agree that this information

11  shouldn't be disclosed.  I think the Defendants agree that

12  information that's governed -- or subject to a third-party

13  privilege, shouldn't be -- you know, shouldn't be out there.

14          I think you guys are talking across each other.  I

15  think the real issue is, is that this shouldn't ever come

16  before the Court in the first place.  It should have stayed

17  in the other case and not before us.

18          If you guys would have talked about that, then we

19  would have been able to avoid that situation, you know, and

20  even getting to this point.  So I just want to impress upon

21  both of you on both sides, in the future, discovery matters

22  before you file anything like this, I need you to talk to

23  each other about it and see if there's some agreement.

24          If there's no agreement, provide me a letter with

25  each side's position, then I'll figure out what needs to be

1    done if you can't reach an agreement.

2         But in this case, you know, the Government's

3    motion for protective order, I think is moot because the

4    Defendants agree that this stuff shouldn't even be before

5    the Court.

6         I mean, am I wrong, or it's -- I don't see why the

7    Court needs to rule on it.

8         MR. SMITH:  Your Honor, I --

9         MR. VARNADO:  No, go ahead, Corey, please.  Sorry.

10        MR. SMITH:  Yeah, if I could respond to that?  I

11   mean, first of all, Your Honor, I want to apologize to the

12   Court.  We inadvertently left out the history of the

13   discussions that counsel have already had on these issues

14   regarding this Kepke search warrant, and we are prepared to

15   file an Amended Order -- I'm sorry, amended motion in the

16   motion for protective order explaining that there have been

17   extensive discussions regarding the Kepke search warrant and

18   it's very complicated because there are filter teams.  We

19   are trying to provide -- in many cases we provide evidence

20   to the defense that we don't even have about what have the

21   working third parties are focusing.

22        Now in this situation we should have told the

23   Court that there have been discussions and there is a slight

24   apprehension and we do not agree.  And I'm willing to admit

25   that error as inadvertent and to file an amended motion to

1  explain to the Court per the Local Rules that there is this

2  one area we disagree.

3          And this area we disagree is that we don't have

4  these emails from the search warrant in North Carolina --

5  Northern California yet.  We're due to get them soon.  The

6  Judge in California has ruled that we can have some of them

7  and we can't have other of them.

8          Until recently, what's been represented to us by

9  counsel is they wanted everything in the Kepke search

10  warrants.  And we sent letters that I should have given to

11  the Court as attachments, but these are written requests by

12  the Defendants for all of the Kepke search warrant material

13  in both search warrants.

14          Now they're saying that they're not interested in

15  privileged material.  That's great, but regardless of that

16  position, it's the Government's position that if the

17  Government is technically in possession of search warrant

18  material, which we're not giving to the Defendant because

19  another Court has held that's privileged, Government, he

20  can't have it.  The Government needs a protective order to

21  explain and to protect itself.  This is why we are not

22  providing potentially Rule 16 evidence and the reason we're

23  not providing it is because this other Court has done a

24  privilege review and has told the Government that we can't

25  have it.

1            So that's all we're seeking to do.  And I think we

2  are in pretty much in agreement with Defense, they want this

3  evidence.  We want to give it to them; however, there is a

4  small body of evidence of emails that's being withheld from

5  us.  The Government believes it needs a protective order to

6  protect itself.  Where we disagree -- and where I don't

7  think there will ever be an agreement, the Defense does not

8  want this Court to see what the other Court ruled on the

9  privilege review.

10            We don't see any reason that should be concealed

11  from this Court.  They have given us no authority for that.

12  They simply said, "We object to Judge Hanks seeing what the

13  Magistrate Judge ruled in California."

14            Well, that ruling is critical to this case, Your

15  Honor.  The Defendants have clearly stated the Kepke search

16  warrant material in both search warrants in California and

17  Texas that's relevant to this case.  They've asked for it

18  repeatedly.

19            You cannot separate the ruling of the Magistrate

20  Judge that did the privilege review on the Kepke search

21  warrant material from the Kepke search warrant material.

22  They're clearly intertwined.  We simply want on the

23  record --

24            THE COURT:  Hold on.  I need to stop you real

25  quick.  None of that was what this motion is about, though.

1  I mean, I hear that that's what you guys disagree on, but

2  what is before me is the motion for a protective order and a

3  motion to strike.  It looks like everybody is in agreement

4  on the issue that, you know, you want to give the

5  information to the Defendants that they want, except for the

6  information that involves third-party privilege.  They don't

7  want the information regarding third-party privilege, so

8  what's before me is a motion to strike and a motion for a

9  protective order -- that seems to be basically moot.  It

10  could be an agreed motion for a protective order possibly,

11  if you guys get together and agree on it.  And that's great.

12        This other issue needs to be teed up in a separate

13  motion.  I mean, you know, if that's the issue that you guys

14  have been fighting about, then you need to file that in

15  another motion and I'll consider it.  But that's not what's

16  before me right now.  I understand that you guys want to

17  talk about that, but that's not what's before me.

18        What's before me is a motion -- the Government's

19  motion for protective order and then the Defendant's motion

20  to strike.  And it sounds like the motion for protective

21  order could be an agreed protective order because --

22  Mr. Varnado, you don't want the information that's covered

23  by the third-party privilege, do you?

24        MR. VARNADO:  No, Your Honor.  You said the issue

25  exactly.  There actually is no contention between the

1    parties.  I would seem to suggest that the Government filed

2    that motion in part as a pretext to get a lot of information

3    before this Court.  But setting that aside, we can certainly

4    agree on some sort of protective order that, you know, gives

5    the Government what cover it needs to not provide those

6    privileged materials.

7            Now we are not seeking anything, and so whether

8    you want to call their motion moot, I think it is, or strike

9    it, which we, you know, moved for, we'll do whatever the

10   Court requires or requests.  But we can certainly get

11   together and get -- come to an agreed order that dealt with

12   those specific subset of emails that, again, we are not

13   seeking.

14           THE COURT:  So here's the deal.  I want you guys

15   to come up with that Order by Friday and submit it to me and

16   I'll enter it and that will resolve the issue in the motion.

17           Now the other issue, Mr. Smith, that you want to

18   talk about, which is the one I see on the in-camera

19   inspection, I need a motion, I need a response, and we need

20   to tee it up for hearing.  You know, that's an issue that's

21   coming up and needs to be presented to me, and I will look

22   at it.

23           So right now, I'll have this motion, this issue,

24   which is the Order and motion to strike.  I've dealt with

25   that.

1             Now any other motion that we need to deal with,

2    you can present it to me in a motion and to make things

3    easier, it sounds like you've already discussed it and

4    you're already at an impasse on it, so what I need at this

5    point, I'm not going to have like a pre-motion conference,

6    I'm just going to let you both file whatever motions you

7    want.  It sounds like you've talked about it, you're at an

8    impasse.

9             Defendants don't want to have that before me from

10   the in-camera review.  The Government wants me to look at

11   the in-camera review.  I'm not really sure at this point why

12   I need to or not need to because that's not the issue before

13   me.  But tee it up as a motion and explain to me how I'm --

14   you know, how it's going to come into this case and why I

15   need to make the decision on that issue right now.

16            And I'll -- if it's before me in a motion, then

17   I'll rule on it.  But what I want to be clear to the

18   parties, I'm exempting you from any pre-motion conference,

19   it sounds like you guys have already talked about it.

20   You're at an impasse.  The problem I have is I'm not sure

21   (a) the issue is not before me yet, and (b) I'm not sure

22   exactly how it's going to come before me.

23            So you guys need to flesh that out in a motion and

24   the response, and I'll rule on it as quickly as I can.

25            MR. SMITH:  Yes, very well, Your Honor.  We'll do

1   that.

2          THE COURT:  Okay.  Mr. Smith, do you understand

3   that?  Or is anything I said that's not clear maybe?

4          MR. SMITH:  No, no, that's clear, Your Honor.

5   That's what -- we'll do that, as you suggested that we do.

6   Yes.

7          THE COURT:  Great.  Well, let's do this.  When I

8   looked at the files and the status conference that I really

9   thought that we needed to address, are there any other

10  issues that I missed when I was going through the file that

11  you think we need to resolve now?  And the caveat is if I

12  can resolve it now easily, we'll do that.  But if it

13  requires briefing, then we'll have to set another hearing.

14         MR. VARNADO:  Judge, there is another issue and

15  that is fully briefed and before the Court and that is --

16  and I'll just give you the docket numbers.  It's what

17  ultimately evolved into the motion for a protective order

18  and the designation of the United States' experts related to

19  the competency hearing, and frankly the parties contested

20  back and forth at Docket Nos. 44, 45 and 46, and ultimately

21  reached a resolution.

22         So Docket No. 47 is Mr. Brockman's reply with an

23  agreed protective order and designation of the United

24  States' experts.  And so you know, with the Court's consent,

25  if you could enter that order, it actually sets forth some

1   procedures surrounding the examinations of Mr. Brockman

2   leading up to the competency hearing and now a statement can

3   be used and designates the Government's actual experts and

4   we've actually been operating under that already because

5   some of that activity has begun.

6           So I think Mr. Smith would be in agreement that

7   it's again, 47-1, the protective order -- I mean, the

8   proposed order attached to that reply, if -- would the Court

9   consent, the parties are in full agreement and that issue

10  can be taken off the table.

11          THE COURT:  Great.  I wasn't sure if it was agreed

12  to, but if you tell me that that's agreed, I'll get it

13  signed and my law clerk is on the line.  That Order -- the

14  Court is granting that Order.  I will sign it this

15  afternoon.

16          MR. SMITH:  Yes, that's agreed to, Your Honor.

17          THE COURT:  Okay, great.  It's granted and it will

18  be entered this afternoon.

19          MR. SMITH:  There is one more issue, Your Honor,

20  and the purpose of the Government's motion that we filed at

21  Docket No. 26, that we filed back in February when we

22  started issuing subpoenas to gather evidence for the

23  competency hearing.  And the hearing subpoenas on a Rule 17

24  only mandate that the witnesses bring evidence to the

25  hearing on the date of the hearing, which would be

1   September 13th.  So we filed a motion asking the Court for a

2   Rule 17(c) Order that we could also accompany with the

3   subpoenas asking the witnesses to give us documents within

4   30 days of service.

5          And there's a couple of reasons we really need

6   that 17(c) order to prepare for the competency hearing.

7   Number one is some of these medical records are voluminous

8   and our expert would like to look at them before they

9   examine the Defendant, which is due to happen next week, the

10  18th, 19th, and 20th.  And while some subpoenas have been

11  complied with voluntarily, we have nine subpoenas

12  outstanding served in February and we're in the process of

13  serving new subpoenas with the new date, September 13th,

14  that have not been complied with.

15         So we're waiting for these records and it's

16  starting to get late here with the examinations happening

17  next week and having the experts that are going to write

18  reports.  And they have been reporting to us they would like

19  to see the Defendant's records -- medical records before

20  they write their reports.

21         The other reason we need the Order is because with

22  regard to the medical records, some of the doctors and

23  medical professionals, they're concerned about their HIPAA

24  exposure.  Now the regulation does give them exemption with

25  regards to core proceedings to HIPAA that even though the

1   regulation makes it merely automatic, just as a core

2   proceeding, they still are asking for form orders or letters

3   of assurance.

4           A Rule 17(c) Order from the Court ordering them to

5   produce the records only would satisfy them and give them

6   cover with regard to their HIPAA obligations.

7           So we're asking the Court -- and they're -- this

8   has been fully briefed back and forth.  The records that are

9   really the focus of our motion are some historical medical

10  records of the Defendant and there are some other

11  non-medical records we're also seeking, so we may have to

12  supplement that request with a 17(c) subpoena for

13  non-medical records, financial records, and the like,

14  because we have some subpoenas that are still have not been

15  responded to for some financial records.

16          And we suspect the reason they're not responding

17  to it is because they don't have to.  Technically under the

18  subpoena they don't have to bring them on Rule 17.  They can

19  bring them on the day of the hearing, which of course, is

20  not in anybody's interest.

21          MR. VARNADO:  Your Honor, can I respond briefly?

22          THE COURT:  Sure.  I'd like to hear some -- I'm

23  just looking at this.  I didn't know your position or

24  exactly what to do.

25          MR. VARNADO:  Yes, again, this is Jason Varnado

1   for Mr. Brockman.

2           So Judge, I want to be clear about what the

3   Government has done here.  So they filed a motion seeking

4   Rule 17 subpoenas, which do actually have to relate to

5   specific relevant admissible information.  It cannot just be

6   some fishing expedition.

7           What the Government's position is in Document

8   No. 26 is that any medical provider that Mr. Brockman has

9   ever seen in the history of his life is fair game and

10  unbounded by time or specialty and as Mr. Smith said, there

11  are also seeking financial records from the Baylor College

12  of Medicine, you know, that can only be used for potential

13  impeachment purposes -- things that fall far outside of

14  Rule 17 and that are not provided for under 18 USC 4241(b),

15  which is in this competency matter.

16          And so our response in Docket No. 41, we think

17  we've done a very -- went far beyond what would actually be

18  required and we've agreed with these eight medical

19  professionals that, okay, fine.  We'll issue the Rule 17

20  subpoenas to those professionals that all associated --

21  affiliated with the Baylor Medical College, and that they

22  are Mr. Brockman's treating physicians, but these other

23  requests that go far beyond what's appropriate for these

24  competency issues and you know, their experts can -- I'm

25  sure they have a wish list of things that they'd like to

1  have, but the issue isn't something provided for under the

2  process of this competency hearing under Title 18 or is

3  inappropriate material for Rule 17 subpoenas.

4         And also, the Government, again, went ahead and

5  cut trial subpoenas and so when they have the June 29th date

6  on the books for the hearing, he issued trial subpoenas and

7  (indiscernible) purpose because they're trying to give some

8  of those records over to us, but I'm not sure why this

9  motion is even still necessary.  But in any event, it wasn't

10 appropriate in the first place, given its breadth, and we

11 think that what we've agreed to in our response and our

12 proposed order that deals with the specific echelon

13 (phonetic) is more than reasonable and as far as the Court

14 should go in indulging this effort under Rule 17 to get us

15 what is essentially discovery, which is not what Rule 17 is

16 for and it's not appropriate for this proceeding.

17         MR. SMITH:  If I could respond, Your Honor?

18         THE COURT:  Well, one second.  Is everything fully

19 briefed on it?  I mean, I don't want to get into argument.

20 If it's fully briefed, then I will consider the papers and

21 get a ruling as quickly as possible.

22         MR. VARNADO:  It is, Judge.

23         MR. SMITH:  Yes, I'm --

24         THE COURT:  I really don't want to get into

25 argument on it.  I see the point.  I mean, not that, I want

1  to hear from you-all, but it seems like sort of a waste of

2  everybody's resources to rehash what's been already in the

3  responses and replies and do it all over again, so.

4             I don't mean to cut anyone off, but if it's fully

5  briefed, you're telling me it's ready, ripe for the Court to

6  rule, I will get it ruled on this week and get you an

7  answer.

8             MR. VARNADO:  Very good.

9             MR. SMITH:  Yes, that's very helpful, Judge.

10  Yeah, I apologize.  I just wanted to say that we do disagree

11  with Mr. Varnado's representation of our case and our

12  subpoenas that's in the papers and I leave that to the

13  Court's review.

14             THE COURT:  Okay.  I mean, I assumed that you

15  disagree and I assumed (glitch in the audio) you disagree

16  with Mr. Smith.  I mean, that's the nature of the game.

17             I just don't want to waste everyone's time, you

18  know, rehashing what's already in the pleadings and if I

19  have questions, of course, I will set it for a hearing and

20  go forward.

21             MR. VARNADO:  So Judge, just for your records -- I

22  apologize to the Court.

23             THE COURT:  That's all right.

24             MR. VARNADO:  And just for your records, their

25  motion is Document No. 26, our opposition, partial

1   opposition is Document No. 41 and then the Government's

2   reply is Document No. 43 for the Record.

3          THE COURT:  Okay.  I've got it and I will take a

4   look at this week and get you an answer out.

5          MR. SMITH:  Thank you, Your Honor.

6          THE COURT:  No problem.

7          Anything else, counsel?

8          MR. SMITH:  I think that about does it, Your

9   Honor.

10         THE COURT:  Great.

11         Mr. Varnado, do you need help?

12         MR. VARNADO:  Nothing, nothing from the defense.

13  Thank you so much for your time, Your Honor.

14         THE COURT:  Not a problem at all.  If counsel will

15  -- if you could, just get me the agreed upon order by

16  Friday, that would be great.

17         And then on the other issue with respect to the

18  in-camera review, if you could just submit that as, you

19  know, briefing and send it out as a motion and explain to me

20  why I need to consider it and you know, at this point in

21  time and the case law or authority to consider or not

22  consider it.  Then we'll move forward from there.

23         MR. SMITH:  Very well, Your Honor.

24         THE COURT:  Great.  Well everyone (glitch in the

25  audio) this afternoon, thank you for your time and I'll see

1  you at our next status conference.

2      (The parties thank the Court.)

3      (Proceedings adjourned at 12:26 p.m.)

4                   * * * * *

5          *I certify that the foregoing is a correct*

6  *transcript to the best of my ability produced from the*

7  *electronic sound recording of the ZOOM/telephonic*

8  *proceedings in the above-entitled matter.*

9  */S/ MARY D. HENRY*

10 *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

11 *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

12 *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

13 *JTT TRANSCRIPT #63976 AMENDED*

14 *DATE FILED:  MAY 21, 2021*

15

16

17

18

19

20

21

22

23

24

25