**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal No. 4:21-cr-00009** |
| | § | |
| **ROBERT T. BROCKMAN** | § | |

**DEFENDANT ROBERT T. BROCKMAN'S MOTION TO COMPEL**
**DISCOVERY IN ADVANCE OF THE COMPETENCY HEARING**

# TABLE OF CONTENTS

**Page**

I.  The Government Must Disclose Its' Communications With The Examining Doctors ................................................................................ 3

    A.  Disclosure is Necessary to Evaluate the Prosecutors' Relationship with the Examining Doctors ..................................................... 3

    B.  *Brady* and *Giglio* Mandate Disclosure ........................................ 7

    C.  The Federal Rules of Criminal Procedure and the Department of Justice Policy Also Require Disclosure ....................................... 9

    D.  The Government's Objections to Disclosure Are Misplaced ................... 10

        1.  The Deliberative Process Privilege Does Not Apply to Communications with the Examining Doctors ............................. 12

        2.  The Communications with Examining Doctors Are Not Protected Work-Product ................................................. 14

II.  The Government Should Produce the Examining Doctors' Underlying Raw Notes and Data .......................................................... 15

III.  The Government Should Produce Discovery Within Its Possession, Custody, or Control ...................................................... 17

## **INTRODUCTION**

The Court ordered a competency hearing in this matter after finding there is reasonable cause to believe that Mr. Brockman may be presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.  (Dkt. No. 36 at ¶ 1).  At the government's request, pursuant to 18 U.S.C. §§ 4241(b) and 4247(b), the Court designated three doctors, Dr. Park Dietz, Dr. Robert Denney, and Dr. Ryan Darby, to examine Mr. Brockman in advance of the competency hearing (collectively "Examining Doctors").  (Dkt. Nos. 44 and 59).

In an effort to reduce the risk of prejudicial error and unnecessary delay, the defense proactively engaged in discussions with the government regarding the government's required disclosures well in advance of the scheduled hearing.[1]  While the defense and the government were able to resolve certain issues, disputes remain concerning defense counsel's requests that the government disclose the following categories of documents:

(a)   All records of communications between the government and the Examining Doctors, including emails and notes of verbal communications;

---

[1] Counsel for Mr. Brockman raised issues regarding the government's disclosure obligations for the designated examining physicians during meet-and-confer calls and in writing.  Loonam Decl. ¶¶ 2–7, Exs. A–C ("Loonam Decl." refers to the Declaration of James P. Loonam made in support of Defendant Robert T. Brockman's Motion to Compel Discovery in Advance of the Competency Hearing.).  On March 16, 2021, Mr. Brockman submitted a letter to the government with formal, written discovery requests in connection with the competency hearing.  Loonam Decl. ¶ 3, Ex. A.  The government replied on March 25, 2021.  Loonam Decl. ¶ 5, Ex. B.  The government's disclosure obligations are of the utmost importance.  Incomplete or belated government disclosures risk prejudicial error and delay.  *See, e.g.*, *United States v. Fisher*, 106 F.3d 622, 634–35 (5th Cir. 1997) (reversing defendant's convictions and vacating his sentence because "the Government did not disclose the [FBI 302] report to the defense in time for it to make a meaningful difference in their trial strategy"), *abrogated on other grounds by Ohler v. United States*, 529 U.S. 753 (2000).

(b)  All raw data, notes, and test results underlying the Examining Doctors' reports; and

(c)  All (i) articles published by the Examining Doctors, (ii) transcripts of testimony by the Examining Doctors, and (iii) court rulings or opinions that contain adverse conclusions concerning the qualifications, credibility, or any other issue with regard to the Examining Doctors, that are within the government's possession, custody, or control.

Loonam Decl. ¶ 3, Ex. A.

While the government has made boilerplate representations about its disclosure obligations, the government incorrectly asserts that the deliberative process privilege and work-product doctrine shield the government's communications with the Examining Doctors from disclosure.  Loonam Decl. ¶ 5, Ex. B.  The government has also refused to provide the defense with all of the notes underlying the Examining Doctors' reports.  Loonam Decl. ¶ 7, Ex. C.  In addition, the government effectively refuses to provide the defense with articles published by the Examining Doctors, transcripts of the Examining Doctors' prior testimony, and court rulings concerning the Examining Doctors, that are within the government's possession, custody, or control.  Loonam Decl. ¶ 5, Ex. B.

The requested discovery is necessary for the defense, and ultimately the Court, to understand the prosecutors' interactions with the court-designated Examining Doctors, and for the defense to prepare adequately for the upcoming competency hearing.  The defense moves to compel the government to make the requested disclosures.

## **ARGUMENT**

**I.** **The Government Must Disclose Its' Communications With The Examining Doctors**

The defense requests that the Court order the government to produce records of communications between the government and the Examining Doctors concerning this case. These communications are discoverable on multiple grounds under the U.S. Constitution, statutory authority, the Federal Rules of Criminal Procedure, and the Court's inherent authority.

### **A.** **Disclosure is Necessary to Evaluate the Prosecutors' Relationship with the Examining Doctors**

The Examining Doctors, having been designated by the Court pursuant to 18 U.S.C. §§ 4241(b), 4247(b), were to act as neutral agents of the Court to ascertain Mr. Brockman's competence to assist in his own defense.  *See, e.g.*, *United States v. Fratus*, 530 F.2d 644, 649 (5th Cir. 1976) (describing the psychiatrist appointed by the court to perform competency examinations pursuant to 18 U.S.C. § 4244 as "functioning as an objective, non-partisan expert"); *United States v. Reyes*, No. 3:18-CR-0260, 2019 WL 1746051, at *3 (N.D. Tex. Apr. 17, 2019) (stating competency experts appointed pursuant to 18 U.S.C. § 4241(b) "are expected to be neutral and detached"); *United States v. Sampson*, 12 F. Supp. 3d 214, 217 (D. Mass. 2014) (stating the court-appointed examiner pursuant to 18 U.S.C. § 4247(c) must "remain, as required, 'neural and detached'" (quoting *United States v. Theriault*, 440 F.2d 713, 715 (5th Cir. 1971))); *United States v. Bass*, 477 F.2d 723, 725 (9th Cir. 1973) (same); *United States v. Trexler*, No. 1:12CR45, 2012 WL 3265010, at *2 (M.D.N.C. Aug. 9, 2012) (same).

The role of the Examining Doctors as agents of the Court, rather than as experts for the prosecution, is fundamental to both the statutory scheme authorized by Congress to address competency issues and to Mr. Brockman's constitutional rights.   U.S. Const. amend. V; 18 U.S.C. § 4247(b) ("Each examiner shall be designated by the court . . . ."); *United States v. Pogany*, 465 F.2d 72, 78 (3d Cir. 1972) ("Fairness requires that the examining psychiatrist . . . be an officer of the Court and responsible neither to the defense nor the prosecution."); *In re Harmon*, 425 F.2d 916, 918 (1st Cir. 1970) ("[W]hen the court appoints a psychiatrist[,] . . . even if he may have hitherto acted in a personal relationship, [he] should now consider himself an officer of the court, not responsible to prosecution or defense."); *United States v. Green*, 544 F.2d 138, 145 (3d Cir. 1976) ("[T]he inherent power of a trial judge to appoint an expert of his own choosing is clear[,] . . . the impartial expert is the court's witness, rather than a prosecution or defense witness."); *United States v. Green*, No. 2:12CR00003, 2015 WL 1268035, at *2 (W.D. Va. Mar. 19, 2015) (same); *see also United States v. Sampson*, 12 F. Supp. 3d at 217 ("[I]n order to protect and promote the Examiner's neutrality, all future communication with the Examiner will be conducted by the court.   The parties are, therefore, being ordered not to communicate with the Examiner without the prior authorization of the court.").

The prosecution has no right, or legal mechanism, to compel a criminal defendant to sit for days of medical testing and free-flowing conversation with the prosecution's own partisan experts regarding highly personal details of a defendant's life, medical history, interactions with his criminal defense attorneys, and the defendant's strategy for the

criminal case.[2]  The law is clear, the Examining Doctors were not to act as partisan experts for the prosecution.  *United States v. Pogany*, 465 F.2d 72, 78 (3d Cir. 1972) (reversing the judgment and remanding the case to the district court for the defendant to be re-evaluated for competency after the defendant was examined by a psychiatrist chosen by the government, since "[a]n advocacy role" by the examining psychiatrist "is simply and obviously inconsistent with the statute's intent to provide a fair and impartial determination of an accused's ability to stand trial"); *United States v. Wilkinson*, No. 07-12061, 2008 WL 427295, at *12–13 (D. Mass. Feb. 14, 2008) ("[T]he designated examiners are not intended to function as advocates for one side or the other.").

But that is precisely what happened here.  The Examining Doctors' own admissions, actions, and reports, recently disclosed to the defense, make abundantly clear that they viewed themselves agents of the prosecution, not the Court.  Loonam Decl. ¶ 8.  For example, the Court ordered the Examining Doctors to "prepare their written reports and provide them to counsel no later than June 21, 2020."  (Dkt. No. 53).  But the Examining Doctors did not provide their reports to the defense as ordered, but rather, addressed their

---

[2] *See, e.g.*, Loonam Decl. ¶ 8 (May 20, 2021 Transcript) (redacted pursuant to Court's February 1, 2021 Order, Dkt. No. 36 at ¶6, directing the Examining Doctors to file their reports under seal).

reports to the prosecutors, who in turn transmitted the reports to the defense and the Court. Loonam Decl. ¶ 8; *see also* 18 U.S.C. § 4247(c) (stating the "psychiatric or psychological report . . . shall be filed with the court"); *United States v. Reyes*, No. 3:18-CR-0260, 2019 WL 1746051, at *3 (N.D. Tex. Apr. 17, 2019) (competency "experts are expected to be neutral and detached and report their findings to the court").

This was no procedural oversight. The Examining Doctors repeatedly identified themselves as agents of the prosecution throughout their examination of Mr. Brockman. Loonam Decl. ¶ 8 (May 18, 2021 Tr. at 4:23–4:30[3]; May 20, 2021 Tr. at 1:8–1:12[4]). ████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ Loonam Decl. ¶ 8

(Dr. Darby Expert Report at 1[6]; Dr. Denney Expert Report at 1[7]; Dr. Dietz Expert Report at 1, 45[8]). The prosecution also apparently shares this erroneous view and refuses to

---

[3] ████████████████████████████████████████
████████████████████████████████

[4] ████████████████████████████████████████
██████████████████████████

[5] ████████████████████████████████████████
███████████████████████████████

[6] ████████████████████████████████████████
████████████████████

[7] ████████████████████████████████████████
████████████████████████████

[8] ████████████████████████████████████████
█████████████████████████

disclose its' communications with the Examining Doctors on the basis that these communications are internal DOJ communications protected from disclosure by the deliberative process privilege and the attorney-work product doctrine.  Loonam Decl. ¶ 5, Ex. B; *see* discussion *infra* section I.D.

This is all improper.  By acting as partisans for the prosecution, the Examining Doctors conducted an examination of Mr. Brockman which violated the Court's Orders (Dkt. Nos. 53, 59), applicable statutes (18 U.S.C.§§ 4241, 4247(b)) and Mr. Brockman's rights under the Fifth Amendment.

The Court has the inherent authority to order the disclosure of all communications with the *court-designated* Examining Doctors to determine if their examination complied with the law or must be disqualified.

### B.    *Brady* and *Giglio* Mandate Disclosure

Independent of the propriety of the Examining Doctors' examinations, the government's communications with the Examining Doctors are discoverable on the separate basis that these communications may constitute *Brady* material to the extent the Examining Doctors' communications support, in any way, a finding that Mr. Brockman is not competent to proceed to trial.  *Brady v. Maryland*, 373 U.S. 83, 87–88 (1963); *Floyd v. Vannoy*, 894 F.3d 143, 161–67 (5th Cir. 2018); *United States v. Sipe*, 388 F.3d 471, 477–78 (5th Cir. 2004); *Lindsey v. King*, 769 F.2d 1034, 1040–43 (5th Cir. 1985).  This would include, for example, (a) any statement that a dementia diagnosis, or symptoms associated with a dementia diagnosis, could render a defendant incompetent to proceed to trial; (b) any statement that Baylor University Medical Center, or its associated medical

professionals, are credible and qualified to render a dementia diagnosis; or (c) any statement that any of Mr. Brockman's medical test results are consistent with any mental disorder, including dementia or major neurocognitive disorder. Such *Brady* material should be disclosed to the defense "reasonably promptly after it is discovered."[9]

Disclosure is also required pursuant to *Giglio* because each of these communications will reveal the relationship between these court-designated witnesses and the government, which is a fundamental subject for cross-examination. *Giglio v. United States*, 405 U.S. 150, 154–55 (1972); *United States v. Cessa*, 861 F.3d 121, 128, 131–32 (5th Cir. 2017); *United States v. Dvorin*, 817 F.3d 438, 450–p51 (5th Cir. 2016). Such disclosure is especially apt in this unusual circumstance, where, as already discussed, each of the Examining Doctors—although recruited and proposed by the government—has been designated by the Court and serves as "an officer of the Court and responsible neither to the defense nor the prosecution." *United States . v. Pogany*, 465 F.2d 72, 78 (3d Cir. 1972). This category is broader than, but would include, such obvious examples as (a) communications regarding the doctors' selection and compensation, (b) statements inconsistent with the doctors' reports or ultimate testimony at the hearing, (c) statements that suggest the doctors prejudged the issue of Mr. Brockman's competency prior to conducting their examinations, and (d) communications that suggest the government attempted to influence the doctors' conduct of the examinations or opinions. *See Paradis v. Arave*, 240 F.3d 1169, 1180–81 (9th Cir. 2001) (prosecutor's notes of a conversation

---

[9] U.S. Dep't of Just., Just. Manual § 9-5.001(D)(1).

with the medical examiner, who later testified as an expert witness for the government, should have been disclosed to the defense as the notes contained exculpatory and impeachment information).

### C.      The Federal Rules of Criminal Procedure and the Department of Justice Policy Also Require Disclosure

The Federal Rules of Criminal Procedure require disclosure of the government's communications with expert witnesses it intends to call at the hearing.  Pursuant to Rule 16, the government is required to "describe the [expert] witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  Fed. R. Crim. P. 16(a)(1)(G).

The government's communications with the expert witnesses on the subject matter of their examinations and anticipated testimonies should be disclosed as part of the "bases and reasons" for the experts' opinions.  *See id*.  Requiring such disclosure is consistent with "[t]he purpose behind the disclosure of expert reports [which] is to insure effective cross-examination, prevent surprise and avoid delay."  *United States v. Michel-Diaz*, 205 F. Supp. 2d 1155, 1156–57 (D. Mont. 2002) (requiring government to produce "any data or information *considered* by the expert in forming the opinions" and rejecting the government's argument that such disclosure was not required by Rule 16) (emphasis added); *see also United States v. Ellender*, 947 F.2d 748, 756 (5th Cir. 1991) (recognizing that trial courts have "great latitude in the management of the discovery process").

Notably, the Department of Justice's own policies contemplate that communications between the government and expert witnesses are discoverable.  The Justice Manual states:

> [T]he prosecutor should provide the defense with a copy of, or access to, the laboratory or forensic expert's "case file," either in electronic or hard-copy

9

form. . . .   *Laboratory case files may include written communications, including electronic communication such as emails, between forensic experts or between forensic experts and prosecutors.*  Prosecutors should review this information themselves to determine which communications, if any, are protected and which in formation should be disclosed under *Brady/Giglio*, Jencks, or Rule 16.

U.S. Dep't of Just., Just. Manual § 9-5.003 (emphasis added).

Moreover, under the Jencks Act and Rule 26.2, the government must produce the pretrial statements of a witness called by the government which relate to the testimony of that witness.[10]   18 U.S.C. § 3500; Fed. R. Crim. P. 26.2.[11]   DOJ's internal policies incorporate this blackletter law, stating "a written statement (report, email, memo) by a testifying forensic witness may be subject to disclosure under the Jencks Act if it relates to the subject matter of his or her testimony."  U.S. Dep't of Just., Just. Manual § 9-5.003.  In the case of these expert witnesses, "the subject matter of his or her testimony" is the *only* topic for communication between the prosecutors and these witnesses, who are retained exclusively for that purpose, and all such communications must be disclosed.  *Id.*

---

[10] While disclosure under the Jencks Act is not required until the witness has finished testifying on direct examination, the government typically agrees to the pre-hearing disclosure of such statements to avoid unnecessary delay during the hearing.  *United States v. McKenzie*, 768 F.2d 602, 609 (5th Cir. 1985) ("This court has recognized such early Jencks disclosure as a salutary practice that should be encouraged to avoid the interruptions and delay at trial that are inevitable if the defense does not receive the material until the conclusion of the direct testimony.").  We would hope the government follows this sensible practice here to avoid the risk of unnecessarily delaying and prolonging the upcoming hearing.

[11] To the extent the government argues that the competency hearing is outside the literal purview of the Jencks Act and Fed. R. Crim. P. 26.2, we would ask the Court to order equivalent disclosures pursuant to its inherent authority.  "[I]t is well-settled that district courts have inherent power to make and enforce reasonable rules of procedure, including disclosure rules."  *United States v. Catalan-Roman*, 376 F. Supp. 2d 108, 114–15 (D.P.R. 2005); s*ee* Fed. R. Crim. P. 57(b).

**D.      The Government's Objections to Disclosure Are Misplaced**

Initially, the government flatly refused to produce any communications with the Examining Doctors absent a court order, arguing that such communications were protected by the deliberative process privilege and the work-product doctrine.  Loonam Decl. ¶ 4.  Defense counsel urged the government to reconsider its position.  Loonam Decl. ¶ 4.  In its follow-up written response on March 25, 2021, the government acknowledged its *Brady*, *Giglio*, and Jencks Act obligations, but maintained that "[t]he prosecution team's communications with *its expert witnesses* constitute both attorney work product and internal government attorney deliberations . . . [that] are not generally discoverable pursuant to Fed. R. Crim. P. 16(a)(2)."  Loonam Decl. ¶ 5, Ex. B (emphasis added).  The government's analysis is deeply flawed.

The government's position reinforces its improper assumption that it may co-opt *court-appointed* experts to become members of the prosecution team.  Loonam Decl. ¶ 5, Ex. B.  While as a practical matter the Examining Doctors were chosen by the government, they were not supposed to come to this proceeding as partisans to support the government's position.[12]  The Examining Doctors have been designated by the Court pursuant to 18 U.S.C. §§ 4241(b) and 4247(b).  (Dkt. No. 59); 18 U.S.C. § 4247(b) ("[e]ach examiner shall be designated by the court").  "Fairness requires that the examining psychiatrist . . . be an officer of the Court and responsible neither to the defense nor the prosecution." *United States v. Pogany*, 465 F.2d 72, 78 (3d Cir. 1972); *see also In re Harmon*, 425 F.2d

---

[12] The government is expected to call the Examining Doctors as expert witnesses at the hearing and therefore the doctors have been referred to as the government's expert witnesses.

916, 918 (1st Cir. 1970) ("[W]hen the court appoints a psychiatrist . . . even if he may have hitherto acted in a personal relationship, [he] should now consider himself an officer of the court, not responsible to prosecution or defense."); *United States v. Fratus*, 530 F.2d 644 (5th Cir. 1976) (describing the "purposes served by the appointment of a psychiatrist . . . for the purpose of ascertaining a defendant's competency to stand trial" is "functioning as an objective, non-partisan expert").[13]   As such, the government's communications with the Examining Doctors are third-party communications and do not fall within the protections offered by the deliberative process privilege or the work-product doctrine.

### 1.      The Deliberative Process Privilege Does Not Apply to Communications with the Examining Doctors

The government's reliance on the deliberative process privilege would be misplaced even if the designated doctors were government experts.   The Supreme Court has recognized that the deliberative process privilege protects from discovery the "'decision making processes of government agencies' . . . focus[ing] on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"   *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (citations omitted).   To qualify for this privilege, a document must be both "predecisional" and "deliberative."   The Supreme Court recently stated "[d]ocuments are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency

---

[13] Indeed, the government is aware of this point and, we understand, did not enter into a written contract to retain these expert witnesses, but rather, submits invoices under DOJ procedures to pay for court-ordered expenses. Loonam Decl. ¶¶ 4–5, Ex. B.

formulate its position." *United States Fish and Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021). The government has no basis to claim protection for communications with its own testifying experts, let alone to withhold such communications with neutral experts appointed by the Court.

In this case, the government's communications with the Examining Doctors are unrelated to agency decision-making or policy-making processes. The government's emails and conversations with the Examining Doctors pertaining to Mr. Brockman's competency lack any resemblance to the types of documents intended to be safeguarded from disclosure under the deliberative process privilege. These communications are not intra- or inter-agency agency deliberations, advice, or opinions. There is no agency policy or decision at issue and the communications related to the facts and evidence of Mr. Brockman's competency examination are discoverable.

Courts have rejected similar spurious invocations of the deliberative process privilege. For instance, in *United States v. Hamilton*, the court ordered the government to produce a detective's emails related to his testimony, stating that:

> [T]he United States' contention that the deliberative process privilege protects against disclosure of [the detective's] emails during the investigation lacks merit. The deliberative process privilege is asserted in cases where litigants sought to discover confidential intra- or inter-agency recommendations, opinions, or ideas and analyses that governmental employees generated as part of the process of developing public policy.

*United States v. Hamilton*, No. CR11-415, 2012 WL 5834893, at *4 (W.D. Wash. Oct. 4, 2012); *see also United States v. W.R. Grace*, 455 F. Supp. 2d 1140 (D. Mont. 2006)

(requiring the government to produce documents from several federal agencies and rejecting the government's assertion of the deliberative process privilege).

### 2.    The Communications with Examining Doctors Are Not Protected Work-Product

The government's reliance on Fed. R. Crim. P. 16(a)(2) is similarly misplaced. Loonam Decl. ¶ 5, Ex. B.  That Rule applies only to "internal government documents," Fed. R. Crim. P. 16(a)(2), not to communications between the government and the court-designated Examining Doctors.  In addition, the Rule by its own terms does not apply to the government's expert witness discovery obligations under Rule 16(a)(1)(G).

In any event, the Court has inherent authority to order discovery beyond that discovery provided under the Federal Rules of Criminal Procedure.  *See e.g.*, *United States v. George*, 786 F. Supp. 11, 15 (D.D.C. 1991) ("Because an item does not fall within Rule 16 does not mean, however, that they cannot be made available to defense counsel.  A district court judge may be permitted to order discovery beyond that specified by Rule 16.").

The requested disclosure is not burdensome; the government could easily identify and isolate communications with the Examining Doctors that concern the subject-matter of this case.  The Examining Doctors can do the same.  On the other hand, disclosure of these communications is absolutely critical to the defense's ability to effectively cross-examine the doctors, to test fully the bases of their opinions, and to expose any bias, for the Court's consideration in reaching its decision.

For all of these reasons, the Court should order the government and the Examining Doctors to promptly disclose any records of communications between the government and the Examining Doctors, in whatever form, concerning this case.

## II.     The Government Should Produce the Examining Doctors' Underlying Raw Notes and Data

Mr. Brockman requests that the Court order the government to produce the Examining Doctors' notes and data from their competency testing and evaluations.

Initially, defense counsel requested "[a]ll medical reports, test results, interview memoranda and other evidence" prepared by the Examining Doctors regarding Mr. Brockman's competency.  Loonam Decl. ¶ 3, Ex. A.  In a written response on March 25, 2021, the government agreed to defense counsel's request.  Loonam Decl. ¶ 5, Ex. B.  In a follow-up meet-and-confer on April 16, 2021, the government confirmed defense counsel's expectations that the underlying data would be provided with the Examining Doctors' reports.  Loonam Decl. ¶ 6.  However, in the government's production on June 21, 2021, the government provided defense counsel with some, but not all, of the Examining Doctors' underlying data, test results, and notes.  Loonam Decl. ¶ 7, Ex. C.  While the government has made subsequent rolling productions, it still has not provided the defense with all of the Examining Doctors' data and notes.  For example, the government has failed to produce (a) the raw testing data and notes from Dr. Darby's testing and examination of Mr. Brockman, (b) notes of Dr. Darby's collateral interview of Dorothy Brockman, (c) notes of Drs. Dietz and Denney's examination of Mr. Brockman, and (d) notes of Dr. Denney's collateral interviews of Peter Romatowski and Kathryn Keneally.

Without the full context of the Examining Doctors' reports, defense counsel is unable to properly evaluate the accuracy of the Examining Doctors' final results and conclusions. Without the Examining Doctors' data and notes, defense counsel cannot assess the full extent to which the evaluators were biased in interpreting the collateral information gathered, the medical diagnostic tests performed, and Mr. Brockman's functional impairment. Numerous courts have authorized the disclosure of such raw notes and data. For instance, in *United States v. Roof*, the court granted the defendant's motion for the "discovery of raw data, test booklets and answers, interpretive reports, interview notes, and any recordings related to examinations" by two court-appointed experts so that the defendant "may prove his assertions" of deficiencies in the reports at the competency hearing. No. 2:15-cr-00472 (D.S.C. July 22, 2015) (Dkt. No. 633); *see also United States v. Deruiter*, No. 2:14-cr-46, 2017 WL 9360879, at *4 (M.D. Fla. Mar. 3, 2017) (granting the government's motion for raw testing data and reports from the defendant's competency evaluation); *United States v. Madison*, No. 6:17-cr-15, 2018 WL 3151676, at *5 n.4, *9 (M.D. Fla. Jan. 22, 2018) (the competency evaluator reviewed the raw data and reports of other evaluators); *United States v. Calek*, 48 F. Supp. 2d 919, 921 n.1 (D. Neb. 1999) (the defendant's competency examiner reviewed the "raw psychological test data he had received from the FMC"); *United States v. Kokoski*, 865 F. Supp. 325, 328, 338 (S.D.W. Va. 1994) (the court granted the government's motion to review the raw data accumulated by two prior competency evaluations).

The Court should order the government to produce all of the Examining Doctors' raw notes as this information is required for defense counsel to adequately analyze the Examining Doctors' reports and to prepare for the competency hearing.

### III.    The Government Should Produce Discovery Within Its Possession, Custody, or Control.

The defense asked the government to produce certain discovery materials to the extent the materials were within the government's possession, custody, or control.  Loonam Decl. ¶ 3, Ex. A.  The defense did not ask the government to obtain these materials for disclosure, but simply to disclose the materials the government possesses.  The requested materials included:

(a) Court rulings or opinions that contain adverse conclusions concerning the qualifications, credibility, or any other issue with regard to the Examining Doctors;

(b) Articles published by the Examining Doctors; and

(c) Transcripts of prior testimony by the Examining Doctors.

Loonam Decl. ¶ 3, Ex. A.

In reply, the government asserted that it "is not in possession of any articles written by the government's experts, transcripts of the government's experts' testimony, or court rulings/opinions containing adverse conclusions regarding government experts."  Loonam Decl. ¶ 5, Ex. B.  The government went on, however, to provide the following contradictory representation:

> To the extent the government obtains any such material from non-public sources, they will be produced in the normal course of discovery.  *The government does not agree to produce materials that are publicly available or otherwise not in the government's exclusive control*.

Loonam Decl. ¶ 5, Ex. B (emphasis added).  Given the government's posturing that it does not presently possess any of the materials, but may obtain them, *none* of the materials are within the government's "exclusive control."  The government's double-speak is merely a rejection of the defense's request to produce discoverable material when it comes into the government's possession.

The government provided a curriculum vitae for Dr. Dietz that is 104 pages long.  It lists "Selected Notable Cases" he worked on going back to 1981.  (Dkt. No. 44, Ex. A) (the "Dietz CV").  The Dietz CV contains a separate list of prior expert testimony from 1990 to the Present that is 14 pages long.  *Id.*  The list includes case names but no docket numbers or courts where the testimony took place or may be located.  *Id.*  The list is also apparently incomplete insofar as it does not detail Dr. Dietz's testimony prior to 1990.  The curriculum vitae for Dr. Denney contains no list of prior testimony even though Dr. Denney has previously testified.  (Dkt. No. 44, Ex. B) (the "Denny CV").  The Denney CV includes more than one hundred publications, in one form or another, going back to 1974, some of which were published in obscure medical journals.  *Id.*  These materials may at best be available in some court reporter's files or library microfiche; yet the government would have defense counsel identify, locate, and obtain this material in lieu of discovery by contending that none of these materials are within the government's "exclusive control." According to the government's expressed understanding of its disclosure obligations, the requested materials need not be disclosed to the defense, even if the materials contradict the Examining Doctors' expected testimony and are sitting on the prosecutor's desk.

Defense counsel disagrees.  The goose chase suggested by the government is no substitute for Rule 16, *Giglio*, and Rule 26.2 disclosures.

In many cases, the government has agreed to turn over such documents in its possession without the need for judicial intervention.  *See, e.g.*, *United States v. Crinel*, No. 15-61, 2016 WL 1059003, at *2–3 (E.D. La. Mar. 16, 2016) (the government agreed to "provide defendants with information about prior cases in which [the expert witness] testified and transcripts of [the expert witness's] testimony, to the extent the government already possesses such materials").

Courts have also ordered the government to turn over materials regarding the expert's prior court experience.  For example, in *United States v. Jennen*, the defendant sought an order requiring the government to provide "[p]rior testimony of government's expert witnesses in any case relating to the subject matter upon which the witness is expected to testify in the case" and "transcripts, notes, and other statements adopted by the expert witness that relates to his or her expertise, studies, publications, or opinions regarding the evaluation of alleged violations in this case."  *United States v. Jennen*, No. CR-05-00162, 2005 WL 5889854, at ¶ 8 (E.D. Wash. Oct. 7, 2005) (defendant's motion for discovery).  The court granted the defendant's motion for discovery to the extent disclosure was required under Rule 16, *Brady*, *Giglio*, and the Jencks Act.  *United States v. Jennen*, No. CR-05-00162, at ¶¶ 9, 15 (E.D. Wash. Oct. 27, 2005) (Dkt. No. 121); *see also United States v. Edwards*, No. 20-cr-282, 2021 U.S. Dist. LEXIS 30283, at ¶ 4 (D. Minn. Feb. 18, 2021) (the court ordered the government to produce expert witness's prior

testimony "to the extent that the information falls within the ambit of *Brady/Giglio* or their progeny").

While the government asserts that it "is not in possession of any articles written by the government's experts, transcripts of the government's experts' testimony, or court rulings/opinions containing adverse conclusions regarding government experts," Loonam Decl. ¶ 5, Ex. B, the defense respectfully requests that the government turn over any such materials that come into the government's possession, custody, or control in preparation for the competency hearing.  This modest request imposes little burden on the government, as the defense is not asking the government to search for or acquire these materials.

## CONCLUSION

Mr. Brockman requests that the Court enter the proposed order requiring the government and the Examining Doctors to make the requested disclosures as required by law.

Dated:  July 6th, 2021

*/s/Jason S. Varnado*
Jason S. Varnado
Texas Bar No. 24034722
SDTX Ad. ID No. 32166
Email: jvarnado@jonesday.com
David S. Smith
Texas Bar No. 24117073
SDTX Ad. ID No. 3398393
Email: dssmith@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone: 832-239-3939
Facsimile: 832-239-3600

Kathryn Keneally (*Admitted Pro Hac Vice*)
New York Bar No. 1866250
Email: kkeneally@jonesday.com
James P. Loonam (*Admitted Pro Hac Vice*)
New York Bar No. 4035275
Email: jloonam@jonesday.com
Georgina N. Druce (*Admitted Pro Hac Vice*)
New York Bar No. 5267208
Email:gdruce@jonesday.com
Colleen E. O'Connor (*Admitted Pro Hac Vice*)
New York Bar No. 5764725
Email: colleenoconnor@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212-326-3939
Facsimile: 212-755-7306

Conor G. Maloney (*Admitted Pro Hac Vice*)
District of Columbia Bar No. 1632584
Email: cmaloney@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: 202-879-3450
Facsimile: 202-626-1700

*Attorneys for Defendant*
*Robert T. Brockman*

## CERTIFICATE OF CONFERENCE

I certify that defense counsel conferred by letters, phone calls, and emails with counsel for the United States on March 16, 2021, March 25, 2021, and June 22–23, 2021, among others, regarding the relief sought in this Motion to Compel Discovery in Advance of the Competency Hearing and the United States indicated it is opposed to the relief sought in this Motion.

*/s/ Jason S. Varnado*
Jason S. Varnado

## CERTIFICATE OF SERVICE

I certify that on this 6th day of July, 2021, I electronically served this document on all counsel of record.

*/s/ Jason S. Varnado*
Jason S. Varnado