IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** § § | |
| v. § | Criminal No. 4:21-cr-00009 |
| § | |
| **ROBERT T. BROCKMAN** § | |

### DEFENDANT'S OPPOSITION TO GOVERNMENT'S SECOND MOTION FOR DISCOVERY ORDER UNDER RULE 17(c)(1)

On May 10, 2021, the government represented to the Court that the government's motion for Rule 17 subpoenas was "fully briefed" by the parties and ready for the Court's consideration. *See* May 10, 2021 Status Conf. Tr. 22, 24-26; U.S.'s Mot. for Disc. Under Rule 17(c) and 45 CFR 164.512(e)(1)(i) (Dkt. 26); Def.'s Partial Opposition (Dkt. 41); U.S.'s Reply (Dkt. 43). However, just three days later, on May 13, 2021, the government emailed a letter to chambers seeking to expand substantially the relief the government was seeking pursuant to its initial Motion for a Discovery Order. Dkt. 71 at 10. The government's letter, which was not filed on the docket, sought authorization for an additional ten subpoenas for individuals and entities. *Id*. The government now submits an additional and overlapping motion for five of the same subpoenas it sought pursuant to its May 13, 2021 letter. Dkt. 71.[1]

---

[1] Although the government has refused to provide the defense with any subpoenas beyond the five attached to its most recent Motion, it has apparently served these individuals and entities with subpoenas returnable on the date of the scheduled competency hearing but inaccurately describes these individuals and entities as having "not complied" with hearing subpoenas that are not yet due. Dkt. 71 at 3.

- 1 -

As with the government's first Motion For Discovery Order (Dkt. 26), the government's present motion contains material inaccuracies and seeks to misuse Rule 17 as a discovery device. For the reasons set forth in the defendant's prior Partial Opposition (Dkt. 41), and as supplemented here, the defense opposes the government's motion.

I. **THE GOVERNMENT'S MOTION MISCHARACTERIZES THE RECORD AND THE SUBPOENAS SOUGHT**

The government represents to the Court that the "Defendant's position has been steadfast — he opposes the government's collection of any evidence beyond what was attached to the [Defendant's Motion For A Competency Hearing]." Dkt. 71 at 5. This is incorrect. The defense only partially opposed the government's initial discovery motion. Dkt. 41. Indeed, the defense consented to eight of the subpoenas originally sought by the government. *Id*. at 2. The defense later consented to an additional two government subpoenas in response to the government's follow-up letter of May 13, 2021. *See* May 13, 2021 Letter from Corey Smith to Judge Hanks (not filed on the docket). On June 16, 2021, the defense consented to yet another subpoena, resulting in an unopposed motion filed by the government. *See* Dkt. 70. And of course, the defense consented to the government's motion for court-designated doctors to conduct a psychiatric examination of Mr. Brockman. *See* Dkt. 45. Accordingly, Mr. Brockman has submitted to brain imaging, a sleep study, a day of examination and testing by Dr. Ryan Darby, and two days of examination and testing by Dr. Park Dietz and Dr. Robert Denney.[2] The government's

---

[2] Unfortunately, the current record indicates that these doctors acted as partisans for the prosecution rather than designated agents of the Court, as set forth in the defendant's Motion for Discovery in Advance of the Competency Hearing. *See* Dkt. 81.

contention that the defense has been "steadfast" in limiting the government's collection of evidence to the defendant's attachments to his original competency motion is without any basis.

The government's current motion not only misstates the record, but also mischaracterizes the subpoenas and the order the government seeks from the Court. This unfortunately requires a careful contrast of the government's representations in its motion regarding the subpoenaed materials and the actual subpoenas.

For example, in its motion, the government claims to seek "professional communications between [Robert Burnett] and the Defendant, through November 2020." (Dkt. 71 at 5, citing Ex. 3). But the subpoena to Mr. Burnett calls for the production of "all correspondence" with Mr. Brockman, including "emails, texts, other electronic messages, faxes, letters, notes, voicemail messages, recorded messages and any other documented or recorded communications." Dkt. 71-4 at 3. The subpoena is not limited to "professional communications," nor is the subpoena period cut off at "November 2020" as represented by the government, but rather, the subpoena spans a period of more than four years from "January 1, 2017 through Present." *Id.*

The government also seeks a court order regarding Mr. Brockman's fishing guide, Bart Chandler. The government represents to the Court that "[t]he evidence requested is probative of Defendant's behavior and interactions with Mr. Chandler during the time period Defendant claims he began exhibiting symptoms of progressive dementia." Dkt. 71 at 6. But a review of the actual subpoena reveals that it calls for records from "January 1, 2017 through Present" relating to "…Evatt Tamine, properties associated with Brockman,

Tamine, or entities including, but not limited to Henke Holdings, Henke Properties, The Frying Pan Canyon Ranch, and Mountain Queen." Dkt. 71-5 at 3. The government does not even attempt to explain the relevance of these records to the upcoming competency hearing.

The government also seeks a court order regarding Mr. Brockman's pastor, Reverend Dr. Jim Jackson. The government represents in its motion that its "inquiry was only related to Dr. Jackson's recent appointment by Defendant to the Board of Directors of Reynolds & Reynolds, and the circumstances leading to that appointment." Dkt. 71 at 6, citing Ex. 5. But a review of the actual subpoena reveals that it calls for the production of

> Any donations made by Robert Theron Brockman, his immediate family members, or Reynolds and Reynolds (R&R), Dealer Computer Services (DCS), Universal Computer Systems (UCS), Universal Computer Systems Holdings (UCSH), and any other subsidiary, derivation or associated entity of the above-mentioned companies to you or entities or organizations under your control.

Dkt. 71-6 at 3. The government does not explain how religious donations by Mr. Brockman, his family members, or any of the listed companies pertain to the competency proceedings.

Additionally, the subpoena to Universal Computer Systems Holding (Reynolds & Reynolds) ("UCSH") goes far beyond what the government represents in its motion. For example, the subpoena calls for "Records showing all donations to Baylor University or the Baylor College of Medicine for the time period 01/01/2018 through present." Dkt. 71-8 at 3. As argued previously by the defendant, this transparent attempt to use a Rule 17(c)

- 4 -

subpoena for the prohibited purpose of obtaining impeachment material.[3]  *See* Dkt. 41 at 10.

In addition, the subpoena calls for UCSH to produce records regarding "compensation packages" for Norman "Tommy" Barras, and "billing records, payments, and invoices from/to outside law firms and/or counsel related to the representation of UCSH, and any of its subsidiaries and affiliates, in any civil litigation from 01/01/2018 to the present." Dkt. 71-8 at 3.  None of this is included in the government's representation to the Court regarding the UCSH subpoena.  Dkt. 71 at 6.

We have not cataloged all of the government's misstatements and material omissions, but we respectfully submit that the Court should examine the actual subpoenas when deciding this issue as opposed to relying on the descriptions contained in the government's motion.  This is critical because, as discussed below, the government must demonstrate that each and every one of its subpoena requests complies with the criteria set forth by the Supreme Court in *Nixon* and its progeny.[4]

## II. THE GOVERNMENT FAILS TO MEET ITS BURDEN UNDER *NIXON*

Tellingly, the government's motion does not even mention, let alone apply, the applicable legal standard for the early production of documents.  The reason is obvious;

---

[3] Rule 17 is not a vehicle to gather impeachment material. *See United States v. Nixon*, 418 U.S. 683, 701–02 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial [under Rule 17(c)]."); *United States v. Gas Pipe, Inc.*, 2018 WL 5262361, at *2 (N.D. Tex. June 18, 2018) ("Materials that have no potential value other than for purposes of impeachment are not subject to pre-trial subpoena under Rule 17(c).") (citing *United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981)).

[4] The government should not be permitted to raise new arguments in its reply. *See Mission Toxicology, LLC v. Unitedhealthcare Ins. Co.*, 499 F. Supp. 3d 350, 359 (W.D. Tex. 2020) ("Arguments raised for the first time in a reply brief are generally waived.") (quoting *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010)).  This is the government's second successive attempt to obtain these subpoenas after it told the defendant and the Court that the Rule 17 motion was fully briefed.  May 10, 2021 Status Conf. Tr. 22, 24-26.

the government cannot meet that standard for the subpoenas it seeks.

Rule 17 subpoenas are "not intended to provide a means of discovery for criminal cases." *Nixon*, 418 U.S. at 698 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). Rather, Rule 17 provides a means to obtain specific, relevant and admissible evidence for use at trial or a pre-trial hearing. Pursuant to Rule 17, the government bears the burden of showing that the subpoenaed documents are (1) relevant, (2) admissible, and (3) have been requested with adequate specificity. *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992) (citing *Nixon*, 418 U.S. at 700). Courts have recognized that sweeping requests for "all" documents or other materials pertaining to an identified category, such as "all communications," are suspect under the strict standard for Rule 17 subpoenas. *See United States v. Potts*, 2017 WL 1314193, *2 (S.D. Tex. Apr. 4, 2017) (citing *United States v. Louis*, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005)). Indeed, courts have found that "[s]ubpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the [party seeking the subpoena] is engaging in the type of 'fishing expedition' prohibited by *Nixon*." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 512-13 (S.D.N.Y. 2013) (quoting *Louis*, 2005 WL 180885 at *5)); *see also United States v. Skilling*, 2006 WL 1006622, at *3 (S.D. Tex. Apr. 13, 2006) (explaining that specificity requirement under Rule 17 "serves to prevent a subpoena from being converted into a license for what the Supreme Court in *Bowman Dairy*, 71 S. Ct. at 679, decried as a 'fishing expedition to see what may turn up.'") (citation omitted); *United States v. Poimboeuf*, 331 F.R.D. 478, 480 (W.D. La. 2019) ("The subpoena is limited to evidentiary materials, and it cannot be used as a fishing expedition to see what may turn

up.  Therefore, requests for 'any and all' documents relating to a category of subject matter are not appropriate."); *United States v. White*, 450 F.2d 264, 268 (5th Cir. 1971) (explaining that "the defendant should not be allowed to conduct a fishing expedition" by requesting "any and all reports" under Rule 16).  Yet that is what the government attempts here.

The government argues that it is only seeking discovery with respect to the competency hearing and not the underlying charged case.  Dkt. 71 at 6-7.  The actual subpoenas do not entirely support this assertion, but it is of no moment.  *Nixon* does not permit the government to use Rule 17 subpoenas as discovery tools for pre-trial hearings either.  The government's broad fishing expedition for any and all of the defendant's communications for years and other broad categories of documents is without legal authority and the government provides none.

## CONCLUSION

For the foregoing reasons, the Court should deny the government's motion.

Dated:  July 11, 2021

*/s/Jason S. Varnado*
Jason S. Varnado
Texas Bar No. 24034722
SDTX Ad. ID No. 32166
Email:  jvarnado@jonesday.com
David S. Smith
Texas Bar No. 24117073
SDTX Ad. ID No. 3398393
Email: dssmith@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone:  832-239-3939
Facsimile:  832-239-3600

Kathryn Keneally (*Admitted Pro Hac Vice*)
New York Bar No. 1866250
Email: kkeneally@jonesday.com
James P. Loonam (*Admitted Pro Hac Vice*)
New York Bar No. 4035275
Email: jloonam@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212-326-3939
Facsimile: 212-755-7306

*Attorneys for Defendant*
*Robert T. Brockman*

## CERTIFICATE OF SERVICE

I certify that on this 11th day of July, 2021, this document was served by electronic filing service on all counsel of record.

*/s/ Jason S. Varnado*
Jason S. Varnado