# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | §   **Cr. No. 4:21cr 009 GCH** |
| | § |
| **ROBERT T. BROCKMAN,** | § |
| | § |
| **Defendant.** | § |
| | § |
| | § |

## UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY IN ADVANCE OF THE COMPETENCY HEARING

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

PROCEDURAL POSTURE ............................................................................................... 1

ISSUE AND STANDARD OF REVIEW ......................................................................... 2

SUMMARY OF ARGUMENT .......................................................................................... 2

ARGUMENT ...................................................................................................................... 3

   I.   The Motion's Request for Communications Is Based on the False Premise that the Government's Relationship with its Experts Is Improper and an Assortment of Other Inapplicable or Unsupported Arguments. ........................................................................ 3

     a)   Defendant's claim that designated competency evaluators cannot be government experts and  must be neutral officers of the Court is false. ...................... 4

     b)   Defendant's remaining arguments claiming entitlement to the communications are equally unsupported and inapplicable in this context. ........................................... 9

        1.   The Constitution ................................................................................... 9

        2.   Rule 26.2 ............................................................................................. 10

        3.   Rule 16 ................................................................................................ 11

        4.   The Court's inherent authority ........................................................... 13

        5.   DOJ policy .......................................................................................... 14

   II.   The "Raw Notes and Data" Defendant Seeks Are Already in his Possession or Otherwise not Discoverable. ............................................................................................ 14

   III.   Defendant Is Not Entitled to Materials that Are Not in the Exclusive Possession, Custody, or Control of the Government. ...................................................................... 17

CONCLUSION ................................................................................................................. 19

## INTRODUCTION

The United States opposes Defendant's Motion to Compel (ECF #81, the "Motion"), which seeks 1) all records of communications between the prosecution team and its experts, 2) rough notes of experts who have already produced complete reports, and 3) publicly available materials the government may obtain in the future as it prepares for the competency hearing.

The Motion cites a lot of cases, but none support Defendant's discovery requests, and other authorities counsel against disclosure. The Motion largely depends on the false premise that it is somehow improper for the United States to engage its own experts to evaluate a defendant's competency, and it bootstraps from there. However, particularly in cases where defendants retain their own experts, it is common for the government to hire its own as well. Defendant's feigned surprise that the governments experts are not neutral arms of the Court adds drama to the Motion, but it is disingenuous, as revealed by a docket filled with reference to the "government's experts." Besides, the Court designated the experts "as the United States' experts to conduct the court-ordered psychiatric or psychological examination" in response to Defendant's motion, which agreed to a protocol for the United States to unilaterally select and retain experts to evaluate Defendant.

The Court should deny Defendant's overreaching Motion.

## PROCEDURAL POSTURE

On October 1, 2020, Defendant was charged in a 39-count indictment in the Northern District of California, 20-cr-371-WHA (N.D. Cal.) ("NDCA") ECF #1. The case was subsequently transferred to the Southern District of Texas. NDCA ECF #76.

1

Pursuant to Defendant's claim he is incompetent to stand trial, this Court initially ordered a competency hearing for June 29, 2021 and imposed other associated deadlines.  ECF #37.  On Defendant's motion, ECF #48, 49, the Court rescheduled the hearing to September 13, 2021.  ECF #53.  After the government submitted its experts' reports, Defendant moved to continue the hearing again, ECF #73, and that request is pending, along with this Motion.

## ISSUE AND STANDARD OF REVIEW

The Motion moves to compel discovery related to experts the government hired to evaluate Defendant's competency.  Discovery rulings are reviewed for abuse of discretion.  *United States v. Mora*, 994 F.2d 1129, 1138-39 (5th Cir. 1993) (affirming district court's ruling that government did not have to disclose DEA Agent's notes of discussions with a confidential informant).

## SUMMARY OF ARGUMENT

The Court should deny the Motion to compel disclosure of communications between the prosecution team and its experts, the experts' "raw data and notes," and materials that the United States does not have but may obtain throughout its hearing preparation.  The Motion is without sufficient legal authority, as it fails to cite a single case in which a court granted the type of relief it seeks.  The Motion's request for communications is animated by the false premise that the government cannot retain its own experts to evaluate Defendant, as well as the feigned surprise that the government's experts did not transform into neutral Court-appointed experts after they were designated and ordered to conduct competency examinations.  The request for "raw data and notes"

2

is really just a request for rough notes that the government's experts took while being recorded or while in the presence of attorneys for Defendant and his wife.  Finally, the request for publicly available hearing preparation materials fails to acknowledge the well-established line of Fifth Circuit case law related to discovery of public materials.  In sum, all of Defendant's requests amount to a thinly veiled attempt to get its hands on government attorney work product.

## ARGUMENT

I.   **The Motion's Request for Communications Is Based on the False Premise that the Government's Relationship with its Experts Is Improper and an Assortment of Other Inapplicable or Unsupported Arguments.**

Defendant's claim that it is "necessary to evaluate the prosecutors' relationship" with the experts they unilaterally selected, retained, and paid to evaluate his competency (the "Government's Experts") is based on the false premise that, upon being designated to conduct a competency examination, the Government's Experts "were to act as neutral agents of the Court."[1]  Motion at 3.  Defendant cites no Court Order or agreement of the parties to this effect, instead relying on nearly a dozen cases, none of which hold that the Court's designation transforms a government expert into a court-appointed expert.[2]

On the contrary, although it is common for a single expert (who is often either agreed to by the parties or appointed by the court) to conduct a competency evaluation, it is also common for multiple experts to conduct competency exams.  In such cases, the

---

[1] The prosecution team has, of course, repeatedly instructed its experts to follow the evidence regardless of the outcome.

[2] Furthermore, none of the cases cited by Defendant relate to discovery at all, let alone a defendant's right to scrutinize the prosecution team's communications with its experts.

UNITED STATES' OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL
Case No.: 4:21-CR-0009-GCH

experts can be either court-appointed or retained by the parties.  In this case, which began

with Defendant presenting the Court with the opinions of numerous doctors claiming he

was incompetent, *see* Def.'s Mot. for Competency Hr'g, NDCA ECF #64, the parties

*agreed* that the government could select its own experts to evaluate Defendant.  *See* Def's

Resp. to USA's Expert Notice, ECF #45 at 1-2 (attaching "proposed order to designate the

Government's Experts to conduct [the statutory examination]"); Court Order at ECF #59

(adopting Defendant's proposed order) ("ORDERED that [the Government's Experts] are

*designated as the United States' experts* to conduct the court-ordered psychiatric or

psychological examination") (emphasis added).

      *a) Defendant's claim that designated competency evaluators cannot be government experts and must be neutral officers of the Court is false.*

Defendant cites no case that precludes a government expert from being designated

by a court and ordered to conduct a competency evaluation or hold that courts may only

designate "neutral" or court-appointed experts, because that is not the law.  In fact, although

competency litigation often proceeds with an evaluation from just one neutral expert, it is

common for courts to specifically appoint government experts in these cases.  *See, e.g.*,

*United States v. Weston*, 36 F. Supp. 2d 7, 10 (D.D.C. 1999) (when multiple defense experts

have "unrestricted access to the defendant," the court may order defendant to undergo

another competency examination by government expert); *United States v. Chun*, 2019 U.S.

Dist. LEXIS 210506, at *11 (E.D. Mich. Dec. 6, 2019) (after multiple examinations,

including by defense expert, court granted government motion for defendant to be

evaluated by its own experts); *United States v. Mbirika*, No. 12 Cr. 602, 2013 WL 5295195,

at *1 (S.D.N.Y. Sept. 16, 2013) ("The Court has ordered an evidentiary hearing and, in connection therewith, has authorized a psychiatric examination of the defendant by the government's expert in advance of the hearing.").  Defendant not only fails to cite authority in support of his extreme position that a government expert may never conduct a competency examination under § 4247(b), but also fails to mention that this position has been rejected in the past.  *See, e.g.*, *United States v. Merriweather*, No. 2:07–cr–00243, 2014 WL 637051, at *4 (N.D. Ala. Feb. 18, 2014) ("Merriweather argues, however, that the language in 18 U.S.C. § 4247(b) that '[e]ach examiner be designated by the court,' means that the expert who examines Merriweather must be a neutral court expert and not an expert selected by the government.  The court finds no support for such a contorted reading of the statute.").

Thus, as shown in the examples cited above, it is both common and appropriate for the court to designate a government expert to conduct a competency examination.  More than that, providing government experts a fair opportunity to examine defendants is necessary in some cases—like this case—to ensure the court is adequately equipped with enough information to make a competency determination.[3]  For example, in *United States v. Weston*, the court held that it was necessary for a government expert to perform a second

---

[3] This is hardly Defendant's only attempt at preventing the Court from seeing the full picture.  Defendant has resisted the government's efforts to obtain documentary evidence requested by the Government's Experts and, even though he put his ability to assist his attorneys in dispute, he refused to answer the Government's Experts' questions about his discussions with his attorneys regarding this case, even though the government can only use those statements in the competency hearing.  *See* ECF #59 ("no statement of the defendant during such examination . . . may be used directly or indirectly by the government except in this Competency Proceeding").

competency examination after the first court-appointed expert determined the defendant to be incompetent.   36 F. Supp. 2d at 12-13.   The court highlighted that because defense experts had abundant access to the defendant and the initial court-appointed witness intended to testify exclusively on defendant's behalf, the government would be unable to effectively rebut any expert testimony without an expert of their own to perform an evaluation.   *Id.* at 10.   So too here.

Especially in cases like this, where a well-resourced litigant has lined up a team of experts to support one conclusion, it is common for the opposing party to seek its own experts.   Defendant does not dispute this, but claims that "the prosecution has no right, or legal mechanism, to compel a criminal defendant to sit for days of medical testing and free-flowing conversation with the prosecution's own partisan experts…"   Motion at 4.   That is, Defendant claims that the government can hire experts but that those experts cannot access the subject of the competency dispute.   But this claim is without authority.   All but one of Defendant's cases (*Pogany*)[4] address different issues, including whether the court should appoint an expert for an indigent defendant or whether a BOP examiner will suffice as the sole examiner.   *See, e.g.*, *United States v. Fratus*, 530 F.2d 644, 649-50 (5th Cir. 1976); *United States v. Sampson*, 12 F. Supp. 3d 214, 216-17 (D. Mass. 2014).[5]   In those

---

[4] In *Pogany*, the Third Circuit reversed because the trial court *only* considered the government expert's opinion, failed to appoint another examiner, and did not even hold the competency hearing it said it would hold.  465 F.2d 72, 77-79 (3d Cir. 1972).

[5] Furthermore, although the Motion fails to acknowledge it, many of Defendant's cases relate to the outdated 1949 version of the competency statute, which required competency exams be conducted by "at least one qualified psychiatrist, who shall report to the court." *See* Act of Sept. 7, 1949, ch. 535, 63 Stat. 687 (codified as amended at 18 U.S.C. § 4244). Congress significantly overhauled the statutory framework in the wake of John

(continued...)

UNITED STATES' OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL
Case No.: 4:21-CR-0009-GCH

cases, the court appointed a neutral expert to serve as the competency examiner. Importantly, the defendants in *Fratus* and *Sampson* could not privately retain partisan experts to examine them or render an expert opinion on competency; thus, the courts ensured that there should be neutral examiners responsible to the court. *Fratus*, 530 F.2d at 649 (denying ineffective assistance of counsel claim when counsel failed to seek funds to hire a defense expert); *Sampson*, 12 F. Supp. 3d at 217 (in denying defendant's request for a non-BOP examiner, court ordered no *ex parte* communication with BOP examiner).

The circumstances of this case could not be more different. Defendant's initial motion for a competency hearing was supported by six doctors employed by the Baylor College of Medicine, *supra*, an institution to which Defendant has donated tens of millions of dollars. *See* Gov't Resp., NDCA ECF #69, pp. 7-8. Defendant recently informed the government that he hired another expert, Dr. Marc E. Agronin, to conduct yet another competency examination. Defendant's cases stand for an obvious proposition, but one that is not present here: when a defendant cannot access his own expert, the court should either appoint one for him or appoint a neutral expert. Defendant's cases do not stand for the primary claim of his Motion: that it is somehow inappropriate for the Government's Experts, having been designated by the Court and ordered to conduct competency

---

Hinckley's high-profile acquittal on charges related to the attempted assassination of President Ronald Reagan. *See* Insanity Defense Reform Act of 1984, ch. IV, 98 Stat. 2057, 2057-68 (1984) (codified as amended at 18 U.S.C. §§ 4241-4247). In its overhaul, Congress removed the requirement that examiners "shall report to the court" and replaced it with the requirement that one or more "licensed or certified psychiatrist or psychologist" be "designated by the court." 18 U.S.C. § 4247.

Therefore, any implication that the examining expert must report to or communicate with the Court alone comes from an outdated version of the statute.

examinations, to continue to advise and counsel the prosecution team on competency-related matters, as they did before they were so designated.

The Motion's position is especially hard to square with Defendant's agreement to a protocol that contemplated the United States unilaterally selecting and paying for experts, notifying Defendant and the Court of the identities of these experts, and having the Government's Experts designated by the Court to perform the competency evaluations. *See, e.g.*, Def's Unopposed Mot. for Competency Hr'g Scheduling Order, ECF #32 ("the government shall notify the Court of the identity of the [experts] to be designated"); ECF #45, *supra* p. 3. Defendant alternatively suggests that, upon designation, the Government's Experts must transform into neutral arms of the Court, even though they were not appointed by the Court but hired by the government, with whom they had extensive *ex parte* communications before designation. Defendant's claimed surprise that the Government's Experts are "partisan" is especially interesting given that he has referred to them as "the government's experts" throughout the docket. *See, e.g.*, ECF #s 41, 45, 48, 49.[6]

Defendant's request for communications hinges on his supposed need "to evaluate the relationship" between the Government's Experts and the prosecution team. But the relationship is not in dispute: The Government's Experts are the government's experts. Defendant's feigned surprise is betrayed by the docket, where he, the government and the

---

[6] The government and the Court have also referred to the Government's Experts as such. *See, e.g.*, Gov't Mot. for Disc. Order Under Rule 17(c), ECF #26 (refers to "the government's medical experts" and includes affidavits Defendant and the Court had no hand in drafting); Court Order, ECF #59 (Court designates "the United States' experts" to conduct statutory competency examination).

8

Court have referred to the Government's Experts as such.  The Court's designation of the Government's Experts to conduct Court-ordered competency exams was entirely proper (never mind that Defendant agreed to the designation and order).  Any notion that the government has "co-opted" a neutral court witness, Motion at 11, rests on the mistaken premise that as soon as the Government's Experts were designated by the Court, they were suddenly barred from serving as the government's experts.  That premise, and Defendant's attempts to invade the governments communications with its experts, must be rejected.

   b) *Defendant's remaining arguments claiming entitlement to the communications are equally unsupported and inapplicable in this context.*

Defendant cites a hodgepodge of authorities, including the Constitution, Federal Rules of Criminal Procedure, the court's inherent authority, and Department of Justice Policy, to support his motion to compel the communications, none of which are on-point or persuasive.

### 1.  The Constitution

Defendant claims entitlement to the communications because he says they may contain *Brady* or *Giglio* material.  But the obligation to disclose such material falls to the government—it is not Defendant's prerogative to comb through the government's emails and notes in search of what he may see as *Brady*.  *See Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final.").  To establish a *Brady* violation, the Fifth Circuit requires more than "a colorable" claim that undisclosed material favors a defendant.  *See United States v. Stanford*, 823 F.3d 814, 841-42 (5th Cir. 2016) ("Stanford implies that the government should have disclosed

any notes from its interviews with witnesses . . . Yet, putting aside that the 'colorable claim' standard is not the law in this circuit . . . [an out-of-circuit 'colorable claim' case Stanford cited] stated that it was 'unwise to infer the existence of *Brady* material based upon speculation alone.'").  In *Stanford*, the defendant argued that the government should have disclosed notes from interviews with the government's cooperating witnesses because they may have presented *Brady* material.  *Id.*  The Fifth Circuit rejected the request as "pure conjecture," stating that even if the government had notes from witness interviews, the defendant could not point to any particular documents which he believed violated *Brady*. *Id.*  Defendant's sweeping request for discovery of all communications between the government and its experts because he says they may contain *Brady* or *Giglio* material is similarly pure conjecture.

The government is aware of its *Brady* obligations, which are no different in this case than in any other.  Defendant's attempt to fabricate *Giglio* material by suggesting that the government improperly engaged in *ex parte* communications with the experts it hired, thereby subjecting the Government's Experts to impeachment, fails because it depends on the false premise discussed above.

### 2.  Rule 26.2[7]

This rule requires the government to disclose prior statements that a witness "makes and signs, or otherwise adopts of approves."  Fed. R. Crim. P. 26.2(f)(1).  Every

---

[7] Defendant offers no support for the proposition that Rule 26.2 (the successor to the Jencks Act) applies to competency proceedings.  Rule 26.2(g) lists the settings in which it applies, but does not mention competency hearings.

UNITED STATES' OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL
Case No.: 4:21-CR-0009-GCH

email exchanged between the government and its witnesses does not constitute a statement under the rule and this obligation does not give defendant a broad right of access to these emails. *See United States v. Hamilton*, No. CR11–415–JCC, 2012 WL 5834893, at *6 (W.D. Wash. Oct. 4, 2012) ("The Court agrees that emails, like notes, are not discoverable under the Jencks Act 'when the notes are not complete, are truncated in nature, or have become an unsittable mix of witness testimony, investigators' selections, interpretations, and interpolations.'"); *United States v. Arriaga-Martinez*, No. 2:13-CR-00235, 2013 WL 2617025, at *2 (W.D. Tex. June 10, 2013) ("Jencks Act applies only to a written statement 'signed . . . or approved' by the witness," and "[a] government agent's notes which do not fit this description are not discoverable."). Defendant has the Government's Experts' reports. Those are their "approved" statements under Jencks.

### 3.  Rule 16

Defendant argues that Rule 16 mandates disclosure of the communications as the "bases and reasons" of the expert opinions, but neither of the two cases he cites holds or indicates that communications with expert witnesses should be considered as such. One holds that the court was within its discretion to generally require that the government disclose data and information considered by its expert, and the other does not address Rule 16 at all, but is offered to remind the Court that it has "latitude" with regard to discovery management. Motion at 9. The expert reports, which were filed under seal at ECF #78-80, each begin by informing the reader of all the sources of information considered in drafting the reports. Defendant's assertion that Rule 16(a)(1)(G) requires more is inconsistent with law. After all, "Rule 16(a)(1)(G) does not require recitation of the chapter

and verse of the experts' opinions, bases and reasons.  No rule, statute, or decision necessitates such comprehensive disclosure." *United States v. Cerna*, No. CR 08–0730 WHA, 2010 WL 2347406, at *2 (N.D. Cal. June 8, 2010); *see also United States v. McCluskey*, CR. No. 10-2734 JCH, 2013 WL 12329921, at *2 (D.N.M. July 22, 2013) (emphasizing that "extensive discussion [of bases and reasons] is not required in the Rule 16 summary").  In filing their expert reports, the government has met its obligations under Rule 16(a)(1)(G).

In addition, Rule 16(a)(2) protects the government's communications with its experts as work product.  Defendant claims this view is "misplaced," only applies to "internal government documents" (not communications with the Government's Experts), and does not alter discovery obligations under Rule 16(a)(1)(G). Motion at 14.  Defendant cites no authority for these claims.  But the Fifth Circuit explains that "the phrase 'reports, memoranda, or other internal government documents made by the attorney for the government' was meant to incorporate the 'work product' language of *Hickman v. Taylor*, 329 U.S. 495 (1947),[8] into the rule to ensure that government attorneys' litigation preparations are protected from discovery." *United States v. Mann*, 61 F.3d 326, 331 (5th Cir. 1995).  As a result, "a party's pre-trial communications with an expert that it has 'retained or specifically employed to provide expert testimony in the case' constitutes privileged work product and [are] therefore presumptively immune from discovery."

---

[8] *Hickman* explains that "work product," which typically includes "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs" must be privileged in the interests of efficiency and justice.  329 U.S. at 511-12.

*United States v. Mix*, No. 12–171, 2013 WL 3874900, at *2 (E.D. La. July 25, 2013).

Defendant does not dispute that this privilege exists, but circumvents it by claiming it does

not apply to court-appointed experts, again, citing no authority to support the proposition

and relying on his false premise about the nature of the experts.  When that premise

collapses, so does Defendant's Rule 16 argument, leaving him to fall back on the Court's

"inherent authority."

### 4.  The Court's inherent authority

Defendant repeatedly asks the court to invoke its inherent authority to mandate

disclosure of all communications between the government and its experts.  He asks the

court to do so as a catch-all should the Court notice that his request is not supported by the

Constitution or Federal Rules of Criminal Procedure.  Defendant insists this authority is

"well-settled," but fails to cite a single case in which a court orders the discovery of

communications like these pursuant to its inherent authority.  In fact, in the only case

Defendant cites about the court's inherent authority to grant discovery beyond what is

prescribed in Rule 16, the court elects *not* to exercise that authority stating that the case

"does not require such an extraordinary use of the court's discretion."  *United States v.

George*, 786 F. Supp. 11, 15 (D.D.C. 1991).  Contrary to Defendant's representations,

"[t]he Court's inherent authority to order discovery in criminal matters is not a well-

developed concept."  *United States v. Garrison*, 147 F. Supp. 3d 1173, 1179 (D. Colo.

2015).  Defendant's reliance on Rule 57(b) to invoke the court's inherent authority is also

unavailing, as he fails to acknowledge a critical condition of that rule—the absence of

13

controlling law.  *See* Fed. R. Crim. P. 57(b).[9]  Because this inherent authority is not well-developed and is an extraordinary use of the Court's power, the Court should decline to use it here where there is settled law addressing defendant's claims.

### 5.  DOJ policy

Defendant's last redoubt is not a source of law, but the Justice Manual, and he cites a portion of this policy manual that applies to "Criminal Discovery Involving Forensic Evidence and Experts."  U.S Dep't of Just., Just. Manual § 9-5.003.  By definition, the Government's Experts conducted "forensic" evaluations of Defendant, but this section does not appear to apply to this circumstance.  For one, it notes that it applies to "such specialties as DNA testing, chemistry, and ballistics and impression analysis, among others."  *Id*.  Second, Defendant's claim that the policy's guidance to give defendants access to a forensic expert's "case file" applies to communications between the Government's Experts and prosecution team is a stretch, and he cites no case in which the United States took this position.  Furthermore, as Defendant must acknowledge, the policy does not require absolute disclosure of all communications, but rather the disclosure of communications under "under *Brady/Giglio*, Jencks, or Rule 16."  *Id.*

### II.  The "Raw Notes and Data" Defendant Seeks Are Already in his Possession or Otherwise not Discoverable.

Defendant requests discovery of all rough notes and underlying data from the doctors' competency evaluations.  Although Defendant combines them, there is a big

---

[9] The one Rule 57(b) cases Defendant cites, *United States v. Catalan Roman*, related to a court ordering disclosure in a death penalty case in the face of ambiguities in the Federal Death Penalty Act.  376 F. Supp. 2d 108, 115 (D.P.R. 2005).

difference between 1) raw data an expert obtained and relied on to form an opinion and 2) rough notes the expert makes in the course of the expert's work.  While the government has and will continue to disclose all test data, Defendant's request for rough notes should be denied.  Defendant cites no authority to support his contention that he has a blanket entitlement to all rough notes, because the cases point the opposite direction.  "The Fifth Circuit does not require rough or original notes to be retained or made available for discovery purposes." *United States v. Springer*, No. H–14–20–003–S, 2015 WL 1407915, at *7 (S.D. Tex. Mar. 25, 2015) (denying motion to produce all handwritten notes of cooperating witnesses)*; United States v. Brown*, 303 F.3d 582, 592 (5th Cir. 2002) (denying request for rough interview notes when the contents of the notes were otherwise captured in reports turned over to the defendant).

The government is not required automatically produce rough notes from the competency examinations because it has already disclosed the experts' reports.  Thus, the government will treat these notes consistent with how it treats rough notes of interviews that ultimately lead to the production of a formal memorandum or FBI Form 302.  This policy is consistent with law—the government is not required to disclose rough notes when their contents are captured elsewhere in disclosed materials or otherwise available to a defendant.  For example, in *United States v. Ramirez*, an agent destroyed his rough notes after he had summarized them in his report.  954 F.2d 1035, 1038-39 (5th Cir. 1992).  The court found that this did not prejudice defendant because "the information contained in [the notes] was available to [defendant] in other forms, such as the summary and the DEA's report."  *Id.*; *see also Brown*, 303 F.3d at 592 (finding that there was no *Brady* or Jencks

UNITED STATES' OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL
Case No.: 4:21-CR-0009-GCH

Act violation in destroying rough notes "after the notes have served their purpose of assisting in the preparation of interview reports."). Defendant possesses the Government's Experts' reports and all underlying data. He also has, pursuant to his request for an order requiring it, video recordings of all the exams except for the cognitive testing conducted by Dr. Denney. To the extent that the Government's Experts took notes during these recorded exams, those notes would be duplicative of the video recordings.

Finally, Defendant has equal or greater access to other material he seeks. For example, Defendant requests notes Dr. Denney took during his interviews of Defendant's lawyers, Kathy Keneally and Peter Romatowski. Defendant's attorneys declined the government's request to record these interviews and would not allow the government to send an agent to take notes. But for each interview, Defendant had two additional attorneys present to take notes. Similarly, Defendant seeks notes Dr. Darby took during his interview of Defendant's wife—Mrs. Brockman's attorney insisted that the interview not be recorded and would not permit a government agent to take notes. Defendant's request for the Government's Experts' notes of these interviews is inappropriate when Defendant already has access to the notes his attorneys and (presumably) his wife's attorneys took of the interviews they would not allow to be recorded. In sum, Defendant's requests for the Government's Experts' rough notes should be denied because the notes are redundant— the interviews are already summarized in the experts' reports and Defendant already has access to his and his wife's attorney's notes of these same interviews.

### III.   Defendant Is Not Entitled to Materials that Are Not in the Exclusive Possession, Custody, or Control of the Government.

Defendant's final request is for publicly available materials the government does not have, but may obtain in the future during its preparation for the competency hearing. Specifically, Defendant requests articles written by the Government's Experts, transcripts of their testimony, and court rulings that contain adverse findings against them. Defendant acknowledges that the government does not have any of the requested materials in its possession, but argues that the government should be automatically required to disclose such materials should they come into its possession. To the extent that the government—in preparation for the competency hearing—obtains the requested materials from public sources, it should not be required to disclose them. What Defendant describes as a "modest request" is really his attempt to peek at the government's witness preparation materials and gain advantage by knowing what articles, transcripts, and court findings the government knows about and which it might be blind to.

While the government continues to acknowledge and abide by its disclosure obligations, it must emphasize that, even in the *Brady* context, it "bears no responsibility to direct the defense toward potentially exculpatory evidence that is either known to the defendant or that could be discovered through the exercise of reasonable diligence." *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004). Defendant attempts to shift responsibility onto the government to provide him with items well-within his own access, yet the responsibility to conduct due diligence rests with Defendant. *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) ("When evidence is equally available to both the defense

and the prosecution, the defendant must bear the responsibility of failing to conduct a diligent investigation.").

Defendant cites several cases claiming that courts often order the government to turn over materials about an expert's experience, but this does not paint the whole picture. While courts may order discovery of these items, it is only against the backdrop of *Brady*, which does not require the government to disclose materials that Defendant has equal access to through reasonable diligence.  *See Herrera v. Collins*, 954 F.2d 1029, 1032 (5th Cir. 1992), *aff'd*, 506 U.S. 390 (1993) (holding that the prosecutor did not withhold *Brady* material when newspaper clippings suggested that it was the defendant's brother, not the defendant, who committed a murder because the defense had equal, if not more, access to the information than the prosecution); *United States v. Infante*, 404 F.3d 376, 386-87 (5th Cir. 2005) (holding that no *Brady* violation occurred when the information at issue was a matter of public record and defendant could have obtained the file upon request); *United States v. Cramer*, No. 1:16-CR-26, 2019 WL 7821080, at *6 (E.D. Tex. Feb. 20, 2018) (holding that there was no *Brady* violation when the government did not disclose BOP statistics which were publicly available on the BOP website).

Courts have specifically denied such *Brady* requests seeking transcripts of prior testimony.  *See United States v. Delgado*, 350 F.3d 520, 527 (6th Cir. 2003) (denying defendant's *Brady* claim when government did not turn over prior testimony because the materials were available to the defendant "from other sources than the prosecution").  The requested materials, should they even come into the government's possession, are available to Defendant "from other sources than the prosecution."  Put simply, the Fifth Circuit does

18

not require disclosure of materials, even if they come into the government's possession, when they are publicly available to the defendant through his own reasonable diligence.

## CONCLUSION

The Motion throws a lot at the wall, but nothing sticks.  In 20 pages, it does not cite a single case in which a court granted the type of relief he now seeks, whether for communications between the government and its experts, rough notes, or items not in the government's exclusive control.  The Court should deny this overreaching Motion for want of legal support.


Respectfully submitted this 27th day of July 2021,

> DAVID A. HUBBERT
> Acting Assistant
> Attorney General
> Tax Division
>
>
> */s/ Christopher Magnani*
> COREY J. SMITH
> Senior Litigation Counsel
> Department of Justice
> Tax Division
> Mass Bar No. 553615
> corey.smith@usdoj.gov
> Tele: (202) 514-5230
> LEE LANGSTON
> CHRISTOPHER MAGNANI
> Trial Attorneys
> Department of Justice
> Tax Division
>
> Attorneys for United States of America

## **<u>Certificate of Service</u>**

     I the undersigned do hereby certify that on July 27, 2021, I electronically filed the foregoing with the Clerk of Court using the ECF electronic filing system, which will send notice of electronic filing to Defendant's counsel of record.

/s/ *Christopher Magnani*
Trial Attorney
Department of Justice
Tax Division
christopher.magnani@usdoj.gov
(202) 307-6408

20
