# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal No. 4:21-cr-00009** |
| | § | |
| **ROBERT T. BROCKMAN** | § | |

## DEFENDANT ROBERT T. BROCKMAN'S REPLY
## IN SUPPORT OF HIS MOTION TO COMPEL
## <u>DISCOVERY IN ADVANCE OF THE COMPETENCY HEARING</u>

# TABLE OF CONTENTS

**Page**

I.   The Government Should Disclose Its Communications with the Examining
     Doctors ............................................................................................................. 3

     A.   The Court Designation Required By Statute Is Meaningful And
          Renders The Examining Doctors Agents Of The Court ............................. 3

     B.   The 1984 Amendments Did Not Alter The Requirement That Court-
          Designated Examiners Act As Neutral Agents Of The Court...................... 9

     C.   The Statute Does Not Create A Bifurcated Scheme For Court-
          Appointed Versus Retained Experts .......................................................... 12

     D.   The Government Relies Upon Case Law that is Inapposite or
          Contradicts the Government's Position....................................................... 13

II.  The Government Must Produce the Examining Doctors' Notes........................... 16

III. The Government Must Produce Examining Doctors' Materials Within Its
     Possession, Custody, or Control........................................................................ 18

## **INTRODUCTION**

At the direction of a court-designated, but now admittedly partisan government expert, Mr. Brockman underwent a positron emission tomography (PET) scan of his brain to determine if there were objective physical indications that Mr. Brockman was suffering from dementia, Alzheimer's Disease, or another condition that could affect his ability to understand the charges and assist counsel in his defense.  Loonam Decl. ¶ 2, Ex. 1.[1]  The PET scan was interpreted by a neutral diagnostic radiologist at Houston Methodist Hospital, who found evidence of early dementia or Alzheimer's disease.  *Id.*  Rather than investigate this objective medical evidence, the government's lead examiner, Dr. Park Dietz, dismissed the neutral radiologist's findings as the product of ██████████  Loonam Decl. ¶ 4 (Dr. Dietz Expert Report at 28).  This is perhaps the most startling of dozens of examples of their own confirmation bias by experts who were selected by the prosecution, who abused the imprimatur of a neutral designation by the Court, and who the prosecution now concedes acted as partisan government experts.

As will be further detailed in the defendant's expert reports, subsequent follow-up imaging, which the government specifically chose not to pursue, as interpreted by a neutral radiologist unaffiliated with Mr. Brockman, revealed that Mr. Brockman suffers from "diffuse loss of the gray-white matter distinction, most pronounced in the frontal and temporal lobes," with the impression "indicating moderate to frequent amyloid neuritic plaques."  Loonam Decl. ¶ 3, Ex. 2.  These objective findings are consistent with a

---

[1] The Loonam Declaration has been filed under seal as a separate document in accordance with the Court's February 1, 2021 Order that the expert reports in this competency proceeding be sealed.  Dkt. 36 at ¶ 6.

diagnosis of Parkinson's disease with dementia, Lewy body dementia, and Alzheimer's disease, which is obviously relevant to a determination of Mr. Brockman's cognitive ability to assist in his own defense.  The imaging is also consistent with neuropsychological testing of Mr. Brockman spanning four years that indicates Mr. Brockman has dementia.  The conditions indicated by the imaging and testing are all progressive and irreversible.

In his Motion to Compel Discovery in Advance of the Competency Hearing (Dkt. 81) ("Motion to Compel"), Mr. Brockman seeks an order requiring the government to disclose its communications with the court-designated experts, Dr. Park Dietz, Dr. Robert Denney, and Dr. Ryan Darby (collectively "Examining Doctors"), to expose to the Court the improper role of the prosecutors and the Examining Doctors in skewing the applicable statutory scheme in favor of their confirmation bias that led the Examining Doctors to ignore and avoid evidence contrary to the government's predetermined narrative that the defendant is feigning the inability to assist counsel in his defense.  *See, e.g.*, Dkt. 26 at 8–9.

In addition, Mr. Brockman seeks basic expert discovery necessary for the defense to prepare for the upcoming competency hearing, including:

(a) All notes relied on by the Examining Doctors in reaching their opinions; and

(b) All (i) articles published by the Examining Doctors, (ii) transcripts of testimony by the Examining Doctors, and (iii) court rulings or opinions that contain adverse conclusions concerning the qualifications, credibility, or any other issue with regard to the Examining Doctors, that are within the government's possession, custody, or control.

## ARGUMENT

**I.    The Government Should Disclose Its Communications with the Examining Doctors**

Mr. Brockman requests that the Court order the government to produce records of communications between the government and the Examining Doctors to shed light on (1) the extent to which the Examining Doctors acted in a partisan manner contrary to the applicable statutes and the Court's order, and (2) the source of the Examining Doctors' bias in conducting their examinations.  The government opposes this motion, arguing that the Court's designation does not prevent the designated experts from acting as partisan members of the prosecution team.  The government is wrong.

### A.    The Court Designation Required By Statute Is Meaningful And Renders The Examining Doctors Agents Of The Court

In opposing the Motion to Compel, the government admits that the Examining Doctors acted as partisans, akin to FBI or IRS agents.  Dkt. 89 at 15 ("United States' Opposition") (analogizing the Examining Doctors' interview notes to "rough notes of interviews that ultimately lead to the production of a formal memorandum or FBI Form 302").[2]  The government asserts that the Examining Doctors "did not transform into neutral Court-appointed experts after they were designated and ordered to conduct competency examinations." Dkt. 89 at 2.  But the government misapprehends the significance of the court designation and what was required of the designated experts.

---

[2] This is remarkable given that the prosecutors demanded that defense counsel not attend Mr. Brockman's examinations as part of the testing protocol, and then the Court-designated experts proceeded to ask questions clearly intended to invade the defense camp.  *See* Dkt. 81 at 5 n.2.

The Court ordered Mr. Brockman examined pursuant to the specific statutory scheme set forth by Title 18, United States Code, Sections 4241(b) and 4247(b) and (c). Dkt. 36.  These statutes must be interpreted by giving the language its ordinary meaning. *See, e.g.*, *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020) ("This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment. After all, only the words on the page constitute the law adopted by Congress and approved by the President.").  Every word of the statute must be given effect.  *See, e.g.*, *Asadi v. G.E. Energy*, 720 F.3d 620, 622 (5th Cir. 2013).  Moreover, courts are bound by the "fair implication[s]" of a statute's text.  *Dorsey v. United States*, 567 U.S. 260, 274 (2012); *Abecassis v. Wyatt*, 999 F. Supp. 2d 962, 965 (S.D. Tex. 2014) (recognizing that Congress can act through the "clear implication[s]" of a statute); *F.D.I.C. v. Floyd*, 827 F. Supp. 409, 413 (N.D. Tex. 1993) (relying on the "clear implication in the wording" to interpret a statute).

Applying these canons of statutory construction to the statutes at issue makes their meaning plain.  Section 4247(b) requires that "[e]ach examiner shall be designated by the court."  18 U.S.C. § 4247(b).  To "designate" as used in the statute means "to choose someone officially to do a particular job"[3] or "to appoint (a person or thing) to an office or function."[4]  Thus, court-designated agents, once chosen or appointed by the Court, act

---

[3] *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/designate (last visited Aug. 3, 2021); *see also Collins Dictionary*, https://www.collinsdictionary.com/us/dictionary/english/designate (last visited Aug. 3, 2021) ("When you designate someone as something, you formally choose them to do that particular job.").

[4] *Oxford English Dictionary*, https://www.oed.com/view/Entry/50844?rskey=vb8nE7&result=2&isAdvanced=false#eid (last visited Aug. 3, 2021).

under the color of the Court's authority, which is neutral in every case or controversy that comes before it. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986) (explaining that Article III, § 1 guarantees "independent and impartial adjudication by the federal judiciary"); *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 582–83 (1985) ("Article III, § 1, establishes a broad policy that federal judicial power shall be vested in courts whose judges enjoy life tenure and fixed compensation.   These requirements . . . assure impartial adjudication in federal courts."); *Moore as Next Friend to Moore v. Tangipahoa Par. Sch. Bd.*, 912 F.3d 247, 251 (5th Cir. 2018) (discussing how court-appointed "special masters are obligated to be impartial and objective in the pursuit of their duties"); *PIC Grp., Inc. v. LandCoast Insulation, Inc.*, No. 1:09-CV-662, 2011 WL 1342951, at *1 (S.D. Miss. Mar. 4, 2011) (the court appointed its own Special Master "in light of . . . the need to appoint a neutral expert who can assist the Court with both legal and technical computer issues").   It follows that examiners designated by the Court are required to act in a neutral, non-partisan manner. *See Dorsey*, 567 U.S. at 274.

Section 4247(c) reinforces this plain language and clear implication of the statute. This section requires the designated expert to file his or her report "with the court with copies provided to the counsel for the person examined and to the attorney for the Government."   18 U.S.C. § 4247(c).   This logistical detail of Section 4247(c) is telling because it places the government and the defendant on equal footing, receiving only copies of the expert report, and requires the designated experts to submit their reports directly to

the Court, consistent with their role as the Court's agent.[5] The "procedures established by § 4247, which direct that the reports produced by the court-designated examiners are to be submitted to both parties and the court, support the conclusion that the designated examiners are not intended to function as advocates for one side or the other." *United States v. Wilkinson*, No. 07-12061, 2008 WL 427295, at *13 & n.6 (D. Mass. Feb. 14, 2008) (discussing § 4247(b) in the context of a § 4248(a) sexual dangerousness evaluation).

A long line of case law interpreting Section 4247 and the predecessor statute, 18 U.S.C. § 4244, confirms the statute's plain language: psychiatric and psychological experts designated pursuant to this statutory scheme must act as neutral experts in service to the Court. *See, e.g.*, *United States v. Fratus*, 530 F.2d 644, 649 (5th Cir. 1976) (noting that a psychiatrist functions "as an objective, non-partisan expert" when appointed by the court under 18 U.S.C. § 4244, the predecessor to §§ 4241(b) and 4247(b)); *United States v. Pogany*, 465 F.2d 72, 78 (3d Cir. 1972) (in a competency proceeding, "[f]airness requires that the examining psychiatrist pursuant to a § 4244 motion be an officer of the court and responsible neither to the defense nor the prosecution.") (reversing conviction); *United States v. Theriault*, 440 F.2d 713, 715 (5th Cir. 1971) (court-appointed psychiatrist is

---

[5] The Court's Order tracked the statutory requirements, directing the designated experts to file their reports under seal and to provide their reports to both parties. Dkt 36. The Examining Doctors did not follow these basic requirements. Dr. Darby and Dr. Dietz addressed their reports directly to the lead prosecutor, and all three Examining Doctors provided their reports solely to the prosecution, who in turn filed the reports with the Court and emailed copies to the defense. Loonam Decl. ¶ 4, Ex. 3; Dkts. 78–80.

"expected to be neutral and detached"); *United States v. Bass*, 477 F.2d 723, 725 (9th Cir. 1973) (same).[6]

More recent cases continue to apply the rule that court-designated § 4247(b) examiners do not function as advocates for either party, but as neutral examiners.  For instance, in *United States v. Reyes*, the court noted that competency "experts are expected to be neutral and detached and report their findings to the court."  *United States v. Reyes*, No. 3:18-CR-0260, 2019 WL 1746051, at *3 (N.D. Tex. Apr. 17, 2019); *see also United States v. Trexler*, No. 1:12CR45, 2012 WL 3265010, at * 2 (M.D.N.C. Aug. 9, 2012) (discussing the distinction between 18 U.S.C. § 4241(b) and 18 U.S.C. § 3006(A)(e), the statute addressing defense expert funding for indigent defendants, and finding the "competency expert 'is expected to be neutral and detached'" (quoting *United States v. Bass*, 477 F.2d 723, 725 (9th Cir. 1973))); *United States v. Kight*, No. 1:16-cr-99, 2017 WL 2963033, at *3 (N.D. Ga. July 12, 2017) (over defendant's objections, the court stated "[o]ne of the primary functions of a court-appointed expert is to provide the court with unbiased information, unaffected by the position of the party retaining the expert").

This remains true when the court-designated medical expert had a prior relationship with one of the parties.  "[W]hen the court appoints a psychiatrist[,] . . . even if he may have hitherto acted in a personal relationship, [he] should now consider himself an officer of the court, not responsible to prosecution or defense."  *In re Harmon*, 425 F.2d 916, 918 (1st Cir. 1970).  When appointed by the court to examine defendants, even Bureau of

---

[6] The government's suggestion that these cases are no longer good law after the Insanity Defense Reform Act of 1984 is incorrect.  *See infra* section I.B.

Prisons ("BOP") doctors—who are employed by the Department of Justice—must act in a neutral and detached manner as agents of the court.  *See, e.g.*, *United States v. Sampson*, 12 F. Supp. 3d 214, 217 (D. Mass. 2014) (denying defendant's motion for an "independent" examiner on the ground that a BOP examination "will remain, as required, 'neutral and detached'").  Likewise in *United States v. Green*, the court stated that the defendant was not prejudiced by a BOP evaluation, reasoning that the "evaluators appointed in this case served as 'officer[s] of the court, not responsible to prosecution or defense.'"  No. 2:12CR00003, 2015 WL 1268035, at *2 (W.D. Va. Mar. 19, 2015) (quoting *In re Harmon*, 425 F.2d 916, 918 (1st Cir. 1970)).  Even Dr. Denney, one of the Examining Doctors, has acknowledged the essential independent role of a court-designated examiner, noting in a BOP training manual for forensic evaluations that he co-authored:  "In forensic work the client is clearly a third party, the court itself. . . .  [T]he primary role remains that of an independent professional retained by the court."  Bureau of Prisons, *How to Conduct a Thorough and Professional Forensic Evaluation: Training Manual* 6 (1996).

BOP doctors are undoubtedly "government experts" in the sense that they were selected, nominated, and paid by the prosecution, but once designated by a court pursuant to Section 4241, they, like all such designated experts, are required to act as neutral and detached agents of the court.  That is precisely what should have happened here, but did not.

**B.     The 1984 Amendments Did Not Alter The Requirement That Court-Designated Examiners Act As Neutral Agents Of The Court**

Contrary to the government's passing assertion in the United States' Opposition (Dkt. 89 at 6 n.5), the statutory change in the Insanity Defense Reform Act of 1984 does not alter the designated experts' role to remain neutral officers of the court. The government has argued that "Congress removed the requirement that examiners 'shall report to the court' and replaced it with the requirement that one or more 'licensed or certified psychiatrist or psychologist' be 'designated by the court.'" Dkt. 89 at 6–7 n.5. That is not at all the effect or the purpose of the 1984 changes. Congress amended the U.S. Code in 1984 to provide more robust federal court procedures for the insanity defense and for alleged offenders suffering from a mental disease or defect, not fewer protections for defendants or a means for the government to inject its partisan experts into the process.

The predecessor statute's discussion of psychiatric or psychological examinations stated:

> Upon such a motion [for a judicial determination of mental competency] or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, *who shall report to the court*. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court.

18 U.S.C. § 4244 (1976) (emphasis added). Congress amended the psychiatric or psychological examination requirements to state: "Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a *psychiatric or psychological report be filed with the court*, pursuant to the

provisions of section 4247(b) and (c)."  18 U.S.C. § 4241(b) (emphasis added).  Congress

then provided more detailed guidance for competency examinations as set forth in Section

4247(b):

> A psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, or, if the court finds it appropriate, by more than one such examiner.  *Each examiner shall be designated by the court*, except that if the examination is ordered under section 4245, 4246, or 4248, upon the request of the defendant an additional examiner may be selected by the defendant.  For the purposes of an examination pursuant to an order under section 4241, 4244, or 4245, the court may commit the person to be examined for a reasonable period, but not to exceed thirty days, and under section 4242, 4243, 4246, or 4248, for a reasonable period, but not to exceed forty-five days, to the custody of the Attorney General for placement in a suitable facility.  Unless impracticable, the psychiatric or psychological examination shall be conducted in the suitable facility closest to the court.  The director of the facility may apply for a reasonable extension, but not to exceed fifteen days under section 4241, 4244, or 4245, and not to exceed thirty days under section 4242, 4243, 4246, or 4248, upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant.

18 U.S.C. § 4247(b) (emphasis added).

Congress retained the court's direct control over the entire competency testing

process:

> A psychiatric or psychological report ordered pursuant to this chapter shall be prepared by the examiner designated to conduct the psychiatric or psychological examination, *shall be filed with the court with copies provided to the counsel for the person examined and to the attorney for the Government . . . .*

18 U.S.C. § 4247(c) (emphasis added).  The prosecution is flatly wrong in its claim that

the 1984 revisions altered the court's role in the competency testing process in a manner

that provides instead for the appointment of partisan government experts.

This statutory comparison is confirmed by the legislative history of the 1984 statute. Tracking the original statutory mandate that the examiner "shall report to the court," the legislative history of the Insanity Defense Reform Act of 1984 demonstrates an intent that under 18 U.S.C. § 4247(b), the "examiner must report to the court" his or her diagnosis and prognosis opinions.  18 U.S.C. § 4244 (1976); S. Rep. No. 98-225, at 251–52 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3433–34.  In addition, the legislative history expressed an intent for the procedure under 18 U.S.C. § 4247(e)(1) to be "consistent with Federal case law," citing to *In re Harmon*, 425 F.2d 916 (1st Cir. 1970), case law relied upon by defense counsel in its Motion to Compel and discussed *supra* at pp. 6–7.  S. Rep. No. 98-225, at 237 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3419; Dkt. 81 at 4, 11–12.  The leading treatise confirms to this day the vitality of the authorities that require neutrality by the court-appointed experts.  1A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 209 (5th ed. Apr. 2021 update) (citing to *In re Harmon*, 425 F.2d 916 (1st Cir. 1970) and *United States v. Pogany*, 465 F.2d 72 (3d Cir. 1972), as governing law to interpret 18 U.S.C. § 4247(b)).

Finally, in this respect, the government's argument fails to meaningfully address the numerous cases cited above that are directly contrary to its position that post-date the 1984 amendments.  *See supra* p. 7.  There is no basis for the prosecution's claim that the 1984 statutory change permitted the court appointed experts to take sides with the prosecution.

## C.     The Statute Does Not Create A Bifurcated Scheme For Court-Appointed Versus Retained Experts

In an attempt to counter controlling legal authority, the government invents a bifurcated regime under which "court-appointed" experts are neutral but "government retained" experts remain partisan after designation by the court.  Dkt. 89 at 3–9.  This attempted innovation fails for multiple reasons.  First, the government's distinction between "court appointed" and "government retained" experts does not appear in the statute and is rebutted by the statutory language itself, because all experts "designated" by the court are "appointed" by the court under a plain reading of the statute.  *See supra* pp. 4–5.  It is the designation that is the legally significant act under the statute, not the prior relationship between the expert and the parties.  *See In re Harmon*, 425 F.2d at 918. Further, the defendant's ability to hire other experts outside of the statutory scheme is irrelevant to this analysis.[7]  The prosecution may not read these false distinctions into the statute.[8]

Further, the idea that the Examining Doctors are "government retained" is a red herring.  The prosecution previously represented to defense counsel that it did not execute any contract or retainer agreement with the Examining Doctors.  Dkt. 81-1, Ex. A.  This is

---

[7] Indeed a separate statutory scheme addresses the needs of indigent defendants to secure funds for defense expert witnesses.  *See* 18 U.S.C. § 3006A(e).  The government's attempt to distinguish cases addressing Sections 4241 and 4247 on the basis that some of the cases concerned indigent defendants must fail.  A defendant's financial status is simply not a consideration under the court-directed examinations contemplated by Sections 4241 and 4247.

[8] "If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives.  And we would deny the people the right to continue relying on the original meaning of the law they have counted on to settle their rights and obligations."  *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020).

because the government bears the costs for *all* "court directed" competency examination

costs, including the costs for all designated experts. *See* Admin. Off. of the U.S. Cts.,

*Guide to Judiciary Policy*, Vol. 7, Pt. A, §§ 320.20.10, 320.20.60, *available at*

https://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-3-ss-

320-authorization-investigative-expert#a320_20_60; *United States v. Trexler*, No.

1:12CR45, 2012 WL 3265010, at * 2 (M.D.N.C. Aug. 9, 2012); *United States v. Reyes*,

No. 3:18-CR-0260, 2019 WL 1746051, at *3 (N.D. Tex. Apr. 17, 2019). The false

distinction drawn by the government between "court-appointed" versus "government

retained" designated doctors simply does not exist in the context of a "court directed"

competency examination pursuant to Section 4241. Simply put, the government is required

to pay the examination costs for all designated doctors. Much like the fact that BOP

examiners must remain neutral, *see supra* pp. 7–8, the source of funds does not relieve the

designated doctors of the requirement to act as neutral agents of the court.

### D. The Government Relies Upon Case Law that is Inapposite or Contradicts the Government's Position.

Although the government's opposition contains numerous case citations, those

cases either do not address competency determinations under 4241(b) and 4247(b)–(c), and

instead concern insanity defenses or actually contradict the government's position. For

instance, the government's discussion of *United States v. Weston* fails to inform the Court

that the district court initially appointed Dr. Sally C. Johnson to conduct a neutral

competency evaluation pursuant to 18 U.S.C. §§ 4241(b), 4247(b)–(c). *United States v.*

*Weston*, No. 1:98-mj-00555 (D.D.C. Oct. 15, 1998), Dkt. 31. After the initial court-

- 13 -

designated examination found the defendant not competent, the court permitted two additional examinations of the defendant, but recognized that the statutory scheme "arguably does not authorize the Court to compel an examination by a government expert." *United States v. Weston*, 36 F. Supp. 2d 7, 12 (D.D.C. 1999). Nevertheless, the court in *Weston* authorized the government expert to conduct an examination *pursuant to the court's inherent authority. Id.*

But this has no relevance to the present case where the Court explicitly designated the experts pursuant to specific statutory authority, not its inherent authority.[9] Moreover, the government neglects to mention that on appeal, the D.C. Circuit declined to decide whether § 4247 permitted the district court to appoint a government expert under its inherent authority because the issue was moot—the government "withdrew its request that the defendant be compelled to submit to an examination by a doctor other than Dr. Johnson," the initial court-designated examiner. *United States v. Weston*, 194 F.3d 145, 147 (D.C. Cir. 1999). Thus *Weston* cuts against the government's argument that the applicable statute allows for designated experts to remain part of the prosecution team.

The government also erroneously relies on *United States v. Merriweather*, No. 2:07-cr-00243, 2014 WL 637051, at *4 (N.D. Ala. Feb. 18, 2014), without recognizing that

---

[9] The defense submits such inherent authority does not exist where, as here, there is a statute that sets forth the precise procedures for a pre-trial competency evaluation, prior to any restoration study. 18 U.S.C. § 4241. This is contrasted with capital case penalty-phase proceedings, which lack such statutory authority for psychiatric examinations, and rely on courts' inherent authority. *United States v. Webster*, 162 F.3d 308, 338-40 (5th Cir. 1998). In the present case, the statutes cited by the court's order control. Dkt. 36.

*Merriweather* dealt with the insanity defense, not mental competency.[10]  There is a distinct statutory framework for a mental examination in an insanity case—the court must consider Federal Rule of Criminal Procedure 12.2 in combination with 18 U.S.C. §§ 4242 and 4247(b).  Rule 12.2 provides courts with additional authority not found in Sections 4241 and 4247, to "order the defendant to be examined under procedures ordered by the court." Fed. R. Crim. P. 12.2(c)(1)(B).  The advisory committee notes for Rule 12.2 clearly state that the "rule does not deal with the issue of mental competency to stand trial."  Fed. R. Crim. P. 12.2.  This distinction between insanity and mental competency examinations is necessary—an insanity defense is presented to the jury whereas the determination of a defendant's mental competency is a pretrial bench proceeding.  As an insanity defense case, *Merriweather* is simply inapplicable here.

The government also cites *United States v. Chun*, No. 17-20451, 2019 WL 6683878 (E.D. Mich. Dec. 6, 2019), but *Chun* is a post-restoration study case.  In *Chun* the court appointed a court-designated examiner under Section 4247(b) in the first instance, who found the defendant not competent and committed the defendant to the BOP for a restoration study pursuant to 18 U.S.C. § 4241(d).  Government experts examined the defendant after the defendant exited the restoration study but the case does not address the statute's neutrality requirement or any partisan conduct by the government selected experts.  In addition and in contrast to the court's designation of the neutral expert, the court order granting the examination by government experts did not designate the

---

[10] The competency examination in *Merriweather* was conducted by a neutral court-appointed expert, Dr. Christina Pietz.  *See Merriweather*, 2014 WL 637051, at *1.

government's experts pursuant to Section 4247(b).  *United States v. Chun*, No. 2:17-cr-20451 (E.D. Mich. Apr. 16, 2019), Dkt. 67; No. 2:17-cr-20451 (E.D. Mich. Nov. 30, 2017), Dkt. 23.  The case is therefore unhelpful to the government.[11]

The government crossed important statutory lines in its dealings with the designated court experts.  We request the Court order the government to produce any records of oral or written communications between the government and Examining Doctors to disclose both the extent of the improper conduct and the bias of the testifying court-designated experts.[12]

## II.   The Government Must Produce the Examining Doctors' Notes

Mr. Brockman requests that the Court also order the government to produce the Examining Doctors' notes from their competency examinations and testing that were relied upon by the other Examining Doctors in forming their opinions.  The government has refused to produce: (1) notes of Dr. Darby's interview of Mrs. Brockman; (2) notes of Drs. Darby, Dietz, and Denney's examinations; and (3) notes of Dr. Denney's collateral interviews of Peter Romatowski and Kathryn Keneally.  The Examining Doctors relied upon each other's notes from interviews they did not attend to form their opinions about Mr. Brockman's competency in their expert reports.  Loonam Decl. ¶ 4 (Dr. Darby Expert

---

[11] The same is true of *United States v. Mbirika*, also cited by the government.  In that case, the district court's order for the defendant to "meet with the Government's retained expert" did not designate the expert pursuant to Section 4247(b).  No. 1:12-mj-01860 (S.D.N.Y. Sept. 12, 2013), Dkt. No. 32; No. 1:12-mj-01860 (S.D.N.Y. Jan. 27, 2014), Dkt. No. 38.

[12] The prosecution's claim of "work product" in its communications with these court-designated experts would stand Sections 4241 and 4247 on their head.  Those communications must be produced, so that the Court can take the full measure of the prosecutors' abuse of the statutory process and expose the bias of these testifying expert witnesses.

Report at 1, 5, 13[13]; Dr. Denney's Expert Report at 19–20[14]; Dr. Dietz's Expert Report at 3, 21, 29[15]).  Without seeing these Examining Doctors' notes, Mr. Brockman's experts cannot properly assess the Examining Doctors' reports as it is unknown upon what information the Examining Doctors based their opinions.

While the government argues Mr. Brockman has "equal or greater access to other material he seeks," Dkt. 89 at 16, this is incorrect.  Defense counsel and defense experts are entitled to the Examining Doctors' notes as these notes were communicated among the Examining Doctors when forming their opinions and writing their reports.  Additionally, the government's assumption that defense counsel has access to Mr. Brockman's "wife's attorney's notes"—the work product of Mrs. Brockman's counsel—is inappropriate and irrelevant.  The pertinent information is what was communicated among the Examining Doctors when forming their opinions regarding Mr. Brockman's mental competency.[16] The production of these notes particularly necessary given how the government has misapplied the statutory framework surrounding competency examinations and treated the Court-designated experts as partisan members of the prosecution team.  *See supra* pp. 3–15.

---

[13] Dr. Darby listed as a source of information for his report: ████████████████████
████████████████████████████████████████████████████████████████████

[14] Dr. Denney relied upon Dr. Darby's notes of his interview with Mrs. Brockman and references Dr. Darby's ██████ and what ██████████████

[15] In writing his report, Dr. Dietz relied upon: █████████████████████████████
█████████████████████████████ and ████

[16] Although not relevant to the analysis, defense counsel would have had no objection to an Examining Doctor's colleague taking notes during the interviews of Kathryn Keneally and Peter Romatowski.  Defense counsel did, however, object to IRS agents being present and taking notes during these interviews for the fundamental reason that that the Examining Doctors were supposed to be court-designated experts, not government agents.

The government cites to *United States v. Springer*, *United States v. Brown,* and *United States v. Ramirez* in support of its refusal to produce the requested notes, but these cases are inapplicable—they discuss the preservation and disclosure of government agents' notes. *Springer*, No. H-14-20-003, 2015 WL 1407915 (S.D. Tex. Mar. 25, 2015) (handwritten notes of cooperating witnesses and law enforcement officers); *United States v. Brown*, 303 F.3d 582 (5th Cir. 2002) (handwritten interview notes of an FBI agent); *United States v. Ramirez*, 954 F.2d 1035 (5th Cir. 1992) (rough notes of government informant). These cases do not relate to competency proceedings or a court-designated expert's notes relied upon in forming opinions as to a defendant's mental capacity to be tried in a criminal case.

The Court should order the government to produce the Examining Doctors' notes as this information is required for defense experts to adequately analyze the Examining Doctors' reports and for defense counsel to sufficiently prepare for the competency hearing.

## III.   The Government Must Produce Examining Doctors' Materials Within Its Possession, Custody, or Control

Mr. Brockman requests that the Court order the government produce the Examining Doctors prior statements within the government's possession, custody, or control.

The government relies on several cases discussing general *Brady* principles that do not relate to expert witnesses or the production of expert witness materials. *United States v. Sipe*, 388 F.3d 471, 477 (5th Cir. 2004) (prosecution misrepresented witness benefits and government agent dislike of defendant); *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th

- 18 -

Cir. 2002) (biological evidence); *Herrera v. Collins*, 954 F.2d 1029, 1032 (5th Cir. 1992) (newspaper clippings); *United States v. Infante*, 404 F.3d 376, 386–87 (5th Cir. 2005) (co-conspirator's psychiatric exam); *United States v. Cramer*, No. 1:16-CR-26, 2018 WL 7821079, at *5 (E.D. Tex. Mar. 8, 2018) (BOP statistical information); *United States v. Delgado*, 350 F.3d 520, 527 (6th Cir. 2003) (records related to government informant). Mr. Brockman's Motion to Compel discusses case law that is actually relevant to expert witnesses.  Dkt. 81 at 19–20.

As explained in the Motion to Compel, there are voluminous materials related to the Examining Doctors.  Dkt. 81 at 18–19.  By the government's own admission, it is now clear that the prosecutors have had "extensive *ex parte* communications" with the Examining Doctors who "continue to advise and counsel the prosecution team on competency-related matters."  Dkt. 89 at 8, 10.  Mr. Brockman's request to the government is straightforward—turn over any articles, transcripts, or adverse court rulings regarding the Examining Doctors that come into the government's possession, custody, or control.

## **CONCLUSION**

Mr. Brockman requests that the Court enter the proposed order compelling the government to make the requested disclosures as required by law.

Dated:  August 3rd, 2021             */s/ Jason S. Varnado*
                                     Jason S. Varnado
                                     Texas Bar No. 24034722
                                     SDTX Ad. ID No. 32166
                                     Email: jvarnado@jonesday.com
                                     JONES DAY
                                     717 Texas, Suite 3300

Houston, TX  77002
Telephone: 832-239-3939
Facsimile: 832-239-3600

Kathryn Keneally (*Admitted Pro Hac Vice*)
New York Bar No. 1866250
Email: kkeneally@jonesday.com
James P. Loonam (*Admitted Pro Hac Vice*)
New York Bar No. 4035275
Email: jloonam@jonesday.com
Georgina N. Druce (*Admitted Pro Hac Vice*)
New York Bar No. 5267208
Email:gdruce@jonesday.com
Colleen E. O'Connor (*Admitted Pro Hac Vice*)
New York Bar No. 5764725
Email: colleenoconnor@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212-326-3939
Facsimile: 212-755-7306

Conor G. Maloney (*Admitted Pro Hac Vice*)
District of Columbia Bar No. 1632584
Email: cmaloney@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: 202-879-3450
Facsimile: 202-626-1700

*Attorneys for Defendant*
*Robert T. Brockman*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on this 3rd day of August, 2021, I electronically served this document on all counsel of record.

*/s/ Jason S. Varnado*
Jason S. Varnado