# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    Plaintiff,<br><br>v.<br><br>**ROBERT T. BROCKMAN,**<br><br>    Defendant. | §<br>§<br>§<br>§<br>§  Cr. No. 4:21cr 009 GCH<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## UNITED STATES' OPPOSITION TO
## TANGARRA'S MOTION TO STRIKE

The United States opposes Petitioner Tangarra Consultants Limited's Motion to Strike (ECF #87, the "Motion") all references to Tangarra from the Indictment. The Motion should be denied because (1) foreign corporate entities with no property in the United States are not entitled to constitutional protection; and (2) the Indictment refers to Tangarra only as an instrumentality of Defendant's crimes and does not accuse Tangarra of wrongdoing.

# FACTUAL BACKGROUND

Tangarra Consultants, Ltd. ("Tangarra") is a Bermudian entity that Evatt Tamine incorporated in 2003, when Defendant hired Tamine to manage his offshore structure (the "Brockman Structure"). Tamine created Tangarra to facilitate his work for Defendant—specifically he created the entity so that he could obtain a Bermudian work permit and have a vehicle for Defendant to pay him. *See* Affidavit of Evatt Tamine, July 4, 2020, attached herein as Exhibit 1, para. 73. On paper, Tangarra received consultancy fees from another entity, but Tamine was Defendant's employee—he reported to Defendant, acted in accordance to Defendant's instructions, and had his pay determined by Defendant. Id., at 74 and 78. After Defendant determined Tamine's pay, Tamine would draw the agreed upon amount into a Tangarra account.

On paper, Tangarra was an independent corporation, but it was actually a tool of the Brockman Structure. *See* Exhibit 2, para. 5, Declaration of Special Agent Ted Lair. For example, Tamine and Defendant used Tangarra to pay Tamine's predecessor, Don Jones, using the entity to route a $200,000 annual retirement payment to Jones. *See* Exhibit 3. Tangarra was also used to make payments on behalf of other entities in the Brockman Structure when their accounts were frozen. *See* Exhibit 4.

In 2010, Defendant instructed Tamine to purchase Reynolds and Reynolds debt on the secondary market. *See* Exhibit 5, p. 4. As alleged in the Indictment, Tamine contacted Deutsche Bank and asked to open a trading account in the name of Edge Capital Investments, Limited ("Edge"). *See* Exhibit 6. He further informed Deutsche Bank in a signed statement that Tangarra was Edge's fund manager. *Id.* As part of the account

1

opening process Tamine represented that he was the controlling person for Tangarra and that Peter Poole was the controlling person for Edge. *Id.*[1]

## ARGUMENT

The Motion should be denied because it takes three wholly unsupported positions. First, the Motion assumes without citing any cases that a foreign, paper entity is entitled to substantive due process rights in U.S. courts. Second, the Motion misreads the Indictment and incorrectly asserts that the Indictment refers to Tangarra as an unindicted co-conspirator. Finally, the Motion attempts to bolster its claimed grievance with the incorrect assertion that the Indictment contains false information. For the reasons stated below, none of the three positions are correct and the motion should be denied.

**I.  Tangarra Does Not Have Due Process Rights Because It Is a Foreign Entity with No Property in the United States.**

As a threshold matter, Tangarra's motion should be denied because it is a foreign entity with no stated ties to the United States. "[I]t is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution." *USAID v. All. For Open Soc'y Int'l, Inc.*, 494 U.S. 259, 269 (2020). The Supreme Court has repeatedly held that individuals and entities that are not located in the United States are not entitled to the same constitutional protections as U.S. citizens or persons located within the United States. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[A]liens receive constitutional protections when they have come within

---

[1] Evatt Tamine, the founder and sole shareholder of Tangarra, provided all of the exhibits cited herein to the government with the exception of the two affidavits.

2

the territory of the United States and developed substantial connections with the country."); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("It is well established that certain constitutional protections available to person inside the United States are unavailable to aliens outside of our geographic borders."). Indeed, "[a] foreign entity without property or presence in this country has no constitutional rights, under the due process clause or otherwise." *People's Mojahedin Org. of Iran v. United States Dep't of State*, 182 F.3d 17, 22 (D.C. Cir. 1999), *cert. denied* 529 U.S. 1104.

In *People's Mojahedin Org.*, the Secretary of State designated the petitioners as "a foreign organization engaging in terrorist activities that threaten the national security of the United States." *Id.* at 19. This designation made it a crime to donate to the petitioners' organizations and barred alien members or representatives of the organizations from admission to the United States. *Id.* Petitioners argued that this denied them of due process rights. In denying their claim, the D.C. Circuit specifically distinguished petitioners as foreign organizations from cases involving domestic entities and expressly held that foreign entities are not entitled to constitutional protections. *Id.* at 22.

Here, as the Motion concedes in its first sentence, Tangarra is a Bermudian entity. Tangarra does not allege that it has property in the United States or that it presently conducts any business in the United States. This alone is fatal to the Motion.

## II. The Motion Should be Denied Because the Indictment Does Not Accuse Tangarra of Wrongdoing

The Motion must also fail because it is premised on the false assumption that the Indictment accuses Tangarra of wrongdoing. It does not.[2] The Indictment alleges that (1) Brockman "us[ed] Edge and Tangarra to purchase Debt, and conceal[ed] the fact that Edge, Tangarra, and Individual One were controlled by Brockman" (Indictment, ECF 2, at ¶ 165); that Defendant affirmatively concealed from the sellers of the Debt that "the Debt purchasers Edge and Tangarra were under common control with [Dealer Computer Services]" (*id.* at ¶ 166); and (3) Individual One made false representations to Deutsche Bank employees that did not disclose Defendant's control of Edge and Tangarra (*id.* at ¶ 176).

The Indictment does not claim that Tangarra *did* anything. On the contrary, each of these paragraphs alleges that Defendant, or his agent, *used* Tangarra to accomplish his objectives. That is, where Tangarra is mentioned in the Indictment it is as an instrumentality of the Defendant's conduct and not as an independent agent. Indeed, the Indictment specifically alleges that Tangarra, Edge, and Individual One were controlled by Defendant.

What Tangarra appears to be arguing is that it has a right not to be *mentioned* in an Indictment. But if the government does not accuse a party of wrongdoing, the Due Process clause is not violated. *See United States v. Korean Air Lines Co.*, 505 F.Supp.2d 91, 96

---

[2] And would not, as the government's view of the evidence is that Tangarra is not a substantive corporation, but merely a paper entity used by the Brockman Structure.

(D.D.C. 2007); *Application of Johnson*, 484 F.2d 791, 793 (7th Cir. 1973). Because of the complexity of the Brockman Structure, Tangarra is just one of thirteen separate entities named in the Indictment. Although Tangarra would have this Court rule that each of those entities has a right to be described anonymously, the Motion provides no support for such a sweeping proposition.

Indeed, as described above, because Tangarra has only an ephemeral existence as a paper corporate entity established simply to employ and pay Tamine, its interest in its "good name" and "reputation" are not as compelling a natural born person. *See e.g.*, *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) ("[C]orporations can claim no equality with individuals in the enjoyment of a right to privacy."); *United States v. Driscoll*, 445 F.Supp. 868 (D.N.J. 1978) (finding that an estate cannot seek expungement because the identification of the deceased as an unindicted co-conspirator was inevitable and the deceased obviously could no longer be indicted). Indeed, the Motion does not even allege any harm that Tangarra has suffered as a result of being mentioned in the Indictment. This major standing problem, in conjunction with the major standing problem addressed in Section I, is likely why Tangarra is unable to find a single case where an entity like it obtained (or even sought) the type of relief it seeks.

### III. The Indictment is Not False

The Motion incorrectly alleges that the core allegations against Tangarra are false. While it is true that Tangarra was not a direct purchaser of debt,[3] the Indictment does not allege otherwise. Rather, the Indictment alleges that Defendant used Tangarra to purchase the debt and that Defendant and Tamine concealed the fact that Edge, Tangarra, and Tamine were acting at Defendant's direction. *See* Exhibit 2, para. 6.

Thus, the Motion's allegation that the Indictment is false is especially perplexing in light of the fact that it was Tamine, the controlling shareholder and director of Tangarra, that provided the government with the very evidence supporting the allegations made in the Indictment.

//
//
//
//
//
//
//
//
//

---

[3] While government counsel confirmed that Tangarra was not a direct purchaser of debt, government counsel never stated that the Indictment was false nor that the Indictment ever alleged Tangarra was a direct purchaser

6

UNITED STATES' OPPOSITION TO
TANGARRA'S MOTION TO STRIKE
Case No.: 4:21-CR-0009-GCH

## CONCLUSION

The Motion fails to establish the threshold requirements that Tangarra was accused of wrongdoing or is even entitled to redress in U.S. Courts. Its claim that the Indictment was false is both unrelated to its legal position and, as described above, entirely incorrect. Accordingly, the Court should deny the Motion.

Respectfully submitted this 9th day of August 2021,

                                        DAVID A. HUBBERT
                                      Acting Assistant
                                      Attorney General
                                      Tax Division

                                      */s/ Lee Langston*
                                      COREY J. SMITH
                                      Senior Litigation Counsel
                                      Department of Justice
                                      Tax Division
                                      Mass Bar No. 553615
                                      corey.smith@usdoj.gov
                                      Tele: (202) 514-5230
                                      LEE LANGSTON
                                      CHRISTOPHER MAGNANI
                                      Trial Attorneys
                                      Department of Justice
                                      Tax Division

                                      Attorneys for United States of America

## Certificate of Service

    I the undersigned do hereby certify that on August 9, 2021, I electronically filed the foregoing with the Clerk of Court using the ECF electronic filing system, which will send notice of electronic filing to Defendant and Petitioner's counsel of record.

                                                /s/ *Lee Langston*
                                                Trial Attorney
                                                Department of Justice
                                                Tax Division
                                                Lee.F.Langston@usdoj.gov
                                                (202) 353-0036