# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal No. 4:21-cr-00009** |
| | § | |
| **ROBERT T. BROCKMAN** | § | |

## DEFENDANT ROBERT T. BROCKMAN'S MOTION FOR THE APPOINTMENT OF NEUTRAL COURT-DESIGNATED EXPERTS AND TO EXCLUDE TESTIMONY FROM DR. PARK DIETZ, <u>DR. ROBERT DENNEY, AND DR. RYAN DARBY</u>

# TABLE OF CONTENTS

**Page**

I.     Sections 4241(b) and 4247(b) Require that Court Designated Medical Experts Serve the Court, Not the Government .................................................... - 3 -

II.    The Government Cannot Avoid the Clear Language of Sections 4241(b) and 4247(b)–(c) Requiring Neutrality By Court-Designated Experts ............... - 6 -

III.   The Court-Designated Experts Improperly Acted as Partisan Government Investigators ................................................................................. - 10 -

IV.   This Court Should Appoint Genuine Neutral Experts to Conduct a Competency Examination Pursuant to Sections 4241(b) and 4247(b) ............ - 16 -

V.    The Reports and Testimony of Dr. Darby, Dr. Denney and Dr. Dietz Should Be Excluded................................................................................ - 17 -

## INTRODUCTION

This Court designated Dr. Park Dietz, Dr. Robert Denney, and Dr. Ryan Darby (the "Designated Experts") to conduct psychiatric or psychological examinations of defendant Robert T. Brockman, pursuant to 18 U.S.C. §§ 4241(b) and 4247(b). Dkt. No. 59 ("May 10, 2021 Order"). A medical examiner appointed by the Court under this statutory scheme is required to serve "as an objective, non-partisan expert." *United States v. Fratus*, 530 F.2d 644, 649 (5th Cir. 1976) (citing 18 U.S.C. § 4244, the predecessor to §§ 4241(b) and 4247(b)). As the government readily acknowledges, however, the Designated Experts acted throughout as government partisans. Dkt. No. 89 at 1, 8 ("United States' Opposition to Motion to Compel"). This failure by the Designated Experts to adhere to their obligations as court-appointed experts has two immediate consequences for these competency proceedings.

First, this Court should appoint genuine neutral experts to conduct a competency examination pursuant to §§ 4241(b) and 4247(b). In *United States v. Pogany*, 465 F.2d 72, 77 (3d Cir. 1972), the defendant was examined for competency by a government expert, with "no indication that this examination was to be performed to aid the Court in its determination of [the defendant's] competency as required by Section 4244." After the defendant was found competent and convicted, the Third Circuit reversed, holding that "the judgment will be reversed and the case remanded to the District Court where [the defendant] will be given a mental examination conducted pursuant to Section 4244 and consistent with this opinion," and given a new trial if found competent. *Id.* at 79. "Fairness requires that the examining psychiatrist pursuant to a § 4244 motion be an officer of the

Court and responsible neither to the defense nor the prosecution." *Id.* at 78. This is no less true when the court-designated medical expert had a prior relationship with one of the parties. *In re Harmon*, 425 F.2d 916, 918 (1st Cir. 1970) ("[W]hen the court appoints a psychiatrist[,] . . . even if he may have hitherto acted in a personal relationship, [he] should now consider himself an officer of the court, not responsible to prosecution or defense.").

It is the unequivocal position of the government that Dr. Darby, Dr. Dietz, and Dr. Denney acted as partisan experts on behalf of the government. Dkt. No. 89 at 8. In the language of the court in *Pogany*, these Designated Experts did not act as "officer[s] of the Court," but were improperly "'responsible . . . to . . . the prosecution." *Pogany*, 465 F.2d at 78. When a defendant is found competent based on biased experts who violated the neutrality requirements of § 4241(b), a subsequent conviction must be reversed in order to start over, with an unbiased examination under § 4241(b). *Id.* at 79 (citing 18 U.S.C. § 4244, the predecessor to §§ 4241(b) and 4247(b)). Rather than risk the outcome in *Pogany*, this Court should appoint neutral experts to conduct the unbiased examination required by § 4241(b) and § 4247(b).

Second, this Court should exclude testimony from Dr. Dietz, Dr. Denney, and Dr. Darby. The Designated Experts gained access to Mr. Brockman solely because they were designated by the Court pursuant to a statutory scheme that required the experts to act as agents of the Court upon designation. Instead, the Designated Experts acted as partisan examiners while simultaneously serving as *ex parte* consulting experts to the government. Dkt. No. 89 at 8 (government explaining that Drs. Darby, Dietz, and Denney were "not appointed by the Court but hired by the government, with whom they had extensive *ex*

- 2 -

*parte* communications before designation"). Because the prosecution may not turn this Court's appointment of neutral experts to its partisan advantage, this Court should exclude their testimony and reports. *See, e.g.*, *G.K. Las Vegas Ltd. v. Simon Prop. Grp., Inc.*, 671 F. Supp. 2d 1203, 1214–15 (D. Nev. 2009) (the court refused to consider the report of the court-appointed expert on spoliation issue after the expert's independence was compromised by *ex parte* communications with one party).

## ARGUMENT

### I.    Sections 4241(b) and 4247(b) Require that Court Designated Medical Experts Serve the Court, Not the Government

On February 1, 2021, this Court found, pursuant to 18 U.S.C. § 4241(a), that there is reasonable cause to believe that Mr. Brockman "may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Dkt. No. 36 ("February 1, 2021 Order"). This determination was based largely upon examinations and testing performed by Mr. Brockman's treating physicians at Baylor College of Medicine, which the defense submitted in support of its Motion for a Hearing to Determine Whether Mr. Brockman is Competent to Assist in His Defense. Dkt. No. 1-3 at 28–172 (reproducing N.D. Cal. Dkt. No. 64). The government agreed that the Court should conduct a competency hearing, *see* Dkt. No. 1-3 at 192–739 (reproducing N.D. Cal. Dkt. No. 69), and asked the Court to order Mr. Brockman to be examined by medical experts to be designated by the Court pursuant to 18 U.S.C. §§ 4241(b) and 4247(b). Dkt. No. 36.

- 3 -

Section 4241(b) states that "the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c)."  Section 4247(b) in turn requires that "[e]ach examiner shall be designated by the court," and section 4247(c) requires that the resultant expert reports "shall be filed with the court with copies provided to the counsel for the person examined and to the attorney for the Government." The February 1, 2021 Order tracked the statutory requirements, directing the Designated Experts to file their reports under seal and to provide their reports to both parties.[1]  Dkt. No. 36.  The May 10, 2021 Order appointed the Designated Experts by name "to conduct the court-ordered psychiatric or psychological examination of [Mr. Brockman] pursuant to Title 18, United States Code, sections 4241(b) and 4247(b)."  Dkt. No. 59.

At the prosecution's insistence,[2] these examinations were to be conducted without defense counsel present.  Dkt. No. 59.  The May 10, 2021 Order approving the Designated Experts also provides that "no statement of the defendant during such examination and no

---

[1] "The procedures established by § 4247, which direct that the reports produced by the court-designated examiners are to be submitted to both parties and the court, support the conclusion that the designated examiners are not intended to function as advocates for one side or the other."  *United States v. Wilkinson*, No. 07-12061, 2008 WL 427295, at *13 & n.6 (D. Mass. Feb. 14, 2008) (discussing § 4247(b) in the context of a § 4248(a) sexual dangerousness evaluation).  The Designated Experts did not follow this requirement.  Dr. Darby and Dr. Dietz addressed their reports directly to the lead prosecutor, and all three Designated Experts provided their reports solely to the prosecutors, who in turn filed the reports with the Court under seal and emailed copies to the defense.  Dkt. No. 81 at 5–6.

[2] In an email exchange on February 22, 2021, Mr. Brockman's counsel proposed that defense counsel be present during any examination, which the government rejected, stating:  "We do not agree to the presence of counsel during any examination/interview/testing of Defendant."  Keneally Decl. ¶ 2, Ex. 1 ("Keneally Decl." refers to the Declaration of Kathryn Keneally made in support of Defendant Robert T. Brockman's Motion for the Appointment of Neutral Court-Designated Experts and to Exclude Testimony from Dr. Park Dietz, Dr. Robert Denney, and Dr. Ryan Darby).

testimony of defendant during such hearing (collectively, 'Defendant's Statements') may be used *directly or indirectly* by the government except in this Competency Proceeding." *Id.* at 2 (emphasis added).

The law is clear: medical experts designated pursuant to this statutory scheme are to act as neutral experts in service to the Court. *United States v. Fratus*, 530 F.2d 644, 649 (5th Cir. 1976) (noting that psychiatrist functions "as an objective, non-partisan expert" when appointed by the court pursuant to 18 U.S.C. § 4244, the predecessor to §§ 4241(b) and 4247(b)); *United States v. Reyes*, No. 3:18-CR-0260, 2019 WL 1746051, at *3 (N.D. Tex. Apr. 17, 2019) (competency experts appointed pursuant to 18 U.S.C. §§ 4241(b), 4247(b) "are expected to be neutral and detached"); *accord United States v. Bass*, 477 F.2d 723, 725 (9th Cir. 1973) (same); *United States v. Sampson*, 12 F. Supp. 3d 214, 217 (D. Mass. 2014) (same); *United States v. Trexler*, No. 1:12CR45, 2012 WL 3265010, at *2 (M.D.N.C. Aug. 9, 2012) (same).

The mandate that a court-designated medical expert serve as a neutral arm of the Court is not altered by a prior relationship between that expert and one of the parties. *In re Harmon*, 425 F.2d 916, 918 (1st Cir. 1970) (denying mandamus but remanding with guidelines that a court-appointed psychiatrist in competency proceedings should, without regard to any prior relationships, "consider himself an officer of the court, not responsible to prosecution or defense"). Even when a competency evaluation is designated to be performed by examiners employed by the U.S. Bureau of Prisons ("BOP"), it is expected "that the BOP's Examiner will remain, as required, 'neutral and detached.'" *Sampson*, 12

F. Supp. at 217 (first citing *United States v. Reason*, 549 F.2d 309, 311 (4th Cir. 1977); then quoting *United States v. Theriault*, 440 F.2d 713, 715 (5th Cir. 1971)).

## II.     The Government Cannot Avoid the Clear Language of Sections 4241(b) and 4247(b)–(c) Requiring Neutrality By Court-Designated Experts

On July 6, 2021, the defense filed a Motion to Compel Discovery in Advance of the Competency Hearing, seeking, among other discovery, the disclosure of communications between the government and the Designated Experts.  Dkt. No. 81 ("Defendant's Motion To Compel").  In opposing, the government set up several strawman assertions in an attempt to support its claim that the Designated Experts were not required to remain neutral. Dkt. No. 89.  The government's arguments are refuted at length in the defense's reply, and fail with equal force on the instant motion.  Dkt. No. 94.

The government asserts that "Congress removed the requirement that examiners 'shall report to the court' and replaced it with the requirement that one or more 'licensed or certified psychiatrist or psychologist' be 'designated by the court,'" suggesting that this somehow altered the requirement that the designated experts remain neutral.  Dkt. No. 89 at 6–7 n.5.  The government is flatly wrong in its claim that the 1984 revisions altered the Court's role in the competency testing process in a manner that provides instead for the appointment of partisan government experts.  The government ignores the post-amendment language of the statute as well as the legislative history of those amendments.

The predecessor statute's discussion of psychiatric or psychological examinations stated:

> Upon such a motion [for a judicial determination of mental competency] or upon a similar motion in behalf of the accused, or upon its own motion, the

> court shall cause the accused whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, *who shall report to the court.*

18 U.S.C. § 4244 (1976) (emphasis added; omitting language to provisions not at issue here). Congress amended the psychiatric or psychological examination requirements to state: "Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a *psychiatric or psychological report be filed with the court*, pursuant to the provisions of section 4247(b) and (c)." 18 U.S.C. § 4241(b) (emphasis added). Congress then provided more detailed guidance for competency examinations as set forth in Section 4247(b):

> A psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, or, if the court finds it appropriate, by more than one such examiner. *Each examiner shall be designated by the court* . . . .

18 U.S.C. § 4247(b) (emphasis added; omitting language to provisions not at issue here).

Congress retained the court's direct control over the entire competency testing process:

> A psychiatric or psychological report ordered pursuant to this chapter shall be prepared by the examiner designated to conduct the psychiatric or psychological examination, *shall be filed with the court with copies provided to the counsel for the person examined and to the attorney for the Government* . . . .

18 U.S.C. § 4247(c) (emphasis added).

This statutory comparison is confirmed by the legislative history of the 1984 statute. Tracking the original statutory mandate that the examiner "shall report to the court," the legislative history of the Insanity Defense Reform Act of 1984 demonstrates an intent that

- 7 -

under 18 U.S.C. § 4247(b), the "examiner must report to the court" his or her diagnosis and prognosis opinions.  18 U.S.C. § 4244 (1976); S. Rep. No. 98-225, at 251–52 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3433–34.  In addition, the legislative history expressed an intent for the procedure under 18 U.S.C. § 4247(e)(1) to be "consistent with Federal case law," citing to *In re Harmon*, 425 F.2d 916 (1st Cir. 1970).  S. Rep. No. 98-225, at 237 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3419; *see also* 1A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 209 (5th ed. Apr. 2021 update) (citing to *In re Harmon*, 425 F.2d 916 (1st Cir. 1970), and *United States v. Pogany*, 465 F.2d 72 (3d Cir. 1972), as controlling law to interpret 18 U.S.C. § 4247(b)).  The government also ignores the extensive post-amendment case law affirming the neutral role of court-designated experts.  Dkt. No. 94 at 7.

Next, the prosecution claims that "government retained" experts may remain partisan after designation by the court.  Dkt. No. 89 at 3–9.  This distinction does not exist on the face of §§ 4241(b) and 4247(b)–(c), which must be applied in accordance with their plain language.[3]  Section 4247(b) requires that "[e]ach examiner shall be designated by the court."  18 U.S.C. § 4247(b).  To "designate" as used in the statute means "to choose someone officially to do a particular job"[4] or "to appoint (a person or thing) to an office or

---

[3] *See, e.g.*, *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020) ("This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment."); *Asadi v. G.E. Energy*, 720 F.3d 620, 622 (5th Cir. 2013) ("In construing a statute, a court should give effect, if possible, to every word and every provision Congress used.").

[4] *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/designate (last visited Aug. 10, 2021); *see also Collins Dictionary*, https://www.collinsdictionary.com/us/dictionary/english/designate (last visited Aug. 10, 2021) ("When you designate someone as something, you formally choose them to do that particular job.").

function."[5]  Thus the examining doctors, once chosen or appointed by the Court, act under the color of the Court's authority, which is neutral in every case or controversy that comes before it.  *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986) (explaining that Article III, § 1 guarantees "independent and impartial adjudication by the federal judiciary").  In this regard, the Designated Experts were to have served this Court in a role that is indistinguishable from the appointment, for example, of a special master or other neutral engaged agent to assist the Court.  *See, e.g.*, *Moore as Next Friend to Moore v. Tangipahoa Par. Sch. Bd.*, 912 F.3d 247, 251 (5th Cir. 2018) (discussing how court-appointed "special masters are obligated to be impartial and objective in the pursuit of their duties").[6]

Nor can the government avoid the prescriptions of §§ 4241(b) and 4247(b) in pre-trial competency proceedings by attempting to engraft procedures followed in settings that differ from such competency determinations.[7]  Dkt. No. 89 at 4–5.  Courts may look to

---

[5] *Oxford English Dictionary*, https://www.oed.com/view/Entry/50844?rskey=vb8nE7&result=2&isAdvanced=false#eid (last visited Aug. 10, 2021).

[6] Moreover, the government's argument that the Designated Experts are "government retained" is a red herring.  Per the Guide to Judiciary Policy, the government bears the costs for all "court-directed" competency examination costs, including the costs for all designated experts.  *See e.g.*, Admin. Off. of the U.S. Cts., *Guide to Judiciary Policy*, Vol. 7, Pt. A, §§ 320.20.10, 320.20.60, *available at* https://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-3-ss-320-authorization-investigative-expert#a320_20_60.  The false distinction drawn by the government between "court-appointed" versus "government retained" designated experts simply does not exist in the context of a "court directed" competency examination pursuant to sections 4241(b) and 4247(b).  Much like the fact that BOP examiners must remain neutral, *see* Dkt. No. 94 at 7–8; *supra p.* 6, the source of funds does not relieve the Designated Experts of the requirement to act as neutral agents of the Court.

[7] The United States' Opposition to Motion to Compel cited to *United States v. Merriweather*, No. 2:07-cr-00243, 2014 WL 637051 (N.D. Ala. Feb. 18, 2014), *United States v. Chun*, No. 2:17-cr-20451, 2019 WL 6683878 (E.D. Mich. Dec. 6, 2019), and *United States v. Weston*, 36 F. Supp. 2d 7 (D.D.C. 1999).  Dkt. No. 89 at 4–5.  *Merriweather* addressed the insanity defense, which is considered under the distinct statutory framework for a mental examination under Federal Rule of Criminal Procedure 12.2, in combination with 18 U.S.C. §§ 4242 and 4247(b), that provides courts with additional authority to "order the defendant to be examined under procedures ordered by the court."  Fed. R. Crim. P. 12.2(c)(1)(B).  *Chun* considered a post-competency restoration study.  And in *Weston*, the

inherent authority in a void of statutory prescriptions. The penalty phase of capital cases is one such example, where the district court "lack[s] statutory authority to order the psychiatric exam," but "no law or rule is directly applicable," and therefore courts find authority to "regulate practice in any manner consistent with federal law," including the Federal Death Penalty Act of 1994, which may be read to imply support for the court's inherent authority to order a psychiatric examination for the benefit of the prosecution. *United States v. Webster*, 162 F.3d 308, 339 (5th Cir. 1998) (quoting Fed. R. Crim. P. 57(b)). The reasoning in such cases has no application here, where Congress has provided an explicit, straightforward statutory mechanism for obtaining psychiatric evidence for a pre-trial competency hearing. That directly-applicable provision controls, and there is no gap to be filled by the Court's inherent authority.

The Designated Experts were, and could only have been, appointed under this Court's express statutory authority pursuant to §§ 4241(b) and 4247(b), and accordingly were required to serve only as neutral agents of the Court. *See* Dkt. No. 94 at 3–16.

## III. The Court-Designated Experts Improperly Acted as Partisan Government Investigators

The government concedes that the Designated Experts did not act in a neutral capacity. In the United States' Opposition to Motion to Compel, the government stated its

---

sole case identified by the government addressing the appointment of an expressly partisan government expert in the context of a competency determination, the court cited its inherent authority, but noted that the statutory scheme "arguably does not authorize the Court to compel an examination by a government expert." *Weston*, 36 F. Supp. 2d at 12. None of these cases support the government's contention that the February 1, 2021 and May 10, 2021 Orders permitted the Designated Experts to act as partisans in examining Mr. Brockman. Dkt. No. 94 at 13–16.

view that the Designated Experts are "the government's experts," engaged as "partisan[s]"
to support the government's adversarial positions.  Dkt. No. 89 at 8.  Going further, the
government drew a direct analogy between the work done by the Designated Experts and
that of federal investigative agents.  In opposing the production of the interview notes made
by the Designated Experts during their examinations of Mr. Brockman and in interviews
of his wife and counsel, the government stated that "the government will treat these notes
consistent with how it treats rough notes of interviews that ultimately lead to the production
of a formal memorandum or FBI Form 302."  *Id.* at 15.  From a hindsight review of the
Designated Experts' interviews of Mr. Brockman, the comparison to FBI agents is
especially apt.

Pursuant to the agreed protective order submitted by the parties on March 11, 2021
(Dkt. No. 47-1), which was subsequently memorialized in the Court's May 10, 2021 Order,
the Designated Experts were given full access to Mr. Brockman.  Mr. Brockman submitted
to a PET Scan on March 12, 2021 and participated in a sleep study on April 28, 2021, both
at the direction of Dr. Darby.[8]  He was also examined by Dr. Darby on May 5, 2021,
interviewed jointly by Dr. Dietz and Dr. Denney on May 18 and 20, 2021, and separately
examined by Dr. Denney on May 19, 2021.  Dr. Darby also interviewed Mr. Brockman's

---

[8] Dr. Darby requested a second sleep study, which was scheduled for June 2, 2021, but then cancelled when
Mr. Brockman was hospitalized in connection with a urinary tract infection that triggered a second bout of sepsis.  At
the request of the defense's medical experts as well as the government, a second sleep study has been scheduled for
August 12, 2021.

wife, Dorothy Brockman, and Dr. Denney interviewed Mr. Brockman's counsel, Kathryn Keneally and Peter Romatowski.

Thus solely because they were designated by this Court in the May 10, 2021 Order, the Designated Experts were accorded four days of medical testing and interviews with Mr. Brockman, outside the presence of his counsel.  Their interviews of Mr. Brockman addressed details of his life and his medical history, his view of the potential evidence, facts underlying the charges in the Indictment, and the defense strategy in the case-in-chief.

A review of the transcripts of the interviews conducted by the Designated Experts demonstrates that these doctors used their access to Mr. Brockman to probe issues in the criminal case in the absence of defense counsel.

As examples, in his May 20, 2021 interview of Mr. Brockman, Dr. Denney posed the following questions:



A central issue in the Indictment is Mr. Brockman's role in relation to the A. Eugene Brockman Charitable Trust (the "Trust").  Indictment ¶¶ 6–10, 31, 35, 61, 73, 78, 82–83, 92, 194, 196.  In his May 20, 2021 interview, Dr. Dietz posed this question:



The timing of Mr. Brockman's knowledge of the existence of an investigation bears directly on the obstruction charges in the Indictment.  Indictment ¶¶ 194–98.  Dr. Dietz probed this issue in his May 20, 2021 interview:



Continuing, Dr. Dietz asked many specific and detailed questions concerning allegations in the Indictment during his May 20, 2021 examination, including, among others, ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



Counsel for the defense agreed that the government could select the medical experts to be designated by the Court, and did not seek to influence that decision.  This is similar to what happens in the context of incarcerated defendants when BOP doctors conduct the examination.  Defense counsel also acquiesced to the government's demand and allowed those medical experts to examine Mr. Brockman in the absence of counsel.  Keneally Decl. ¶ 2, Ex. 1.  At no time, however, did counsel agree to the government's subversion of the statutory scheme requiring that court-designated medical experts act neutrally as agents of the Court.  And counsel certainly did not agree that these doctors, under the guise of medical examinations, could act as agents for the government to question Mr. Brockman on substantive and strategic matters in the absence of counsel.

**IV.     This Court Should Appoint Genuine Neutral Experts to Conduct a Competency Examination Pursuant to Sections 4241(b) and 4247(b)**

In *Pogany*, 465 F.2d at 76, the government and the defense agreed that the defendant would be examined by a military psychiatrist chosen by the government.  The trial court relied on the report of this examination to refuse the defendant's request for a competency hearing pursuant to § 4244, the predecessor statute to §§ 4241(b) and 4247(b).  *Id.* at 76–77.  The Third Circuit reversed the subsequent conviction, concluding that an examination by a government psychiatrist—even one agreed to by the defendant—"cannot be deemed a proper substitute for a Section 4244 examination."  *Id.* at 78.  "An advocacy role by the Section 4244 examining psychiatrist is simply and obviously inconsistent with the statute's intent to provide a fair and impartial determination of an accused's ability to stand trial."  *Id.*  "Since there is this probability that the report was prepared for the prosecution's benefit, we must conclude that appellant was not provided with the safeguards envisioned by Congress when it enacted Section 4244."  *Id.* at 79.  The result was a reversal of the conviction and a remand with direction to conduct a proper mental examination pursuant to Section 4244 and consistent with the court's opinion.

As in *Pogany,* this Court and Mr. Brockman have not yet had the benefit of a genuine, neutral examination pursuant to Sections 4241(b) and 4247(b) in aid of a competency determination.  New, unbiased experts should be selected, appointed, and report to the Court before the competency hearing is conducted.

## V.     The Reports and Testimony of Dr. Darby, Dr. Denney and Dr. Dietz Should Be Excluded

The error in this case is greater still: here, the government's apparent misapprehension of the designation process of §§ 4241(b) and 4247(b) allowed partisan experts to gain improper access to Mr. Brockman in the absence of his counsel. The Designated Experts should not be permitted to testify and their reports should not be received in evidence.

"Federal courts have the inherent power to disqualify experts." *Koch Refining Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996) (citing *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)). Although courts generally apply a multi-factor test to determine the propriety of disqualification, they apply a "bright-line" rule requiring disqualification where "the expert switched sides" during the litigation. *Id.*; *see also Wang Lab'y, Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991) ("no one would seriously contend that a court should permit a consultant" to switch sides).

"[S]witching sides from being neutral to becoming an adversary is still switching sides." *Calendar Rsch. LLC v. StubHub, Inc.*, No. 2:17-cv-04062, 2017 WL 10378337, at *2 & n.2 (C.D. Cal. Sept. 22, 2017) (disqualifying jointly-retained expert in a civil case who had "abandoned her posture as a third-party neutral" and "instead [] assumed an adversarial role on [one party's] behalf"). The Designated Experts cannot be repurposed as government experts. Their intended role as neutral, court-appointed experts—and the unique access to Mr. Brockman and his attorneys occasioned by that role—disqualifies the experts from testifying on behalf of the government.

These principles have been applied in a variety of analogous contexts.  For example, in *G.K. Las Vegas Ltd. v. Simon Property Grp., Inc.*, the court appointed a neutral expert under Federal Rule of Evidence 706 to undertake a forensic examination to address potential spoliation issues.  671 F. Supp. 2d 1203, 1214–15 (D. Nev. 2009).  One of the parties, though, treated the court-appointed expert as its "own personal expert" by engaging in *ex parte* communications and supplying the expert with certain case documents.  *Id.*  The court concluded that the expert's "role as an independent expert has been compromised" and its "impartiality as a forensic expert was destroyed."  *Id.*  As a result, the court found that it "cannot rely on the results in [the expert's] investigation," and refused to consider the report.  *Id.*

Similarly, in *In re Kensington Int'l Ltd.*, 368 F.3d 289 (3d Cir. 2004), the trial judge appointed a group of advisors to educate him regarding asbestos-related issues in a group of asbestos cases.  The advisors "clearly had a duty to remain neutral . . . and to provide objective, unbiased information."  *Id.* at 303.  Yet two of the advisors served as legal representatives for plaintiffs in a separate group of asbestos cases, thus "signal[ing] to all that they could not be non-partisan, benign, or neutral."  *Id.* at 304.  On appeal, the Third Circuit found that, by allowing the advisors to continue serving despite the conflict of interest, the judge created the appearance of judicial bias.  *Id.* at 318–19.

In the criminal context of this case, the partisan conduct of the court appointed experts also raises substantial Fifth and Sixth Amendment concerns.  To be sure, court-ordered psychiatric examinations to determine competency are accepted when the psychiatrist's role is appropriately limited and adequate protective measures are in place.

- 18 -

*Cf. Estelle v. Smith*, 451 U.S. 454, 465 (1981) (dictum).  But when such an examination is put to partisan use on behalf of the prosecution, the psychiatrist's "role change[s] and bec[omes] essentially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting."  *Id.* at 467 (court-appointed psychiatrist who examined defendant for competency testified as prosecution witness at sentencing, in violation of 5th and 6th Amendments).

In this case, these constitutional protections are expressed in the May 10, 2021 Order, which provides that "no statement of the defendant during such examination . . . may be used *directly or indirectly* by the government except in this Competency Proceeding."  Dkt. No. 59 at 2 (emphasis added).  Yet the Designated Experts, who are now compared by the prosecution to FBI agents, strayed far afield from competency issues, by seeking factual admissions and strategy disclosures that are useful *only* in the prosecution of the Indictment itself.  If this case proceeds past the competency determination, it will be the prosecutors' burden to prove that they have not made use *directly or indirectly* of the intelligence value of those interviews in other phases of the litigation, in violation of the May 10, 2021 Order.[9]  At the current stage, it is essential that the competency proceeding be free from the potential taint of testimony from experts who

---

[9] *See, e.g.*, *Kastigar v. United States*, 406 U.S. 441, 460 (1972) (finding prosecution has "affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony," including that the compelled testimony was not used as an "investigatory lead" or for "focusing investigation"); *United States v. Williams*, 817 F.2d 1136, 1138 (5th Cir. 1987) (defendant's showing that he spoke to government under grant of use immunity "shifts the burden to the government 'to demonstrate by a preponderance of the evidence an independent source for all evidence introduced'" (quoting *United States v. Seiffert*, 501 F.2d 974, 982 (5th Cir. 1974)); *United States v. Dudden*, 65 F.3d 1461, 1467 (9th Cir. 1995) ("The government may not use the statements to uncover other incriminating evidence, focus the investigation, decide to initiate prosecution, interpret other evidence, or otherwise plan trial strategy.").

were court-appointed as neutral examiners but who admittedly acted as partisans, by excluding from evidence all reports and testimony of the Designated Experts for all purposes, including these competency proceedings.

## **CONCLUSION**

Mr. Brockman is not accusing the government of intentionally subverting the competency hearing process.   The prosecution's missteps may well have been unintentional.   Mr. Brockman is also not asking the Court to render a competency determination based solely on his treating physicians or upon experts retained by the defense.  Instead, Mr. Brockman seeks an appropriate application of the statutory scheme for determinations regarding competency and asks the Court to appoint genuine neutral experts to conduct the unbiased examination required by §§ 4241(b) and 4247(b) and the Constitution.   He also moves the Court to exclude the testimony and reports of the Designated Experts.

Dated:  August 11, 2021

*/s/Jason S. Varnado*
Jason S. Varnado
Texas Bar No. 24034722
SDTX Ad. ID No. 32166
Email: jvarnado@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone: 832-239-3939
Facsimile: 832-239-3600

Kathryn Keneally (*Admitted Pro Hac Vice*)
New York Bar No. 1866250
Email: kkeneally@jonesday.com
James P. Loonam (*Admitted Pro Hac Vice*)

- 20 -

New York Bar No. 4035275
Email: jloonam@jonesday.com
Georgina N. Druce (*Admitted Pro Hac Vice*)
New York Bar No. 5267208
Email:gdruce@jonesday.com
Colleen E. O'Connor (*Admitted Pro Hac Vice*)
New York Bar No. 5764725
Email: colleenoconnor@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212-326-3939
Facsimile: 212-755-7306

Conor G. Maloney (*Admitted Pro Hac Vice*)
District of Columbia Bar No. 1632584
Email: cmaloney@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: 202-879-3450
Facsimile: 202-626-1700

*Attorneys for Defendant*
*Robert T. Brockman*

## CERTIFICATE OF CONFERENCE

I certify that defense counsel conferred by email with counsel for the United States on August 10, 2021 regarding the relief sought in this Motion for the Appointment of Neutral Court-Designated Experts and to Exclude Testimony from Dr. Park Dietz, Dr. Robert Denney, and Dr. Ryan Darby, and the United States indicated it is opposed to the relief sought in this Motion.

*/s/ Jason S. Varnado*
Jason S. Varnado

## CERTIFICATE OF SERVICE

I certify that on this 11th day of August, 2021, I electronically served this document on all counsel of record.

*/s/ Jason S. Varnado*
Jason S. Varnado