UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>ROBERT T. BROCKMAN.,<br><br>*Defendant*. | Cr. No. 4:21-cr-009-GCH |

## PETITIONER'S REPLY IN SUPPORT OF MOTION TO STRIKE

TO THE HONORABLE GEORGE C. HANKS, JR., UNITED STATES DISTRICT JUDGE:

Black-letter Fifth Circuit law bars the Government from publicly accusing an uncharged third party of wrongdoing in a criminal proceeding, as the Government is doing here. *See United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975); *In re Smith*, 656 F.2d 1101 (5th Cir. 1981). The Government's Opposition (Dkt. 104) doubles down, restating its accusations against Tangarra and, for the first time, linking Tangarra's director by name to those accusations.[1] These references are irrelevant to the legal issue

---

[1] The Government's Opposition names Petitioner's director seventeen times and apparently attempts to connect him with the debt-trading scheme charged in the Brockman Indictment, though the Indictment never refers to him by name. *See* Gov.'s Opp. 1-2.

We also note that the Government, in support of a single, mundane, one-sentence factual point, attaches to its Opposition a 56-page under-seal Affidavit filed by Petitioner's director in Bermuda court proceedings. This Affidavit was the subject of a November 5, 2018 Order of the Supreme Court of Bermuda placing the entire case under

1

under governing Fifth Circuit law.[2] *See generally In re Smith*, 656 F.2d at 1106 ("[N]o legitimate governmental interest is served by an official public smear of an individual when that individual has not been provided a forum in which to vindicate his rights.").

Courts have sharply rebuked the Government in the past when it engaged in similar tactics. When confronted with a public memorandum accusing an uncharged business entity and individual of wrongdoing, one district court concluded: "[T]he innuendoes and implications in the memorandum directly impact on the business of both [uncharged entity] GTECH and the uncharged individual, leaving them as if they were 'just as defenseless as the medieval prisoner and the victim of the lynch mob.'" *United States v. Smith*, 992 F. Supp. 743, 754 (D.N.J. 1998) (quoting *Briggs*, 514 F.2d at 803). The court said it "cannot find words strong enough to express its concern with the way in which the United States Attorney's Office went about its preparation and ultimate dissemination of the sentencing memorandum. GTECH was not on trial . . . , nor was the uncharged individual." *Id.*

The Court of Appeals is similarly unsparing when addressing Government efforts to spurn Fifth Circuit precedent and accuse uncharged third parties of wrongdoing:

---

seal and directing that all subsequent proceedings be held *in camera*. *See* In the Matter of The B Trust [2020] SC (Bda) 30 Com. (2020 July 23) at ¶¶ 19-20 (discussing basis and background of sealing order). The Government should never have submitted this Affidavit in open court; its decision to do so is beyond questionable.

[2] Government accusations against uncharged third parties violate those third parties' due process rights even if not stated in an indictment. *See, e.g., Smith*, 656 F.2d at 1106 (factual resume read in open court); *United States v. Anderson*, 55 F. Supp. 2d 1163 (D. Kan. 1999) (legal memorandum in support of motion); *United States v. Holy Land Found. For Relief & Dev.*, 624 F.3d 685 (5th Cir. 2010) (attachment to trial brief).

2

> [T]he Assistant United States Attorney in preparing the factual resumes required by the Court decided to include in such resumes a statement accusing the Petitioner of criminal conduct. Why? ***What possible legitimate purpose could have been served by these official condemnations?*** Certainly the purposes of Rule 11 were not advanced by the attack on the Petitioner's good name. Regardless of what criminal charges may have been contemplated by the Assistant United States Attorney against the Petitioner for the future, we completely fail to perceive how the interests of criminal justice were advanced at the time of the plea hearings by such an attack on the Petitioner's character. ***The presumption of innocence, to which every criminal defendant is entitled, was forgotten by the Assistant United States Attorney*** in drafting and reading aloud in open court the factual resumes which implicated the Petitioner in criminal conduct without affording him a forum for vindication.

*In re Smith*, 656 F.2d at 1106-07 (emphasis added). The Fifth Circuit's case law is clear: all references to Tangarra and its director must be struck from the Brockman Indictment and the Government's Opposition.

## ARGUMENT

The Government asks the Court to carve out an exception to long-established Fifth Circuit precedent to accommodate the Brockman Indictment's accusations against Tangarra. *First*, the Government misstates Fifth Circuit law to argue that it should be able to accuse foreign entities (and now, apparently, foreign individuals) of wrongdoing without restraint because they have no due process rights in U.S. courts. The Government cannot have it both ways, on the one hand contending that Petitioner is properly named in the Indictment because it acted as an "instrumentality" of a U.S. individual used to commit a U.S. crime, in the United States, against a New York bank and United States investors, while at the same time claiming that Tangarra lacks sufficient connections with the United States entitling Petitioner to due process.

3

Certainly nothing in Fifth Circuit law, which is particularly uncompromising in this area, would countenance this type of double-speak. *Second*, the Government attempts a contrived reading of the Brockman Indictment to suggest that it never really implicated Petitioner in wrongdoing. That is both facially incorrect – the Brockman Indictment's language is what it is, no matter the *post hoc* rationalizations – and demonstrably untrue. The allegations against Tangarra in the Brockman Indictment have already prejudiced Petitioner and will continue to do so. *Finally*, the Government argues its accusations against Petitioner are correct, despite its admissions to the contrary. This argument is baffling, for under controlling Fifth Circuit precedent, it is irrelevant whether the Government's allegations of wrongdoing by an unindicted third party are true or untrue – if such allegations are made in a grand jury indictment, they must be stricken.

### I.   THE COURT MAY GRANT RELIEF FOR THE GOVERNMENT'S USE OF A GRAND JURY INDICTMENT TO INAPPROPRIATELY ACCUSE TANGARRA OF WRONGDOING

Faced with clear Fifth Circuit precedent prohibiting the Government from doing exactly what it did, the Government makes the argument that as a foreigner, Petitioner is without due process rights and thus may not petition this Court for relief. But the Government – citing not a single Fifth Circuit case, or indeed any court sitting in this Circuit – misunderstands the governing case law, which derives not only from due process concerns but from broader institutional concerns about a grand jury's role. As such, even if Petitioner has no due process rights (and, as discussed below, it does), Fifth Circuit law supports striking the Brockman Indictment's allegations against it *anyway*.

4

But the Court need not go so far, because the Government's Opposition itself alleges sufficient contacts between Tangarra and the United States to trigger an entitlement to due process in this proceeding. Whether on due process grounds or because of the Fifth Circuit's broader concerns with preserving the role and integrity of the grand jury, the Tangarra allegations should be struck.

### A. The Government Misstates the Legal Standard for Granting Relief

The Government claims Tangarra is not entitled to due process because it is a foreign entity and does "not allege that it has property in the United States or that it presently conducts any business in the United States." Dkt. 104 at 3. That is not the standard. The Fifth Circuit is clear that the rule prohibiting the Government from alleging wrongdoing by third parties derives not only from the third party's due process rights, but also from the Court's inherent authority to prohibit abuse of the grand jury indictment process, as the Government is doing here. Accordingly, the Court of Appeals held that a grand jury "exceed[s] its powers" when it names and accuses "an individual of a crime without indicting that individual as a defendant." *In re Smith*, 656 F.2d at 1106 (citing *Briggs*, 514 F.2d at 801-803). The "analysis focuse[s] not only on the harm done to the accused individuals, but also the powers and responsibilities of the grand jury itself." *United States v. Holy Land Found. For Relief & Dev.*, 624 F.3d 685, 692 (5th Cir. 2010) (noting "the unique status of the grand jury as an . . . 'arm of the court'" (quoting *Briggs*, 514 F.2d at 801, 806)). Due process concerns aside, "a federal court has the power to expunge unauthorized grand jury action" because "the powers of the

5

grand jury are not unlimited and are subject to the supervision of a judge." *Briggs*, 514 F.2d at 806-07 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972)).

Moreover, even if a "pure" due process analysis applied (and it does not), the Government misstates the law. The Government's cases—none of which address a remotely similar issue to the one presented here—show, at most, that an alien *with no connection at all* to the United States lacks due process rights.[3] But none of the cases hold that an unindicted foreign entity named in a criminal indictment lacks a right to challenge that indictment. Indeed, at a minimum, it is undisputed that a foreign entity that has "come within the territory of the United States and developed substantial connections with this country" is entitled to due process. *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 202 (D.C. Cir. 2001).[4] As discussed immediately

---

[3] *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020) ("[F]oreign citizens *in the United States* may enjoy certain constitutional rights—to take just one example, the right to due process in a criminal trial."); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (in the immigration context, distinguishing between the greater constitutional protections available to aliens in the United States compared to those outside the United States); *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) (holding the Fourth Amendment did not apply to the search by U.S. authorities of the Mexican residence of a Mexican citizen with no voluntary attachment to the United States); *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 22 (D.C. Cir. 1999) (concerning entities whose "foreign status [was] uncontested").

[4] The D.C. Circuit noted, but did not decide, the issue of whether the connections must be substantial, or if any connection at all would do to establish due process rights. *See Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 202 (D.C. Cir. 2001) (explaining that nothing in *Verdugo-Urquidez* "purports to establish whether aliens who have entered the territory of the United States and developed connections with this country but not substantial ones are entitled to constitutional protections.").

6

below, *the Government's own Opposition* avers sufficient contacts between Tangarra and the United States entitling Petitioner to due process protection.

> **B. The Government's Own Opposition Alleges Sufficient Connections With The United States to Entitle Petitioner to Due Process**

Even if the Court engaged in a pure due process analysis—which it need not do—the Government's filing alleges sufficient contacts between Tangarra and the United States to entitle Petitioner to due process. The Government states that Tangarra was created to "facilitate [its director's] work for Defendant" Brockman—a U.S. citizen operating a U.S. business from the United States.[5] Dkt. 104 at 1. According to the Government, Tangarra was "a tool of the Brockman Structure," and paid Don Jones—another U.S. citizen—on Brockman's behalf, as well as various entities. *Id.* Government's Exhibit 1[6] explains that Tangarra's director regularly communicated with and met face-to-face with Brockman, who was based in Houston. *See* Dkt 104-1 at ¶ 74; Brockman Indictment ¶¶ 1, 3. Finally, the Government also alleges Brockman used Tangarra to purchase debt in a U.S. company though a U.S. bank on the U.S. secondary markets. *See* Brockman Indictment ¶¶ 165, 166, 176. Courts have found such connections more than sufficient for an alien to claim due process protections. *See, e.g., Al-Aqeel v. Paulson*, 568 F. Supp. 2d 64, 70 (D.D.C. 2008) (finding a foreign corporate officer "established a sufficient presence in the United States to assert at least his due

---

[5] Namely, Universal Computer Systems Holding, Inc., a Delaware corporation with subsidiary offices in Houston. *See* Brockman Indictment ¶¶ 2-3.
[6] Tangarra specifically reserves its objections to the Government's improper use and publication of Dkt. 104-1 as set forth in this Reply.

process claims under the Fifth Amendment" when he traveled to the United States on business trips and assisted an entity in acquiring property in the United States).[7]

The Government tries to have it both ways, contending on the one hand that Tangarra was (however unwittingly) an "instrumentality" of Brockman—a U.S. resident and citizen—that participated in the alleged U.S.-based debt-trading scheme, *See* Dkt. 104 at. 4, while on the other hand claiming that Tangarra lacks sufficient connections with the United States to merit due process. But the Government cannot in fact have it both ways, and it is instead "hoist with its own petard," because "[i]f A is B, and B is present, then A is present also." *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 202 (D.C. Cir. 2001) (holding an entity has presence in the United States when the government alleged that it was an "alter ego" of another entity that had presence in the United States). Brockman is undoubtedly present in the United States, and under the Government's own factual allegations, for due process purposes, Tangarra must be deemed present also.

## II. THE INDICTMENT'S ACCUSATIONS OF WRONGDOING ARE REAL AND HAVE RESULTED IN TANGIBLE HARM TO PETITIONER

The Government next employs a tortured reading of the Indictment to claim that it never actually accused Petitioner of wrongdoing. The Indictment alleges that Brockman

---

[7] Notably, Tangarra, though its director, is a cooperating witness in the Government's case against Brockman. Thus far, Tangarra's cooperation includes providing statements and many Tangarra documents to the Government, as the Government acknowledges by citing some of those documents in opposition. *See* Dkt. 104 at. n.1. This alone shows Petitioner's substantial connection with the United States relating to this very prosecution.

"engaged in a fraudulent scheme to deceive the purchasers and sellers of the Debt, through the Administrative Agent Deutsche Bank, using Edge and Tangarra to purchase Debt." Brockman Indictment ¶ 165. That language unambiguously implicates Tangarra in the charged debt-trading scheme. The Government's contention that the Indictment only alleges Brockman "used" Tangarra—not that Tangarra acted independently—is a distinction without a difference. The Government would also read the phrase "Brockman . . . us[ed] . . . Tangarra to purchase Debt" not to imply that Tangarra purchased debt.[8] No one unfamiliar with the facts of the case would read or interpret the Indictment's language as the Government suggests. The Government's *post hoc* explanation of what its infelicitous language really meant to say provides little solace when the Brockman Indictment stands as written.[9] Moreover, as discussed more fully in the Sealed Appendix submitted with this Reply, others *already* have read the Brockman Indictment's plain language as written, and it has already caused Petitioner tangible harm.

---

[8] The Government makes much of the word "used" in paragraph 165, but the Brockman Indictment elsewhere describes Tangarra as a "Debt purchaser[]" and states debt purchases were made "through" Tangarra. Brockman Indictment ¶¶ 166, 169, 182.

[9] The cases the Government cites on this issue are inapposite, as they either involve no accusations at all, *see United States v. Korean Air Lines Co.*, 505 F. Supp. 2d 91, 94 (D.D.C. 2007) (finding no due process violation when plea agreement with company named two employees who were carved out of agreement "without explaining the basis for the exclusion"), or involved circumstances where the petitioners were not accused by name, *see Application of Johnson*, 484 F.2d 791, 797 (7th Cir. 1973) (grand jury report did not accuse petitioners of wrongdoing "by name").

### III.  THE ACCURACY OR INACCURACY OF THE GOVERNMENT'S ACCUSATIONS IS LEGALLY IRRELEVANT

Finally, the Government argues that the accusations against Tangarra are not false, relying on the same convoluted reading of the Indictment. That is untrue; it is also irrelevant. In its decision striking down an attempt by the Government to accuse uncharged third parties of wrongdoing, the Fifth Circuit expressly said "probable cause on the basis of which the grand jury might have made the unindicted conspirator a defendant is ***unrelated*** to the question of whether the grand jury may accuse him without making him a defendant." *Briggs*, 514 F.2d at 807–08 (emphasis added). And when the Government has attempted to justify accusations against third parties by pointing to record evidence, it has been summarily rebuffed. *See Delpit v. Beckner*, 481 F. Supp. 42, 46, n.3 (M.D. La. 1979) ("The government declares that at the trial [of the defendants] evidence was offered tending to show the correctness of the allegations in the indictment relating to [the third-party]. Assuming that to be so, it has no relevance to the issues here."). The accuracy (or inaccuracy) of the Government's accusations is utterly beside the point.

\* \* \*

Petitioner respectfully requests that the Court enter an order striking all references to Tangarra and its director from the Indictment as well as all other filings, including but not limited to the Government's Opposition to this Motion (Dkt. 104). *See Application of Jordan*, 439 F. Supp. 199, 209 (S.D.W. Va. 1977) (ordering the name of the petitioner "be expunged from the indictment ***and*** any and all subsequent official documents

forming a part of the official record" (emphasis added)). Petitioner also requests the Court issue a public order declaring Petitioner's rights were violated. *See United States v. Holy Land Found. For Relief & Dev.*, 624 F.3d 685, 690-91 (5th Cir. 2010) (describing how a public order would further petitioner's "interest in mitigating its reputational injuries"). Finally, Petitioner requests that Exhibit 1 to the Government's Opposition (Dkt. 104-1) be either placed under seal (as it should have been) or stricken from the record entirely, and that any references to Exhibit 1 by the Government either be stricken from the record or placed under seal.

Respectfully submitted,

____/s/ Philip H. Hilder_____

Philip H. Hilder
State Bar No. 09620050
Stephanie K. McGuire
State Bar No. 11100520
Q. Tate Williams
State Bar No. 24013760
819 Lovett Blvd.
Houston, Texas 77006-3905
Telephone (713) 655-9111
Facsimile (713) 655-9112
philip@hilderlaw.com
stephanie@hilderlaw.com
tate@hilderlaw.com

*Of Counsel:*
*Paul Rauser*
*Branden Lewiston*
*Aegis Law Group, LLP*
801 Pennsylvania Ave., NW
Washington D.C. 20004
Telephone (202) 737-3375
Facsimile (202) 737-3330

11

CERTIFICATE OF SERVICE

    I certify that on August 17, 2021, I electronically submitted the following document with the Clerk of Court for the U.S. District Court for the Southern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to individuals who have consented in writing to accept this Notice as service of this document by electronic means.

                                                          */s/ Philip H. Hilder*