| | |
|---|---|
| **From:** | Keneally, Kathy |
| **To:** | Smith, Corey (TAX); Langston, Lee F. (TAX); Magnani, Christopher (TAX) |
| **Cc:** | Varnado, Jason S.; Loonam, James P.; Druce, Georgina N. |
| **Subject:** | FW: U.S. v. Brockman 4:21cr009 GCH |
| **Date:** | Monday, March 8, 2021 1:39:13 PM |
| **Attachments:** | Letter to Defense - 20210301.pdf |
| | Declaration of Dr. Darby 3.1.pdf |

Corey, Lee, and Chris,

To confirm our discussions this morning:

1.  You represented that Dr. Darby will conduct an examination but not an interview; that Dr. Dietz will conduct an interview and Dr. Denney may participate in this interview at the same time; and that Dr. Denney will separately conduct an examination that will not include an interview component.   You have also agreed that Dr. Dietz's interview will be video recorded.   In other words, to the extent that the government's experts are including any interview as part of their examinations of Mr. Brockman, any such interview will be recorded.   With this understanding, we agree to the current protective order in the form proposed by the government, and will appropriately inform the Court.

2.  Mr. Brockman can be available for a PET Scan / sleep lab study on either March 11-12 or March 17-18.   The government will undertake to make appropriate arrangements, including costs.  You also agreed that we will be provided with full access to the results.

3.  Provided that the protective order is in place, Mr. Brockman will be available to be examined by Dr. Darby in Houston on March 26.

4.  Provided that the protective order is in place, Mr. Brockman will be available to be examined by Dr. Dietz and Dr. Darby on April 6-8.

5.  We proposed that the parties exchange witness lists thirty days in advance of the hearing date, which I now realize falls on Memorial Day.   I suggest that we agree to set this date as May 28, which is also the date on which final expert reports are due.

6.  The government agreed to provide *Brady* and *Giglio* material related to the competency issue thirty days in advance of the hearing date.   Again, I suggest that we set this date for May 28 as well.

Please let me know promptly that you are in agreement with the above.   We remain available to address the logistical issues.

Thank you.

Kathy

Kathryn Keneally
Partner
**JONES DAY® - One Firm Worldwide**SM

250 Vesey Street
New York, NY 10281-1047
Office: +1-212-326-3402
Cell:+1-███████████
kkeneally@jonesday.com

---

**From:** Smith, Corey (TAX) <corey.smith@usdoj.gov>
**Sent:** Monday, March 1, 2021 4:34 PM
**To:** Keneally, Kathy <kkeneally@jonesday.com>; Varnado, Jason S. <jvarnado@jonesday.com>;
Loonam, James P. <jloonam@jonesday.com>
**Cc:** Langston, Lee F. (TAX) <Lee.F.Langston@usdoj.gov>; Magnani, Christopher (TAX)
<Christopher.Magnani@usdoj.gov>
**Subject:** U.S. v. Brockman 4:21cr009 GCH

**\*\* External mail \*\***

Kathy/Jason/James

Attached please find our letter and declaration of Dr. Darby regarding the scheduling of tests the
government's expert Dr. Darby is requesting that Mr. Brockman undertake.

Please let us know if you have any questions and/or comments.

Sincerely,

Corey J. Smith
Senior Litigation Counsel
Tax Division
(202) 514-5230

\*\*\*This e-mail (including any attachments) may contain information that is private,
confidential, or protected by attorney-client or other privilege. If you received this e-mail in
error, please delete it from your system without copying it and notify sender by reply e-mail,
so that our records can be corrected.\*\*\*



**U.S. Department of Justice**
**Tax Division**

*Western Criminal Enforcement Section*
*P.O. Box 972*                                          *202-514-5762 (v)*
*Washington, D.C. 20044*                      *202-514-9623 (f)*

March 1, 2021

**VIA EMAIL**
kkeneally@jonesday.com
jvarnado@jonesday.com
jloonam@jonesday.com

        *Re:*     *United States v. Robert T. Brockman*, 4:21-cr-009-GCH

Dear Counsel:

As you know, the United States has retained three experts to evaluate Defendant's claim that he is incompetent to stand trial due to his diagnoses of Parkinson's, parkinsonism, and/or Lewy body dementia. As we discussed on our February 25, 2021 phone call, the experts wish to conduct the following examinations to assist in the comprehensive and accurate evaluation of Defendant's competency claims:

First, Dr. Ryan Darby, a cognitive and behavioral neurologist, has agreed to travel to Houston to conduct an in-person examination of Defendant on March 25 and/or March 26, 2021. In advance of that examination, Dr. Darby requests that Defendant submit to a sleep study and a PET scan, which are important diagnostic tools that will aid in Dr. Darby's evaluation. *See* Draft Declaration of Ryan Darby, attached to this letter. Dr. Darby's work is necessary to provide the experts with an independent opinion on the diagnoses supporting Defendant's competency claim.

Second, following Dr. Darby's examination, Drs. Park Dietz and Robert Denney have made themselves available to travel to Houston and evaluate Defendant between April 5 and April 16, 2021. Dr. Dietz (likely joined by Dr. Denney) will start by conducting a forensic psychiatric interview, which both doctors agree can be video recorded. Afterward, Dr. Denney alone will conduct cognitive and competency-related testing, which cannot be recorded. These evaluations are estimated to take three days.

Third, Drs. Dietz and/or Denney will conduct what they term "collateral" interviews of people who have had occasion to observe and interact with Defendant, including Defendant's wife and son. The doctors have not reached out to these people to arrange interviews yet and, while we understand you do not represent them, we wanted to inform you at least that they may interview Defendant's close family members.

- 2 -

We shared the above information with you on our February 25, 2021 phone call and now write to ask whether Defendant will agree to the experts' requests.  Please provide your position on the following within seven days:

1.  Defendant's submission to a polysomnography study (sleep study), to be conducted at Houston Methodist on or before March 15, 2021;

2.  Defendant's submission to a fluorodeoxyglucose positron emission tomography (FDG-PET) scan of the brain, to be conducted at Houston Methodist on or before March 15, 2021;

3.  Defendant's submission to an in-person neurological examination by Dr. Darby on March 25 and/or March 26, 2021;

4.  Defendant's submission to forensic interviewing by Dr. Dietz with the possibility that Dr. Denney participates as well;

5.  Defendant's submission to cognitive- and competency-related testing by Dr. Denney; and

6.  Drs. Dietz and/or Denney will endeavor to conduct relevant "collateral" interviews, i.e. voluntary interviews with subjects who they believe might bear light on Defendant's competency, including Defendant's wife and son.  We hope that Defendant and counsel will assist in facilitating these interviews.

Please let us know your position on the above items within seven days.  We look forward to hearing from you.


Very truly yours,

DAVID A. HUBBERT
ACTING ASSISTANT
ATTORNEY GENERAL

s/ Corey J. Smith
COREY J. SMITH
Senior Litigation Counsel

**Declaration of Dr. R. Ryan Darby, MD**

I, Dr. R Ryan Darby, declare as follows:

1.  I am an assistant professor of neurology at Vanderbilt University Medical Center. I specialize in cognitive and behavioral neurology, including evaluation of patients with neurodegenerative disorders and dementia.

2.  The Government hired me to evaluate whether Mr. Robert Brockman has a diagnosis of Parkinson disease, Parkinsonism, and/or Dementia with Lewy Body, and to evaluate whether Mr. Brockman has cognitive problems and/or dementia.  The government has also hired Dr. Park Dietz, a forensic psychiatrist, and Dr. Robert Denney, a forensic neuropsychologist, to evaluate whether Mr. Brockman is competent to assist in his own defense.

3.  Given my expertise in cognitive and behavioral neurology and dementia, my specific role is to determine Mr. Brockman's neurological diagnoses and cognitive / behavioral diagnoses. This evaluation is necessary to assist Dr. Dietz and Dr. Denney in their competency evaluations.

4.  A polysomnography study (sleep study), neurological history and examination, and fluorodeoxyglucose positron emission tomography (FDG-PET) scan of the brain are all part of the standard clinical examination I would perform on a patient being evaluated for Parkinson disease, Parkinsonism, Dementia with Lewy Body, or dementia. They are not specific to a forensic evaluation or competency evaluation.

5.  Rapid Eye Movement (REM) sleep behavior disorder is a clinical diagnostic feature of Dementia with Lewy Body. The diagnosis of REM sleep behavior disorder requires a diagnostic test called a polysomnography study or "sleep study." A sleep study is minimally invasive and involves one overnight session of monitoring of brain waves, breathing, heart rate, eye movements, and muscle tone while the patient sleeps in a bed. The sleep study should be performed at a certified sleep center and evaluated by a board-certified sleep specialist with instructions to evaluate for REM sleep behavior disorder. I have identified Houston Methodist as one such center near Mr. Brockman's home in Houston.

6.  A clinical history and neurological examination are necessary to evaluate for motor and cognitive diagnostic features of Parkinson disease, Parkinsonism, Dementia with Lewy Body, and dementia. A cognitive and dementia evaluation also requires that a reliable informant be present to answer questions, in this case Mr. Brockman's wife.  The evaluation should take no more than half a day.  The examination would need a quiet room with a minimum of two chairs, a table, and outlets for a laptop computer.  I have made myself available to perform such an evaluation with Mr. Brockman in Houston on March 25th or 26th, 2021.

7.  Fluorodeoxyglucose positron emission tomography (FDG-PET) is a brain scan that evaluates the functional brain activity in different brain regions. An FDG-PET scan of the brain is used clinically to differentiate between patients with vs. without dementia, to differentiate between different types of dementia, and to assist in estimating the likelihood of future cognitive decline. An FDG-PET scan is minimally invasive and takes approximately 2 hours. A radiotracer is first injected intravenously. Approximately 60-90 minutes after the radiotracer is injected, the PET scan is performed, typically taking 20-40 minutes. The FDG-PET scan should be performed at a medical center with radiologists specializing in nuclear medicine and/or neuroradiology. I have identified Houston Methodist as one such center near Mr. Brockman's home in Houston.

8.  Ideally, the sleep study and PET scan should be completed prior to my neurological history and examination.


I declare under penalty of perjury that the foregoing is true and correct.

Executed in Nashville, TN on February 28th, 2021


_____

R. Ryan Darby, MD