UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § § § |
| Plaintiff, | § § |
| v. | § § Cr. No. 4:21cr 009 GCH |
| ROBERT T. BROCKMAN, | § § § |
| Defendant. | § § § § |

### DECLARATION OF DR. ROBERT DENNEY

I, Dr. Robert L. Denney, declare as follows:

1. I am a licensed psychologist who is board certified in clinical neuropsychology and forensic psychology. My CV is attached to the United States' Notice of Experts. See ECF #44.

2. The Court designated me as one of three government experts and ordered me to conduct a competency examination in this case. See ECF #59.

3. I have been conducting competency examinations for 29 years and the circumstances of my engagements have been varied. While a forensic examiner within the Federal Bureau of Prisons (FBOP), U.S. Medical Center for Federal Prisoners, I performed Court-ordered examinations that were in my view non-partisan. In this setting, I performed over 500 such examinations as the primary examiner and over 200 more as a secondary consultant examiner. Since my retirement from the FBOP, I have continued performing examinations as a consultant. My consultant work has included cases where I was hired by county prosecutor offices, Missouri Public Defenders' Office, U.S. Department of Justice, U.S. Attorney Offices in various states and the District of Columbia, DC Public Defenders' Office, and private law firms.

4. When performing examinations for the Courts from within the FBOP, I viewed myself as the Court's expert. In those instances, I contacted the Court initially to clarify/verify the timing and nature of the examination. I would then attempt to contact both prosecuting and defense attorneys of record to request records and information about the defendant and the defendant's case. This generally involved a brief telephone interview with the prosecutor as well as the defense counsel if counsel would talk to me. Final reports were sent directly to the Court with copies for prosecution and defense. The one case I performed as private consultant to the U.S. District Court after my retirement was carried out in the same manner.

5. I have been contracted by federal or state prosecutors in about 35 cases. In every one of those cases, I was appointed by the court in response to the prosecutor's motion. It is my customary practice to seek relevant information from both prosecution and defense for situations in which criminal competency is at issue. In all but one case, I sent my reports to the attorney representing the contracting agency. That one case was in Hawai'i, and I was directed specifically by the Court in the court-order to send my copy via mail directly to the Court. In these cases, including the Hawai'i case, I spoke with, or attempted to speak with defense counsel of record regarding the defendant's mental status and how that interfered with competency to proceed.

6. For competency related examinations that are contracted by public defenders' offices or private defense attorney's, I seek full investigative materials from the prosecution (via defense counsel), but I generally do not seek to speak with the prosecutor regarding the defendant's mental status.

7. In all cases, I provide opportunity for informed assent or consent from defendants and collateral informants, explaining specifically who I am, what I do, who hired me, and the purpose of my examination, that I will likely write a report that will generally go to the Court

and both prosecution and defense attorneys, and that I might be called to testify to my observations and opinions.  I explain the limits of confidentiality to the best of my knowledge.  Examinations at the request of defense are worded differently because that work may remain privileged work product, but I explain the potential outcomes nevertheless.

8. In U.S. v. Robert T. Brockman, I was contacted by the prosecutorial team in or about December 2020.  I believe the specific contract is with the U.S. Department of Justice.  As part of my interactions with prosecutors in this case, I outlined the types of information needed to complete this examination, I provided consultative guidance on mental health and neuropsychological related matters to help inform the attorneys regarding what methods I needed to use and what information I needed to complete the task appropriately.  Over the years, I have found it necessary to provide education to the prosecutors regarding these issues in order perform my examination effectively, just as I have done with defense attorneys when hired by defense.  The interactions with prosecuting attorneys in this case were consistent with the interactions I typically have with attorneys who contract for my services.

9. As part of my work in this case, I reviewed records and conducted an examination of the defendant in May of 2021.  As is documented in the videotaped interviews with Defendant, I explained my role, that I was hired by the U.S. Government, the purpose of my examination, the limits of confidentiality, and the fact I would produce a report and likely testify at some point in the future. I also interviewed Jones Day attorneys regarding their recollections and views of the defendant's demeanor and behavior over the course of their interactions with him. At the beginning of each of my interviews, I explained my role, who hired me, what the information would be used for, and the limits of confidentiality; in the cases of the Jones Day attorneys, these points were truncated as they indicated they understood those issues.

10. As part of my interview with Defendant, I asked questions about his understanding of the nature and consequences of the allegations against him, his recollections of the indictment, his thoughts about the allegations, what he thinks of his defense team, and whether he believes he can assist them in defending him.  It is not only customary but nearly always important to ask the defendant directly his or her understanding related to the charges and the behaviors that constitute the alleged offense as well as his or her understanding and thinking in regard to legal procedures that might be involved in going through the legal process.  It is also important to get the defendant's perception of his counsel.  These questions are the primary method to determine a defendant's understanding and appreciation for the charges, better determine his ability to consult with counsel and assist properly in his defense. It is only through such questioning that irrational concepts and ideas can be revealed.  Such questions put to defendants are standard level of practice in forensic psychology in competency assessments regardless of who hired the forensic examiner.  In the competency setting, it generally would be substandard forensic practice to not examine the defendant on these issues.

11. The goal of my work has always been to provide accurate, objective, and independent opinions regarding my diagnostic formulations and forensic analyses.  I asked questions of the defendant with the sole purpose of understanding his appreciation of the nature and consequences of the allegations against him, his understanding of the legal process, and his perception about, and ability to work productively with, counsel in order to assist properly in his defense. In fact, there were numerous times I cautioned him against revealing privileged communications; my questions were designed only to pursue his understanding of important legal concepts and his willingness and ability to cooperate in his defense in a rational manner.

12. I submitted my report on June 21, 2021 and expect to be called to testify in an upcoming competency hearing.  I have completed approximately 1000 reports for use in court proceedings and have testified well over 100 times in courts throughout the United States and U.S. Territories.  I am not aware of my reports or testimony ever having been excluded.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 19th day of August, 2021.

Robert L. Denney, Psy.D., ABPP