UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 4:21-CR-009 (GCH) |
| v. | **DECLARATION OF DR. PARK DIETZ** |
| **ROBERT T. BROCKMAN** | **REGARDING THE DIFFERENCES BETWEEN GOVERNMENT EXPERTS** |
| **Defendant.** | **AND COURT-APPOINTED EXPERTS** |

I, Park Dietz, M.D., M.P.H., Ph.D., declare under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I am a board-certified psychiatrist specializing in forensic psychiatry. My background and qualifications are summarized in my Declaration of January 22, 2021, in this matter and in the *curriculum vitae* submitted as an exhibit thereto and also attached to the United States' Notice of Experts. ECF #44.

2. Government experts are selected by the Government, retained by the Government, contracted with the Government, and compensated by the Government. Government experts inform defendants and any witnesses they seek to interview that they were retained by the Government, consult with the Government during and after their investigation and report preparation, and submit their reports to the Government. All of that occurred in my work in this matter as a Government expert.

3. In contrast, Court-appointed experts are selected by the Court, retained by the Court, contracted with the Court, and compensated by the Court. Court-appointed experts inform defendants and any witnesses they seek to interview that they were retained by the Court, may

consult with the Court during and after their investigation and report preparation, and submit their reports to the Court. None of that occurred in my work in this matter as a Government expert.

4. I've conducted over 1,000 evaluations of competency to stand trial in criminal cases since 1978, have done so in both state and federal jurisdictions, and have done so as an expert employed by a state agency, as an expert retained by state and federal prosecutors, as an expert retained by defense counsel, and as an expert appointed by various courts. In this case, it has been unambiguous to me from the first contact with the Government in December 2020 that I was being considered and was eventually retained as a Government expert. I have had no contact whatsoever with the Court. I submitted my report to a representative of my client, the United States, as I have done in every other case in which I have been retained by the United States as a Government expert, unless ordered to do otherwise.[1]

5. Dr. Denney and I were escorted to our interview of the Defendant by a Special Agent who remained present during discussions with counsel for the Defendant about whether to use the videographer my office had hired at the request of the Government or the videographer hired by the Defendant. The Defendant was informed that Dr. Denney and I were interviewing him on behalf of the Government. The first of more than one occasion on which this occurred was early in the interview of May 18, 2021:

---

[1] In capital murder cases, I have sometimes been retained by the United States as a Government expert but ordered to submit a "sealed" copy of my report to the Court, as for example, in the case of *United States v. Dylann Storm Roof*. When this is the case, I follow the Court's instructions about how to "seal" the report (e.g., submitting it within a sealed envelope), as experts to my knowledge do not have access to any electronic system for submitting a document "under seal."

PD: And that your attorneys have asserted that you're not competent to proceed to trial. Do you understand that?

RB: Yes, I understand that.

PD: Do you understand that because they've said that, that the government is allowed to also examine you?

RB: Uh-huh [affirmative], I understand that.

PD: And that's what this is part of. This is part of that government evaluation of your competence to stand trial. And you understand that?

RB: Yes, I do.[2]

6. It is necessary, appropriate, and standard practice for Government examiners evaluating a Defendant's competency to stand trial to inquire into the Defendant's understanding of the charges against him and the Defendant's ability to consult meaningfully with counsel.

7. A review of the videos or transcripts of the interviews that Dr. Denney and I conducted in this matter will show that we took pains to avoid asking about the <u>content</u> of the Defendant's communications with his counsel while nonetheless probing his <u>ability</u> to cooperate and assist his counsel.

8. Forensic psychiatry requires that experts strive for objectivity in their analysis of data and their testimony. The fact that an expert retained by an adversarial party is often consulting with and advising partisan lawyers neither requires nor justifies an expert acting as a partisan. It is entirely appropriate for an expert to advise an adversarial client on avenues of investigation, the

---

[2] Transcript of May 18, 2021, interview of Defendant by Dr. Dietz and Dr. Denney, p. 4.

possible interpretations of data, the expert's evolving impressions as the data unfold, and the vulnerabilities of one's own and other experts' analyses and opinions, but in the end the expert should strive to deliver (orally, in written reports, and in testimony) objective opinions based on the available data. That is what I have done in this case and will continue to do as more data emerge.

9. I submitted my report on June 21, 2021, and expect to be called to testify at the forthcoming competency hearing.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   August 20, 2021
         Newport Beach, California

*[signature]*
**PARK DIETZ, M.D., M.P.H., PH.D.**