UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT T. BROCKMAN,<br><br>    Defendant. | §<br>§<br>§<br>§<br>§  Cr. No. 4:21cr 009 GCH<br>§<br>§<br>§<br>§<br>§<br>§ |

**UNITED STATES' RESPONSE TO DR. STUART YUDOFSKY'S MOTION TO QUASH SUBPOENA AND MOTION FOR AN EXPEDITED HEARING**

## **TABLE OF CONTENTS**

**BACKGROUND** ............................................................................................................. 1

**ARGUMENT** .................................................................................................................. 4

    A.  If Dr. Yudofsky intends to assert his right against self-incrimination, he must do so at the competency hearing, in response to specific questions, so the Court can determine whether his invocation is proper. ................................................................... 4

    B.  The plain language of the Subpoena requests emails and communication related to Mr. Brockman, and these requests are appropriate under Rule 17(c). ........................... 9

**CONCLUSION** ............................................................................................................. 11

The Government opposes Dr. Stuart Yudofsky's Motion to Quash ("Motion"). *Dkt. No. 108*. His bases for refusing to appear at the competency hearing are grounded in an improper and premature invocation of his Fifth Amendment rights. In addition, the Government made specific requests for records that are relevant to Defendant's competency and which are admissible. Thus, they are proper requests under Fed. R. Crim. P. 17(c). On August 25, Yudofsky filed a motion for a hearing on this matter. *Dkt. No. 118*. The Government does not oppose this request.

## BACKGROUND

Yudofsky is a key witness. He has a long-standing relationship with Defendant. As a neuropsychiatrist, he is the only known doctor to whom Defendant complained of purported memory issues prior to the August and September 2018 search warrants executed at the homes of Defendant's administrative assistant, Evatt Tamine (Individual One in the Indictment). Yudofsky examined Defendant at least three times and exchanged several emails regarding Defendant's cognitive health. *Emails between Defendant and Yudofsky*, Dkt. Nos. 109-6, 109-11. Defendant has repeatedly relied on a May 2017 email exchange between him and Yudofsky to show that his alleged incompetence was not fabricated for the purposes of these proceedings. *Dkt. No. 109-6*.

On a personal level, Yudofsky is Defendant's long-time friend. Defendant has donated more than $25 million to support Yudofsky's research. *Emails between Defendant and Tamine, Dkt. No. 109-10*. Yudofsky served on the boards of at least two of Defendant's foundations. They go on trips together—Yudofsky and Defendant were

1

on an Alaska fishing trip when Defendant learned that the Bermuda Police Service executed a search warrant on Defendant's co-conspirator's home. *Flight Manifest, Dkt. 109-7*. The next day, Defendant, from Alaska, scheduled the appointment with Dr. Seth Lerner, a urologist, that led to the first documented diagnosis of Defendant's alleged cognitive defects. Thus, Yudofsky has the basis of knowledge to testify as to Defendant's demeanor, statements, and state of mind in the earliest days of his claimed onset of memory problems.

On February 24, 2021, the Government served Yudofsky with a hearing subpoena through his attorney. *Proof of Service, Ex. 1*. On June 21, 2021, the Government again served Yudofsky with an updated subpoena after Defendant's competency hearing was rescheduled from June 29 to September 13. *Proof of Service, June 21, 2021, Ex. 2* ("Subpoena"); Motion, Ex. 2, Dkt. No. 108 at 23.[1]

On June 16, 2021, the Government filed an unopposed motion under Fed. R. Crim. 17(c)(1) and 45 CFR § 164.512(e)(1)(i) for an order requiring Yudofsky to produce records and documents responsive to the hearing subpoena within 30 days of service. *Dkt. No. 70*. At a status conference held on July 29, 2021, the Court stated it would sign the proposed Rule 17(c)(1) Order regarding the hearing subpoena. On August 4, 2021,

---

[1] In the Motion, Yudofsky correctly pointed out that while the Subpoena was dated May 10, it was not served until June 21. The Government apologizes for this error, but it is irrelevant to the issue before the Court: whether Yudofsky can refuse a subpoena to appear at the competency hearing on an improper invocation of the Fifth Amendment and whether the records sought constitute an appropriate request under Rule 17(c).

2

the Court entered a minute order, memorializing its oral ruling on July 29. On August 6, Yudofsky made a partial production, consisting of approximately 16 pages of handwritten notes related to his examinations of Defendant between October 2018 and October 2020.[2] Among other records, the Subpoena requested the production of "emails and correspondence from January 1, 2010, to the present" related to Defendant. *Motion Ex. 1, Dkt. No. 108 at 17*. To date, Yudofsky has not produced any correspondence, and his attorneys indicated that no further production was coming.[3] *Motion Ex. 5, Dkt. No. 108 at 36-38*. As a result, the Government filed a motion for an order to show cause why Yudofsky should not be held in civil contempt. *Dkt. No. 109.*

The Government previously approached Yudofsky's attorneys to schedule an interview, which was rejected absent a guarantee that Yudofsky's statements would not be used against him. The Government also informed Yudofsky's counsel that he was not a target of the investigation. On June 16, the Government sent Yudofsky a proposed proffer letter, which his attorneys rejected. *Proposed Proffer Letter, Dkt. 109-4.* Yudofsky's attorneys informed the Government that Yudofsky would not sit for an interview absent a blanket grant of statutory immunity under 18 U.S.C. § 6002. *June 18, 2021 email, Dkt. No. 108 at 46-47.*

---

[2] Yudofsky had previously produced these records to Defendant's experts without a court order.

[3] Yudofsky's attorneys represented that they asked Yudofsky to search for email correspondence "that could reasonably be considered to fall within the terms 'administrative, financial and medical records,'" but made no indication that they would ultimately produce the full category of correspondence requested by the Subpoena. Motion Ex. 5, Dkt. No. 108-6 at 36-37.

3

On August 11, Yudofsky's attorneys sent the Government a letter providing, "formal notice that our client—in reliance upon his constitutional rights—will refuse to answer any and all substantive questions that may be asked of him . . . and confirm that Dr. Yudofsky is no longer required to appear in U.S. District Court in Houston on September 13, 2021." *Motion Ex. 6, Dkt. 108 at 40.* At no point did Yudofsky's attorney identify what crime he may have committed. That same day, the Government made clear that Yudofsky is expected to attend and that the Government would not confer blanket immunity without "an immunized proffer session with [the Government]" so that the Government can be "convinced that Yudofsky has committed a crime, and it is in the public's best interest to grant him immunity in exchange for potentially self-incriminating testimony regarding the commission of that crime." *Motion Ex. 7, Dkt. No. 108 at 43-44.*

## ARGUMENT

**A. If Dr. Yudofsky intends to assert his right against self-incrimination, he must do so at the competency hearing, in response to specific questions, so the Court can determine whether his invocation is proper.**

Yudofsky's blanket refusal to testify at the September 13 competency hearing is "unacceptable." *United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir. 1976). A party cannot "decide for himself whether he is protected by the fifth amendment privilege." *SEC v. First Fin. Grp., Inc.*, 659 F.2d 660, 668 (5th Cir. 1981). Rather, "a court must make a particularized inquiry, deciding, in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well-founded." *Melchor Moreno*, 536 F.2d at 1049; *see also First Fin. Grp., Inc.*, 659 F.2d at

4

668. Yudofsky "may be totally excused only if the court determines that 'he could legitimately refuse to answer essentially all relevant questions.'" *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir. 1980) (quoting *Melchor Moreno*, 536 F.2d at 1049).

Thus, Yudofsky cannot simply tell the Government that he intends to invoke the Fifth Amendment and skip the competency hearing. The Court must have an opportunity to hear the Government's lines of inquiry and determine whether any subsequent invocation of the Fifth Amendment is proper. Yudofsky is a consequential witness. He was on a fishing trip with Defendant just before Defendant visited a urologist and complained of memory issues. He allegedly provided medical treatment to Defendant for his cognitive issues. His testimony and records are almost certainly going to be relevant as to whether Defendant's claimed cognitive defects were legitimate or manufactured to thwart this prosecution. Indeed, the Government is not asking Yudofsky to do its "bidding," *Dkt. No. 108 at 10*, but, rather, to provide important evidence to aid the Court's competency determination.

The Government has made a good-faith effort to understand the bases for Yudofsky's refusal to appear. *See Motion Ex. 4, Dkt. No. 108*. The Government provided Yudofsky's attorneys with a proposed proffer letter with the intent to interview Yudofsky. His attorneys refused and demanded statutory immunity. This was not appropriate and, absent a proffer session to shed light on why Yudofsky believes his

testimony could be self-incriminating, the Government declined to provide statutory immunity under 18 U.S.C. § 6001 *et seq*.

Citing caselaw from outside this circuit, Yudofsky argues that the Government has no right to call him for the sole purpose of compelling him to invoke his Fifth Amendment privilege. *Motion at 11-12, Dkt. No. 108*. That is not the case; the Government plans to call Yudofsky in the hopes that he will provide useful testimony. Of course, Yudofsky is free to invoke his constitutional rights if he feels that his answers to certain questions may incriminate him. But the Court must have an opportunity to determine whether these invocations are valid. *See United States v. Malnik*, 489 F.2d 682, 684-85 (5th Cir. 1974). In *Malnik*, the target of an IRS administrative summons to appear and answer questions instead provided the IRS with "a written statement . . . to the effect that had [the witness] personally appeared" he would have refused to answer any questions on Fifth Amendment grounds. *Id.* at 684. The Court found this to be "unacceptable." *Id.* at 685. A proper invocation "requires that specific questions be propounded by the investigating body, and the claim of the right against self-incrimination must be claimed in response to each." *Id.*

The out-of-circuit cases cited by Yudofsky are clearly distinguishable and neither support his purported rule that a witness is excused from appearing at a hearing whenever they indicate that they will invoke their Fifth Amendment rights. *See United States v. George*, 778 F.2d 556, 562 (10th Cir. 1985); *United States v. Licavoli*, 604 F.2d 613 (9th Cir. 1979). In both cases, the witnesses represented in open court that, if compelled to

testify in the *presence of the jury*, they would invoke their right against self-incrimination and refuse to answer questions. As a result, each court ruled that the witness would be excused from testifying in front of a jury. *See Licavoli*, 604 F.2d at 624 (witness could not be called "for the sole purpose of compelling them to invoke their Fifth Amendment privilege in front of the jury."), *George*, 778 F.2d at 562 (10th Cir. 1985) (after in-court representation that witness could invoke the Fifth Amendment, the court barred the defendant from calling a witness "solely for the purpose of having him invoke the Fifth Amendment privilege in the presence of the jury.").

The Fifth Circuit has weighed in. *See United States v. Lyons,* 703 F.2d 815 (5th Cir. 1983). The court held that "*if the judge sustains a witness' assertion of the privilege*, Defendant has no right to call the witness to the stand merely to force invocation of that right *before the jury*." *Id.* at 818 (emphasis added). Again, the facts here are markedly different. Yudofsky is refusing to even appear for the scheduled hearing. As in *Malnik*, a blanket refusal to appear is not acceptable. Yudofsky must invoke his rights in response to specific questions, and the Court must evaluate whether those invocations are proper. The Court has not had an opportunity to hear the specific lines of questioning from the Government, and, of course, competency hearings do not have juries.[4]

---

[4] Yudofsky vaguely claimed that he may face "public stigma" if he invokes the Fifth Amendment in a public competency hearing. Dkt. No. 108 at 12, n.11. He did not elaborate as to why. He has, however, already made his planned invocation clear in a public filing. *See* Dkt. No 109 at 2 (stating that Yudofsky "would invoke his Fifth Amendment right and decline to respond

(continued...)

7

UNITED STATES' RESPONSE TO
MOT. TO QUASH AND MOT. FOR HEARING
4:21-CR-00009

Finally, Yudofsky relies on a cherry-picked reading of DOJ policy under Justice Manual ("JM") § 9-11.154.[5] That policy does not, as Yudofsky claims, require Government attorneys to excuse any witness who represents that they will refuse to testify on Fifth Amendment grounds. *See Motion at 12, Dkt. No. 108.* While not law, the Justice Manual *encourages* Government attorneys to excuse a *target* of a grand jury investigation if the target indicates in writing that they will refuse to answer questions and invoke their right against self-incrimination. *JM § 9-11.154*. Of course, this is not a grand jury proceeding, and there are no targets. This policy does not apply. Yudofsky ignores the portion of § 9-11.154 that counsels government attorneys to weigh the importance of the testimony, its unavailability from other sources, and "the applicability of the Fifth Amendment privilege to the likely areas of inquiry." *Id.* At this point, it is unclear what crimes Yudofsky believes he may have committed and how the Government's questions related to his observations and medical treatment of Defendant would incriminate him. The Government suspects that Yudofsky's refusal is intended, at least in part, to protect his friend from unfavorable testimony. But it is well-settled that a witness may not invoke the Fifth Amendment to protect someone else from

---

to any questions proffered by the Government."). He has also requested that his motion to quash be unsealed. Dkt. No 117.

[5] Yudofksy cites a 1978 version of the U.S. Attorney Manual, which was replaced by the Justice Manual in 2018. The 1978 version of the U.S. Attorney Manual does not include the provision cited. The current Justice Manual, however, includes a relevant provision under § 9-11.154. Presumably, this is what Yudofsky is referring to.

8

incrimination. *See Couch v. United States*, 409 U.S. 322, 327-28 (1973) (a person can refuse to produce self-incriminating evidence but cannot prevent its disclosure from another source). There is no requirement that the Government excuse Yudofsky from the competency hearing simply because he notified the Government that he will invoke the Fifth Amendment in response to any question.

The Court should require Yudofsky to appear at the competency hearing, allow the parties to question him, and if he invokes the Fifth Amendment, determine whether such invocations are proper.

**B.     The plain language of the Subpoena requests emails and communication related to Mr. Brockman, and these requests are appropriate under Rule 17(c).**

A subpoena under Rule 17(c) is appropriate if "(1) the subpoenaed document is relevant, (2) it is admissible, and (3) it has been requested with adequate specificity." *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992) *citing United States v. Nixon*, 418 U.S. 683, 697-702 (1974). A Rule 17(c) subpoena is adequately specific if the moving party can specify "the information contained or believed to be contained in the documents sought." *United States v. Dominick*, No. 15-289, 2016 WL 1408558, at *2 (E.D. La. Apr. 11, 2016). A court may quash a subpoena "if compliance would be unreasonable or oppressive." Fed. Crim. P. 17(c)(2); *United States v. Butler*, 429 F.3d 140, 149 (5th Cir. 2005). Here, however, Yudofsky is only claiming that the Government is improperly using a Rule 17 subpoena as a discovery tool or to conduct a "fishing expedition." That is untrue—the Government has a strong reason to believe that

9

UNITED STATES' RESPONSE TO
MOT. TO QUASH AND MOT. FOR HEARING

Yudofsky's correspondence with Defendant contains evidence relevant to Defendant's alleged mental competency, including whether any alleged cognitive issues were contrived. Defendant himself has asserted that a decline in his ability to draft emails is evidence that he is not competent to stand trial. *See Letter from K. Keneally at 2, Apr. 9, 2020, Ex. 3*.

As stated above, Yudofsky has a longstanding personal relationship with Defendant. A neuropsychiatrist, he examined Defendant on at least three occasions and regularly communicated with Defendant over email. Defendant's claimed onset of memory problems suspiciously coincided with a police raid in Bermuda that Defendant learned about while on a fishing trip with Yudofsky. The Government has already obtained emails showing that Defendant and Yudofsky communicated by email, often when Defendant was seeking medical treatment or prescription medication. *See Dkt. No. 109-6 at 2 (May 2017 email exchange where Defendant is seeking advice regarding lost sense of smell); Dkt. No. 109-11 at 5 (October 2018 email from Defendant to Yudofsky seeking prescription for Lexapro); Dkt. No. 109-11 at 2-4 (January 2019 email exchange where Yudofsky provides Defendant referral to see Dr. Joe Jankovic).* Far from speculation or conjecture, the Government's requests seek the complete record of email exchanges between Defendant and Yudofsky. The requests are tailored to a specific period of time that is highly likely to reveal additional evidence of Defendant's self-evaluation of his health over approximately ten years.

## CONCLUSION

For the reasons stated above, Yudofsky's motion to quash the Government's valid subpoena is meritless. The Court should deny the Motion and order Yudofsky to appear at Defendant's competency hearing and immediately produce all records requested in the Subpoena. The Government does not oppose Yudofsky's motion for a hearing on this matter.

> DAVID A. HUBBERT
> ACTING ASSISTANT
> ATTORNEY GENERAL
>
> *s/ Corey J. Smith*
> COREY J. SMITH
> Senior Litigation Counsel
> Mass. Bar No. 553615
> Corey.smith@usdoj.gov
> Tele: 202-514-5230

11

## Certificate of Service

      I the undersigned do hereby certify that on the 27th day of August, 2021, I caused to be electronically filed the foregoing with the Clerk of Court using the ECF electronic filing system, which will send notice of electronic filing to counsel of record.

    /s/ *Corey J. Smith*
Senior Litigation Counsel
Department of Justice
Tax Division
Corey.Smith@usdoj.gov
(202)514-5230

12

UNITED STATES' RESPONSE TO
MOT. TO QUASH AND MOT. FOR HEARING
4:21-CR-00009