# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal No. 4:21-cr-00009** |
| | § | |
| **ROBERT T. BROCKMAN** | § | |

## DEFENDANT ROBERT T. BROCKMAN'S REPLY IN SUPPORT OF HIS MOTION FOR THE APPOINTMENT OF NEUTRAL COURT-DESIGNATED EXPERTS AND TO EXCLUDE TESTIMONY FROM DR. PARK DIETZ, <u>DR. ROBERT DENNEY, AND DR. RYAN DARBY</u>

# TABLE OF CONTENTS

**Page**

I.     The Government Does Not Dispute that Sections 4241(b) and 4247(b) Require that Court-Designated Medical Experts Serve the Court, Not the Prosecution .................................................................................................. - 1 -

II.    Unable to Address the Merits of the Defendant's Position, the Government Resorts to Baseless Accusations of "Bad Faith" ................................................. - 5 -

     A.    The Government's Accusation that the Defendant Has Acted in "Bad Faith" to Delay the Competency Hearing is Without Merit .................. - 6 -

     B.    The Government Baselessly Contends that the Defense is Making a "Bad Faith Claim" Concerning the Expectation that Court-Appointed Experts Would Serve Neutrally........................................... - 10 -

III.   The Reports and Testimony of Dr. Darby, Dr. Denney, and Dr. Dietz Should Be Excluded ........................................................................................... - 14 -

IV.   The Government's Contention that the Request for the Appointment of Neutral Experts is "Premature" Makes No Sense ........................................... - 18 -

## INTRODUCTION

The government makes no pretense of suggesting that any expert has served this Court as a neutral examiner, as is required by 18 U.S.C. §§ 4241(b) and 4247(b).  Faced with Defendant Robert T. Brockman's Motion for the Appointment of Neutral Court-Designated Experts and to Exclude Testimony from Dr. Park Dietz, Dr. Robert Denney, and Dr. Ryan Darby, Dkt. No. 105 ("Motion for Neutral Experts"), the government has now also abandoned any argument that Sections 4241(b) and 4247(b) permit the appointment of partisan experts.  Instead, the government has chosen to distort the factual record to invent an argument that Mr. Brockman has somehow waived his right— required by law—to have experts appointed by the Court serve as neutral arms of the Court. Regrettably, the government has also mired itself in baseless mudslinging in a transparent effort to compensate for the complete lack of legal authority for its position.

## ARGUMENT

### I.   The Government Does Not Dispute that Sections 4241(b) and 4247(b) Require that Court-Designated Medical Experts Serve the Court, Not the Prosecution

The instant Motion for Neutral Experts seeks relief on two issues:  First, this Court should appoint genuine neutral experts to conduct a competency examination pursuant to Sections 4241(b) and 4247(b); and second, this Court should exclude testimony from Dr. Dietz, Dr. Denney, and Dr. Darby (the "Designated Experts"), who the prosecution adamantly admits acted exclusively as its partisan experts, despite the responsibilities that

come with this Court's designation to conduct neutral competency examinations.[1]  Dkt.
No. 105 at 1–2.  The government's opposition, styled as United States' Opposition To
Defendant's Motion To Exclude Testimony And Appoint More Experts ("United States'
Opposition"), is devoid of any legal argument on either of these issues.

The government contends that Defendant's Motion for Neutral Experts stands on
the same legs as Defendant's Motion to Compel Discovery in Advance of the Competency
Hearing ("Motion to Compel").  Dkt. No. 81.  We agree.  The Motion to Compel and the
instant Motion for Neutral Experts are grounded in the language of Sections 4241(b) and
4247(b)—the statutory provisions that authorize this Court to designate experts to aid in
the determination of a defendant's competency to understand the nature and consequences
of the proceedings and to assist properly in his defense.  Sections 4241(b) and 4247(b), on
their face and as consistently applied, require that the experts designated by the Court serve
as neutral arms of the Court.  *United States v. Fratus*, 530 F.2d 644, 649 (5th Cir. 1976)
(citing 18 U.S.C. § 4244, the predecessor to Sections 4241(b) and 4247(b)) (A medical
examiner appointed by the Court under this statutory scheme is required to serve "as an
objective, non-partisan expert."); Dkt. No. 94 at 3–13; Dkt. No. 105 at 3–10, 16.

---

[1] The United States' Opposition includes declarations from Dr. Denney and Dr. Dietz, two of the three
Designated Experts .  Dkt. No. 113, Exs. Nos. 6 & 7.  Both declarations make clear that these Designated Experts
acted as partisan government experts, and not as neutral court-designated experts.  Dkt. No. 113, Ex. 6, ¶ 8 and Ex. 7,
¶¶ 2-3.  Significantly, both declarations are devoid of any citation to Sections 4241(b) and 4247(b), or any indication
that either declarant was aware of his obligations as experts designated pursuant to those statutes.

The United States' Opposition does not cite Sections 4241(b) and 4247(b), ignores the cases cited in the Motion for Neutral Experts, and offers no legal argument whatsoever.[2] Instead, the prosecution all but concedes the legal requirement for appointment of neutral experts, but seeks to stall the inevitable:  "If the Court is inclined to consider Defendant's request for the appointment of more experts, the United States suggests that it defers making that decision until after the September 13 hearing."  Dkt. No. 113 at 13.  The prosecution argues for a waste of time: there is no point to conducting a competency hearing without the neutral examination that is legally required by the applicable statutes and case law.  To proceed otherwise only invites error.

The law is clear:

(1)  Section 4241(b) states that "the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c)."  Section 4247(b) in turn requires that "[e]ach examiner shall be designated by the court," and Section 4247(c) requires that the resultant expert reports "shall be filed with the court with copies provided to the counsel for the person examined and to the attorney for the Government."  On the face of the statute, the Court is authorized to designate medical experts, who then serve the Court.  *See* Dkt. No. 105 at 6–10.

---

[2] The government cites back to its Opposition to the Motion to Compel, but nowhere in its current opposition does the government even attempt to address Mr. Brockman's refutation of the government's arguments, set out both in his Reply in support of the Motion to Compel, and in this Motion for Neutral Experts.  *Compare* Dkt. No. 81 at 3–7, Dkt. No. 94 at 3–13, and Dkt. No. 105 at 3–10, 16 *with* Dkt. No. 89 at 3–9 and Dkt. No. 113 at 3.

(2)  Medical experts designated by the Court pursuant Section 4241(b) are to act as neutral experts in service to the Court.  *Fratus*, 530 F.2d at 649 (requiring that a court-appointed examiner serve  "as an objective, non-partisan expert"); *United States v. Reyes*, No. 3:18-CR-0260, 2019 WL 1746051, at *3 (N.D. Tex. Apr. 17, 2019) (competency experts appointed pursuant to 18 U.S.C. §§ 4241(b), 4247(b) "are expected to be neutral and detached"); *accord United States v. Bass*, 477 F.2d 723, 725 (9th Cir. 1973) (same) (examining Section 4244, the predecessor to Sections 4241(b), 4247(b)); *United States v. Sampson*, 12 F. Supp. 3d 214, 217 (D. Mass. 2014) (same); *United States v. Trexler*, No. 1:12CR45, 2012 WL 3265010, at *2 (M.D.N.C. Aug. 9, 2012) (same); *see* Dkt. No. 105 at 3–6.

(3)  Any prior relationship between a court-designated medical expert and one of the parties does not alter the mandate that the expert, upon being appointed by the Court pursuant to Sections 4241(b) and 4247(b), serves as a neutral arm of the Court.  *In re Harmon*, 425 F.2d 916, 918 (1st Cir. 1970) (denying mandamus but remanding with guidelines that a court-appointed psychiatrist in competency proceedings should, without regard to any prior relationships, "consider himself an officer of the court, not responsible to prosecution or defense").  Thus even when the Court designates an examiner employed by the U.S. Bureau of Prisons ("BOP") to conduct a competency evaluation, "[t]he court expects that the BOP's Examiner will remain, as required, 'neutral and detached.'" *Sampson*, 12 F. Supp. at 217 (first quoting *United States v. Reason*, 549 F.2d 309, 311 (4th Cir. 1977); then citing *United States v. Theriault*, 440 F.2d 713, 715 (5th Cir. 1971)); *see* Dkt. No. 105 at 5–6.

- 4 -

(4)  It is reversible error for the competency hearing to proceed (a) in the absence of a neutral examination by a medical expert appointed pursuant to Sections 4241(b) and 4247(b) and (b) instead on the basis of the partisan examinations performed by the Designated Experts.  *United States v. Pogany*, 465 F.2d 72, 78 (3d Cir. 1972) ("An advocacy role by the Section 4244 examining psychiatrist is simply and obviously inconsistent with the statute's intent to provide a fair and impartial determination of an accused's ability to stand trial."); *see* Dkt. No. 105 at 16.

## II.   Unable to Address the Merits of the Defendant's Position, the Government Resorts to Baseless Accusations of "Bad Faith"

Left with no legal argument, the government turns to baseless accusations and distortions of the record.

The government contends that the Motion for Neutral Experts makes an "underhanded (and hollow) allegation of prosecutorial misconduct."  Dkt. No. 113 at 13. The Motion for Neutral Experts does exactly the opposite, stating expressly: "Mr. Brockman is not accusing the government of intentionally subverting the competency hearing process."  Dkt. No. 105 at 20.   The government, unfortunately, equates the defense's presumption of the government's familiarity with well-established case law with "bad faith," and in so doing, distorts the factual record in order to make baseless accusations against the defense.  We address these in turn.

## A.     The Government's Accusation that the Defendant Has Acted in "Bad Faith" to Delay the Competency Hearing is Without Merit

Mr. Brockman is ready to proceed with the competency hearing.  The defense timely filed its expert reports, Dkt. Nos. 97–102, and the parties have exchanged lists of prospective witnesses.[3]  Keneally Decl. ¶ 2.

There are two motions now pending before this Court that must be resolved in advance of the competency hearing: the Motion to Compel and the instant Motion for Neutral Experts.  Mr. Brockman cannot reasonably be accused of seeking delay solely because he is seeking to have the competency hearing proceed in accordance with the statute, case law, and his Constitutional rights, as set out in these motions.

Nonetheless, the government stretches the record in this case beyond recognition to cast both motions as attempts to delay.  To the contrary, the record shows that the defense has acted diligently to present these issues promptly to the Court.  Specifically, the government's expert reports were filed on June 21.  Dkt. Nos. 78–80.  Upon reviewing these reports, and noting the issue of the apparent partisan conduct of the Designated Experts, Mr. Brockman filed his Motion to Compel, seeking communications between the government and the Designated Experts,[4] on July 6—fifteen days after the issue could

---

[3] To the extent delay may be required in this case, it could also be attributed to the government's recent request for additional tests of the defendant, to which the defendant has consented, and the government's position that it may call an additional unidentified expert witness at the hearing, for whom the defense has no expert report.

[4] The Motion to Compel made clear that Mr. Brockman was seeking disclosure of communications between the government and the Designated Experts to address the very issue of whether the Designated Experts should be disqualified, stating: "The Court has the inherent authority to order the disclosure of all communications with the *court-designated* Examining Doctors to determine if their examination complied with the law or must be disqualified." Dkt. No. 81 at 7.  This issue remains unresolved between the parties, for the Court to decide on the basis of full briefing by both the defense and the prosecution.  Dkt. Nos. 81, 89, 94.  The Motion to Compel also sought data and notes underlying the Designated Experts' reports; this issue has been resolved between the parties except that the

reasonably be said to be framed.[5]  Dkt. No. 81.  The government then openly acknowledged that the Designated Experts acted as partisan experts for the government in its July 27 Opposition to the Motion to Compel.  Dkt. No. 89.  Mr. Brockman filed his Reply in support of the Motion to Compel on August 3 (Dkt. No. 94), his expert witness reports on August 6 (Dkt. Nos. 91–102), and the instant Motion for Neutral Experts on August 12 (Dkt. No. 105)—sixteen days after the government made clear that the Designated Experts were compromised partisans.

The government's attempt to cite to the July 29 hearing before this Court is equally unavailing.  Mr. Brockman was hospitalized for twelve days in late May and early June for a urinary tract infection that triggered sepsis and delirium, and again on June 24 for surgery under general anesthesia.  The core concern expressed by the defense before this Court on July 29 was whether the government would "criticize any test results from the defense because they were conducted too soon in time to these episodes,"  July 29, 2021 Tr. at 19, and whether the hearing should be delayed to allow testing later to avoid such unfair criticism.  *Id.* at 7.

At the July 29 hearing, the Court directed the defense to provide the government with medical records concerning Mr. Brockman's recent hospitalizations and surgery, as

---

government continues to decline to produce emails among the Designated Experts, who expressly rely on one another's work in their reports.  The Motion to Compel finally sought articles published by the Designated Experts, transcripts of their prior testimony, and court rulings or opinions concerning their qualifications, credibility, or any other issue, to the extent these materials are within the government's possession, custody, or control, an issue that remains pending.  *Id.* at 1–2.

[5] The defense was prepared to file the Motion to Compel on July 2, but did not want to be perceived as compressing the government's time to respond by using the July 4 holiday weekend to its advantage.  The defense thus filed the Motion to Compel on the first business day after the July 4 holiday weekend.

well as the examinations and testing done by the defense's experts, to allow the government to evaluate its position as to whether it would argue that the examinations occurred too close in time to the hospitalizations and surgery. July 29, 2021 Tr. 17–18. Eight days after the July 29 hearing, the defense timely filed its expert reports, and took steps to ensure that all underlying medical records on this issue were made available to the government.

To be clear, the defense's position is that the examinations and the August 6 Reports validly assessed Mr. Brockman's cognitive abilities. As the government characterized Dr. Guilmette's and Dr. Agronin's reports in the United States' Opposition, Dr. Guilmette and Dr. Agronin "concluded that Defendant was suffering residual delirium from his hospitalizations at the time of his July competency exams but denied that the delirium was a major contributor to his overall presentation."[6] Dkt. No. 113 at 2. In other words, neither Dr. Guilmette nor Dr. Agronin concluded that Mr. Brockman's bouts of sepsis and surgery under general anesthesia had an impact on their findings concerning Mr. Brockman's long-term dementia. At this point, the government should not be heard to argue to the contrary.

The defense made the government aware of both bouts of sepsis and the resultant hospitalizations at the time that each occurred, and also timely informed the government

---

[6] In support of this statement, the United States' Opposition cites to Dr. Guilmette's and Dr. Agronin's reports. Dkt. No. 113 at 2. At the pages of the report cited by the government, Dr. Guilmette discusses the issue of delirium and specifically states: ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ Dkt. No. 101 at 63–64. At the page cited by the government to Dr. Agronin's report, he states: ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ Dkt. No. 102 at 37.

that Mr. Brockman's June 24 surgery was under general anesthesia. Keneally Decl. ¶¶ 3–6, Exs. 1–3. The government now has the medical records from both hospitalizations and the surgery, along with the Mr. Brockman's expert reports and supporting data. Keneally Decl. ¶ 7, Ex. 4; Dkt. Nos. 97–102. If the government chooses now to contend that the impact of these medical events somehow triggers the need for further testing, then the cause for delay lies with the government, not the defense.

Moreover, at the July 29 hearing, the government erroneously accused the defense of playing "a game of chicken" with the Court by not doing "anything" to prepare for the scheduled competency hearing. July 29, 2021 Tr. 22. The government's irresponsible accusation, made on the record to the Court, was based on nothing more than the government's own conjecture. In reality, the defense was diligently moving forward, as the government now realizes. The government now asserts that the defense was under an obligation to correct the government's own incorrect statements and disclose the defense experts' evaluation of the defendant at the July 29 hearing. Dkt. No. 113 at 2 & n.1. But the government's argument is again based on a faulty assumption. At the time of the hearing, defense counsel did not have the results of the experts' examinations, *which were ongoing*. As the government knew well before it made its accusation of bad faith in the United States' Opposition, Mr. Brockman had undergone an amyloid PET scan only one day before the hearing, on July 28, and was scheduled for a brain MRI one day following, on July 30—tests that Dr. Marc Agronin, a geriatric psychiatrist, and Dr. Thomas Guilmette, a neuropsychologist, along with Dr. Christopher T. Whitlow, a neuroradiologist, and Dr. Thomas Wisniewski, a neuropathologist, all relied upon in

reaching their evaluations.  Dkt. No. 99 at 5; Dkt. No. 100 at 3; Dkt. No. 101 at 18; Dkt. No. 102 at 15.  The government's accusations of bad faith in failing to disclose results of expert evaluations not yet available to defense counsel are just another example of the government's distortion of the record in this case.

### B. The Government Baselessly Contends that the Defense is Making a "Bad Faith Claim" Concerning the Expectation that Court-Appointed Experts Would Serve Neutrally

This Court's Orders tracked the statutory requirements of 18 U.S.C. §§ 4241(b) and 4247(b): the February 1, 2021 Order directed the Designated Experts to file their reports under seal and to provide their reports to both parties (which they did not do), Dkt. No. 36, and the May 10, 2021 Order appointed the Designated Experts by name "to conduct the court-ordered psychiatric or psychological examination of [Mr. Brockman] pursuant to Title 18, United States Code, sections 4241(b) and 4247(b)."  Dkt. No. 59.

There is no dispute that the prosecution had a relationship with the Designated Experts prior to their appointment by the Court.  Nor can the government continue to dispute that, once appointed by the Court, the Designated Experts were required to serve neutrally, and not as partisan experts.  *See, e.g.*, *In re Harmon*, 425 F.2d at 918; *Sampson*, 12 F. Supp. at 217; *see also* Dkt. No. 105 at 3–6.

The government instead contends that Mr. Brockman waived the protections of the statute and case law because the Designated Experts are referred to in the May 10, 2021 Order as the "United States' experts," and are variously referred to in emails and filings as "the government's experts."  *See* Dkt. No. 113 at 3–8.  The record contradicts any contention of waiver on such a flimsy reed.

- 10 -

In the United States' Opposition, the government states that it initially sought the appointment of government experts as well as court-appointed experts.[7]  Dkt. No. 113 at 5.  The defense, however, did not agree and would not have agreed to the appointment of experts acting on behalf of the government.  Keneally Decl. ¶ 8.

In the interests of avoiding a dispute over the selection of the experts, defense counsel agreed that the government could name the examining doctors who were to be designated by the Court.  Keneally Decl. ¶ 8.  This regularly happens when incarcerated defendants are evaluated by BOP doctors.  At all times, however, defense counsel objected to any examination of Mr. Brockman unless the medical professionals were designated by the Court pursuant to Sections 4241(b) and 4247(b).  Keneally Decl. ¶ 9.  Indeed, defense counsel agreed to expedite the Designated Experts' examinations of Mr. Brockman in advance of a court order, but only after receiving an express commitment that the examinations would be conducted in a manner consistent with the terms of the May 10, 2021 Order pursuant to Sections 4241(b) and 4247(b), which at that time was still pending before the Court as an unopposed proposed order.  Keneally Decl. ¶ 10, Ex. 5.

At each step, the defense acted to ensure that examinations of Mr. Brockman would only be conducted pursuant to Sections 4241(b) and 4247(b), with the safeguards that those provisions create.    As  examples:  Defense  counsel  requested  production  of  the

---

[7] The government also contends that by the time of his first filings on the competency issue, the "'Defendant has already retained and been evaluated by his experts . . . .'"  Dkt. No. 113 at 5.  In fact, Mr. Brockman's motion for a competency hearing was supported by reports and letters from four doctors who had diagnosed and treated him.  Dkt. No. 1-3 at 53–166 (N.D. Cal. Dkt. No. 64-1).  Only one of those doctors, Dr. Michele K. York, a neuropsychologist, later provided supplemental expert reports, which were conducted at the request of defense counsel well after she had tested Mr. Brockman for diagnostic purposes.  Dkt. No. 98 at 1.

- 11 -

government's communications with the Designated Experts as early as March 16, 2021. Keneally Decl. ¶ 11, Ex. 6.  When members of the prosecution team arrived with Dr. Darby for his examination of Mr. Brockman, defense counsel rejected their explanation that they were attending for the purpose of observing Mr. Brockman, and insisted that they have no direct contact with him.  The government agreed.  Keneally Decl. ¶ 12.  And defense counsel expressly objected to and blocked attendance by an IRS agent at Dr. Denney's interviews of defense counsel as collateral witnesses.  Again, the government agreed. Keneally Decl. ¶¶ 13–15, Exs. 7–8.  There simply would be no basis for excluding members of the prosecution team from the examination if the Court sanctioned a partisan government examination.  The exhibits provided by the government in support of the United States' Opposition in fact make the same point—throughout, the defense insisted that the Designated Experts act as neutral experts.[8]  *See* Dkt. No. 113 at 6–7.

---

[8]Exhibit 1 to the United States Opposition is a February 22, 2021 email in which defense counsel responded to the government's request to schedule examinations of Mr. Brockman by seeking agreement to an order designating Drs. Darby, Dietz, and Denney pursuant to Sections 4241(b) and 4247(b).  Dkt. No. 113, Ex. 1.  The government's Exhibit 2 reiterated that the designation order needed to be in place before the examinations could proceed.  Dkt. No. 113, Ex. 2.  The government cites to Exhibit 3 to contend that "Defendant's attorneys felt they had to go through the prosecution team to contact Dr. Darby," Dkt. No. 113 at 7 & Ex. 3, but fails to provide the Court with an email chain earlier that same week that included direct exchanges between Dr. Darby and defense counsel.  Keneally Decl. ¶ 16, Ex. 9.  Exhibit 4, which the government depicts as an email chain between the parties as to who would pay for the tests ordered by the Designated Experts, is the same red herring that the government tossed out in its opposition to the Motion to Compel and Mr. Brockman refuted in his Motion for Neutral Experts: pursuant to the Guide to Judiciary Policy, the government bears the costs for all "court-directed" competency examination costs, including the costs for all designated experts.  *See, e.g.,* Admin. Off. of the U.S. Cts., Guide to Judiciary Policy, Vol. 7, Pt. A, §§ 320.20.10, 320.20.60, available at https://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-3-ss-320-authorization-investigative-expert#a320_20_60; *compare* Dkt. No. 89 at 8, 10 and Dkt. No. 113 at 7 & Ex. 4, *with* Dkt. No. 94 at 12–13 and Dkt. No. 105 at 9 n.6.  And the final email that the government cites again reinforces that the defense was pressing for the proposed designation order to be in place before the Designated Experts examined Mr. Brockman.  *See* Dkt. No. 113, Ex. 5.

Thus it was clear to all that these were "government experts" in the sense that the defense ceded the *selection* to the government to get past a potentially disputed issue. But it was equally well understood by the prosecution that the defense regarded the Designated Experts as court appointed neutrals and distinct from government agents or members of the prosecution team, and it is disingenuous for the government to argue to the contrary now.

The government would also have this Court ignore the Third Circuit's decision in *Pogany*, 465 F.2d at 76–79. As discussed in the Motion for Neutral Experts, the government and the defense in *Pogany* agreed that the defendant would be examined by a military psychiatrist chosen by the government. The trial court relied on the report of this examination to refuse the defendant's request for a competency hearing pursuant to Section 4244, the predecessor statute to Sections 4241(b) and 4247(b). *Id.* at 76–77. The Third Circuit reversed the subsequent conviction, concluding that an examination by a government psychiatrist—even one agreed to by the defendant—"cannot be deemed a proper substitute for a Section 4244 examination." *Id.* at 78.

The Motion for Neutral Experts does not seek delay for the sake of delay. Rather, Mr. Brockman is seeking to avoid wasted time that will result from moving forward on a tainted record that may still be corrected before it risks reversal on appeal. *Pogany*, 465 F.2d at 76–79.

- 13 -

### III.   The Reports and Testimony of Dr. Darby, Dr. Denney, and Dr. Dietz Should Be Excluded

The sole legal citation in the United States' Opposition is to *United States v. Hutson*, 821 F.2d 1015, 1018 (5th Cir. 1987), which the government cites for the principle that the government bears the burden of proof in a competency hearing. Dkt. No. 113 at 3. On this point the parties agree. The burden of proof, however, has no relevancy to the government's obligation to present admissible evidence—properly obtained—in support of its position.

Also not relevant is "the government's view that the law allows for the designation of government experts and that government experts are routinely designated by Courts to conduct competency examinations." Dkt. No. 113 at 3. The government offers no support for this "view." The government also does not refute that, while the practice for the appointment of government experts may be appropriate under other statutory schemes, such as when the insanity defense has been invoked under Federal Rule of Criminal Procedure 12.2 and 18 U.S.C. §§ 4242 and 4247(b), or in the absence of a statutory scheme, as in the penalty phase of a capital case, such practices cannot be invoked here, given the clear statutory mandate of Sections 4241(b) and 4247(b). Dkt. No. 105 at 9–10 & n.7; *compare* Dkt. No. 89 at 4–6, *with* Dkt. No. 94 at 13–16.

The government's remaining argument is that the Court should not exclude the testimony of the Drs. Darby, Dietz, and Denney because their "opinions and testimony are valuable." Dkt. No. 113 at 1, *see* Dkt. No. 113 at 8. This is not a legal standard, and the government does not pretend that it is. Rather, the government would fault the defense for

- 14 -

"invoking civil case law related to the disqualification of experts who 'switch sides,'" while offering no contrary case law nor any explanation as to why civil litigants should be accorded greater protections than defendants in criminal proceedings.  Dkt. No. 113 at 4.

Again, the government ignores basic legal principles, including:

(1)   Courts apply a bright-line rule requiring disqualification when an expert "switche[s] sides."  *Koch Refining Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996); *see also Wang Lab'y, Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991) ("no one would seriously contend that a court should permit a consultant" to switch sides); Dkt. No. 105 at 17.

(2)   "[S]witching sides from being neutral to becoming an adversary is still switching sides."  *Calendar Rsch. LLC v. StubHub, Inc.*, No. 2:17-cv-04062, 2017 WL 10378337, at *2 & n.2 (C.D. Cal. Sept. 22, 2017) (disqualifying jointly-retained expert in a civil case who had "abandoned her posture as a third-party neutral" and "instead [] assumed an adversarial role on [one party's] behalf"); *accord, e.g.*, *G.K. Las Vegas Ltd. v. Simon Property Grp., Inc.*, 671 F. Supp. 2d 1203, 1214–15 (D. Nev. 2009) (when one party engaged in ex parte communications and provided documents to a court-appointed expert, the expert's "impartiality as a forensic expert was destroyed," requiring disqualification); *In re Kensington Int'l Ltd.*, 368 F.3d 289, 318–19 (3d Cir. 2004) (allowing the advisors to continue serving despite the conflict of interest created the appearance of judicial bias); Dkt. No. 105 at 17–18.

(3)   The partisan conduct of court-appointed experts in a criminal case raises substantial Fifth and Sixth Amendment concerns.[9] *Estelle v. Smith*, 451 U.S. 454, 465, 467 (1981) (when "a psychiatric evaluation . . . for the limited, neutral purpose of determining [defendant's] competency to stand trial" is put to partisan use on behalf of the prosecution, the psychiatrist's "role change[s] and bec[omes] essentially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting"); Dkt. No. 105 at 18–19.

Rather than address any of the case law in support of this Motion, the government uses its filing to make public statements concerning its view of the sealed reports of the Designated Experts that are the very subject of the defense's motion for exclusion.  Dkt. No. 113 at 9–10.

The instant motion is neither the time nor the place for the parties to present dueling views of the sealed expert reports.  It is sufficient to note that the defense's expert reports refute each and every point asserted by the government.  More to the point, the defense's medical experts rely not only on neuropsychological testing and subjective interviews of Mr. Brockman, but on objective imaging. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[9] Contrary to the government's allegation, the Motion for Neutral Experts does not "call for a *Kastigar* hearing."  Dkt. No. 113 at 9.  The defense does note in its Motion, however, that the current record could give rise to a *Kastigar* issue should this case move forward past the competency hearing.  Dkt. No. 105 at 19, n.9.

███████████████████████████████████████

Dkt. No. 100 at 3.  In other words, Mr. Brockman has a measurable build-up of amyloid neuritic plaques, along with brain shrinkage, consistent with Alzheimer's Disease and Lewy body dementia.  Dkt. No. 100 at 4.  This finding was confirmed yet again during a further PET scan conducted at the government's request on August 24, 2021, which found "mild, but very suggestive of neurodegenerative disease, particularly Alzheimer's disease." Keneally Decl. ¶ 17, Ex. 10.

Yet the government's position to date is that Mr. Brockman is faking his cognitive impairment.  The government first test-drove its theory that Mr. Brockman is malingering in the United States' Response to Defendant's Motion for a Competency Hearing.  Dkt. No. 1-3 at 193–95 (N.D. Cal. Dkt. No. 69).  Indeed, the purported timeline that the government includes in the recent United States' Opposition is a cut-and-paste of the same timeline that it included its filings over eight months ago.  *Compare* Dkt. No. 1-3 at 201 (N.D. Cal. Dkt. No. 69 at 10), *with* Dkt. No. 113 at 12.  That the Designated Experts, acting as admitted partisans on behalf of the government, reached the same conclusion by ignoring the imaging evidence in their possession is not evidence of the value of their reports.  Rather, it further underscores that these Designated Experts failed to meet their obligation to serve as neutral agents of the Court.

IV.  **The Government's Contention that the Request for the Appointment of Neutral Experts is "Premature" Makes No Sense**

The government asserts that this Court should appoint a neutral expert only after commencing the competency hearing:

> Finally, although the United States would normally decline to take a position on whether the Court exercises its discretion to appoint its own experts, the procedural backdrop counsels against doing so right now.  After the competency hearing begins, the Court will have a better idea of which issues—if any—need further illumination and would benefit from further expert evaluation.

Dkt. No. 113 at 14.

The government offers neither law nor logic for this gratuitous suggestion.  There is only one issue to be addressed at the hearing: is Mr. Brockman "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."   18 U.S.C. § 4241(a).   In the very next provision, Section 4241(b) authorizes this Court to order a psychiatric or psychological examination pursuant to Section 4247(b), which in turn requires in relevant part that "[e]ach examiner shall be designated by the court."   As Mr. Brockman has set out at length, once designated by the Court, the examiner must act neutrally as an agent of the Court.  *See* Dkt. No. 105 at 3–10; *supra* pp. 1–5.

At issue in this motion is (1) not only whether Mr. Brockman, but also the Court itself, will receive the benefit of the neutral examination provided by the statute and case law, *Pogany*, 465 F.2d at 77; and (2) whether the testimony of the Designated Experts must be excluded because they acted as partisans rather than serving this Court in a neutral

- 18 -

capacity.  *In re Kensington Int'l Ltd.*, 368 F.3d at 318–19 (finding that reliance on advisors despite the conflict of interest created the appearance of judicial bias); *G.K. Las Vegas Ltd.*, 671 F. Supp. 2d at 1214–15 (disqualifying court-appointed expert whose "impartiality as a forensic expert was destroyed"); *Calendar Rsch. LLC,* 2017 WL 10378337, at *2 & n.2 (disqualifying expert who "assumed an adversarial role on [one party's] behalf").

These interests cannot be brushed aside because the government may have acted with the best of intentions, or because the Designated Experts are claimed to be well qualified or experienced.  *Cf.* Dkt. No. 105 at 8.  At bottom, there is no meaningful dispute as to the facts and law that determine the outcome of this Motion for Neutral Experts:  the Designated Experts did not serve as neutral examiners.  And the remedy is clear: a neutral examiner or examiners must be appointed under Sections 4241(b) and 4247(b), and the testimony and reports of the Designated Experts must be excluded.

## CONCLUSION

For the foregoing reasons, Mr. Brockman requests that this Court appoint genuine neutral experts to conduct the unbiased examination required by Sections 4241(b) and 4247(b), and exclude the testimony and reports of the Designated Experts.

Dated:  August 27, 2021

/s/ Jason S. Varnado
Jason S. Varnado
Texas Bar No. 24034722
SDTX Ad. ID No. 32166
Email: jvarnado@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone: 832-239-3939

- 19 -

Facsimile: 832-239-3600

Kathryn Keneally (*Admitted Pro Hac Vice*)
New York Bar No. 1866250
Email: kkeneally@jonesday.com
James P. Loonam (*Admitted Pro Hac Vice*)
New York Bar No. 4035275
Email: jloonam@jonesday.com
Georgina N. Druce (*Admitted Pro Hac Vice*)
New York Bar No. 5267208
Email:gdruce@jonesday.com
Colleen E. O'Connor (*Admitted Pro Hac Vice*)
New York Bar No. 5764725
Email: colleenoconnor@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212-326-3939
Facsimile: 212-755-7306

Conor G. Maloney (*Admitted Pro Hac Vice*)
District of Columbia Bar No. 1632584
Email: cmaloney@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: 202-879-3450
Facsimile: 202-626-1700

*Attorneys for Defendant*
*Robert T. Brockman*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 27 day of August, 2021, I electronically served this document on all counsel of record.

_/s/ Jason S. Varnado_
Jason S. Varnado