1          **IN THE UNITED STATES DISTRICT COURT**
              **FOR THE SOUTHERN DISTRICT OF TEXAS**
2                      **HOUSTON DIVISION**

3   UNITED STATES OF AMERICA      )       NO. 4:21-CR-09
                                  )
4                                 )
    VS.                           )       Houston, Texas
5                                 )       10:31 a.m.
                                  )
6   ROBERT T. BROCKMAN           )       SEPTEMBER 13, 2021

7


8

    \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
9

10                    **ZOOM STATUS CONFERENCE**

11          **BEFORE THE HONORABLE GEORGE C. HANKS, JR.**

12               **UNITED STATES DISTRICT JUDGE**

13                      **VOLUME 1 OF 1**

14   \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

15   APPEARANCES:

16   FOR THE GOVERNMENT:

17        Mr. Corey J. Smith
          Mr. Lee F. Langston
18        U.S. Department of Justice
          Tax Division
19        150 M Street NE
          Room 2208
20        Washington, DC 20002
          Tel:  202-514-9623
21        Email: Corey.smith@usdoj.gov
          Email: Lee.f.langston@usdoj.gov
22
          Mr. Boris Bourget
23        U.S. Department of Justice
          Tax Division
24        150 M. St. NE
          Washington, DC 20002
25        Tel:  202-532-3624
          Email:  Boris.bourget@usdoj.gov

FOR THE MOVANT STUART YUDOFSKY, M.D.:

Mr. Nicholas Edward Petree
Ms. Samantha Block
Akin Gump Strauss Hauer & Feld
1111 Louisiana Street
44th Floor
Houston, TX 77002
Tel:  713-250-2177
Email:  Npetree@akingump.com

Mr. Mark J. MacDougall
Akin Gump Strauss Hauer & Feld
2001 K. Street NW.
Washington, DC 20006e
Tel:  202-887-400

FOR THE DEFENDANT:

Mr. Jason Scott Varnado
Jones Day
717 Texas
Suite 3300
Houston, TX 77002
Tel:  832-239-3694
Email:  Jvarnado@jonesday.com

Mr. James P. Loonam
Ms. Kathryn Keneally
Jones Day
250 Vesey Street
New York, NY 10281
Tel:  212-326-3939
Email: Jloonam@jonesday.com
        Kkeneally@jonesday.com

COURT REPORTER:

Ms. Kathleen K. Miller, CSR, RMR, CRR
515 Rusk, Room 8004
Houston, Texas  77002
Tel:  713-250-5087

Proceedings recorded by mechanical stenography.

Transcript produced by computer-assisted transcription.

```
 1                    P R O C E E D I N G S
 2                    SEPTEMBER 16, 2021
 3  ************************************************************
 4  (Defendant present via Zoom.)
 5              THE COURT:  Good morning, Counsel, everyone on
 6  the line.  The next case on the Court's docket this morning
 7  is Cause Number 4-21-CR-9, the United States of America vs.
 8  Mr. Brockman.  Can counsel on the line who will be speaking
 9  just introduce themselves to the Court, and state the
10  parties they represent, starting with the government?
11              MR. SMITH:  Good morning, Your Honor.  Corey
12  Smith on behalf of the United States, and also with me are
13  my colleagues Lee Langston and Boris Bourget.
14              THE COURT:  Welcome.
15              MR. SMITH:  Thank you.
16              MR. VARNADO:  And, Your Honor, on behalf of
17  Mr. Brockman, this is Jason Varnado from Jones Day, and I
18  am joined by my colleagues James Loonam and Kathy Keneally.
19  And my colleague Julia Camp is with Mr. Brockman at his
20  residence, and he is appearing by video, as you can see him
21  there.
22              THE COURT:  Welcome, Mr. Brockman; and welcome,
23  Counsel.
24                  Before we get started, I wanted to thank
25  you all for your patience in -- on Friday and this morning.
```

10:31:40 (line 5)
10:31:56 (line 10)
10:32:09 (line 15)
10:32:23 (line 20)
10:32:33 (line 25)

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1    We just had, as you heard, I guess, part of it on Friday,

2    an emergency matter that needed to be taken care of.  I

3    have learned more about Swedish law than probably I need to

4    know for the rest of my career, but we got all that taken

10:32:57  5  care of and it is all done.  But I really appreciate your

6    patience and your understanding in moving forward with this

7    hearing, so thank you all.

8                     Today we are set for a status conference

9    and then to move forward with a competency hearing in this

10:33:09  10  matter, and there are a number of motions that we need to

11   go over.  But first I would like to start with just getting

12   just a status update from both the government and

13   Mr. Brockman's counsel, Mr. Varnado, just to tell me sort

14   of where you are, and then we will go over the motions that

10:33:35  15  are currently pending.

16                     So, Mr. Smith, would you like to begin?

17                MR. SMITH:  Sure, Your Honor.  Well, the

18   government is ready to proceed with competency hearing, of

19   course, pending the motions.  I don't know if you wanted to

10:33:47  20  hear proposed dates that the government is ready to

21   proceed, but we are ready to go.

22                THE COURT:  Okay.  What dates would work well

23   with your schedules?

24                MR. SMITH:  So after having checked with our

10:33:59  25  experts and other commitments they have, the earliest date

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1 that we are available is the week of October 18th.

2          THE COURT:  Okay.

3          MR. SMITH:  I believe it is going to take about

4 one week to have this competency hearing.  We have about

10:34:12  5 nine witnesses, maybe ten.  I believe the defense has --

6 has also agreed that it is about one week, so we have

7 looked at various weeks coming up for the next couple

8 months that we would be able to go.  The earliest, again,

9 as I said, due to our experts' prior commitments in other

10:34:29 10 hearings and other matters, October 18 we would be ready.

11          THE COURT:  Okay.  Great.

12          MR. VARNADO:  Your Honor, this is Mr. Varnado,

13 Jason Varnado, for Mr. Brockman, and just a couple of

14 things.  I would say, you know, we are prepared to proceed

10:34:42 15 as well.  I would say there are a number of pending

16 motions, including our motion for the appointment of a

17 neutral court-appointed expert.  And I think that, Judge,

18 may very well drive the timing of an actual hearing, if the

19 Court is inclined to appoint the neutral experts that we

10:35:01 20 have requested, that would impact the timing.

21          We have conferred on our side, as

22 Mr. Smith did with his team, and our first week, because we

23 actually have some conflicts that week of the 18th, would

24 be the week of November 1st, is the time that we could --

10:35:16 25 will be prepared, and have our schedules cleared to proceed

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1  in this matter.  And I think I can just speak for the

2  defense case that we think would be a full -- very likely a

3  full three days, so, you know, I defer to Mr. Smith on the

4  length of the government's case.  But we have tried to do

10:35:34  5  some of that in anticipation of this morning, do some

6  calculations, but that is what we think.  Certainly, a full

7  week of the Court's time would be our expectation.

8              THE COURT:  Okay.  That was my main question

9  about sort of the timing, because I will block out an

10:35:48  10  entire week.  Nothing else going to go on that week.  You

11  will have my undivided attention, but I just wanted to

12  figure out exactly what we're looking at because the

13  estimates range from three days, from what I can tell, to

14  two weeks.  I just couldn't get a feel for it.

10:36:01  15              So, Mr. Smith, are you looking at a week

16  just for your presentation of the case?  And this is

17  assuming that we start at 9:00 in the morning, we break at

18  10:30 for 20 minutes, continue on until 12 noon, an hour

19  break.  We continue on until 3:30, 20 minute break, then we

10:36:20  20  finish up between 5:00 and 5:15 every day.  That is my

21  schedule.

22              So does that -- how long do you think we

23  will be -- will your case take based on that sort of

24  schedule?  Are you looking at five days as well?

10:36:43  25              MR. SMITH:  No, Your Honor.  No.  I think we

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1  have about nine or ten witnesses.  Given that schedule,

2  assuming cross-examination lasts as long as direct

3  examination, we think we can also get our case in in about

4  three days, maybe even two-and-a-half.  A number of our

10:36:57  5  witnesses are custodial witnesses.

6              The November -- the week of November 1st

7  will not work for us.  The next -- if October 18th is not

8  workable for the defense, then the next week we have

9  available is November -- the week of November 15th.

10:37:19  10          MR. VARNADO:  And, again, we -- I think that

11  works for our team, Your Honor, the November 15th.  I'm

12  just looking at my colleagues here.  I don't have a

13  conflict on our end.  Getting the thumbs up from

14  Ms. Keneally, and I think we could make that timing work as

10:37:33  15  well.

16          THE COURT:  Okay.  November 15th.  I'll just

17  check my schedule.  This takes priority, so whatever I have

18  got going, I just need to make sure I can move it around

19  somewhere else.  But, I will -- then what we are going to

10:37:45  20  be shooting for is November the 15th and my staff, even as

21  we speak, are looking to see what we have got to see what

22  we can move around to get you there.

23              Okay.  Well, let's start with the pending

24  motions.  The first one I have is the government's second

10:38:07  25  motion for an order under Rule 17(c).  Mr. Smith, just

1  anything else that you would like to add in addition to

2  your motion, I would like you to argue the motion.

3              MR. SMITH:  Sure, Your Honor.  Well, in the

4  interim, since the motion was filed, we have gotten

10:38:25  5  compliance from most of the parties we have subpoenaed.

6  The only outstanding issue right now is an issue that we

7  sent in a letter motion last week, which is this issue of

8  the privilege log from the Universal Computer Systems'

9  e-mails that we subpoenaed.  We subpoenaed those -- those

10:38:40  10  e-mails sometime ago, and recently we got some

11  compliance -- just last week we got compliance -- August --

12  I don't remember the date off the top of my head, but we

13  got compliance.  But from what was given to us, a number of

14  e-mails were not included, and we were told that they were

10:39:00  15  removed by defense counsel, and they were claiming

16  privilege on some of those e-mails before we got the

17  e-mails from Reynolds & Reynolds, or the parent company,

18  Universal Computer Systems Holding.

19              So we have asked some more detail on what

10:39:15  20  is the privilege.  The privilege log -- we feel the

21  privilege log we have been given by defense counsel is not

22  sufficient for us to understand what the privilege is.

23              Now, just to be clear, there are two sets

24  of e-mails.  We have one set of e-mails from Universal

10:39:31  25  Computer Systems that we received prior to indictment.

1  Those are 44 e-mails -- I'm sorry, 42 e-mails, in which

2  privilege has been claimed, but these are e-mails that do

3  not include attorneys.  These are e-mails with private

4  citizens, between Mr. Brockman and private citizens, do not

10:39:48  5  include attorneys.  Then on the hearing subpoena, we got

6  another set of e-mails last week, and there are additional

7  e-mails kept from us, retained by Mr. Brockman's counsel.

8           Again, we're focusing on the ones that are

9  not -- the e-mails that are not between Mr. Brockman and

10:40:07  10  counsel.  We have asked for explanations as to what is the

11  privilege, and what we are getting from the defense counsel

12  is common interest.  That doesn't really tell us anything.

13           So we would like the ability to, one, get

14  some more detail on what is the common interest between

10:40:22  15  Mr. Brockman and these individuals he is e-mailing, and why

16  they're claiming privilege, and we have not gotten that.

17  So we are asking the Court to either order that -- that

18  detail be provided, so, then, if appropriate, the

19  government can challenge that assertion of privilege.  Or

10:40:38  20  in the alternative, and now it seems we may have a little

21  more time, we would like the Court to look at those e-mails

22  in camera ex parte to make a determination whether, in

23  fact, there is a privilege.  We just can't tell from the

24  information we have been given.

10:40:53  25           THE COURT:  From the privilege log -- I mean, I

1  haven't seen it.  Does it have the individuals who the

2  e-mails are to?  Does it list the individuals?

3              MR. SMITH:  Yes, it does, Your Honor.

4              THE COURT:  Okay.  And who are the individuals?

10:41:07  5              MR. SMITH:  There are other associates of

6  Mr. Brockman.  I don't have the list in front of me, but

7  they are not attorneys.

8              THE COURT:  Okay.  And are they -- are they

9  subject to -- are they currently defendants in a lawsuit,

10:41:20  10  or -- or in criminal prosecution?

11             MR. SMITH:  Not that we're aware of.  No, Your

12  Honor.

13             MR. VARNADO:  Your Honor, if I could just

14  briefly, my colleague, Kathy Keneally will argue this, if

10:41:32  15  it merits more argument.

16                 I would state to the Court's question of

17  the Rule 17 motion, what I heard Mr. Smith say is that it

18  is essentially moot, and that, you know, they have gotten

19  responses and they have gotten the documents back.  So I

10:41:44  20  think just to sort of take that off the calendar or take

21  that off our agenda for today, we believe that motion is

22  moot now.

23                 He then began arguing a different motion,

24  which is something that they just filed last week,

10:41:58  25  docket -- document -- Document Number 130, which is a

1  motion dealing with this privilege-log concern which,

2  again, this privilege log dates back to September of 2020,

3  and they are just raising it right now.  But, nevertheless,

4  we will respond to that motion in due course.

10:42:12  5          So, you know, that is just really not teed

6  up right now for the Court.  We haven't had a chance to

7  respond to that letter motion, and so we would respectfully

8  suggest, particularly now that we are going to have some

9  more time, that we, you know, work through this process,

10:42:25  10  file our response.  Maybe we can reach some alignment with

11  the government, perhaps not, but that is really a different

12  motion that Mr. Smith just argued than the Rule 17 subpoena

13  motion, which we believe is now moot.

14          THE COURT:  Okay.  But I guess I am a little

10:42:39  15  confused.  I think what I thought Mr. Smith was saying, is

16  they responded to the subpoenas but we haven't gotten

17  everything we're supposed to get under those subpoenas.

18  So, yes, they have responded, but they haven't given me

19  everything that I need because the documents are being

10:42:55  20  withheld because of privilege.

21          Isn't that what you're saying, Mr. Smith,

22  that, yes, technically, the subpoenas have been complied

23  with; that is, some documents have been produced, but you

24  haven't gotten everything because some of them have been

10:43:11  25  withheld?

1           MR. SMITH:  That is exactly right, Your Honor.

2  Universal Computer Systems is a subpoenaed party in this

3  hearing.  They did with a hearing subpoena, and they have

4  not produced everything we have asked for, and we have not

10:43:25  5  gotten sufficient information as to why documents are being

6  withheld.  Again, e-mails between Mr. Brockman and

7  nonattorneys, individual civilians that are not attorneys,

8  they are claiming privileged, something called "common

9  interest privilege," with no explanation whatsoever.  So,

10:43:37  10  yes, we filed a letter motion as a follow-up to our 17(c)

11  motion.

12           THE COURT:  Has Universal Computers reached out

13  to you and explained why they are not giving you anything

14  other than the privilege log?  Because if -- the subpoena

10:43:51  15  is to them, so they need to tell you what that common

16  interest is, or why they're not producing the documents.

17                Have they told you anything?

18           MR. SMITH:  Well, one piece of clarification,

19  Your Honor, the privilege log is coming from Mr. Brockman's

10:44:07  20  counsel --

21           THE COURT:  Okay.

22           MR. SMITH:  -- not Universal Computer Systems.

23  What we are told by Universal Computer Systems' counsel is

24  that when they were given the subpoena, before they gave --

10:44:16  25  before they complied with the subpoena and gave us the

1    e-mails, they sent the e-mails to Mr. Brockman's counsel

2    first.  Mr. Brockman's counsel then asserted privilege on

3    various e-mails, some of which are communications between

4    attorneys.  We're not quibbling about those.  What we are

10:44:31    5    raising -- the issue that we are raising as a follow-up, is

6    the e-mails between Mr. Brockman and nonattorneys, and

7    we -- I believe there is 46 of those.

8                    THE COURT:  And are those individuals employees

9    of Universal, or who are these individuals?

10:44:49    10                   MR. SMITH:  Some --

11                   MR. VARNADO:  Ms. Keneally --

12                   MR. SMITH:  Yes, some are, some are not.

13                   THE COURT:  Then, I guess -- okay.  I guess one

14   of the questions I have is, is Universal asserting any

10:45:04    15   privilege as to oppose these documents?  I mean, have they

16   said that they are asserting a privilege with respect to

17   these documents?

18                   MR. SMITH:  Our understanding is that

19   Mr. Brockman is asserting privilege through counsel, not

10:45:18    20   Universal Computer Systems.

21                   THE COURT:  Okay.  Ms. Keneally.

22                   MS. KENEALLY:  Yes, Your Honor.  Thank you.

23   Good morning.

24                       There are two subpoenas, and I believe

10:45:33    25   this has been explained.  One is the Rule 17 subpoena; the

other is a Grand Jury subpoena.  The response to the Grand

Jury subpoena is over a year ago and that involves 44

documents.  As to 42 documents to which we asserted

privilege, then an additional four in connection with the

Rule 17 subpoena.  We provided a privilege log which, as

everybody has described, does have the to-from with the

e-mails between.  It also does include a description of the

assertion of the privilege, and it specifically says that

either it's attorney/client, or it's common interest, and

goes on to say either that there is common litigation

involved, or there is a transaction that the parties are

engaging in together, or something similar.

The -- I have reviewed the e-mails,

personally reviewed these e-mails, and you -- in many cases

you actually have e-mails from lawyers further down in the

e-mail chain; you have dialogue among parties as to how to

respond to the lawyers; or you have an issue where lawyers

have sought information, and the information is -- that

request for information is being relayed with an

explanation of what the underlying issue is and why that is

needed.

And our position is that the privilege log

does as much as we can do without waiving the privilege in

the description.  It provides a detailed enough description

to assert this is why we're asserting the privileges,

1 because it does go beyond the to-from, it does go beyond a

2 blanket that this is attorney/client, or this is work

3 product, or this is common interest.  It describes the

4 e-mails as far as we could go without actually putting

10:47:25  5 privileged information into the description.

6                    So I believe at this point, the government

7 filed what they called a letter motion on Thursday.  We're

8 prepared to make the appropriate explanation for why we

9 asserted the privilege, and to submit the e-mails for an in

10:47:48  10 camera review so that we can determine if the government's

11 position is correct, or that we can establish why we have

12 asserted the privileges.

13                THE COURT:  I think the -- Mr. Smith,

14 Mr. Varnado, Ms. Keneally, I think the best way to proceed

10:48:04  15 is at this point submit it for in camera review.  I need to

16 see the privilege log.  I need to read it, and then get

17 back to you on it, and I can do that pretty quickly.

18                    I mean, no offense to any side, but

19 typically privilege logs are not very helpful because if

10:48:24  20 you're -- and it is not a comment on the lawyers at all.

21 The dance you have to do with privilege logs is you

22 can't -- you have got to give enough information to let

23 the other side know about the privilege, but you have got

24 to be really, really careful to make sure you don't

10:48:39  25 disclose any privileged information and it's a delicate

1  dance to do.  And as a result, typically what ends up

2  happening is you get a privilege log that really doesn't

3  help -- that isn't very helpful.  And that's just the

4  nature of the beast because everybody has just got to be

10:48:56    5  careful not to inadvertently waive the privilege.

6              So I think the appropriate next step is

7  that it needs to be submitted in camera, and I need to --

8  well, here is what I need.  I need the privilege log.  I

9  need it to be submitted in camera, and I need briefing with

10:49:13   10  respect to common interest -- the common interest privilege

11  under federal law.

12              MS. KENEALLY:  Thank you.

13              MR. VARNADO:  Very well, Your Honor.  We can do

14  that.

10:49:24   15              THE COURT:  And then, Mr. Smith, you can

16  respond to that once they submit it.  But if I get the

17  briefing on -- yeah, if I get to look at it, and then see

18  what their briefing is on common interest, and then you can

19  respond to whatever legal issues you believe are

10:49:41   20  appropriate with respect to common interest raised in their

21  briefing and then I can make the call.

22              MR. SMITH:  Very well, Your Honor.  And just

23  for Your Honor's information, the privilege logs are

24  attached to our letter motion filed on Thursday.

10:49:54   25              THE COURT:  Okay.  I did not see that.  I

1  apologize.

2              MR. SMITH:  They're added as exhibits.

3              THE COURT:  Okay.

4              MR. VARNADO:  So, Judge, we will respond in due

10:50:05  5  course with the legal arguments, you know, with treating

6  their letter motion as a motion.  We will get our response

7  on file for legal arguments, and provide the Court with any

8  additional information that it might need.

9              THE COURT:  So here is what we need to do.  So

10:50:19  10  I am treating your letter as a motion to the Court.  We

11  need an expedited response, and the documents submitted in

12  camera, and then the Court will get a ruling back.

13              So with respect to the response, when do

14  you believe, Mr. Varnado, or, Ms. Keneally, you can get a

10:50:45  15  response back to the motion?

16              MR. VARNADO:  Ms. Keneally, do you have a --

17              MS. KENEALLY:  I think we are looking at each

18  other.

19              MR. VARNADO:  Yeah.

10:50:57  20              MS. KENEALLY:  Ten days.

21              MR. VARNADO:  We can do that, Judge.

22              THE COURT:  So ten days from today, a response?

23              MR. VARNADO:  Correct.

24              THE COURT:  And then, Mr. Smith, any reply

10:51:07  25  brief, you have seven days after that to file a letter.

1  And then no surreply unless permission is given by the

2  Court.  As part of the response, under seal I want you to

3  file the documents you want to have the Court review in

4  camera.

10:51:27   5             The way I have typically done it would be

6  have -- I think I need to talk to my case manager, but

7  typically we just have a placeholder in the motion -- in

8  the response saying, you know, these are the attachments,

9  and then you will actually physically bring those over to

10:51:42  10  me, and handle it from in chambers.  That way there is no

11  risk that they are going to be, you know, somehow

12  inadvertently docketed or anything like that.  They will

13  come directly to me in chambers next week.  And that way I

14  will have them, and then my goal, then, is to get an answer

10:51:59  15  to you within seven days after Mr. Smith's reply brief.

16             MR. VARNADO:  Very well, Judge.  We can do

17  that.

18             THE COURT:  Mr. Smith, any other concerns,

19  or --

10:52:15  20             MR. SMITH:  No.  No.  Very good, Your Honor.

21  Very good.

22             THE COURT:  And then the next issue is the

23  Defendant's Motion to Compel Discovery in Advance of a

24  Competency Hearing, which is Document Entry 81, 89 and 94.

10:52:29  25  I would like to talk about those next.

1          So, Mr. Varnado, the floor is yours.

2          MR. VARNADO:  Okay.  And I am going to turn it

3  over to my colleague Mr. Loonam, who will address that

4  motion, and really the related motion of the neutral

10:52:43   5  expert, but I'll let the conversation unfold, and we can

6  discuss it however the Court would like.

7          THE COURT:  Okay.  Mr. Loonam.

8          MR. LOONAM:  Yes, Your Honor.  I think to avoid

9  duplication here, because the -- the motion for discovery

10:52:56  10  of communications between the experts and the government

11  was made in contemplation of what eventually was filed as

12  the motion for the appointment of neutral experts, and for

13  potentially a disqualification of the government's experts.

14  And the reason for that was, we wanted to proceed carefully

10:53:21  15  here and make sure that we -- we weren't assuming too much.

16          We believe that under 4241 and 4247, the

17  designated experts are required under law to conduct a

18  neutral and detached examination of the defendant so that

19  the Court gets the benefit of a neutral and detached

10:53:49  20  examination when making the determination about the

21  defendant's present mental state and whether the defendant

22  has the level of competency to proceed to trial.

23          And so, as things unfolded, and as we got

24  the -- when we got the reports from the government, the

10:54:11  25  reports were addressed to the prosecutor, and they were not

1  filed directly with the Court, and then we received copies

2  from the prosecutor.  And in the reports themselves, the

3  government experts identified themselves as having been

4  retained by the government, and as partisan experts.

10:54:37  5           THE COURT:  All right.

6           MR. LOONAM:  So we decided to move forward with

7  discovery to see whether, in fact, they acted as partisan

8  experts before moving onto the next step.

9                Well, in response to our discovery motion,

10:54:51  10  the government admitted that the experts acted as partisan

11  experts, which is a real problem.  We think it is

12  reversible error, and it is reversible error that at this

13  point can be fixed.

14                And so we are happy to continue to talk

10:55:02  15  about the discovery motion.  We think that the -- the

16  e-mails should -- and communications should still be

17  disclosed in the event the Court allows the government

18  experts to testify, because we think they're discoverable

19  under *Giglio;* but if the Court is not going to allow those

10:55:23  20  experts to testify, the discovery motion is moot.  And so

21  I'll proceed as the Court would like, but it might make

22  sense to first address the motion for the appointment of a

23  neutral expert at this point, with the Court's indulgence.

24           THE COURT:  Well, I am going to address it

10:55:48  25  because I want to be clear on what information you do

1    request that has not been turned over and why.  I just want

2    to make sure I understand that first, and then we will talk

3    about the expert.

4                   So, Mr. Smith, the floor is yours.

5                   MR. SMITH:  Thank you, Your Honor.  So very

6    simply, the government's position is that its

7    e-mails between -- the e-mails between the prosecutors and

8    its government expert witnesses are work product.  They're

9    attorney work product between the government and its

10   retained experts, and they are also arguably internal

11   deliberative process.  These experts are retained -- were

12   chosen and retained by the government.  They have been paid

13   by the government.  And I can address these experts if the

14   Court wants me to.

15                  We completely disagree with Mr. Loonam's

16   representations here, and the record does not at all

17   support what he is saying about who these experts are.

18                  The defendant is -- the defense counsel is

19   feigning -- in their motions they feign surprise that

20   suddenly on June 22nd that these are partisan experts but,

21   simply, that is not supported by the record.  As early as

22   February 17th, when the government identified these expert

23   witnesses, they were identified as government experts.

24   There was no objection by defense counsel.  Then on

25   February 22nd -- this is Docket Number 45 -- the

1 defendants -- defense counsel responded to the government's

2 notice of its experts, and they had a -- some things to say

3 about the government experts.

4                But I would note, and I'll draw the

10:57:25  5 Court's attention to the fact, that in Docket 45, the

6 response to the government's notice -- this is back in

7 February of this year -- defense counsel referred to

8 Dr. Darby, Dr. Dietz, and Dr. Denney five times in that

9 response as government experts, and that's been the record

10:57:42 10 throughout.

11                I would actually point the Court also to

12 several other pleadings filed by the defendant,

13 including -- well, including Dockets 48 and 49, which were

14 the proposed protective order regarding how the government

10:57:56 15 experts were going to examine Mr. Brockman.  And in those

16 pleadings, drafted by the defense, filed with the Court and

17 eventually signed by the Court, the defense counsel

18 referred to Dr. Denney, Dr. Dietz, and Dr. Darby as

19 government experts.  That's in the defendant's counsel's

10:58:17 20 own pleadings.

21                Arguably, they have waived this issue.

22 But let me get -- let me get to the merit.  There is one

23 more pleading I would draw the Court's attention to, which

24 is the Court's own order, which is Docket 59, where the

10:58:31 25 Court designated Dr. Darby, Dr. Dietz, and Dr. Denney, as

1  government experts.  And it's -- the Court uses the term
2  "government experts."  That proposed order was drafted by
3  the defense counsel.
4                  So until June 22nd there was no objection
5  to Dr. Denney, Dr. Darby, and Dr. Dietz.  We had numerous
6  conversations on how these examinations were going to take
7  place.  The examinations did, in fact, take place.  As
8  defense counsel agreed, no objection to them being the
9  government's experts.  It was not until after June 22nd,
10 2021, when these three experts for the government submitted
11 their reports in which they found that the defendant was
12 competent to stand trial.  Then after the fact defense
13 counsel feigned surprise, lo and behold these are
14 government experts, when for the previous six months, they
15 had been referring to our -- or five months, they have been
16 referring to Dr. Denney, Dr. Darby, and Dr. Dietz as
17 government experts.
18                  So our communications with our experts,
19 between the prosecutor and our retained expert witnesses,
20 are, in fact, attorney work client -- attorney work product
21 and are not discoverable.  They're internal government
22 deliberations.
23                  There is no authority that the
24 government -- in fact, the authority is to the contrary.
25 1682 of the Federal Rules of Criminal Procedure, our

1  preparation for trial, or prosecutorial strategy which we

2  have discussed with these expert witnesses is not

3  discoverable.  It is bright-line rule.

4              Let me address real briefly, Your Honor,

11:00:10  5  so our position on the notes and e-mails between government

6  prosecutors and these three doctors is that it is not

7  discoverable in any way, shape, or form.  But let me

8  address this comment by Mr. Loonam that the -- that these

9  experts are supposed to be neutral experts under 4241.  And

11:00:30  10  defense counsel sites *Pogany*, a 1972 case in the Third

11  Circuit, where there was a reversal of a conviction due, in

12  fact -- based on a competency hearing.  But that case, Your

13  Honor, I would respectfully submit, is not even in the

14  same -- it is not only not in the same neighborhood, it is

11:00:51  15  not even on the same planet as this case.

16              In *Pogany* there was no competency hearing.

17  There were no defense experts.  In that case the government

18  submitted, I believe ex parte, one psychiatric report to

19  the Court, in camera, based on that report, which I don't

11:01:08  20  believe was -- in reading the case, it is not clear --

21  given to defense counsel.  The Judge in *Pogany*, denied the

22  request for a competency hearing, and the defendant was

23  convicted and that conviction was reversed.

24              That is not at all -- that is not even

11:01:24  25  close to what is going on here, Your Honor.  We have a

1 competency hearing.  Defense counsel and the defendant have

2 hired at least ten, if not 12, expert witnesses.  There is

3 going to be a competency hearing.  Nobody is denying

4 Mr. Brockman's right to a competency hearing.  Mr. Brockman

11:01:43   5 has expert witnesses.  The government has expert witnesses.

6            There is no authority -- basically, what

7 it -- defense counsel seems to be saying, Your Honor, is

8 that the defendant is entitled under 702 and 4241 to hire

9 expert witnesses, which they have, many expert witnesses,

11:02:02  10 but somehow the government is not permitted to hire expert

11 witnesses.  That just doesn't make sense, and that doesn't

12 follow the Federal Rules of Evidence.

13            4241, while it requires the Court to

14 designate the government's experts, for the purposes of

11:02:18  15 evaluating the defendant, that's how the statute works.

16 4241 does not negate in any way, shape, or form Federal

17 Rules of Evidence 702 and 703.  These are government

18 experts that fall under those rules and 4241.  They have

19 done their work as they're required to do.  They have

11:02:34  20 submitted the reports per the scheduling order.  This faked

21 surprise -- or feigned surprise that somehow these were

22 supposed to be neutral experts simply is not supported by

23 the record, Your Honor.

24            And if I could just conclude, as far as

11:02:49  25 the neutral expert that defense counsel would like the

1  Court to appoint, our position is very simple.  The Court

2  can appoint a neutral expert separate from the government's

3  experts, separate from the defense counsel's experts

4  whenever the Court would like.  We would suggest, Your

11:03:04  5  Honor, it might be better for the Court to have the benefit

6  of the competency hearing first, hear from the government

7  experts, hear from defense counsel's experts, and then make

8  an informed decision of whether or not Your Honor would

9  like to appoint somebody else.

11:03:19  10             MR. LOONAM:  Your Honor, if I may --

11             THE COURT:  Oh, sure, I want you to be heard,

12  but that is sort of where I was going with this.  Why

13  appoint a government -- I mean, I can appoint a neutral

14  expert, but why should I do that now when both sides have

11:03:35  15  their own experts?

16                  Let you guys put on the evidence, the

17  Court hear it, and if I determine that I can't make a

18  decision between the two, or I need additional information

19  that either side's experts can't provide me, then at that

11:03:53  20  point in time appoint a neutral expert.

21             MR. LOONAM:  Judge, that is a perfectly good

22  question.  There are two reasons --

23             THE COURT:  Okay.

24             MR. LOONAM:  -- that are practical.  And then

11:04:01  25  with the Court's indulgence, I'll address both.

1          THE COURT:  Sure.

2          MR. LOONAM:  The government is way off on the

3 law here, and to go down this road is reversible error.

4 The First, Third, Fifth, and Ninth Circuits, district

11:04:13  5 courts in Texas, Massachusetts, North Carolina, among

6 others, have stated unambiguously that the examiner

7 designated by the Court must conduct themselves, quote, as

8 officers of the Court responsible neither to the defense

9 nor the prosecution, end quote.

11:04:30  10          So that is the Third Circuit in *Pogany*,

11 right, where the Court threw out convictions after trial.

12 *Pogany* is directly on point because in that case you had

13 the Court -- the defendant submitted its expert reports to

14 the Court to trigger the examination.  The Court appointed

11:04:47  15 an expert, mistakenly believing that it was giving access

16 to this expert to support the prosecution case.  There is

17 no allegation of malfeasance or purposeful misconduct.

18 They just made a mistake.  They misunderstood the law.

19          And then the Third Circuit said that

11:05:06  20 partisan examination cannot take the place of the neutral

21 examination that is required under the law.  If you look at

22 the -- the -- when the Third Circuit in *Pogany* reached that

23 ruling, it was relying on the Fifth Circuit, *U.S. v.*

24 *Theriault.*  In that case the Fifth Circuit said that the

11:05:25  25 designated experts were, "Expected to be neutral and

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1    detached."

2                    The Fifth Circuit said it again in *U.S. v.*

3    *Fratus*, that the designated expert functions, "As an

4    objective nonpartisan expert."

11:05:40    5                    The Northern District of Texas, Judge

6    Lindsay, in 2019 in citing these same cases said that the

7    expert designated is expected to be neutral and detached

8    and report their findings to the Court.  That is what was

9    expected here.

11:05:55   10                    Now the government hangs its hat on

11   nomenclature.  The fact that these experts were called

12   government experts, as if that trumps everything else, as

13   if it trumps the statutory designation, as if it trumps all

14   the case law interpreting this requirement.  It simply

11:06:10   15   doesn't, Your Honor, because in the -- for incarcerated

16   defendants, BOP, undoubtedly government experts, routinely

17   conduct these examinations, routinely.  And they do it as

18   neutral, detached experts, agents of the Court when they do

19   it, not as partisan prosecution experts.

11:06:31   20                    Dr. Denney, the government's own expert,

21   who was previously at BOP, stated every single time he

22   conducted an examination at BOP, he did so as a neutral and

23   detached expert, and distinguished it from how he acted

24   here.  What we have here is an admission from the

11:06:48   25   government that these experts acted as partisan government

1   experts.  They simply can't do that if -- you know, the

2   government cites to no law, by the way, to support its

3   position.  The government cited in its brief to *U.S. v.*

4   *Weston* out of the DC Circuit.  What happened in that case

11:07:07   5   was, there was a neutral and detached examination that took

6   place.  The government then wanted to have its own partisan

7   expert examine the defendant, and the district court

8   recognized, I can't do that under the statutory scheme.  I

9   can't do that under the designation of 4241 and 4247, but I

11:07:28   10   am going to do it under inherent authority, separate and

11   apart from the statutory scheme, as judges do in the

12   context of death penalty cases.  This is a separate

13   authority.  It is not what happened in this case.

14                   And what happened in that case, in *Weston*,

11:07:42   15   after the Court realized that it didn't have the authority

16   under 4241 and 4247, is that when it was appealed up, DOJ

17   abandoned the argument.  It said we are not going to say

18   we're allowed to have our partisan expert examine at this

19   stage of the proceeding.  And so the DC Circuit didn't need

11:08:02   20   to rule on the issue.

21                   All of these cases -- if you look at *U.S.*

22   *v. Reyes*, *U.S. v. Sampson*, *U.S. v. Trexler* citing those

23   1970 cases that Mr. Smith discounts, these are all recent

24   district court cases relying on the Fifth Circuit authority

11:08:20   25   on this point about how the expert needs to be neutral and

1    detached.   To proceed otherwise, is reversible error.

2                    We simply want to do this process once.

3    There is no reason to go through it twice.  We can fix this

4    error now.  And so the prudent course is to appoint a

5    neutral examiner, so that the Court gets the data, and

6    it -- from the -- and the benefit from that examination.

7                    I'll also note, you know, to the extent

8    that there is a discussion of feigned surprise here, in

9    March, in March, we told the government that its

10   communications with these experts were not privileged, were

11   not subject to work product.  When, during the course of

12   the examination, the government tried to participate in the

13   examinations, we objected every step along the way.

14                   So to the extent the agents showed up when

15   Mr. Brockman was examined, to observe Mr. Brockman, we

16   objected, and we made sure that the agents were separated

17   from the examination.  When an IRS agent wanted to

18   participate in the interview of Ms. Keneally and

19   Mr. Romatowski, by Dr. Denney, we objected and we said they

20   can't.  That is inappropriate.  They can't participate in

21   the interview.  Fourth, this is the reason why.  And the

22   government every single time agreed and consented.

23                   If the Court had sanctioned a partisan

24   interview, a partisan examination, there is no basis to

25   exclude those people.  The government would have every

1 right if this was a court partisan inquiry, court

2 sanctioned partisan inquiry for those -- those government

3 agents to participate.  That is not what happened here.

4                      And when the government points to the

11:10:05  5 record, they -- they point to the nomenclature, the fact

6 that people are called government experts, which happens

7 all the time because they selected -- they found these

8 experts, so they are called government experts just like

9 the BOP is called a government expert.  The nomenclature

11:10:21  10 doesn't control.  It's the conduct.  The conduct controls.

11 And the definition is a legally significant event.  It is

12 not just a rubber stamp.

13                      When somebody is designated by the Court,

14 they have the cloak of the Court.  It is entirely

11:10:33  15 inappropriate for somebody acting under the Court's

16 authority to act as a partisan at this stage.  And, look,

17 the government in its opposition to the motion for mutual

18 experts on this same issue points to the fact that they

19 have the burden of proof.  That is the only case they cite

11:10:52  20 to, because every other case they relied on was entirely

21 futile because they are in different contexts.  They are in

22 the death penalty context where the Court acts under its

23 inherent authority, not pursuant to the statutory

24 designation, where you have to construe the statute and

11:11:07  25 have all this huge line of authority that makes very clear

1  that it has to be a neutral and detached examination.

2           But when you look at the Court's order of

3  February 1st laying out the competency hearing, it makes

4  clear, paragraph 2, "At the government's request in advance

11:11:26   5  of the hearing, the defendant shall undergo psychiatric or

6  psychological examinations by a licensed and certified

7  psychiatrist or psychologist pursuant to Title 18, United

8  States Code, 4241(b) and 4247(b)."

9           Then paragraph 6, "The examiner shall

11:11:46   10  prepare a report pursuant to the provisions of 4247(c), and

11  shall file the report under seal, and provide the report to

12  counsel for both parties by no later than May 7th, 2021."

13  That follows the statutory scheme to a T, Your Honor, and

14  the reason is it's not just procedural.

11:12:05   15           The report goes to the Court because the

16  examiners, once they're designated, are acting as agents of

17  the Court.  The parties only get copies of the report.

18  That's what was supposed to happen here.  That's what

19  didn't happen because the examiners were under the

11:12:22   20  misimpression that they were acting as partisans for the

21  government.  So they wrote the report to the government,

22  for the government, and then the government filed it.

23           It is telling, right?  And that's what --

24  what the government just admitted to here.

11:12:37   25           So, Judge, when it comes to the practical

1 reasons -- so the legal reasons are clear.  If we continue

2 down this road, we believe it is reversible error and

3 needlessly at this point, because the practical reasons

4 couldn't be more clear.

11:12:53  5                    The government conducted its examinations

6 in May of 2021.  In -- between May 31st and June 11th,

7 Mr. Brockman was hospitalized with sepsis and delirium.  On

8 June 24th, Mr. Brockman was put under general anesthesia

9 for surgery.  And why does this matter?  It matters because

11:13:22  10 Mr. Brockman has a very vulnerable brain.  Even if you set

11 aside -- this isn't posturing, if you set aside the issues

12 that may be disputed between the parties, at the end of the

13 day, he is an eighty-year-old man with unquestioned

14 Parkinson's disease.  He has a vulnerable brain, on top of

11:13:41  15 that.  And on top of that, he has pathology for Alzheimer's

16 disease.  The recent testing that the government requested,

17 an E.E.G. showed abnormal brain activity.  An additional

18 PET scan showed that it was very suggestive of

19 neurodegenerative disease, likely Alzheimer's, and

11:14:01  20 that's -- those aren't -- those aren't defense experts.

21 Those are just the people at the hospital reading the

22 scans.

23                    And so with that vulnerable brain, a

24 delirium episode can cause permanent cognitive impairment.

11:14:17  25 It's a gut punch to his brain that could lead to permanent

 1  impairment.  And at the July status conference, your court

 2  asked -- the Court asked the perfect question.  Your Honor

 3  was right on point with this.  What's his baseline now?

 4  Right?  That was the Court's question.  What is his

 5  baseline now?

 6              With the government's examinations having

 7  taken place in May, it is going to be extraordinarily

 8  difficult to opine on what his baseline is now, for those

 9  government experts with any -- with any degree of certainty

10  that the Court could rely on.

11              The -- the government -- we had the status

12  conference back in July to ask the Court -- to ask the

13  government, Hey, are you going to claim that the defense

14  examinations are too close in time to the delirium episode

15  such that our examination is subject to question, that you

16  are going to attack our examination based on the closeness

17  of times of the delirium episode?  Because if so, we can

18  just delay this so that we could take that issue off the

19  table for the Court.

20              And the government said, Well, we don't

21  have enough information yet, not per se.  Maybe, maybe not.

22  But we then provided them with the reports and all the

23  medical data, and what the government came back with was a

24  statement that, Well, it's inconclusive.  If the -- the

25  government's -- if the defense testing was influenced by

 1   delirium, it is inconclusive.

 2              We actually don't know what that means and

 3   what the government's position is, and so they should flush

 4   that out.  But this is all by way of saying the Court is

 5   going to have to address the defendant's present mental

 6   state.  We are now talking about dates in November.  Rather

 7   than getting in reversible error into this -- I mean, for

 8   us, if we were playing games, let's get the hearing on,

 9   right?  We have got the best data.  We have tested him most

10   recently.  We are very confident in our case.  Let's go

11   forward, if we were playing games, but we're not.

12              We want to get to the bottom of this, Your

13   Honor, and so we believe that an examination by a neutral

14   expert in advance of the Court having the hearing, and

15   having to decide this issue, if it makes sense, both

16   legally, and as a practical matter.

17              THE COURT:  Mr. Smith, I'll give you a final

18   word.

19              MR. SMITH:  Thank you, Your Honor.  I am not

20   going to go through our pleading.  I would give it to --

21   suggest the Court take a look at it.  We have distinguished

22   all of the cases cited by Mr. Loonam.  The only thing I

23   would add is that facts matter, not just the law, but facts

24   matter.

25              Some cases are not applicable to this

1 situation, and we have distinguished these on the

2 underlying facts.  There are situations in which the Court

3 does appoint a neutral expert, and those neutral experts

4 have to act as neutral experts.  You have indigent

11:17:23  5 defendants who cannot afford their own attorneys, and so

6 neutral experts are appointed.  That is not this situation.

7            The other thing that I would point out to

8 the Court is that if you follow Mr. Loonam's statutory

9 interpretation, he is living in a world, based on his

11:17:40  10 interpretation of the statute, where the defendant would be

11 permitted to have their experts testify in a competency

12 hearing but the government would be excluded from having

13 any expert testimony.  That can't be and we don't believe

14 that is the statutory framing.

11:17:58  15            We believe that when the Court in Docket

16 59, back on May 10th, designated the government experts to

17 take -- to do a psychiatric and psychological evaluation of

18 the defendant, what the Court was doing, was ordering the

19 defendant to submit to a psychiatric and psychological

11:18:17  20 evaluation by the government experts.  It was not the

21 appointment of a neutral expert.

22            Again, another small point, but I think it

23 is worth noting, the term "neutral" does not appear in the

24 Court's order.  I don't believe it appears in 4241.

11:18:34  25 Mr. Loonam is conflating the statute and conflating these

1  cases, different situations.  We are dealing with this

2  situation where the defendant has hired multiple experts.

3  The government has hired experts.  Under the Federal Rules

4  of Evidence 702 and 703, both sets of experts are permitted

11:18:53  5  to testify, and then it is up to the Court's discretion if

6  and when to appoint yet a third neutral expert, or a third

7  set, neutral experts, to help it make its determinations.

8           Our position is these are U.S. Government

9  experts.  They have been selected and retained by the U.S.

11:19:10  10  Government.  They were never designated as so-called

11  neutral experts.  There is no reversible error here, and

12  they're entitled to testify.  And as retained experts for

13  the government, our communications with our experts is

14  attorney work product privilege and not discoverable.

11:19:28  15           MR. LOONAM:  Your Honor, I know you said that

16  was the last word.  There is a straw man argument built in

17  there, though, that I have to respond to very briefly if

18  I --

19           THE COURT:  Well, I am going to cut it off at

11:19:37  20  this point because I understand the issues.  I have read

21  the briefs.  I have looked at my order.  I know what my

22  intent from the order was, and I know what the statute

23  says.  So I really, respectfully, don't need to hear

24  anything else from the parties.

11:19:52  25           I will get a decision back to you on this

1   issue shortly.

2             MR. LOONAM:  Yes, Your Honor.

3             THE COURT:  If y'all will hold on for just one

4   second, I want to get a copy of something before we

11:20:04   5   proceed.  Just stand by for not more than about three to

6   four minutes, everyone.

7             MR. VARNADO:  Very well, Judge.

8   (Proceedings recessed from 11:20 to 11:25.)

9             THE COURT:  Good morning, Counsel.  I am back

11:25:27  10   on the line.  Before we move on to the next topic that we

11   need to talk about, I am going to go ahead and issue a

12   ruling on the record regarding several motions, and then I

13   will follow that up with a written order shortly.

14                 With respect to Defendant's Motion to

11:25:47  15   Compel Discovery in Advance of the Competency Hearing,

16   which is Docket Entries Number 81, 89 and 94, as well as

17   Defendant's Motion for the Appointment of Neutral Court

18   ex -- Court Designated Experts to exclude testimony from

19   Dr. Park Dietz, Dr. Robert Denney, and Dr. Ryan Darby,

11:26:07  20   which is Docket Entries Number 105, 113 and 122,

21   respectfully, those motions are denied.

22                 When I appointed -- when I signed the

23   order that -- I was not appointing neutral court designated

24   experts.  What I was doing was giving those experts the

11:26:25  25   authority to be able to conduct the examinations which they

1   conducted.  There was no question that these were defense

2   experts -- I mean, I'm sorry, there is no question these

3   were prosecution experts.  They were hired by the

4   government.  They are paid by the government.  There is no

11:26:41  5   issue in the Court's mind that these are prosecution

6   experts.

7               Had I wanted to appoint neutral

8   court-designated experts, the process would have been

9   completely different.  I would have met with the parties,

11:26:56  10  got representations from both sides.  We would have heard

11  argument as to the qualifications of these individuals, and

12  then after hearing input from both sides, then I would have

13  made a decision regarding a neutral court-designated

14  expert.  That didn't happen here because these were not

11:27:14  15  neutral court-designated experts.

16              I understand the argument.  I will draft

17  an order so that you guys have something for appellate

18  purposes, but I am ruling on the record that those motions,

19  respectfully, are denied.

11:27:26  20              Good argument, good presentations on both

21  sides.  I find that the cases, Mr. Loonam, that you cited

22  are distinguished from the cases that we have before me,

23  which is in this case, we do not have neutral

24  court-designated experts.  They never were.

11:27:44  25              If they were, I would agree with you that

1   the cases would indicate that this might be error, but I am

2   not -- to act as neutral court-designated experts, that --

3   they were never designated as neutral court-designated

4   experts in this case.  So, respectfully, those motions are

11:28:03   5   denied.

6               The next notion before the Court is the

7   Government's Motion to Strike the Motion to Compel

8   Discovery, which is Docket Entries 84 and 86.  I think I

9   have dealt with that now, having dealt with defendant's

11:28:19   10   motion to compel discovery in advance of the hearing.

11   Mr. Smith, are there other discovery motions to compel that

12   I am not aware of?

13               MR. SMITH:  No, Your Honor.  You are correct.

14   That motion is now moot.

11:28:30   15               THE COURT:  So the government's motion to

16   strike discovery, which is Docket Number 84 and 86, are

17   moot.

18               The next issue that we have before me is

19   the related motions to show cause, quash hearing subpoena,

11:28:49   20   and for an expedited hearing all regarding witness Stuart

21   Yudofsky.  Is that the way you pronounce that correctly?

22               MR. SMITH:  I think that is correct, Your

23   Honor, yes.

24               THE COURT:  Okay.  Great, I would like to --

11:29:03   25   has there been any -- before we get started, has there been

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1  any agreement regarding that -- those motions?

2           MR. SMITH:  Your Honor, these motions for the

3  government, Mr. Boris Bourget is going to be arguing for

4  the government.  He has been handling those for us.

5           THE COURT:  Mr. Bourget, has there been some

6  agreement?  I mean, is everything where it was -- is

7  everything still where it was when the motions were filed,

8  that is; there has been no agreements, no negotiation, no

9  talks?  Everything is between the parties as it is stated

10  in the motions?

11           Because the reason I am asking is I don't

12  want to wade into this and find out that there are

13  agreements and the parties have been working through it,

14  and maybe some agreement that I don't know about.

15           MR. BOURGET:  Good morning, Your Honor.

16           THE COURT:  Good morning.

17           MR. BOURGET:  No.  It is roughly where it is.

18  I think the only thing I would note, and I think

19  Dr. Yudofsky's counsel noted this in their reply, that they

20  did produce a small subset of e-mails to the government

21  related to Mr. Brockman, but from what we can tell, these

22  e-mails are only related to Dr. Yudofsky's treatment, or

23  examination of Mr. Brockman from a medical standpoint.  But

24  our subpoena requests all e-mails from 2010 to the present

25  from Dr. Yudofsky related to Mr. Brockman.  So as far as

11:29:20
11:29:37
11:29:49
11:30:01
11:30:30

1  the government is concerned, Dr. Yudofsky's production is

2  now complete.

3           But I think, again, that was mentioned in

4  Dr. Yudofsky's reply, but that is the most recent event.

11:30:46  5  Other than that, there has been no agreement.

6           THE COURT:  Let me have counsel for

7  Dr. Yudofsky on the line.

8           MR. MACDOUGALL:  Yes, Your Honor.  Mark

9  MacDougall with Akin Gump Strauss in Washington, and with

11:30:59  10  me are my colleagues Samantha Block and Nick Petree with

11  our office in Houston.  We have been admitted pro hac vice.

12  And I would substantially agree with the government's

13  characterization.  There has been a -- we believe full

14  compliance with the subpoena with respect to required

11:31:14  15  documentation under the terms of the subpoena, but beyond

16  that, there has been no agreement or no resolution of the

17  issues.

18           THE COURT:  Okay.  Well, let me -- let's go

19  ahead and get started with the motion to quash.

11:31:27  20  Mr. MacDougall, the floor is yours, and then I will have

21  Mr. Bourget respond.

22           MR. MACDOUGALL:  Thank you, Your Honor.  Good

23  morning.

24           THE COURT:  Good morning.

11:31:34  25           MR. MACDOUGALL:  We appreciate being admitted

1  pro hac for purposes of this hearing, and I'll be brief.

2              Dr. Yudofsky is 77 years old.  He is a

3  stranger to this case, a very well-known physician and

4  professor emeritus at Baylor College of Medicine.

11:31:51  5              The relief we seek here is two-fold:  The

6  first is the Court -- we ask the Court, respectfully, to

7  modify the Rule 17 subpoena to make clear that the

8  government's interpretation is incorrect.  And the

9  government is the author of the subpoena.

11:32:06  10              And if I could ask the Court if -- at the

11  appropriate time to actually take a look at the terms of

12  the subpoena, it calls for production of administrative,

13  financial, and medical records in Dr. Yudofsky's immediate

14  possession.  And then goes on to modify what that means.

11:32:27  15              The government could have asked for all

16  manner of communications, electronic, written, and so

17  forth, but they didn't.  And we are -- Dr. Yudofsky is only

18  required to respond to the subpoena that the government

19  ultimately served, and not what they would like it to say

11:32:43  20  after having served it.

21              The second aspect of relief that we seek,

22  Your Honor, is quashing the requirement of personal

23  appearance by Dr. Yudofsky.  Dr. Yudofsky, through counsel,

24  and on the advice of counsel has asserted his Fifth

11:33:00  25  Amendment right.  And this is, frankly, Your Honor, at the

1 risk of being too blunt, this is simply an effort to bully

2 Dr. Yudofsky.  This is simply an effort to try to either

3 force him to become a cooperating witness for the

4 government, or waive his rights at the risk of being

5 required to wait in the courthouse for four or five days

6 until the government decides that they want to call him,

7 and then put the Court through the onerous process of --

8 and really the unprecedented process of making a

9 third-party take the witness stand in a competency hearing

10 and then assert his Fifth Amendment right in response to

11 every question.

12          Dr. Yudofsky has no obligation to satisfy

13 the government or, frankly, anyone else, as to what -- his

14 basis for asserting the Fifth Amendment right.  That is not

15 what the Fifth Amendment is.  The Fifth Amendment, as we

16 cite in our pleadings, and as I think -- I am sure the

17 Court has heard before, and pursuant to *Ohio v. Reiner* is

18 there to protect the otherwise innocent man who might be

19 ensnared by ambiguous circumstances, and that is exactly

20 where we are today, Your Honor, and that is why we ask that

21 the requirement that the government seeks to enforce and

22 seeks to apply through its subpoena, that Dr. Yudofsky

23 physically appear and wait in the courthouse until he is

24 called and then somehow respond over and over again, again

25 on advice of counsel, by asserting his Fifth Amendment

1  right, is entirely unfounded.

2              Just briefly, Your Honor, I think the

3  chronology here is important, and I would ask the Court to

4  note the concession that the government has made with

5  regard to some of its representations to the Court.

6              Although the subpoena is dated May 10th,

7  the government moved for early production on June 16th and

8  informed the Court erroneously, which it now admits, that

9  the subpoena had been served six weeks earlier or five

10 weeks earlier on September 10th.  In fact, the subpoena

11 hadn't even been served at the time the Court sought early

12 production under Rule 17.

13             The subpoena was actually served, and the

14 government now admits this, five days after they moved for

15 early production.  No notice was given, and according to

16 the record of the case, on July 29th, the Court granted

17 Docket Number 70, which was the government's motion, and

18 that motion called for production of documents 30 days

19 after the order was entered which, under the rules, would

20 be August 28th.

21             The government immediately told -- took

22 the position and over and over again urged that what was

23 really granted was an order requiring Dr. Yudofsky to

24 produce documents 30 days after the subpoena was served.

25 That, of course, would -- would be entirely inconsistent

1  with reason, and that would require Dr. Yudofsky to have

2  produced the documents in advance of the Court even hearing

3  the motion.  Again, Your Honor, and I -- I hate to use this

4  word, but I must, this is just an effort by the government

11:36:05  5  to bully a third party into becoming a cooperating witness.

6                    With respect to modification of the

7  subpoena, again, Your Honor, we would ask the Court to take

8  a look at the document which -- itself which calls for the

9  production of administrative, financial, and medical

11:36:21  10  records.  Dr. Yudofsky has produced his sixteen pages of

11  notes reflecting his medical judgment, and communications

12  with the defendant in this case.  We have also produced 37

13  e-mails, which relate to medical -- medical consultations

14  with Dr. Yudofsky.

11:36:42  15                    We believe, and we think the record would

16  support, that those are all the materials in Dr. Yudofsky's

17  possession which fall within the language of the subpoena,

18  specifically administrative, financial in this case,

19  medical records.

11:37:03  20                    The government's contention that the

21  subpoena calls for all e-mails for 11 years is irrelevant

22  to a competency hearing, although that is not our case to

23  make under 4241.  If the government failed to use a Grand

24  Jury subpoena to obtain records for trial, or for use at

11:37:18  25  any pretrial litigation, that is not Dr. Yudofsky's burden

1   to cure.  And the government cannot now come in and try to

2   use Rule 17 to collect a broad collection of trial evidence

3   that has no relationship to competence.  But, most

4   importantly, Your Honor, the subpoena, the language of it

11:37:35   5   speaks for itself, and the government is the author of the

6   subpoena, and Dr. Yudofsky, we believe, has fully complied

7   with regard to documentation production and we would ask

8   the Court, respectfully, to modify the subpoena to make

9   clear that Dr. Yudofsky's obligation is limited to the

11:37:52   10   plain language of the subpoena.

11               Just briefly, with respect to compelling

12   Dr. Yudofsky's appearance, as we have communicated to the

13   government, and repeatedly on advice of counsel, and I'll

14   just add, acting on the advice of counsel, Dr. Yudofsky

11:38:09   15   will assert his Fifth Amendment right in response to any

16   question beyond basic identification requirements.

17               The government contends that Dr. Yudofsky

18   has to somehow satisfy the government with respect to the

19   basis for asserting his Fifth Amendment right.  That is not

11:38:24   20   the law, and that is not what Mr. Madison intended when the

21   Fifth Amendment was enacted, and that is not a burden that

22   Dr. Yudofsky should by any stretch of the imagination have

23   to bear.

24               Congress provides the government with a

11:38:35   25   very effective tool for addressing individuals who seek the

1  protection of the Court, and the protection of the Fifth

2  Amendment, and that is 18, USC, 6002.  The government has

3  the option to petition the Court for a grant under rule --

4  under Section 6002.  They have elected not to do that, and

11:38:56   5  have gone so far as to ask us to describe the felony that

6  Dr. Yudofsky committed that prompts us to seek Fifth

7  Amendment protection.  That is not the law, Your Honor, and

8  that is -- that is an extreme position for which there is

9  no basis.  He has no such obligation.

11:39:12   10         The only purpose of requiring Dr. Yudofsky

11  to come into court, wait until called, and repeatedly

12  assert his Fifth Amendment right, would be to harass him

13  and bully him and that is what this proceeding is about.

14         The government cites cases that have no

11:39:25   15  bearing on the matter before the Court.  The cases that the

16  government cites in each instance are cases where a

17  defendant seeks to enforce a Sixth Amendment right to

18  confront witnesses, and is faced by a witness seeking to

19  assert a Fifth Amendment right.

11:39:41   20         As the Court and as the government well

21  knows -- knows well, the government has no Sixth Amendment

22  right, and the government has no Sixth Amendment right to

23  enforce, in this instance, the requirement that

24  Dr. Yudofsky appear.

11:40:00   25         Just a footnote, Your Honor, Dr. Yudofsky

1  was known to the government during its Grand Jury

2  investigation.  He was contacted.  The government was

3  informed that he would not be participating in an

4  interview.  He was served with a subpoena, a Grand Jury

11:40:11  5  subpoena, and the same subpoena was withdrawn.  So this is

6  not an instance where the government has newly discovered

7  his existence.

8  Finally, Your Honor, you know, I have been

9  doing this for a while, and the one thing that I have

11:40:23  10  concluded is that the -- that the Article III and the

11  Courts are here to protect citizens from the government.

12  And this is an instance in which we ask the Court,

13  respectfully, to protect Dr. Yudofsky from this government

14  effort to overreach and compel him to do things that no

11:40:39  15  citizen should be required to do.

16  Thank you, Your Honor.

17  THE COURT:  Thank you, Mr. MacDougall.

18  Mr. Bourget, your response.

19  MR. BOURGET:  Yeah.  So let me begin with just

11:40:50  20  a little more of the background of the subpoena.  So one

21  thing that Mr. MacDougall failed to mention is that the

22  original subpoena to Dr. Yudofsky was sent in February of

23  2021, and the June 16th motion for early production that

24  was filed was related to that original subpoena in

11:41:07  25  February.  So Dr. Yudofsky has had the subpoena since

February.  The subpoena that was issued on June 21st, was
issued because of the change of the date, competency
hearing from late June to September 13.

So what Mr. MacDougall is saying here
about, you know, the -- the continuity or the issue with
the 17(c) motion being filed before the subpoena was issued
is incorrect, because it is related to an earlier subpoena.
And in terms of the subpoena that we're dealing with today,
if it's an issue of the language being unclear as to what
the government is requesting, we're happy to issue a new
subpoena today to Dr. Yudofsky.

Obviously, there is some more issues here,
an issue that Mr. MacDougall raised about relevance, you
know, the -- Mr. Brockman put his ability to write e-mails
at issue in this case as part of his argument for why he is
not competent to stand trial.  Dr. Yudofsky is a close
personal friend of Mr. Brockman.  He also happens to be a
neuropsychiatrist.  He had examined Dr. Brockman, and
Dr. Brockman relied on him to discuss both his medical
issues, but also personal issues, and we think that there
is some bias here because Dr. Yudofsky is a close friend of
Mr. Brockman.

Mr. Brockman has donated $25 million to
support Dr. Yudofsky's research, and on the day that the
search warrants in this case were executed in Bermuda,

1  Mr. Brockman and Dr. Yudofsky were on a fishing trip

2  together in Alaska.

3                        The very next day, Mr. Brockman saw

4  Dr. Seth Lerner, and that is where we got the first known

11:42:53  5  diagnosis of Mr. Brockman having cognitive issues.

6                   THE COURT:  Can I stop you with a question

7  there?  So the documents that you're asking for, the reason

8  you're asking for the e-mails is because you believe that

9  they will show Mr. Brockman -- you are not looking for

11:43:13  10  evidence of the underlying criminal indictment.  You are

11  look for information regarding his competency to send the

12  e-mails, and e-mails about his competency with

13  Dr. Yudofsky?

14                   MR. BOURGET:  That is correct.  What we're --

11:43:35  15                   THE COURT:  Oh, I'm sorry.  No.  Because

16  Mr. MacDougall's argument was that these documents -- that

17  your subpoena request is so broad that it is actually

18  looking for information regarding the underlying criminal

19  prosecution, not the competency issue.  And your argument

11:43:50  20  is that you have narrowed -- you know, you have tailored it

21  best you can, but your argument is, is that this

22  information is designed to get at information that is

23  relevant to the competency proceeding?

24                   MR. BOURGET:  That is correct, Your Honor.  And

11:44:05  25  so let me turn now to having Dr. Yudofsky actually appear

1  and, you know, this has been briefed, and the Fifth Circuit

2  law is clear.  A party or a nonparty, you know, the target

3  of a subpoena cannot unilaterally decide that they are

4  claiming the Fifth Amendment and disregard the subpoena

11:44:25  5  entirely.

6              THE COURT:  I have to stop you there.  I have

7  got that argument.  I mean, I respect Mr. MacDougall's

8  argument, but the issue is, if you're going to plead the

9  Fifth Amendment, you have to do it.  You can't just say you

11:44:36  10  are going to do it and then not show up.  The law is pretty

11  clear there.

12              Mr. MacDougall's argument, of course, is

13  that this is just harassment.  There is really no reason to

14  have him come down and sit by the courthouse for five hours

11:44:51  15  waiting to testify, but there are ways of dealing with

16  that.  I mean, the bottom line in the Fifth Circuit law is

17  if you are going to plead the Fifth Amendment, you don't

18  get a pass and say, I don't have to show up because I am

19  going to plead the Fifth.  You are going to have to come

11:45:03  20  down to the courthouse and plead the Fifth Amendment.

21              If there is problems with inconvenience,

22  then we deal with that by having him go first, or

23  rearranging the court schedule so that he is only down

24  there for a minimal amount of time.  So that argument we

11:45:17  25  don't need to address.  I understand it.  Respectfully, I

1  just disagree with Mr. Brockman's counsel's position.

2  Well, Dr. Yudofsky's counsel's position on that.  So, you

3  can move on to the next topic.

4          MR. BOURGET:  Okay.  And I will, Your Honor.

11:45:33  5  And just to add very quickly with what Mr. MacDougall

6  discussed about Dr. Yudofsky having to be at the courthouse

7  for four to five days, there has never been any discussion

8  about us scheduling, and sliding Dr. Yudofsky to, you know,

9  a certain day or an afternoon, and that's something we are

11:45:49  10  happy to discuss.  But we have never at any point

11  communicated that Dr. Yudofsky would have to show up on the

12  first day and potentially stay, you know, for four or five

13  days, you know, however long the hearing lasts.

14          THE COURT:  I wouldn't let that happen.  I

11:46:05  15  mean, I wouldn't let somebody just sit out in the hall.  We

16  can coordinate schedules.  That is not a problem.

17          MR. BOURGET:  I understand.  So it sounds like

18  the Court understands the part about Dr. Yudofsky having to

19  come testify.  And so I will just reemphasize on -- in

11:46:21  20  terms of the production, yes, the materials that we are

21  seeking are directly related to the issue for the

22  competency hearing.

23          Mr. Brockman has put his ability to write

24  e-mails at issue, and Dr. Yudofsky is in this unique

11:46:36  25  position where he has communicated with Mr. Brockman about

1 his health, but he is also a close personal friend of

2 Mr. Brockman.  And so the e-mails from a lengthy period of

3 time with this person, Dr. Yudofsky, are going to be

4 helpful, you know, as a complete body of evidence that the

11:46:54 5 Court will be considering to determine whether Mr. Brockman

6 is competent to stand trial.

7          So, I'll leave it at that.  Thank you,

8 Your Honor.

9          THE COURT:  Okay.  Well, let me ask you a

11:47:06 10 question.  So, the next issue that Mr. MacDougall brought

11 up was that -- one second -- with respect to the documents,

12 they basically are saying he has given you pretty much what

13 you have asked for.  What is it that Dr. Yudofsky is not

14 giving you that you are still looking for?  I just want to

11:47:29 15 make sure I get this clear.

16          MR. BOURGET:  We have gotten some e-mails from,

17 I would say, the past four -- approximately four years, and

18 they're only related to Dr. Yudofsky's treatment of

19 Mr. Brockman.  And that's consistent with the position that

11:47:47 20 Dr. Yudofsky's counsel took, that they could provide

21 e-mails only if they are related to -- to Mr. Brockman's

22 medical issues or health.

23          And so we -- we believe, and -- that

24 Dr. Yudofsky and Mr. Brockman have been close personal

11:48:06 25 friends for a long time.  They have communicated about far

1  more than just Mr. Brockman's health, and so we want the

2  complete body of e-mails from 2010 to the present as the

3  subpoena requests.

4           So, respectfully, no, they have not

11:48:20  5  complied.  There are still a significant chunk of e-mails

6  that the government is missing.

7           THE COURT:  Well, why would the -- why would

8  the document -- again, I just want to hear it in your

9  words.  Why would it be relevant in a competency hearing to

11:48:36  10  have e-mails spanning a period of 11 years?  I mean, are

11  you -- what are you looking for?  What do you think is in

12  there?

13           I mean, I think I understand it, but I

14  want to hear it from you.

11:48:49  15           MR. BOURGET:  Well, so the main thing, it is

16  Mr. Brockman who has put his ability to write e-mails at

17  issue, and these are e-mails, like I said, somebody who is

18  in this unique position of both being a neuropsychiatrist

19  who has treated Dr. Brockman [sic], but also is a close

11:49:08  20  personal friend.

21           On the flip side if the defense is going

22  to be relying on Dr. Yudofsky and his -- what he has seen

23  and observed from Mr. Brockman, then we want to raise the

24  issue of bias, and this is somebody who has received

11:49:23  25  millions of dollars from Mr. Brockman, and has -- you know,

1 they're friends.  There's an issue of bias here, and so

2 he --

3            THE COURT:  What do -- one question, before you

4 go on.  I don't mean to the interrupt.  Bias, is

11:49:40  5 Dr. Yudofsky going to be testifying on behalf of

6 Mr. Brockman?

7            MR. VARNADO:  Your Honor, this is Jason Varnado

8 for Mr. Brockman.  We would love to have Dr. Yudofsky

9 available as a witness, but the government won't immunize

11:49:54 10 him.  So simple -- as of now, the answer is no because he

11 would not come and testify.  That's the short answer to

12 that.

13            And to Mr. Bourget's repeated statement

14 that somehow Mr. Brockman has given millions of dollars to

11:50:06 15 Dr. Yudofsky, it's ridiculous.  It is charitable donations

16 to the medical center where he practices.  So I think that

17 needs to be cleaned up on the record.

18            THE COURT:  Sure.  Well, as I say, thank you,

19 Mr. Varnado, for letting me -- and also Mr. Bourget.  I

11:50:23 20 just wanted -- you know, you keep saying bias.  I just want

21 to understand how, you know -- what bias are we talking

22 about, before we proceed with competency?  I mean, if he is

23 not going to be testifying at the competency hearing, why

24 am I worried about, you know, potential bias?  I mean, he

11:50:40 25 is not going to be testifying at all.

1          MR. BOURGET:  Well, yeah, the government plans

2 to call him, and, obviously, if he wants to claim his Fifth

3 Amendment right for any question that is asked of him, he

4 has the right to do so.  And we might argue whether or not

11:50:59  5 some of those are proper, especially with regards to

6 questions about what he observed when -- with Mr. Brockman,

7 or things that Mr. Brockman said to him.

8          And so, I would say that the main reason

9 that we want his body of e-mails is because Mr. Brockman

11:51:16  10 has directly put his ability to write e-mail as -- at issue

11 by claiming that it's diminished over time and that it is a

12 piece of evidence they rely on to show that Mr. Brockman is

13 not competent to stand trial.

14          And --

11:51:33  15          MR. VARNADO:  Judge, I'm sorry --

16          MR. BOURGET:  Oh, come on.  Multiple speakers.

17          THE COURT:  One second.  I wanted to let

18 Mr. Bourget -- I interrupted Mr. Bourget several times, so

19 I want to give him an opportunity to be heard.

11:51:48  20          MR. BOURGET:  That is fine.  I just wanted to

21 clear that up.  To the extent that Mr. Varnado was implying

22 it was the government's fault that Dr. Yudofsky isn't

23 testifying because we haven't immunized him, we don't know

24 what the basis would be for immunizing him, and we have had

11:52:02  25 discussions with Mr. MacDougall about having a one day

1  proffer session where Dr. Yudofsky could come in and the

2  government would weigh whether it makes sense to use him

3  for purposes of the competency hearing.  But Dr. Yudofsky

4  declines to come in.  He obviously has the right to do so,

11:52:21  5  but at that point the government is not under some sort of

6  obligation to give him statutory immunity for any and all

7  crimes.

8              THE COURT:  And then -- okay.  And then the

9  last point is, what -- why ten years?  What's the -- what

11:52:34  10  is the magic of ten years?

11              MR. BOURGET:  Frankly, Your Honor, that seems

12  like a -- a category of time that seemed like it would be

13  relevant, given that -- the period that Mr. Brockman claims

14  to have had diminishing memory and, you know, diminishing

11:52:54  15  cognitive ability.  But, frankly, Your Honor, the evidence

16  that the government has received shows that Mr. Brockman

17  was self-reporting, you know, alleging memory loss as early

18  as 2004.  So in a way 2010 to the present -- to the present

19  is a shorter amount of time than the total amount of time

11:53:14  20  that Mr. Brockman has been self-reporting memory loss, or

21  memory issues.

22              THE COURT:  And then the -- let me check one

23  thing.

24              And why -- why is the government focusing

11:53:50  25  on e-mails between Mr. Brockman and Dr. Yudofsky?  You

1  know, I am sure Mr. Brockman has been sending e-mails to

2  other individuals.  I mean, are there any other -- any

3  other sources -- if you can talk about it without breaching

4  attorney work product, are there any other sources of

11:54:09  5  e-mail streams that might give you the same information

6  that the government is looking into?

7          MR. BOURGET:  In terms of e-mail strings --

8  this is the most important one, in part, because the

9  defense is relying on e-mails between Robert Brockman and

11:54:29  10  Dr. Yudofsky.  They're the first exhibit in their

11  competency motion, is the 2017 e-mail between Mr. Brockman

12  and Dr. Yudofsky, so that is what really clued the

13  government in on these e-mails being important because the

14  defense is clearly relying on them.  And we want to be able

11:54:47  15  to review a broad body of e-mails between Dr. Yudofsky and

16  Mr. Brockman for the reasons that I stated.

17          THE COURT:  And, Mr. MacDougall, you have the

18  last word on this.

19          MR. MACDOUGALL:  Thank you, Your Honor.

11:55:02  20          With regard to the ten-year period of time

21  and all e-mails, again, that is not what the subpoena says,

22  and we are entitled -- Dr. Yudofsky is entitled to rely on

23  the subpoena.  If I understood Mr. Bourget, he has

24  acknowledged that the government has a wealth of

11:55:17  25  Mr. Brockman's e-mail correspondence over a long period of

1  time.  So if the issue they are interested in testing is

2  Mr. Brockman's ability to compose e-mails and respond to

3  them, they have got what they need.  They don't need to be

4  trying to push Dr. Yudofsky beyond the limits of what the

11:55:35  5  subpoena calls for.

6                     You know, Dr. Yudofsky -- you know, as

7  counsel for Mr. Brockman said, Dr. Yudofsky will not

8  testify, and will assert his Fifth Amendment right on the

9  advice of counsel.  And if the government seeks to compel

11:55:49  10  his testimony, and the Court grants that motion, then the

11  net effect of that is to immunize the witness, and for that

12  reason we would ask the same question that Mr. Varnado

13  asked, which is why not just immunize him under 6002?  But

14  I understand the Court's position on that.

11:56:07  15                     And, again, I would agree with the Court's

16  question, and I don't believe it was answered.  You know,

17  what's the importance of ten years of e-mails?

18                     The Court -- the government has what it

19  needs with regard to communication.  Dr. Yudofsky has

11:56:22  20  produced everything relating to his medical records, as

21  they -- as they involve Mr. Brockman, and there is nothing

22  in the way of administrative or financial records beyond a

23  single invoice that I think was sent that has been included

24  in the production that would qualify.  So we would ask the

11:56:40  25  Court, respectfully, to grant our motion to modify the

1  subpoena to that extent.

2          THE COURT:  Well, thank you, Mr. MacDougall.

3  Counsel, I am going to take your arguments under

4  advisement.  I'll get a ruling back to you as quickly as

11:56:53  5  possible.  I know it is important.

6              I just need to think about a couple of

7  things, and I want to take another look at the subpoena as

8  well.  And I'll get back to you as quickly as possible.  It

9  won't take me very long.

11:57:07  10          MR. MACDOUGALL:  Thank you, Your Honor.

11          THE COURT:  Thank you, Counsel.

12          MR. BOURGET:  Thank you.

13          THE COURT:  Well, those are the things on my

14  list to talk about with you this morning.  I am looking --

11:57:17  15  I still haven't confirmed, because I haven't had a chance

16  to talk with my staff about November 15th, but November

17  15th looks like if everybody works, everyone, they just

18  need to clear my docket for that day to go forward.

19              And is there anything else that is

11:57:35  20  pressing that we need to address today?

21          MR. VARNADO:  Your Honor, there are some other

22  issues that the parties would probably benefit from

23  discussing on their own to see if we can reach resolution.

24  We have been able to resolve a couple things since the

11:57:52  25  letter we sent last week, so if we are pushing the hearing

1 to the 15th of November, that ought to give us a chance to

2 do some of that, and if we can't resolve certain issues

3 bring them to your attention at a later time.  You have

4 already been kind enough with your time this morning.

11:58:07  5          THE COURT:  It is not a problem at all.  I

6 appreciate your patience, everyone.

7                  So November 15 we will just pen in --

8 pencil in November 15th.  I will confirm that just as soon

9 as I can, and I will get a confirmation back to you, within

11:58:21  10 the hour, probably.

11                  And then you can all use that date to work

12 toward whatever issues that you need to work out.  Okay?

13          MR. SMITH:  Your Honor --

14          THE COURT:  I'm sorry.  Mr. Smith?

11:58:35  15          MR. SMITH:  Just -- it is not a motion.  It is

16 just a housekeeping matter.  We are just not sure how the

17 Court is going to want to conduct this pretrial hearing in

18 terms of the rules of evidence, and admission of hearsay.

19 We are prepared to bring records custodians, but I -- like

11:58:50  20 other pretrial hearings, like suppression hearings, and

21 search warrant hearings, Fourth Amendment hearings, a lot

22 of times the Court will permit a certain amount of hearsay

23 just to get through because there is no jury present.  I

24 don't know if the Court is prepared to address those

11:59:05  25 logistical issues now or at a later time.

1           THE COURT:  I want to think it through.  We

2  will set another status conference and we will talk about

3  that as we get closer to the hearing date.  But I will -- I

4  will leave you enough time, if for some reason we are going

11:59:18  5  to strictly adhere to the rules of evidence, you will be

6  able to get a records custodian.

7           I mean, the problem with a lot of this is

8  I don't see where, you know, reasonably there should be

9  some reasonable disagreement about issues like

11:59:32  10  authenticity.  Hearsay possibly, but the issues on hearsay

11  is, as you mention, it is to the Court.  I can assess the

12  credibility and veracity of what I am hearing based on --

13  you know, based on the evidence as a whole, sort of like a

14  jury can.

11:59:50  15           So I don't think that -- right now I see

16  this more in terms of allowing hearsay, and allowing, you

17  know, stipulations as to authenticity because of certain

18  records, because it's been -- these are records that have

19  been produced between the parties.  I don't really have a

12:00:08  20  problem with that.

21           So right now think about, you know -- for

22  planning purposes, plan for a more relaxed evidentiary

23  ruling with respect to hearsay and authenticity.

24           MR. SMITH:  Very good, Your Honor.  Thank you.

12:00:29  25           MR. VARNADO:  That is helpful, Judge.  Thank

1  you.

2              THE COURT:  Because that will make everyone's

3  life a little easier.  Now, if there are some issues that

4  you guys are just really concerned about, then, we need to

12:00:39  5  talk about those in advance, and then we can sort through

6  whether or not we need to bring somebody down here or not.

7  But you guys will know what those issues are at least a

8  month out, I am sure.

9              So if there are issues that you think that

12:00:53  10  there are going to be documents that you have issues with,

11  let me know, and then we can address those before the

12  hearing.

13              MR. SMITH:  Very good, Your Honor.  Thank you.

14              THE COURT:  Well, everyone, have a great

12:01:04  15  afternoon.  Those of you here in Houston, you know, batten

16  down, you know, gas up, whatever you need to do because it

17  looks like this is going to be a pretty significant

18  flooding event, unfortunately, especially depending on what

19  parts of town you are in.

12:01:18  20              MR. VARNADO:  Yes.

21              THE COURT:  So, please, stay safe and well,

22  everyone, and I will talk to you at the next status

23  conference.

24              MR. VARNADO:  Thank you, Your Honor.

12:01:25  25              MR. SMITH:  Thank you, Your Honor.

1          MR. BOURGET:  Your Honor, could I raise one

2    more quick point?

3          THE COURT:  Yes, sir.

4          MR. BOURGET:  So the defense and the government

12:01:33    5    had filed a proposed protective order related to

6    information on a hard drive, and so that was filed late

7    Friday, but we wanted -- I just wanted to flag that for the

8    Court, that we have agreed on the protective order.  It's

9    been docketed.

12:01:50    10          MR. VARNADO:  It's Docket Number 133, Judge.

11    We are in agreement on that.  We were able to work through

12    that since sending our letter.

13          THE COURT:  So Docket Entry 133 is -- do you

14    have a copy?  I have not, unfortunately, seen it.  Is there

12:02:05    15    an order attached to it?

16          MR. VARNADO:  There is, Judge.  There is a

17    protective order attached to the submission.

18          THE COURT:  Okay.  Then Docket Entry Number 133

19    is granted and the protective order will be entered this

12:02:18    20    afternoon.

21          Thank you, Mr. Bourget, for bringing that

22    up.

23          MR. VARNADO:  Thank you.

24          THE COURT:  Is there anything else we need to

12:02:24    25    talk about this morning?

1     MR. SMITH:  I believe that's it, Your Honor.

2     THE COURT:  Okay, everyone.

3     MR. VARNADO:  We are done for today.

4     THE COURT:  Okay.  Well, stay safe, be well,

12:02:33 5 and I will see you all at our next status conference.

6     MR. VARNADO:  Thank you, Judge.

7     THE COURT:  Thanks, everyone.  Good-bye.

8 (Concluded at 12:02 p.m.)

9     COURT REPORTER'S CERTIFICATE

10

11  I, Kathleen K. Miller, certify that the foregoing is a

12 correct transcript from the record of proceedings in the

13 above-entitled matter.

14

15 DATE: Sept. 18, 2021   /s/  _Kathleen K. Miller

16         Kathleen K. Miller, RPR, RMR, CRR

17

18

19

20

21

22

23

24

25

## $

**$25** [1] - 50:23

## /

**/s** [1] - 66:15

## 1

**1** [2] - 1:12
**10281** [1] - 2:16
**105** [1] - 38:20
**10:30** [1] - 6:18
**10:31** [1] - 1:5
**10th** [3] - 36:16, 45:6, 45:10
**11** [2] - 46:21, 55:10
**1111** [1] - 2:3
**113** [1] - 38:20
**11:20** [1] - 38:8
**11:25** [1] - 38:8
**11th** [1] - 33:6
**12** [2] - 6:18, 25:2
**122** [1] - 38:20
**12:02** [1] - 66:8
**13** [2] - 1:6, 50:3
**130** [1] - 10:25
**133** [3] - 65:10, 65:13, 65:18
**15** [1] - 62:7
**150** [2] - 1:19, 1:24
**15th** [8] - 7:9, 7:11, 7:16, 7:20, 61:16, 61:17, 62:1, 62:8
**16** [1] - 3:2
**1682** [1] - 23:25
**16th** [2] - 45:7, 49:23
**17** [7] - 10:17, 11:12, 13:25, 14:5, 43:7, 45:12, 47:2
**17(c** [2] - 12:10, 50:6
**17(c)** [1] - 7:25
**17th** [1] - 21:22
**18** [4] - 5:10, 32:7, 48:2, 66:15
**18th** [3] - 5:1, 5:23, 7:7
**1970** [1] - 29:23
**1972** [1] - 24:10
**1st** [3] - 5:24, 7:6, 32:3

## 2

**2** [1] - 32:4
**20** [2] - 6:18, 6:19
**20002** [2] - 1:20, 1:24
**20006e** [1] - 2:8
**2001** [1] - 2:7
**2004** [1] - 58:18
**2010** [3] - 41:24, 55:2, 58:18
**2017** [1] - 59:11
**2019** [1] - 28:6
**202-514-9623** [1] - 1:20
**202-532-3624** [1] - 1:25
**202-887-400** [1] - 2:8

**2020** [1] - 11:2
**2021** [7] - 1:6, 3:2, 23:10, 32:12, 33:6, 49:23, 66:15
**212-326-3939** [1] - 2:17
**21st** [1] - 50:1
**2208** [1] - 1:19
**22nd** [4] - 21:20, 21:25, 23:4, 23:9
**24th** [1] - 33:8
**250** [1] - 2:16
**28th** [1] - 45:20
**29th** [1] - 45:16

## 3

**30** [2] - 45:18, 45:24
**31st** [1] - 33:6
**3300** [1] - 2:12
**37** [1] - 46:12
**3:30** [1] - 6:19

## 4

**4-21-CR-9** [1] - 3:7
**42** [2] - 9:1, 14:3
**4241** [10] - 19:16, 24:9, 25:8, 25:13, 25:16, 25:18, 29:9, 29:16, 36:24, 46:23
**4241(b** [1] - 32:8
**4247** [3] - 19:16, 29:9, 29:16
**4247(b)** [1] - 32:8
**4247(c** [1] - 32:10
**44** [2] - 9:1, 14:2
**44th** [1] - 2:4
**45** [2] - 21:25, 22:5
**46** [1] - 13:7
**48** [1] - 22:13
**49** [1] - 22:13
**4:21-CR-09** [1] - 1:3

## 5

**515** [1] - 2:21
**59** [2] - 22:24, 36:16
**5:00** [1] - 6:20
**5:15** [1] - 6:20

## 6

**6** [1] - 32:9
**6002** [3] - 48:2, 48:4, 60:13

## 7

**70** [1] - 45:17
**702** [3] - 25:8, 25:17, 37:4
**703** [2] - 25:17, 37:4
**713-250-2177** [1] - 2:5
**713-250-5087** [1] - 2:22
**717** [1] - 2:11
**77** [1] - 43:2

**77002** [3] - 2:4, 2:12, 2:21
**7th** [1] - 32:12

## 8

**8004** [1] - 2:21
**81** [2] - 18:24, 38:16
**832-239-3694** [1] - 2:13
**84** [2] - 40:8, 40:16
**86** [2] - 40:8, 40:16
**89** [2] - 18:24, 38:16

## 9

**94** [2] - 18:24, 38:16
**9:00** [1] - 6:17

## A

**a.m** [1] - 1:5
**abandoned** [1] - 29:17
**ability** [7] - 9:13, 50:14, 53:23, 55:16, 57:10, 58:15, 60:2
**able** [6] - 5:8, 38:25, 59:14, 61:24, 63:6, 65:11
**abnormal** [1] - 33:17
**above-entitled** [1] - 66:13
**access** [1] - 27:15
**according** [1] - 45:15
**acknowledged** [1] - 59:24
**act** [3] - 31:16, 36:4, 40:2
**acted** [4] - 20:7, 20:10, 28:23, 28:25
**acting** [4] - 31:15, 32:16, 32:20, 47:14
**activity** [1] - 33:17
**acts** [1] - 31:22
**actual** [1] - 5:18
**add** [4] - 8:1, 35:23, 47:14, 53:5
**added** [1] - 17:2
**addition** [1] - 8:1
**additional** [5] - 9:6, 14:4, 17:8, 26:18, 33:17
**address** [12] - 19:3, 20:22, 20:24, 21:13, 24:4, 24:8, 26:25, 35:5, 52:25, 61:20, 62:24, 64:11
**addressed** [1] - 19:25
**addressing** [1] - 47:25
**adhere** [1] - 63:5
**administrative** [4] - 43:12, 46:9, 46:18, 60:22
**admission** [2] - 28:24, 62:18
**admits** [2] - 45:8, 45:14
**admitted** [4] - 20:10, 32:24, 42:11, 42:25
**advance** [5] - 32:4, 35:14, 40:10, 46:2, 64:5
**Advance** [2] - 18:23, 38:15
**advice** [5] - 43:24, 44:25, 47:13, 47:14, 60:9
**advisement** [1] - 61:4
**afford** [1] - 36:5

**afternoon** [3] - 53:9, 64:15, 65:20
**agenda** [1] - 10:21
**agent** [1] - 30:17
**agents** [5] - 28:18, 30:14, 30:16, 31:3, 32:16
**ago** [2] - 8:10, 14:2
**agree** [3] - 39:25, 42:12, 60:15
**agreed** [4] - 5:6, 23:8, 30:22, 65:8
**agreement** [6] - 41:1, 41:6, 41:14, 42:5, 42:16, 65:11
**agreements** [2] - 41:8, 41:13
**ahead** [2] - 38:11, 42:19
**Akin** [3] - 2:3, 2:7, 42:9
**Alaska** [1] - 51:2
**alignment** [1] - 11:10
**allegation** [1] - 27:17
**alleging** [1] - 58:17
**allow** [1] - 20:19
**allowed** [1] - 29:18
**allowing** [2] - 63:16
**allows** [1] - 20:17
**alternative** [1] - 9:20
**Alzheimer's** [2] - 33:15, 33:19
**ambiguous** [1] - 44:19
**Amendment** [23] - 43:25, 44:10, 44:14, 44:15, 44:25, 47:15, 47:19, 47:21, 48:2, 48:7, 48:12, 48:17, 48:19, 48:21, 48:22, 52:4, 52:9, 52:17, 52:20, 57:3, 60:8, 62:21
**America** [1] - 3:7
**AMERICA** [1] - 1:3
**amount** [4] - 52:24, 58:19, 62:22
**anesthesia** [1] - 33:8
**answer** [3] - 18:14, 56:10, 56:11
**answered** [1] - 60:16
**anticipation** [1] - 6:5
**apart** [1] - 29:11
**apologize** [1] - 17:1
**appealed** [1] - 29:16
**appear** [4] - 36:23, 44:23, 48:24, 51:25
**appearance** [2] - 43:23, 47:12
**APPEARANCES** [1] - 1:15
**appearing** [1] - 3:20
**appellate** [1] - 39:17
**applicable** [1] - 35:25
**apply** [1] - 44:22
**appoint** [11] - 5:19, 26:1, 26:2, 26:9, 26:13, 26:20, 30:4, 36:3, 37:6, 39:7
**appointed** [4] - 5:17, 27:14, 36:6, 38:22
**appointing** [1] - 38:23
**appointment** [4] - 5:16, 19:12, 20:22, 36:21
**Appointment** [1] - 38:17
**appreciate** [3] - 4:5, 42:25, 62:6
**appropriate** [5] - 9:18, 15:8, 16:6, 16:20, 43:11
**arguably** [2] - 21:10, 22:21
**argue** [3] - 8:2, 10:14, 57:4
**argued** [1] - 11:12

**arguing** [2] - 10:23, 41:3
**argument** [14] - 10:15, 29:17, 37:16, 39:11, 39:16, 39:20, 50:15, 51:16, 51:19, 51:21, 52:7, 52:8, 52:12, 52:24
**arguments** [3] - 17:5, 17:7, 61:3
**Article** [1] - 49:10
**aside** [2] - 33:11
**aspect** [1] - 43:21
**assert** [6] - 14:25, 44:10, 47:15, 48:12, 48:19, 60:8
**asserted** [3] - 13:2, 14:3, 15:9, 15:12, 43:24
**asserting** [7] - 13:14, 13:16, 13:19, 14:25, 44:14, 44:25, 47:19
**assertion** [2] - 9:19, 14:8
**assess** [1] - 63:11
**assisted** [1] - 2:24
**associates** [1] - 10:5
**assuming** [3] - 6:17, 7:2, 19:15
**attached** [3] - 16:24, 65:15, 65:17
**attachments** [1] - 18:8
**attack** [1] - 34:16
**attention** [4] - 6:11, 22:5, 22:23, 62:3
**attorney** [5] - 21:9, 23:20, 37:14, 59:4
**attorney/client** [2] - 14:9, 15:2
**attorneys** [6] - 9:3, 9:5, 10:7, 12:7, 13:4, 36:5
**August** [2] - 8:11, 45:20
**authenticity** [3] - 63:10, 63:17, 63:23
**author** [2] - 43:9, 47:5
**authority** [11] - 23:23, 23:24, 25:6, 29:10, 29:13, 29:15, 29:24, 31:16, 31:23, 31:25, 38:25
**available** [3] - 5:1, 7:9, 56:9
**avoid** [1] - 19:8
**aware** [2] - 10:11, 40:12

# B

**background** [1] - 49:20
**based** [7] - 6:23, 24:12, 24:19, 34:16, 36:9, 63:12, 63:13
**baseline** [3] - 34:3, 34:5, 34:8
**basic** [1] - 47:16
**basis** [5] - 30:24, 44:14, 47:19, 48:9, 57:24
**batten** [1] - 64:15
**Baylor** [1] - 43:4
**bear** [1] - 47:23
**bearing** [1] - 48:15
**beast** [1] - 16:4
**become** [1] - 44:3
**becoming** [1] - 46:5
**BEFORE** [1] - 1:10
**began** [1] - 10:23
**begin** [2] - 4:16, 49:19
**behalf** [3] - 3:12, 3:16, 56:5
**behold** [1] - 23:13
**benefit** [4] - 19:19, 26:5, 30:6, 61:22

**Bermuda** [1] - 50:25
**best** [3] - 15:14, 35:9, 51:21
**better** [1] - 26:5
**between** [23] - 6:20, 9:4, 9:9, 9:14, 12:6, 13:3, 13:6, 14:7, 19:10, 21:7, 21:9, 23:19, 24:5, 26:18, 33:6, 33:12, 41:9, 58:25, 59:9, 59:11, 59:15, 63:19
**beyond** [6] - 15:1, 42:15, 47:16, 60:4, 60:22
**bias** [7] - 50:21, 55:24, 56:1, 56:4, 56:20, 56:21, 56:24
**blanket** [1] - 15:2
**Block** [2] - 2:2, 42:10
**block** [1] - 6:9
**blunt** [1] - 44:1
**body** [4] - 54:4, 55:2, 57:9, 59:15
**BOP** [4] - 28:16, 28:21, 28:22, 31:9
**Boris** [3] - 1:22, 3:13, 41:3
**boris.bourget@usdoj.gov** [1] - 1:25
**bottom** [2] - 35:12, 52:16
**Bourget** [11] - 1:22, 3:13, 41:3, 41:5, 42:21, 49:18, 56:19, 57:18, 59:23, 65:21
**BOURGET** [17] - 41:15, 41:17, 49:19, 51:14, 51:24, 53:4, 53:17, 54:16, 55:15, 57:1, 57:16, 57:20, 58:11, 59:7, 61:12, 65:1, 65:4
**Bourget's** [1] - 56:13
**brain** [5] - 33:10, 33:14, 33:17, 33:23, 33:25
**breaching** [1] - 59:3
**break** [3] - 6:17, 6:19
**brief** [4] - 17:25, 18:15, 29:3, 43:1
**briefed** [1] - 52:1
**briefing** [4] - 16:9, 16:17, 16:18, 16:21
**briefly** [5] - 10:14, 24:4, 37:17, 45:2, 47:11
**briefs** [1] - 37:21
**bright** [1] - 24:3
**bright-line** [1] - 24:3
**bring** [4] - 18:9, 62:3, 62:19, 64:6
**bringing** [1] - 65:21
**broad** [3] - 47:2, 51:17, 59:15
**BROCKMAN** [1] - 1:6
**Brockman** [59] - 3:8, 3:17, 3:19, 3:22, 5:13, 9:4, 9:9, 9:15, 10:6, 12:6, 13:6, 13:19, 22:15, 25:4, 30:15, 33:7, 33:8, 33:10, 41:21, 41:23, 41:25, 50:14, 50:17, 50:18, 50:19, 50:22, 50:23, 51:1, 51:3, 51:5, 51:9, 53:23, 53:25, 54:2, 54:5, 54:19, 54:24, 55:16, 55:19, 55:23, 55:25, 56:6, 56:8, 56:14, 57:6, 57:7, 57:9, 57:12, 58:13, 58:16, 58:20, 58:25, 59:1, 59:9, 59:11, 59:16, 60:7, 60:21
**Brockman's** [11] - 4:13, 9:7, 12:19, 13:1, 13:2, 25:4, 53:1, 54:21, 55:1, 59:25, 60:2
**brought** [1] - 54:10
**built** [1] - 37:16

**bully** [3] - 44:1, 46:5, 48:13
**burden** [3] - 31:19, 46:25, 47:21
**bye** [1] - 66:7

# C

**calculations** [1] - 6:6
**calendar** [1] - 10:20
**camera** [8] - 9:22, 15:10, 15:15, 16:7, 16:9, 17:12, 18:4, 24:19
**Camp** [1] - 3:19
**cannot** [4] - 27:20, 36:5, 47:1, 52:3
**care** [2] - 4:2, 4:5
**career** [1] - 4:4
**careful** [2] - 15:24, 16:5
**carefully** [1] - 19:14
**Carolina** [1] - 27:5
**case** [31] - 3:6, 6:2, 6:4, 6:16, 6:23, 7:3, 18:6, 24:10, 24:12, 24:15, 24:17, 24:20, 27:12, 27:16, 27:24, 28:14, 29:4, 29:13, 29:14, 31:19, 31:20, 35:10, 39:23, 40:4, 43:3, 45:16, 46:12, 46:18, 46:22, 50:15, 50:25
**cases** [15] - 14:14, 28:6, 29:12, 29:21, 29:23, 29:24, 35:22, 35:25, 37:1, 39:21, 39:22, 40:1, 48:14, 48:15, 48:16
**category** [1] - 58:12
**center** [1] - 56:16
**certain** [4] - 53:9, 62:2, 62:22, 63:17
**certainly** [1] - 6:6
**certainty** [1] - 34:9
**CERTIFICATE** [1] - 66:9
**certified** [1] - 32:6
**certify** [1] - 66:11
**chain** [1] - 14:16
**challenge** [1] - 9:19
**chambers** [2] - 18:10, 18:13
**chance** [3] - 11:6, 61:15, 62:1
**change** [1] - 50:2
**characterization** [1] - 42:13
**charitable** [1] - 56:15
**check** [2] - 7:17, 58:22
**checked** [1] - 4:24
**chosen** [1] - 21:12
**chronology** [1] - 45:3
**chunk** [1] - 55:5
**Circuit** [12] - 24:11, 27:10, 27:19, 27:22, 27:23, 27:24, 28:2, 29:4, 29:19, 29:24, 52:1, 52:16
**Circuits** [1] - 27:4
**circumstances** [1] - 44:19
**cite** [2] - 31:19, 44:16
**cited** [3] - 29:3, 35:22, 39:21
**cites** [3] - 29:2, 48:14, 48:16
**citing** [2] - 28:6, 29:22
**citizen** [1] - 49:15
**citizens** [3] - 9:4, 49:11
**civilians** [1] - 12:7

**claim** [2] - 34:13, 57:2
**claimed** [1] - 9:2
**claiming** [5] - 8:15, 9:16, 12:8, 52:4, 57:11
**claims** [1] - 58:13
**clarification** [1] - 12:18
**cleaned** [1] - 56:17
**clear** [14] - 8:23, 20:25, 24:20, 31:25, 32:4, 33:1, 33:4, 43:7, 47:9, 52:2, 52:11, 54:15, 57:21, 61:18
**cleared** [1] - 5:25
**clearly** [1] - 59:14
**client** [1] - 23:20
**cloak** [1] - 31:14
**close** [7] - 24:25, 34:14, 50:16, 50:21, 54:1, 54:24, 55:19
**closeness** [1] - 34:16
**closer** [1] - 63:3
**clued** [1] - 59:12
**Code** [1] - 32:8
**cognitive** [3] - 32:24, 51:5, 58:15
**colleague** [3] - 3:19, 10:14, 19:3
**colleagues** [4] - 3:13, 3:18, 7:12, 42:10
**collect** [1] - 47:2
**collection** [1] - 47:2
**College** [1] - 43:4
**coming** [2] - 5:7, 12:19
**comment** [2] - 15:20, 24:8
**commitments** [2] - 4:25, 5:9
**committed** [1] - 48:6
**common** [11] - 9:12, 9:14, 12:8, 12:15, 14:9, 14:10, 15:3, 16:10, 16:18, 16:20
**communicated** [4] - 47:12, 53:11, 53:25, 54:25
**communication** [1] - 60:19
**communications** [8] - 13:3, 19:10, 20:16, 23:18, 30:10, 37:13, 43:16, 46:11
**company** [1] - 8:17
**compel** [4] - 40:10, 40:11, 49:14, 60:9
**Compel** [2] - 18:23, 38:15, 40:7
**compelling** [1] - 47:11
**competence** [1] - 47:3
**Competency** [2] - 18:24, 38:15
**competency** [26] - 4:9, 4:18, 5:4, 19:22, 24:12, 24:16, 24:22, 25:1, 25:3, 25:4, 26:6, 32:3, 36:11, 44:9, 46:22, 50:2, 51:11, 51:12, 51:19, 51:23, 53:22, 55:9, 56:22, 56:23, 58:3, 59:11
**competent** [4] - 23:12, 50:16, 54:6, 57:13
**complete** [3] - 42:2, 54:4, 55:2
**completely** [2] - 21:15, 39:9
**compliance** [5] - 8:5, 8:11, 8:13, 42:14
**complied** [4] - 11:22, 12:25, 47:6, 55:5
**compose** [1] - 60:2
**computer** [1] - 2:24
**Computer** [7] - 8:8, 8:18, 8:25, 12:2, 12:22, 12:23, 13:20

**computer-assisted** [1] - 2:24
**Computers** [1] - 12:12
**concern** [1] - 11:1
**concerned** [2] - 42:1, 64:4
**concerns** [1] - 18:18
**concession** [1] - 45:4
**conclude** [1] - 25:24
**concluded** [1] - 49:10
**Concluded** [1] - 66:8
**conduct** [7] - 19:17, 27:7, 28:17, 31:10, 38:25, 62:17
**conducted** [3] - 28:22, 33:5, 39:1
**conference** [6] - 4:8, 34:1, 34:12, 63:2, 64:23, 66:5
**CONFERENCE** [1] - 1:9
**conferred** [1] - 5:21
**confident** [1] - 35:10
**confirm** [1] - 62:8
**confirmation** [1] - 62:9
**confirmed** [1] - 61:15
**conflating** [1] - 36:25
**conflict** [1] - 7:13
**conflicts** [1] - 5:23
**confront** [1] - 48:18
**confused** [1] - 11:15
**Congress** [1] - 47:24
**connection** [1] - 14:4
**consented** [1] - 30:22
**considering** [1] - 54:5
**consistent** [1] - 54:19
**construe** [1] - 31:24
**consultations** [1] - 46:13
**contacted** [1] - 49:2
**contemplation** [1] - 19:11
**contends** [1] - 47:17
**contention** [1] - 46:20
**context** [2] - 29:12, 31:22
**contexts** [1] - 31:21
**continue** [4] - 6:18, 6:19, 20:14, 33:1
**continuity** [1] - 50:5
**contrary** [1] - 23:24
**control** [1] - 31:10
**controls** [1] - 31:10
**conversation** [1] - 19:5
**conversations** [1] - 23:6
**convicted** [1] - 24:23
**conviction** [2] - 24:11, 24:23
**convictions** [1] - 27:11
**cooperating** [2] - 44:3, 46:5
**coordinate** [1] - 53:16
**copies** [2] - 20:1, 32:17
**copy** [2] - 38:4, 65:14
**Corey** [2] - 1:17, 3:11
**corey.smith@usdoj.gov** [1] - 1:21
**correct** [7] - 15:11, 17:23, 40:13, 40:22, 51:14, 51:24, 66:12
**correctly** [1] - 40:21
**correspondence** [1] - 59:25
**Counsel** [4] - 3:5, 3:23, 38:9, 61:11

**counsel** [37] - 3:8, 4:13, 8:15, 8:21, 9:7, 9:10, 9:11, 12:20, 12:23, 13:1, 13:2, 13:19, 21:18, 21:24, 22:1, 22:7, 22:17, 23:3, 23:8, 23:13, 24:10, 24:21, 25:1, 25:7, 25:25, 32:12, 41:19, 42:6, 43:23, 43:24, 44:25, 47:13, 47:14, 54:20, 60:7, 60:9, 61:3
**counsel's** [5] - 22:19, 26:3, 26:7, 53:1, 53:2
**couple** [4] - 5:7, 5:13, 61:6, 61:24
**course** [7] - 4:19, 11:4, 17:5, 30:4, 30:11, 45:25, 52:12
**COURT** [75] - 1:1, 2:19, 3:5, 3:14, 3:22, 4:22, 5:2, 5:11, 6:8, 7:16, 9:25, 10:4, 10:8, 11:14, 12:12, 12:21, 13:8, 13:13, 13:21, 15:13, 16:15, 16:25, 17:3, 17:9, 17:22, 17:24, 18:18, 18:22, 19:7, 20:5, 20:24, 26:11, 26:23, 27:1, 35:17, 37:19, 38:3, 38:9, 40:15, 40:24, 41:5, 41:16, 42:6, 42:18, 42:24, 49:17, 51:6, 51:15, 52:6, 53:14, 54:9, 55:7, 56:3, 56:18, 57:17, 58:8, 58:22, 59:17, 61:2, 61:11, 61:13, 62:5, 62:14, 63:1, 64:2, 64:14, 64:21, 65:3, 65:13, 65:18, 65:24, 66:2, 66:4, 66:7, 66:9
**Court** [87] - 3:9, 5:19, 9:17, 9:21, 11:6, 17:7, 17:10, 17:12, 18:2, 18:3, 19:6, 19:19, 20:1, 20:17, 20:19, 20:21, 21:14, 22:11, 22:16, 22:17, 22:25, 23:1, 24:19, 25:13, 26:1, 26:4, 26:5, 26:17, 27:7, 27:8, 27:11, 27:13, 27:14, 28:8, 28:18, 29:15, 30:5, 30:23, 31:13, 31:14, 31:22, 32:15, 32:17, 34:2, 34:10, 34:12, 34:19, 35:4, 35:14, 35:21, 36:2, 36:8, 36:15, 36:18, 38:17, 38:18, 40:6, 43:6, 43:10, 44:7, 44:17, 45:3, 45:5, 45:8, 45:11, 45:16, 46:2, 46:7, 47:8, 48:1, 48:3, 48:15, 48:20, 49:12, 53:18, 54:5, 60:10, 60:18, 60:25, 62:17, 62:22, 62:24, 63:11, 65:8
**court** [15] - 5:17, 29:7, 29:24, 31:1, 34:1, 38:23, 39:8, 39:13, 39:15, 39:24, 40:2, 40:3, 48:11, 52:23
**Court's** [16] - 3:6, 6:7, 10:16, 20:23, 22:5, 22:23, 22:24, 26:25, 31:15, 32:2, 34:4, 36:24, 37:5, 39:5, 60:14, 60:15
**court-appointed** [1] - 5:17
**court-designated** [6] - 39:8, 39:13, 39:15, 39:24, 40:2, 40:3
**courthouse** [5] - 44:5, 44:23, 52:14, 52:20, 53:6
**courts** [1] - 27:5
**Courts** [1] - 49:11
**credibility** [1] - 63:12
**crimes** [1] - 58:7
**criminal** [3] - 10:10, 51:10, 51:18
**Criminal** [1] - 23:25
**cross** [1] - 7:2
**cross-examination** [1] - 7:2

**CRR** [2] - 2:20, 66:16
**CSR** [1] - 2:20
**cure** [1] - 47:1
**custodial** [1] - 7:5
**custodian** [1] - 63:6
**custodians** [1] - 62:19
**cut** [1] - 37:19

# D

**dance** [2] - 15:21, 16:1
**Darby** [6] - 22:8, 22:18, 22:25, 23:5, 23:16, 38:19
**data** [3] - 30:5, 34:23, 35:9
**DATE** [1] - 66:15
**date** [5] - 4:25, 8:12, 50:2, 62:11, 63:3
**dated** [1] - 45:6
**dates** [4] - 4:20, 4:22, 11:2, 35:6
**days** [14] - 6:3, 6:13, 6:24, 7:4, 17:20, 17:22, 17:25, 18:15, 44:5, 45:14, 45:18, 45:24, 53:7, 53:13
**DC** [5] - 1:20, 1:24, 2:8, 29:4, 29:19
**deal** [1] - 52:22
**dealing** [4] - 11:1, 37:1, 50:8, 52:15
**dealt** [2] - 40:9
**death** [2] - 29:12, 31:22
**decide** [2] - 35:15, 52:3
**decided** [1] - 20:6
**decides** [1] - 44:6
**decision** [4] - 26:8, 26:18, 37:25, 39:13
**declines** [1] - 58:4
**DEFENDANT** [1] - 2:9
**defendant** [18] - 19:18, 19:21, 21:18, 22:12, 23:11, 24:22, 25:1, 25:8, 25:15, 27:13, 29:7, 32:5, 36:10, 36:18, 36:19, 37:2, 46:12, 48:17
**Defendant** [1] - 3:4
**Defendant's** [3] - 18:23, 38:14, 38:17
**defendant's** [4] - 19:21, 22:19, 35:5, 40:9
**defendants** [4] - 10:9, 22:1, 28:16, 36:5
**defense** [32] - 5:5, 6:2, 7:8, 8:15, 8:21, 9:11, 21:18, 21:24, 22:1, 22:7, 22:16, 22:17, 23:3, 23:8, 23:12, 24:10, 24:17, 24:21, 25:1, 25:7, 25:25, 26:3, 26:7, 27:8, 33:20, 34:13, 34:25, 39:1, 55:21, 59:9, 59:14, 65:4
**defer** [1] - 6:3
**definition** [1] - 31:11
**degree** [1] - 34:9
**delay** [1] - 34:18
**deliberations** [1] - 23:22
**deliberative** [1] - 21:11
**delicate** [1] - 15:25
**delirium** [5] - 33:7, 33:24, 34:14, 34:17, 35:1
**denied** [4] - 24:21, 38:21, 39:19, 40:5
**Denney** [8] - 22:8, 22:18, 22:25, 23:5, 23:16, 28:20, 30:19, 38:19
**denying** [1] - 25:3

**Department** [2] - 1:18, 1:23
**describe** [1] - 48:5
**described** [1] - 14:6
**describes** [1] - 15:3
**description** [4] - 14:7, 14:24, 15:5
**designate** [1] - 25:14
**Designated** [1] - 38:18
**designated** [18] - 19:17, 22:25, 27:7, 27:25, 28:3, 28:7, 31:13, 32:16, 36:16, 37:10, 38:23, 39:8, 39:13, 39:15, 39:24, 40:2, 40:3
**designation** [3] - 28:13, 29:9, 31:24
**designed** [1] - 51:22
**detached** [9] - 19:18, 19:19, 28:1, 28:7, 28:18, 28:23, 29:5, 30:1, 32:1
**detail** [3] - 8:19, 9:14, 9:18
**detailed** [1] - 14:24
**determination** [2] - 9:22, 19:20
**determinations** [1] - 37:7
**determine** [3] - 15:10, 26:17, 54:5
**diagnosis** [1] - 51:5
**dialogue** [1] - 14:16
**Dietz** [6] - 22:8, 22:18, 22:25, 23:5, 23:16, 38:19
**different** [5] - 10:23, 11:11, 31:21, 37:1, 39:9
**difficult** [1] - 34:8
**diminished** [1] - 57:11
**diminishing** [2] - 58:14
**direct** [1] - 7:2
**directly** [5] - 18:13, 20:1, 27:12, 53:21, 57:10
**disagree** [2] - 21:15, 53:1
**disagreement** [1] - 63:9
**disclose** [1] - 15:25
**disclosed** [1] - 20:17
**discounts** [1] - 29:23
**discoverable** [5] - 20:18, 23:21, 24:3, 24:7, 37:14
**discovered** [1] - 49:6
**Discovery** [3] - 18:23, 38:15, 40:8
**discovery** [8] - 19:9, 20:7, 20:9, 20:15, 20:20, 40:10, 40:11, 40:16
**discretion** [1] - 37:5
**discuss** [3] - 19:6, 50:19, 53:10
**discussed** [2] - 24:2, 53:6
**discussing** [1] - 61:23
**discussion** [2] - 30:8, 53:7
**discussions** [1] - 57:25
**disease** [3] - 33:14, 33:16, 33:19
**disputed** [1] - 33:12
**disqualification** [1] - 19:13
**disregard** [1] - 52:4
**distinguished** [4] - 28:23, 35:21, 36:1, 39:22
**district** [3] - 27:4, 29:7, 29:24
**District** [1] - 28:5
**DISTRICT** [3] - 1:1, 1:1, 1:11
**DIVISION** [1] - 1:2

**Division** [2] - 1:18, 1:23
**docket** [3] - 3:6, 10:25, 61:18
**Docket** [12] - 21:25, 22:5, 22:24, 36:15, 38:16, 38:20, 40:8, 40:16, 45:17, 65:10, 65:13, 65:18
**docketed** [2] - 18:12, 65:9
**Dockets** [1] - 22:13
**doctors** [1] - 24:6
**document** [3] - 10:25, 46:8, 55:8
**Document** [2] - 10:25, 18:24
**documentation** [2] - 42:15, 47:7
**documents** [18] - 10:19, 11:19, 11:23, 12:5, 12:16, 13:15, 13:17, 14:3, 17:11, 18:3, 45:18, 45:24, 46:2, 51:7, 51:16, 54:11, 64:10
**DOJ** [1] - 29:16
**dollars** [2] - 55:25, 56:14
**donated** [1] - 50:23
**donations** [1] - 56:15
**done** [4] - 4:5, 18:5, 25:19, 66:3
**down** [8] - 14:15, 27:3, 33:2, 52:14, 52:20, 52:23, 64:6, 64:16
**Dr** [91] - 22:8, 22:18, 22:25, 23:5, 23:16, 28:20, 30:19, 38:19, 41:19, 41:22, 41:25, 42:1, 42:4, 42:7, 43:2, 43:13, 43:17, 43:23, 44:2, 44:12, 44:22, 45:23, 46:1, 46:10, 46:14, 46:16, 46:25, 47:6, 47:9, 47:12, 47:14, 47:17, 47:22, 48:6, 48:10, 48:24, 48:25, 49:13, 49:22, 49:25, 50:11, 50:16, 50:18, 50:19, 50:21, 50:24, 51:1, 51:4, 51:13, 51:25, 53:2, 53:6, 53:8, 53:11, 53:18, 53:24, 54:3, 54:13, 54:18, 54:20, 54:24, 55:19, 55:22, 56:5, 56:8, 56:15, 57:22, 58:1, 58:3, 58:25, 59:10, 59:12, 59:15, 59:22, 60:4, 60:6, 60:7, 60:19
**draft** [1] - 39:16
**drafted** [2] - 22:16, 23:2
**draw** [2] - 22:4, 22:23
**drive** [2] - 5:18, 65:6
**due** [4] - 5:9, 11:4, 17:4, 24:11
**duplication** [1] - 19:9
**during** [2] - 30:11, 49:1

## E

**e-mail** [6] - 14:16, 57:10, 59:5, 59:7, 59:11, 59:25
**e-mailing** [1] - 9:15
**e-mails** [58] - 8:9, 8:10, 8:14, 8:16, 8:17, 8:24, 9:1, 9:2, 9:3, 9:6, 9:7, 9:9, 9:21, 10:2, 12:6, 13:1, 13:3, 13:6, 14:7, 14:13, 14:14, 14:15, 15:4, 15:9, 20:16, 21:7, 24:5, 41:20, 41:22, 41:24, 46:13, 46:21, 50:14, 51:8, 51:12, 53:24, 54:2, 54:16, 54:21, 55:2, 55:5, 55:10, 55:16, 55:17, 57:9, 58:25, 59:1, 59:9, 59:13, 59:15, 59:21, 60:2, 60:17
**E.E.G** [1] - 33:17

**earliest** [1] - 4:25, 5:8
**early** [6] - 21:21, 45:7, 45:11, 45:15, 49:23, 58:17
**easier** [1] - 64:3
**Edward** [1] - 2:2
**effect** [1] - 60:11
**effective** [1] - 47:25
**effort** [4] - 44:1, 44:2, 46:4, 49:14
**eighty** [1] - 33:13
**eighty-year-old** [1] - 33:13
**either** [5] - 9:17, 14:9, 14:10, 26:19, 44:2
**elected** [1] - 48:4
**electronic** [1] - 43:16
**Email** [6] - 1:21, 1:21, 1:25, 2:5, 2:13, 2:17
**emergency** [1] - 4:2
**emeritus** [1] - 43:4
**employees** [1] - 13:8
**enacted** [1] - 47:21
**end** [3] - 7:13, 27:9, 33:12
**ends** [1] - 16:1
**enforce** [3] - 44:21, 48:17, 48:23
**engaging** [1] - 14:12
**ensnared** [1] - 44:19
**entered** [2] - 45:19, 65:19
**entire** [1] - 6:10
**entirely** [5] - 31:14, 31:20, 45:1, 45:25, 52:5
**entitled** [5] - 25:8, 37:12, 59:22, 66:13
**Entries** [3] - 38:16, 38:20, 40:8
**Entry** [3] - 18:24, 65:13, 65:18
**episode** [3] - 33:24, 34:14, 34:17
**erroneously** [1] - 45:8
**error** [9] - 20:12, 27:3, 30:1, 30:4, 33:2, 35:7, 37:11, 40:1
**especially** [2] - 57:5, 64:18
**essentially** [1] - 10:18
**establish** [1] - 15:11
**estimates** [1] - 6:13
**evaluating** [1] - 25:15
**evaluation** [2] - 36:17, 36:20
**event** [4] - 20:17, 31:11, 42:4, 64:18
**eventually** [2] - 19:11, 22:17
**Evidence** [3] - 25:12, 25:17, 37:4
**evidence** [9] - 26:16, 47:2, 51:10, 54:4, 57:12, 58:15, 62:18, 63:5, 63:13
**evidentiary** [1] - 63:22
**ex** [3] - 9:22, 24:18, 38:18
**exactly** [3] - 6:12, 12:1, 44:19
**examination** [18] - 7:2, 7:3, 19:18, 19:20, 27:14, 27:20, 27:21, 28:22, 29:5, 30:6, 30:12, 30:17, 30:24, 32:1, 34:15, 34:16, 35:13, 41:23
**examinations** [9] - 23:6, 23:7, 28:17, 30:13, 32:6, 33:5, 34:6, 34:14, 38:25
**examine** [2] - 22:15, 29:7, 29:18
**examined** [2] - 30:15, 50:18
**examiner** [3] - 27:6, 30:5, 32:9

**examiners** [2] - 32:16, 32:19
**exclude** [2] - 30:25, 38:18
**excluded** [1] - 36:12
**executed** [1] - 50:25
**exhibit** [1] - 59:10
**exhibits** [1] - 17:2
**existence** [1] - 49:7
**expectation** [1] - 6:7
**expected** [3] - 27:25, 28:7, 28:9
**expedited** [2] - 17:11, 40:20
**expert** [36] - 5:17, 19:5, 20:23, 21:3, 21:8, 21:22, 23:19, 24:2, 25:2, 25:5, 25:9, 25:10, 25:25, 26:2, 26:14, 26:20, 27:13, 27:15, 27:16, 28:3, 28:4, 28:7, 28:20, 28:23, 29:7, 29:18, 29:25, 31:9, 35:14, 36:3, 36:13, 36:21, 37:6, 39:14
**experts** [82] - 4:25, 5:19, 19:10, 19:12, 19:13, 19:17, 20:3, 20:4, 20:8, 20:10, 20:11, 20:18, 20:20, 21:10, 21:11, 21:13, 21:17, 21:20, 21:23, 22:2, 22:3, 22:9, 22:15, 22:19, 23:1, 23:2, 23:9, 23:10, 23:14, 23:17, 23:18, 24:9, 24:17, 25:14, 25:18, 25:22, 26:3, 26:7, 26:15, 26:19, 27:25, 28:11, 28:12, 28:16, 28:18, 28:19, 28:25, 29:1, 30:10, 31:6, 31:8, 31:18, 33:20, 34:9, 36:3, 36:4, 36:6, 36:11, 36:16, 36:20, 37:2, 37:3, 37:4, 37:7, 37:9, 37:11, 37:12, 37:13, 38:24, 39:2, 39:3, 39:6, 39:8, 39:15, 39:24, 40:2, 40:4
**Experts** [1] - 38:18
**experts'** [1] - 5:9
**explained** [2] - 12:13, 13:25
**explanation** [2] - 12:9, 14:20, 15:8
**explanations** [1] - 9:10
**extent** [4] - 30:7, 30:14, 57:21, 61:1
**extraordinarily** [1] - 34:7
**extreme** [1] - 48:8

## F

**faced** [1] - 48:18
**fact** [12] - 9:23, 20:7, 22:5, 23:7, 23:12, 23:20, 23:24, 24:12, 28:11, 31:5, 31:18, 45:10
**facts** [3] - 35:23, 36:2
**failed** [2] - 46:23, 49:21
**faked** [1] - 25:20
**fall** [2] - 25:18, 46:17
**far** [5] - 15:4, 25:24, 41:25, 48:5, 54:25
**fault** [1] - 57:22
**February** [7] - 21:22, 21:25, 22:7, 32:3, 49:22, 49:25, 50:1
**Federal** [4] - 23:25, 25:12, 25:16, 37:3
**federal** [1] - 16:11
**feign** [1] - 21:19
**feigned** [2] - 23:13, 25:21, 30:8
**feigning** [1] - 21:19
**Feld** [2] - 2:3, 2:7
**felony** [1] - 48:5

**Fifth** [27] - 27:4, 27:23, 27:24, 28:2, 29:24, 43:24, 44:10, 44:14, 44:15, 44:25, 47:15, 47:19, 47:21, 48:1, 48:6, 48:12, 48:19, 52:1, 52:4, 52:9, 52:16, 52:17, 52:19, 52:20, 57:2, 60:8
**figure** [1] - 6:12
**file** [5] - 11:10, 17:7, 17:25, 18:3, 32:11
**filed** [15] - 8:4, 10:24, 12:10, 15:7, 16:24, 19:11, 20:1, 22:12, 22:16, 32:22, 41:7, 49:24, 50:6, 65:5, 65:6
**final** [1] - 35:17
**finally** [1] - 49:8
**financial** [4] - 43:13, 46:9, 46:18, 60:22
**findings** [1] - 28:8
**fine** [1] - 57:20
**finish** [1] - 6:20
**First** [1] - 27:4
**first** [12] - 4:11, 5:22, 7:24, 13:2, 20:22, 21:2, 26:6, 43:6, 51:4, 52:22, 53:12, 59:10
**fishing** [1] - 51:1
**five** [9] - 6:24, 22:8, 23:15, 44:5, 45:9, 45:14, 52:14, 53:7, 53:12
**fix** [1] - 30:3
**fixed** [1] - 20:13
**flag** [1] - 65:7
**flip** [1] - 55:21
**flooding** [1] - 64:18
**Floor** [1] - 2:4
**floor** [3] - 19:1, 21:4, 42:20
**flush** [1] - 35:3
**focusing** [2] - 9:8, 58:24
**fold** [1] - 43:5
**follow** [5] - 12:10, 13:5, 25:12, 36:8, 38:13
**follow-up** [2] - 12:10, 13:5
**follows** [1] - 32:13
**footnote** [1] - 48:25
**FOR** [4] - 1:1, 1:16, 2:1, 2:9
**force** [1] - 44:3
**foregoing** [1] - 66:11
**form** [2] - 24:7, 25:16
**forth** [1] - 43:17
**forward** [5] - 4:6, 4:9, 20:6, 35:11, 61:18
**four** [7] - 14:4, 38:6, 44:5, 53:7, 53:12, 54:17
**fourth** [1] - 30:21
**Fourth** [1] - 62:21
**framing** [1] - 36:14
**frankly** [4] - 43:25, 44:13, 58:11, 58:15
**Fratus** [1] - 28:3
**Friday** [3] - 3:25, 4:1, 65:7
**friend** [4] - 50:17, 50:21, 54:1, 55:20
**friends** [2] - 54:25, 56:1
**front** [1] - 10:6
**full** [4] - 6:2, 6:3, 6:6, 42:13
**fully** [1] - 47:6
**functions** [1] - 28:3
**futile** [1] - 31:21

## G

**games** [2] - 35:8, 35:11
**gas** [1] - 64:16
**general** [1] - 33:8
**GEORGE** [1] - 1:10
**Giglio** [1] - 20:19
**given** [12] - 7:1, 8:13, 8:21, 9:24, 11:18, 12:24, 18:1, 24:21, 45:15, 54:12, 56:14, 58:13
**goal** [1] - 18:14
**good-bye** [1] - 66:7
**government** [123] - 3:10, 4:12, 4:18, 4:20, 9:19, 11:11, 15:6, 19:10, 19:24, 20:3, 20:4, 20:10, 20:17, 21:8, 21:9, 21:12, 21:13, 21:22, 21:23, 22:3, 22:9, 22:14, 22:19, 23:1, 23:2, 23:10, 23:14, 23:17, 23:21, 23:24, 24:5, 24:17, 25:5, 25:10, 25:17, 26:6, 26:13, 27:2, 28:10, 28:12, 28:16, 28:25, 29:2, 29:3, 29:6, 30:9, 30:12, 30:22, 30:25, 31:2, 31:4, 31:6, 31:8, 31:9, 31:17, 32:21, 32:22, 32:24, 33:5, 33:16, 34:9, 34:11, 34:13, 34:20, 34:23, 36:12, 36:16, 36:20, 37:3, 37:13, 39:4, 41:3, 41:4, 41:20, 42:1, 43:9, 43:15, 43:18, 44:4, 44:6, 44:13, 44:21, 45:4, 45:7, 45:14, 45:21, 46:4, 46:23, 47:1, 47:5, 47:13, 47:17, 47:18, 47:24, 48:2, 48:14, 48:16, 48:20, 48:21, 48:22, 49:1, 49:2, 49:6, 49:11, 49:13, 50:10, 55:6, 56:9, 57:1, 58:2, 58:5, 58:16, 58:24, 59:6, 59:13, 59:24, 60:9, 60:18, 65:4
**Government** [2] - 37:8, 37:10
**GOVERNMENT** [1] - 1:16
**government's** [21] - 6:4, 7:24, 15:10, 19:13, 21:6, 22:1, 22:6, 23:9, 25:14, 26:2, 28:20, 32:4, 34:6, 34:25, 35:3, 40:15, 42:12, 43:8, 45:17, 46:20, 57:22
**Government's** [1] - 40:7
**Grand** [5] - 14:1, 46:23, 49:1, 49:4
**grant** [2] - 48:3, 60:25
**granted** [3] - 45:16, 45:23, 65:19
**grants** [1] - 60:10
**great** [3] - 5:11, 40:24, 64:14
**guess** [4] - 4:1, 11:14, 13:13
**Gump** [3] - 2:3, 2:7, 42:9
**gut** [1] - 33:25
**guys** [4] - 26:16, 39:17, 64:4, 64:7

## H

**hac** [2] - 42:11, 43:1
**half** [1] - 7:4
**hall** [1] - 53:15
**handle** [1] - 18:10
**handling** [1] - 41:4
**hangs** [1] - 28:10
**HANKS** [1] - 1:10

**happy** [3] - 20:14, 50:10, 53:10
**harass** [1] - 48:12
**harassment** [1] - 52:13
**hard** [1] - 65:6
**hat** [1] - 28:10
**hate** [1] - 46:3
**Hauer** [2] - 2:3, 2:7
**head** [1] - 8:12
**health** [3] - 54:1, 54:22, 55:1
**hear** [7] - 4:20, 26:6, 26:7, 26:17, 37:23, 55:8, 55:14
**heard** [6] - 4:1, 10:17, 26:11, 39:10, 44:17, 57:19
**Hearing** [2] - 18:24, 38:15
**hearing** [39] - 4:7, 4:9, 4:18, 5:4, 5:18, 9:5, 12:3, 24:12, 24:16, 24:22, 25:1, 25:3, 25:4, 26:6, 32:3, 32:5, 35:8, 35:14, 36:12, 39:12, 40:10, 40:19, 40:20, 43:1, 44:9, 46:2, 46:22, 50:3, 53:13, 53:22, 55:9, 56:23, 58:3, 61:25, 62:17, 63:3, 63:12, 64:12
**hearings** [5] - 5:10, 62:20, 62:21
**hearsay** [6] - 62:18, 62:22, 63:10, 63:16, 63:23
**help** [2] - 16:3, 37:7
**helpful** [4] - 15:19, 16:3, 54:4, 63:25
**hire** [2] - 25:8, 25:10
**hired** [4] - 25:2, 37:2, 37:3, 39:3
**hold** [1] - 38:3
**Holding** [1] - 8:18
**Honor** [66] - 3:11, 3:16, 4:17, 5:12, 6:25, 7:11, 8:3, 10:3, 10:12, 10:13, 12:1, 12:19, 13:22, 16:13, 16:22, 18:20, 19:8, 21:5, 24:4, 24:13, 24:25, 25:7, 25:23, 26:5, 26:8, 26:10, 28:15, 32:13, 34:2, 35:13, 35:19, 37:15, 38:2, 40:13, 40:23, 41:2, 41:15, 42:8, 42:22, 43:22, 43:25, 44:20, 45:2, 46:3, 46:7, 47:4, 48:7, 48:25, 49:8, 49:16, 51:24, 53:4, 54:8, 56:7, 58:11, 58:15, 59:19, 61:10, 61:21, 62:13, 63:24, 64:13, 64:24, 64:25, 65:1, 66:1
**Honor's** [1] - 16:23
**HONORABLE** [1] - 1:10
**hospital** [1] - 33:21
**hospitalized** [1] - 33:7
**hour** [2] - 6:18, 62:10
**hours** [1] - 52:14
**housekeeping** [1] - 62:16
**Houston** [5] - 2:4, 2:12, 2:21, 42:11, 64:15
**HOUSTON** [1] - 1:2
**houston** [1] - 1:4
**huge** [1] - 31:25

## I

**identification** [1] - 47:16
**identified** [3] - 20:3, 21:22, 21:23
**III** [1] - 49:10

**imagination** [1] - 47:22
**immediate** [1] - 43:13
**immediately** [1] - 45:21
**immunity** [1] - 58:6
**immunize** [3] - 56:9, 60:11, 60:13
**immunized** [1] - 57:23
**immunizing** [1] - 57:24
**impact** [1] - 5:20
**impairment** [2] - 33:24, 34:1
**implying** [1] - 57:21
**importance** [1] - 60:17
**important** [4] - 45:3, 59:8, 59:13, 61:5
**importantly** [1] - 47:4
**IN** [1] - 1:1
**inadvertently** [2] - 16:5, 18:12
**inappropriate** [2] - 30:20, 31:15
**incarcerated** [1] - 28:15
**inclined** [1] - 5:19
**include** [3] - 9:3, 9:5, 14:7
**included** [2] - 8:14, 60:23
**including** [3] - 5:16, 22:13
**inconclusive** [2] - 34:24, 35:1
**inconsistent** [1] - 45:25
**inconvenience** [1] - 52:21
**incorrect** [2] - 43:8, 50:7
**indicate** [1] - 40:1
**indictment** [2] - 8:25, 51:10
**indigent** [1] - 36:4
**individual** [1] - 12:7
**individuals** [9] - 9:15, 10:1, 10:2, 10:4,
    13:8, 13:9, 39:11, 47:25, 59:2
**indulgence** [2] - 20:23, 26:25
**influenced** [1] - 34:25
**information** [19] - 9:24, 12:5, 14:18,
    14:19, 15:5, 15:22, 15:25, 16:23, 17:8,
    20:25, 26:18, 34:21, 51:11, 51:18,
    51:22, 59:5, 65:6
**informed** [3] - 26:8, 45:8, 49:3
**inherent** [2] - 29:10, 31:23
**innocent** [1] - 44:18
**input** [1] - 39:12
**inquiry** [2] - 31:1, 31:2
**instance** [4] - 48:16, 48:23, 49:6, 49:12
**intended** [1] - 47:20
**intent** [1] - 37:22
**interest** [10] - 9:12, 9:14, 12:9, 12:16,
    14:9, 15:3, 16:10, 16:18, 16:20
**interested** [1] - 60:1
**interim** [1] - 8:4
**internal** [2] - 21:10, 23:21
**interpretation** [3] - 36:9, 36:10, 43:8
**interpreting** [1] - 28:14
**interrupt** [1] - 56:4
**interrupted** [1] - 57:18
**interview** [4] - 30:18, 30:21, 30:24, 49:4
**introduce** [1] - 3:9
**investigation** [1] - 49:2
**invoice** [1] - 60:23
**involve** [1] - 60:21

**involved** [1] - 14:11
**involves** [1] - 14:2
**irrelevant** [1] - 46:21
**IRS** [1] - 30:17
**issue** [31] - 8:6, 8:7, 13:5, 14:17, 14:20,
    18:22, 22:21, 29:20, 31:18, 34:18,
    35:15, 38:1, 38:11, 39:5, 40:18, 50:5,
    50:9, 50:10, 50:13, 50:15, 51:19, 52:8,
    53:21, 53:24, 54:10, 55:17, 55:24,
    56:1, 57:10, 60:1
**issued** [3] - 50:1, 50:2, 50:6
**issues** [20] - 16:19, 33:11, 37:20, 42:17,
    50:12, 50:20, 51:5, 54:22, 58:21,
    61:22, 62:2, 62:12, 62:25, 63:9, 63:10,
    64:3, 64:7, 64:9, 64:10
**itself** [2] - 46:8, 47:5

**J**

**James** [2] - 2:14, 3:18
**Jason** [4] - 2:10, 3:17, 5:13, 56:7
**jloonam@jonesday.com** [1] - 2:17
**joined** [1] - 3:18
**Jones** [3] - 2:11, 2:15, 3:17
**JR** [1] - 1:10
**Judge** [14] - 5:17, 17:4, 17:21, 18:16,
    24:21, 26:21, 28:5, 32:25, 38:7, 57:15,
    63:25, 65:10, 65:16, 66:6
**JUDGE** [1] - 1:11
**judges** [1] - 29:11
**judgment** [1] - 46:11
**Julia** [1] - 3:19
**July** [3] - 34:1, 34:12, 45:16
**June** [9] - 21:20, 23:4, 23:9, 33:6, 33:8,
    45:7, 49:23, 50:1, 50:3
**jury** [2] - 62:23, 63:14
**Jury** [5] - 14:1, 14:2, 46:24, 49:1, 49:4
**Justice** [2] - 1:18, 1:23
**jvarnado@jonesday.com** [1] - 2:13

**K**

**Kathleen** [4] - 2:20, 66:11, 66:15, 66:16
**Kathryn** [1] - 2:15
**Kathy** [2] - 3:18, 10:14
**keep** [1] - 56:20
**KENEALLY** [4] - 13:22, 16:12, 17:17,
    17:20
**Keneally** [10] - 2:15, 3:18, 7:14, 10:14,
    13:11, 13:21, 15:14, 17:14, 17:16,
    30:18
**kept** [1] - 9:7
**kind** [1] - 62:4
**kkeneally@jonesday.com** [1] - 2:18
**known** [3] - 43:3, 49:1, 51:4
**knows** [2] - 48:21

**L**

**Langston** [1] - 1:17, 3:13

**language** [4] - 46:17, 47:4, 47:10, 50:9
**last** [8] - 8:7, 8:11, 9:6, 10:24, 37:16,
    58:9, 59:18, 61:25
**lasts** [2] - 7:2, 53:13
**late** [2] - 50:3, 65:6
**law** [14] - 4:3, 16:11, 19:17, 27:3, 27:18,
    27:21, 28:14, 29:2, 35:23, 47:20, 48:7,
    52:2, 52:10, 52:16
**lawsuit** [1] - 10:9
**lawyers** [4] - 14:15, 14:17, 15:20
**laying** [1] - 32:3
**lead** [1] - 33:25
**learned** [1] - 4:3
**least** [2] - 25:2, 64:7
**leave** [2] - 54:7, 63:4
**Lee** [2] - 1:17, 3:13
**lee.f.langston@usdoj.gov** [1] - 1:21
**legal** [4] - 16:19, 17:5, 17:7, 33:1
**legally** [2] - 31:11, 35:16
**length** [1] - 6:4
**lengthy** [1] - 54:2
**Lerner** [1] - 51:4
**letter** [10] - 8:7, 11:7, 12:10, 15:7, 16:24,
    17:6, 17:10, 17:25, 61:25, 65:12
**letting** [1] - 56:19
**level** [1] - 19:22
**licensed** [1] - 32:6
**life** [1] - 64:3
**likely** [2] - 6:2, 33:19
**limited** [1] - 47:9
**limits** [1] - 60:4
**Lindsay** [1] - 28:6
**line** [7] - 3:6, 3:8, 24:3, 31:25, 38:10,
    42:7, 52:16
**list** [3] - 10:2, 10:6, 61:14
**litigation** [2] - 14:10, 46:25
**living** [1] - 36:9
**lo** [1] - 23:13
**log** [8] - 8:8, 8:20, 8:21, 9:25, 11:1,
    11:2, 12:14, 12:19, 14:5, 14:22, 15:16,
    16:2, 16:8
**logistical** [1] - 62:25
**logs** [3] - 15:19, 15:21, 16:23
**look** [9] - 9:21, 16:17, 27:21, 29:21,
    31:16, 32:2, 35:21, 43:11, 46:8, 51:11,
    61:7
**looked** [2] - 5:7, 37:21
**looking** [12] - 6:12, 6:15, 6:24, 7:12,
    7:21, 17:17, 51:9, 51:18, 54:14, 55:11,
    59:6, 61:14
**looks** [2] - 61:17, 64:17
**Loonam** [8] - 2:14, 3:18, 19:3, 19:7,
    24:8, 35:22, 36:25, 39:21
**LOONAM** [8] - 19:8, 20:6, 26:10, 26:21,
    26:24, 27:2, 37:15, 38:2
**Loonam's** [2] - 21:15, 36:8
**loss** [2] - 58:17, 58:20
**Louisiana** [1] - 2:3
**love** [1] - 56:8

# M

**M.D** [1] - 2:1
**MACDOUGALL** [5] - 42:8, 42:22, 42:25, 59:19, 61:10
**MacDougall** [12] - 2:6, 42:9, 42:20, 49:17, 49:21, 50:4, 50:13, 53:5, 54:10, 57:25, 59:17, 61:2
**MacDougall's** [3] - 51:16, 52:7, 52:12
**Madison** [1] - 47:20
**magic** [1] - 58:10
**mail** [6] - 14:16, 57:10, 59:5, 59:7, 59:11, 59:25
**mailing** [1] - 9:15
**mails** [58] - 8:9, 8:10, 8:14, 8:16, 8:17, 8:24, 9:1, 9:2, 9:3, 9:6, 9:7, 9:9, 9:21, 10:2, 12:6, 13:1, 13:3, 13:6, 14:7, 14:13, 14:14, 14:15, 15:4, 15:9, 20:16, 21:7, 24:5, 41:20, 41:22, 41:24, 46:13, 46:21, 50:14, 51:8, 51:12, 53:24, 54:2, 54:16, 54:21, 55:2, 55:5, 55:10, 55:16, 55:17, 57:9, 58:25, 59:1, 59:9, 59:13, 59:15, 59:21, 60:2, 60:17
**main** [3] - 6:8, 55:15, 57:8
**malfeasance** [1] - 27:17
**man** [3] - 33:13, 37:16, 44:18
**manager** [1] - 18:6
**manner** [1] - 43:16
**March** [2] - 30:9
**mark** [1] - 42:8
**Mark** [1] - 2:6
**Massachusetts** [1] - 27:5
**materials** [2] - 46:16, 53:20
**matter** [10] - 4:2, 4:10, 6:1, 33:9, 35:16, 35:23, 35:24, 48:15, 62:16, 66:13
**matters** [2] - 5:10, 33:9
**mean** [17] - 9:25, 13:15, 15:18, 26:13, 35:7, 39:2, 41:6, 52:7, 52:16, 53:15, 55:10, 55:13, 56:4, 56:22, 56:24, 59:2, 63:7
**means** [2] - 35:2, 43:14
**mechanical** [1] - 2:23
**medical** [12] - 34:23, 41:23, 43:13, 46:9, 46:11, 46:13, 46:19, 50:19, 54:22, 56:16, 60:20
**Medicine** [1] - 43:4
**memory** [4] - 58:14, 58:17, 58:20, 58:21
**mental** [2] - 19:21, 35:5
**mention** [2] - 49:21, 63:11
**mentioned** [1] - 42:3
**merit** [1] - 22:22
**merits** [1] - 10:15
**met** [1] - 39:9
**might** [7] - 17:8, 20:21, 26:5, 40:1, 44:18, 57:4, 59:5
**Miller** [4] - 2:20, 66:11, 66:15, 66:16
**million** [1] - 50:23
**millions** [2] - 55:25, 56:14
**mind** [1] - 39:5

**minimal** [1] - 52:24
**minute** [1] - 6:19
**minutes** [2] - 6:18, 38:6
**misconduct** [1] - 27:17
**misimpression** [1] - 32:20
**missing** [1] - 55:6
**mistake** [1] - 27:18
**mistakenly** [1] - 27:15
**misunderstood** [1] - 27:18
**modification** [1] - 46:6
**modify** [4] - 43:7, 43:14, 47:8, 60:25
**month** [1] - 64:8
**months** [3] - 5:8, 23:14, 23:15
**moot** [6] - 10:18, 10:22, 11:13, 20:20, 40:14, 40:17
**morning** [15] - 3:5, 3:6, 3:11, 3:25, 6:5, 6:17, 13:23, 38:9, 41:15, 41:16, 42:23, 42:24, 61:14, 62:4, 65:25
**most** [5] - 8:5, 35:9, 42:4, 47:3, 59:8
**motion** [45] - 5:16, 7:25, 8:2, 8:4, 8:7, 10:17, 10:21, 10:23, 11:1, 11:4, 11:7, 11:12, 11:13, 12:10, 12:11, 15:7, 16:24, 17:6, 17:10, 17:15, 18:7, 19:4, 19:9, 19:12, 20:9, 20:15, 20:20, 20:22, 31:17, 40:10, 40:14, 40:15, 42:19, 45:17, 45:18, 46:3, 49:23, 50:6, 59:11, 60:10, 60:25, 62:15
**Motion** [5] - 18:23, 38:14, 38:17, 40:7
**motions** [16] - 4:10, 4:14, 4:19, 5:16, 7:24, 21:19, 38:12, 38:21, 39:18, 40:4, 40:11, 40:19, 41:1, 41:2, 41:7, 41:10
**MOVANT** [1] - 2:1
**move** [6] - 4:9, 7:18, 7:22, 20:6, 38:10, 53:3
**moved** [2] - 45:7, 45:14
**moving** [2] - 4:6, 20:8
**MR** [85] - 3:11, 3:15, 3:16, 4:17, 4:24, 5:3, 5:12, 6:25, 7:10, 8:3, 10:3, 10:5, 10:11, 10:13, 12:1, 12:18, 12:22, 13:10, 13:11, 13:12, 13:18, 16:13, 16:22, 17:2, 17:4, 17:16, 17:19, 17:21, 17:23, 18:16, 18:20, 19:2, 19:8, 20:6, 21:5, 26:10, 26:21, 26:24, 27:2, 35:19, 37:15, 38:2, 38:7, 40:13, 40:22, 41:2, 41:15, 41:17, 42:8, 42:22, 42:25, 49:19, 51:14, 51:24, 53:4, 53:17, 54:16, 55:15, 56:7, 57:1, 57:15, 57:16, 57:20, 58:11, 59:7, 59:19, 61:10, 61:12, 61:21, 62:13, 62:15, 63:24, 63:25, 64:13, 64:20, 64:24, 64:25, 65:1, 65:4, 65:10, 65:16, 65:23, 66:1, 66:3, 66:6
**MS** [4] - 13:22, 16:12, 17:17, 17:20
**multiple** [2] - 37:2, 57:16
**must** [2] - 27:7, 46:4
**mutual** [1] - 31:17

# N

**narrowed** [1] - 51:20

**nature** [1] - 16:4
**NE** [2] - 1:19, 1:24
**need** [31] - 4:3, 4:10, 7:18, 11:19, 12:15, 15:15, 15:16, 16:7, 16:8, 16:9, 17:8, 17:9, 17:11, 18:6, 26:18, 29:19, 37:23, 38:11, 52:25, 60:3, 61:6, 61:18, 61:20, 62:12, 64:4, 64:6, 64:16, 65:24
**needed** [2] - 4:2, 14:21
**needlessly** [1] - 33:3
**needs** [4] - 16:7, 29:25, 56:17, 60:19
**negate** [1] - 25:16
**negotiation** [1] - 41:8
**neighborhood** [1] - 24:14
**net** [1] - 60:11
**neurodegenerative** [1] - 33:19
**neuropsychiatrist** [2] - 50:18, 55:18
**Neutral** [1] - 38:17
**neutral** [39] - 5:17, 5:19, 19:4, 19:12, 19:18, 19:19, 20:23, 24:9, 25:22, 25:25, 26:2, 26:13, 26:20, 27:20, 27:25, 28:7, 28:18, 28:22, 29:5, 29:25, 30:5, 32:1, 35:13, 36:3, 36:4, 36:6, 36:21, 36:23, 37:6, 37:7, 37:11, 38:23, 39:7, 39:13, 39:15, 39:23, 40:2, 40:3
**never** [5] - 37:10, 39:24, 40:3, 53:7, 53:10
**nevertheless** [1] - 11:3
**New** [2] - 2:16
**new** [1] - 50:10
**newly** [1] - 49:6
**next** [17] - 3:6, 5:7, 7:7, 7:8, 16:6, 18:13, 18:22, 18:25, 20:8, 38:10, 40:6, 40:18, 51:3, 53:3, 54:10, 64:22, 66:5
**Nicholas** [1] - 2:2
**Nick** [1] - 42:10
**nine** [2] - 5:5, 7:1
**Ninth** [1] - 27:4
**NO** [1] - 1:3
**nobody** [1] - 25:3
**nomenclature** [3] - 28:11, 31:5, 31:9
**nonattorneys** [2] - 12:7, 13:6
**nonpartisan** [1] - 28:4
**nonparty** [1] - 52:2
**noon** [1] - 6:18
**North** [1] - 27:5
**Northern** [1] - 28:5
**note** [4] - 22:4, 30:7, 41:18, 45:4
**noted** [1] - 41:19
**notes** [2] - 24:5, 46:11
**nothing** [2] - 6:10, 60:21
**notice** [3] - 22:2, 22:6, 45:15
**noting** [1] - 36:23
**notion** [1] - 40:6
**November** [14] - 5:24, 7:6, 7:9, 7:11, 7:16, 7:20, 35:6, 61:16, 62:1, 62:7, 62:8
**npetree@akingump.com** [1] - 2:5
**number** [4] - 4:10, 5:15, 7:4, 8:13
**Number** [9] - 3:7, 10:25, 21:25, 38:16,

38:20, 40:16, 45:17, 65:10, 65:18
**numerous** [1] - 23:5
**NW** [1] - 2:7
**NY** [1] - 2:16

# O

**objected** [3] - 30:13, 30:16, 30:19
**objection** [3] - 21:24, 23:4, 23:8
**objective** [1] - 28:4
**obligation** [4] - 44:12, 47:9, 48:9, 58:6
**observe** [1] - 30:15
**observed** [2] - 55:23, 57:6
**obtain** [1] - 46:24
**obviously** [3] - 50:12, 57:2, 58:4
**October** [3] - 5:1, 5:10, 7:7
**OF** [3] - 1:1, 1:3, 1:12
**offense** [1] - 15:18
**office** [1] - 42:11
**officers** [1] - 27:8
**Ohio** [1] - 44:17
**old** [2] - 33:13, 43:2
**once** [3] - 16:16, 30:2, 32:16
**one** [20] - 5:4, 5:6, 7:24, 8:24, 9:13, 12:18, 13:13, 13:25, 22:22, 24:18, 38:3, 49:9, 49:20, 54:11, 56:3, 57:17, 57:25, 58:22, 59:8, 65:1
**onerous** [1] - 44:7
**ones** [1] - 9:8
**opine** [1] - 34:8
**opportunity** [1] - 57:19
**oppose** [1] - 13:15
**opposition** [1] - 31:17
**option** [1] - 48:3
**order** [20] - 7:25, 9:17, 22:14, 22:24, 23:2, 25:20, 32:2, 36:24, 37:21, 37:22, 38:13, 38:23, 39:17, 45:19, 45:23, 65:5, 65:8, 65:15, 65:17, 65:19
**ordering** [1] - 36:18
**original** [2] - 49:22, 49:24
**otherwise** [2] - 30:1, 44:18
**ought** [1] - 62:1
**outstanding** [1] - 8:6
**overreach** [1] - 49:14
**own** [7] - 22:20, 22:24, 26:15, 28:20, 29:6, 36:5, 61:23

# P

**p.m** [1] - 66:8
**pages** [1] - 46:10
**paid** [2] - 21:12, 39:4
**paragraph** [2] - 32:4, 32:9
**parent** [1] - 8:17
**park** [1] - 38:19
**Parkinson's** [1] - 33:14
**part** [5] - 4:1, 18:2, 50:15, 53:18, 59:8
**parte** [2] - 9:22, 24:18
**participate** [4] - 30:12, 30:18, 30:20, 31:3

**participating** [1] - 49:3
**particularly** [1] - 11:8
**parties** [13] - 3:10, 8:5, 14:11, 14:16, 32:12, 32:17, 33:12, 37:24, 39:9, 41:9, 41:13, 61:22, 63:19
**partisan** [14] - 20:4, 20:7, 20:10, 21:20, 27:20, 28:19, 28:25, 29:6, 29:18, 30:23, 30:24, 31:1, 31:2, 31:16
**partisans** [1] - 32:20
**parts** [1] - 64:19
**party** [4] - 12:2, 44:9, 46:5, 52:2
**pass** [1] - 52:18
**past** [1] - 54:17
**pathology** [1] - 33:15
**patience** [3] - 3:25, 4:6, 62:6
**pen** [1] - 62:7
**penalty** [2] - 29:12, 31:22
**pencil** [1] - 62:8
**pending** [4] - 4:15, 4:19, 5:15, 7:23
**people** [3] - 30:25, 31:6, 33:21
**per** [2] - 25:20, 34:21
**perfect** [1] - 34:2
**perfectly** [1] - 26:21
**perhaps** [1] - 11:11
**period** [5] - 54:2, 55:10, 58:13, 59:20, 59:25
**permanent** [2] - 33:24, 33:25
**permission** [1] - 18:1
**permit** [1] - 62:22
**permitted** [3] - 25:10, 36:11, 37:4
**person** [1] - 54:3
**personal** [6] - 43:22, 50:17, 50:20, 54:1, 54:24, 55:20
**personally** [1] - 14:14
**PET** [1] - 33:18
**petition** [1] - 48:3
**Petree** [2] - 2:2, 42:10
**physically** [2] - 18:9, 44:23
**physician** [1] - 43:3
**piece** [2] - 12:18, 57:12
**place** [5] - 23:7, 27:20, 29:6, 34:7
**placeholder** [1] - 18:7
**plain** [1] - 47:10
**plan** [1] - 63:22
**planet** [1] - 24:15
**planning** [1] - 63:22
**plans** [1] - 57:1
**playing** [2] - 35:8, 35:11
**plead** [4] - 52:8, 52:17, 52:19, 52:20
**pleading** [2] - 22:23, 35:20
**pleadings** [4] - 22:12, 22:16, 22:20, 44:16
**Pogany** [6] - 24:10, 24:16, 24:21, 27:10, 27:12, 27:22
**point** [18] - 15:6, 15:15, 20:13, 20:23, 22:11, 26:20, 27:12, 29:25, 31:5, 33:3, 34:3, 36:7, 36:22, 37:20, 53:10, 58:5, 58:9, 65:2
**points** [2] - 31:4, 31:18

**position** [16] - 14:22, 15:11, 21:6, 24:5, 26:1, 29:3, 35:3, 37:8, 45:22, 48:8, 53:1, 53:2, 53:25, 54:19, 55:18, 60:14
**possession** [2] - 43:14, 46:17
**possible** [2] - 61:5, 61:8
**possibly** [1] - 63:10
**posturing** [1] - 33:11
**potential** [1] - 56:24
**potentially** [2] - 19:13, 53:12
**practical** [4] - 26:24, 32:25, 33:3, 35:16
**practices** [1] - 56:16
**preparation** [1] - 24:1
**prepare** [1] - 32:10
**prepared** [5] - 5:14, 5:25, 15:8, 62:19, 62:24
**present** [8] - 3:4, 19:21, 35:5, 41:24, 55:2, 58:18, 62:23
**presentation** [1] - 6:16
**presentations** [1] - 39:20
**pressing** [1] - 61:20
**pretrial** [4] - 46:25, 62:17, 62:20
**pretty** [4] - 15:17, 52:10, 54:12, 64:17
**previous** [1] - 23:14
**previously** [1] - 28:21
**priority** [1] - 7:17
**private** [2] - 9:3, 9:4
**privilege** [38] - 8:8, 8:16, 8:20, 8:21, 8:22, 9:2, 9:11, 9:16, 9:19, 9:23, 9:25, 11:1, 11:2, 11:20, 12:9, 12:14, 12:19, 13:2, 13:15, 13:16, 13:19, 14:4, 14:5, 14:8, 14:22, 14:23, 15:9, 15:16, 15:19, 15:21, 15:23, 16:2, 16:5, 16:8, 16:10, 16:23, 37:14
**privilege-log** [1] - 11:1
**privileged** [4] - 12:8, 15:5, 15:25, 30:10
**privileges** [2] - 14:25, 15:12
**pro** [2] - 42:11, 43:1
**problem** [5] - 20:11, 53:16, 62:5, 63:7, 63:20
**problems** [1] - 52:21
**procedural** [1] - 32:14
**Procedure** [1] - 23:25
**proceed** [11] - 4:18, 4:21, 5:14, 5:25, 15:14, 19:14, 19:22, 20:21, 30:1, 38:5, 56:22
**proceeding** [3] - 29:19, 48:13, 51:23
**Proceedings** [1] - 38:8
**proceedings** [2] - 2:23, 66:12
**process** [6] - 11:9, 21:11, 30:2, 39:8, 44:7, 44:8
**produce** [2] - 41:20, 45:24
**produced** [8] - 2:24, 11:23, 12:4, 46:2, 46:10, 46:12, 60:20, 63:19
**producing** [1] - 12:16
**product** [7] - 15:3, 21:8, 21:9, 23:20, 30:11, 37:14, 59:4
**production** [11] - 42:1, 43:12, 45:7, 45:12, 45:15, 45:18, 46:9, 47:7, 49:23, 53:20, 60:24

**professor** [1] - 43:4
**proffer** [1] - 58:1
**prompts** [1] - 48:6
**pronounce** [1] - 40:21
**proof** [1] - 31:19
**proper** [1] - 57:5
**proposed** [4] - 4:20, 22:14, 23:2, 65:5
**prosecution** [7] - 10:10, 27:9, 27:16, 28:19, 39:3, 39:5, 51:19
**prosecutor** [3] - 19:25, 20:2, 23:19
**prosecutorial** [1] - 24:1
**prosecutors** [2] - 21:7, 24:6
**protect** [3] - 44:18, 49:11, 49:13
**protection** [3] - 48:1, 48:7
**protective** [5] - 22:14, 65:5, 65:8, 65:17, 65:19
**provide** [4] - 17:7, 26:19, 32:11, 54:20
**provided** [3] - 9:18, 14:5, 34:22
**provides** [2] - 14:24, 47:24
**provisions** [1] - 32:10
**prudent** [1] - 30:4
**psychiatric** [4] - 24:18, 32:5, 36:17, 36:19
**psychiatrist** [1] - 32:7
**psychological** [3] - 32:6, 36:17, 36:19
**psychologist** [1] - 32:7
**punch** [1] - 33:25
**purpose** [1] - 48:10
**purposeful** [1] - 27:17
**purposes** [5] - 25:14, 39:18, 43:1, 58:3, 63:22
**pursuant** [4] - 31:23, 32:7, 32:10, 44:17
**push** [1] - 60:4
**pushing** [1] - 61:25
**put** [7] - 26:16, 33:8, 44:7, 50:14, 53:23, 55:16, 57:10
**putting** [1] - 15:4

## Q

**qualifications** [1] - 39:11
**qualify** [1] - 60:24
**quash** [2] - 40:19, 42:19
**quashing** [1] - 43:22
**questions** [2] - 13:14, 57:6
**quibbling** [1] - 13:4
**quick** [1] - 65:2
**quickly** [4] - 15:17, 53:5, 61:4, 61:8
**quote** [2] - 27:7, 27:9

## R

**raise** [2] - 55:23, 65:1
**raised** [2] - 16:20, 50:13
**raising** [3] - 11:3, 13:5
**range** [1] - 6:13
**rather** [1] - 35:6
**reach** [2] - 11:10, 61:23
**reached** [2] - 12:12, 27:22

**read** [2] - 15:16, 37:20
**reading** [2] - 24:20, 33:21
**ready** [4] - 4:18, 4:20, 4:21, 5:10
**real** [2] - 20:11, 24:4
**realized** [1] - 29:15
**really** [15] - 4:5, 9:12, 11:5, 11:11, 15:24, 16:2, 19:4, 37:23, 44:8, 45:23, 52:13, 59:12, 63:19, 64:4
**rearranging** [1] - 52:23
**reason** [11] - 19:14, 30:3, 30:21, 32:14, 41:11, 46:1, 51:7, 52:13, 57:8, 60:12, 63:4
**reasonable** [1] - 63:9
**reasonably** [1] - 63:8
**reasons** [5] - 26:22, 33:1, 33:3, 59:16
**received** [4] - 8:25, 20:1, 55:24, 58:16
**recent** [3] - 29:23, 33:16, 42:4
**recently** [2] - 8:10, 35:10
**recessed** [1] - 38:8
**recognized** [1] - 29:8
**record** [11] - 21:16, 21:21, 22:9, 25:23, 31:5, 38:12, 39:18, 45:16, 46:15, 56:17, 66:12
**recorded** [1] - 2:23
**records** [10] - 43:13, 46:10, 46:19, 46:24, 60:20, 60:22, 62:19, 63:6, 63:18
**reemphasize** [1] - 53:19
**referred** [2] - 22:7, 22:18
**referring** [2] - 23:15, 23:16
**reflecting** [1] - 46:11
**regard** [4] - 45:5, 47:7, 59:20, 60:19
**regarding** [7] - 22:14, 38:12, 39:13, 40:20, 41:1, 51:11, 51:18
**regards** [1] - 57:5
**Reiner** [1] - 44:17
**relate** [1] - 46:13
**related** [11] - 19:4, 40:19, 41:21, 41:22, 41:25, 49:24, 50:7, 53:21, 54:18, 54:21, 65:5
**relating** [1] - 60:20
**relationship** [1] - 47:3
**relaxed** [1] - 63:22
**relayed** [1] - 14:19
**relevance** [1] - 50:13
**relevant** [3] - 51:23, 55:9, 58:13
**relied** [2] - 31:20, 50:19
**relief** [2] - 43:5, 43:21
**rely** [3] - 34:10, 57:12, 59:22
**relying** [5] - 27:23, 29:24, 55:22, 59:9, 59:14
**remember** [1] - 8:12
**removed** [1] - 8:15
**repeated** [1] - 56:13
**repeatedly** [2] - 47:13, 48:11
**reply** [4] - 17:24, 18:15, 41:19, 42:4
**report** [9] - 24:18, 24:19, 28:8, 32:10, 32:11, 32:15, 32:17, 32:21
**REPORTER** [1] - 2:19

**REPORTER'S** [1] - 66:9
**reporting** [2] - 58:17, 58:20
**reports** [7] - 19:24, 19:25, 20:2, 23:11, 25:20, 27:13, 34:22
**represent** [1] - 3:10
**representations** [3] - 21:16, 39:10, 45:5
**request** [5] - 14:19, 21:1, 24:22, 32:4, 51:17
**requested** [2] - 5:20, 33:16
**requesting** [1] - 50:10
**requests** [2] - 41:24, 55:3
**require** [1] - 46:1
**required** [7] - 19:17, 25:19, 27:21, 42:14, 43:18, 44:5, 49:15
**requirement** [4] - 28:14, 43:22, 44:21, 48:23
**requirements** [1] - 47:16
**requires** [1] - 25:13
**requiring** [2] - 45:23, 48:10
**research** [1] - 50:24
**residence** [1] - 3:20
**resolution** [2] - 42:16, 61:23
**resolve** [2] - 61:24, 62:2
**respect** [12] - 13:16, 16:10, 16:20, 17:13, 38:14, 42:14, 46:6, 47:11, 47:18, 52:7, 54:11, 63:23
**respectfully** [12] - 11:7, 24:13, 37:23, 38:21, 39:19, 40:4, 43:6, 47:8, 49:13, 52:25, 55:4, 60:25
**respond** [11] - 11:4, 11:7, 14:17, 16:16, 16:19, 17:4, 37:17, 42:21, 43:18, 44:24, 60:2
**responded** [3] - 11:16, 11:18, 22:1
**response** [11] - 11:10, 14:1, 17:6, 17:11, 17:13, 17:15, 17:22, 18:2, 18:8, 20:9, 22:6, 22:9, 44:10, 47:15, 49:18
**responses** [1] - 10:19
**responsible** [1] - 27:8
**rest** [1] - 4:4
**result** [1] - 16:1
**retained** [8] - 9:7, 20:4, 21:10, 21:11, 21:12, 23:19, 37:9, 37:12
**reversal** [1] - 24:11
**reversed** [1] - 24:23
**reversible** [7] - 20:12, 27:3, 30:1, 33:2, 35:7, 37:11
**review** [4] - 15:10, 15:15, 18:3, 59:15
**reviewed** [2] - 14:13, 14:14
**Reyes** [1] - 29:22
**Reynolds** [1] - 8:17
**ridiculous** [1] - 56:15
**rights** [1] - 44:4
**risk** [3] - 18:11, 44:1, 44:4
**RMR** [2] - 2:20, 66:16
**road** [2] - 27:3, 33:2
**ROBERT** [1] - 1:6
**Robert** [2] - 38:19, 59:9
**Romatowski** [1] - 30:19
**Room** [2] - 1:19, 2:21

roughly [1] - 41:17
routinely [2] - 28:16, 28:17
RPR [1] - 66:16
rubber [1] - 31:12
Rule [8] - 7:25, 10:17, 11:12, 13:25, 14:5, 43:7, 45:12, 47:2
rule [3] - 24:3, 29:20, 48:3
rules [4] - 25:18, 45:19, 62:18, 63:5
Rules [4] - 23:25, 25:12, 25:17, 37:3
ruling [6] - 17:12, 27:23, 38:12, 39:18, 61:4, 63:23
Rusk [1] - 2:21
Ryan [1] - 38:19

## S

safe [2] - 64:21, 66:4
Samantha [2] - 2:2, 42:10
Sampson [1] - 29:22
sanctioned [2] - 30:23, 31:2
satisfy [2] - 44:12, 47:18
saw [1] - 51:3
scan [1] - 33:18
scans [1] - 33:22
schedule [5] - 6:21, 6:24, 7:1, 7:17, 52:23
schedules [3] - 4:23, 5:25, 53:16
scheduling [2] - 25:20, 53:8
scheme [3] - 29:8, 29:11, 32:13
Scott [1] - 2:10
se [1] - 34:21
seal [2] - 18:2, 32:11
search [2] - 50:25, 62:21
second [5] - 7:24, 38:4, 43:21, 54:11, 57:17
Section [1] - 48:4
see [11] - 3:20, 7:21, 15:16, 16:17, 16:25, 20:7, 61:23, 63:8, 63:15, 66:5
seek [4] - 43:5, 43:21, 47:25, 48:6
seeking [2] - 48:18, 53:21
seeks [4] - 44:21, 44:22, 48:17, 60:9
selected [2] - 31:7, 37:9
self [2] - 58:17, 58:20
self-reporting [2] - 58:17, 58:20
send [1] - 51:11
sending [2] - 59:1, 65:12
sense [4] - 20:22, 25:11, 35:15, 58:2
sent [5] - 8:7, 13:1, 49:22, 60:23, 61:25
separate [4] - 26:2, 26:3, 29:10, 29:12
separated [1] - 30:16
sepsis [1] - 33:7
Sept [1] - 66:15
SEPTEMBER [2] - 1:6, 3:2
September [3] - 11:2, 45:10, 50:3
served [7] - 43:19, 43:20, 45:9, 45:11, 45:13, 45:24, 49:4
session [1] - 58:1
set [7] - 4:8, 8:24, 9:6, 33:10, 33:11, 37:7, 63:2

Seth [1] - 51:4
sets [2] - 8:23, 37:4
seven [2] - 17:25, 18:15
several [3] - 22:12, 38:12, 57:18
shall [3] - 32:5, 32:9, 32:11
shape [2] - 24:7, 25:16
shooting [1] - 7:20
short [1] - 56:11
shorter [1] - 58:19
shortly [2] - 38:1, 38:13
show [6] - 40:19, 51:9, 52:10, 52:18, 53:11, 57:12
showed [3] - 30:14, 33:17, 33:18
shows [1] - 58:16
sic [1] - 55:19
side [4] - 5:21, 15:18, 15:23, 55:21
side's [1] - 26:19
sides [4] - 26:14, 39:10, 39:12, 39:21
signed [2] - 22:17, 38:22
significant [3] - 31:11, 55:5, 64:17
similar [1] - 14:12
simple [2] - 26:1, 56:10
simply [8] - 21:6, 21:21, 25:22, 28:14, 29:1, 30:2, 44:1, 44:2
single [3] - 28:21, 30:22, 60:23
sit [2] - 52:14, 53:15
sites [1] - 24:10
situation [3] - 36:1, 36:6, 37:2
situations [2] - 36:2, 37:1
six [2] - 23:14, 45:9
sixteen [1] - 46:10
Sixth [3] - 48:17, 48:21, 48:22
sliding [1] - 53:8
small [2] - 36:22, 41:20
Smith [20] - 1:17, 3:12, 4:16, 5:22, 6:3, 6:15, 7:25, 10:17, 11:12, 11:15, 11:21, 15:13, 16:15, 17:24, 18:18, 21:4, 29:23, 35:17, 40:11, 62:14
SMITH [30] - 3:11, 3:15, 4:17, 4:24, 5:3, 6:25, 8:3, 10:3, 10:5, 10:11, 12:1, 12:18, 12:22, 13:10, 13:12, 13:18, 16:22, 17:2, 18:20, 21:5, 35:19, 40:13, 40:22, 41:2, 62:13, 62:15, 63:24, 64:13, 64:25, 66:1
Smith's [1] - 18:15
so-called [1] - 37:10
sometime [1] - 8:10
somewhere [1] - 7:19
soon [1] - 62:8
sorry [5] - 9:1, 39:2, 51:15, 57:15, 62:14
sort [8] - 4:13, 6:9, 6:23, 10:20, 26:12, 58:5, 63:13, 64:5
sought [2] - 14:18, 45:11
sounds [1] - 53:17
sources [2] - 59:3, 59:4
SOUTHERN [1] - 1:1
spanning [1] - 55:10
speakers [1] - 57:16
speaking [1] - 3:8

speaks [1] - 47:5
specifically [2] - 14:8, 46:18
St [1] - 1:24
staff [2] - 7:20, 61:16
stage [2] - 29:19, 31:16
stamp [1] - 31:12
stand [6] - 23:12, 38:5, 44:9, 50:16, 54:6, 57:13
standpoint [1] - 41:23
start [3] - 4:11, 6:17, 7:23
started [3] - 3:24, 40:25, 42:19
starting [1] - 3:10
state [4] - 3:9, 10:16, 19:21, 35:6
statement [2] - 34:24, 56:13
States [3] - 3:7, 3:12, 32:8
STATES [3] - 1:1, 1:3, 1:11
status [7] - 4:8, 4:12, 34:1, 34:11, 63:2, 64:22, 66:5
STATUS [1] - 1:9
statute [2] - 25:15, 31:24, 36:10, 36:25, 37:22
statutory [8] - 28:13, 29:8, 29:11, 31:23, 32:13, 36:8, 36:14, 58:6
stay [3] - 53:12, 64:21, 66:4
stenography [1] - 2:23
step [3] - 16:6, 20:8, 30:13
still [5] - 20:16, 41:7, 54:14, 55:5, 61:15
stipulations [1] - 63:17
stop [2] - 51:6, 52:6
stranger [1] - 43:3
strategy [1] - 24:1
Strauss [3] - 2:3, 2:7, 42:9
straw [1] - 37:16
streams [1] - 59:5
Street [4] - 1:19, 2:3, 2:7, 2:16
stretch [1] - 47:22
strictly [1] - 63:5
Strike [1] - 40:7
strike [1] - 40:16
strings [1] - 59:7
STUART [1] - 2:1
Stuart [1] - 40:20
subject [3] - 10:9, 30:11, 34:15
submission [1] - 65:17
submit [5] - 15:9, 15:15, 16:16, 24:13, 36:19
submitted [7] - 16:7, 16:9, 17:11, 23:10, 24:18, 25:20, 27:13
subpoena [53] - 9:5, 11:12, 12:3, 12:14, 12:24, 12:25, 13:25, 14:1, 14:2, 14:5, 40:19, 41:24, 42:14, 42:15, 43:7, 43:9, 43:12, 43:18, 44:22, 45:6, 45:9, 45:10, 45:13, 45:24, 46:7, 46:17, 46:21, 46:24, 47:4, 47:6, 47:8, 47:10, 49:4, 49:5, 49:20, 49:22, 49:24, 49:25, 50:1, 50:6, 50:7, 50:8, 50:11, 51:17, 52:3, 52:4, 55:3, 59:21, 59:23, 60:5, 61:1, 61:7
subpoenaed [4] - 8:5, 8:9, 12:2

**subpoenas** [4] - 11:16, 11:17, 11:22, 13:24
**subset** [1] - 41:20
**substantially** [1] - 42:12
**suddenly** [1] - 21:20
**sufficient** [2] - 8:22, 12:5
**suggest** [3] - 11:8, 26:4, 35:21
**suggestive** [1] - 33:18
**Suite** [1] - 2:12
**support** [5] - 21:17, 27:16, 29:2, 46:16, 50:24
**supported** [2] - 21:21, 25:22
**supposed** [4] - 11:17, 24:9, 25:22, 32:18
**suppression** [1] - 62:20
**surgery** [1] - 33:9
**surprise** [5] - 21:19, 23:13, 25:21, 30:8
**surreply** [1] - 18:1
**Swedish** [1] - 4:3
**Systems** [5] - 8:18, 8:25, 12:2, 12:22, 13:20
**Systems'** [2] - 8:8, 12:23

**T**

**table** [1] - 34:19
**tailored** [1] - 51:20
**talks** [1] - 41:9
**target** [1] - 52:2
**Tax** [2] - 1:18, 1:23
**team** [2] - 5:22, 7:11
**technically** [1] - 11:22
**teed** [1] - 11:5
**Tel** [7] - 1:20, 1:25, 2:5, 2:8, 2:13, 2:17, 2:22
**ten** [9] - 5:5, 7:1, 17:20, 17:22, 25:2, 58:9, 58:10, 59:20, 60:17
**ten-year** [1] - 59:20
**term** [2] - 23:1, 36:23
**terms** [7] - 42:15, 43:11, 50:8, 53:20, 59:7, 62:18, 63:16
**tested** [1] - 35:9
**testify** [9] - 20:18, 20:20, 36:11, 37:5, 37:12, 52:15, 53:19, 56:11, 60:8
**testifying** [4] - 56:5, 56:23, 56:25, 57:23
**testimony** [3] - 36:13, 38:18, 60:10
**testing** [3] - 33:16, 34:25, 60:1
**TEXAS** [1] - 1:1
**Texas** [5] - 1:4, 2:11, 2:21, 27:5, 28:5
**THE** [78] - 1:1, 1:1, 1:10, 1:16, 2:1, 2:9, 3:5, 3:14, 3:22, 4:22, 5:2, 5:11, 6:8, 7:16, 9:25, 10:4, 10:8, 11:14, 12:12, 12:21, 13:8, 13:13, 13:21, 15:13, 16:15, 16:25, 17:3, 17:9, 17:22, 17:24, 26:23, 27:1, 35:17, 37:19, 38:3, 38:9, 40:15, 40:24, 41:5, 41:16, 42:6, 42:18, 42:24, 49:17, 51:6, 51:15, 52:6, 53:14, 54:9, 55:7, 56:3, 56:18, 57:17, 58:8, 58:22, 59:17, 61:2, 61:11, 61:13, 62:5,

62:14, 63:1, 64:2, 64:14, 64:21, 65:3, 65:13, 65:18, 65:24, 66:2, 66:4, 66:7
**themselves** [4] - 3:9, 20:2, 20:3, 27:7
**Theriault** [1] - 27:24
**third** [4] - 37:6, 44:9, 46:5
**Third** [5] - 24:10, 27:4, 27:10, 27:19, 27:22
**third-party** [1] - 44:9
**three** [6] - 6:3, 6:13, 7:4, 23:10, 24:6, 38:5
**threw** [1] - 27:11
**throughout** [1] - 22:10
**thumbs** [1] - 7:13
**Thursday** [2] - 15:7, 16:24
**timing** [4] - 5:18, 5:20, 6:9, 7:14
**Title** [1] - 32:7
**to-from** [2] - 14:6, 15:1
**today** [8] - 4:8, 10:21, 17:22, 44:20, 50:8, 50:11, 61:20, 66:3
**together** [2] - 14:12, 51:2
**took** [3] - 29:5, 45:21, 54:20
**tool** [1] - 47:25
**top** [3] - 8:12, 33:14, 33:15
**topic** [2] - 38:10, 53:3
**total** [1] - 58:19
**toward** [1] - 62:12
**town** [1] - 64:19
**transaction** [1] - 14:11
**Transcript** [1] - 2:24
**transcript** [1] - 66:12
**transcription** [1] - 2:24
**treated** [1] - 55:19
**treating** [2] - 17:5, 17:10
**treatment** [2] - 41:22, 54:18
**Trexler** [1] - 29:22
**trial** [9] - 19:22, 23:12, 24:1, 27:11, 46:24, 47:2, 50:16, 54:6, 57:13
**tried** [2] - 6:4, 30:12
**trigger** [1] - 27:14
**trip** [1] - 51:1
**trumps** [3] - 28:12, 28:13
**try** [2] - 44:2, 47:1
**trying** [1] - 60:4
**turn** [2] - 19:2, 51:25
**turned** [1] - 21:1
**twice** [1] - 30:3
**two** [7] - 6:14, 7:4, 8:23, 13:24, 26:18, 26:22, 43:5
**two-and-a-half** [1] - 7:4
**two-fold** [1] - 43:5
**TX** [2] - 2:4, 2:12
**typically** [4] - 15:19, 16:1, 18:5, 18:7

**U**

**U.S** [10] - 1:18, 1:23, 27:23, 28:2, 29:3, 29:21, 29:22, 37:8, 37:9
**ultimately** [1] - 43:19
**unambiguously** [1] - 27:6

**unclear** [1] - 50:9
**under** [30] - 7:25, 11:17, 16:11, 18:2, 19:16, 19:17, 20:19, 24:9, 25:8, 25:18, 27:21, 29:8, 29:9, 29:10, 29:16, 31:15, 31:22, 32:11, 32:19, 33:8, 37:3, 42:15, 45:12, 45:19, 46:23, 48:3, 48:4, 58:5, 60:13, 61:3
**undergo** [1] - 32:5
**underlying** [4] - 14:20, 36:2, 51:10, 51:18
**understood** [1] - 59:23
**undivided** [1] - 6:11
**undoubtedly** [1] - 28:16
**unfold** [1] - 19:5
**unfolded** [1] - 19:23
**unfortunately** [2] - 64:18, 65:14
**unfounded** [1] - 45:1
**unilaterally** [1] - 52:3
**unique** [2] - 53:24, 55:18
**United** [3] - 3:7, 3:12, 32:7
**UNITED** [3] - 1:1, 1:3, 1:11
**Universal** [10] - 8:8, 8:18, 8:24, 12:2, 12:12, 12:22, 12:23, 13:9, 13:14, 13:20
**unless** [1] - 18:1
**unprecedented** [1] - 44:8
**unquestioned** [1] - 33:13
**up** [19] - 5:7, 6:20, 7:13, 11:6, 12:10, 13:5, 16:1, 29:16, 30:14, 37:5, 38:13, 52:10, 52:18, 53:11, 54:11, 56:17, 57:21, 64:16, 65:22
**update** [1] - 4:12
**urged** [1] - 45:22
**USC** [1] - 48:2
**uses** [1] - 23:1

**V**

**various** [2] - 5:7, 13:3
**VARNADO** [25] - 3:16, 5:12, 7:10, 10:13, 13:11, 16:13, 17:4, 17:16, 17:19, 17:21, 17:23, 18:16, 19:2, 38:7, 56:7, 57:15, 61:21, 63:25, 64:20, 64:24, 65:10, 65:16, 65:23, 66:3, 66:6
**Varnado** [12] - 2:10, 3:17, 4:13, 5:12, 5:13, 15:14, 17:14, 19:1, 56:7, 56:19, 57:21, 60:12
**veracity** [1] - 63:12
**Vesey** [1] - 2:16
**via** [1] - 3:4
**vice** [1] - 42:11
**video** [1] - 3:20
**VOLUME** [1] - 1:12
**vs** [1] - 3:7
**VS** [1] - 1:4
**vulnerable** [3] - 33:10, 33:14, 33:23

**W**

**wade** [1] - 41:12

**wait** [3] - 44:5, 44:23, 48:11
**waiting** [1] - 52:15
**waive** [2] - 16:5, 44:4
**waived** [1] - 22:21
**waiving** [1] - 14:23
**wants** [2] - 21:14, 57:2
**warrant** [1] - 62:21
**warrants** [1] - 50:25
**Washington** [4] - 1:20, 1:24, 2:8, 42:9
**ways** [1] - 52:15
**wealth** [1] - 59:24
**week** [19] - 5:1, 5:4, 5:6, 5:22, 5:23,
   5:24, 6:7, 6:10, 6:15, 7:6, 7:8, 7:9, 8:7,
   8:11, 9:6, 10:24, 18:13, 61:25
**weeks** [4] - 5:7, 6:14, 45:9, 45:10
**weigh** [1] - 58:2
**welcome** [3] - 3:14, 3:22
**well-known** [1] - 43:3
**Weston** [2] - 29:4, 29:14
**whatsoever** [1] - 12:9
**whole** [1] - 63:13
**withdrawn** [1] - 49:5
**withheld** [3] - 11:20, 11:25, 12:6
**witness** [7] - 40:20, 44:3, 44:9, 46:5,
   48:18, 56:9, 60:11
**witnesses** [15] - 5:5, 7:1, 7:5, 21:8,
   21:23, 23:19, 24:2, 25:2, 25:5, 25:9,
   25:11, 48:18
**word** [4] - 35:18, 37:16, 46:4, 59:18
**words** [1] - 55:9
**workable** [1] - 7:8
**works** [3] - 7:11, 25:15, 61:17
**world** [1] - 36:9
**worried** [1] - 56:24
**worth** [1] - 36:23
**write** [4] - 50:14, 53:23, 55:16, 57:10
**written** [2] - 38:13, 43:16
**wrote** [1] - 32:21

## Y

**y'all** [1] - 38:3
**year** [4] - 14:2, 22:7, 33:13, 59:20
**years** [7] - 43:2, 46:21, 54:17, 55:10,
   58:9, 58:10, 60:17
**York** [1] - 2:16
**Yudofsky** [55] - 40:21, 41:25, 42:7, 43:2,
   43:17, 43:23, 44:2, 44:12, 44:22,
   45:23, 46:1, 46:10, 46:14, 47:6, 47:14,
   47:17, 47:22, 48:6, 48:10, 48:24,
   48:25, 49:13, 49:22, 49:25, 50:11,
   50:16, 50:21, 51:1, 51:13, 51:25, 53:6,
   53:8, 53:11, 53:18, 53:24, 54:3, 54:13,
   54:24, 55:22, 56:5, 56:8, 56:15, 57:22,
   58:1, 58:3, 58:25, 59:10, 59:12, 59:15,
   59:22, 60:4, 60:6, 60:7, 60:19
**YUDOFSKY** [1] - 2:1
**Yudofsky's** [13] - 41:19, 41:22, 42:1,
   42:4, 43:13, 46:16, 46:25, 47:9, 47:12,
   50:24, 53:2, 54:18, 54:20

## Z

**ZOOM** [1] - 1:9
**Zoom** [1] - 3:4