# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal No. 4:21-cr-00009** |
| | § | |
| **ROBERT T. BROCKMAN** | § | |

## MEMORANDUM IN OPPOSITION TO UNITED STATES'
## LETTER MOTION REGARDING PRIVILEGE LOGS

At issue in this Memorandum are forty-four emails as to which Mr. Brockman has asserted the attorney-client privilege, work product immunity, common interest privilege, and marital privilege in response to a grand jury subpoena addressed to Universal Computer Systems Holding Inc. ("UCSH") dated May 11, 2020, and a Rule 17(c) subpoena addressed to UCSH dated May 10, 2021.[1]  Both subpoenas sought "[e]mail communications from bob_brockman@reyrey.com."   The subpoenas did not seek information concerning any particular subject matter.  Rather, the subpoenas sought emails for the fact that they were written, apparently in an effort to refute Mr. Brockman's claim that he is impaired by dementia and cannot assist in his own defense.

It is our understanding that several thousand emails have been produced to the government in response to the two subpoenas.  Mr. Brockman has asserted valid privilege

---

[1] A Rule 17(c) subpoena was addressed to UCSH and dated February 22, 2021.  A second Rule 17(c) subpoena dated May 10, 2021 was issued after the Competency Hearing was rescheduled.

protections for only a small number of emails at issue.[2]  The government literally has thousands of other non-privileged emails in its possession to make the point it seeks to advance at the Competency Hearing.  The Court should deny any relief with respect to these privileged documents.

## BACKGROUND

Counsel for defendant Robert T. Brockman first informed the government that Mr. Brockman has dementia by letter dated April 9, 2020.  Dkt. No. 1-3 at 36, 56–57.  The government issued a grand jury subpoena to UCSH dated May 11, 2020, seeking "Email communications from bob_brockman@reyrey.com" for the period "01/01/17 through present."  The "reyrey" domain belongs to Reynolds and Reynolds, where Mr. Brockman was then-employed.  Reynolds and Reynolds is indirectly owned by UCSH.  Keneally Decl. ¶¶ 2-3 and Ex. 1.  The May 11, 2020 grand jury subpoena did not seek emails concerning any particular subject matter, but instead sought emails "from" Mr. Brockman's email address.[3]

Over a year ago, on September 4, 2020, counsel for Mr. Brockman provided the government with privilege logs regarding documents that were redacted or withheld by UCSH at Mr. Brockman's request, based on Mr. Brockman's privilege assertions.  Keneally Decl. ¶ 4; Dkt. No. 130-2.  UCSH separately made determinations to redact or

---

[2] Counsel for Mr. Brockman has determined that one email, identified on the September 4, 2020 privilege log as number 344, is not privileged, and has notified counsel for UCSH that this document may be produced. Keneally Decl. ¶ 5.

[3] The subpoenas only seek emails "*from*" Mr. Brockman's email address.  Thus the content of the emails sent *to* Mr. Brockman, standing alone, are beyond the scope of the subpoena, as are any attachments to the emails.

withhold documents from production, but the government did not seek a privilege log from UCSH.[4]  Keneally Decl. ¶ 4.

Mr. Brockman was indicted in the Northern District of California on October 1, 2020.  After this case was transferred to the Southern District of Texas, the Court on February 1, 2021, ordered a Competency Hearing, which was initially scheduled to begin on June 29, 2021.  Dkt. No. 36.  The government served UCSH with a hearing subpoena pursuant to Rule 17(c) on May 10, 2021, which *inter alia* sought "Email communications from bob_brockman@reyrey.com for the time period including 06/10/2020 through present."  Keneally Decl. ¶ 6 and Ex. 2.  Due to Mr. Brockman's intervening medical problems, the parties agreed to adjourn the hearing date to September 13, 2021.[5]  Dkt. No. 53.  On September 6, 2021, counsel for Mr. Brockman provided a second privilege log, concerning emails sought by the May 10, 2021 subpoena.  Dkt. No. 130-1.  This privilege log was produced less than three weeks after Mr. Brockman's counsel received the documents from UCSH to review for privilege.  Keneally Decl. ¶¶ 7-8.  Again, the government did not ask UCSH to provide a privilege log for documents that it withheld. Keneally Decl. ¶ 8.

On September 9, 2021—over one year after Mr. Brockman produced the first privilege logs and four days before the then-scheduled start of the Competency Hearing— the government filed a letter motion seeking additional information regarding forty-one

---

[4] It is significant to note that other parties may have privilege interests in the documents at issue.  This Memorandum does not address the rights of any party other than Mr. Brockman.

[5] Following a status conference on September 13, 2021, the Court set the week of November 15, 2021, as the date certain for the Competency Hearing.  Dkt. No. 136.

emails identified in Mr. Brockman's September 4, 2020 privilege log, and four additional

emails identified in Mr. Brockman's September 6, 2021 privilege log ("United States'

Letter Motion").  Dkt. No. 130.

As discussed during the September 13, 2021 status conference, it is Mr. Brockman's

position that the privilege logs sufficiently informed the government as to basis for the

privilege assertions, and that any further detail would require disclosure of the very

privileged communications as to which protection is sought.  For this reason, and in

accordance with the Court's direction at the status conference, Mr. Brockman is now

submitting the documents for in camera review.  Trans. at pp. 15–18.  This Memorandum

sets out the legal principles that protect the forty-four emails that remain at issue.  To

provide the Court with the appropriate context concerning the parties to and subject matter

of the emails at issue, as part of the in camera submission of documents, Mr. Brockman is

also providing an Appendix to this Memorandum that sets out the exact excerpt from

Mr. Brockman's privilege logs as to each document, followed by a further explanation of

the basis of the privilege assertion for that document.[6]

---

[6] The United States' Letter Motion cites to Log Nos. 8 and 206 from the September 4, 2020 privilege log, which were withheld solely on the basis of marital privilege.  The government has not meaningfully challenged the assertion of privilege for either of these documents, and it could not do so successfully given that each email was sent solely to Mr. Brockman's wife.  *See United States v. Miller*, 588 F.3d 897, 904 (5th Cir. 2009).  Defense counsel believes that the government may instead have intended to identify Log Nos. 10 and 208, which are related to other emails cited in the United States' Letter Motion.  To avoid any subsequent need to address these issues should the government determine that it has made a mistake, Mr. Brockman will also address these two additional emails in this Memorandum and in the Appendix.

## ARGUMENT

The government's sole basis for questioning the privilege asserted as to the challenged emails is that they were sent by Mr. Brockman to non-lawyers.  However, as explained on the privilege logs, the challenged documents are protected by the attorney-client privilege because they directly discuss or otherwise tend to reveal the substance of Mr. Brockman's communications with his attorneys, and were sent only to other individuals whose participation in the communication was within the scope of the privilege.  Many of the challenged emails are also covered by work-product privilege, which is not waived by disclosure to third parties, and the application of which the government does not dispute.  Providing additional detail to the government as to the substance of the challenged emails would reveal the very information these privileges are designed to protect, and therefore is not merited.

I.   **THE CHALLENGED DOCUMENTS ARE PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE**

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law," and is intended "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  The privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client."  *Id.*  The privilege thus protects both confidential communications from a client to an attorney, and communications from an attorney to a

client that might disclose the substance of the client's communication. *Hodges, Grant & Kaufmann v. I.R.S.*, 768 F.2d 719, 720–21 (5th Cir. 1985).

The general rule is that disclosure of an otherwise privileged communication to a third person may eliminate the privilege. *Id.* However, there are several well-established exceptions to this general rule, at least three of which protect the challenged documents. First, privilege is not waived by confidential discussions of attorney advice among corporate stakeholders. *TIGI Linea Corp. v. Pro. Prods. Grp., LLC*, 2020 WL 7773581, at *6 (E.D. Tex. Dec. 30, 2020). Second, "communications between the client and his agent made for the purpose of facilitating the rendition of legal services" remain privileged where the communications are made confidentially. *See Grand Jury Proc. Under Seal v. United States*, 947 F.2d 1188, 1191 (4th Cir. 1991). Finally, there is no waiver "if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication." *Hodges*, 768 F.2d at 721. Each of the challenged documents falls into at least one of these categories, and therefore the communications continue to be protected by the attorney-client privilege.

### A. Attorney-Client Privilege Is Preserved In Communications Among Corporate Stakeholders

Courts have long recognized a need for attorney-client privilege in the context of communications among corporate employees, managers, and other stakeholders to allow for the provision of effective legal advice within the corporate context. In particular, "internal communications that reflect matters about which the client intends to seek legal advice are protected," because such communications "are comparable to notes a client

would make to prepare for a meeting with her lawyer." *Havel v. Dentsu McGarry Bowen UK, Ltd.*, 2015 WL 409837, at *2 (S.D. Tex. Jan. 29, 2015) (quoting *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002)).   Similarly, communications among corporate stakeholders that "discuss or transmit legal advice given by counsel" also remain privileged. *Id.* (quoting *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, at *5 (N.D. Cal. Mar. 11, 2011)); *see also SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 518 (D. Conn. 1976) ("A privileged communication should not lose its protection if an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation.").

Many of the challenged emails fall within the heart of this doctrine.  As the privilege log reflects, many of the emails at issue are part of longer discussions in which attorneys offered advice and corporate stakeholders discussed that advice.  Emails listed on the September 4, 2020 privilege log as Log Nos. 16, 123, 205, 208, 234, 238, 239, 242, 267, 317, 345, 389, 406, and 416 fall within this protection.  These documents are generally described in the privilege logs with the phrase "Email chain containing confidential attorney-client communication," reflecting the primary reason they remain privileged.

Separately, many of the emails reflect discussions among corporate stakeholders regarding questions that need to be asked of attorneys or information that needs to be shared with attorneys.  Such discussions remain privileged even if no attorney is included on the email, and thus are not subject to disclosure here.  *In re New York Renu with Moistureloc Prod. Liab. Litig.*, 2008 WL 2338552, at *10 (D.S.C. May 8, 2008) ("Communications containing information compiled by corporate employees for the purpose of seeking legal

advice and later communicated to counsel are protected by attorney-client privilege.");
*accord, Havel*, 2015 WL 409837, at *2.

Emails listed on the September 4, 2020 privilege log as Log Nos. 9, 10, 16, 115, 123, 210, 252, 267, 290, 319, 345, 404 and 520 and on the September 6, 2021 privilege log as Log No. 49 fall within this protection.  These emails are generally described in the privilege logs as "requesting information needed to render confidential legal advice," "reflecting the request for, and receipt of, confidential legal advice," or similar language describing the basis for the assertion of privilege.

**B.      Attorney-Client Privilege Applies To Communications With Third Parties Made For The Purpose Of Allowing The Client To Obtain Informed Legal Advice**

Because the purpose of the attorney-client privilege is to ensure effective communication between attorneys and clients to allow attorneys to provide accurate advice, it is unsurprising that the privilege is not waived where confidential communication with an agent of the client or the attorney is necessary to allow the client to obtain informed legal advice.  *See, e.g., Pasadena Ref. Sys. Inc. v. United States*, 2011 WL 1938133, at *1 (N.D. Tex. Apr. 26, 2011) (noting that "the privilege extends to the [client's] representative only for communications intended to help the lawyer provide legal services to the client"), *report and recommendation adopted*, 2011 WL 1960555 (N.D. Tex. May 19, 2011); *see also, e.g.*, *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991) ("When disclosure to a third party is necessary for the client to obtain informed legal advice, courts have recognized exceptions to the rule that disclosure waives the attorney-client privilege."); *Diamond Resorts U.S. Collection Dev., LLC v. U.S. Consumer*

*Att'ys, P.A.*, 519 F. Supp. 3d 1184, 1197 (S.D. Fla. 2021) ("'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation."); *United States v. Salamanca*, 244 F. Supp. 2d 1023, 1025–26 (D.S.D. 2003) ("attorney-client privilege extends to the necessary intermediaries and agents through whom the communications are made").

Thus, for example, the attorney-client privilege extends to communications with accountants where the "accountants' role was to facilitate an accurate and complete consultation between the client and the attorney about the former's financial picture." *United States v. Judson*, 322 F.2d 460, 462 (9th Cir. 1963). Courts have also consistently held that "passing a communication to a secretary does not waive privilege." *United States v. Koerber*, 2011 WL 2174355, at *9 (D. Utah June 2, 2011); *see also United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997) (describing "a small circle of 'others' with whom information may be shared without loss of the privilege (e.g., secretaries…)"); *Abbott Lab. v. Airco, Inc.*, 1985 WL 3596, at *4 (N.D. Ill. Nov. 4, 1985) (privilege persists for communications to "ministerial agents of the attorney (such as clerks, secretaries and stenographers) or of the client who facilitate transmission of the communication.").

Many of the emails at issue are protected under these principles because they involve either communications from Mr. Brockman to an agent in order to facilitate an attorney's provision of legal advice or the passing of an otherwise-privileged communication to a secretary or administrative assistant. Emails listed on the September 4, 2020 privilege log as Log Nos. 311, 324, 328, 373, 459, 481, 484, 485, 486, 507, 509,

and 513 and on the September 6, 2021 privilege log as Log Nos. 15, 24, and 32 fall within

this protection.  These emails are generally described in the privilege log as "containing

confidential attorney-client communication" and/or "requesting information needed to

render further legal advice," as appropriate.

        **C.**      **Attorney-Client Privilege Is Not Waived By Communications Among Those With Common Legal Interests**

Finally, attorney-client privilege is preserved in communications among individuals

with a common legal interest where the purpose of the communication is to enable a

coordinated legal strategy and informed consultation with attorneys.  The federal common-

interest doctrine does not require that a suit be pending when the communications are

made—to the contrary, the Fifth Circuit has expressly recognized that it also applies to

"communications between *potential* co-defendants and their counsel."  *In re Santa Fe Int'l*

*Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (emphasis in original).  Courts in the Fifth Circuit

and elsewhere have also acknowledged that "the privilege extends to co-plaintiffs in

litigation."  *BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Est. Advisor, Inc.*, 614

F. App'x 690, 703 (5th Cir. 2015).  The common-interest privilege is not defeated by the

fact that parties may have had a common commercial interest in addition to their common

legal interest.  *See, e.g.*, *Schaeffler v. United States*, 806 F.3d 34, 41 (2d Cir. 2015) (finding

common-interest privilege applicable where "documents in question were all directed to

the tax issues, a legal problem albeit with commercial consequences").

Many of the documents described above—involving the discussion of legal advice

among corporate stakeholders or between Mr. Brockman and his agents—also implicate

the common-interest privilege, as noted on the privilege logs.  Certain of the withheld

documents are also primarily protected by this doctrine, as they directly involve the sharing

of legal information among those with common legal interests as to the subject matter of

the communications.  Emails listed on the September 4, 2020 privilege log as Log Nos.

123, 205, 208, 210, 234, 252, 262, 263, 267, 282, 319, 425, 459, 469 and 520 and on the

September 6, 2021 privilege log as Log Nos. 15, 24 and 32 fall within this protection.

These emails are generally described in the privilege log as "confidential attorney-client

communications . . . regarding settlement of a legal dispute," "regarding litigation in

connection with a legal dispute," or "reflecting a common legal interest."

## II.      MANY OF THE CHALLENGED DOCUMENTS ARE ALSO PROTECTED BY WORK-PRODUCT IMMUNITY, WHICH IS NOT WAIVED BY DISCLOSURE TO THIRD PARTIES

While not addressed in the United States' Letter Motion, a number of documents

included on the privilege logs are also protected by work-product immunity in addition to

the attorney-client privilege.  The work product doctrine "applies to documents prepared

in anticipation of litigation." *In re Kaiser Aluminum & Chem. Co*., 214 F.3d 586, 593 (5th

Cir. 2000).  "It also applies to documents generated by counsel, materials prepared by,

mental impressions developed, and communications between the party or its

representatives, including its attorneys, consultants, insurers, indemnitors, employees, or

agents in anticipation of litigation." *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C*., 258

F.R.D. 149, 162 (S.D. Tex. 2009).  The protection is designed to "promote the adversary

system by safeguarding the fruits of an attorney's trial preparations from the discovery

attempts of an opponent." *Shields v. Sturm, Ruger & Co*., 864 F.2d 379, 382 (5th Cir.

1989).  Work-product protection is therefore not waived by disclosure of work product to third parties.  *Id.*

Emails listed on the September 4, 2020 privilege log as Log Nos. 16, 262, 263, 267, 282, 311, 324, 328, 373, 425, 469, 484, 485, 486, 507, 509, and 513 fall within this protection.  Many of the emails for which work product protection is claimed directly relay attorney advice or opinions regarding potential or ongoing litigation, including draft legal documents.  These emails are plainly protected as attorney work-product.  *See, e.g.*, *Lambert v. Chase Manhattan Bank, N.A.*, 1996 WL 182268, at *1 (S.D.N.Y. Apr. 12, 1996) ("production of the drafts would implicate the work-product doctrine by tending to reveal the strategies and mental impressions of counsel").  Other withheld emails would tend to reveal attorney impressions and strategies by, for example, revealing which facts and documents attorneys considered important enough to obtain and review.  These emails, too, are protected by the work-product doctrine.  *See, e.g.*, *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 961 F. Supp. 1288, 1290 (E.D. Mo. 1997) (recognizing work-product protection for anything that would "tend to reveal counsel's advice, counsel's view as to the significance of specific facts, or counsel's questions to third-party witnesses"), *aff'd*, 132 F.3d 1252 (8th Cir. 1998).  As noted above, the presence of non-attorney third parties on these communications does not destroy the privilege.  Even if these emails were not otherwise protected by the attorney-client privilege, then, they would still be protected from disclosure.

III.   **THE GOVERNMENT'S COMPLAINTS ABOUT THE PRIVILEGE LOG SIMPLY REFLECT THE LIMITS OF PRIVILEGE LOGS, AND IN ANY EVENT ARE MOOT GIVEN THE COURT'S IN CAMERA REVIEW**

The United States' Letter Motion does not identify any deficiency in the description of any withheld document, but rather complains broadly that the government does not understand the basis for the assertion of attorney-client privilege for any email sent by Mr. Brockman to a non-attorney. A privilege log is adequate so long as it provides "sufficient information to permit courts and other parties to test the merits of the privilege claim." *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (quotations omitted). That standard was more than satisfied here, where the privilege logs identified the dates on which the emails were sent, the author and recipients of the emails, the specific privileges asserted for each email, and a description of the basis for the assertion of the privilege. The government's blanket contention that it apparently does not understand how the attorney-client privilege may apply to communications with non-attorneys in many circumstances—which, as outlined above, is clearly the law—does not demonstrate any deficiency with the privilege logs, much less Mr. Brockman's assertion of the privileges.

## **CONCLUSION**

Because the privilege logs were adequate as written and the challenged documents

are privileged, the Court should not grant any further relief with respect to these documents.

Dated:  September 23, 2021

/s/ *Jason S. Varnado*
Jason S. Varnado
Texas Bar No. 24034722
SDTX Ad. ID No. 32166
Email: jvarnado@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone: 832-239-3939
Facsimile: 832-239-3600

Kathryn Keneally (*Admitted Pro Hac Vice*)
New York Bar No. 1866250
Email: kkeneally@jonesday.com
James P. Loonam (*Admitted Pro Hac Vice*)
New York Bar No. 4035275
Email: jloonam@jonesday.com
Georgina N. Druce (*Admitted Pro Hac Vice*)
New York Bar No. 5267208
Email:gdruce@jonesday.com
Colleen E. O'Connor (*Admitted Pro Hac Vice*)
New York Bar No. 5764725
Email: colleenoconnor@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212-326-3939
Facsimile: 212-755-7306

Conor G. Maloney (*Admitted Pro Hac Vice*)
District of Columbia Bar No. 1632584
Email: cmaloney@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

- 15 -

Telephone: 202-879-3450
Facsimile: 202-626-1700

*Attorneys for Defendant*
*Robert T. Brockman*

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of September, 2021, this document was served by electronic filing service on all counsel of record.

/s/ *Jason S. Varnado*

Jason S. Varnado