UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

\- - -

THE HONORABLE GEORGE C. HANKS, JR., JUDGE PRESIDING

UNITED STATES OF AMERICA, No. 4:21-cr-00009-1

Plaintiff,

vs.

ROBERT T. BROCKMAN,

Defendant.

**STATUS CONFERENCE**

**PROCEEDINGS HELD BY VIDEO CONFERENCE**

OFFICIAL REPORTER'S TRANSCRIPT OF PROCEEDINGS

Houston, Texas

**November 4, 2021**

APPEARANCES:

For the Plaintiff: Christopher Magnani, Esq.
Lee F. Langston, Esq.

For the Defendant: Jason Varnado, Esq.
Kathryn Keneally, Esq.

Reported by: Nichole Forrest, RDR, CRR, CRC
Official Court Reporter
United States District Court
Southern District of Texas
nichole_forrest@txs.uscourts.gov

Proceedings recorded by mechanical stenography. Transcript produced by Reporter on computer.

PROCEEDINGS

09:36:26
09:36:28

(The following proceedings held in open court.)
(The following proceedings also held by videoconference.)

10:17:57
10:17:57

* * *

04:00:58 THE COURT: Good afternoon, everyone. The 04:02:53 next case on the Court's docket is Cause No. 21-cr-9-1, 04:02:58 the United States of America versus Mr. Brockman.

04:03:03 Can counsel on the line that will be 04:03:04 speaking just introduce themselves for the Court and state 04:03:07 the parties they represent starting with the government?

04:03:16 MR. MAGNANI: Good afternoon, Your Honor. 04:03:16 This is Christopher Magnani for the United States, and I'm 04:03:18 joined by Lee Langston.

04:03:18 THE COURT: Okay. Welcome.

04:03:20 MR. MAGNANI: And Boris Borge.

04:03:23 THE COURT: Okay. Welcome.

04:03:23 MR. VARNADO: And good afternoon, Your 04:03:24 Honor. This is Jason Varnado on behalf of Mr. Brockman, 04:03:25 and I'm joined by my colleagues Kathy Keneally and James 04:03:30 Loonam. And our colleague Julia Camp is with Mr. Brockman 04:03:34 to try to get his video on if she can turn his camera on 04:03:41 now.

04:03:41 THE COURT: Great. Yes. I can see

04:03:42 Mr. Brockman. Welcome, Mr. Brockman.

04:03:46 Well, everyone, thank you for being available on short notice. I wanted to ask you a question about the hearing on Monday. I wanted to find out whether the parties had any thoughts on whether or not the hearing should or should not be sealed. I didn't think anybody wanted the hearing sealed, but then the government filed the expert reports that were under seal. So I wasn't sure whether or not you wanted the hearing -- the competency proceedings under seal.

04:04:20 And there is a number of different ways we can accomplish that. We can have the hearing, and then -- and then -- and seal it, and then after the hearing redact any portions that Mr. Brockman might not want to be public with respect to his medical records or we can seal the entire hearing.

04:04:44 I wasn't sure where the parties stood on that. So before we got started on Monday, I wanted to speak to the parties and find out what you would like me to do.

04:04:57 MR. MAGNANI: We do not think that the hearing should be sealed, Your Honor.

04:05:07 THE COURT: Okay. Great.

04:05:07 MR. VARNADO: And, Your Honor, on behalf of Mr. Brockman, you know, we've not made the request that

04:05:08 it be sealed, and we actually don't think there is a legal ground to do so or we might have made that motion. So I think that's where we stand.

THE COURT: Great. We'll have -- the hearing will not be sealed then. I know that some folks want to request to attend by Zoom, but I'm not going to open up a Zoom link. If they're going to attend -- the hearing will be open, but it will be open in public. So anybody that wants to come to the courtroom will be available to come on down.

MR. VARNADO: And, Your Honor, I would say that the defense would object to a Zoom link. So glad that that's where you landed, and that it's an open hearing, but not something people can just log in to as the status conference right now.

THE COURT: Right.

MR. VARNADO: And, Judge, you said "Monday." I just want to make sure we're clear, it's a week from Monday that the conference starts. Just so -- to make sure we're on the same page.

THE COURT: Right. A week from Monday. Sorry. Busy day.

MR. VARNADO: Yeah.

THE COURT: Okay. Well, thank you all for your time this afternoon. I won't keep you. I know it's

04:06:07 late in the afternoon, but I just wanted to get that issue
04:06:09 cleared up before we got started a week from Monday.

04:06:13 MR. VARNADO: Judge, we did have one more
04:06:14 issue, if you don't mind --

04:06:16 THE COURT: Sure.

04:06:17 MR. VARNADO: -- while we have the Court's
04:06:18 time and attention. You'll recall from Monday that my
04:06:21 colleague, Ms. Keneally, had noted that two of the
04:06:24 government's experts had changed their opinions from May
04:06:29 of this year, stating that Mr. Brockman was competent to
04:06:34 their more recent reports in October stating they couldn't
04:06:37 tell and make a determination as to whether he was
04:06:39 competent.

04:06:40 And at the hearing on Monday, you know, we
04:06:42 raised this, said, look, we don't want to get sandbagged
04:06:46 if there's some change at the very end, and you asked
04:06:48 Mr. Langston, you know, based upon what you have right
04:06:51 now, do you plan on supplementing your expert reports --
04:06:53 and this was on Monday -- and he said, "no, Your Honor,"
04:06:56 because the parties had already exchanged expert reports.

04:06:58 So last night about an hour after we got
04:07:00 the notification from Mr. Thomas that we were going to
04:07:04 have this status conference, we got an e-mail from
04:07:06 Mr. Langston saying, well, actually one of our experts,
04:07:10 Dr. Dietz, is going to change his opinion again, and now

say that Mr. Brockman is not competent.

And so, you know, we just got that report this afternoon.  We're digesting it.  We'll let you know if we have any issues there.  But in response to Mr. Langston's e-mail, we followed up and said, well, look, there is still Dr. Darby, he's the other doctor who's hired by the government that says I can't determine if Mr. Brockman is competent.  And we said, all right. You've got all the information.  We're not exchanging medical documents.

You know, is he going to -- is he still remaining where he can't make a determination, and the response was, as of now, he has no intent to file a supplemental report.

And I just want to be -- you know, get the record clear that -- and there is nothing else for Dr. Darby to consider.  And that -- we should just get a commitment from the government that whatever Dr. Darby's supplemental report is, that is the extent of his opinions.

THE COURT:  Mr. Langston, response?

MR. LANGSTON:  Sure, Your Honor.  So after the hearing on Monday, we did have discussions with our doctors to ensure that the defense got what they needed as soon as they could get it.

04:08:19 You know, we understood then, you know, we had a call with them Tuesday and learned that they were still going through all of the material. You know, there were over, I think, eight gigabytes of information exchanged between the two parties.

So they told us that on Tuesday. On Wednesday, Dr. Dietz told us that after having reviewed the material, including material he did not have access to until Monday, he -- you know, he now was able to come to an opinion on the defendant's competency.

You know, we said, look, you know, you need to file a supplemental report immediately. You know, he did prepare that. It's three pages. So, you know, we do understand the defense is going through it. You know, we have asked all three experts if they have any further updates. I can't imagine they have gone through all eight gigabytes, but they've all told us that at this point there are no further updates.

THE COURT: Okay. Well, I guess Mr. Varnado has is that how can he prepare for a competency hearing if he doesn't know what the expert opinions are definitely going to be? I mean, I guess -- I'm putting kind of words in your mouth, Mr. Varnado, but that is kind of what I'm hearing.

I mean, how can they prepare -- I mean, I

04:09:39 guess I'm trying to figure out what the issue -- what --

04:09:41 (Parties speaking simultaneously.)

04:09:41 THE COURT: -- the additional documents.
04:09:44 Oh, I'm sorry.

04:09:44 MR. VARNADO: Judge, I apologize, Judge,
04:09:45 with the delay, I didn't mean to talk over you.

04:09:48 THE COURT: Oh, no. That's okay. I spoke
04:09:49 over you. I'm sorry.

04:09:50 MR. VARNADO: No. That's exactly what
04:09:51 we're trying to -- that -- you stated our point exactly.
04:09:53 And I'll just note that they've had, you know -- I don't
04:09:56 have the gigabytes that Mr. Langston is talking about --
04:09:58 they've had the reports, you know, since Friday. And we
04:10:01 got theirs a day late later than supposed to on Saturday.

04:10:05 So, look, we're going to be happy to
04:10:07 cross-examine Dr. Dietz on his vacillating positions at
04:10:11 the hearing. But we need to know what is -- you know,
04:10:15 that Dr. Darby -- what he's put in his supplemental report
04:10:19 is the end of it, and he's not going to get on the stand
04:10:20 and say something else.

04:10:23 MR. LANGSTON: And, Your Honor, we have no
04:10:24 information to suggest that there are going to be any
04:10:25 other updates. I can't tell the Court that they have
04:10:29 reviewed all of the information and we have told them, you
04:10:32 know, look, if you're -- as you go through the

04:10:35 information, you know, the government is looking for the correct outcome in this case.

04:10:42 And so if they, you know, discover something that changes their opinion, we don't want them to be bound just to the reports that they have filed, obviously.

04:10:48 You know, again, we have no reason to believe that there are going to be any further supplements coming. If there was one, obviously, you know, we would turn that over as soon as we had it, you know, as we did with Dr. Dietz. We notified the defense as soon as we learned that he was planning on filing a supplement.

04:11:06 And obviously, if the defense is prejudiced, you know, they can file a motion to strike or, you know, we can cross that bridge when we get there.

04:11:19 THE COURT: Okay. Well, I -- here's the deal. Yes. We can cross the road before we get there, but I would rather not get there.

04:11:24 I would rather the experts, you know, look at documents now and figure out whether or not they are or are not going to have a supplemental report and get sort of a deadline for them.

04:11:35 Because if they come up with, you know, let's say they review it over this weekend and come up with something on Monday, you know, and provide a

04:11:43 supplemental expert report, you know, I -- Mr. Varnado's position is, well, I want to have the opportunity to have the time to be prepared to cross-examine him on that, and they may not be able to have that time. They might need to do additional research. I don't know. Just depending on what the opinion is.

So I guess what I would like is the experts to do everything they can to review those documents as quickly as possible to get -- if there is going to be a supplemental report, we need it now rather than, like, two or three days before the hearing.

So, Mr. Langston, can you speak with your -- the experts and impress upon them that if they are looking at the documents and think there may be something else, to let us know as soon as possible.

And then, Mr. Varnado, of course, I will give you the opportunity to object or, you know, raise whatever issues you wish with respect to the timing of the supplemental report.

MR. VARNADO: Thank you, Judge. And I -- just to be clear. I want to make sure I'm clear for the record. You know, Dr. Dietz, his second opinion was that he couldn't make a determination. His most recent opinion is that he has found Mr. Brockman competent. It's Dr. Darby now.

04:13:00 And I would like to request the Court give to them a deadline no later than Monday that if he's going to say anything other than it's his opinion that he can't determine whether Mr. Brockman is or is not competent -- because that's his present opinion -- if it's going to change from anything from that, that we be -- that we get a supplemental report by Monday. That is a week before the hearing. I think that is a reasonable request.

04:13:21 THE COURT: Mr. Langston.

04:13:22 MR. LANGSTON: As I said, Your Honor, we have already had that conversation with our doctors.

04:13:27 And so, as I said, we have no belief that there will be any further reports in this case. If there are some, we can cross that -- if you would like us to give them a further deadline of Monday, we're happy to do that.

04:13:40 But, as I said, right now, we have no information that there will be another one.

04:13:44 THE COURT: Here is what I'm going to do. A week from the hearing I think is reasonable. Any supplements need to be filed a week from -- need to be filed by Monday absent good cause.

04:13:58 And so they need to be filed by Monday.

04:14:00 If, Mr. Langston, they do need to file them later, I'm going to require them to show good cause

04:14:07 why they could not get a supplemental expert report before
04:14:09 then. I mean, because I don't know what they're looking
04:14:11 at. I don't know if there is -- you know, they need
04:14:13 additional information. I don't know.

04:14:15 But basically, I think it's reasonable to
04:14:17 have a cutoff of a week before the hearing for any
04:14:23 supplemental reports. And then absent good cause, I'm not
04:14:27 going to allow any supplements.

04:14:29 So if there is good cause, if they can
04:14:31 come back and explain to me -- excuse me, why they could
04:14:34 not get a supplemental report by Monday, that will be
04:14:38 great.

04:14:39 But Monday is the deadline. I think that
04:14:43 is reasonable.

04:14:45 MR. LANGSTON: That's reasonable.

04:14:47 MR. VARNADO: Thank you, Judge.

04:14:51 One other -- there was just a logistic
04:14:52 matter, if you don't mind. It'll just take a moment.

04:14:52 THE COURT: Sure.

04:14:54 MR. VARNADO: So the hearing is set to
04:14:55 begin on November 15th. I think the parties both believe,
04:14:58 based on our prior conversations, it's going to last a
04:15:01 full, you know, four to five days. You're going to hear
04:15:03 from lay witnesses, you're going to hear from expert
04:15:05 witnesses from both sides.

04:15:06 And we think it would benefit the proceeding and the Court if we were, you know, each side were afforded a short time for an opening statement, maybe not more than 15 minutes, to kind of set the stage for what's to come in the week ahead.

04:15:19 I'll note that there won't be a need for closing arguments. So we're not trying to treat this as a full-blown trial. There was a briefing schedule following the hearing, and I think that is where the parties can make their arguments and points to the Court about what happened at the hearing.

04:15:32 But we do request the Court allow each side to have a brief opening of no more than 15 minutes as we get started at the hearing on Monday, if that's agreeable to the Court.

04:15:43 THE COURT: Mr. Langston, do you have any problem with that?

04:15:45 I think it would be helpful to me. I mean, I've only up to this point got bits and pieces. I don't have the big picture so to speak yet of all the evidence. I mean, I've got -- I've seen some expert reports from both sides, but I've not seen the big picture.

04:16:02 So I think argument will be helpful.

04:16:05 Mr. Langston, I think it would be helpful

04:16:07 for the government as well.

04:16:08 MR. LANGSTON: If you think that would be helpful to you, Judge, we're happy -- we agree with the defense that that would be a useful exercise.

04:16:14 THE COURT: Okay. Then each side will get 15 minutes for opening. No closing, just opening. Just provide me a roadmap of where you're going. It's -- and the only reason why sometimes I hesitate about granting openings in this type of evidentiary hearing is the parties inevitable use it as a platform for argument.

04:16:35 This isn't argument. It's opening statement, just like it would be at a trial, which means that I need you to provide me a roadmap, not argue the case.

04:16:43 But this is to provide me with a roadmap of what the evidence is going to show, and what I need to be focused on when I'm listening to the evidence. If you start arguing your case, then we're going to cut things short because that -- I don't need argument. I need a roadmap.

04:17:03 So everybody is clear, we're doing opening statements, but it's an opening statement like in a trial in the sense that it's not argument. It is basically opening statement, which will give me a roadmap and kind of tell me the story as to how all this evidence pieces

04:17:19 together -- all the pieces of evidence fit together.

04:17:23 MR. VARNADO: That is very helpful, Judge.

04:17:25 And I think that, you know, given -- what 04:17:27 you've seen and not seen so far having a, you know, sort 04:17:31 of introduction to the matter at large from each side will 04:17:34 be helpful, and then we'll obviously get underway and have 04:17:36 a lengthy hearing.

04:17:37 THE COURT: Okay. Great.

04:17:40 Anything else we need to talk about?

04:17:43 MR. LANGSTON: Yes, Your Honor, just very 04:17:43 briefly. The parties exchanged witness lists back in 04:17:47 August. And I think, you know, that was a month after the 04:17:50 original hearing, and, you know, I understand the tendency 04:17:53 of both parties to include, you know, every name that 04:17:55 could conceivably be relevant, but -- so the witness list 04:17:59 we were looking at from the defense has 27 names on it 04:18:02 right now.

04:18:03 And I think given the timeline, it is 04:18:04 likely that there will not be 27 witnesses called or at 04:18:09 least I, you know, I don't think we're going to keep to 04:18:11 our five days if there are.

04:18:12 So if, you know, by sometime next week if 04:18:14 we could get a pared down witness list, I think that would 04:18:19 more efficiently help with the preparation.

04:18:20 THE COURT: Okay. Yes. So --

MR. VARNADO: I'll be happy to do that, Judge.

THE COURT: Okay. So -- and I want an additional requirement on the witness list. So I want you guys to pare down the witness list and provide me the witness list, but I also want you -- it's a little bit of homework, but you have a week to do it.

With respect to the witnesses, first of all, the night before you put on the witnesses you need to let the other side know which witnesses you're going to call and approximately how long they're going to be on the stand for any sort of direct examination.

And the reason I need to know that is because inevitably, if the other side isn't prepared, these hearings take much, much longer than anticipated or necessary. We're not going to do this by ambush. Basically, by 5:00 p.m. the night before, if the government is going to be putting on witnesses, you need to let Mr. Varnado know we anticipate calling X, Y, and Z witnesses, and we expect, at least from our direct, that they're going to be on for X amount of time. That way everybody has an idea of, you know, who to get ready for so we're not doing this on the fly.

And that applies to both sides. So when it's your turn, Mr. Varnado, you let the government know

04:19:43 the night before by 5:00 p.m. who the witnesses are going
04:19:47 to be and approximately how long you anticipate them going
04:19:49 on the stand -- being on the stand.

04:19:50 Now, I know things fluctuate. Sometimes
04:19:53 witnesses take longer than expected. But you guys, you've
04:19:57 been working this case for a long time. You should have a
04:19:59 ballpark idea of how long it's going to take for direct.

04:20:03 Cross, of course, you know, it fluctuates.
04:20:12 But you'll know for direct, and that will give you an idea
04:20:14 when we're going along as to whether we're on track for
04:20:16 getting done in four or five days or is this going to take
04:20:18 a whole lot longer.

04:20:20 MR. VARNADO: Your Honor, I was just going
04:20:21 to ask -- I apologize -- you know, given that Monday we'll
04:20:22 get going, we'll get started, and, you know, if estimates
04:20:27 are correct, go through at least a third of the
04:20:28 government's case. We would ask that we get their
04:20:30 witnesses for Monday and their proposed order by Friday
04:20:33 before the hearing starts so we're not waiting until
04:20:36 Sunday at 5:00 to figure this out, and we can get that on
04:20:39 Friday just so that we can get started and get going in a
04:20:42 smoother fashion.

04:20:44 MR. LANGSTON: We're happy to do that,
04:20:45 Your Honor, with the exception of we have one witness that
04:20:47 is flying in on Friday.

04:20:49 So there may be, you know -- if something happens to his flight, that may shuffle the order, but we can provide the witness -- we can provide the list as we know it on Friday.

THE COURT: Okay. I mean, typically, even over the weekend when I'm in trial, I don't require until 5:00 on Sunday, the night before.

So, you know, try to get it to them on Friday, but if you can't, if you can explain to me why you can't, that's not a problem. I mean, I know it would -- it makes it easier for everyone. But my rule is 5:00 p.m. the night before.

So, you know, if you like, Mr. Langston, you can try to get it to him by Friday, but if you can't get it to him by Friday, I'm not going to -- I'm not going to hold it against you. Because thing -- I mean, you've got a weekend.

And inevitably what happens -- and I know, Mr. Varnado, you like the extra days, but the problem is over the weekend, a lot happens when you're preparing witnesses; you know, strategy might change. People might be available. You might need more time with people, and you might change the order.

So I know Friday would be helpful to you, but Sunday night is the deadline. But if -- Mr. Langston,

04:22:01 if you can get it by Friday, by all means. Parties, try
04:22:05 to do so, but I'm not going to hold you to it.

04:22:10 MR. VARNADO: Understood, Judge.

04:22:12 THE COURT: Okay.

04:22:13 Anything else we need to talk about?

04:22:17 MR. LANGSTON: That's everything from the
04:22:18 government, Your Honor.

04:22:18 THE COURT: Great.

04:22:21 As far as exhibits that are going to be
04:22:24 used for the hearing, I just want to let you guys know
04:22:27 that you-all are going to be responsible for keeping track
04:22:30 of any exhibits that are admitted.

04:22:32 And then at the end of the hearing, I'm
04:22:34 going to have you-all sign, basically, an affidavit saying
04:22:37 these are the documents that the Court -- that were
04:22:40 admitted during the hearing, and these are the documents
04:22:42 that the Court is to consider as part of the competency
04:22:47 hearing.

04:22:48 And the reason I'm doing that is that I
04:22:50 don't want a situation where there were documents that
04:22:54 should have been sent to me that weren't sent to me or
04:22:57 should have been redacted or weren't redacted, and I end
04:22:59 up getting something that I'm not supposed to get or I get
04:23:03 too much stuff from either side.

04:23:07 So you-all, during the course of the

04:23:08 hearing, keep track of what -- I'll have my own list, but you-all keep track of what was admitted and not admitted. And at the end of the hearing, I need you to put all that together in a box, sign the affidavit saying these are the documents that we understand were admitted, and you guys got to get together and agree to all that.

Then it comes to me, and then those are the documents I'll work from with respect to making my decision so there is no question on appeal, what I considered or what I didn't consider, and there is no question on appeal what -- you know, what was admitted and what wasn't admitted.

Can you guys do that?

THE ATTORNEYS IN UNISON: Yes, Your Honor.

THE COURT: Great.

MR. LANGSTON: Your Honor, would you like a working copy? We are planning on making exhibit binders. Do you want a working copy for during the hearing?

THE COURT: Yes. So the copies that you're putting together in that box, that is going to be the official copies for the record. You know, so I'll know exactly what I have.

But I need a binder -- just one binder. I don't need any more than one; just one binder of all the

exhibits that you are going to try to -- both sides are going to try to admit.

MR. LANGSTON: Okay.

THE COURT: And the last thing is: Are there any documents that you-all agree should be pre-admitted?

That might streamline things. That is, both sides agree these documents should be included into evidence. Because if they are those documents -- and I'm not pressuring you to agree or not agree -- but if there are those documents, it might make it easier at the beginning of the hearing to just go ahead and pre-admit those.

But if they're not, don't worry about it. But if -- if everybody agrees are -- they should be admitted for purposes of the hearing. We can go ahead and get that on the record.

That way we don't have to, you know, as I say, do it the old-fashioned way, you know, show it to opposing counsel, ask to approach the witness, show the witness, lay the foundation.

You know, just go ahead -- you can go ahead and use the documents. That might save a little time.

MR. VARNADO: There probably will be some

04:25:14 of those, Judge, and we'll be sure to coordinate with the
04:25:16 government on which ones we can align on and get through
04:25:18 that process quicker. That is a great idea.

04:25:21 THE COURT: Great. Okay. That's pretty
04:25:23 much all that I can think of.

04:25:25 I was going through my checklist. The
04:25:28 first thing, as I said, we dealt with which was the
04:25:30 whether or not sealed, and then the order of witnesses and
04:25:35 approximate times, and then the evidence.

04:25:36 Anything else that you guys can think of
04:25:38 that we need to address before next Monday?

04:25:44 MR. LANGSTON: No, Your Honor.

04:25:45 MR. VARNADO: Not from the defense, Your
04:25:47 Honor. Thank you.

04:25:47 THE COURT: Okay. Well, if anything comes
04:25:48 up between now and next Monday, please let me know.

04:25:52 If there is any problems with expert
04:25:54 reports, Mr. Varnado and Mr. Langston, let me know. I'm
04:25:56 available. I'll get on the line like we're doing this
04:26:01 afternoon, and we'll talk it through.

04:26:03 MR. VARNADO: Very good, Judge. Thank you
04:26:05 so much for your time.

04:26:05 THE COURT: Thank you-all for having this
04:26:10 hearing late in the afternoon. I really appreciate it.
04:26:11 Take care you-all. Thanks. Goodbye.

(Proceedings concluded.)

C E R T I F I C A T E

I hereby certify that pursuant to Title 28, Section 753 United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings in the above matter.

Certified on November 4, 2021.

/s/ Nichole Forrest
Nichole Forrest, RDR, CRR, CRC

## /

**/s** [1] - 23:17

## 1

**15** [3] - 13:4, 13:13, 14:6
**15th** [1] - 12:21

## 2

**2021** [2] - 1:13, 23:15
**21-cr-9-1** [1] - 2:8
**27** [2] - 15:16, 15:19
**28** [1] - 23:10

## 4

**4** [2] - 1:13, 23:15
**4:21-cr-00009-1** [1] - 1:4

## 5

**5:00** [5] - 16:17, 17:1, 17:20, 18:7, 18:11

## 7

**753** [1] - 23:10

## A

**able** [2] - 7:9, 10:4
**absent** [2] - 11:22, 12:7
**access** [1] - 7:8
**accomplish** [1] - 3:12
**additional** [4] - 8:3, 10:5, 12:4, 16:4
**address** [1] - 22:11
**admit** [2] - 21:2, 21:12
**admitted** [9] - 19:12, 19:16, 20:2, 20:5, 20:11, 20:12, 21:6, 21:16
**affidavit** [2] - 19:14, 20:4
**afforded** [1] - 13:3
**afternoon** [8] - 2:7, 2:13, 2:19, 4:25, 5:1, 6:3, 22:20, 22:24
**agree** [6] - 14:3, 20:6, 21:5, 21:8, 21:10
**agreeable** [1] - 13:15
**agrees** [1] - 21:15
**ahead** [5] - 13:5, 21:12, 21:16, 21:22, 21:23
**align** [1] - 22:2
**allow** [2] - 12:8, 13:12

**ambush** [1] - 16:16
**AMERICA** [1] - 1:4
**America** [1] - 2:9
**amount** [1] - 16:21
**anticipate** [2] - 16:19, 17:2
**anticipated** [1] - 16:15
**apologize** [2] - 8:5, 17:14
**appeal** [2] - 20:9, 20:11
**APPEARANCES** [1] - 1:15
**applies** [1] - 16:24
**appreciate** [1] - 22:24
**approach** [1] - 21:20
**approximate** [1] - 22:9
**argue** [1] - 14:13
**arguing** [1] - 14:18
**argument** [5] - 13:24, 14:10, 14:11, 14:19, 14:23
**arguments** [2] - 13:7, 13:10
**attend** [2] - 4:6, 4:7
**attention** [1] - 5:7
**ATTORNEYS** [1] - 20:14
**August** [1] - 15:12
**available** [4] - 3:3, 4:10, 18:22, 22:19

## B

**ballpark** [1] - 17:7
**based** [2] - 5:17, 12:22
**begin** [1] - 12:21
**beginning** [1] - 21:12
**behalf** [2] - 2:20, 3:24
**belief** [1] - 11:12
**benefit** [1] - 13:1
**between** [2] - 7:5, 22:16
**big** [2] - 13:20, 13:22
**binder** [3] - 20:24, 20:25
**binders** [1] - 20:18
**bit** [1] - 16:6
**bits** [1] - 13:19
**blown** [1] - 13:8
**Borge** [1] - 2:17
**Boris** [1] - 2:17
**bound** [1] - 9:5
**box** [2] - 20:4, 20:21
**bridge** [1] - 9:15
**brief** [1] - 13:13
**briefing** [1] - 13:8
**briefly** [1] - 15:11
**Brockman** [11] - 2:9, 2:22, 3:1, 3:14, 3:25, 5:10, 6:1, 6:8, 10:24, 11:4
**BROCKMAN** [1] - 1:7
**brockman** [1] - 2:20
**busy** [1] - 4:22
**BY** [1] - 1:10

## C

**camera** [1] - 2:23
**Camp** [1] - 2:22
**care** [1] - 22:25
**case** [7] - 2:8, 9:2, 11:13, 14:14, 14:18, 17:6, 17:17
**Certified** [1] - 23:15
**certify** [1] - 23:10
**change** [5] - 5:16, 5:25, 11:6, 18:21, 18:23
**changed** [1] - 5:9
**changes** [1] - 9:4
**checklist** [1] - 22:6
**Christopher** [2] - 1:16, 2:14
**clear** [5] - 4:18, 6:16, 10:21, 14:21
**cleared** [1] - 5:2
**closing** [2] - 13:7, 14:6
**Code** [1] - 23:11
**colleague** [2] - 2:22, 5:8
**colleagues** [1] - 2:21
**coming** [1] - 9:9
**commitment** [1] - 6:18
**competency** [4] - 3:9, 7:10, 7:21, 19:17
**competent** [6] - 5:10, 5:13, 6:1, 6:8, 10:24, 11:4
**computer** [1] - 1:24
**conceivably** [1] - 15:15
**concluded** [1] - 23:1
**CONFERENCE** [2] - 1:9, 1:10
**conference** [3] - 4:15, 4:19, 5:23
**consider** [3] - 6:17, 19:17, 20:10
**considered** [1] - 20:10
**conversation** [1] - 11:11
**conversations** [1] - 12:22
**coordinate** [1] - 22:1
**copies** [2] - 20:20, 20:22
**copy** [2] - 20:17, 20:18
**correct** [3] - 9:2, 17:16, 23:11
**counsel** [2] - 2:10, 21:20
**course** [3] - 10:16, 17:8, 19:25
**court** [1] - 2:3
**COURT** [33] - 1:1, 2:7, 2:16, 2:18, 2:25, 3:23, 4:4, 4:16, 4:21, 4:24, 5:5, 6:21, 7:19, 8:3, 8:7, 9:16, 11:9, 11:19, 12:19, 13:16, 14:5, 15:8, 15:25, 16:3, 18:5, 19:4, 19:8, 20:15, 20:20, 21:4, 22:4, 22:15, 22:23
**Court** [11] - 1:20, 1:21, 2:11, 8:23, 11:1, 13:2, 13:10, 13:12, 13:15, 19:15, 19:17
**Court's** [2] - 2:8, 5:6
**courtroom** [1] - 4:9
**CRC** [2] - 1:20, 23:18

**cross** [6] - 8:16, 9:15, 9:17, 10:3, 11:14, 17:8
**cross-examine** [2] - 8:16, 10:3
**CRR** [2] - 1:20, 23:18
**cut** [1] - 14:18
**cutoff** [1] - 12:6

## D

**Darby** [4] - 6:6, 6:17, 8:18, 10:25
**Darby's** [1] - 6:18
**days** [5] - 10:11, 12:23, 15:21, 17:11, 18:19
**deadline** [5] - 9:22, 11:2, 11:15, 12:13, 18:25
**deal** [1] - 9:17
**dealt** [1] - 22:7
**decision** [1] - 20:9
**Defendant** [2] - 1:8, 1:18
**defendant's** [1] - 7:10
**defense** [8] - 4:12, 6:24, 7:14, 9:11, 9:13, 14:4, 15:16, 22:13
**definitely** [1] - 7:22
**delay** [1] - 8:6
**determination** [3] - 5:12, 6:12, 10:23
**determine** [2] - 6:7, 11:4
**Dietz** [5] - 5:25, 7:7, 8:16, 9:11, 10:22
**different** [1] - 3:11
**digesting** [1] - 6:3
**direct** [4] - 16:12, 16:20, 17:7, 17:9
**discover** [1] - 9:3
**discussions** [1] - 6:23
**DISTRICT** [2] - 1:1, 1:2
**District** [2] - 1:21, 1:21
**docket** [1] - 2:8
**doctor** [1] - 6:6
**doctors** [2] - 6:24, 11:11
**documents** [15] - 6:10, 8:3, 9:20, 10:9, 10:14, 19:15, 19:16, 19:20, 20:5, 20:8, 21:5, 21:8, 21:9, 21:11, 21:23
**done** [1] - 17:11
**down** [3] - 4:10, 15:23, 16:5
**Dr** [10] - 5:25, 6:6, 6:17, 6:18, 7:7, 8:16, 8:18, 9:11, 10:22, 10:25
**during** [3] - 19:16, 19:25, 20:18

## E

**e-mail** [2] - 5:23, 6:5
**easier** [2] - 18:11, 21:11
**efficiently** [1] - 15:24
**eight** [2] - 7:4, 7:16

**either** [1] - 19:24
**end** [5] - 5:16, 8:19, 19:13, 19:22, 20:3
**ensure** [1] - 6:24
**entire** [1] - 3:16
**Esq** [4] - 1:16, 1:16, 1:18, 1:18
**estimates** [1] - 17:15
**evidence** [7] - 13:21, 14:16, 14:17, 14:25, 15:1, 21:9, 22:9
**evidentiary** [1] - 14:9
**exactly** [3] - 8:9, 8:10, 20:23
**examination** [1] - 16:12
**examine** [2] - 8:16, 10:3
**exception** [1] - 17:24
**exchanged** [3] - 5:20, 7:5, 15:11
**exchanging** [1] - 6:9
**excuse** [1] - 12:10
**exercise** [1] - 14:4
**exhibit** [1] - 20:17
**exhibits** [3] - 19:9, 19:12, 21:1
**expect** [1] - 16:20
**expected** [1] - 17:5
**expert** [9] - 3:8, 5:18, 5:20, 7:21, 10:1, 12:1, 12:24, 13:21, 22:17
**experts** [6] - 5:9, 5:24, 7:15, 9:19, 10:8, 10:13
**explain** [2] - 12:10, 18:9
**extent** [1] - 6:19
**extra** [1] - 18:19

## F

**far** [2] - 15:4, 19:9
**fashion** [1] - 17:22
**fashioned** [1] - 21:19
**figure** [3] - 8:1, 9:20, 17:20
**file** [4] - 6:13, 7:12, 9:14, 11:24
**filed** [5] - 3:7, 9:5, 11:21, 11:22, 11:23
**filing** [1] - 9:12
**first** [2] - 16:8, 22:7
**fit** [1] - 15:1
**five** [3] - 12:23, 15:21, 17:11
**flight** [1] - 18:2
**fluctuate** [1] - 17:4
**fluctuates** [1] - 17:8
**fly** [1] - 16:23
**flying** [1] - 17:25
**focused** [1] - 14:17
**folks** [1] - 4:5
**followed** [1] - 6:5
**following** [3] - 2:3, 2:4, 13:8
**foregoing** [1] - 23:11
**Forrest** [3] - 1:20, 23:17, 23:18
**foundation** [1] - 21:21
**four** [2] - 12:23, 17:11
**Friday** [10] - 8:13, 17:18, 17:21,

17:25, 18:4, 18:9, 18:14, 18:15, 18:24, 19:1
**full** [2] - 12:23, 13:8
**full-blown** [1] - 13:8

## G

**GEORGE** [1] - 1:3
**gigabytes** [3] - 7:4, 7:17, 8:12
**given** [3] - 15:3, 15:18, 17:14
**glad** [1] - 4:12
**goodbye** [1] - 22:25
**government** [10] - 2:12, 3:7, 6:7, 6:18, 9:1, 14:1, 16:18, 16:25, 19:7, 22:2
**government's** [2] - 5:9, 17:17
**granting** [1] - 14:8
**great** [9] - 2:25, 3:23, 4:4, 12:12, 15:8, 19:8, 20:15, 22:3, 22:4
**ground** [1] - 4:2
**guess** [4] - 7:19, 7:22, 8:1, 10:7
**guys** [6] - 16:5, 17:5, 19:10, 20:5, 20:13, 22:10

## H

**HANKS** [1] - 1:3
**happy** [5] - 8:15, 11:15, 14:3, 16:1, 17:23
**hear** [2] - 12:23, 12:24
**hearing** [38] - 3:4, 3:5, 3:7, 3:9, 3:12, 3:13, 3:16, 3:22, 4:5, 4:8, 4:14, 5:14, 6:23, 7:21, 7:24, 8:17, 10:11, 11:8, 11:20, 12:6, 12:20, 13:9, 13:11, 13:14, 14:9, 15:7, 15:13, 17:19, 19:10, 19:13, 19:16, 19:18, 20:1, 20:3, 20:19, 21:12, 21:16, 22:24
**hearings** [1] - 16:15
**HELD** [1] - 1:10
**held** [2] - 2:3, 2:4
**help** [1] - 15:24
**helpful** [7] - 13:18, 13:24, 13:25, 14:3, 15:2, 15:6, 18:24
**hereby** [1] - 23:10
**hesitate** [1] - 14:8
**hired** [1] - 6:7
**hold** [2] - 18:16, 19:2
**homework** [1] - 16:7
**Honor** [17] - 2:13, 2:20, 3:22, 3:24, 4:11, 5:19, 6:22, 8:21, 11:10, 15:10, 17:13, 17:24, 19:7, 20:14, 20:16, 22:12, 22:14
**HONORABLE** [1] - 1:3
**hour** [1] - 5:21
**Houston** [1] - 1:12

## I

**idea** [4] - 16:22, 17:7, 17:9, 22:3
**imagine** [1] - 7:16
**immediately** [1] - 7:12
**impress** [1] - 10:13
**IN** [1] - 20:14
**include** [1] - 15:14
**included** [1] - 21:8
**including** [1] - 7:8
**inevitable** [1] - 14:10
**inevitably** [2] - 16:14, 18:18
**information** [7] - 6:9, 7:4, 8:22, 8:24, 9:1, 11:18, 12:4
**intent** [1] - 6:13
**introduce** [1] - 2:11
**introduction** [1] - 15:5
**issue** [3] - 5:1, 5:4, 8:1
**issues** [2] - 6:4, 10:18
**it'll** [1] - 12:18

## J

**James** [1] - 2:21
**Jason** [2] - 1:18, 2:20
**joined** [2] - 2:15, 2:21
**JR** [1] - 1:3
**Judge** [12] - 4:17, 5:3, 8:5, 10:20, 12:16, 14:3, 15:2, 16:2, 19:3, 22:1, 22:21
**JUDGE** [1] - 1:3
**Julia** [1] - 2:22

## K

**Kathryn** [1] - 1:18
**Kathy** [1] - 2:21
**keep** [4] - 4:25, 15:20, 20:1, 20:2
**keeping** [1] - 19:11
**Keneally** [3] - 1:18, 2:21, 5:8
**kind** [4] - 7:23, 7:24, 13:4, 14:24

## L

**landed** [1] - 4:13
**LANGSTON** [11] - 6:22, 8:21, 11:10, 12:15, 14:2, 15:10, 17:23, 19:6, 20:16, 21:3, 22:12
**Langston** [14] - 1:16, 2:15, 5:17, 5:24, 6:21, 8:12, 10:12, 11:9, 11:24, 13:16, 13:25, 18:13, 18:25, 22:18
**Langston's** [1] - 6:5
**large** [1] - 15:5
**last** [3] - 5:21, 12:22, 21:4
**late** [3] - 5:1, 8:14, 22:24
**lay** [2] - 12:24, 21:21
**learned** [2] - 7:2, 9:12
**least** [3] - 15:20, 16:20, 17:16
**Lee** [2] - 1:16, 2:15
**legal** [1] - 4:1
**lengthy** [1] - 15:7
**likely** [1] - 15:19
**line** [2] - 2:10, 22:19
**link** [2] - 4:7, 4:12
**list** [7] - 15:15, 15:23, 16:4, 16:5, 16:6, 18:3, 20:1
**listening** [1] - 14:17
**lists** [1] - 15:11
**log** [1] - 4:14
**logistic** [1] - 12:17
**look** [6] - 5:15, 6:6, 7:11, 8:15, 8:25, 9:19
**looking** [4] - 9:1, 10:14, 12:2, 15:16
**Loonam** [1] - 2:22

## M

**Magnani** [2] - 1:16, 2:14
**MAGNANI** [3] - 2:13, 2:17, 3:21
**mail** [2] - 5:23, 6:5
**material** [3] - 7:3, 7:8
**matter** [3] - 12:18, 15:5, 23:13
**mean** [10] - 7:22, 7:25, 8:6, 12:2, 13:19, 13:21, 18:5, 18:10, 18:16
**means** [2] - 14:12, 19:1
**mechanical** [1] - 1:23
**medical** [2] - 3:15, 6:10
**might** [10] - 3:14, 4:2, 10:4, 18:21, 18:22, 18:23, 21:7, 21:11, 21:23
**mind** [2] - 5:4, 12:18
**minutes** [3] - 13:4, 13:13, 14:6
**moment** [1] - 12:18
**Monday** [24] - 3:4, 3:18, 4:18, 4:19, 4:21, 5:2, 5:7, 5:14, 5:19, 6:23, 7:9, 9:25, 11:2, 11:7, 11:15, 11:22, 11:23, 12:11, 12:13, 13:14, 17:14, 17:18, 22:11, 22:16
**month** [1] - 15:12
**most** [1] - 10:23
**motion** [2] - 4:2, 9:14
**mouth** [1] - 7:23
**MR** [33] - 2:13, 2:17, 2:19, 3:21, 3:24, 4:11, 4:17, 4:23, 5:3, 5:6, 6:22, 8:5, 8:9, 8:21, 10:20, 11:10, 12:15, 12:16, 12:20, 14:2, 15:2, 15:10, 16:1, 17:13, 17:23, 19:3, 19:6, 20:16, 21:3, 21:25, 22:12, 22:13, 22:21

## N

**name** [1] - 15:14
**names** [1] - 15:16
**necessary** [1] - 16:16
**need** [24] - 7:12, 8:17, 10:4, 10:10, 11:21, 11:23, 11:24, 12:3, 13:6, 14:13, 14:16, 14:19, 15:9, 16:9, 16:13, 16:18, 18:22, 19:5, 20:3, 20:24, 20:25, 22:11
**needed** [1] - 6:24
**next** [4] - 2:8, 15:22, 22:11, 22:16
**Nichole** [3] - 1:20, 23:17, 23:18
**nichole_forrest@txs.uscourts.gov** [1] - 1:22
**night** [7] - 5:21, 16:9, 16:17, 17:1, 18:7, 18:12, 18:25
**note** [2] - 8:11, 13:6
**noted** [1] - 5:8
**nothing** [1] - 6:16
**notice** [1] - 3:3
**notification** [1] - 5:22
**notified** [1] - 9:11
**November** [3] - 1:13, 12:21, 23:15
**number** [1] - 3:11

## O

**object** [2] - 4:12, 10:17
**obviously** [4] - 9:6, 9:9, 9:13, 15:6
**October** [1] - 5:11
**OF** [3] - 1:2, 1:4, 1:11
**official** [1] - 20:22
**OFFICIAL** [1] - 1:11
**Official** [1] - 1:20
**old** [1] - 21:19
**old-fashioned** [1] - 21:19
**one** [9] - 5:3, 5:24, 9:9, 11:18, 12:17, 17:24, 20:24, 20:25
**ones** [1] - 22:2
**open** [5] - 2:3, 4:7, 4:8, 4:13
**opening** [8] - 13:3, 13:13, 14:6, 14:11, 14:21, 14:22, 14:24
**openings** [1] - 14:9
**opinion** [8] - 5:25, 7:10, 9:4, 10:6, 10:22, 10:23, 11:3, 11:5
**opinions** [3] - 5:9, 6:20, 7:22
**opportunity** [2] - 10:2, 10:17
**opposing** [1] - 21:20
**order** [4] - 17:18, 18:2, 18:23, 22:8
**original** [1] - 15:13
**outcome** [1] - 9:2
**own** [1] - 20:1

## P

**p.m** [3] - 16:17, 17:1, 18:11
**page** [1] - 4:20
**pages** [1] - 7:13
**pare** [1] - 16:5
**pared** [1] - 15:23
**part** [1] - 19:17
**parties** [12] - 2:12, 3:5, 3:17, 3:19, 5:20, 7:5, 12:21, 13:9, 14:10, 15:11, 15:14, 19:1
**Parties** [1] - 8:2
**people** [3] - 4:14, 18:21, 18:22
**picture** [2] - 13:20, 13:23
**pieces** [3] - 13:19, 14:25, 15:1
**Plaintiff** [2] - 1:5, 1:16
**plan** [1] - 5:18
**planning** [2] - 9:12, 20:17
**platform** [1] - 14:10
**point** [3] - 7:17, 8:10, 13:19
**points** [1] - 13:10
**portions** [1] - 3:14
**position** [1] - 10:2
**positions** [1] - 8:16
**possible** [2] - 10:9, 10:15
**pre** [2] - 21:6, 21:12
**pre-admit** [1] - 21:12
**pre-admitted** [1] - 21:6
**prejudiced** [1] - 9:14
**preparation** [1] - 15:24
**prepare** [3] - 7:13, 7:20, 7:25
**prepared** [2] - 10:3, 16:14
**preparing** [1] - 18:20
**present** [1] - 11:5
**PRESIDING** [1] - 1:3
**pressuring** [1] - 21:10
**pretty** [1] - 22:4
**problem** [3] - 13:17, 18:10, 18:19
**problems** [1] - 22:17
**proceeding** [1] - 13:2
**proceedings** [4] - 2:3, 2:4, 3:10, 23:12
**PROCEEDINGS** [3] - 1:10, 1:11, 2:1
**Proceedings** [2] - 1:23, 23:1
**process** [1] - 22:3
**produced** [1] - 1:24
**proposed** [1] - 17:18
**provide** [7] - 9:25, 14:7, 14:13, 14:15, 16:5, 18:3
**public** [2] - 3:14, 4:8
**purposes** [1] - 21:16
**pursuant** [1] - 23:10
**put** [3] - 8:18, 16:9, 20:3
**putting** [3] - 7:23, 16:18, 20:21

## Q

**quicker** [1] - 22:3
**quickly** [1] - 10:9

## R

**raise** [1] - 10:17
**raised** [1] - 5:15
**rather** [3] - 9:18, 9:19, 10:10
**RDR** [2] - 1:20, 23:18
**ready** [1] - 16:22
**really** [1] - 22:24
**reason** [4] - 9:7, 14:8, 16:13, 19:19
**reasonable** [5] - 11:8, 11:20, 12:5, 12:14, 12:15
**recent** [2] - 5:11, 10:23
**record** [4] - 6:16, 10:22, 20:22, 21:17
**recorded** [1] - 1:23
**records** [1] - 3:15
**redact** [1] - 3:13
**redacted** [2] - 19:22
**relevant** [1] - 15:15
**remaining** [1] - 6:12
**report** [12] - 6:2, 6:14, 6:19, 7:12, 8:18, 9:21, 10:1, 10:10, 10:19, 11:7, 12:1, 12:11
**Reported** [1] - 1:20
**reported** [1] - 23:12
**Reporter** [2] - 1:20, 1:24
**REPORTER'S** [1] - 1:11
**reports** [10] - 3:8, 5:11, 5:18, 5:20, 8:13, 9:5, 11:13, 12:7, 13:22, 22:18
**represent** [1] - 2:12
**request** [5] - 3:25, 4:6, 11:1, 11:8, 13:12
**require** [2] - 11:25, 18:6
**requirement** [1] - 16:4
**research** [1] - 10:5
**respect** [4] - 3:15, 10:18, 16:8, 20:8
**response** [3] - 6:4, 6:13, 6:21
**responsible** [1] - 19:11
**review** [2] - 9:24, 10:8
**reviewed** [2] - 7:7, 8:24
**road** [1] - 9:17
**roadmap** [5] - 14:7, 14:13, 14:15, 14:20, 14:24
**ROBERT** [1] - 1:7
**rule** [1] - 18:11

## S

**sandbagged** [1] - 5:15
**Saturday** [1] - 8:14
**save** [1] - 21:23
**schedule** [1] - 13:8
**seal** [4] - 3:8, 3:10, 3:13, 3:15
**sealed** [6] - 3:6, 3:7, 3:22, 4:1, 4:5, 22:8
**second** [1] - 10:22
**Section** [1] - 23:10
**see** [1] - 2:25
**sense** [1] - 14:23
**sent** [2] - 19:21
**set** [2] - 12:20, 13:4
**short** [3] - 3:3, 13:3, 14:19
**show** [4] - 11:25, 14:16, 21:19, 21:20
**shuffle** [1] - 18:2
**side** [7] - 13:2, 13:13, 14:5, 15:5, 16:10, 16:14, 19:24
**sides** [5] - 12:25, 13:22, 16:24, 21:1, 21:8
**sign** [2] - 19:14, 20:4
**simultaneously** [1] - 8:2
**situation** [1] - 19:20
**smoother** [1] - 17:22
**sometime** [1] - 15:22
**sometimes** [2] - 14:8, 17:4
**soon** [4] - 6:25, 9:10, 9:11, 10:15
**sorry** [3] - 4:22, 8:4, 8:8
**sort** [3] - 9:21, 15:4, 16:12
**SOUTHERN** [1] - 1:2
**Southern** [1] - 1:21
**speaking** [2] - 2:11, 8:2
**stage** [1] - 13:4
**stand** [5] - 4:3, 8:19, 16:12, 17:3
**start** [1] - 14:18
**started** [5] - 3:18, 5:2, 13:14, 17:15, 17:21
**starting** [1] - 2:12
**starts** [2] - 4:19, 17:19
**state** [1] - 2:11
**statement** [4] - 13:3, 14:12, 14:22, 14:24
**statements** [1] - 14:22
**STATES** [2] - 1:1, 1:4
**States** [4] - 1:21, 2:9, 2:14, 23:11
**stating** [2] - 5:10, 5:11
**STATUS** [1] - 1:9
**status** [2] - 4:15, 5:23
**stenographically** [1] - 23:12
**stenography** [1] - 1:23
**still** [3] - 6:6, 6:11, 7:3
**stood** [1] - 3:17
**story** [1] - 14:25
**strategy** [1] - 18:21
**streamline** [1] - 21:7
**strike** [1] - 9:14

**stuff** [1] - 19:24
**suggest** [1] - 8:22
**Sunday** [3] - 17:20, 18:7, 18:25
**supplement** [1] - 9:12
**supplemental** [12] - 6:14, 6:19, 7:12, 8:18, 9:21, 10:1, 10:10, 10:19, 11:7, 12:1, 12:7, 12:11
**supplementing** [1] - 5:18
**supplements** [3] - 9:8, 11:21, 12:8
**supposed** [2] - 8:14, 19:23

## T

**tendency** [1] - 15:13
**TEXAS** [1] - 1:2
**Texas** [2] - 1:12, 1:21
**THE** [34] - 1:3, 2:7, 2:16, 2:18, 2:25, 3:23, 4:4, 4:16, 4:21, 4:24, 5:5, 6:21, 7:19, 8:3, 8:7, 9:16, 11:9, 11:19, 12:19, 13:16, 14:5, 15:8, 15:25, 16:3, 18:5, 19:4, 19:8, 20:14, 20:15, 20:20, 21:4, 22:4, 22:15, 22:23
**theirs** [1] - 8:14
**themselves** [1] - 2:11
**they've** [3] - 7:17, 8:11, 8:13
**third** [1] - 17:16
**Thomas** [1] - 5:22
**thoughts** [1] - 3:5
**three** [3] - 7:13, 7:15, 10:11
**timeline** [1] - 15:18
**timing** [1] - 10:18
**Title** [1] - 23:10
**together** [5] - 15:1, 20:4, 20:6, 20:21
**track** [4] - 17:10, 19:11, 20:1, 20:2
**TRANSCRIPT** [1] - 1:11
**transcript** [2] - 1:23, 23:12
**treat** [1] - 13:7
**trial** [4] - 13:8, 14:12, 14:22, 18:6
**true** [1] - 23:11
**try** [6] - 2:23, 18:8, 18:14, 19:1, 21:1, 21:2
**trying** [3] - 8:1, 8:10, 13:7
**Tuesday** [2] - 7:2, 7:6
**turn** [3] - 2:23, 9:10, 16:25
**two** [3] - 5:8, 7:5, 10:11
**type** [1] - 14:9
**typically** [1] - 18:5

## U

**under** [2] - 3:8, 3:10
**understood** [2] - 7:1, 19:3
**underway** [1] - 15:6
**UNISON** [1] - 20:14
**UNITED** [2] - 1:1, 1:4
**United** [4] - 1:21, 2:9, 2:14, 23:11
**up** [8] - 4:7, 5:2, 6:5, 9:23, 9:24, 13:19, 19:23, 22:16
**updates** [3] - 7:16, 7:18, 8:23
**useful** [1] - 14:4

## V

**vacillating** [1] - 8:16
**VARNADO** [19] - 2:19, 3:24, 4:11, 4:17, 4:23, 5:3, 5:6, 8:5, 8:9, 10:20, 12:16, 12:20, 15:2, 16:1, 17:13, 19:3, 21:25, 22:13, 22:21
**Varnado** [9] - 1:18, 2:20, 7:20, 7:23, 10:16, 16:19, 16:25, 18:19, 22:18
**Varnado's** [1] - 10:1
**versus** [1] - 2:9
**VIDEO** [1] - 1:10
**video** [1] - 2:23
**videoconference** [1] - 2:4
**vs** [1] - 1:6

## W

**waiting** [1] - 17:19
**wants** [1] - 4:9
**ways** [1] - 3:11
**Wednesday** [1] - 7:7
**week** [10] - 4:19, 4:21, 5:2, 11:7, 11:20, 11:21, 12:6, 13:5, 15:22, 16:7
**weekend** [4] - 9:24, 18:6, 18:17, 18:20
**welcome** [3] - 2:16, 2:18, 3:1
**whole** [1] - 17:12
**wish** [1] - 10:18
**witness** [10] - 15:11, 15:15, 15:23, 16:4, 16:5, 16:6, 17:24, 18:3, 21:20, 21:21
**witnesses** [13] - 12:24, 12:25, 15:19, 16:8, 16:9, 16:10, 16:18, 16:20, 17:1, 17:5, 17:18, 18:21, 22:8
**words** [1] - 7:23
**worry** [1] - 21:14

## Y

**year** [1] - 5:10
**you-all** [7] - 19:11, 19:14, 19:25, 20:2, 21:5, 22:23, 22:25

## Z

**Zoom** [3] - 4:6, 4:7, 4:12