| | |
|---|---|
| **From:** | Anenen, Steve (DS) |
| **To:** | 'Bob Brockman' |
| **CC:** | 'Robert_Schaefer@reyrey.com' |
| **Sent:** | 7/2/2014 7:40:15 AM |
| **Subject:** | Follow-Up |

Bob,

Hope you'll get a chance to enjoy the 4th of July. I actually am taking off the remainder of the week. I wanted to respond concerning the data sets you need from ADP. I suspect something was lost in translation when we spoke. I've asked Howard Gardner and Ron Workman to follow up with Bob Schaefer for clarification, though they tell me Bob is on vacation this week in Michigan. Given your urgency to reach an understanding, perhaps you can ask Bob to respond to them while he's out.

I'm operating under the assumption that the "soft landing" proposal that Ron and Howard have discussed with Bob S. is an approach we can take forward to an agreement. I think Bob S. seems agreeable to that as well. I'm sure you're aware that Bob and Howard are already working together to transition OEM and other DMI clients' (R&R dealers) to RCI. For example, in May alone we moved almost 2000 dealers for SiriusXM from DMI to RCI. This process was completed quickly, with full cooperation, and with no disruption to R&R dealers or to SiriusXM. I believe you are benefitting from this.

The "soft landing" strategy allows a managed transition of DMI clients' (R&R dealers) to RCI on your time-table, while reducing risk of disruption to R&R dealers. It provides a large economic lift to R&R while keeping within your strategy of managing data access for your clients. I would think you agree that's a positive outcome, although I could make a good case that our cooperation does much more for you than it does for us.

Based on my assumption that the "soft landing" approach is how you'd like to proceed, I have a couple of comments:

- For ADP to provide integration to Naked Lime (or R&R), or any third party, we have a set of defined, documented, and thoroughly tested processes that we put every one of our integration partners through. The process includes a standard contract with access provided under a "permitted use" basis. ADP performs integration verification testing and requires explicit dealer permission and control of every activation. Every third party must operate within these parameters.
- ADP's third party approval and operating processes were developed in the early stages of the program. The program operates under legal oversight to ensure we protect both ADP and our clients. We do not deviate from those processes for any partner. I am sure you will appreciate the need to have R&R follow the same process and meet the same standards. I believe that is the same point you make publicly.
- Please be aware we are highly sensitized to our dealers' expectations that we only provide the data necessary to third parties required to fulfill our contractual obligations.

I should point out that we have not been "accessing R&R systems for decades" as you said. Our businesses that access R&R systems came to us through an acquisition. In any case, controlling data access has become a priority for R&R only within the last several years. I would be remiss not pointing out that R&R is accessing the ADP system through a contract with Authenticom, and has been doing so for quite some time without an agreement from ADP. We need to clean this up as well.

It is my hope we can leave the details to be worked out with Bob, Howard and Ron to come to a satisfactory conclusion. This seems like a reasonable course of action, heading in the right direction, with the proposed "soft landing". It should also significantly benefit R&R in the long run as we work through the transition. Hope you feel the same way.

If you have any questions or issues please feel free to contact me. Wish you the best for the Fourth.

Steve



**Steve Anenen**
**President**

ADP Dealer Services, Inc.
1950 Hassell Road

**Confidential**

> **GOVERNMENT**
> **EXHIBIT**
>
> **4:21-CR-009-GCH**
>
> **No. 35**

**CDK_CID_01535307**

CX1143-001

FTC-0000292

Hoffman Estates, IL 60169

Office: 847.485.4003
Fax: 847.339.2504

**From:** Bob Brockman [mailto:bob_brockman@reyrey.com]
**Sent:** Monday, June 30, 2014 3:18 PM
**To:** Anenen, Steve (DS); Bob Schaefer
**Subject:**

Steve,

I think that there is some confusion surrounding the issue that I called you about last week.

My presumption was that your people had briefed you on my request in advance – or at least would had discussed it with you after my call.  Evidently that was not the case.

The example that I gave you of data for maintenance reminders – was just that – an example.

It is the only use currently in mind.

However given that ADP has accessed our systems for a couple of decades, my request is for more than just data access than for maintenance reminders – both in content and duration.

My data security projects have been delayed another week – therefore I ask for a decision from you on this issue this week.

Bob Brockman

Cc Bob Schaefer

**Confidential**

**CDK_CID_01535308**

CX1143-002

**FTC-0000293**

Sales Meeting – July 14, 2014

-General State of Reynolds
    -car business is good
    -our operating results continue strong as ever
    -personally I am feeling good – getting more fishing this summer
    -Dorothy is doing great – her back is behaving – been over a year since her last
    shot – we have now been married for 46 years
    -our son has one semester to go for his MBA and Masters in EE
    -November 2nd, I will have been at Reynolds for 8 years – and expect to be
    around quite a while longer


-Industry News
    -the big news is the spinout of ADP Dealer Services from big ADP
    -it can only be good news for us
        -distraction of their top management dealing with analysts
        -financial overhead of being a public company
        -vastly greater disclosure of their finances
        -pressure on them to improve margins by raising prices
        -increased focus on the international business to please the stock
            market – resulting in greater complexity in their software
            development processes
        -distraction by having to build all the internal systems that had
            Previously been provided by big ADP

Acquisitions
    -an absolutely banner year
    -last fall we acquired I Make News – or IMN for short – now folded into Naked
    Lime product line up – we already had been reselling their product
    -in December we acquired Xtream from the Hendrick organization
    -in January we acquired Add On Auto – which opens up a whole new profit
    center
    -these two exclusive products plus docuPAD I expect to change the way we
    sell systems completely as the gross profits that they can produce give us
    absolute product superiority over ADP and DT
    -we need to quit talking about DMS systems and focus on RMS and the massive
    financial advantages of our offering

    -we have two smaller product acquisitions
        -eGas built originally by the DARCARS organization
        -bar code based service tracking system used by JM Lexus

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0264663
CX4036-001

Internal Development
-from an internal development standpoint, we continue to gnaw away at internal systems that need to be rebuilt – major initiative to rebuild the software systems that run our documents business has begun
-work continues with SIMS replacement – pieces of it continue to dribble out
-lots of work happening on assimilating acquisitions into our billing, accounting, payroll, proposal, and contracting processes
-lots of personnel turnover (intentional – as we relocate into our existing facilities)
-lots of work assimilating them technically into our software and IT structures

Product Development

-Contact Management
– we continue to suffer from the development failure in this area. The reason that Randy Trenary, our software VP in College Station is no longer with the company is that he failed in leading this project. We have been in catch-up mode ever since. The fire in this area has subsided somewhat with more training, use of common sense in not letting sites convert that need key features not yet available, and continuing release of features and bug fixes.

This is our only weakness in the development area.

-docuPAD
-discuss PAG results
-the software in this area is now very strong
-the Electronic Deal Jacket process with bar code printing on impact forms and header/trailer sheets automatically printed to facilitate scanning of misc forms – is going to be a big hit once we get our minds around it
-our challenges are around utilization after the sale in cases of insufficient management support that can only be remedied by Sales Department effort
-in spite of the amazing results produced when properly utilized, our total unit sales are much below expectations

-Security
-since last year's court victory over Phil Batista, we have reached an agreement where Phil is getting out of the business of collecting data from Reynolds sites
-ADP has approached us about doing the same – we are in the early stages of negotiating a similar agreement – caution – this is highly confidential and not assured.
-ADP seems to be becoming aware of the laws and liabilities involved
-this could put the security wars very much behind us
-since we have no idea of how ADP is going to charge 3rd parties for their version of RCI – we will likely continue to have the issue of customers complaining that their costs from 3rd party vendors are more expensive with a DMS from Reynolds than ADP

REYCID0264664
CX4036-002

-Universe Replacement
- -we continue work on what is now a 7 year project to replace the underlying Database and operating structure of the ERA system
- -QA is now complete
- -it appears that a pilot is in sight next month
- -users will see no difference or advantage initially
- -ultimately we will be able to build better application software with a multi-key Database
- -the first wider usage will be in the ERA Calc Server in Power docuPAD sites

-RITS
- -the product is solid
- -our level of integration is way ahead of anything else out there
- -the use of Cisco phones and switches has helped
- -MyRITS is a part of just about every system sold
- -while we seem to be having a spurt in sales right now – we are way behind YTD
- -our RITS reps basically never go anywhere or make any calls unless invited

-RPM
- -our product set is now simplified from a configuration and pricing standpoint
- -there are now a number of AOD Redundant Communications installed
- -there are a smaller number of dealer-to-dealer Redundant Communications Installations
- -there a number of ReySafe unified threat model boxes installed that provide Web filtering and perimeter virus checking
- -generally speaking sales in this area are poor – with the field sales force doing nothing more than turning opportunities over to the BDC – which then operates Reactive mode.  I have a recent example in the Jacky Jones deal
- -the BDC appears to be doing no pro-active selling at all

-eNegotiator
- -we have been ready for our first pilot for a couple of months – but have been held up by the fact that it requires new Contact Management
- -we hope to be able to pilot this powerful new concept shortly
- -in addition to facilitating communication between the sales person and the Desk an additional powerful issue is addressed – giving the Desk information so that they can more intelligently start the first pencil:
  - -previous vehicles sold to this prospect
  - -front and back-end grosses to this prospect
  - -service sales and grosses to this prospect
  - -distance between the dealership and the prospect's residence
- -and some new ideas we are working on
  - -pace towards factory volume incentives for this type of vehicle as a couple of more sales could make a huge difference in volume bonus
  - -grosses on this make, model for the last 60 days for this dealership, Dealership group, state (or market area), and nationally

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0264665
CX4036-003

**FTC-0000308**

Xtream
- as initially conceived by the Hendrick organization, this product employed an in-dealership server that downloaded data from the DMS
- this server's database was then queried daily by a dealership person known as the "Driver" to find prospects
- the "Driver" then distributed the prospects to the dealership's sales force
- in my opinion this particular model generally suffered from
    - incompetent "Drivers" appointed by the dealership
    - constant turnover of "Drivers"
    - running Xtream was not their primary job
    - constant travel to dealerships to prop up Xtream
- we have changed the product from a hardware/software sale to a service where we take responsibility for the "Driver" function using a Dayton-based team consisting of one experienced car sales person supervising a group of 4 or 5 marketing analyst type people
- since the next point of failure frequently experienced in existing Xtream customers is failure to follow up on leads, we will also have one or more experienced "Caller"
- our pricing is now per unit sold – with two prices per unit sold depending upon whether or not we do the calling

- we are running afoul of bird-dog laws in some states
- in those cases we will set a fixed fee per month that is reviewed and adjusted every 90 days based upon sales results

- we expect to change the equipment configuration such that no server is located in the dealership – which will give better response time to our Dayton located teams

- a further more distant goal by centrally locating the server – is to be able to do Confirmation of Concept deals more readily

- while this application works well already – we expect to perfect it even further – especially in the area of service walk-ins

Add On Auto
- this product gives us the opportunity to provide a brand-new profit center to dealerships at a time that they sorely need it as grosses on new vehicles continues to be relentlessly ground down

- this product sells accessories perfectly well in its standalone mode – so we will leave it alone for awhile

- the list of things that we will do to it - will not sell accessories any better, but will

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0264666
CX4036-004

FTC-0000309

clean these areas up;
-use the F&I calc engine for more exact payment increase calculations
-automatically put accessories chosen by the consumer into the deal
-automatically generate "we-owe" entries

Challenges

-we are still not clear about "Who Is The Customer"
-we continue to treat the IT people like they were the customer
-just recently I was asked to allow a customer to add another AOD
Dealership to a starburst configuration with a single 6MB pipe to
Research Park
-this is an insane request -- as we already know that when a single circuit to
Research Park gets overloaded, packets start to be dropped and all manner
of weird things happen
-further to run a pile of dealerships on a single pipe to Research Park is a such a
poor business decision when there are better alternatives available -- that if we
were presenting the situation and the consequences to the real Customer who
gets paid off the gross profit -- there would never be an issue

-we continue to get dragged into KO prospect situations where the prospect is
basically a price buyer
-we just wasted a massive amount of effort on the Morse group
-the value of RMS and particularly the massive gross profits that can be
generated by our Big 3 exclusive applications"
        -docuPAD
        -Xtream
        -AOA
are so huge that I don't want to be looking at KO deals where all the prospect
want to do is bid us against ADP.
-I think that the telltale is when the buyer doesn't even want to seriously consider
our Big Three gross profit builders -- they are not a prospect
-the time for us chasing price buyers is over

Closing Statement
        -car sales are rocking
        -we have achieved product superiority over ADP and DT
        -we are now in a period of as favorable business conditions as we will ever get
        -anybody in our sales force that cannot sell effectively in this environment needs
                to be replaced -- and we have a few of those

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0264667
CX4036-005

## SETTLEMENT AGREEMENT

***The Reynolds & Reynolds Company v. Superior Integrated Solutions, Inc.*, in the United
States District Court for the Southern District of Ohio, Western Division
(Case No. 1:12-CV-00848)**

This Confidential Settlement Agreement (the "Agreement") sets forth the terms under
which The Reynolds & Reynolds Company ("Reynolds") and Superior Integrated Solutions, Inc.
("SIS") have agreed to settle the above-captioned case (the "Lawsuit"). Reynolds, SIS, and the
other signatories hereto intend that this Agreement is a binding agreement, and they intend to
cooperate in drafting such additional instruments and taking such additional actions as are
reasonably necessary to effectuate this settlement.

1. **Mutual Releases**

   A. **First Release**

   Effective the date of execution of this Agreement, Reynolds, on behalf of itself
   and its parent companies, members, subsidiaries and affiliates (collectively the
   "Reynolds Releasing Parties"), release, acquit, and forever discharge SIS, and
   each of its parent companies, members, shareholders, subsidiaries and affiliates,
   and each of their respective predecessors, successors, agents, representatives,
   officers, directors, employees and attorneys (collectively the "SIS Released
   Parties") for any and all claims, causes of action, damages or allegations that were
   asserted or could have been asserted in the Lawsuit with respect to any alleged
   conduct up to and including the date of this Agreement.

   Effective the date of execution of this Agreement, SIS, on behalf of itself and its
   parent companies, members, subsidiaries and affiliates (collectively the "SIS
   Releasing Parties"), release, acquit, and forever discharge Reynolds, and each of
   its parent companies, members, shareholders, subsidiaries and affiliates, and each
   of their respective predecessors, successors, agents, representatives, officers,
   directors, employees and attorneys (collectively the "Reynolds Released Parties")
   for any and all claims, causes of action, damages or allegations that were asserted
   or could have been asserted in the Lawsuit with respect to any alleged conduct up
   to and including the date of this Agreement.

   B. **Final Release**

   At the conclusion of the last "Wind-Down Period" (described in ¶ 3 below),
   Reynolds and SIS will exchange mutual releases identical to the releases set forth
   in ¶ 1(A) above except that they will include all conduct up to and including the
   date of such Final Release and not merely the date of this Agreement.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0675646
CX4273-001

FTC-0000432

**2. Dismissal of Lawsuits**

Within 5 business days of the execution of this Agreement, the Parties will dismiss their respective claims and counterclaims made in the Lawsuit by filing a Joint Motion for Dismissal with Prejudice. Each Party shall bear its own costs and attorneys fees.

Within 5 business days of the execution of this Agreement, SIS will dismiss its claims (by filing a voluntary motion for dismissal or a functionally equivalent pleading) in the following actions:

(1) *Superior Integrated Solutions v. Byers Imports, LLC d/b/a Byers Subaru of Columbus* ("Byers"), Case No. 14CV000712, pending in the Court of Common Pleas, Franklin County, Ohio. Should Byers seek fees from SIS after or during the dismissal Reynolds will pay any fee awarded to Byers;

(2) *Superior Integrated Solutions, Inc. v. Jerry Haag Motors, Inc. ("Haag")*, 2014-CA-000883-O, pending in the Ninth Judicial Circuit Court, Orange County, Florida. Should Haag seek fees from SIS after or during the dismissal Reynolds will pay any fee awarded to Byers; and

(3) Any similar pending litigation against any other Reynolds automotive dealership customer based upon the same or similar facts as the Byers or Haag's litigation.

Further, SIS covenants not to sue any other Reynolds automotive dealership customer for damages alleged to have resulted or arisen from the filing of this Lawsuit.

**3. SIS Wind-Down**

    **A. Summary of Intent**

        i.   Promptly after the execution of this Agreement, SIS will communicate to all of its current Reynolds-DMS integration customers ("Customers"):[1] (a) informing the Customers that it intends to wind down its Reynolds-DMS integration business and does not intend to extend its contracts with the Customers beyond their current primary term, except potentially on a month-to-month basis; (b) expressing words to the effect that SIS looks forward to doing its part to ease each Customer's transition away from SIS's integration upon the expiration of its current contract term with SIS; and (c) expressing words to the effect that it understands a proposal may be forthcoming to transition to Reynolds' certified interfaces, which SIS considers a positive solution for the Customer.

---

[1] SIS's current Reynolds-DMS integration Customers are identified on Exhibit "C" hereto.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0675647
CX4273-002

FTC-0000433

ii.  SIS will provide its services to these Customers only until the end of its current contract term or current extension period for each, extended month-to-month according to Reynolds' election described in ¶ 3(A)(iii).

iii.  At Reynolds' election, which shall be communicated to SIS reasonably in advance of the conclusion of SIS's contract term with each of its Customers (whether primary or month-to-month), SIS agrees to extend its Customer contracts on a month-to-month basis until Reynolds elects for SIS to cease granting such month-to-month extensions. However, SIS will not be required to grant any contractual extensions beyond March 5, 2017, unless mutually agreed upon by both Reynolds, SIS, and the respective Customer(s).

iv.  For each Customer, the period beginning today and concluding on the last date of SIS's contract term or current extension period with such Customer (as may be extended on a month-to-month basis as described in ¶ 3(A)(ii)-(iii) above) shall be referred to herein as the "Wind-Down Period" for that Customer.

v.  With the exception of the Wind-Down Period for SIS's current Customers (in particular, the interim access described in ¶ 3(C) below), SIS and Mr. Battista, on behalf of themselves and their employees and affiliates, covenant and agree not to integrate with, access, or attempt to integrate with or access, any Reynolds-brand DMS—either SIS / Mr. Battista themselves or through any current or future affiliated, subsidiary, or successor entities or ventures. SIS and Mr. Battista further covenant and agree not to sell, transfer, or assign to any affiliate or third party any technology or "know how" regarding integration with Reynolds-brand DMS or take any other steps to assist any person that SIS / Mr. Battista knows or reasonably believes to have plans to access or integrate with Reynolds-brand DMS without Reynolds' consent. For the avoidance of doubt, the covenants set forth in this ¶ 3(A)(v) are not intended as a "covenant not to compete," but rather as a contractual restriction of access and attempted access intended to protect the operational and data security integrity of the DMS. These covenants are intended to extend for the life of any Reynolds DMS product—however, if an Arbitration Panel or other authority of competent jurisdiction determines that such time frame is not enforceable (for any reason, including but not limited to being interpreted as a covenant not to compete), the Parties and Mr. Battista agree that the time frame covered by this paragraph shall be reformed to 7 years from the date of execution of this MOA; or, if such 7 year time period is determined to be unenforceable, reformed to the maximum period of time deemed to be enforceable by such Arbitration Panel or other authority. For the avoidance of doubt, if under a future agreement between an OEM and Reynolds, an OEM appoints SIS as an "agent" to whom data will be

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0675648
CX4273-003

FTC-0000434

passed without SIS accessing the Reynolds-brand DMS, that arrangement will not be considered a breach of this ¶ 3(A)(v).

**B.  SIS's Revenues**

SIS is entitled to keep any and all revenues from its Customers that it has received in the past or will receive up to the conclusion of the Wind-Down Period for each Customer. Moreover, in the event that the Wind-Down Period for any Customer(s) concludes prior to March 5, 2016, Reynolds will compensate SIS for any shortfall between (i) revenues actually received by SIS from its Reynolds-DMS integration customers and (ii) the "Expected Wind-Down Revenues." For purposes of this Agreement, "Expected Wind-Down Revenues" shall be defined as an amount, not to exceed $1,534,000, calculated by the following formula:

> **(24) x (verified current aggregate monthly revenues for current SIS Customers that have not signed an RCI agreement with Reynolds prior to the date of this Agreement).**

For the avoidance of doubt, the current aggregate monthly revenues set forth in the above formula are subject to verification by Reynolds of SIS's current monthly contracted pricing documentation for all of its current Customers. Further for the avoidance of doubt, the Parties acknowledge that ASR Pro and KEEPS have signed an RCI agreement with Reynolds and, accordingly, are not intended to be included in the Expected Wind-Down Revenues calculation set forth above. Reynolds is unaware of any other Customers of SIS other than ASR Pro and Keeps that have signed an RCI agreement with Reynolds.

**C.  Interim Access**

During the Wind-Down Period for each SIS Customer, Reynolds agrees to use best efforts to protect and/or facilitate the access currently being provided by SIS for that Customer, on the condition that SIS provides Reynolds with: (a) a list of SIS Customers for whom such interim access is needed, with the information set forth on Exhibit "A" hereto; and (b) a list of dealerships for whom such interim access is needed, with the information set forth on Exhibit "B" hereto. SIS understands that reasonable efforts may be required on the part of SIS, the SIS Customers, and/or the applicable dealerships in order to facilitate such interim access (including, by way of example only, re-naming existing reports on the DMS to Reynolds-standard naming conventions, setting up specific User ID names, etc.). SIS agrees to indemnify and defend Reynolds from any claim, liability and expense, including reasonable attorney's fees and costs arising out of any breach of data security or misuse of the data obtained through the use of the DMS interim access provided by Reynolds pursuant to this Agreement.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0675649
CX4273-004

FTC-0000435

    **D.**    **SIS Cooperation**

During the Wind-Down Period for each SIS Customer, SIS agrees to reasonably assist and cooperate with Reynolds with respect to: (1) communication with its Customers during their respective Wind-Down Periods; (2) Reynolds' development and testing of interfaces for Customers who choose to become RCI Customers; and (3) the transition of such customers to Reynolds certified interfaces.

    **E.**    **Provision of SIS Contracts**

Within 10 days of the execution of this Agreement, SIS will provide Reynolds a copy of each of its current Reynolds-DMS integration Customer contracts (except that SIS may redact uniquely confidential third-party information that does not pertain to the contract term length, renewal, termination, or pricing terms).

**4.**    **No Admission of Liability**

Neither Reynolds, SIS, nor any of their officers, directors, or principals admit any liability with respect to the Lawsuit; to the contrary, each party denies the claims and allegations asserted against each Party.

**5.**    **Representations and Warranties**

Each Party represents and warrants to the other and agrees with the other as follows:

    **A.**    Each Party has carefully read and reviewed this Agreement and understands it fully, and each Party has reviewed the terms of this Agreement with one or more attorneys of the Party's choice prior to executing this Agreement;

    **B.**    Each Party specifically is not relying upon any statement, representation, legal opinion, accounting opinion, or promise, express or implied, of any other Party or of any person representing them in executing this Agreement, or in making the settlement provided for herein, except as expressly stated in this Agreement;

    **C.**    Each Party has made such investigation of the law and the facts pertaining to this Agreement, and of all the matters pertaining thereto, as it deems necessary;

    **D.**    This Agreement is the result of arm's-length negotiation between the Parties;

    **E.**    Each Party has full power and authority, and has been duly authorized, to enter into this Agreement and consummate the transactions contemplated by this Agreement; and

    **F.**    The person signing this Agreement has the full authority to bind the Party indicated.

Page 5 of 9

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

FTC-0000436

SIS represents and warrants that:

A.    All of its current Reynolds-DMS integration Customer contract terms conclude at a date no later than March 5, 2016, and SIS has the right to decline to extend such contracts beyond such date as long as SIS provides the Customer with reasonable notice.

## 6.    Construction

The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. This Agreement was prepared jointly by the Parties, and no presumptions or rules of interpretation based upon the identity of the Party preparing or drafting this Agreement, or any part thereof, shall be applicable or invoked.

## 7.    Severability

Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law. In the event any provision of this Agreement shall be prohibited, invalid, or ineffective under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity or ineffectiveness, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

## 8.    Dispute Resolution

Any disputes, claims, or causes of action arising out of or relating to this Agreement must be submitted to binding arbitration by a single agreed upon arbitrator under the Institute for Conflict Prevention and Resolution Rules for Non-Administered Arbitration. For any such arbitration, the Parties will work in good faith to set efficient procedural limitations to reasonably fit the circumstances, but in any case each Party will not be allowed to take more than three (3) depositions or present more than six (6) witnesses; and, in particular, in the event of a dispute bearing upon the effectuation of the settlement in general or the Wind-Down Period, the Parties agree to an accelerated arbitration process in which (i) the arbitration hearing occurs within 45 days after the appointment of the arbitrator; and (ii) the arbitration award is to be issued within 20 days after such hearing.

## 9.    Confidentiality / Press Statements

The Parties agree that they shall not publicly disclose the terms of this Agreement, with the following exceptions:

i.    the Parties may announce that litigation previously pending between them has been resolved amicably with the joint dismissal of the lawsuit; and may make other general disclosures about the resolution of the case;

Page 6 of 9

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0675651
CX4273-006

FTC-0000437

ii.     a Party may disclose the terms of this Settlement Agreement: (1) as may be required by law or regulation; (2) to its advisors and affiliates who agree or who are under a legal or fiduciary obligation to maintain the confidentiality of such information. If a Party receives a request to disclose the terms of this Settlement Agreement under the terms of a valid and effective subpoena, decree or order issued by a court of competent jurisdiction or by a governmental body, that Party hereby agrees to, and agrees to immediately notify the other Party in writing of the existence, terms and circumstances surrounding the request, so that the other Party may seek an appropriate protective order or waive the receiving Party's compliance with the provisions of this Agreement (and, if the other Party seeks an order, to provide the cooperation as said owner shall reasonably request).

iii.    the Parties may communicate the matters set forth in with its current customers regarding the matters set forth in ¶ 3(A)(i); and other transitional matters reasonably arising from or relating to same.

ACKNOWLEDGED AND AGREED TO ON THIS 5th DAY OF MARCH, 2014:

The Reynolds & Reynolds Company
By:  Robert Schaefer, VP of Data Services

Superior Integrated Solutions, Inc.
By:  Philip Battista, CEO

Philip Battista

Page 7 of 9

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0675652
CX4273-007

FTC-0000438

**EXHIBIT A:**
**SIS CUSTOMER LIST INFORMATION FOR DMS ACCESS**

SIS shall provide Reynolds with a Customer List to include the following information for each Customer (including all vendor and OEM customers) for whom, or on whose behalf, SIS is requesting interim DMS access:

1. Vendor or OEM DBA Name

2. Specify data access type, i.e., batch, real-time, inbound/update (write back), outbound

3. Each application used for data access (e.g., 6910, 7601, 7602, 3010, 3651, etc.)

4. Data interfaces used and data elements for each data interface

5. Format of the data (e.g., comma delimited, XML, etc.)

6. Additional detail regarding the method of SIS's existing access (e.g., scripts, applications, and usernames utilized) as may be reasonably necessary to protect such access on an interim basis.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0675653
CX4273-008

FTC-0000439

**EXHIBIT B:**
**DEALER LIST INFORMATION FOR DMS ACCESS**

For each SIS customer's dealership customers, SIS shall provide Reynolds with a Dealer List to include the following information for each Dealer for which SIS or an SIS customer is requesting interim DMS access:

1. Dealer DBA Name

2. Dealer Address (including city, state, and zip code)

3. Dealer Phone Number

4. Dealer Contact Name

5. ERA System Number (if available to SIS)

6. DMS Store Number (i.e. Store03)

7. DMS Branch Number (i.e. Sales02)

8. DMS User Login being used by SIS or SIS customer

9. DMS Report Name(s) being run by SIS or SIS customer

10. Name(s) of any third party designees (including SIS customers and any other third parties) to whom any DMS data is being passed (if any data is being moved outside of SIS)

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0675654
CX4273-009

FTC-0000440

| VENDOR | Live Interactions | DEAL_INFO | Deal Entry | Closed Deals | Names | Vehicle Inventory | Closed Rpr | Open Rpr | Service Advisor | Apmt Entry | CsiCodes | Batch Appts | Parts SO | Parts Master | Parts Order |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| American Guardian | 33 | 1 | | | | | | | | | | | | | |
| Autoloop | 270 | | 1 | 1 | 1 | 1 | 1 | | 1 | | | 1 | 1 | | |
| AutoLoop- ASR PRO | 55 | | | | | | 1 | 1 | | | | | | 1 | |
| AutoLoop- ASR Sched | 16 | | | | | | | | 1 | | | | | | |
| AutoLoop- Names Update | 111 | | | | 1 | | | | | | | | | | |
| AutoLoop- Sched | 90 | | | | | 1 | | | | 1 | | | | | |
| AutoX | 4 | | | 1 | | 1 | | | | | | 1 | | | |
| Carfolks | 4 | | | 1 | | | 1 | | 1 | | | | | | |
| C.N.A | 11 | 1 | | | | | | | | | | | | | |
| Digital Auto Tech | 10 | | | 1 | | | 1 | | | | | 1 | | | |
| F&I Admin | 113 | 1 | | 1 | | | | | | | | | | | |
| F&I Express | 15 | 1 | | 1 | | | | | | | | | | | |
| Interstate National | 27 | 1 | | 1 | | | | | | | | | | | |
| Keep | 63 | | | | | | 1 | | 1 | | | | | | |
| MenuV | 292 | 1 | 1 | 1 | | | | | | | | | | | |
| MyStar | 1 | 1 | | 1 | | | | | | | | | | | |
| Resource | 59 | 1 | | 1 | 1 | | | | | | | | | | |
| Reward Logix | 12 | | | 1 | | | | | | | | | | | |
| SafeGuard | 7 | 1 | | 1 | | | | | | | | | | | |
| SmartCo | 77 | | | | | | | | | | | | | 1 | 1 |
| SNA AutoLoop | 154 | | 1 | 1 | 1 | 1 | 1 | | 1 | | | 1 | 1 | | |
| SNA SmartCo | 132 | 1 | | | | | | | | | | | | 1 | 1 |
| Steve Brown | 69 | 1 | | | | | | | | | | | | | |
| SW Dealer Services | 67 | 1 | | | | | | | | | | | | | |
| SU Track | 11 | 1 | 1 | 1 | | 1 | 1 | 1 | | | | 1 | 1 | | |
| Subaru NE | 16 | | | | | | | | | | | | | 1 | 1 |

Exhibit C

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0675655

CX4273-010

FTC-0000441

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SNA | 155 | | 1 | | | 1 | | | | | | | | | |
| TR Solutions | 1 | 1 | 1 | | | | | | | | | | | | |
| United Car Care | 2 | 1 | | | | | | | | | | | | | |
| Universal Advantage | 69 | 1 | | | | | | | | | | | | | |
| Universal Warranty (GMI) | 108 | 1 | | | | | | | | | | | | | |
| USEA | 7 | 1 | | | | | | | | | | | | | |
| 2041 | | 17 | 2 | 16 | 3 | 5 | 9 | 4 | 2 | 4 | 1 | 5 | 2 | 4 | 3 |

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0675656

CX4273-011

FTC-0000442

# 3PA AGREEMENT

This **3PA AGREEMENT** ("3PA Agreement") entered into as of the latest signature date of the parties below ("3PA Effective Date") between Digital Motorworks, Inc. ("DMI") and CDK Global, LLC (collectively, "CDK") and The Reynolds and Reynolds Company, Dealer Computer Services, Inc., and Universal Computer Systems Holding, Inc. (collectively, "Vendor").

## BACKGROUND

CDK provides retail automobile and truck dealers with a variety of Elite®, webSuite® and DRIVE® dealer management computer systems (collectively, "CDK Systems"; dealers using CDK Systems are referred to as "CDK Clients").

Vendor provides its application programs (as further described in Section 2 of Exhibit 3PA-B (including all subparts), the "Application(s)") to certain CDK Clients (such CDK Clients using the Application(s) shall be referred to herein as "Vendor Clients"). For the avoidance of doubt, this 3PA Agreement applies only to those Application(s) identified in the respective subparts of Section 2 of Exhibit 3PA-B (as may be amended pursuant to Section 1(i) of this 3PA Agreement).

CDK has developed both (A) a managed interface system (the "Managed Interface System") designed to provide (i) third party software application vendors (such as Vendor) with the ability to access, send and receive data to CDK Clients through CDK Systems and (ii) CDK Clients with the ability to access and receive data provided by such third party vendors and to send data to such third party vendors and (B) a service whereby CDK directly or indirectly collects (by accessing, polling, copying, extracting, downloading) information from automotive and/or motor vehicle dealerships chosen by DMI's customer and reformats, aggregates, compiles and/or enhances such information using DMI's proprietary InfoIQ technology for delivery to such customer (the "InfoIQ Service"). The Managed Interface System and the InfoIQ Service are each described in more detail in Exhibit 3PA-A hereto. The Managed Interface System includes the pre-defined integration points ("Pre-Defined Integration Points") developed by CDK and described in more detail in Section 1 of Exhibit 3PA-B hereto.

Each subpart of Section 2 Exhibit 3PA-B hereto shall indicate whether, with respect to each Application, the data is provided via the Managed Interface System or the InfoIQ Service, or both.

Vendor and CDK are also parties to that certain Data Exchange Agreement dated the date hereof (the "Data Exchange Agreement"). With respect to the matters covered by this 3PA Agreement, the terms of this 3PA Agreement are in addition to the terms of the Data Exchange Agreement. However, in the event of a conflict between this 3PA Agreement and the Data Exchange Agreement with respect to the matters covered by this 3PA Agreement, this 3PA Agreement and its exhibits shall control.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000091

CX4152-001

FTC-0000331

**Terms and Conditions**

**NOW, THEREFORE,** CDK and Vendor agree as follows:

    1.      **Provision of InfoIQ Service; Use of Managed Interface System and InfoIQ Service; Data Access; Other Obligations**

        (a)      Vendor shall be solely responsible for the deployment of its integration to Vendor Clients to allow the Managed Interface System to operate properly with the Application(s) that use the Managed Interface System to receive Data. CDK agrees to use commercially reasonable efforts to provide Vendor with the InfoIQ Service for the Applications using the InfoIQ Service. Subject to the other terms of this 3PA Agreement, CDK hereby grants Vendor a license to, throughout the term of this 3PA Agreement, (i) use the Data (as hereinafter defined) solely in connection with providing the Applications to Vendor Clients and (ii) use and access the Managed Interface System, including the Pre-Defined Integration Points, solely to access, receive and use the Data in connection with, and only in connection with, providing the Application(s) that use the Managed Interface System for Vendor Clients. "Data" means only the data described in Section 3 of Exhibit 3PA-B hereto. Vendor agrees that the Data may include personally identifiable information and Vendor represents that it has all necessary consents and authority to have such Data transferred to Vendor and for Vendor to use such Data. Prior to its deployment of its integration to the Managed Interface System to Vendor Clients Vendor shall provide CDK with a list of its clients who have licensed the Application(s) as of such date. CDK agrees to use commercially reasonable efforts to assist Vendor in its deployment efforts of the Managed Interface System. Vendor's use of the Managed Interface System must adhere at all times to CDK's "messaging standards" as they exist from time to time. Vendor acknowledges, without limiting any other rights CDK may have, that CDK owns a copyright in the InfoIQ Service and the Managed Interface System, including without limitation the Pre-Defined Integration Points and all pre-existing software and specifications used by CDK to develop the Managed Interface System and the Pre-Defined Integration Points (the foregoing, including, without limitation, the Pre-Defined Integration Points and any such pre-existing software and specifications used by CDK to develop the InfoIQ Service and the Managed Interface System, together with any associated intellectual property rights therein shall be collectively referred to herein as the "CDK Property"). Nothing in this 3PA Agreement shall transfer any title in the CDK Property to Vendor and nothing in this 3PA Agreement shall give Vendor any rights in or to the CDK Property, except for the license granted above in this Section 1(a). Vendor agrees that if ninety (90) days pass after the date the Managed Interface System have been made available to Vendor for an Application, and the Parties are still unable to mutually agree on a schedule for the integration for such Application, and such delay is not a result of any action or inaction by CDK (including, without limitation, any unreasonable rejection by CDK of any proposed schedule), then CDK may terminate this Agreement with respect to such Application only. Subject to this Agreement, including the terms of the exhibits hereto (which more specifically define the integration to be provided under this 3PA Agreement) and Section 1(i) hereof (which sets forth the Parties' agreement regarding potential future additional services), the integration provided for the Applications by this 3PA Agreement is extract only.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000092

CX4152-002

FTC-0000332

(b)     Use of the Managed Interface System or InfoIQ Service by Vendor is limited to accessing and receiving and otherwise using the Data in connection with providing the Application(s) that use the Managed Interface System or InfoIQ Service (as set forth in Section 2 of Exhibit 3PA-B) to Vendor Clients.  Specifically, the Managed Interface System and InfoIQ Service may not be used by Vendor to access any other data on any CDK System or to provide any other application or business function to any CDK Client or any other entity wishing to access data on a CDK System or to provide any data residing on any CDK System to any other entity unless passing the Data to another entity is for the purpose of performing a service required by the Application(s) and is on behalf of the CDK Client (i.e. cleansing and standardizing Data, mailings, etc.) and the process is identified in the respective subparts of Section 2 of Exhibit 3PA-B.   Vendor agrees that it shall not copy, license, sell or otherwise transfer the Data to any third party for any purpose whatsoever and Vendor agrees that it shall only use the Data in connection with providing the Application(s) to Vendor Clients.  Vendor agrees that (i) it has no right, title or interest in the Data and (ii) except as otherwise specifically agreed to between Vendor and a CDK Client, nothing contained herein shall be deemed to provide Vendor with any such right, title or interest. Further, without limiting the generality of the foregoing, Vendor acknowledges and agrees that it may not use any database elements, including, without limitation, any vehicle, customer, deal, accounting, parts and service database, extracted from any CDK System to recreate or reengineer, a new index database for use in any Vendor product or service.

(c)     Vendor agrees that nothing in this 3PA Agreement shall give it any right to have any access to or use of any CDK System, including any and all software applications residing thereon, for any reason, nor to access or use for any reason any data residing on any CDK System other than as described on the respective subparts of Section 2 of to Exhibit 3PA-B hereto; provided, however, that nothing in this agreement prohibits access necessary to convert a CDK Client to the use of a Reynolds DMS.  In addition, notwithstanding anything to the contrary in this 3PA Agreement, pending approval by CDK of the Application(s) that use the Managed Interface System or InfoIQ Service ("Pre-Approval Period") such Application(s) may continue to access the CDK Systems and, during this Pre-Approval Period: (a) such access will not constitute a violation of this 3PA Agreement or the Data Exchange Agreement; and (b) CDK shall not take any measures to block or otherwise disrupt Vendor's normal CDK Systems access.

(d)     Vendor warrants to CDK that: (i) the Application(s) and subsequent new releases of the Application(s) will operate in accordance with their specifications; (ii) Vendor has the right and power to enter into this 3PA Agreement and to grant to CDK Clients all of the rights and licenses in the Application(s) as set forth in this 3PA Agreement; (iii) Vendor has obtained or shall obtain all necessary permission and licenses regarding data to offer the Application(s); (iv) Vendor shall provide all required notices to CDK Clients and shall obtain all required consents from CDK Clients, and (v) Vendor has all right and authority required to collect, disclose and use such information as described in the respective subparts of Section 2 of Exhibit 3PA-B.

CDK warrants to Vendor that: (i) the Managed Interface System or InfoIQ Service will operate in a manner consistent with the written specifications provided to Vendor; and (ii) CDK

CONFIDENTIAL-Submitted in Lieu of Compulsory Process          REYREY0000093

CX4152-003

FTC-0000333

has the right and power to enter into this 3PA Agreement and to grant to Vendor the rights and licenses in the Managed Interface Agreement or InfoIQ Service as set forth in this 3PA Agreement.

NO OTHER WARRANTIES. EXCEPT AS SPECIFIED HEREIN, NEITHER CDK NOR VENDOR MAKES ANY OTHER WARRANTIES, CONDITIONS OR REPRESENTATIONS, EXPRESS OR IMPLIED, ORAL OR WRITTEN, REGARDING THE MANAGED INTERFACE SYSTEM OR INFOIQ SERVICE, THE APPLICATION(S), THE CDK SYSTEM OR ANYTHING ELSE AND HEREBY EXPRESSLY DISCLAIMS ALL OTHER EXPRESS AND IMPLIED WARRANTIES AND CONDITIONS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT AND FITNESS FOR A PARTICULAR PURPOSE. CDK DOES NOT WARRANT THE OPERATION OF THE MANAGED INTERFACE SYSTEM OR INFOIQ SYSTEM WILL BE UNINTERRUPTED OR ERROR FREE.

(e)     Vendor agrees (I) that it will, with respect to the Applications that will use the Managed Interface System or InfoIQ Service and within one hundred eighty (180) days following the date CDK approves the use of the Application(s) with the Managed Interface System or InfoIQ Service, access data on CDK Systems for use with such Application(s) exclusively through the Managed Interface System or InfoIQ Service in the manner described on the respective subparts of Section 2 of Exhibit 3PA-B hereto and (II) that it will, with respect to the Applications that receive Data from the InfoIQ Service, only access data on CDK Systems for use with such Applications through the InfoIQ Service, unless in each case, as otherwise agreed to in writing by CDK or Vendor is receiving the data directly from the Vendor Client without the use of any third party service or application. Vendor agrees that it will not, with respect to the Application(s) (i) otherwise access, retrieve, license, or otherwise transfer any data from or to a CDK System (including, without limitation, pursuant to any "hostile interface") for itself or any other entity or (ii) contract with, or otherwise engage, any third party to access, retrieve, license or otherwise transfer any data from or to an CDK System. In furtherance of the foregoing agreement Vendor agrees:  (i) as part of CDK's approval of the use of the Application(s) with the Managed Interface System or InfoIQ Service, the Vendor shall provide CDK with step-by-step instructions they plan to use to uninstall any Vendor code, data, files, directories or other structures on an CDK System prior to the installation of the Managed Interface System or InfoIQ Service on such CDK System (or provide CDK with an uninstall script that will remove all of the Vendor's code, data, file, directories and any other structures resident on the CDK System) and demonstrate the de-installation is both complete and harmless to the CDK System and (ii) if, after cancellation of an CDK Client's use of the Managed Interface System or InfoIQ Service for use with the Application(s) (by such CDK Client or otherwise) any Vendor code, data, files, directories or other structure remains on such CDK Client's system CDK reserves the right to remove the foregoing  and charge the Vendor CDK's then prevailing rate to so remove such items.  If, after CDK's approval of the use of the Application(s) with the Managed Interface System or InfoIQ Service, Vendor still continues to use any alternative integration methods for any CDK Client for an Application(s) Vendor shall, nonetheless, pay CDK under this 3PA Agreement as if such CDK Client was using the Managed Interface System or InfoIQ Service unless: (i) the data is received by Vendor directly from the Vendor Client without using any third party service, or (ii) the application data is vehicle

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000094

CX4152-004

inventory data received from a third party authorized by the dealer.

(f)     Vendor shall be solely responsible to provide, at its sole cost and expense, all necessary communications lines (and related equipment) from Vendor's computer servers, including procurement of ISP services deemed necessary to provide Vendor server connectivity to the Managed Interface System or InfoIQ Service site.

(g)     Vendor acknowledges and agrees that it will only be able to use the Managed Interface System or InfoIQ Service with respect to Vendor Clients that use an CDK System that, at a minimum, (a) runs a webSuite2007 (R4.5) or higher dealer management system on a Linux or ASP platform in the U.S. or Canada and (b) includes IP network connectivity with GetWired.

(h)     Vendor agrees to provide CDK with a written list of all Vendor Clients once every year after the date hereof.

(i)     CDK agrees that (A) if Vendor acquires another application after the date hereof that is substantially similar in nature to one of the Applications set forth in Section 2 of Exhibit 3PA-B hereto then CDK agrees, at Vendor's request, to add such application to Section 2 of Exhibit 3PA-B hereto; provided, however, that (i) such new application shall otherwise be subject to all the terms hereof and (ii) the integration points provided for such new application shall be exactly the same as those provided to the similar existing Application (including, without limitation, if applicable, the same Pre-Defined Integration Points) and (B) if CDK enters into an agreement to provide a competing dealer management system provider with integration services with respect any application, and Vendor requests the same integration services with respect to a substantially similar Vendor application, then CDK agrees to add such application to Section 2 of Exhibit 3PA-B hereto; provided, however, that (i) such new application shall otherwise be subject to all the terms hereof and (ii) the integration points provided for such new application shall be exactly the same as those provided to the competing application (including, without limitation, if applicable, the same Pre-Defined Integration Points).   For the avoidance of doubt, nothing in this Section shall be deemed to require CDK to consent to the assignment of any agreement from a third party to Vendor.

(j)     Vendor will inform CDK within one (1) business day of a Vendor Client cancelling any Application by submitting a termination request to CDK for the corresponding Managed Interface System or InfoIQ Service components.  Should a Vendor Client contact CDK and request the Managed Interface System or InfoIQ Service being provided to the Application be stopped immediately, CDK reserves the right to comply with this request and will notify Reynolds within one (1) business day of the request and CDK's compliance.  Should Reynolds contact the Vendor Client and reach agreement to reinstate the Application within three (3) business days of receiving such notice from CDK, CDK will re-install / turn on the corresponding Managed Interface System or InfoIQ Service components for no additional installation fee(s).  CDK will use commercially reasonable efforts to terminate billing for the month subsequent to the submission of a termination request.  CDK does not prorate the Monthly Fee(s).

CONFIDENTIAL-Submitted in Lieu of Compulsory Process            REYREY0000095

CX4152-005

FTC-0000335

## 2.    Vendor Indication of Approved Status

(a)    Vendor may not make any use of the CDK name or any CDK logo without the prior written consent of CDK.

(b)    Vendor shall not represent in any way that its Application(s) are produced, developed, endorsed or otherwise affiliated with CDK.

(c)    CDK agrees to (i) indicate on its internet site that Vendor is an approved integration vendor with respect to the Applications and (ii) provide a letter to Vendor that states Vendor is an approved integration vendor with respect to the Applications that Vendor may provide to Vendor Clients.

## 3.    Fees; Payment

(a)    No Fee Term.  Until the earlier to occur of (i) the five (5) year anniversary of the 3PA Effective Date or (ii) any material breach by Vendor under the Data Exchange Agreement (the "No Fee Period"), CDK shall not charge Vendor any fees under this Agreement; provided, however, that (i) if, at any time during the No Fee Period, the number of copies of the Applications licensed by Vendor Clients exceeds six hundred (600) (the "Cap") then Vendor shall pay CDK's then standard monthly rates for the services provided hereunder for each copy of an Application in excess of the Cap for such portion of the No Fee Period during which the number of Applications exceeds the Cap; and (ii) Vendor shall pay CDK's standard installation fee for any installations of an Application after the first six hundred (600) Application installations have been performed even if, at the time of such installation, the number of Applications then in use is below the Cap (although in that circumstance there would be no monthly fees owed pursuant to this subsection).  For example and for the avoidance of doubt, it is agreed that if a Vendor Client licenses two separate Applications it shall count as two copies of the Applications toward the Cap.  The standard CDK rates referred to in this Section 3(a) are set forth in Exhibit 3PA-C and, during the No Fee Term, may be increased only based upon the Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average using the unadjusted 12 month index for the month of the price change announcement.  Thereafter, pricing may be increased once per year, in CDK's discretion, upon at least sixty (60) days written notice to Vendor.

(b)    Fee Term.  After the expiration of the No Fee Term, Vendor shall pay CDK's then standard fees at such time for the services provided hereunder for all copies of the Applications (and not just for those in excess of the Cap).  For the sake of clarity, Vendor agrees that, any changes made to the Pre-Defined Integration Points, or the addition of any Pre-Defined Integration Points, shall be at the further expense of Vendor, including, without limitation, installation and monthly fees associated with such additional Pre-Defined Integration Points (whether during or after the No Fee Term).  CDK and Vendor will agree on the associated additional fees at the time such modified/additional Pre-Defined Integration Point is provided by CDK. CDK will invoice Vendor for all such fees and taxes (if any) to Vendor.  Invoices shall be payable within 30 days after the date of the applicable invoice from CDK.  Vendor agrees to submit any disputes regarding any fees in writing to CDK within 60 days of the invoice for such

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000096

CX4152-006

FTC-0000336

fees otherwise such dispute will be waived and such fees will be final and not subject to challenge. Invoices which are not paid by Vendor within the time required for payment shall bear interest at the rate of eighteen percent (18%) per annum compounded monthly or the maximum rate permitted by law, whichever is less. The fees set forth above are exclusive of sales, use or other applicable taxes (other than taxes based on CDK's net income), and Vendor agrees to pay any such taxes. After the expiration of the No Fee Term, CDK may increase the monthly fees at any time once per calendar year by providing Vendor with written notice of such increase at least 60 days prior to the effectiveness of such price increase. If Vendor fails to timely pay an invoice hereunder then CDK may stop providing the InfoIQ Service and block access to the Managed Interface System or InfoIQ Service and the Data until such time as Vendor pays such past due amount.

(c)     CDK shall have the right to have an independent auditor audit the books and records of Vendor for the sole purpose of verifying the amounts due and payable hereunder up to once per calendar year upon twenty days' notice to Vendor. Vendor shall maintain business records, books, account information, and related materials sufficient to permit such audit. Vendor's officers and/or directors shall cooperate fully in any such audit. The cost of such an audit shall normally be at CDK's expense; provided, however, that Vendor shall bear the cost of the audit if the audit reveals any underpayment that is greater than five percent (5%) of the amount actually due for any month for the period being audited. Vendor shall pay any shortfalls, plus interest at 18% annually, dating from the due dates in question, within thirty (30) days after notice from CDK of the shortfall. CDK shall refund Vendor any overpayments, plus interest as set forth above, dating from the date of overpayment, revealed by such audit.

For one (1) year after the date of each license of the Application(s), Vendor shall maintain records showing the CDK Client's name and address, date of sale, installation address, and date of installation. If Vendor goes out of business or is otherwise unable to comply with the requirements of this Section, Vendor shall immediately provide CDK with copies of such records.

4.     **Term and Termination.**

(a) The term of this 3PA Agreement shall be for the period commencing on the date hereof and ending on fifth anniversary of the date hereof (the "Initial Term") and shall thereafter automatically renew for consecutive one year renewal periods (each a "Renewal Term") until terminated by either party with at least 90 days written notice prior to the end of the Initial Term or any Renewal Term. Upon expiration or termination of this 3PA Agreement in its entirety or with respect to an Application, CDK must continue providing the Managed Interface System and the InfoIQ Service (under the terms of this 3PA Agreement) for use with the Application(s) without changes in service until the conclusion of Vendor's then effective contract term with any relevant then existing Vendor Clients ("**Phase Out Access**"), provided that (a) the Phase Out Access shall not exceed two (2) years; (b) Vendor continues to pay all applicable fees; and (c) as a condition of Phase Out Access, Vendor must give CDK thirty (30) days prior written notice of the following: (i) a list of the Applications for which such Phase Out Access is needed; (ii) a list of Vendor Clients (including name, address, and information reasonably necessary to identify such Vendor Client) for which such Phase Out Access is needed, and (iii) the date of the

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000097

CX4152-007

FTC-0000337

conclusion of the then effective contract term with the relevant Vendor Clients. During any Phase Out Access period, the Parties shall continue to perform under the terms of this 3PA Agreement in effect at the time of termination, except no new installations of the applicable Application(s) will be allowed. At the conclusion of any Phase Out Access period or immediately upon termination of this 3PA Agreement in its entirety or with respect to an Application if the Phase Out Access period is not invoked, Vendor must cease all use of the Managed Interface System and InfoIQ Service with respect to the relevant Application(s). Notwithstanding anything to the contrary herein, Phase Out Access is not available if this 3PA Agreement is terminated pursuant to the Assignment provision of Section 10 of this 3PA Agreement.

(b)     Either party may terminate this 3PA Agreement if (i) the other party commits a material breach of any of the terms hereof that is capable of being cured and is not cured within 30 days after receipt of notice from the other party of specifying such material breach (provided, however, that the cure period with respect to Vendor's breach of its payment obligations shall only be 10 days), or (ii) the other party commits a material breach of any of the terms hereof that is not capable of being cured and fails to permanently terminate the conduct causing the breach immediately after receiving notice specifying such material breach.

This Agreement shall automatically terminate if the RCI Agreement between Vendor and CDK of even date hereof terminates for any reason unless CDK intentionally and in bad faith causes such termination of the RCI Agreement.

In addition, after the Initial Term, either party may terminate this Agreement in its entirety or with respect to an Application at any time for any reason, or no reason at all, with at least one hundred eighty (180) days' written notice to the other party.

(c)     CDK may terminate this 3PA Agreement, the InfoIQ Service, and access to the Managed Interface System and InfoIQ Service immediately upon written notice to Vendor in the event that CDK reasonably determines that the continued operation of this 3PA Agreement violates, or could violate, any applicable federal, state or local law, rule or regulation including any "privacy" or data security laws.

(d)     If a CDK Client objects to CDK's provision of its Managed Interface System hereunder or the InfoIQ Service CDK may terminate the access to the Managed Interface System or its provision of the InfoIQ Service for the specific Application(s) with respect to such CDK Client immediately upon written notice to Vendor.

(e)     CDK may terminate this 3PA Agreement if CDK elects to "sunset" the Managed Interface System or InfoIQ Service on a general basis (i.e., with respect to third party participants generally, and not only with respect to Vendor) and does not offer any similar service or program to any other third party vendors.

(f)     Except as otherwise specifically set forth herein, Vendor may not, after termination of this 3PA Agreement, continue to use the Managed Interface System or InfoIQ Service for any purpose whatsoever related to an CDK System or an CDK Client.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000098

CX4152-008

FTC-0000338

**5.** **Indemnification.**

(a)     Except as provided in this Section, all Data is transferred to Vendor in "AS IS, WHERE IS" condition.  No warranty whatsoever as to the content, condition of, or usability of the Data is made by CDK, EXCEPT THAT CDK REPRESENTS AND WARRANTS THAT IT WILL NOT INTENTIONALLY INTRODUCE ANY BUGS, ERRORS, OR VIRUSES INTO THE DATA AND THAT THE DATA SUBMITTED TO VENDOR WILL NOT BE CHANGED, ALTERED, OR MODIFIED FROM THE FORM AND CONTENT RECEIVED BY CDK, EXCEPT FOR NORMAL CDK EDITING PROCESSES AS MAY BE AGREED UPON BY CDK AND VENDOR.    The Managed Interface System and InfoIQ Service are provided on an "AS IS, WHERE IS" basis.  CDK makes no representations or warranties to Vendor or any CDK Clients with respect to the Managed Interface System or InfoIQ Service. Without limiting the foregoing, CDK EXPRESSLY DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY, INFRINGEMENT AND FITNESS FOR A PARTICULAR PURPOSE.   CDK DOES NOT WARRANT THAT THE MANAGED INTERFACE SYSTEM WILL BE AVAILABLE AT ALL TIMES, THAT IT WILL MEET THE REQUIREMENTS OF VENDOR OR THAT ITS OPERATION WILL BE UNINTERRUPTED OR ERROR FREE.

(b) Each Party ("Indemnitor") must defend, indemnify and hold harmless the other party, its affiliates and their employees, successors and assigns ("Indemnitees") against all damages, losses, costs, expenses (including reasonable attorneys' fees, costs and expenses) and other liabilities arising out of any claims, demands, suits, or causes of action by third parties, arising out of or in connection with this 3PA Agreement to the extent that such damages, losses, costs, expenses and other liabilities result or are claimed to result in whole or in part from: (i) any breach of this 3PA Agreement by Indemnitor, its affiliates or their employees or agents; (ii) the violation by Indemnitor, its affiliates or their employees or agents of applicable law or regulation in connection with the data access and data extraction described in this 3PA Agreement; (iii) any access by Indemnitor, or its affiliates or their employees or agents to Indemnitee's proprietary hardware and/or software facilitated pursuant to this 3PA Agreement for any purpose falling outside the scope of this 3PA Agreement; (iv) Indemnitor's or its affiliates' or their employees' or agent's failure to obtain the rights and consents necessary for Indemnitee to gain access to (and extract) Data pursuant to this 3PA Agreement; and (v) any publication, breach of confidentiality, dissemination, conversion, misappropriation or other use of any Data facilitated by this Agreement by Indemnitor, or its affiliates or their employees or agents in a manner (a) not authorized by the relevant Vendor Client, or (b) in violation of relevant law.

**6.** **Limitation of Liability.**  EXCEPT FOR A CLAIM BASED SOLELY UPON BREACH OF THE CONFIDENTIALITY PROVISIONS OF SECTION 8, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY OR ITS AFFILIATES, SUCCESSORS OR ASSIGNS FOR ANY INCIDENTAL, CONSEQUENTIAL DAMAGES INCURRED BY SUCH PERSONS (INCLUDING, WITHOUT LIMITATION, ANY LOST REVENUE OR LOST PROFITS) OR FOR SIMILAR DAMAGES, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES (IT BEING AGREED THAT THIRD PARTY CLAIMS FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES AGAINST THE OTHER

CONFIDENTIAL-Submitted in Lieu of Compulsory Process                                             REYREY0000099

CX4152-009

**FTC-0000339**

PARTY WOULD CONSTITUTE DIRECT DAMAGES INCURRED BY THE OTHER PARTY). EXCEPT FOR WILLFUL MISCONDUCT BY A PARTY, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY OR ITS AFFILIATES, SUCCESSORS OR ASSIGNS FOR ANY PUNITIVE OR EXEMPLARY DAMAGES.

7.     **Laws and Governmental Regulations; Relationship of Parties.**  Each party shall be responsible for compliance with all laws and governmental regulations affecting its respective business, and neither CDK nor Vendor shall have any responsibility relating to the other party's responsibility therefor, including, without limitation, advising the other party of its responsibilities in complying with any laws or governmental regulations affecting its business.

8.     **Confidentiality.**   Each party to this 3PA Agreement agrees that the terms of confidentiality in the Data Exchange Agreement shall govern the exchange of confidential information under this 3PA Agreement. However, notwithstanding anything to the contrary in the Data Exchange Agreement, Data, as defined herein, is specifically excluded from the definition of Confidential Information.

9.     **Notices.**    All notices shall be in writing and shall be delivered or sent by recognized courier or registered or certified mail, return receipt requested, to the addresses indicated below or to such other addresses as the parties shall specify by notice given pursuant hereto:

if to CDK, to:

CDK Global, LLC
1950 Hassell Road
Hoffman Estates, IL  60169
Attn:  Group President

with a copy to:

Attn:  General Counsel

if to Vendor, to:

The Reynolds and Reynolds Company
One Reynolds Way
Kettering, OH 45430

Title: VP, Data Services

with a copy to:

Attn: Legal Department

Page 10 of 26

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000100

CX4152-010

FTC-0000340

**10. Assignment.** Neither party may assign any of its rights or delegate any of its duties under this Agreement without the prior written consent of the other party hereto; provided, however, that such consent shall not be required for (i) any assignment to an affiliate of such party as part of a corporate reorganization of such party or (ii) any assignment made as part of a sale of the majority of the assets or equity securities of such party as long as the acquirer (A) does not, prior to the acquisition, sell any application programs or services that compete with the non-assigning party and (B) is not, prior to the acquisition, affiliated with an entity that sells any application programs or services that competing with the non-assigning party. This Section shall be deemed, without limitation, to apply to any direct or indirect change in the control of either party including, without limitation, pursuant to any merger, acquisition, consolidation or other corporate restructuring in which it participates. Any attempted assignment in violation of this provision shall be void and shall be grounds for termination after 30 days notice. This Agreement shall be binding upon and inure to the benefit of the parties' respective successors and assigns.

**11. General.**

(a) This 3PA Agreement shall become valid and binding upon the parties upon execution and delivery of this 3PA Agreement by the duly authorized signatories of CDK and Vendor.

(b) This 3PA Agreement shall not be changed, modified or amended except by a writing signed by both parties, and this 3PA Agreement may not be discharged except by performance in accordance with its terms.

(c) This 3PA Agreement sets forth the entire agreement of the parties as to the subject matter hereof and supersedes all existing agreements and all other oral, written or other communications between them concerning its subject matter, including but not limited to any and all prior or existing contracts related to integration to CDK Systems for any of the Applications. Without limiting the generality of the foregoing, it is specifically agreed that this Agreement supercedes that certain ADP Partners Program Agreement between ADP, Inc. and KeyTrak, Inc.; and InfoIQ Service Agreement between Digital Motorworks, Inc. and HCD Software LLC. There are no warranties, representations or agreements other than those set forth in this 3PA Agreement.

(d) If any provision of this 3PA Agreement is held to be invalid, illegal, or unenforceable, the validity, legality or enforceability of the remaining provisions shall not be affected or impaired thereby.

(e) The headings in this 3PA Agreement are intended for convenience of reference only and shall not affect its interpretation.

(f) **Confidential Binding Arbitration.** In the event of any dispute, claim, question or disagreement arising from or relating to this 3PA Agreement or an alleged breach thereof ("Dispute"), the Parties agree that all Disputes shall be submitted to confidential binding arbitration in accordance with the then applicable commercial rules of the American Arbitration

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000101

CX4152-011

FTC-0000341

Association ("AAA"). Notwithstanding anything to the contrary in this 3PA Agreement or the AAA Rules, the Parties agree that arbitration under this Section 11(f): (a) shall be governed by the Federal Arbitration Act exclusive of any state arbitration laws; (b) shall be before a single neutral arbitrator who is a licensed attorney with prior experience as an arbitrator; (c) shall be conducted in Nashville, TN ; and (d) shall be conducted pursuant to a confidentiality agreement that provides at a minimum that the arbitration and all documents and pleadings exchanged in connection therewith shall be held confidential and used only for purposes of the arbitration, except that a Party may nevertheless: (i) seek to reduce the binding arbitration award to a judgment in court; (ii) seek enforcement of the award pursuant to the Federal Arbitration Act and this 3PA Agreement; and (iii) disclose information regarding the arbitration as required by law (e.g., to auditors or regulatory agencies).

(g)     **Arbitration Fees.** Aside from filing or other fees required to initiate the arbitration, all arbitration fees will be split evenly between the Parties unless and until an award is made by the arbitrator regarding arbitration fees. If a Party does not pay its respective share of arbitration fees, then all claims (including counterclaims) of the non-paying Party shall be dismissed by the arbitrator or AAA, and the non-paying Party shall not be permitted to bring any further claims in the arbitration for affirmative relief. The non-paying Party may still participate in the arbitration to defend claims brought against it.

(h)     **Temporary Injunctive Relief for IP Disputes.** Notwithstanding anything to the contrary contained in this 3PA Agreement, however, if a dispute arises that relates to misappropriation of proprietary, confidential or trade secret information or other intellectual property; or a breach of the Confidentiality or Data Security provisions of this Agreement and/or its Exhibits ("IP Dispute"), a Party, at its election may seek Temporary Injunctive Relief from a court of competent jurisdiction related exclusively to the IP Dispute. **"Temporary Injunctive Relief"** means only a temporary restraining order and/or a temporary injunction. A claim for Temporary Injunctive Relief brought in court may not be combined with: (a) a request for any other type of relief whether legal or equitable; or (b) any Dispute other than an IP Dispute. All other Disputes, including whether a permanent injunction shall issue, are to be arbitrated concurrently with any court action relating to Temporary Injunctive Relief.

(i)     This 3PA Agreement shall be governed by the laws of the State of Illinois.

(j)     No failure or delay on the part of either party to this 3PA Agreement to fully enforce its rights hereunder shall be construed as a waiver by such party of any default hereunder or acquiescence therein, nor shall any failure to exercise such right preclude any future exercise of such right. All rights and remedies under this 3PA Agreement shall be cumulative and not exclusive of any other rights or remedies otherwise available.

(h)     This 3PA Agreement may be executed in one or more counterparts.

(i)     Each of the parties to this 3PA Agreement is acting only as an independent contractor and assumes full responsibility for each of its employees and shall be solely responsible for the payment of compensation to its personnel. This 3PA Agreement does not constitute either party hereto as the agent or legal representative of the other party and does not

CONFIDENTIAL-Submitted in Lieu of Compulsory Process                    REYREY0000102

CX4152-012

FTC-0000342

create a partnership or joint venture between them.

(j) All defined terms used in this 3PA Agreement shall be deemed to refer to the masculine, feminine, neuter, singular and/or plural, in each instance as the context and/or particular facts may require. Use of the terms "hereunder", "herein", "hereby", and similar terms refer to this 3PA Agreement.

(k) Each provision of this 3PA Agreement that would by its nature or terms survive any termination of this 3PA Agreement shall survive any termination of this 3PA Agreement, regardless of the cause.

IN WITNESS WHEREOF, the parties hereto have executed this 3PA Agreement as of the first date written above.

**THE REYNOLDS AND REYNOLDS CO.**
**DEALER COMPUTER SERVICES, INC.**
**UNIVERSAL COMPUTER SYSTEMS**
**HOLDING, INC.**

By: _R. T. Brockman_

Title: _Chairman / CEO_

Date: _2/18/15_

**CDK GLOBAL, LLC**
**DIGITAL MOTORWORKS, INC.**

By: _____

Title: _Sr VP ____ ___

Date: _2/18/15_

Page 13 of 26

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000103

CX4152-013

FTC-0000343

Exhibit 3PA-A

**Description of Managed Interface System**

The Managed Interface System uses hardware and software components that allow Vendor to create standard data messages in SOAP format to request data from, or convey data to, a CDK controlled Internet based server (the "Managed Interface Server"). CDK then uses (a) network connectivity between CDK Systems and the Pre-Defined Integration Points, (b) an open application program interface and data objects resident on CDK Systems that, collectively, provide access to the data residing on CDK Systems, and (c) standard web services, including web pages and web scripts, to move the dealer's data to and from the CDK Systems to the Managed Interface Server and on to Vendor. Vendor acknowledges and agrees that the Pre-Defined Integration Points included in the Managed Interface System requires knowledge of the CDK application release level. Vendor acknowledges and agrees that bulk extracts of data may be done only between the hours of 10pm and 5am Central Time. Vendor acknowledges and agrees that extracts of data may be done no more than every 15 minutes from a CDK client and will work with CDK to ensure CDK System responsiveness is not impeded through integration. Notwithstanding the foregoing, it is agreed that the interfaces initially used to provide the Data to the Key Tracking Applications shall be E Integration Points instead of Pre-Defined Integration Points. Vendor agrees that it shall switch to the use of Pre-Defined Integration Points with respect to the Key Tracking Applications within 180 days after written notice from CDK to switch to Pre-Defined Integration Points.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000104

CX4152-014

FTC-0000344

## Description of InfoIQ Service

*InfoIQ is a service whereby DMI directly or indirectly collects (by accessing, polling, extracting, downloading) information from automotive and/or motor vehicle dealerships chosen by DMI's customer. The InfoIQ service also reformats, aggregates, compiles and/or enhances such information using DMI's proprietary InfoIQ technology prior to delivery to a customer.*

CONFIDENTIAL-Submitted in Lieu of Compulsory Process                    REYREY0000105

CX4152-015

FTC-0000345

Exhibit 3PA-B

**Description of Data Access; Applications Served by Data Access; Data**

*Section 1: List of Third Party Access utilized*

Extract Inventory Vehicles – Batch*
Extract Service Appointment – Batch*
Extract Closed F&I Sales Deals – Batch*
Extract Closed Repair Orders – Batch*
Extract Employee Data – On Demand**
Extract Vehicle Inventory – On Demand**
Extract Service Sales – On Demand**

**Batch** = InfoIQ Service

**On Demand** = Pre-Defined Integration Point(s)

*Section 2: Applications and Integration*

1. *Applications Served*
   *Vendor has been approved for the product called Naked Lime Marketing in the CDK Application Category of Customer Marketing/Followup.*

Managed Marketing Services (MMS) by Naked Lime Marketing (NLM) provides a full-service marketing solution, powered by the industry's best intelligent marketing database. Each dealer is assigned its own Marketing Analyst who helps dealers accomplish the following marketing functions:

- Builds customer touch-points branded to the dealership.

- Advises on successful marketing campaigns.

- Designs emails for delivery to the customer's inbox.

- Sends relevant and targeted messages to customers.

- Reports results monthly.

**Page 16 of 26**

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000106

CX4152-016

FTC-0000346

MMS converts the DMS database into a superior marketing engine with verified and appended household data from numerous sources, including Polk, USPS, VIN Title Transfer, and the dealer's OEM.

Integration utilized

1) Extract Closed Repair Orders – Batch daily

2) Extract Historical Service Data – Batch upon dealer setup

3) Extract Closed F&I Sales Deals – Batch daily

4) Extract Historical Sales Data – Batch upon dealer setup

5) Extract Vehicle Inventory – Batch daily

6) Extract Service Appointments – Batch daily

2. *Application Served*
   *Vendor has been approved for the product called Naked Lime Web in the CDK Application Category of Dealer Website*

Naked Lime Web creates a unique dealership website using an award-winning SEO platform, which includes the following features and benefits:

- Flexible template designs.

- Easy-to-use dealer tools.

- Award-winning SEO platform.

- Online specials management

- Vehicle videos and pictures loaded on the site.

- Call tracking improves leads and records results.

- Online service appointment makes the service department available 24/7.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process　　　REYREY0000107

CX4152-017

FTC-0000347

A flexible back-end tool makes updates and changes simple and consumer interactive features help build brand image and loyalty before customers ever visit the dealer.

Integration utilized

1) Extract New and Used Vehicle Inventory – Batch Daily

3. *Application Served*
   **Vendor has been approved for the product called ReminderTRAX in the CDK Application Category of Customer Marketing/Followup.**

ReminderTRAX from Reynolds Document Solutions is a complete service reminder program that helps dealers increase and more effectively manage its service business. Benefits of ReminderTRAX Include the following:

- Easily communicate with customers and ensure service messages are timely and professional with expertly designed letters and reminder postcards.

- Effectively follow-up on service recommendations and gain a powerful new revenue source for the dealership with Recommended Service Letters, which have an average 87:1 return on investment.*

- Automatically predict the date each customer will be due for service, based on their service history and mileage, with the ReminderTRAX Smart Scheduler.

- Better manage your business with online ROI reporting that provides an accurate picture of customer retention and clearly communicates monthly ROI.

Integration utilized

1) Extract Closed Repair Orders – Batch daily

2) Extract Historical Service Data – Batch upon dealer setup

3) Extract Closed F&I Sales Deals – Batch daily

4) Extract Historical Sales Data – Batch upon dealer setup

5) Extract Vehicle Inventory – Batch daily

6) Extract Service Appointments – Batch daily

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

FTC-0000348

4.  *Application Served*
    **Vendor has been approved for the product called iMakeNews Loyalty Driver in the CDK**
    **Application Category of Customer Marketing/Followup.**

Loyalty Driver® is a turnkey newsletter service that combines industry-specific expertise, original content, and exceptional service with behavioral targeting. Loyalty Driver provides articles coupled with customer-specific promotions striking the balance between "hard sell" and "soft sell".

The Loyalty Driver editorial staff consistently provides timely, informative content with a Client Services group managing the production, optimization and distribution of the newsletters. An experienced operations staff monitors and adjusts for deliverability. Loyalty Driver combines original and relevant content with behavioral data on your audience, giving you the unique ability to understand when they are in-market for your product and services allowing a dealer to quickly and easily create and send additional promotions to those prospects.

Integration utilized

1)  Extract Closed Repair Orders – Batch daily

2)  Extract Historical Service Data – Batch upon dealer setup

3)  Extract Closed F&I Sales Deals – Batch daily

4)  Extract Historical Sales Data – Batch upon dealer setup

5)  Extract Vehicle Inventory – Batch daily

5.  *Application Served*
    **Vendor has been approved for the product called iMakeNews Loyalty Premier in the CDK**
    **Application Category of Customer Marketing/Followup.**

Loyalty Driver Premier® provides a comprehensive, targeted campaign manager that combines behavioral data from the Loyalty Driver Newsletter with DMS data to deliver the right message to the right consumer at the right time

Use DMS data to create targeted campaigns throughout the car owner lifecycle to drive incremental sales and service revenue. Example campaigns include post-sale accessory sales, lease-renewal campaign and extended warranty sales.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000109

CX4152-019

**FTC-0000349**

Use DMS plus Loyalty Driver® behavioral data to target individual customers based on their car/dealer history and future car interests. For example, find customers via DMS who currently own a minivan, and have read articles about crossover vehicles. Use data to create targeted emails within days of reading the articles, and sell more.

Identify prospects showing purchase intent (newsletter data) that are not current customers (do not appear in DMS data), and target them specifically with incentives to convert them into customers.

Use behavioral data (who opened but did not transact) from one campaign to re-target these customers two or more times with variants of the same basic offer. Gradually increase communication to keep active prospects engaged.

Integration utilized

   1) Extract Closed Repair Orders – Batch daily

   2) Extract Historical Service Data – Batch upon dealer setup

   3) Extract Closed F&I Sales Deals – Batch daily

   4) Extract Historical Sales Data – Batch upon dealer setup

   5) Extract Vehicle Inventory – Batch daily

6. *Application Served*
   *Vendor has been approved for the product called XTreamService in the CDK Application Category of Customer Marketing/Followup.*

XtreamService offers dealerships authorized dealership personnel password-protected access to mine its database, allowing dealership staff to determine how many customers they have across multiple criteria including equity, transaction type, payment,

XtreamService integrates easily into the daily activities of a dealership eliminating "down time" for dealership staff. XtreamService creates activity by identifying opportunities from the service drive and current factory incentives. The leads generated from this module show the date, time, and advisor for the customer so you can identify and prospect the shown opportunity. The key to success from the service drive is someone getting in front of the customer. It is suggested that the

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000110

CX4152-020

FTC-0000350

best person for this job is either a Sales Manager or the previous Sales Associate if Management feels he or she is capable of handling the lead.

XtreamSales targets existing customer database and generates a list of qualified leads for sales opportunities using Xtream. This module is a simple but commanding database-mining tool that gives you the power to identify the best and most profitable customers from your database. XtreamSales allows the dealership the ability to target a specific vehicle or an individual customer using a myriad of parameters that are easily integrated with your database. The customer database is the most valuable resource a dealership possesses. Mining your database the 'Xtream" way maximizes customer value through conversion, retention and repeat sales, all of which is done under your roof only.

Integration utilized

    1) Extract Closed Repair Orders – Batch daily

    2) Extract Historical Service Data – Batch upon dealer setup

    3) Extract Closed F&I Sales Deals – Batch daily

    4) Extract Historical Sales Data – Batch upon dealer setup

    5) Extract Vehicle Inventory – Batch daily

    6) Extract Service Appointments – Batch daily

7. *Application Served*
   *Vendor has been approved for the product called Who's Calling AIMData Advantage in the CDK Application Category of Customer Marketing/Followup.*

Who's Calling AIMData Advantage provides multi-channel marketing solutions to consumers on behalf of automotive retailers. It allows automotive retailers to maximize profit and marketing results by identifying a target audience, managing the delivery of customer messages, providing detailed reports that measure the success of communications, and serving as the dedicated source for all advertising needs.

Integration utilized

    1) Extract Closed Repair Orders – Batch daily

    2) Extract Historical Service Data – Batch upon dealer setup

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000111

CX4152-021

FTC-0000351

3) Extract Closed F&I Sales Deals – Batch daily

4) Extract Historical Sales Data – Batch upon dealer setup

5) Extract Vehicle Inventory – Batch daily

6) Extract Service Appointments – Batch daily

**8. *Application Served***
***Vendor has been approved for the product called Key Register in the CDK** Application Category of Key Tracking.*

Key Register software manages the location of each vehicle in the system as well as parking lot locations. When a user selects a vehicle, they are informed of its exact location. Because the Key Register system keeps track of the layout of each space on the lot, the system will also provide users the key tags to any vehicle that may be blocking the selected vehicle.

Key Register is a versatile key security system. The system offers networking options and is capable of securing up to 240 keys per drawer.

Along with accurate key tracking and asset management, Key Register offers several features that other systems do not. With the optional Security Cam recording any key movements, the Key Register system will be the most secure system available.

The Key Register software will pin-point the location of a vehicle, despite being moved by several different sales reps.

DataLogix provides Key Register customers with the ability to import information for a specific vehicle into the Key Register system.

Key Register's fingerprint recognition increases the speed of system use. Innovative biometric authentication technology provides ultra secured inventory management.

Key Register offers the option of purchasing the Driver's License Scanner. Prospect information is quickly obtained by simply scanning the prospect's license.

Key Register software manages the location of each vehicle in the system as well as parking lot locations, and will provide users the key tags to any vehicle that may be blocking the selected vehicle.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000112

CX4152-022

FTC-0000352

Integration utilized - Current

1) Extract Vehicle Inventory – On demand

2) Extract Employee Data – On demand

9. *Application Served*
*Vendor has been approved for the product called Key Vault in the CDK Application*
*Category of Key Tracking.*

KeyVault provides the automotive industry with the highest quality and most advanced key control systems on the market. Designed to give dealerships the ability to maintain accountability of keys at all times, KeyVault combines extensive reporting features with the latest software to create verifiable audit trails and a level of key control that is unmatched.

KeyVault's touch screen technology allows employees to quickly and efficiently make transactions in the KeyVault system. With a touch screen, a login and password can be entered much faster and more effectively than with a keyboard. Employees can then quickly get the key to their prospect.

The KeyVault solution is a versatile key security system. By utilizing touch screen monitors and biometric fingerprint readers, KeyVault gives users unparalleled security and quick system access.

KeyVault's networking options, real-time reports and web-management capabilities make it ideal for dealerships looking to improve accountability and reduce vehicle theft and unnecessary rekeying costs. KeyVault provides numerous features with the scalability to connect multiple machines. Whether the system is being used for a sales representative trying to pull a key for a hot demo or a service representative moving cars, KeyVault is easy to use.

Integration utilized

1) Extract Vehicle Inventory – On demand

2) Extract Employee Data – On demand

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000113

CX4152-023

FTC-0000353

**10. Application Served**
   **Vendor has been approved for the product called KeyTrak - Service in the CDK**
   **Application Category of Key Tracking.**

KeyTrak offers a total business solution to effectively and efficiently control assets. With
industry specific software and multiple drawer sizes and configurations, KeyTrak has the
flexibility to match the needs of any operation, large or small. Understanding and controlling
your keys, property and personnel, is essential to the success of any business.

With KeyTrak's computerized drawer and iButton tag technology, the need to scan a tag or make
a log entry after a key is removed from the system is eliminated. The moment a key or asset is
removed from the drawer, a verifiable audit trail is automatically created, protecting your
business and employees from liability and providing peace of mind.

A flexible back-end tool makes updates and changes simple and consumer interactive features
help build brand image and loyalty before customers ever visit the dealer.

Integration utilized

1) Extract Service Sales – On demand

2) Extract Employee Data – On demand

**11. Application Served**
   **Vendor has been approved for the product called KeyTrak - Inventory in the CDK**
   **Application Category of Key Tracking.**

KeyTrak offers a total business solution to effectively and efficiently control assets. With
industry specific software and multiple drawer sizes and configurations, KeyTrak has the
flexibility to match the needs of any operation, large or small. Understanding and controlling
your keys, property and personnel, is essential to the success of any business.

With KeyTrak's computerized drawer and iButton tag technology, the need to scan a tag or make
a log entry after a key is removed from the system is eliminated. The moment a key or asset is
removed from the drawer, a verifiable audit trail is automatically created, protecting your
business and employees from liability and providing peace of mind.

A flexible back-end tool makes updates and changes simple and consumer interactive features
help build brand image and loyalty before customers ever visit the dealer.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process                    REYREY0000114

CX4152-024

FTC-0000354

Integration utilized

1) Extract Vehicle Inventory – On demand

2) Extract Employee Data – On demand


### Section 3: Data Specifications

*Connectivity instructions and data elements are described in the following Pre-Defined Integration Point Product Guides (Note: if any customization is needed please document in this section):*

- *Third-Party Access (3PA) Developer's Guide – Document Version 1.12;*
- *Vehicle Extract Predefined Integration Package (PIP) – Product Version 2.6, Document Version 1.6;*
- *Employee Extract Predefined Integration Package (PIP) – Product Version 1.0, Document Version 1.0;*
- *Service Sales Extract Predefined Integration Package (PIP) – Product Version 2.6, Document Version 1.7.*

*Data elements for Batch interfaces as designated in this Exhibit 3PA-B are detailed in the "RR Prod Field Mapping Final.xlsx" document.*

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000115

CX4152-025

FTC-0000355

## Exhibit 3PA-C

### Rates

| | | |
|---|---|---|
| Naked Lime Web | $100 | $45 |
| Naked Lime Marketing | $350 | $155 |
| Reminder Trax | $300 | $155 |
| iMake Xpress | | |
| Loyalty Drive | $300 | $125 |
| Loyalty Premiere | $300 | $125 |
| iDream | $300 | $155 |
| AIM Data | $300 | $105 |
| KeyVault | $100 | $65 |
| KeyTrack | | |
| Auto | $100 | $65 |
| Service | $100 | $45 |
| KeyRegister | $100 | $65 |

*Prices are subject to the CPI price increases referenced in Section 3(a) of this 3PA Agreement beginning after the 1 year anniversary of the 3PA Effective Date.

**After the No Fee Term, each Application will be subject to annual minimums equaling the greater of: (a) one-half of the then current annual monthly fees, or (b) $2,500.

Page 26 of 26

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000116

CX4152-026

FTC-0000356

## REYNOLDS INTERFACE AGREEMENT

This Reynolds Interface Agreement ("RCI Agreement") is entered into as of the latest signature date of the parties below ("RCI Effective Date") by and between The Reynolds and Reynolds Company, Dealer Computer Services, Inc., Universal Computer Systems Holding, Inc. and their respective affiliates (collectively, "Reynolds") and CDK Global, LLC, and its affiliates (collectively, "CDK") (Reynolds and CDK collectively, "the Parties"). The Parties for good and valuable consideration agree as follows:

This RCI Agreement is entered concurrently with the Data Exchange Agreement between the Parties ("Data Exchange Agreement"). With respect to the matters covered by this RCI Agreement, the terms of this RCI Agreement are in addition to the terms of the Data Exchange Agreement. However, in the event of a conflict between this RCI Agreement and the Data Exchange Agreement with respect to the matters covered by this RCI Agreement, this RCI Agreement and its exhibits shall control. Capitalized terms not otherwise defined herein shall have the meaning assigned to them in the Data Exchange Agreement.

1. **DEFINITIONS**

    1.1. **Certification** – Upon completion of Reynolds testing and the Joint Pilot, an Interfaced Product will be declared ready for GCA by Reynolds, and Reynolds shall provide written notification to CDK that CDK's Interfaced Product has been certified under the Reynolds' Certified Interface Program.

    1.2. **Confidential Information** – A Party's trade secrets and other confidential research, development, and commercial information that is disclosed to the other Party pursuant to or relating to this Agreement. For the avoidance of doubt, Confidential Information includes but is not limited to this RCI Agreement, its Exhibits, and all of their terms and any information relating to the Reynolds Interface, the implementation of the Reynolds Interface, the CDK Application products, the Interfaced Product, and the Reynolds System(s). Confidential Information excludes information that: (1) was publicly available at the time it was disclosed to the Receiving Party, or which, through no act or omission of the Receiving Party, becomes publicly available before the Receiving Party discloses it to a third party; (2) the Receiving Party already rightfully possessed free of any obligation of confidentiality before the Party Disclosing Party disclosed it to the Receiving Party; (3) the Receiving Party rightfully receives without obligation of confidentiality from a third party who is entitled to disclose such information without breaching an obligation of confidentiality; (4) the Receiving Party develops independently without using any of the Disclosing Party's Confidential Information; or (5) is identified in writing by the Disclosing Party as not Confidential Information. Confidential Information excludes Reynolds System Output and Input.

    1.3. **Disclosing Party** – The Party who discloses Confidential Information to the other Party.

    1.4. **GCA** – General Customer Availability. The date which Reynolds declares the Interfaced Product certified and ready for implementation.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

1.5. **Interfaced Product(s)** – The CDK Application product(s) identified in Exhibit RCI A (including all subparts) and described in Exhibit RCI B (including all respective subparts), which are licensed by CDK to a Reynolds Dealer. For the avoidance of doubt, this RCI Agreement applies only to those CDK Applications identified in Exhibit RCI A (including all subparts) unless otherwise agreed in writing by both Parties. The Interfaced Products must comply with the Reynolds Interface specifications, or incorporate the Reynolds Interface so that CDK Application products will meet CDK's obligations under this Agreement and will function as described in the respective subparts of Exhibit RCI B, including, but not limited to, displaying and/or integrating the Reynolds System Output and/or Reynolds System Input accurately and not causing any errors or conflicts with the Reynolds System.

1.6. **Interface Test** – Testing the Interfaced Product to determine if it properly displays the Reynolds System Output and/or properly delivers the Reynolds System Input, complies with the Reynolds Interface and does not conflict with the operation of the Reynolds System.

1.7. **Joint Pilot** – One (1) or more Reynolds Dealers provided by CDK, to pilot test the Reynolds Interface and the Interfaced Product in collaboration with CDK. Pilot selection and number of pilots will be at the sole discretion of Reynolds.

1.8. **Non-Approved Access** – Any direct or indirect access of the Reynolds System for the benefit of the Interfaced Products by CDK or an agent acting on behalf of CDK other than with Reynolds' prior written consent. Non-Approved Access specifically does not include access for the benefit of the Interface Products necessary to convert a Reynolds Dealer to the use of a CDK DMS.

1.9. **Non-Approved Use** – CDK utilization of the Reynolds Interface(s) and/or Reynolds System Output with any product or service other than for the benefit of the Interfaced Product(s) in accordance with this RCI Agreement. Neither (i) the use of Reynolds Output Data received directly from a Reynolds Dealer without the use of a third party application or service nor (ii) any use of vehicle inventory data shall be considered a Non-Approved Use.

1.10. **Receiving Party** – The Party receiving Confidential Information of the Disclosing Party.

1.11. **Reynolds Dealer or Qualified End User** – A single automobile and/or truck dealership store and application area (or branch) combination (and its associated employees) using a Reynolds DMS.

1.12. **Reynolds Interface(s)** – Processes developed by Reynolds, which include, but are not limited to, software, hardware, specifications, Operational Data documentation (i.e., formats, elements, etc.), security codes, and access methods, designed to provide: (i) application providers with the ability to access, send and receive data to/from Reynolds Dealers through Reynolds Systems and (ii) Reynolds Dealers with the ability to access and receive data provided by application providers and to send and receive data to/from such application providers through the Reynolds Systems.

2

CX4153-002

**FTC-0000358**

1.13. **Reynolds System(s)** – Any Reynolds product, service, application, or Reynolds DMS sold and marketed by Reynolds in North America.

1.14. **Reynolds System Input** – The data transferred into the Reynolds System from CDK's Interfaced Product through the use of the Reynolds Interface for purposes other than logging or requesting data.

1.15. **Reynolds System Output** – The data transferred from the Reynolds System to CDK's Interfaced Product through the use of the Reynolds Interface for purposes other than logging or requesting data. Reynolds System Output does not include data (including, exact copies of the Data) that CDK may acquire in an alternative manner (e.g., data exports directly from the Reynolds Dealer).

## 2. <u>DUTIES</u>

2.1. REYNOLDS' SERVICES. Reynolds will use commercially reasonable efforts to provide to CDK the Reynolds Interface(s) described in Exhibit RCI A (including all subparts) as necessary to certify the Interfaced Product(s). Reynolds will provide to CDK development assistance up to the maximum assistance identified in Exhibit RCI E (including the respective subparts) in order to enable CDK to incorporate the Reynolds System Output and/or Reynolds System Input into the Interfaced Products. Reynolds will notify CDK if it appears that the maximum assistance may be exceeded. In the event that the maximum assistance is exceeded, Reynolds may charge CDK on a time and materials basis for additional assistance based on the rates in Exhibit RCI E (including the respective subparts).

Reynolds agrees that (A) if CDK acquires another application after the date hereof that is substantially similar in nature to one of the Interfaced Products then Reynolds agrees, at CDK's request, to add such new application as another Interfaced Product; provided, however, that (i) such new application shall otherwise be subject to all the terms hereof and (ii) the integration points provided for such new application shall be exactly the same as those provided to the similar existing application and (B) if Reynolds enters into an agreement to provide a competing dealer management system provider with integration services with respect to any application, and CDK requests the same integration services with respect to a substantially similar CDK application, then Reynolds agrees to add such application as another Interfaced Product; provided, however, that (i) such new application shall otherwise be subject to all the terms hereof and (ii) the integration points provided for such new application shall be exactly the same as those provided to the competing application.

2.2. OWNERSHIP. All Reynolds intellectual property provided to CDK hereunder shall be considered for all purposes of this RCI Agreement to be part of the Reynolds Interface. Any license granted herein is not a sale of the original Reynolds Interface(s) or any copies thereof. Reynolds retains the ownership of the Reynolds Interface(s) and all copies thereof, including all rights and interests in contributions and additions communicated by CDK to Reynolds related to the Reynolds Interface(s), or the Reynolds System(s) software. Reynolds claims patent, copyright, trade secret and/or confidential information protection in the Reynolds

3

REYREY0000027

CX4153-003

**FTC-0000359**

Interface and Reynolds Systems, including the way in which Reynolds System(s) software, database(s), and the Reynolds Interface(s) organize and store data. CDK releases any rights or interests it may have in the Reynolds Interface(s) or the organization, format and structure of the Reynolds System Output and/or Reynolds System Input that might result from CDK's contribution and additions. The CDK Application(s) including any software are, and will at all times remain, the sole and exclusive property of CDK.

2.3. **CDK'S DEVELOPMENT.** CDK agrees, represents and warrants:

    2.3.1. The CDK Applications operate with all of the functionality described in the respective subparts of Exhibit RCI B and in accordance with any applicable operating manuals or other documentation included by reference.

    2.3.2. CDK will provide competent technical resources to properly develop the Interfaced Product.

    2.3.3. The CDK Applications will properly integrate with the Reynolds Interface(s), and CDK will be generally available to begin the Interface Test(s) for each Integrated Product within a mutually agreed upon period of time after the date that the Reynolds Interface(s) described in the respective subparts of Exhibit RCI A are made available to CDK.

    2.3.4. If ninety (90) days pass after the date the respective Reynolds Interface(s) have been made available to CDK for a CDK Application, and the Parties are still unable to mutually agree on a schedule to begin and complete the Interface Test(s), the Joint Pilot(s), and to achieve Certification for such CDK Application, and such delay is not a result of any action or inaction by Reynolds (including, without limitation, any unreasonable rejection by Reynolds of any proposed Schedule), then Reynolds may terminate this Agreement with respect to such CDK Application only and have no further obligation to protect or otherwise facilitate Reynolds DMS access for such CDK Application, notwithstanding anything to the contrary in the Data Exchange Agreement.

If CDK fails to meet any of the provisions set forth in Sections 2.3.1-2.3.3, Reynolds may terminate this RCI Agreement as set forth in Section 5.2.2. Such termination right shall be Reynolds sole remedy, and CDK's sole liability, with any such failure to meet the provision of Sections 2.3.1-2.3.4.

2.4. **PAYMENT BY CDK.** CDK will pay all fees set forth in the respective subparts of Exhibit RCI E of this RCI Agreement.

    2.4.1. The submission of any invoices by Reynolds to CDK and any payment by CDK to Reynolds shall be governed by the terms set forth in Exhibit RCI E (including all subparts) to this RCI Agreement. CDK shall pay all amounts due to Reynolds within thirty (30) days of receipt of invoice.

    2.4.2. Except as otherwise set forth on Exhibit RCI E, all pricing detailed in Exhibit RCI E to this RCI Agreement shall be increased only based upon the Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average using the unadjusted 12 month

4

index for the month of the price change announcement, until the five (5) year anniversary of the date hereof. Thereafter, pricing may be increased once per year, in Reynolds discretion, upon at least sixty (60) days written notice to CDK.

2.4.3. CDK shall pay Reynolds for all amounts due Reynolds pursuant to Exhibit RCI E to this RCI Agreement in accordance with the time provisions set forth in the RCI Agreement and Exhibit RCI E. In the event that CDK does not timely pay an amount due under Exhibit RCI E to this RCI Agreement, CDK will be referred to Reynolds' Customer Account Services department in accordance with Reynolds' normal collection process. Further, Reynolds may charge CDK a late charge, calculated at the rate of 1½% per month or the maximum rate currently permitted by law, whichever is less. Amounts that remain unpaid may result in discontinuation of services by Reynolds, will require additional fees for services to be reinstated, and will be deemed a material breach as described in Section 5.2 of this RCI Agreement.

2.4.4. CDK agrees to pay all taxes (whether billed at the time of invoicing or determined to be due by a taxing authority at a later time) other than those taxes based on Reynolds' income, or provide appropriate exemptions. Taxes shall include, but are not limited to, personal property tax, sales tax, use tax or excise tax, which may be imposed by any taxing authority as a result of Reynolds' provision of services to CDK under this RCI Agreement.

2.5. CDK'S OBLIGATIONS.

2.5.1. NONDISCLOSURE. Except as expressly permitted herein, CDK will not disclose or publish the Reynolds System Output provided by the Reynolds Interface in any way except as set forth in Exhibit RCI A (including all subparts) for each CDK Application respectively.

2.5.2. USE OF REYNOLDS SYSTEM OUTPUT. CDK will not permit the Reynolds System Output provided by the Reynolds Interface(s) to be used for any purpose other than the limited purpose described in the respective subparts of Exhibit RCI A for each respective CDK Application unless passing the System Output to another entity is for the purpose of performing a service required by the CDK Application(s) and is on behalf of the Reynolds Dealer. The Reynolds Dealer, on whose behalf CDK has paid the applicable fees set forth in the respective subparts of Exhibit RCI E, may use the contracted for Interfaced Product and the Reynolds System Output for that CDK Application. CDK will not permit any other uses of the Reynolds System Output or allow any access to the Reynolds System Output by CDK or other parties unless: (a) the transfer of the Reynolds System Output has been authorized in writing by Reynolds in Reynolds' sole discretion; (b) the transfer of the Reynolds System Output has been authorized in writing by the Reynolds Dealer that originally collected the data; and (c) the transfer of the Reynolds System Output otherwise complies in all respects with this RCI Agreement and any applicable laws and regulations.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

2.5.3. COMPLIANCE WITH CERTIFICATION. Unless otherwise identified in Exhibit RCI A or in the Data Exchange Agreement, upon Certification, CDK acknowledges that any Non-Approved Access and/or Non-Approved Use is strictly prohibited and is considered a material breach of this RCI Agreement. CDK agrees that any violation(s) of these access and use restrictions will be subject to any or all of the following in Reynolds' sole discretion:

2.5.3.1. Reynolds has the right to immediately remove, discontinue, disable and/or uninstall all current and future Reynolds Interface(s) and/or instances or methods of Non-Approved Access and/or Non-Approved Use.

2.5.3.2. Reynolds has the right to assess the Monthly Interface Fee(s) (as defined in Exhibit RCI E1-E7) for the number of Reynolds Dealers that utilized Non-Approved Access and/or Non-Approved Use during the period of the violation.

2.5.4. USE OF DATA. CDK warrants that Exhibit RCI A (including all subparts) fully and accurately describes all data sets and uses of the data, including: the purposes of the data sets; the identities or categories of any other parties to whom CDK may transfer the data; and CDK's or any other party's uses of the data. Other than as specified in Exhibits RCI A (including all subparts) and the Data Exchange Agreement, CDK is prohibited from providing access to or transferring the data obtained through the Reynolds Interfaces to another party and/or re-selling the data it obtains through the Reynolds Interfaces. CDK understands and agrees that Reynolds does not endorse or warrant or accept any legal consequences for CDK's services described in Exhibits RCI A (including all subparts), and CDK shall not make representations to the contrary.

2.5.5. DATA PRIVACY. In addition to the data privacy provisions of the Data Exchange Agreement, CDK (i) will comply with all laws, rules and regulations with respect to the privacy, security and integrity of data collected from or written to the Reynolds DMS with the use of the Reynolds Interfaces and (ii) will obtain signed authorization from each Reynolds Dealer with which it contracts for an CDK Application that allows for CDK to use the data it obtains through the Reynolds Interface and meets the requirements (in all material respects) set forth in Exhibit RCI C.

2.5.6. NOTIFICATION OF SECURITY BREACH. Subject to requirements of law, or actions of any regulatory or law enforcement authority that prohibits, restricts, or delays them from doing so, CDK or any third party acting on behalf of CDK having access to data collected from a Reynolds Dealer provided under the terms of this RCI Agreement, shall provide prompt written notice to Reynolds of any security breach of Customer NPI data collected from a Reynolds Dealer obtained through such access, which at the time of the breach was in the possession or custody of CDK or such third party. The disclosure notification shall be made within two (2) business days of CDK's discovery of such breach and shall describe, at a minimum, the scope of the data breach and measures taken to restore the integrity, security, and confidentiality of such data. Such measures and corrective actions shall be implemented as soon as

6

CX4153-006

**FTC-0000362**

practicable by CDK. Notification shall be by email to the security email address: datasecurity@reyrey.com.

2.5.7. CANCELLATION OF INTERFACED PRODUCT. CDK will notify Reynolds within one (1) business day of a Reynolds Dealer cancelling any Interfaced Product(s) currently provided by CDK by submitting a termination request to Reynolds for the corresponding Reynolds Interface(s). Should a Reynolds Dealer contact Reynolds and request the Reynolds Interface(s) being provided to CDK's Interfaced Product be stopped immediately, Reynolds reserves the right to comply with this request and will notify CDK within one (1) business day of the Reynolds Dealer request and Reynolds' compliance. Should CDK contact the Reynolds Dealer and reach agreement to reinstate the Interfaced Product within three (3) business days of receiving such notice from Reynolds, Reynolds will re-install / turn on the corresponding Reynolds Interface(s) for no additional Installation Fee(s). Reynolds will use commercially reasonable efforts to terminate billing for the month subsequent to the submission of a termination request. Reynolds does not prorate the Monthly Fee(s).

2.6. NO REVERSE ENGINEERING. CDK will not reverse engineer or decompile the Reynolds Interface or any other Reynolds software or other element of the Reynolds System(s). Reynolds will not reverse engineer or decompile the CDK Applications, provided that Reynolds may take whatever action is necessary to discontinue or remove any Reynolds Interface, Non-Approved Access and/or Non-Approved Use in accordance with the terms of this RCI Agreement. CDK will not otherwise attempt to determine how the Reynolds Interface works or how the data is structured or organized within the database created and stored by any Reynolds System(s) or software.

2.7. CONFIDENTIALITY. Each Party shall only use the other Party's Confidential Information in connection with the performance of its duties hereunder. Neither Party will disclose any Confidential Information of the other Party to anyone, for any purpose, except: (a) employees and consultants that have executed agreements obligating them to comply with the provisions of this Confidentiality provision; (b) pursuant to a valid subpoena or an Order by a Court of competent jurisdiction or as otherwise required by law, provided that unless otherwise prohibited by law, the Party intending to disclose such information under this exception provides written notice to the other Party and provides the other Party an opportunity to seek a protective order or other appropriate protection at its election; (c) pursuant to written consent of the Disclosing Party; or (d) as required by law in instances in which a Party brings proceedings as permitted by this RCI Agreement to enforce rights under this RCI Agreement. The parties acknowledge and agree that the disclosure of any Confidential Information to the other Party does not confer upon a Party any license, interest or rights of any kind in or to the Confidential Information, except as provided in this Agreement. Except as permitted by this RCI Agreement, neither Party will disclose, disseminate, use or otherwise make available the Confidential Information of the other. Each Party will use reasonable efforts, but in no event less than the security precautions such Party undertakes to protect its own proprietary and confidential information of like nature, to prevent any Confidential Information of the other Party from being disclosed to third parties.

7

**FTC-0000363**

Although the specific terms of this RCI Agreement are considered Confidential Information, the existence and general nature of this Agreement may be publicized by CDK and/or Reynolds in order to promote the Reynolds Interface and the CDK Applications. It shall not be considered a breach of confidentiality for Reynolds to use or otherwise disclose standard terms from this Agreement without specifying their application to CDK.

The Parties agree that written confidentiality agreements substantially similar to the terms contained herein will be obtained for any employees or contractors permitted access to Confidential Information. Prior to the time an employee or contractor of Receiving Party receives any Confidential Information of the Disclosing Party, the Receiving Party will instruct that employee or contractor about the obligations of the Receiving Party hereunder and instruct that employee or contractor not to disclose or use any Confidential Information, except as specifically provided herein.

At the Disclosing Party's request or upon completion of the Receiving Party's use of Confidential Information, the Receiving Party will make reasonable efforts to return all copies of Confidential Information to the Disclosing Party or destroy the Confidential Information and certify such destruction to the Disclosing Party. The Receiving Party may retain a copy of Confidential Information, for archival purposes or to the extent required by law, subject to the Receiving Party's continuing obligations under this Section 2.7.

The provisions of this Section 2.7 pertaining to Confidential Information shall survive termination or expiration of this Agreement.

2.8.  USE OF TRADEMARKS. Neither CDK nor Reynolds will use the name of the other Party or any of the other Party's trademarks, service marks, trade names or logos (collectively "Trademarks"), with the following exceptions: (i) a Party may use such Trademarks with the express prior written consent of the other Party; (ii) CDK may use such Reynolds' Trademarks as set forth in Section 4.5 hereof; and (iii) Reynolds may use the Trademarks of relevant CDK Applications to display and advertise (with a CDK-approved logo and hyperlink) such CDK Applications as authorized, certified vendors (or pre-certified vendors, as the case may be). Reynolds agrees to list the CDK Applications on its internet site as approved by Reynolds for integration into the Reynolds DMS and to provide CDK with a letter to such effect that CDK may share with Reynolds Dealers.

2.9.  REYNOLDS DEALER REQUEST FOR INFORMATION. Should a Reynolds Dealer contact Reynolds directly to request information relating to a CDK Interfaced Product, including the specific data fields included in the Reynolds System Input and / or Reynolds System Output used for the Interfaced Product, Reynolds may comply with the Reynolds Dealers' request and provide such information. This action by Reynolds will not be considered a breach of any of the confidentiality provisions of this RCI Agreement or the Data Exchange Agreement.

8

CX4153-008

FTC-0000364

**3. CERTIFICATION PROCESS**

3.1.   INTERFACE TESTING. For each CDK application, prior to Certification, CDK must provide access to the Interfaced Product(s) to Reynolds for the Interface Test(s). The parties will mutually agree upon the date for the Interface Test(s). No later than fifteen (15) days prior to the date of the Interface Test(s), CDK will submit all test scripts to Reynolds for review prior to executing the Interface Test. If Reynolds requests modifications to the test scripts, Reynolds will notify CDK of such modifications in writing within seven (7) days of receipt of the test scripts. If modifications are requested, CDK may make modifications and re-submit test scripts to Reynolds for approval in accordance with the process set forth herein. All Interface Tests are conducted in a test environment designated by Reynolds. Reynolds will notify CDK upon successful completion of the Interface Test(s).

3.2.   INTERFACE TESTING RESOURCES. For each CDK Application, Reynolds will supply CDK with access to an applicable test environment for the Interface Test and ongoing testing of the Interfaced Product and the Reynolds Interface for CDK's employees and consultants that have executed agreements obligating them to comply with the provisions of this RCI Agreement.

3.3.   JOINT PILOT. For each CDK Application, after the Interface Test is complete, if Reynolds and CDK mutually determine that the Interfaced Product satisfies the Interface Test, then Reynolds and CDK will mutually agree upon the scope and length of the Joint Pilot. CDK will suggest potential Reynolds Dealer(s) to participate in the Joint Pilot. Reynolds will not provide a list of Reynolds Dealers to CDK for preliminary pilot selection.

3.4.   CERTIFICATION. For each CDK Application, after the Joint Pilot is successfully completed and the Interfaced Product is ready for GCA then Reynolds will provide CDK with written notice of Certification. Declaration of Certification will be in Reynolds sole discretion.

3.5.   RE-CERTIFICATION.

3.5.1. Initial Certification of an Interfaced Product will be valid until one of the following events occurs, at which time CDK will be required to re-certify the Interfaced Product:

3.5.1.1.   CDK requests additional Reynolds Interface(s), thereby changing the integration with Reynolds System.

3.5.1.2.   A new release of the Interfaced Product by CDK that interacts with the Reynolds Interface in a different manner than when the Interfaced Product was originally certified.

3.5.1.3.   CDK elects to utilize an enhanced Reynolds Interface made available by Reynolds.

3.5.1.4.   Twenty-Four (24) months have expired since the most recent Certification or Re-Certification of the Interfaced Product.

9

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000033

CX4153-009

FTC-0000365

Re-Certification (except for Re-Certification solely as a result of Section 3.5.1.4 above) may require an amendment to this RCI Agreement, or a separate Reynolds Interface Agreement and additional fees.

3.5.2. Distribution of Reynolds Interfaces not defined in Exhibit RCI A, or the distribution of the Reynolds Interface with an Interfaced Product not defined in Exhibits RCI A, will require amendment of this RCI Agreement, or a separate Reynolds Interface Agreement. The occurrence of either of these events may require additional fees.

3.5.3. New releases of a CDK Application in which CDK makes changes that do not materially modify the Interfaced Product and do not impact the Reynolds Interface will not require Re-Certification, but will require CDK to notify Reynolds in advance of such changes. CDK will provide test scripts or other documentation to Reynolds to certify that the changes have been successfully tested by CDK.

3.6.    SUSPENSION/TERMINATION OF CERTIFICATION. After Certification, Reynolds may suspend and/or subsequently terminate Certification for a specific CDK Application if Reynolds determines that such CDK Application:

3.6.1. does not display or integrate the Reynolds System Output and/or the Reynolds System Input in all material respects;

3.6.2. does not comply in all material respects with any Reynolds Interface specifications provided to CDK by Reynolds and included by reference in the respective subpart of Exhibit RCI A;

3.6.3. an Interfaced Product(s) materially degrades or otherwise materially adversely affects the operation of the applicable Reynolds System;

3.6.4. [Intentionally omitted]

3.6.5. [Intentionally omitted]

3.6.6. utilizes the Reynolds Interface(s) in a way that places a Reynolds Dealer at operational or security risk, in which case the termination would only be effective with respect to such Reynolds Dealer (unless the risk is determined to be systemic); or

3.6.7. utilizes the Reynolds Interface(s) in a way that places Reynolds at operational or security risk.

Reynolds will provide CDK with written notice and explanation of such suspension, and CDK must make all corrections within thirty (30) days to become re-certified. CDK will be required to pay the standard Re-Certification Fee described in the respective subpart(s) of Exhibit RCI E. During any suspension of Certification CDK must not distribute, use or access the Reynolds Interface. If CDK fails to become re-certified in accordance with this

10

CX4153-010

FTC-0000366

Section 3.6 within ninety (90) days, Reynolds may terminate Certification and/or this RCI Agreement. In the event of termination, CDK will be responsible for payment of the Certification Process Fee(s) and any other fees that have been agreed between the parties up to the date of termination.

3.7.    REYNOLDS DEALER AGREEMENT FORM. The Interfaced Product(s) may only be licensed to Reynolds Dealers that (i) have executed an agreement containing terms that are substantially similar to those in the attached Exhibit RCI C; and (ii) are separately licensed by Reynolds to use the Reynolds System. Reynolds shall have the right, upon reasonable notice and with reasonable cause, to inspect and copy such end user license agreements that have been executed by Reynolds Dealers at any given time, provided that such inspection and copying will not take place more often than once per year.

## 4.  LICENSE RIGHTS AND OBLIGATIONS

4.1.    LICENSE GRANT. After CDK receives notice of Certification and pays all sums then due and payable to Reynolds, Reynolds grants to CDK a non-exclusive, revocable license in the Territory or Territories (as indicated in the "Reynolds System(s)" section of the respective subpart of Exhibit RCI A) to (i) use the Reynolds Interface(s) provided to CDK pursuant to this RCI Agreement solely with CDK's Interfaced Product in accordance with the terms of this RCI Agreement; (ii) publicly display the "Reynolds Certified Interface" logo on all marketing material and website(s) describing the Interfaced Product in accordance with the provisions set forth in Section 4.5 of this RCI Agreement; and (iii) demonstrate, sublicense, and distribute the Reynolds Interface(s), only as incorporated into the Interfaced Product, to Reynolds Dealers during the Initial Term (and any applicable Renewal Term) as permitted by this RCI Agreement.

4.2.    REYNOLDS SUPPORT. For the fees set forth in Exhibit RCI E, Reynolds will provide the services necessary to implement the Reynolds Interface, first line support to CDK regarding the use of the Reynolds Interface, and any other services set forth in this RCI Agreement during the Initial Term (and any applicable Renewal Term).

4.3.    REYNOLDS UPDATES. During the Initial Term (and any applicable Renewal Term), Reynolds will provide to CDK specifications for any Reynolds Interface enhancements and revisions applicable to the Interfaced Product(s). CDK will promptly comply with any enhancements or revisions provided by Reynolds and test the revised Interfaced Product with Reynolds within sixty (60) days of when the revised Reynolds Interface is made available to CDK. Reynolds will make available to CDK a test environment and/or data for testing of these revisions.

4.4.    REYNOLDS ASSISTANCE. During the Initial Term (and any applicable Renewal Term), Reynolds will provide CDK with reasonable technical assistance, up to the maximum assistance defined in the respective subpart of Exhibit RCI E, in the development of the Interfaced Product.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process                REYREY0000035

CX4153-011

**FTC-0000367**

4.5. REYNOLDS LOGO AND COMMUNICATION. Notwithstanding anything to the contrary in this Agreement or the Data Exchange Agreement, CDK may include the RCI Logo for print and electronic marketing of the certified Interfaced Products (i.e., to indicate on CDK's owned internet sites that such CDK Application(s) use a Reynolds approved interface). Such advertisement by CDK shall be subject to Reynolds' "Logo Usage Standards," which are reflected in Exhibit RCI F. Reynolds may amend or replace Exhibit RCI F to reflect any program-wide changes in Reynolds' Logo Usage Standards in the future, so long as Reynolds provides CDK with at least thirty (30) days advance notice of the revised standards. Reynolds shall have the right to review and approve all references to Reynolds or the Reynolds Certified Interface Program contained in marketing materials by CDK, or any third parties acting on behalf of CDK, before such information is published. Prior to Certification, CDK is prohibited from claiming integration with the Reynolds System(s). Except as specifically provided in this Section 4.5, CDK shall not represent in any way that its applications are produced, developed, endorsed or otherwise affiliated with Reynolds.

4.6. CDK ASSISTANCE. CDK will provide appropriate support, maintenance and error correction services for the Interfaced Product(s) as reasonably requested by Reynolds or as required in the end user agreement between CDK and the Reynolds Dealers.

4.7. DISTRIBUTOR(S) OF INTERFACED PRODUCT(S). During the Initial Term (and any applicable Renewal Term), CDK may distribute the Interfaced Product(s) through distributors. CDK warrants that any distributor of the Interfaced Product on behalf of CDK has entered into a written agreement with CDK which binds the distributor to the same obligations as CDK under this RCI Agreement.

4.8. ENDORSEMENT. Reynolds does not endorse, warrant, support, or certify any functionality, capabilities or any other aspects of the Interfaced Product(s).

## 5. TERM/TERMINATION

5.1. TERM. The initial term of this RCI Agreement and any license granted herein shall be for the period commencing on the RCI Effective Date and ending on the fifth anniversary of the RCI Effective Date ("Initial Term"). This RCI Agreement will thereafter renew automatically for additional one (1) year terms (each, a "Renewal Term") unless either Party gives a notice of its intent not to renew at least thirty (30) days prior to the end of the Initial Term or the then applicable Renewal Term. Each provision of this RCI Agreement that would by its nature or terms survive any termination of this RCI Agreement shall survive any termination of this RCI Agreement, regardless of the cause.

5.2. TERMINATION WITH NOTICE. If either Party commits a material breach of Section 2, 3, or 4 of this RCI Agreement, then the non-breaching party may terminate this RCI Agreement by thirty (30) days written notice unless the breaching party cures such breach or begins a good faith effort to cure the breach within thirty (30) days after notice is delivered to the breaching party. Notwithstanding anything to the contrary herein, the following circumstances, without limitation, shall be considered material breaches for which the

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000036

CX4153-012

FTC-0000368

applicable Party may terminate this RCI Agreement as described below, subject to the notice and cure provisions set forth in this Section 5.2:

5.2.1. CDK may terminate this RCI Agreement if Reynolds, after using commercially reasonable efforts, is unable to make the Reynolds Interface(s) function in accordance with the documentation and agreed upon specifications in all material respects.

5.2.2. Reynolds may terminate this RCI Agreement if CDK fails to comply with the provisions set forth in Sections 2.3.1-2.3.3, in which case CDK is responsible for payment of the Certification Process Fee(s) and any other fees that have been agreed between the parties up to the date of termination.

5.2.3. Reynolds may terminate this RCI Agreement for failure of CDK to pay any fees defined in Exhibit RCI E or any other properly invoiced amounts.

5.2.4. CDK may terminate this RCI Agreement with respect to any CDK Application that it decides to cease offering (or "sunset") with respect to Reynolds Dealers.

5.3. IMMEDIATE TERMINATION. Reynolds may, immediately upon written notice to CDK, terminate this RCI Agreement if CDK: (i) becomes insolvent, (ii) files or has filed against it and not dismissed within sixty (60) days, a proceeding under any federal or state insolvency, bankruptcy or other law for the relief of creditors, or (iii) ceases or admits in writing its intention to cease the operation of its business in the ordinary course of this RCI Agreement.

5.4. TERMINATION FOR FAILURE TO RESOLVE CERTIFICATION SUSPENSION EVENT. Reynolds may, in its sole discretion, terminate this RCI Agreement pursuant to Section 3.6.

5.5. MUTUAL TERMINATION. After the Initial Term, either Party may terminate this RCI Agreement in its entirety or with respect to an Interfaced Product at any time with or without cause by giving the other Party one hundred-eighty (180) days written notice of intent to terminate.

5.6. PHASE-OUT. If an Interfaced Product has achieved Certification, upon expiration or termination of this RCI Agreement in its entirety or with respect to an Interfaced Product, Reynolds must continue providing such certified Interfaced Product(s) with access to the relevant Reynolds Interface(s) (under the terms of this RCI Agreement) without changes in service until the conclusion of CDKs' then effective contract term with any relevant Reynolds Application customers ("**CDK Phase Out Access**"), provided that (a) the CDK Phase Out Access shall not exceed two (2) years; (b) CDK continues to pay all applicable fees; and (c) as a condition of CDK Phase Out Access, CDK must give Reynolds thirty (30) days prior written notice of the following: (i) a list of the certified Interfaced Products for which such CDK Phase Out Access is needed, (ii) a list of Reynolds Dealers (including name, address, and information reasonably necessary to identify such Reynolds Dealer) for which such CDK Phase Out Access is needed, and (iii) the date of the conclusion of the then effective contract term with the relevant Reynolds Dealers. During any CDK Phase Out

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000037

CX4153-013

FTC-0000369

Access period, the Parties shall continue to perform under the terms of this RCI Agreement in effect at the time of termination, except no new installations of the applicable CDK Application will be allowed. At the conclusion of any CDK Phase Out Access period or immediately upon termination of this Agreement in its entirety or with respect to any Interfaced Product if the CDK Phase Out Access period is not invoked, CDK must cease all use, distribution, and sublicensing of the Reynolds Interface(s) for such Interfaced Product. If the CDK Phase Out Access period is invoked for any Interfaced Product, CDK is also responsible for payment to Reynolds of any positive difference between the Minimum Fees, prorated on a monthly basis to the end of the CDK Phase Out Access period, and the sum of Installation Fee(s) and Monthly Interface Fee(s) (or transaction fees, where applicable). Notwithstanding anything to the contrary herein, CDK Phase Out Access is not available if this RCI Agreement is terminated pursuant to the Assignment provision of Section 6.4 of this RCI Agreement.

## 6. GENERAL

6.1. NOTICES. With the exception of a notification of security breach as described in Section 2.5.6, all notices, requests and approvals required by this RCI Agreement shall be as noted in the Data Exchange Agreement.

6.2. AUDIT. Reynolds may, in its sole discretion, elect to conduct an audit of CDK records that relate to this RCI Agreement no more frequently than once per calendar year during the Initial Term (and any applicable Renewal Term) of this RCI Agreement. Audits shall be conducted by an independent, third Party auditor upon fifteen (15) days written notice to CDK. Audits shall be conducted during normal business hours in the offices of CDK. CDK shall have the right to approve the third Party auditor; however, such approval shall not be unreasonably withheld. CDK shall retain all records associated with this RCI Agreement (other than Customer NPI, where destruction or return of such Customer NPI would be required by this RCI Agreement or applicable law) for three (3) years following termination of this RCI Agreement and conclusion of wind-down period, if any. In the event that an audit reveals any issue that amounts to a material breach of the RCI Agreement, or an under payment by CDK to Reynolds of five percent (5%) or more within any twelve month period, CDK shall immediately pay (i) any amounts due for the audit period, (ii) a service charge equal to one and one-half percent (1.5%) per month on the outstanding balance compounded monthly since the date of each monthly under payment and (iii) the actual cost of the audit including auditor and reasonable expenses. Notwithstanding the foregoing, CDK shall not be liable for amounts specified in clauses (ii) and (iii) above if any under-payment by CDK was due exclusively to Reynolds failing to properly invoice CDK. The third Party auditor shall sign a confidentiality agreement prior to commencing the audit, agreeing to keep confidential any information obtained by such examination, provided however that the auditor can disclose the details to Reynolds of any non-compliance with this RCI Agreement.

6.3. NON-EXCLUSIVE. This RCI Agreement is non-exclusive and does not limit Reynolds' right to otherwise license, develop, market or distribute the Reynolds Interface(s).

14

CX4153-014

FTC-0000370

6.4. ASSIGNMENT. Neither party may assign any of its rights or delegate any of its duties under this Agreement without the prior written consent of the other party hereto; provided, however, that such consent shall not be required for (i) any assignment to an affiliate of such party as part of a corporate reorganization of such party or (ii) any assignment made as part of a sale of the majority of the assets or equity securities of such party as long as the acquirer (A) does not, prior to the acquisition, sell any application programs or services that compete with the non-assigning party and (B) is not, prior to the acquisition, affiliated with an entity that sells any application programs or services that competing with the non-assigning party. This Section shall be deemed, without limitation, to apply to any direct or indirect change in the control of either party including, without limitation, pursuant to any merger, acquisition, consolidation or other corporate restructuring in which it participates. Any attempted assignment in violation of this provision shall be void and shall be grounds for termination after 30 days notice. This Agreement shall be binding upon and inure to the benefit of the parties' respective successors and assigns.

6.5. INDEMNITY. Each Party ("Indemnitor") must defend, indemnify and hold harmless the other party, its affiliates and their employees, successors and assigns ("Indemnitees") against all damages, losses, costs, expenses (including reasonable attorneys' fees, costs and expenses) and other liabilities arising out of any claims, demands, suits, or causes of action by third parties, arising out of or in connection with this RCI Agreement to the extent that such damages, losses, costs, expenses and other liabilities result or are claimed to result in whole or in part from: (i) any breach of this RCI Agreement by Indemnitor, its affiliates or their employees or agents; (ii) the violation by Indemnitor, its affiliates or their employees or agents of applicable law or regulation in connection with the data access and data extraction described in this RCI Agreement; (iii) any access by Indemnitor, or its affiliates or their employees or agents to Indemnitee's proprietary hardware and/or software facilitated pursuant to this RCI Agreement for any purpose falling outside the scope of this RCI Agreement; (iv) Indemnitor's or its affiliates' or their employees' or agent's failure to obtain the rights and consents necessary for Indemnitee to gain access to (and extract) Operational Data pursuant to this RCI Agreement; and (v) any publication, breach of confidentiality, dissemination, conversion, misappropriation or other use of any Operational Data facilitated by this RCI Agreement by Indemnitor, or its affiliates or their employees or agents in a manner (a) not authorized by the Reynolds Dealer, or (b) in violation of relevant law.

6.6. WARRANTIES. In addition to any other warranties in this RCI Agreement, CDK warrants to Reynolds that: (i) the Interfaced Product and subsequent new releases of the Interfaced Product will operate in accordance with their specifications; (ii) CDK has the right and power to enter into this RCI Agreement and to grant to Reynolds Dealers all of the rights and licenses in the Interfaced Product as set forth in this RCI Agreement; (iii) CDK has obtained or shall obtain all necessary permission and licenses regarding data to offer the Interfaced Product; (iv) CDK shall provide all required notices to Reynolds Dealers and shall obtain all required consents from Reynolds Dealers, and (v) CDK has all right and authority required to collect, disclose and use such information as described in Exhibit RCI A. (collectively the "CDK Warranties").

Reynolds warrants to CDK that: (i) the Reynolds Interface will operate in a manner

15

REYREY0000039

**FTC-0000371**

consistent with the written specifications provided to CDK; and (ii) Reynolds has the right and power to enter into this RCI Agreement and to grant to CDK the rights and licenses in the Reynolds Interface as set forth in this RCI Agreement (collectively the "Reynolds Warranties").

NO OTHER WARRANTIES. EXCEPT AS SPECIFIED HEREIN, NEITHER CDK NOR REYNOLDS MAKES ANY OTHER WARRANTIES, CONDITIONS OR REPRESENTATIONS, EXPRESS OR IMPLIED, ORAL OR WRITTEN, REGARDING THE INTERFACE, THE INTERFACED PRODUCTS, THE REYNOLDS SYSTEM OR ANYTHING ELSE AND HEREBY EXPRESSLY DISCLAIMS ALL OTHER EXPRESS AND IMPLIED WARRANTIES AND CONDITIONS, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT AND FITNESS FOR A PARTICULAR PURPOSE. REYNOLDS DOES NOT WARRANT THE OPERATION OF THE INTERFACE WILL BE UNINTERRUPTED OR ERROR FREE.

6.7.  DAMAGES. EXCEPT FOR A CLAIM BASED SOLELY UPON BREACH OF THE CONFIDENTIALITY PROVISIONS OF SECTION 2.7, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY OR ITS AFFILIATES, SUCCESSORS OR ASSIGNS FOR ANY INCIDENTAL, CONSEQUENTIAL DAMAGES INCURRED BY SUCH PERSONS (INCLUDING, WITHOUT LIMITATION, ANY LOST REVENUE OR LOST PROFITS) OR FOR SIMILAR DAMAGES, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES (IT BEING AGREED THAT THIRD PARTY CLAIMS FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES AGAINST THE OTHER PARTY WOULD CONSTITUTE DIRECT DAMAGES INCURRED BY THE OTHER PARTY). EXCEPT FOR WILLFUL MISCONDUCT BY A PARTY, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY OR ITS AFFILIATES, SUCCESSORS OR ASSIGNS FOR ANY PUNITIVE OR EXEMPLARY DAMAGES.

6.8.  EXCUSE FOR NONPERFORMANCE. Neither party shall be held responsible for any delay or failure to perform hereunder where such delay or failure is due to any cause beyond its direct control including, but not limited to, Acts of God, fire, explosion, flood, strikes or other labor dispute, riot, communications or power supply failure, delay in delivery, failure or malfunction of equipment, lack of or inability to obtain data, or any other causes, contingencies or circumstances beyond its control which prevent or hinder performance hereunder or make such performance hereunder impracticable. Should a Party be delayed or unable to perform hereunder where such delay or inability to perform is due to any cause described in this Section 6.8, it will notify the other party and make reasonable efforts to perform hereunder.

6.9.  CDK ACKNOWLEDGEMENT. CDK acknowledges that Reynolds may now or in the future provide products and services that may be similar or the same as the Interfaced Product.

16

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

CX4153-016

FTC-0000372

6.10. DISPUTE RESOLUTION PROCEDURES.

6.10.1. **Confidential Binding Arbitration**. In the event of any dispute, claim, question or disagreement arising from or relating to this RCI Agreement or an alleged breach thereof ("Dispute"), the Parties agree that all Disputes shall be submitted to confidential binding arbitration in accordance with the then applicable commercial rules of the American Arbitration Association ("AAA"). Notwithstanding anything to the contrary in this RCI Agreement or the AAA Rules, the Parties agree that arbitration under this Section 6.10: (a) shall be governed by the Federal Arbitration Act exclusive of any state arbitration laws; (b) shall be before a single neutral arbitrator who is a licensed attorney with prior experience as an arbitrator; (c) shall be conducted in Nashville, TN ; and (d) shall be conducted pursuant to a confidentiality agreement that provides at a minimum that the arbitration and all documents and pleadings exchanged in connection therewith shall be held confidential and used only for purposes of the arbitration, except that a Party may nevertheless: (i) seek to reduce the binding arbitration award to a judgment in court; (ii) seek enforcement of the award pursuant to the Federal Arbitration Act and this RCI Agreement; and (iii) disclose information regarding the arbitration as required by law (e.g., to auditors or regulatory agencies).

6.10.2. **Arbitration Fees.** Aside from filing or other fees required to initiate the arbitration, all arbitration fees will be split evenly between the Parties unless and until an award is made by the arbitrator regarding arbitration fees. If a Party does not pay its respective share of arbitration fees, then all claims (including counterclaims) of the non-paying Party shall be dismissed by the arbitrator or AAA, and the non-paying Party shall not be permitted to bring any further claims in the arbitration for affirmative relief. The non-paying Party may still participate in the arbitration to defend claims brought against it.

6.10.3. **Temporary Injunctive Relief for IP Disputes.** Notwithstanding anything to the contrary contained in this Section 6.10 or elsewhere in this RCI Agreement, however, if a dispute arises that relates to misappropriation of proprietary, confidential or trade secret information or other intellectual property; or a breach of the Confidentiality or Data Security provisions of this Agreement and/or its Exhibits ("IP Dispute"), a Party, at its election may seek Temporary Injunctive Relief from a court of competent jurisdiction related exclusively to the IP Dispute.

6.10.4. **"Temporary Injunctive Relief"** means only a temporary restraining order and/or a temporary injunction. A claim for Temporary Injunctive Relief brought in court may not be combined with: (a) a request for any other type of relief whether legal or equitable; or (b) any Dispute other than an IP Dispute. All other Disputes, including whether a permanent injunction shall issue, are to be arbitrated concurrently with any court action relating to Temporary Injunctive Relief.

17

REYREY0000041

CX4153-017

FTC-0000373

6.11. RESPECT FOR EMPLOYEES. Reynolds and CDK acknowledge and agree that the other Party's personnel have been acquired and trained by said Party at considerable expense. Throughout the term of this RCI Agreement, neither Reynolds nor CDK shall knowingly directly solicit for employment or employ any employee of the other Party directly involved in the negotiation or performance of this RCI Agreement until the expiration of one (1) year following such employee's termination of employment with the other party or (1) year following the termination of this RCI Agreement, whichever is shorter.

6.12. GOVERNING LAW AND CONSTRUCTION. Unless specifically otherwise provided herein, this Agreement will be governed by the substantive laws of the State of Ohio, regardless of conflict of laws principles. The section headings are for convenience only and will not be used in interpretation of this Agreement. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either of the parties.

6.13. ENTIRE AGREEMENT. This RCI Agreement, together with the Data Exchange Agreement to the extent incorporated herein, and the Exhibits identified herein and incorporated by reference and listed below, constitutes the entire agreement between the parties. For the avoidance of doubt, this Agreement supersedes all prior oral and written representations and agreements between the Parties with respect to the matters addressed herein including, but not limited to, the Reynolds Interface Agreement dated December 4, 2004 between Reynolds and IntraVision Technologies, LLC ("Prior IntraVision Agreement") and the Reynolds Interface Agreement, dated October 9, 2013 between The Reynolds and Reynolds Company and ONE-EIGHTY CORP ("Prior 180 Agreement"). Any modification to this RCI Agreement must be by written amendment signed by authorized representatives of each Party.

6.13.1. Exhibit RCI A (including all subparts) – CDK Product(s) Submitted for Certification
6.13.2. Exhibit RCI B (including all subparts) – CDK Product Description(s)
6.13.3. Exhibit RCI C – Reynolds Dealer Required Provisions
6.13.4. [Intentionally Omitted]
6.13.5. Exhibit RCI E (including all subparts) – Fees
6.13.6. Exhibit RCI F – Logo Usage Standards

6.14. SEVERABILITY. If any of the provisions or portions of this Agreement are determined to be invalid or unenforceable, such provision shall be ineffective and severed from this Agreement to the extent of such invalidity, and the remainder of such provision and all other provisions hereof shall remain in full force and effect.

6.15. RELATIONSHIP OF THE PARTIES. This Agreement will not be deemed or construed to create any partnership, joint venture, fiduciary, employment or agency relationship between the parties. Nothing in this Agreement will be construed to constitute or appoint either Party as the agent or representative of the other Party for any purpose whatsoever, or to grant to either party any right or authority to assume or create any obligation or responsibility, express or implied, for or on behalf of or in the name of the other, or to bind the other in any way or manner whatsoever. Moreover, the Parties expressly acknowledge and agree that no

18

REYREY0000042

CX4153-018

FTC-0000374

fiduciary relationship existed between them at the time of the negotiation and execution of this Agreement.

An authorized representative of each Party has executed this RCI Agreement as of the date last written below.

**CDK Global, LLC**

By: _____

_____
Printed Name and Title

Date: _____

**The Reynolds and Reynolds Company**
Dealer Computer Services, Inc.,
Universal Computer Systems Holding, Inc.

By: _R. T. Brockman_____

_CHAIRMAN/CEO_____
Printed Name and Title

Date: _2/18/15_____

19

REYREY0000043

CX4153-019

FTC-0000375

**EXHIBIT RCI A1**

**CDK COBALT PRODUCT(S) SUBMITTED FOR CERTIFICATION**

**Name of Product(s):** Dealer | Dealer Group Websites, Retargeting Advertising, Email Marketing, Lead Generation Services, Reputation Management, Email Marketing

**Description of Product(s):**

- Dealer | Dealer Group Websites – Websites are the base product provided to dealers for the purposes of marketing vehicles and dealership services. This product set includes the ability for dealers to export / publish vehicle information to additional properties such as autotrader.com, usedcars.com, etc.
- Retargeting Advertising – *Optional, Add-On* Advertising product which may market individual vehicle data to consumers via display advertising.
- Email Marketing – *Optional, Add-On* Advertising product used for direct marketing sales and service messaging to consumers who have provided email addresses to the dealership.
- Lead Generation Services – ADP Dealer services lead generation network. Product consists of a marketing portal which presents inventory from multiple dealers with the purpose of generating leads, as well as syndication to a network of advertising partners.
- Reputation Management – *Optional, Add-On* Product used for soliciting customer reviews for use on dealer website.
- Email Marketing – *Optional, Add-On* Advertising product used for direct marketing sales and service messaging to consumers who have provided email addresses to the dealership.

**Current release version and release date for Product(s):   Various**

**Reynolds System(s):**                                                 **Territory:**

ERA _____      ☒ U.S.  ☒ Canada

POWER _____      ☒ U.S.

**Interface(s) to be provided by Reynolds:**

| Name | Frequency | Reynolds Input / Output: | |
|---|---|---|---|
| Batch Vehicle Inventory | Daily | ☐ Input | ☒ Output |
| Batch Closed Repair Order | Daily | ☐ Input | ☒ Output |

20

CONFIDENTIAL-Submitted in Lieu of Compulsory Process                  REYREY0000044

CX4153-020

**FTC-0000376**

| | | | |
|---|---|---|---|
| Batch Special Order Parts Receipts | Daily | ☐ Input | ☒ Output |
| Batch F&I Closed Deal History | Daily | ☐ Input | ☒ Output |

**State the purpose and operating environment of the Interface(s):**

Receive vehicle data for use in internet merchandising / marketing programs.

Receive customer data in order to provide capabilities in Reputation Management (surveys) and for marketing to current customers / prospects.

**Below is a description of CDK Cobalt's existing uncertified interfaces with Reynolds Systems. Continued use of these interfaces by CDK Cobalt will not constitute a violation of Section 2.5.3, pending delivery of a similar Interface(s) by Reynolds to CDK Cobalt for implementation as provided for in this Agreement. Upon receipt of Certification, CDK Cobalt will follow the terms of this Agreement and cease use of the uncertified interface(s) within sixty (60) days of Certification.**

CDK Cobalt uses IntegraLink direct dealership data polling.

**CDK Cobalt information to be used to brand, display, and advertise CDK Cobalt as a participant in the Reynolds Certified Interface Program:**
(To be provided prior to Certification)

☒ LOGO – image file to be provided separately

☒ Website URL – www.CDK Cobalt.com

☒ Trade Name – CDK Cobalt

☐ Trade Mark

☐ Service Mark –

If marked by an "X" above, Reynolds reserves the right to use any or all of this information at Reynolds sole discretion, provided in accordance with Section 2.8.

21

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

CX4153-021

FTC-0000377

**ERA Interface Specifications:**

- CDK Cobalt Vehicle Inventory Specification -          Version 1.1, Aug. 2014

- CDK Cobalt Repair Order Specification -               Version 1.4,  Aug 2014

- CDK Cobalt Special Order Parts Invoice Specification -   Version 1.2, Aug, 2014

- CDK Cobalt F&I Closed Deal Specification -            Version 1.3, Aug. 2014

**POWER Interface Specifications:**

The RCI Interface Specifications for the POWER platform will be mutually finalized and agreed to by Reynolds and CDK.   Notwithstanding the above sentence, Reynolds and CDK agree that POWER Interface Specifications that are not materially different from the corresponding ERA Interface Specifications will be acceptable to both parties.

**Pre-Load Files:**

Any historical pre-load files delivered at the initial installation will contain all active sales and/or service data on the Reynolds System (up to five years).  No archived data will be included.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000046

CX4153-022

FTC-0000378

## EXHIBIT RCI A2

## CDK MENUVANTAGE PRODUCT(S) SUBMITTED FOR CERTIFICATION

**Name of Application:  MENUVANTAGE**

**Description of Application:** <u>F&I Menu selling application</u>

**Current release version and release date for Application:** v8.3 released on 1/13/2015

| Reynolds System(s): | Territory: |
|---|---|
| ERA | ☒ U.S ☒ Canada |
| POWER | ☒ U.S. |

**Reynolds Interface(s):**

| Name | Frequency | Reynolds Input / Output: |
|---|---|---|
| Search F& Deal | On Demand | ☐ Input ☒ Output |
| Batch Closed F& Deal | Daily | ☐ Input ☒ Output |
| Insert F& Deal  - Start | On Demand | ☒ Input ☐ Output |

**State the purpose and operating environment of the Reynolds Interface(s):** <u>Allow clients to certified interface to their R&R DMS to start a Menu and finish</u>

**Below is a description of CDK's existing uncertified interfaces and/or Non-Approved Access with/of Reynolds System(s).  Continued use of the below-listed interfaces by CDK will not constitute a violation of Section 2.5.3, pending delivery of a Reynolds Interface(s) by Reynolds to CDK for implementation as provided for in this Agreement.  CDK will follow the terms of this Agreement and cease use of the uncertified interface(s) and/or Non-Approved Access within sixty (60) days of Certification.**

MenuVantage currently uses Superior Integrated Solutions (SIS) for integration with Reynolds DMS.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000047

CX4153-023

FTC-0000379

**CDK MenuVantage information to be used to brand, display, and advertise CDK as a participant in the Reynolds Certified Interface Program:**
(To be provided prior to Certification)

☒ LOGO – MENU VANTAGE
FINANCE · SALES · SERVICE
WEB BASED MENU SOLUTIONS

☒ Website URL - http://menuvantage.com/–

☒ Trade Name – MenuVantage

☐ Trade Mark –

If marked by an "X" above, Reynolds reserves the right to use any or all of this information at Reynolds sole discretion, provided in accordance with Section 2.8.

**ERA Interface Specifications:**

| | | |
|---|---|---|
| MenuVantage F&I Closed Deal Specification | Version 1.3 | August, 2014 |
| MenuVantage F&I Deal Start Transaction | Version 1.4 | August, 2014 |
| MenuVantage Search F&I Deal View Specification | Version 1.4 | August, 2014 |

**POWER Interface Specifications:**

The RCI Interface Specifications for the POWER platform will be mutually finalized and agreed to by Reynolds and CDK. Notwithstanding the above sentence, Reynolds and CDK agree that POWER Interface Specifications that are not materially different from the corresponding ERA Interface Specifications will be acceptable to both parties.

**Pre-Load Files:**

Any historical pre-load files delivered at the initial installation will contain all active sales and/or service data on the Reynolds System (up to five years). No archived data will be included.

24

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000048

CX4153-024

FTC-0000380

## EXHIBIT RCI A3

### CDK PARTSVOICE PRODUCT(S) SUBMITTED FOR CERTIFICATION

**Name of Application: PartsVoice**

**Description of Application:** Part Inventory Marketing

**Current release version and release date for Application:** 2.0, released June 2007

**Reynolds System(s):**             **Territory:**

ERA                 ☒ U.S ☒ Canada

POWER             ☒ U.S.

**Reynolds Interface(s):**

| Name | Frequency | Reynolds Input / Output: |
|---|---|---|
| Batch Parts Inventory | Daily | ☐ Input ☒ Output |

**State the purpose and operating environment of the Reynolds Interface(s):** Receipt only of dealership part inventory for use within PartsVoice

**Below is a description of CDK's existing uncertified interfaces and/or Non-Approved Access with/of Reynolds System(s). Continued use of the below-listed interfaces by CDK will not constitute a violation of Section 2.5.3, pending delivery of a Reynolds Interface(s) by Reynolds to CDK for implementation as provided for in this Agreement. CDK will follow the terms of this Agreement and cease use of the uncertified interface(s) and/or Non-Approved Access within sixty (60) days of Certification.**

[None]

25

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000049

CX4153-025

FTC-0000381

**CDK PartsVoice information to be used to brand, display, and advertise CDK as a participant in the Reynolds Certified Interface Program:**

(To be provided prior to Certification)

☒ LOGO – **PartsVoice**®

☒ Website URL – https://www.partsvoice.com/

☒ Trade Name – PartsVoice

☐ Trade Mark –

If marked by an "X" above, Reynolds reserves the right to use any or all of this information at Reynolds sole discretion, provided in accordance with Section 2.8.

**ERA Interface Specifications:**

PartsVoice Batch Parts Inventory Specification          Version 1.1          July, 2014

**POWER Interface Specifications:**

The RCI Interface Specifications for the POWER platform will be mutually finalized and agreed to by Reynolds and CDK. Notwithstanding the above sentence, Reynolds and CDK agree that POWER Interface Specifications that are not materially different from the corresponding ERA Interface Specifications will be acceptable to both parties.

**Pre-Load Files:**

Any historical pre-load files delivered at the initial installation will contain all active sales and/or service data on the Reynolds System (up to five years). No archived data will be included.

26

CX4153-026

FTC-0000382

## EXHIBIT RCI A4

## CDK F&I RESULTS PRODUCT(S) SUBMITTED FOR CERTIFICATION

**Name of Application: F&I Results (formerly known as IntraVision)**

**Description of Application:** <u>F&I Deal Recording</u>

Notwithstanding anything to the contrary in this Agreement, the parties acknowledge and agree that as of the RCI Effective Date, CDK's F&I Results Interfaced Product has been accepted into the Reynolds Certified Interface Program under the Prior IntraVision Agreement (described in Section 6.13 above), and that Reynolds acknowledges CDK F&I Results Certification status on the Reynolds website as of the RCI Effective Date.

**Current release version and release date for Application: 4.10**

| **Reynolds System(s):** | **Territory:** |
|---|---|
| ERA | ☒ U.S |
| POWER | ☒ U.S. |

**Reynolds Interface(s):**

| **Name** | **Frequency** | **Reynolds Input / Output:** | |
|---|---|---|---|
| (To be mutually finalized) | TBD | ☐ Input | ☒ Output |
| (To be mutually finalized) | TBD | ☒ Input | ☐ Output |

**State the purpose and operating environment of the Reynolds Interface(s):**
<u>Integration to Finance application turns the camera on and off when entering and exiting a deal for recording purposes</u>

Reynolds and CDK acknowledge and agree that the current CDK IntraVision Interfaced Product as re-Certified on September 29, 2011 will continue in use as the IntraVision Interfaced Product for the ERA platform.

27

 REYREY0000051

CX4153-027

**FTC-0000383**

Below is a description of CDK's existing uncertified interfaces and/or Non-Approved Access with/of Reynolds System(s). Continued use of the below-listed interfaces by CDK will not constitute a violation of Section 2.5.3, pending delivery of a Reynolds Interface(s) by Reynolds to CDK for implementation as provided for in this Agreement. CDK will follow the terms of this Agreement and cease use of the uncertified interface(s) and/or Non-Approved Access within sixty (60) days of Certification.

[None.]

The parties acknowledge and agree that as of the RCI Effective Date, CDK F&I Results has been accepted into the Reynolds Certified Interface Program under the Prior IntraVision Agreement (described in Section 6.13 above), and that Reynolds acknowledges CDK F&I Results' Certification status on the Reynolds website for both the ERA and POWER DMS platforms as of the RCI Effective Date. As a result, CDK agrees that no uncertified interfaces are in use or allowed by CDK for their F&I Results Interfaced Product.

**CDK F&I Results information to be used to brand, display, and advertise CDK as a participant in the Reynolds Certified Interface Program:**
(To be provided prior to Certification)

## F&I RESULTS ◆◆◆

☒ LOGO – **PROCESS · PERFORMANCE · PROFITS**

☒ Website URL – http://cdkglobal.com/solutions/f-and-i-results

☒ Trade Name – F&I Results

☐ Trade Mark –

If marked by an "X" above, Reynolds reserves the right to use any or all of this information at Reynolds sole discretion, provided in accordance with Section 2.8.

**ERA Interface Specifications:**

To be mutually finalized

28

CX4153-028

**FTC-0000384**

**POWER Interface Specifications:**

The RCI Interface Specifications for the POWER platform will be mutually finalized and agreed to by Reynolds and CDK.   Notwithstanding the above sentence, Reynolds and CDK agree that POWER Interface Specifications that are not materially different from the corresponding ERA Interface Specifications will be acceptable to both parties.

**Pre-Load Files:**

Any historical pre-load files delivered at the initial installation will contain all active sales and/or service data on the Reynolds System (up to five years).  No archived data will be included.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000053

CX4153-029

FTC-0000385

**EXHIBIT RCI A5**

**CDK LOT MANAGEMENT PRODUCT(S) SUBMITTED FOR CERTIFICATION**

**Name of Application:  Lot Management**

**Description of Application:**

| | |
|---|---|
| Appraisals | Mobile and desktop centric used vehicle appraisal/bookout application which analyzes historical data, market pricing, Market IQ data as well as regional transaction data and provides stocking recommendations.  Includes book and auction values. |
| Smart Price | Used car pricing solution which automatically adjusts the pricing of the used car inventory based on client-defined parameters against market conditions |
| Equity | Uses sales history and local auction data to calculate the equity position of sales and service customers.  Provides recommendations for potential alternative vehicles for the consumer based client defined parameters |
| Smart App | Private label smartphone application which allows the consumer to connect with the dealer in real-time to begin the appraisal process to seek a price for their vehicle |
| Back Office Dashboard | Dashboard which identifies client installed applications, provides utilization statistics by module along with sales and profit results |
| Smart Suite | SmartLot, Smart Drive, Smart Price - RB applications branded and sold to non-CDK dealers |

**Current release version and release date for Application:**
N/A

**Reynolds System(s):**                                   **Territory:**

ERA _____          ☒ U.S ☒ Canada

POWER _____          ☒ U.S.

**Reynolds Interface(s):**

30

CX4153-030

**FTC-0000386**

| Name | Frequency | Reynolds Input / Output: | |
|---|---|---|---|
| Batch Vehicle Inventory | Daily | ☐ Input | ☒ Output |
| Batch Closed F&I Deal | Daily | ☐ Input | ☒ Output |
| Batch Upcoming Service Appointment | Daily | ☐ Input | ☒ Output |

**State the purpose and operating environment of the Reynolds Interface(s):** Extract data integration for pricing, appraisals, and equity application tools used by dealers.

Below is a description of CDK's existing and future uncertified interfaces and/or Non-Approved Access with/of Reynolds System(s). Use of the below-listed integration by CDK will not constitute a violation of Section 2.5.3 pending delivery of Reynolds Interfaces. Conditioned on CDK providing Reynolds with (1) the Reynolds Dealers' DBA Name; (2) the Reynolds Dealers' DMS System Number and (3) the DMS User Login being used by Authenticom for the Reynolds Dealer, Reynolds will use commercially reasonable efforts to protect and facilitate current Reynolds System(s) for Lot Management during the 30 days following the Effective Date.

CDK will follow the terms of this Agreement and cease use of the DMI uncertified interface(s) and/or Non-Approved Access within 60 days of Certification.

Authenticom and DMI

31

CX4153-031

FTC-0000387

**CDK Lot Management information to be used to brand, display, and advertise CDK as a participant in the Reynolds Certified Interface Program:**
(To be provided prior to Certification)



☒ LOGO –

☒ Website URL – http://cdkglobal.com/solutions/lot-management

☒ Trade Name – CDK Lot Management

☐ Trade Mark –

If marked by an "X" above, Reynolds reserves the right to use any or all of this information at Reynolds sole discretion, provided in accordance with Section 2.8.

**ERA Interface Specifications:**

- CDK Lot Management Vehicle Inventory Specification -       Version 1.1, Sep. 2014

- CDK Lot Management Closed F&I Deal Specification -       Version 1.3,  Sep 2014

- CDK Lot Management Service Appointment  Specification -       Version 1.1,  Sep, 2014

**POWER Interface Specifications:**

The RCI Interface Specifications for the POWER platform will be mutually finalized and agreed to by Reynolds and CDK.   Notwithstanding the above sentence, Reynolds and CDK agree that POWER Interface Specifications that are not materially different from the corresponding ERA Interface Specifications will be acceptable to both parties.

**Pre-Load Files:**

Any historical pre-load files delivered at the initial installation will contain all active sales and/or service data on the Reynolds System (up to five years).  No archived data will be included.

32

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000056

CX4153-032

FTC-0000388

**EXHIBIT RCI A6**

**CDK ONE-EIGHTY PRODUCT(S) SUBMITTED FOR CERTIFICATION**

Name of Application: **DLS *Accelerator*®**

**Description of Application:**
DLS *Accelerator*® is a multi-language Dealer Operating System which compliments an existing DMS by providing processes, functionality and third party integrations involving but not limited to customers, prospects, vehicles, accessories, after-market products, deals, staff, CRM, traffic control, BDC, reporting.

**Current release version and release date for Application:  N/A**

**Reynolds System(s):**                                    **Territory:**

ERA                                                        ☐ U.S ☒ Canada

**Reynolds Interface(s):**

| Name | Frequency | Reynolds Input / Output: | |
|------|-----------|------|------|
| Publish Customer | Event Triggered | ☐ Input | ☒ Output |
| Insert/Update Customer | On-Demand | ☒ Input | ☐ Output |
| Insert/Update Vehicle Inventory | On-Demand | ☒ Input | ☐ Output |
| Insert F&I Deal - Start | On-Demand | ☒ Input | ☐ Output |
| Publish Service Appointment | Event Triggered | ☐ Input | ☒ Output |
| Publish Repair Order | Event Triggered | ☐ Input | ☒ Output |
| Batch Closed Repair Orders (Pre-Load) | Once at Installation | ☐ Input | ☒ Output |

33

CX4153-033

**FTC-0000389**

**State the purpose and operating environment of the Reynolds Interface(s):**

ONE-EIGHTY supports the Interface(s) and provides and supports other data integrations with third parties only at the written direction of the Qualified End User(s). The purpose of activating the Interface(s) and/or other integrations for the Qualified End User(s) is to provide operational efficiencies, cost savings, enhanced reporting capabilities and/or increased data accuracy for the Qualified End User(s) and their business partners. Such transmitted data may contain data from a Reynolds System as originated from DLS Accelerator®, as well as such transmitted data may contain customer data which may originate in either system.

**Below is a description of CDK's existing uncertified interfaces and/or Non-Approved Access with/of Reynolds System(s). Continued use of the below-listed interfaces by CDK will not constitute a violation of Section 2.5.3, pending delivery of a Reynolds Interface(s) by Reynolds to CDK for implementation as provided for in this Agreement. CDK will follow the terms of this Agreement and cease use of the uncertified interface(s) and/or Non-Approved Access within sixty (60) days of Certification.**

[None.]

The parties acknowledge and agree that as of the Effective Date of this Agreement, the CDK ONE-EIGHTY product has been accepted into the Reynolds Certified Interface Program under a Prior Agreement (described in Section 6.13 above), and that Reynolds acknowledges CDK ONE-EIGHTY's Certification status on the Reynolds website as of the Effective Date of this Agreement. As a result, CDK ONE-EIGHTY agrees that no uncertified interfaces are in use or allowed by CDK ONE-EIGHTY for their Interfaced Product.

34

CX4153-034

FTC-0000390

**CDK ONE-EIGHTY information to be used to brand, display, and advertise CDK ONE-EIGHTY as a participant in the Reynolds Certified Interface Program:**
(To be provided prior to Certification)

☒ LOGO – ONE-EIGHTY

☒ Website URL – – www.oneeightycorp.com

☒ Trade Name – ONE-EIGHTY

☐ Trade Mark – DLS *Accelerator*®

If marked by an "X" above, Reynolds reserves the right to use any or all of this information at Reynolds sole discretion, provided in accordance with Section 2.8.

**ERA Interface Specifications:**

- ONE-EIGHTY Insert Vehicle Inventory Interface Specification, Version 1.3, September 2013
- ONE-EIGHTY Update Vehicle Inventory Interface Specification, Version 1.3, September 2013
- ONE-EIGHTY Insert Customer Interface Specification, Version 1.3, September 2013
- ONE-EIGHTY Update Customer Interface Specification, Version 1.3, September 2013
- ONE-EIGHTY Publish Customer Interface Specification, Version 1.2, September 2013
- ONE-EIGHTY F&I Deal Start Interface Specification, Version 1.4, September 2013
- ONE-EIGHTY Publish Repair Order Interface Specification, Version 1.3, September 2013
- ONE-EIGHTY Publish Service Appointment Interface Specification, Version 1.1, September 2013

**Pre-Load Files:**

Any historical pre-load files delivered at the initial installation will contain all active sales and/or service data on the Reynolds System (up to five years). No archived data will be included.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000059

CX4153-035

FTC-0000391

**EXHIBIT RCI A7**

**CDK PERFORMANCE 20 PRODUCT(S) SUBMITTED FOR CERTIFICATION**

**Name of Application:  Performance 20**

**Description of Application:** Automotive dealership financial composite

**Current release version and release date for Application:**
Over 50 modules covering about 95% of all automobile manufacturer/distributors, Versions 41,
1/31/2014 release

**Reynolds System(s):**                                        **Territory:**

ERA _____        ☒ U.S ☒ Canada

POWER _____        ☒ U.S.

**Reynolds Interface(s):**

| **Name** | **Frequency** | **Reynolds Input / Output:** | |
|---|---|---|---|
| Batch Financial Statement _____ | Monthly _____ | ☐ Input | ☒ Output |

**State the purpose and operating environment of the Reynolds Interface(s):** Financial data derived
from Reynolds & Reynolds dealership DMS system will be married with supplemental data input by
dealership personnel to produce a 60 page financial composite stored on our server.  The financial data
on the composite is composed of Reynolds & Reynolds dealership's DMS and other DMS systems
used by clients.

**Below is a description of CDK's existing uncertified interfaces and/or Non-Approved Access
with/of Reynolds System(s).  Continued use of the below-listed interfaces by CDK will not
constitute a violation of Section 2.5.3, pending delivery of a Reynolds Interface(s) by Reynolds to
CDK for implementation as provided for in this Agreement.  CDK will follow the terms of this
Agreement and cease use of the uncertified interface(s) and/or Non-Approved Access within sixty
(60) days of Certification.  Conditioned on CDK providing Reynolds with (1)  the Reynolds**

36

CX4153-036

FTC-0000392

Dealers' DBA Name; (2) the Reynolds Dealers' DMS System Number and (3) the DMS User Login being used by Authenticom for the Reynolds Dealer, Reynolds will use commercially reasonable efforts to protect and facilitate current Authenticom Reynolds DMS access for Performance 20 until Certification. Reynolds will target to provide to CDK the Batch Financial Statement interface within thirty (30) days of receiving the Performance 20 requirements or the Effective Date whichever is later.

<u>Authenticom.</u>

CDK Performance 20 information to be used to brand, display, and advertise CDK as a participant in the Reynolds Certified Interface Program:
(To be provided prior to Certification)

 Performance Solutions

☒ LOGO –

☒ Website URL – www.cdkglobalperformance.com

☒ Trade Name – CDK Global/Performance Solutions

☐ Trade Mark –

If marked by an "X" above, Reynolds reserves the right to use any or all of this information at Reynolds sole discretion, provided in accordance with Section 2.8.

**ERA Interface Specifications:**

- CDK Performance 20 Financial Statement Specification -        TBD

**POWER Interface Specifications:**

The RCI Interface Specifications for the POWER platform will be mutually finalized and agreed to by Reynolds and CDK. Notwithstanding the above sentence, Reynolds and CDK agree that POWER Interface Specifications that are not materially different from the corresponding ERA Interface Specifications will be acceptable to both parties.

**Pre-Load Files:**

Any historical pre-load files delivered at the initial installation will contain all active sales and/or service data on the Reynolds System (up to five years). No archived data will be included.

37

CX4153-037

FTC-0000393

**EXHIBIT RCI B1**

**CDK COBALT PRODUCT DESCRIPTION(S)**

***Digital Marketing Products***
*(The following products utilize Vehicle Data)*

- Dealer | Dealer Group Websites – Websites are the base product provided to dealers for the purposes of marketing vehicles and dealership services. This product set includes the ability for dealers to export / publish vehicle information to additional properties such as autotrader.com, usedcars.com, etc.
- Retargeting Advertising – *Optional, Add-On* Advertising product which may market individual vehicle data to consumers via display advertising.
- Email Marketing – *Optional, Add-On* Advertising product used for direct marketing sales and service messaging to consumers who have provided email addresses to the dealership.
- Lead Generation Services – ADP Dealer services lead generation network. Product consists of a marketing portal which presents inventory from multiple dealers with the purpose of generating leads, as well as syndication to a network of advertising partners.

*(The following products utilize Transactional records – Vehicle Sales Data, Repair Order Data, Parts Order Data)*

- Reputation Management – *Optional, Add-On* Product used for soliciting customer reviews for use on dealer website.
- Email Marketing – *Optional, Add-On* Advertising product used for direct marketing sales and service messaging to consumers who have provided email addresses to the dealership.

| CDK Cobalt Product | Inventory Data | Repair Order Data | Special Order Parts Data | F&I Closed Deal |
|---|---|---|---|---|
| Dealer | Dealer Group Websites | X | | | |
| Retargeting Advertising | X | | | |
| Email Marketing | X | X | X | X |
| Lead Generation Services | X | | | |
| Reputation Management Services | | X | X | X |

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000062

CX4153-038

FTC-0000394

**EXHIBIT RCI B2**

**CDK MENUVANTAGE PRODUCT DESCRIPTION(S)**

CDK Menu gives you custom Sales tools, proven to help you effectively overcome objections and receive your fair share of gross profit.

Over the past few years, the use of menu selling in F&I has grown, with most dealerships taking advantage of CDK Menu to drive the sale of add-on products. But, not all dealership F&I menu-selling products are the same. CDK Menu is a proven solution that can help you increase your back-end grosses by up to 30%*.

CDK Menu auto-matches extended warranties to selected vehicles and shows a pre-set list of add-on products that you can consistently present to every customer during the F&I process. It helps you eliminate or reduce human error, forgetfulness and possible liability, while selling more warranties, insurance and dealer-installed options. Your F&I office can grow profits and reduce errors.

*As reported by MenuVantage®. Results may vary.*

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000063

CX4153-039

FTC-0000395

**EXHIBIT RCI B3**

**CDK PARTSVOICE PRODUCT DESCRIPTION(S)**

PartsVoice is the largest open OEM parts locator in the US and Canada-- we have over 8 million unique parts listed on our website every day by over 1,800 dealers. PartsVoice.com is used by retail consumers and parts professionals around the globe.

We update our parts inventory data daily, so you know you're looking at the most up-to-date listings, not parts that are sold out or on backorder.

Spend less time looking and more time finding on PartsVoice.

PartsVoice offers the Cash Discovery Program (CDP), an online marketplace matching buyers and sellers. So get out from under your idle problem and free up your working capital.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000064

CX4153-040

FTC-0000396

**EXHIBIT RCI B4**

**CDK F&I RESULTS PRODUCT DESCRIPTION(S)**

Know What Goes On When the F&I Office Door Closes

As a dealer, you know the final F&I steps are vital to your gross profits. A slight increase of $20-$25 per transaction could make a huge impact on your bottom line.
**Designed specifically for dealerships, F&I Results is an integrated training solution created to**



**help your F&I department:**

- Increase product sales
- Improve product penetration
- Enhance your CSI score
- Minimize your compliance risk
- Grow your gross profits

**Improve your training results**
By reviewing actual conversations and situations, you can help keep your dealership in line with its compliance requirements, as well as help keep you in compliance with local, state and federal laws.

F&I Results is unlike other video training solutions which need to be turned on and off by the F&I Manager, allowing them to choose which customers they want to record. The integration of F&I Results with your CDK or Reynolds and Reynolds Dealer Management System (DMS) ensures you will capture every transaction for training purposes.

**When deals go smoothly, everyone wins**
You want to present every available F&I product to every customer, keeping sales and profitability up. You also know it is important to keep every customer presentation consistent, so items do not fall through the cracks and to ensure customer satisfaction. With F&I Results, we are making it possible to

41

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

do all of that and more by providing you with a training solution that uses real-life examples, not textbook theory.

### Perfecting the art of selling

Only Video Training offers you insight into what really happened on the deal. No longer will your F&I team work their compensation plan, they will perfect their art of selling by learning how to consistently overcome objections and know when and how to present the right options at the right time. Selling is an art; simply looking your F&I stats will not give you the insight you need to improve your employees.

**Simply putting a camera in your F&I offices will not work—that is why we developed a full training solution, which includes:**

- Integration with your CDK DMS or R&R DMS
- A foolproof way to capture 100% of your F&I transactions
- Comprehensive training programs for your dealership
- A secure web-based portal to view your videos
- Insightful reports on your employees results and trends

**F&I Results** was formerly known as Intravision Technologies, LLC

42

CX4153-042

FTC-0000398

**EXHIBIT RCI B5**

**CDK LOT MANAGEMENT PRODUCT DESCRIPTION(S)**

| Modules | Features |
|---|---|
| Appraisals | Mobile and desktop centric used vehicle appraisal/bookout application which analyzes historical data, market pricing, Market IQ data as well as regional transaction data and provides stocking recommendations. Includes book and auction values. |
| Smart Price | Used car pricing solution which automatically adjusts the pricing of the used car inventory based on client-defined parameters against market conditions |
| Equity | Uses sales history and local auction data to calculate the equity position of sales and service customers. Provides recommendations for potential alternative vehicles for the consumer based client defined parameters |
| Smart App | Private label smartphone application which allows the consumer to connect with the dealer in real-time to begin the appraisal process to seek a price for their vehicle |
| Back Office Dashboard | Dashboard which identifies client installed applications, provides utilization statistics by module along with sales and profit results |
| Smart Suite | SmartLot, Smart Drive, Smart Price - RB applications branded and sold to non-ADP dealers |
| Consumer Lane | Gathers consumer vehicle's for sale from a variety of sources and alerts retailer of vehicles they should acquire based on a set of pre-determined rules |
| Smart Lot Lite | Non-DMS integrated application designed for independent dealers or small franchise dealers. Functionality includes Market IQ, Scanning tool with book values, vehicle history and market data |

43

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000067

CX4153-043

FTC-0000399

**EXHIBIT RCI B6**

**CDK ONE-EIGHTY PRODUCT DESCRIPTION(S)**



CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000068

CX4153-044

**FTC-0000400**

## EXHIBIT RCI B7

### CDK PERFORMANCE 20 PRODUCT DESCRIPTION(S)

Automotive dealership financial composites used to identify opportunities when compared to other same franchise, similar size and similar local economic area dealerships.  Composite is the basis for discussion on sales volume, gross profits, expense management, asset management and personnel productivity.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000069

CX4153-045

FTC-0000401

# EXHIBIT RCI C

## REYNOLDS DEALER REQUIRED PROVISIONS

The Reynolds Interface may be made available by CDK to Reynolds Dealer(s) only if CDK has obtained from the Reynolds Dealer an agreement that contains the following terms in all material respects:

C.1.  Provide a limited license authorizing the operation of the Reynolds Interface only with the Interfaced Product and only for one Reynolds Dealer.

C.2.  Prohibit copying, disassembly, decompilation, and/or reverse engineering of the Interfaced Product and the Reynolds Interface;

C.3.  Reserve to CDK all rights, title and interest in and to Interfaced Product and to Reynolds all rights, title and interest in and to the Reynolds Interface;

C.4.  Prohibit: (a) transfer of or access to the Interfaced Product and the Reynolds Interface to or by third parties; (b) lending, leasing, sublicensing or pledging of the Interfaced Product and the Reynolds Interface by Reynolds Dealer; and (c) service bureau or outsourcing uses of the Interfaced Product and Reynolds Interface;

C.5.  Include a statement substantially similar to the following:  "Product(s) provided under this Agreement contain portions of program code owned by third party licensors and such licensors will be entitled to enforce this License as an intended third party beneficiary and the obligations of the licensee cannot be modified or terminated without the written consent of such third Party licensors.  Licensee shall not disclose any passwords or other security information that are related to the Reynolds Interface or other software licensed by this License.  ALL LICENSORS DISCLAIM ALL WARRANTIES, INCLUDING (WITHOUT LIMITATION) ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  In no event will any licensor be liable for indirect, incidental, consequential or exemplary damages arising from use, or inability to use Reynolds Interface(s), even if they knew of the possibility of such damages.";

C.6.  Provide that all rights to use or maintain possession of the Interfaced Product and the Reynolds Interface will terminate immediately upon the Reynolds Dealer's breach of any material provision of such agreement.

C.7.  Prohibit the Reynolds Dealer from using the Interfaced Product and Reynolds Interface outside the definitions and process defined for the specified CDK Application the in the relevant subpart of Exhibit RCI A.

C.8.  Generally describe the Customer NPI that may be accessed by CDK pursuant to the agreement and the third parties to whom CDK may provide access to the Customer NPI.

46

REYREY0000070

CX4153-046

FTC-0000402

Requires that the Reynolds Dealer warrants that for purposes of the data that may be accessed by CDK and/or the Reynolds DMS pursuant to this RCI Agreement that the Reynolds Dealer has provided any required privacy notices to its customers as required by applicable law, including the Gramm-Leach-Bliley Act and its implementing regulations (the "GLBA"), and to the extent applicable, the privacy laws of any state, Canada's Personal Information Protection and Electronic Documents Act ("PIPEDA"), and any other relevant privacy laws Canada or of any province of Canada or other relevant jurisdiction.

C.9.     Requires CDK to implement and maintain appropriate safeguards to protect any Customer NPI that CDK obtains pursuant to the agreement for so long as CDK has access to any such Customer NPI.

C.10.   Prohibits CDK from accessing, storing, sharing, disclosing, or using any Customer NPI obtained pursuant to this agreement [between CDK and the Dealer] other than as necessary to carry out the purposes for which the Reynolds Dealer has provided access to the Customer NPI or as otherwise required by law.

C.11.   Grants the Reynolds Dealer's DMS provider and the CDK Application permission to access Customer NPI to the extent necessary to provide the services contracted for under the agreement (including the Interfaced Product and the Reynolds Interfaces) and specifically permits Reynolds and the CDK Application to provide access to Customer NPI to one another for that purpose.

C.12.   Include a statement substantially similar to the following:

As part of its Reynolds Certified Interface program, your Dealer Management System ("DMS") provider The Reynolds & Reynolds Company or its affiliates (collectively "Reynolds") has developed certain processes that allow certain third party software vendors including [CDK Application] to receive from Reynolds certain data from your DMS and/or allow [CDK Application] to send data to your DMS ("RCI Integration").  By signing this agreement, you are providing your written consent to: (a) Reynolds' providing [CDK Application] access to data from your DMS; and (b) to [CDK Application] providing Reynolds with access to [CDK Application] data, both of which may include, without limitation, non-public information regarding your customers.  By signing this agreement you agree that: (a) Reynolds makes no representations, assurances, warranties or guarantees with respect to [CDK Application] or [CDK Application]'s obtaining access to data from your DMS through RCI Integration or otherwise; (b) Reynolds shall have no liability whatsoever for any damages you may suffer as a result of using [CDK Application] or because of [CDK Application]'s access to data from your DMS; (c) Reynolds has no responsibility for the activities of [CDK Application] with respect to its access to  data from your DMS, including without limitation, with respect to Customer NPI obtained or used by [CDK Application]; (d) Reynolds may terminate the integration described in this agreement at any time if Reynolds determines that such integration may conflict with or adversely affect the operation or security of your DMS (including without limitation the integrity or security of the data) or such access may violate any applicable laws or regulations; (e) problems caused by the data access described in this agreement will not be covered by any software support and equipment maintenance services or fees previously agreed between you and Reynolds; and (g) Reynolds has the right to enforce its rights under this agreement.  NOTICE TO NORTH CAROLINA DEALERS: THIS END USER

CONFIDENTIAL-Submitted in Lieu of Compulsory Process     REYREY0000071

CX4153-047

FTC-0000403

AGREEMENT RELATES TO THE TRANSFER AND ACCESSING OF CONFIDENTIAL
INFORMATION AND CUSTOMER RELATED DATA.

C.13.   To the extent the Reynolds Dealer operates in Canada and CDK has access to Customer NPI for
the purposes of processing the data, the Reynolds Dealer Agreement shall:

   (a)   identify the individual at CDK who supervises compliance with privacy aspects of the
         Reynolds Dealer Agreement;

   (b)   specify that CDK will direct persons seeking access to their personal information to the
         Reynolds Dealer;

   (c)   Require the Reynolds Dealer to provide its customers in Canada with a notice specifying
         that the Customer NPI or other personal information as defined under Canadian law may
         be transferred to and stored in the United States and may be subject to disclosure
         pursuant to the laws of the United States;

   (d)   Require that the Reynolds Dealer comply fully with the applicable Canadian privacy
         laws;

   (e)   Specify that the Reynolds Dealer has obtained all consents from its clients required
         under the applicable Canadian privacy laws for the collection, use and disclosure of
         personal information by the Reynolds Dealer and by CDK; and

   (f)   Require that CDK comply fully with all applicable Canadian privacy laws.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000072

CX4153-048

FTC-0000404

## EXHIBIT RCI D – INTENTIONALLY OMITTED

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000073

CX4153-049

FTC-0000405

## EXHIBIT RCI E1

## CDK COBALT FEES

**Certification Process Fee:  $25,000 (USD) - WAIVED**
This fee will be due upon invoice from Reynolds.

**Package "A" Interface Package-**
Includes the following Interfaces-
- Batch Vehicle Inventory

**(Per Qualified End User) Installation Fee(s):**
    **Existing Qualified End Users as of the RCI Effective Date- $125(USD) or $125(CAD) - WAIVED**
    **New Qualified End Users as of the RCI Effective Date - $125 (USD) or $125 (CAD)**

This one-time setup fee is payable within the first month after submission of an order for each Qualified End User to whom CDK's Interfaced Product is sold, beginning on the RCI Effective Date. CDK will pay this fee directly on behalf of Qualified End Users.

**(Per Qualified End User) Monthly Interface Fee(s): $37 (USD) or $37 (CAD)**

This recurring monthly fee is payable beginning the first month after submission of an order for each Qualified End User to whom CDK's Interfaced Product is sold, beginning on the RCI RCI Effective Date.  CDK will pay this fee directly on behalf of Qualified End Users.

---

**Package "B" Interface Package-**
Includes the following Interfaces-
- Batch Closed Repair Order (with pre-load)
- Batch Special Order Parts Receipt
- Batch Closed F&I Deal (with pre-load)

**(Per Qualified End User) Installation Fee(s):**
    **Existing Qualified End Users as of the RCI Effective Date - $175 (USD) or $175 (CAD) - WAIVED**
    **New Qualified End Users as of the RCI Effective Date - $350 (USD) or $350 (CAD)**

This one-time setup fee is payable within the first month after submission of an order for each Qualified End User to whom CDK's Interfaced Product is sold, beginning on the RCI Effective Date. CDK will pay this fee directly on behalf of Qualified End Users.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000074

CX4153-050

FTC-0000406

Fees for pre-load files delivered at initial installation are included in the (Per Qualified End User) Installation Fees for New Qualified End Users. Requests for Reynolds to send replacement pre-load files for a previously completed RCI order will be assessed a fee of **$125.00 (USD)/(CAD)** for each replacement pre-load file.

**(Per Qualified End User) Monthly Interface Fee(s):**
**Existing Qualified End Users as of the RCI Effective Date –**
First 12 months after RCI Certification Date - $102 (USD) or $102 (CAD)
Month 13 – 24 after RCI Certification Date - $144 (USD) or $144 (CAD)
Month 25 – 36 after RCI Certification Date – $188 (USD) or $188 (CAD)
**New Qualified End Users as of the RCI Effective Date – $177 (USD) or $177 (CAD)**

**The Existing Qualified End User pricing set forth above shall be fixed for the first 36 months and not subject to price increase pursuant to Section 2.4.2.**

This recurring monthly fee is payable beginning the first month after submission of an order for each Qualified End User to whom CDK's Interfaced Product is sold, beginning on the RCI Effective Date. CDK will pay this fee directly on behalf of Qualified End Users.

---

**Existing Qualified End Users:** Within seven (7) days of the RCI Effective Date, CDK will provide Reynolds a comprehensive list of the existing Qualified End Users with whom CDK is already providing services and were installed prior to the RCI Effective Date. This list will include, at a minimum, the name, address, phone number, and installation date of each Qualified End User. After Certification, any integration requests by CDK for Qualified End Users matching names on this list will be installed at the Installation Fee and invoiced for the Monthly Interface Fee for Existing Qualified End Users listed above. Any integration requests by CDK for Qualified End Users not listed will be invoiced for the Installation Fee and Monthly Interface Fee for New Qualified End Users listed above.

**Minimum Fees:** For each twelve (12) month period following Certification of the Interfaced Product, CDK's total (Per Qualified End User) Installation Fee and (Per Qualified End User) Monthly Interface Fee paid to Reynolds will be no less than **$50,000 (USD) / (CAD)** (the "Minimum Fees"). The first twelve (12) month period begins upon Certification of the Interfaced Product. If CDK's total (Per Qualified End User) Installation and (Per Qualified End User) Monthly Interface Fee(s) paid to Reynolds do not meet the Minimum Fees at the end of each given twelve (12) month period thereafter, then CDK will pay Reynolds the difference between the Minimum Fees and the sum of (Per Qualified End User) Installation and (Per Qualified End User) Monthly Interface Fee(s) paid to Reynolds.

**Maximum Assistance:** Reynolds will provide CDK a maximum of **forty (40)** hours of support during the initial implementation and certification process for the Interfaced Product(s) defined in this Agreement. If Reynolds exceeds these hours during the implementation and certification process, Reynolds will notify CDK in writing. If CDK would like Reynolds to exceed the Maximum Assistance, CDK will request in writing support for said services. In Reynolds sole discretion Reynolds may

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

CX4153-051

FTC-0000407

decline and/or accept the request and will charge CDK per hour at an hourly rate of **$250 per hour (USD).**

**Non-Refundable Re-Certification Fee:      $ 5,000 (USD) - WAIVED**
As described in Sections 3.5.1.1 – 3.5.1.4, this Re-Certification Fee is payable when CDK releases a major release of their already-Certified Interfaced Product and/or if twenty-four (24) months have expired since the last Certification or Re-Certification of the Interfaced Product has occurred.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000076

CX4153-052

FTC-0000408

## EXHIBIT RCI E2

## CDK MENUVANTAGE FEES

**Certification Process Fee:  $25,000 (USD) - WAIVED**
This fee will be due upon invoice from Reynolds.


**(Per Qualified End User) Installation Fee(s):**
    Existing Qualified End Users as of the RCI Effective Date - $250 (USD) or $250 (CAD) -
**WAIVED**
       New Qualified End Users as of the RCI Effective Date - $350 (USD) or $350 (CAD)

This one-time setup fee is payable within the first month after submission of an order for each
Qualified End User to whom CDK's Interfaced Product is sold, beginning on the RCI Effective Date.
CDK will pay this fee directly on behalf of Qualified End Users.

---

**(Per Qualified End User) Monthly Interface Fee(s):**
    Existing Qualified End Users as of the RCI Effective Date –
       First 12 months after RCI Certification Date -  $139 (USD) or $139 (CAD)
       Month 13 – 24 after RCI Certification Date - $197 (USD) or $197 (CAD)
       Month 25 – 36 after RCI Certification Date – $256 (USD) or $256 (CAD)
    New Qualified End Users as of the RCI Effective Date – $241 (USD) or $241 (CAD)

**The Existing Qualified End User pricing set forth above shall be fixed for the first 36 months and
not subject to price increase pursuant to Section 2.4.2.**

This recurring monthly fee is payable beginning the first month after submission of an order for each
Qualified End User to whom CDK's Interfaced Product is sold, beginning on the RCI Effective Date.
CDK will pay this fee directly on behalf of Qualified End Users.


**Existing Qualified End Users:**  Within seven (7) days of the RCI Effective Date, CDK will provide
Reynolds a comprehensive list of the existing Qualified End Users with whom CDK is already
providing services and were installed prior to the RCI Effective Date.  This list will include, at a
minimum, the name, address, phone number, and installation date of each Qualified End User.  After
Certification, any integration requests by CDK for Qualified End Users matching names on this list will
be installed at the Installation Fee and invoiced for the Monthly Interface Fee for Existing Qualified
End Users listed above.  Any integration requests by CDK for Qualified End Users not listed will be
invoiced for the Installation Fee and Monthly Interface Fee for New Qualified End Users listed above.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process        REYREY0000077

CX4153-053


**FTC-0000409**

Fees for pre-load files delivered at initial installation are included in the (Per Qualified End User) Installation Fees for New Qualified End Users. Requests for Reynolds to send replacement pre-load files for a previously completed RCI order will be assessed a fee of **$125.00 (USD)/(CAD)** for each replacement pre-load file.

---

**Minimum Fees:** For each twelve (12) month period following Certification of the Interfaced Product, CDK's total (Per Qualified End User) Installation Fee and (Per Qualified End User) Monthly Interface Fee paid to Reynolds will be no less than **$15,000 (USD)** (the "Minimum Fees"). The first twelve (12) month period begins upon Certification of the Interfaced Product. If CDK's total (Per Qualified End User) Installation and (Per Qualified End User) Monthly Interface Fee(s) paid to Reynolds do not meet the Minimum Fees at the end of each given twelve (12) month period thereafter, then CDK will pay Reynolds the difference between the Minimum Fees and the sum of (Per Qualified End User) Installation and (Per Qualified End User) Monthly Interface Fee(s) paid to Reynolds.

**Maximum Assistance:** Reynolds will provide CDK a maximum of **forty (40)** hours of support during the initial implementation and certification process for the Interfaced Product(s) defined in this Agreement. If Reynolds exceeds these hours during the implementation and certification process, Reynolds will notify CDK in writing. If CDK would like Reynolds to exceed the Maximum Assistance, CDK will request in writing support for said services. In Reynolds sole discretion Reynolds may decline and/or accept the request and will charge CDK per hour at an hourly rate of **$250 per hour (USD).**

**Non-Refundable Re-Certification Fee:** **$ 5,000 (USD) - WAIVED**
As described in Sections 3.5.1.1 – 3.5.1.4, this Re-Certification Fee is payable when CDK releases a major release of their already-Certified Interfaced Product and/or if twenty-four (24) months have expired since the last Certification or Re-Certification of the Interfaced Product has occurred.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000078

CX4153-054

FTC-0000410

**EXHIBIT RCI E3**

**CDK PARTSVOICE FEES**

**Certification Process Fee:  $25,000 (USD) - WAIVED**
This fee will be due upon invoice from Reynolds.

**(Per Qualified End User) Installation Fee(s):**
**Existing Qualified End Users as of the RCI Effective Date - $125 (USD) or $125 (CAD) -**
**WAIVED**
**New Qualified End Users as of the RCI Effective Date - $125 (USD) or $125 (CAD)**

This one-time setup fee is payable within the first month after submission of an order for each Qualified End User to whom CDK's Interfaced Product is sold, beginning on the RCI Effective Date. CDK will pay this fee directly on behalf of Qualified End Users.

**Existing Qualified End Users:**  Within seven (7) days of the RCI Effective Date, CDK will provide Reynolds a comprehensive list of the existing Qualified End Users with whom CDK is already providing services and were installed prior to the RCI Effective Date.  This list will include, at a minimum, the name, address, phone number, and installation date of each Qualified End User.  After Certification, any integration requests by CDK for Qualified End Users matching names on this list will be installed at the Installation Fee for Existing Dealers listed above.  Any integration requests by CDK for Qualified End Users not listed will be invoiced for the Installation Fee for New Qualified End Users listed above.

**(Per Qualified End User) Monthly Interface Fee(s): $46 (USD) or $46 (CAD)**

This recurring monthly fee is payable beginning the first month after submission of an order for each Qualified End User to whom CDK's Interfaced Product is sold, beginning on the RCI Effective Date. CDK will pay this fee directly on behalf of Qualified End Users.

Fees for pre-load files delivered at initial installation are included in the (Per Qualified End User) Installation Fees.  Requests for Reynolds to send replacement pre-load files for a previously completed RCI order will be assessed a fee of **$125.00 (USD)/(CAD)** for each replacement pre-load file.

---

**Minimum Fees:**  For each twelve (12) month period following Certification of the Interfaced Product, CDK's total (Per Qualified End User) Installation Fee and (Per Qualified End User) Monthly Interface

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

Fee paid to Reynolds will be no less than **$50,000 (USD)**(the "Minimum Fees"). The first twelve (12) month period begins upon Certification of the Interfaced Product. If CDK's total (Per Qualified End User) Installation and (Per Qualified End User) Monthly Interface Fee(s) paid to Reynolds do not meet the Minimum Fees at the end of each given twelve (12) month period thereafter, then CDK will pay Reynolds the difference between the Minimum Fees and the sum of (Per Qualified End User) Installation and (Per Qualified End User) Monthly Interface Fee(s) paid to Reynolds.

**Maximum Assistance:** Reynolds will provide CDK a maximum of **twenty (20)** hours of support during the initial implementation and certification process for the Interfaced Product(s) defined in this Agreement. If Reynolds exceeds these hours during the implementation and certification process, Reynolds will notify CDK in writing. If CDK would like Reynolds to exceed the Maximum Assistance, CDK will request in writing support for said services. In Reynolds sole discretion Reynolds may decline and/or accept the request and will charge CDK per hour at an hourly rate of **$250 / hour (USD)**.

**Non-Refundable Re-Certification Fee:**     **$ 5,000 (USD) - WAIVED**

As described in Sections 3.5.1.1 – 3.5.1.4, this Re-Certification Fee is payable when CDK releases a major release of their already-Certified Interfaced Product and/or if twenty-four (24) months have expired since the last Certification or Re-Certification of the Interfaced Product has occurred.

56

REYREY0000080

CX4153-056

FTC-0000412

# EXHIBIT RCI E4

## CDK F&I RESULTS FEES

**Certification Process Fee: $0 (USD) –**
For avoidance of doubt; the Certification Process Fee for the CDK F&I Results Interfaced Product was
paid under a prior agreement.

**(Per Qualified End User) Installation Fee(s):**
   **New Qualified End Users as of the RCI Effective Date - $500 (USD)**

This one-time setup fee is payable within the first month after submission of an order for each
Qualified End User to whom CDK's Interfaced Product is sold, beginning on the RCI Effective Date.
CDK will pay this fee directly on behalf of Qualified End Users.

**(Per Qualified End User) Monthly Interface Fee(s): $172 (USD)**
This recurring monthly fee is payable beginning the first month after submission of an order for each
Qualified End User to whom CDK's Interfaced Product is sold, beginning on the RCI Effective Date.
CDK will pay this fee directly on behalf of Qualified End Users.

---

**Minimum Fees:** For each twelve (12) month period following Certification of the Interfaced Product,
CDK's total (Per Qualified End User) Installation Fee and (Per Qualified End User) Monthly Interface
Fee paid to Reynolds will be no less than **$12,000 (USD)** (the "Minimum Fees"). The first twelve (12)
month period begins upon Certification of the Interfaced Product. If CDK's total (Per Qualified End
User) Installation and (Per Qualified End User) Monthly Interface Fee(s) paid to Reynolds do not meet
the Minimum Fees at the end of each given twelve (12) month period thereafter, then CDK will pay
Reynolds the difference between the Minimum Fees and the sum of (Per Qualified End User)
Installation and (Per Qualified End User) Monthly Interface Fee(s) paid to Reynolds.

**Maximum Assistance:** Reynolds will provide CDK a maximum of **twenty (20)** hours of support
during the initial implementation and certification process for the Interfaced Product(s) defined in this
Agreement. If Reynolds exceeds these hours during the implementation and certification process,
Reynolds will notify CDK in writing. If CDK would like Reynolds to exceed the Maximum Assistance,
CDK will request in writing support for said services. In Reynolds sole discretion Reynolds may
decline and/or accept the request and will charge CDK per hour at an hourly rate of **$250 / hour (USD)**.

**Non-Refundable Re-Certification Fee:      $ 5,000 (USD) - WAIVED**
As described in Sections 3.5.1.1 – 3.5.1.4, this Re-Certification Fee is payable when CDK releases a
major release of their already-Certified Interfaced Product and/or if twenty-four (24) months have
expired since the last Certification or Re-Certification of the Interfaced Product has occurred.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process          REYREY0000081

CX4153-057

FTC-0000413

**EXHIBIT RCI E5**

**CDK LOT MANAGEMENT FEES**

**Certification Process Fee: $15,000 (USD) – WAIVED**
This fee will be due upon invoice from Reynolds.

Interfaces to be provided to CDK Lot Management Interfaced Product(s):
- Batch Vehicle Inventory
- Batch Service Appointment (with pre-load)
- Batch Closed F&I Deal (with pre-load)

**(Per Qualified End User) Installation Fee(s):**
**Existing Qualified End Users as of the RCI Effective Date –**
- **Any one Interface - $125 (USD) or $125 (CAD) – WAIVED**
- **Any two Interfaces - $250 (USD) or $250 (CAD) – WAIVED**
- **Any three Interfaces - $350 (USD) or $350 (CAD) – WAIVED**

**New Qualified End Users as of the RCI Effective Date**
- **Any one Interface - $125 (USD) or $125 (CAD)**
- **Any two Interfaces - $250 (USD) or $250 (CAD)**
- **Any three Interfaces - $350 (USD) or $350 (CAD)**

This one-time setup fee is payable within the first month after submission of an order for each Qualified End User to whom CDK's Lot Management Interfaced Product is sold, beginning on the RCI Effective Date. CDK will pay this fee directly on behalf of Qualified End Users.

**(Per Qualified End User) Monthly Interface Fee(s):**
**Existing Qualified End Users as of the RCI Effective Date –**
**First 12 months after RCI Certification Date –**
- **Batch Closed F&I Deal - $39 (USD) or $39 (CAD)**
**Month 13 – 24 after RCI Certification Date –**
- **Batch Closed F&I Deal - $55 (USD) or $55 (CAD)**
**Month 25 – 36 after RCI Certification Date –**
- **Batch Closed F&I Deal - $71 (USD) or $71 (CAD)**

**New Qualified End Users and Existing Qualified End Users as to the RCI Effective Date -**
- **Batch Vehicle Inventory - $37 (USD) or $37 (CAD)**
- **Batch Service Appointment - $47 (USD) or $47 (CAD)**

**New Qualified End Users as to the RCI Effective Date:**
- **Batch Closed F&I Deal - $67 (USD) or $67 (CAD)**

58

REYREY0000082

CX4153-058

FTC-0000414

**The Existing Qualified End User pricing set forth above shall be fixed for the first 36 months and not subject to price increase pursuant to Section 2.4.2.**

This recurring monthly fee is payable beginning the first month after submission of an order for each Qualified End User to whom CDK's Interfaced Product is sold, beginning on the Effective Date of this Agreement. CDK will pay this fee directly on behalf of Qualified End Users.

**Existing Qualified End Users:** Within seven (7) days of the RCI Effective Date, CDK will provide Reynolds a comprehensive list of the existing Qualified End Users with whom CDK Lot Management is already providing services and were installed prior to the RCI Effective Date. This list will include, at a minimum, the name, address, phone number, and installation date of each Qualified End User. After Certification, any integration requests by CDK Lot Management for Qualified End Users matching names on this list will be installed at the Installation Fee and invoiced for the Monthly Interface Fee for Existing Qualified End Users listed above. Any integration requests by CDK for Qualified End Users not listed will be invoiced for the Installation Fee and Monthly Interface Fee for New Qualified End Users listed above.

Fees for pre-load files delivered at initial installation are included in the (Per Qualified End User) Installation Fees for New Qualified End Users. Requests for Reynolds to send replacement pre-load files for a previously completed RCI order will be assessed a fee of **$125.00 (USD) / (CAD)** for each replacement pre-load file.

**Minimum Fees:** For each twelve (12) month period following Certification of the Interfaced Product, CDK's total (Per Qualified End User) Installation Fee and (Per Qualified End User) Monthly Interface Fee paid to Reynolds will be no less than **$50,000 (USD)** (the "Minimum Fees"). The first twelve (12) month period begins upon Certification of the Interfaced Product. If CDK's total (Per Qualified End User) Installation and (Per Qualified End User) Monthly Interface Fee(s) paid to Reynolds do not meet the Minimum Fees at the end of each given twelve (12) month period thereafter, then CDK will pay Reynolds the difference between the Minimum Fees and the sum of (Per Qualified End User) Installation and (Per Qualified End User) Monthly Interface Fee(s) paid to Reynolds.

**Maximum Assistance:** Reynolds will provide CDK a maximum of **forty (40)** hours of support during the initial implementation and certification process for the Interfaced Product(s) defined in this Agreement. If Reynolds exceeds these hours during the implementation and certification process, Reynolds will notify CDK in writing. If CDK would like Reynolds to exceed the Maximum Assistance, CDK will request in writing support for said services. In Reynolds sole discretion Reynolds may decline and/or accept the request and will charge CDK per hour at an hourly rate of **$250 / hour (USD).**

**Non-Refundable Re-Certification Fee:**     $ 5,000 (USD) - **WAIVED**

59

CX4153-059

**FTC-0000415**

As described in Sections 3.5.1.1 – 3.5.1.4, this Re-Certification Fee is payable when CDK releases a major release of their already-Certified Interfaced Product and/or if twenty-four (24) months have expired since the last Certification or Re-Certification of the Interfaced Product has occurred.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000084

CX4153-060

FTC-0000416

**EXHIBIT RCI E6**

**CDK ONE-EIGHTY FEES**

**Certification Process Fee:** $ 0 (CAD)
For avoidance of doubt; the Certification Process Fee for the CDK ONE-EIGHTY Interfaced Product
was paid under a prior agreement.

---

**Interfaces included in Package 1:**
- Publish Customer
- Insert / Update Customer
- Publish Service Appointment (with pre-load)
- Publish Repair Order (Open, Invoiced, Closed, Void Triggers)- with pre-load
- Insert F&I Deal- Start
- Insert/Update Vehicle Inventory

**Interfaces included in Package 2:**
- Publish Customer
- Insert / Update Customer
- Publish Repair Order (Open, Invoiced, Closed, Void Triggers)- with pre-load
- Insert F&I Deal- Start
- Insert/Update Vehicle Inventory

---

**(Per Qualified End User) Installation Fee(s):**
- **Package 1: $500 (CAD)**
- **Package 2: $500 (CAD**

This one-time setup fee is payable within the first month after submission of an order for each
Qualified End User to whom ONE-EIGHTY's Interfaced Product is sold, beginning on the Effective
Date of this Agreement.  ONE-EIGHTY will pay this fee directly on behalf of Qualified End Users.

Fees for pre-load files delivered at initial installation are included in the (Per Qualified End User)
Installation Fees.  Requests for Reynolds to send replacement pre-load files for a previously completed
RCI order will be assessed a fee of **$125.00 (CAD)** for each replacement pre-load file.

---

**(Per Qualified End User) Monthly Interface Fee:**
- **Package 1: $427 (CAD)**
- **Package 2: $342 (CAD)**

61

CX4153-061

**FTC-0000417**

This recurring monthly fee is payable beginning the first month after submission of an order for each Qualified End User to whom ONE-EIGHTY's Interfaced Product is sold, beginning on the Effective Date of this Agreement. ONE-EIGHTY will pay this fee directly on behalf of Qualified End Users.

**Minimum Fees:** For each twelve (12) month period following Certification of the Interfaced Product, ONE-EIGHTY's total (Per Qualified End User) Installation Fee and (Per Qualified End User) Monthly Interface Fee paid to Reynolds will be no less than **$100,000 (CAD)** (the "Minimum Fees"). The first twelve (12) month period begins upon Certification of the Interfaced Product. If ONE-EIGHTY's total (Per Qualified End User) Installation and (Per Qualified End User) Monthly Interface Fee(s) paid to Reynolds do not meet the Minimum Fees at the end of each given twelve (12) month period thereafter, then ONE-EIGHTY will pay Reynolds the difference between the Minimum Fees and the sum of (Per Qualified End User) Installation and (Per Qualified End User) Monthly Interface Fee(s) paid to Reynolds.

**Maximum Assistance:** Reynolds will provide ONE-EIGHTY a maximum of **20** hours of support during the initial implementation and certification process for the Interfaced Product(s) defined in this Agreement. If Reynolds exceeds these hours during the implementation and certification process, Reynolds will notify ONE-EIGHTY in writing. If ONE-EIGHTY would like Reynolds to exceed the Maximum Assistance, ONE-EIGHTY will request in writing support for said services. In Reynolds sole discretion Reynolds may decline and/or accept the request and will charge ONE-EIGHTY per hour at an hourly rate of **$250** per hour (CAD).

**Non-Refundable Re-Certification Fee:     $5,000 (CAD) - WAIVED**
As described in Sections 3.5.1.1 – 3.5.1.4, this Re-Certification Fee is payable when ONE-EIGHTY releases a major release of their already-Certified Interfaced Product and/or if twenty-four (24) months have expired since the last Certification or Re-Certification of the Interfaced Product has occurred.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000086

CX4153-062

FTC-0000418

**EXHIBIT RCI E7**

**CDK PERFORMANCE 20 FEES**

**Certification Process Fee: $15,000 (USD) - WAIVED**
This fee will be due upon invoice from Reynolds.

**(Per Qualified End User) Installation Fee(s):**
 **Existing Qualified End Users as of the RCI Effective Date - $125 (USD) or $125 (CAD) -
WAIVED**
 **New Qualified End Users as of the RCI Effective Date - $125 (USD) or $125 (CAD)**

This one-time setup fee is payable within the first month after submission of an order for each
Qualified End User to whom CDK's Interfaced Product is sold, beginning on the RCI Effective Date.
CDK will pay this fee directly on behalf of Qualified End Users.

**Existing Qualified End Users:** Within seven (7) days of the RCI Effective Date, CDK will provide
Reynolds a comprehensive list of the existing Qualified End Users with whom CDK is already
providing services and were installed prior to the RCI Effective Date. This list will include, at a
minimum, the name, address, phone number, and installation date of each Qualified End User. After
Certification, any integration requests by CDK for Qualified End Users matching names on this list will
be installed at the Installation Fee for Existing Dealers listed above. Any integration requests by CDK
for Qualified End Users not listed will be invoiced for the Installation Fee for New Qualified End Users
listed above.

**(Per Qualified End User) Monthly Interface Fee(s): $47 (USD) or $47 (CAD)**

This recurring monthly fee is payable beginning the first month after submission of an order for each
Qualified End User to whom CDK's Interfaced Product is sold, beginning on the RCI Effective Date.
CDK will pay this fee directly on behalf of Qualified End Users.

---

**Minimum Fees:** For each twelve (12) month period following Certification of the Interfaced Product,
CDK's total (Per Qualified End User) Installation Fee and (Per Qualified End User) Monthly Interface
Fee paid to Reynolds will be no less than **$15,000 (USD)**(the "Minimum Fees"). The first twelve (12)
month period begins upon Certification of the Interfaced Product. If CDK's total (Per Qualified End
User) Installation and (Per Qualified End User) Monthly Interface Fee(s) paid to Reynolds do not meet
the Minimum Fees at the end of each given twelve (12) month period thereafter, then CDK will pay
Reynolds the difference between the Minimum Fees and the sum of (Per Qualified End User)
Installation and (Per Qualified End User) Monthly Interface Fee(s) paid to Reynolds.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process  REYREY0000087

CX4153-063

**FTC-0000419**

**Maximum Assistance:** Reynolds will provide CDK a maximum of **twenty (20)** hours of support during the initial implementation and certification process for the Interfaced Product(s) defined in this Agreement. If Reynolds exceeds these hours during the implementation and certification process, Reynolds will notify CDK in writing. If CDK would like Reynolds to exceed the Maximum Assistance, CDK will request in writing support for said services. In Reynolds sole discretion Reynolds may decline and/or accept the request and will charge CDK per hour at an hourly rate of **$250 / hour (USD)**.

**Non-Refundable Re-Certification Fee:**     **$ 5,000 (USD) - WAIVED**

As described in Sections 3.5.1.1 – 3.5.1.4, this Re-Certification Fee is payable when CDK releases a major release of their already-Certified Interfaced Product and/or if twenty-four (24) months have expired since the last Certification or Re-Certification of the Interfaced Product has occurred.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000088

CX4153-064

FTC-0000420

## EXHIBIT RCI F

R E Y N O L D S   A N D   R E Y N O L D S

**Reynolds Certified Interface Program** | Logo Usage Standards

Reynolds and Reynolds established the Reynolds Certified Interface (RCI) Program to ensure that your product provides safe, secure, and seamless integration with Reynolds' Dealership Management Systems (DMS) and minimizes disruption to the dealer's business.

This document and the accompanying logos provide the standards by which you can proudly tell our customers, the dealers, that you are a certified RCI member. Certification, and display of the exclusive RCI logo with the appropriate DMS tagline, gives your solution an important competitive advantage over a non-certified product.

Candidates who successfully complete the RCI Program requirements may use the appropriate RCI logo with tagline as a graphic symbol to signify the certification, and for no other purpose. The tagline accompanying the RCI logo indicates the specific Reynolds DMS for which your solution is certified. You are required to display the RCI logo with the tagline that correctly reflects your certification.

### Usage

The Reynolds Certified Interface logo with tagline may be used in print or electronic media, i.e., vendor Web pages.

### Logo Artwork

The logo type is a special typeface and cannot be typeset from regular fonts. Only camera-ready artwork from an electronic file furnished by Reynolds and Reynolds can be used to reproduce the signature.

### Color Applications

The logo may not be screened or used in any spot color other than the ones provided in black and white, 2-color process (PMS280), or 4-color process.

### Minimum Size

The minimum acceptable size for the logo with tagline is 1.75" (width). The mark should not be larger or more prominent than your own logo or company name.

### Staging

The logo should be separated on all sides from all other copy, photos or illustrations, or the edge of the page by a clear staging area of at least 1/4X (X=logo width). This is a minimum clear space around the logo. The staging area requirement applies to the general background the logo appears upon. This area should always be even and continuous, free of any pronounced texture or graphic variation.



*RCI 4-color process logo*

 

*RCI 2-color process logo variations for POWER and ERA*

 

*RCI 2-color process logo*     *RCI Black and white logo*



*Minimum size 1 3/4"*



*Staging area*

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000089

CX4153-065

FTC-0000421

REYNOLDS AND REYNOLDS

## Logo Elements

Conversely, when using the mark you cannot just use the words or typeface of "Reynolds Certified Interface" without the logo. In copy, the words "Reynolds Certified Interface" must be spelled out the first time it is used and accompanied by the DMS with which you are certified to interface, i.e., ERA®, POWER, or ERA and POWER. After that, you can use "RCI." When referring to the mark, it is "Reynolds Certified Interface." When referring to the program, it is the "Reynolds Certified Interface Program."

## Unacceptable Logo Usage

- Do not use the mark as a decorative element. Only use complete logo art provided by Reynolds. The logo should always include the tagline indicating the specific DMS for which your product is certified (Certified for ERA, Certified for POWER, or Certified for ERA and POWER).
- Do not incorporate the mark with other design elements.
- Do not use the mark over a decorative background.
- Do not screen the mark or use any other specifications except the ones provided in black and white or 4-color process.



Do not use as a decorative background.



Do not use over a decorative background.



Do not use with other design elements.



Do not screen.



Reynolds & Reynolds®
MAKING BUSINESS BETTER.

© 2006 The Reynolds and Reynolds Company. All rights reserved. Printed in U.S.A. The Reynolds Certified Interface logo is owned and trademarked by Reynolds and Reynolds Holdings, Inc., which means there are legal considerations governing its use. 2269075 6/06

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000090

CX4153-066

FTC-0000422

# DATA EXCHANGE AGREEMENT

This Data Exchange Agreement (the **"Agreement"**) is entered into as of the latest signature date of the parties below (the **"Effective Date"**), by and between CDK Global, LLC, and its affiliates (collectively, **"CDK"**) and The Reynolds and Reynolds Company, Dealer Computer Services, Inc., Universal Computer Systems Holding, Inc. and their respective affiliates (collectively, **"Reynolds"**).

WHEREAS, CDK provides retail automobile and truck dealers (**"Dealer(s)"**) with a variety of Elite®, webSuite® and DRIVE® dealer management computer systems (collectively, **"CDK DMS"**).

WHEREAS, CDK also provides DMI Third Party Clients with a data service that involves the polling of data from Reynolds DMS by CDK's Integralink and DMI affiliates (collectively **"DMI"**) for use by such automotive manufacturers or other third parties.

WHEREAS, CDK also provides Dealers with application programs and services for use with dealer management computer systems (collectively the **"CDK Applications"**).

WHEREAS, Reynolds provides Dealers with a variety of ERA® and POWER dealer management computer systems (collectively, **"Reynolds DMS"**).

WHEREAS, Reynolds also provides Dealers with application programs and services for use with dealer management computer systems (collectively the **"Reynolds Applications"**).

WHEREAS, CDK has developed a Managed Interface Program (**"CDK 3PA Program"**) that provides application providers with the ability to receive information from a CDK DMS and to send information to a CDK DMS.

WHEREAS, Reynolds has developed a Reynolds Certified Interface Program (**"Reynolds RCI Program"**) that provides application providers with the ability to receive information from a Reynolds DMS and to send information to a Reynolds DMS.

WHEREAS, CDK wishes to access data on, and/or provide data to, Reynolds DMS for use with certain CDK Applications.

WHEREAS, Reynolds wishes to access data on, and/or provide data to, CDK DMS for use with certain Reynolds Applications.

WHEREAS, Reynolds has agreed to provide CDK an orderly Wind Down Period (the **"Wind Down Period"**) during which Reynolds will not attempt to prevent DMI from polling data from Reynolds DMS.

WHEREAS, CDK and Reynolds desire to set forth the process by which the Wind Down Period will take place.

CONFIDENTIAL-Submitted In Lieu of Compulsory Process                    REYREY0000012

CX4045-001

**FTC-0000318**

NOW, THEREFORE, in consideration of the promises, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Reynolds and CDK agree as follows:

## 1.0 DEFINITIONS

1.1 **CDK Dealer** – A single franchised motor vehicle dealership location (including a location with multiple motor vehicle franchises) using a CDK DMS.

1.2 **DMI Third Party Client(s)** – an entity that provides products or services to automotive retailers, automotive original equipment manufacturers or other stakeholders within the motor vehicle retailing environment on whose behalf DMI electronically collects and transmits data from a Reynolds DMS, among other DMS.

1.3 **Reynolds Dealer** – A single automobile and/or truck dealership store and application area (or branch) combination (and its associated employees) using a Reynolds DMS.

1.4 **Wind Down Period** – For each DMI Third Party Client, the period beginning on the Effective Date of this Agreement and concluding on the later of:

(i)     the end of the current term of such DMI Third Party Client's agreement with DMI ("Third Party Client Agreement") up to a maximum of one year; provided, however, that (a) the maximum time period under this subsection 1.4(i) for Third Party Client Agreements whose renewal term will begin after the Effective Date but whose deadline to give notice not to renew passed before the Effective Date shall be extended to the end of such renewal term so long as the renewal term is no more than one year, (b) the maximum time period under this subsection 1.4(i) for the Third Party Client Agreements listed on Exhibit DEA-1 hereto shall be as set forth on Exhibit DEA-1 hereto and (c) for each Third Party Client Agreement that has a deadline to give notice not to renew that passes during the ten (10) business day period immediately after the Effective Date, and that is renewed by DMI during such ten business day period for a term of no more than one year, the maximum time period under this subsection 1.4(i) shall be extended to the end of such renewal term (but, provided further, that such extensions of the Wind Down Period shall not apply to more than five (5) such agreements so renewed after the Effective Date, and it being stipulated that Reynolds shall have no obligations under Section 4.3 herein or otherwise to facilitate or protect interim access for any such Third Party Client Agreement renewals that exceed the five-agreement limit set forth this sentence); and

(ii)    May 13, 2015.

Notwithstanding anything to the contrary herein, Reynolds may, at its discretion, extend the Wind Down Period for any DMI Third Party Client by providing DMI with notice of the length of the extension no later than 30 days prior to the date it would otherwise end (it being agreed that Reynolds may so extend a Wind Down Period multiple times),

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000013

CX4045-002

FTC-0000319

except that in no event shall the Wind Down Period for any DMI Third Party Client exceed five (5) years from the Effective Date. For purposes of this provision, notice by email to Mr. Howard Gardner and/or any other person duly designated by CDK, shall be sufficient. When 'Wind Down Period' is used in the context of the termination of this Agreement it shall mean when the Wind Down Periods of all DMI Third Party Clients have concluded.

1.5 **Operational Data** – Data that is stored in the CDK DMS or Reynolds DMS as part of a Dealer's business process and is accessible by a CDK Dealer or Reynolds Dealer, respectively. Operational Data does not include any data that is stored on the CDK DMS or Reynolds DMS as a bulk data set or table, that is directly accessed by a CDK DMS or Reynolds DMS for the purpose of validating, calculating and/or cleansing data for a given business process (i.e. OEM purchased data, factory masters, tax tables, labor operation code tables, etc).

## 2.0 CDK 3PA PROGRAM

This Agreement is entered concurrently with the certain Managed Interface Agreement dated the date hereof between Reynolds and CDK (the "**3PA Agreement**").

## 3.0 REYNOLDS RCI PROGRAM

This Agreement is entered concurrently with the certain Reynolds Interface Agreement dated the date hereof between Reynolds and CDK (the "**RCI Agreement**").

## 4.0 WIND DOWN OF NON-RCI ACCESS TO REYNOLDS SYSTEMS

4.1 **CDK Cooperation; Agreements with DMI Third Party Clients**. CDK agrees to reasonably cooperate with Reynolds' efforts, if any, to have DMI Third Party Clients execute agreements to become part of the Reynolds RCI Program during the Wind Down Period. During the Wind Down Period, Reynolds and CDK shall discuss in good faith the technical and operational aspects of the Wind Down Period as they relate to the ongoing servicing by DMI of DMI Third Party Clients and their transition to the Reynolds RCI Program after the Wind Down Period.

4.2 **Third-Party Communications**. CDK will communicate to the DMI Third Party Clients: (a) that CDK intends to wind down its Reynolds DMS related integration and does not intend to extend service for such integration beyond the current primary term of its agreement with such DMI Third Party Client, (b) expressing words to the effect that CDK looks forward to doing its part to ease each CDK Third Party Client's transition away from CDK's integration with respect to dealers using the Reynolds DMS during its current contract term with CDK so that the CDK Third Party Clients will not experience a gap in service; and (c) providing them Reynolds contact information for purposes of any inquiries regarding the Reynolds Certified Interface ("RCI") program. Prior to the dissemination of any written press releases or market communications by either Party regarding this Agreement (including, without limitation, communications directed to

CONFIDENTIAL-Submitted in Lieu of Compulsory Process   REYREY0000014

CX4045-003

FTC-0000320

DMI Third Party Clients or OEMs), the template for such press releases or market communications shall be tendered to the other Party for its review and approval (such approval not to be unreasonably withheld) with respect to all references to the Agreement, the Wind Down Period, or the respective reasons for each.

4.3 **Interim Reynolds DMS Access Assistance; No Disturbance.** During the Wind Down Period, the parties intend that, consistent with the terms of this Agreement, CDK will continue providing its integration services through DMI in accordance with its contracts without interruption from Reynolds security enhancements. During the Wind Down Period Reynolds (i) shall protect and facilitate current Reynolds DMS access by CDK and DMI for all DMI Third Party Clients and CDK Applications, including, without limitation, providing CDK and DMI with the appropriate Reynolds-defined access to the Reynolds DMS necessary for DMI to perform its services (i.e., the "**Interim Solution**") and (ii) shall not take any measures to block or otherwise disrupt DMI's normal Reynolds DMS access during such Wind Down Period. CDK understands and agrees that, in order for Reynolds to be able to provide such Interim Solution pursuant to this Section 4.3, CDK shall provide Reynolds with: (i) within 5 business days of the Effective Date, a list of Reynolds Dealers System Numbers and the DMS User Logins being used by CDK for each Dealer for whom such Interim Solution is needed; and (ii) provided CDK has secured any permission necessary to provide such information, within 60 days of the Effective Date, the information described in Exhibit DEA-2 hereto. In the event that CDK is unable to timely provide at least items #1, #2, #4(b), #4(f), and #4(i) from Exhibit DEA-2 (bolded for reference in that exhibit) for any given DMI Third Party Client(s), Reynolds shall have no further obligation to provide the Interim Solution for such DMI Third Party Client(s) and may continue to provide such Interim Solution only in Reynolds' sole discretion. CDK understands that reasonable efforts may be required on the part of CDK, the DMI Third Party Clients, and/or the applicable Reynolds Dealers in order to facilitate such Interim Solution.

4.4 **CDK Wind Down Cooperation.** CDK agrees to provide ongoing service to DMI Third Party Clients during the Wind Down Period, for so long as Reynolds complies with Section 4.3 above and the DMI Third Party Client is not in breach of the relevant Third Party Client Agreement. If CDK elects to end ongoing service to any DMI Third Party Client during the Wind Down Period pursuant to this Agreement, CDK will provide notice to Reynolds within three (3) business days of such election. During the Wind Down Period for each DMI Third Party Client, CDK agrees to reasonably assist and cooperate with Reynolds, with respect to: (1) communication with DMI Third Party Clients, their Reynolds Dealer customers and the automotive industry in general during the Wind Down Period; (2) Reynolds' development and testing of interfaces for DMI Third Party Clients who choose to join the Reynolds RCI Program; and (3) the transition of such customers to the Reynolds RCI program with respect to Reynolds Dealers.

4.5 **Prohibition on Knowledge Transfer and DMS Access.** Each of Reynolds and CDK further covenants and agrees not to sell, transfer, or assign to any affiliate or third party any technology, business process, or other such knowledge regarding integration with the other party's DMS or take any other steps to assist any person that it reasonably believes

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000015

CX4045-004

**FTC-0000321**

to have plans to access or integrate with the other party's DMS without other party's written consent. For the avoidance of doubt, this Section 4.5 is not intended as a "covenant not to compete," but rather as a contractual restriction of access and attempted access intended to protect the operational and data security integrity of the Reynolds DMS and the CDK DMS and protection of intellectual property.

4.6 **Limitations on Use.** During the Wind Down Period for a DMI Third Party Client, CDK will collect, transmit, and/or store Operational Data from the Reynolds DMS for such DMI Third Party Client only if (i) CDK obtains or has obtained written consent from the Reynolds Dealer(s) either directly from the Reynolds Dealer or indirectly through a DMI Third Party Client; (ii) the collection, transmission and/or storage relates to a CDK or DMI product or service; and (iii) CDK's access to the Reynolds DMS does not materially degrade or otherwise materially adversely affect the operation of the applicable Reynolds DMS or place Reynolds and/or a Reynolds Dealer at a material operational or security risk—provided, however, (a) that any such material adverse effect or risk covered by this Section 4.6 must be demonstrated to CDK by Reynolds with clear and direct evidence; and (b) CDK shall be given a reasonable opportunity to cure any such material adverse effect or risk.

## 5.0 PRIVACY COMPLIANCE

5.1 With respect to any data access permitted by this Agreement, CDK and Reynolds agree that they will comply with all relevant privacy and security related law, including the Gramm-Leach-Bliley Act and its implementing regulations (the "**GLBA**"), and to the extent applicable, the privacy laws of any state, Canada's Personal Information Protection and Electronic Documents Act ("**PIPEDA**"), and any other relevant privacy laws in Canada or of any province of Canada or other relevant jurisdiction.

5.2 To the extent CDK or Reynolds obtains access to any Operational Data from or about an individual retail customer that contains "non-public personal information," as such term is defined in Title V of the GLBA ("**Customer NPI**") pursuant to this Agreement, CDK and Reynolds agree to comply with all aspects of the GLBA and any other privacy laws applicable to them with respect to such Customer NPI.

5.3 The provisions of this Section 5 shall survive the term and/or termination of this Agreement and/or any part thereof.

## 6.0 TERM AND TERMINATION

6.1 **Term.** With the exception of the obligations set forth in Sections 4.5 [Prohibition on Knowledge Transfer and DMS Access], 5.0 [Privacy Compliance], 7.0 [Confidentiality], the terms of which are set forth more specifically therein, this Agreement shall terminate at the end of the Wind Down Period.

6.2 **Termination for Breach.** If either Party commits a material breach of this Agreement then the non-breaching party may terminate this Agreement by thirty (30) days written

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000016

CX4045-005

**FTC-0000322**

notice unless the breaching party cures such breach or begins a good faith effort to cure the breach within thirty (30) days after notice is delivered to the breaching party.

## 7.0 CONFIDENTIALITY

7.1 **"Confidential Information"** shall include each Party's trade secrets and other confidential research, development, and commercial information that is disclosed to the other Party pursuant to or relating to this Agreement. For the avoidance of doubt, Confidential Information includes but is not limited to this Agreement, its Exhibits, and all of their terms and any information relating to the CDK DMS (and any associated products, service or applications), Reynolds DMS (and any associated products, service or applications), CDK Applications, Reynolds Applications, interfaces associated with the CDK 3PA Program, and interfaces associated with the Reynolds RCI Program. Confidential Information excludes information that: (1) was publicly available at the time it was disclosed to the other party (**"Receiving Party"**), or which, through no act or omission of the Receiving Party, becomes publicly available before the Receiving Party discloses it to a third party; (2) the Receiving Party already rightfully possessed free of any obligation of confidentiality before the Party disclosing it (**"Disclosing Party"**) disclosed it to the Receiving Party; (3) the Receiving Party rightfully receives without obligation of confidentiality from a third party who is entitled to disclose such information without breaching an obligation of confidentiality; (4) the Receiving Party develops independently without using any of the Disclosing Party's Confidential Information; or (5) is identified in writing by the Disclosing Party as not Confidential Information.

7.2 Each Party shall only use the other Party's Confidential Information in connection with the performance of its duties hereunder. Neither Party will disclose any Confidential Information of the other Party to anyone, for any purpose, except: (a) employees and consultants that have executed agreements obligating them to comply with the provisions of this Confidentiality provision; (b) pursuant to a valid subpoena or an Order by a Court of competent jurisdiction or as otherwise required by law, provided that unless otherwise prohibited by law, the Party intending to disclose such information under this exception provides written notice to the other Party and provides the other Party an opportunity to seek a protective order or other appropriate protection at its election; (c) pursuant to written consent of the Disclosing Party; or (d) as required by law in instances in which a Party brings proceedings as permitted by this Agreement to enforce rights under this Agreement. The parties acknowledge and agree that the disclosure of any Confidential Information to the other Party does not confer upon a Party any license, interest or rights of any kind in or to the Confidential Information, except as provided in this Agreement. Except as permitted by this Agreement, neither Party will disclose, disseminate, use or otherwise make available the Confidential Information of the other. Each Party will use reasonable efforts, but in no event less than the security precautions such Party undertakes to protect its own proprietary and confidential information of like nature, to prevent any Confidential Information of the other Party from being disclosed to third parties.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000017

CX4045-006

**FTC-0000323**

**7.3** The terms of this Agreement, the 3PA Agreement and the RCI Agreement shall be considered Confidential Information and neither party may disclose to any third party the specific terms of such agreements, or the existence or general nature of such agreements, other than as permitted in this Agreement, the 3PA Agreement and the RCI Agreement, without the prior written consent of the other party hereto.

**7.4** The Parties agree that written confidentiality agreements substantially similar to the terms contained herein will be obtained for any employees or contractors permitted access to Confidential Information. Prior to the time an employee or contractor of Receiving Party receives any Confidential Information of the Disclosing Party, the Receiving Party will instruct that employee or contractor about the obligations of the Receiving Party hereunder and instruct that employee or contractor not to disclose or use any Confidential Information, except as specifically provided herein.

**7.5** At the Disclosing Party's request or upon completion of the Receiving Party's use of Confidential Information, the Receiving Party will make reasonable efforts to return all copies of Confidential Information to the Disclosing Party or destroy the Confidential Information and certify such destruction to the Disclosing Party. The Receiving Party may retain a copy of Confidential Information, for archival purposes or to the extent required by law, subject to the Receiving Party's continuing obligations under this Section 7.

**7.6** The provisions of this Section 7 pertaining to Confidential Information shall survive termination or expiration of this Agreement.

## 8.0 INDEMNIFICATION AND DAMAGES

**8.1** Each party ("Indemnitor") shall defend, indemnify and hold harmless the other party, its affiliates and their employees, successors and assigns ("Indemnitees") against all damages, losses, costs, expenses (including reasonable attorneys' fees, costs and expenses) and other liabilities arising out of any claims, demands, suits, or causes of action by third parties, arising out of or in connection with this Agreement to the extent that such damages, losses, costs, expenses and other liabilities result or are claimed to result in whole or in part from: (i) any breach of this Agreement by Indemnitor, its affiliates or their employees or agents; (ii) the violation by Indemnitor, its affiliates or their employees or agents of applicable law or regulation in connection with the data exchange activities described in this Agreement; (iii) any access by Indemnitor, or its affiliates or their employees or agents to Indemnitee's proprietary hardware and/or software facilitated pursuant to this Agreement for any purpose falling outside the scope of this Agreement; (iv) Indemnitor's or its affiliates' or their employees' or agent's failure to obtain the rights and consents necessary for Indemnitee to gain access to (and extract) Operational Data pursuant to this Agreement; and (v) any publication, breach of confidentiality, dissemination, conversion, misappropriation or other use of any Operational Data facilitated by this Agreement by Indemnitor, or its affiliates or their employees or agents in a manner (a) not authorized by the Dealer, or (b) in violation of relevant law.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process            REYREY0000018

CX4045-007

**FTC-0000324**

8.2 Promptly upon learning of any claim pursuant to which indemnification may be sought hereunder, the Indemnitee shall notify Indemnitor of such claim and shall furnish to Indemnitor all information known and reasonably available to the Indemnitee related to such claim; provided, however, that any failure to provide such notice will not relieve Indemnitor of its indemnification obligations under this Agreement except to the extent, and only to the extent, that Indemnitor suffers a loss as a result of such failure. In order to receive the benefits of the indemnification provided this Agreement, the Indemnitee shall give Indemnitor the opportunity to take over, settle or defend such action, claim or suit through counsel of Indemnitor's choice and under Indemnitor's sole direction and expense, and shall fully cooperate with Indemnitor (at Indemnitor's expense) in the defense of any such claim. Indemnitor shall not settle any such claim without the prior written consent of the Indemnitee, which consent shall not be unreasonably withheld or delayed. To the extent that Indemnitor, on the one hand, and the Indemnitee, on the other hand, are required to bear losses with respect to a particular claim, the intent of the parties is that they shall bear such losses in proportion to their respective degrees of fault or responsibility for such claim.

8.3 EXCEPT FOR A CLAIM BASED SOLELY UPON BREACH OF THE CONFIDENTIALITY PROVISIONS OF SECTION 7, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY OR ITS AFFILIATES, SUCCESSORS OR ASSIGNS FOR ANY INCIDENTAL, CONSEQUENTIAL DAMAGES INCURRED BY SUCH PERSONS (INCLUDING, WITHOUT LIMITATION, ANY LOST REVENUE OR LOST PROFITS) OR FOR SIMILAR DAMAGES, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES (IT BEING AGREED THAT THIRD PARTY CLAIMS FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES AGAINST THE OTHER PARTY WOULD CONSTITUTE DIRECT DAMAGES INCURRED BY THE OTHER PARTY). EXCEPT FOR WILLFUL MISCONDUCT BY A PARTY, IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY OR ITS AFFILIATES, SUCCESSORS OR ASSIGNS FOR ANY PUNITIVE OR EXEMPLARY DAMAGES.

**9.0 DISPUTE RESOLUTION**

9.1 **Confidential Binding Arbitration.** In the event of any dispute, claim, question or disagreement arising from or relating to this Agreement or an alleged breach thereof ("**Dispute**"), the Parties agree that all Disputes shall be submitted to confidential binding arbitration in accordance with the then applicable commercial rules of the American Arbitration Association ("**AAA**"). Notwithstanding anything to the contrary in this Agreement or the AAA Rules, the Parties agree that arbitration under this Section 9: (a) shall be governed by the Federal Arbitration Act exclusive of any state arbitration laws; (b) shall be before a single neutral arbitrator who is a licensed attorney with prior experience as an arbitrator; (c) shall be conducted in Nashville, TN; and (d) shall be conducted pursuant to a confidentiality agreement that provides at a minimum that the arbitration and all documents and pleadings exchanged in connection therewith shall be held confidential and used only for purposes of the arbitration, except that a Party may

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000019

CX4045-008

**FTC-0000325**

nevertheless: (i) seek to reduce the binding arbitration award to a judgment in court; (ii) seek enforcement of the award pursuant to the Federal Arbitration Act and this Agreement; and (iii) disclose information regarding the arbitration as required by law (e.g., to auditors or regulatory agencies).

9.2 **Arbitration Fees.** Aside from filing or other fees required to initiate the arbitration, all arbitration fees will be split evenly between the Parties unless and until an award is made by the arbitrator regarding arbitration fees. If a Party does not pay its respective share of arbitration fees, then all claims (including counterclaims) of the non-paying Party shall be dismissed by the arbitrator or AAA, and the non-paying Party shall not be permitted to bring any further claims in the arbitration for affirmative relief. The non-paying Party may still participate in the arbitration to defend claims brought against it.

9.3 **Temporary Injunctive Relief for IP Disputes.** Notwithstanding anything to the contrary contained in this Section 9 or elsewhere in this Agreement, however, if a dispute arises that relates to misappropriation of proprietary, confidential or trade secret information or other intellectual property; or a breach of the Confidentiality or Data Security provisions of this Agreement and/or its Exhibits ("IP Dispute"), a Party, at its election may seek Temporary Injunctive Relief from a court of competent jurisdiction related exclusively to the IP Dispute. **"Temporary Injunctive Relief"** means only a temporary restraining order and/or a temporary injunction. A claim for Temporary Injunctive Relief brought in court may not be combined with: (a) a request for any other type of relief whether legal or equitable; or (b) any Dispute other than an IP Dispute. All other Disputes, including whether a permanent injunction shall issue, are to be arbitrated concurrently with any court action relating to Temporary Injunctive Relief.

10.0 **RESPECT FOR EMPLOYEES.** Reynolds and CDK acknowledge and agree that the other Party's personnel have been acquired and trained by said Party at considerable expense. Throughout the term of this Agreement, neither Reynolds nor CDK shall knowingly directly solicit for employment or employ any employee of the other Party directly involved in the negotiation or performance of this Agreement until the expiration of one (1) year following such employee's termination of employment with the other party or (1) year following the termination of this Agreement, whichever is shorter.

11.0 **MISCELLANEOUS**

11.1 **Nature.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.

11.2 **Entire Agreement.** This Agreement, together with its Exhibits, sets forth the entire agreement of the parties as to the subject matter hereof and supersedes all prior agreements and all other oral, written or other communications concerning its subject matter. There are no warranties, representations or agreements other than those set forth in this Agreement.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process    REYREY0000020

CX4045-009

**FTC-0000326**

**11.3 No Reliance.** Both Parties expressly disclaim that they are relying upon any statements, understandings, representations, expectations or agreements by the other Party except as may be specifically set forth in this Agreement. Moreover, both CDK and Reynolds are knowingly waiving any claim that this Agreement was induced by any misrepresentations or nondisclosure of any material facts. Each Party has had an opportunity to review this Agreement with counsel of its choosing, and no presumption or rules of interpretation based upon the identity of the party preparing or drafting this Agreement, or any part thereof, shall be applicable or invoked.

**11.4 Modification.** This Agreement may be modified only in a writing signed by both parties. Email and other electronic communications are considered "signed" by the sender for purposes of this Modification provision.

**11.5 No Waiver.** No failure or delay on the part of either party to this Agreement to fully enforce its rights hereunder shall be construed as a waiver by such party of any default hereunder or acquiescence therein, nor shall any failure to exercise such right preclude any future exercise of such right. All rights and remedies under this Agreement shall be cumulative and not exclusive of any other rights or remedies otherwise available.

**11.6 Counterparts.** This Agreement may be executed in one or more counterparts.

**11.7 Governing Law.** Unless specifically otherwise provided herein, this Agreement will be governed by the substantive laws of the State of Ohio, regardless of conflict of laws principles.

**11.8 Construction.** The section headings are for convenience only and will not be used in interpretation of this Agreement. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either of the parties.

**11.9 Severability.** If any of the provisions or portions of this Agreement are determined to be invalid or unenforceable, such provision shall be ineffective and severed from this Agreement to the extent of such invalidity, and the remainder of such provision and all other provisions hereof shall remain in full force and effect.

**11.10 Relationship of the Parties.** This Agreement will not be deemed or construed to create any partnership, joint venture, fiduciary, employment or agency relationship between the parties. Nothing in this Agreement will be construed to constitute or appoint either Party as the agent or representative of the other Party for any purpose whatsoever, or to grant to either party any right or authority to assume or create any obligation or responsibility, express or implied, for or on behalf of or in the name of the other, or to bind the other in any way or manner whatsoever. Moreover, the Parties expressly acknowledge and agree that no fiduciary relationship existed between them at the time of the negotiation and execution of this Agreement.

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000021

CX4045-010

FTC-0000327

**11.11 Notices.** All notices required by this Agreement shall be: (i) in writing, (ii) addressed to the parties as indicated below unless otherwise notified in writing of a change in the address to be noticed, and (iii) deemed to have been delivered either when personally delivered, sent by overnight courier, or three (3) business days after sent by postage prepaid, certified, return receipt requested mail. The addresses of the parties to be noticed are as follows:

| | |
|---|---|
| To CDK: | To Reynolds: |
| CDK Global, LLC | The Reynolds and Reynolds Company |
| 1950 Hassell Road | One Reynolds Way |
| Hoffman Estates, IL 60169 | Kettering, OH 45430 |
| | |
| Title: VP, Business Development | Title: VP, Data Services |
| | |
| Copy to: Legal Department | Copy to: Legal Department |

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the last date written below.

**The Reynolds and Reynolds Company**
**Dealer Computer Services, Inc.,**
**Universal Computer Systems Holding, Inc.**

By: _R. T. Brockman_

Title: _CHAIRMAN / CEO_

Date: _2/18/15_

**CDK Global, LLC**

By: _Dan E. W_

Title: _SVP Ban d_

Date: _2/18/15_

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000022

CX4045-011

FTC-0000328

**EXHIBIT DEA-1**
**MAXIMUM WIND DOWN PERIOD**
**FOR FIVE "EXCEPTION" DMI THIRD PARTY CLIENTS**

| DMI Third Party Client | Number of R&R Dealers (approximate) | Current Contract Term End Date and Agreed Wind Down End Date |
|---|---|---|
| A | 500 | June 27, 2016 |
| B | 500 | July 8, 2016 |
| C | 200 | August 10, 2016 |
| D | 300 | December 13, 2016 |
| E | 200 | January 9, 2017 |

CONFIDENTIAL-Submitted in Lieu of Compulsory Process

REYREY0000023

CX4045-012

FTC-0000329

**EXHIBIT DEA-2**
**DMI THIRD PARTY CLIENT AND DEALER INFORMATION**
**FOR INTERIM SOLUTION**

1.  **Vendor or OEM Legal Name (and DBA Name if different)**

2.  **Primary and Secondary Points of Contact**

3.  Product Name(s) as would be reasonably recognized in the market by dealers

4.  For each Vendor, the following information about the Reynolds Dealers being supported:

    a.   Dealer Legal Name / Name of Dealer Group / Holding Company
    b.   **Dealer DBA Name**
    c.   Dealer Address (including city, state, and zip code)
    d.   Dealer Phone Number
    e.   Dealer Contact Name(s) and Title(s) at dealership
    f.   **DMS System Number**
    g.   DMS Store Number (i.e. Store03)
    h.   DMS Branch Number (i.e. Sales02)
    i.   **DMS User Login being used by CDK**
    j.   DMS Report / Query Name(s) being run by CDK

5.  Name(s) of any third party to whom any DMS data is being passed (if any data is being moved outside of DMI Third Party Clients)

6.  Specify in detail the data access currently being provided by CDK to the DMI Third Party Client (i.e. interface(s), accessed ERA screen(s), processes, technology, third party utilities or tools, transmission protocols, terminal emulation software methodology, etc.)

7.  Data Interfaces used and data elements for each data interface

8.  Frequency of the data provided (i.e. once per night, every 90 minutes, etc.)

9.  Any deadlines for data delivery to DMI Third Party Client (e.g. must be there by 3am, etc)

10. Format of the data (e.g. comma/pipe delimited, XML, etc.)

11. Additional details regarding the method of CDK's existing access (e.g. scripts, applications and usernames utilized, software on the dealership PC's, LAN, etc.) as may be reasonably necessary to support such access for the interim period

CONFIDENTIAL-Submitted in Lieu of Compulsory Process                    REYREY0000024

CX4045-013

**FTC-0000330**

**From:** "Thornhill, Edward W" <edward_thornhill@reyrey.com>
**Subject:** Revised One-Pager - CDK

**From:** Thornhill, Edward W
**Sent:** Thursday, February 26, 2015 4:42 PM
**To:** Schaefer, Robert G; Martin, Jon C
**CC:** Thornhill, Edward W
**Subject:** Revised One-Pager - CDK
**Attachments:** CDK - Reynolds Upcoming Communications 150224.docx

Bob,

Attached is a revised copy of the One-Pager for your review.   Is this on the right track?

Thanks,

**Ed Thornhill  - OHA2 03-30  - 58799**

FTC-0000423

## CDK – Reynolds Communications

| Communication | Channel | Responsible | Timing | Notes |
|---|---|---|---|---|
| **Sales**<br><br>**Participants:**<br>**Reynolds and CDK** | Reynolds:<br>Sales Exchange Article;<br>Breaking News Article<br><br>CDK: TBD | **Reynolds:**<br>Marketing<br><br>**CDK:**<br>Marketing | Shortly after signing | Scenario: Reynolds dealer asks their Reynolds or CDK Sales person about a communications they received from their 3rd party vendor regarding a transition to the Reynolds RCI program.<br>Response:<br>• DMI business decision to wind down the Reynolds DMS data exchange services<br>• Processes are in place to minimize disruptions to the dealer business<br>• CDK and Reynolds agree on the benefits of the dealer's DMS vendor providing data<br>• Direct the dealer to contact their 3rd party vendor<br>• If the Reynolds dealership has questions regarding the RCI program, the dealer will be directed to contact the RCI Contact Line: 937-485-0402 |
| **Reynolds Technical Support**<br>**Reynolds Solution Specialists**<br>**Reynolds Consulting**<br>**(Customer Facing)**<br><br>**Participant:**<br>**Reynolds** | Reynolds:<br>Email, Follow up<br>Exchange Article<br><br>CDK: N/A | Reynolds:<br>Marketing<br><br>CDK:  N/A | Shortly after signing | Scenario:  Reynolds dealer asks their Reynolds Support person about a communications they received from their 3rd party vendor regarding a transition to the Reynolds RCI program.<br>Response:<br>• Dealer will be directed to contact the RCI Contact Line: 937-485-0402<br><br>Scenario: Reynolds Field Sales / Consulting Services person is asked about a communications they received about a transition to the Reynolds RCI program.<br>Response:<br>• DMI business decision to wind down the Reynolds DMS data exchange services |

CX4176-002

**FTC-0000424**

| | | | | |
|---|---|---|---|---|
| • Processes are in place to minimize disruptions to the dealer business<br>• CDK and Reynolds agree on the benefits of the dealer's DMS vendor providing data<br>• Direct the dealer to contact their 3rd party vendor<br>• If the Reynolds dealership has questions regarding the RCI program, the dealer will be directed to contact the RCI Contact Line: 937-485-0402 | | | | |
| **CDK Technical Support**<br>**CDK Field Support**<br>**CDK Consulting**<br><br>***Participants:***<br>***CDK*** | **Reynolds:** N/A<br><br><br><br>**CDK:** TBD | **Reynolds:** N/A<br><br><br><br>**CDK:** Marketing | Shortly after signing | **Scenario:** Dealer asks their CDK Support person about a communications they received from their 3rd party vendor regarding a transition to the Reynolds RCI program<br>**Response:**<br>• Dealer will be directed to contact the RCI Contact Line: 937-485-0402<br><br>**Scenario:** CDK Field Sales / Consulting Services person is asked about a communications they received regarding a transition to the Reynolds RCI program.<br>**Responses:**<br>• DMI business decision to wind down the Reynolds DMS data exchange services<br>• Processes are in place to minimize disruptions to the dealer business<br>• CDK and Reynolds agree on the benefits of the dealer's DMS vendor providing data<br>• DMI will continue to provide data cleansing, standardization, aggregation services<br>• Direct the dealer to contact their 3rd party vendor (unless it's a CDK owned entity)<br>• If the Reynolds dealership has questions regarding the RCI program, direct the dealer to contact the RCI Contact Line: 937-485-0402 |
| **Market Response** | Media Outlets | **Reynolds:** Executive Mgmt Marketing | As needed | **Scenario:** Media outlets find out about the CDK – Reynolds Agreement. |

CX4176-003

FTC-0000425

| | | | | |
|---|---|---|---|---|
| **Participants:**<br>**CDK and Reynolds** | Media Outlets | **Reynolds:**<br>Executive Mgmt<br>Marketing<br><br>**CDK:**<br>Executive Mgmt<br>Marketing | As needed | **Scenario:** Media outlets find out about the CDK – Reynolds Agreement.<br><br>**Response:**<br>• Ensure CDK and Reynolds market message align<br>• Access to DMS by dealer's DMS provider only |
| **CDK Client Announcement Letter**<br><br>**(CDK To Draft Letter)**<br><br>**Participants:**<br>**CDK and Reynolds** | Reynolds: Review /<br>Approve<br><br>**CDK:**<br>Create Client Letter | **Reynolds:**<br>Executive Mgmt<br>Marketing<br><br>**CDK:**<br>Executive Mgmt<br>Marketing | Shortly after signing | **Scenario:** Reynolds dealer asks their Reynolds or CDK Sales person about a communications they received from their 3rd party vendor regarding a transition to the Reynolds RCI program.<br>**Response:**<br>• DMI business decision to wind down the Reynolds DMS data exchange services<br>• Processes are in place to minimize disruptions to the dealer business<br>• CDK and Reynolds agree on the benefits of the dealer's DMS vendor providing data<br>• CDK Person Only -can ensure the dealer that DMI will continue to provide data cleansing, standardization, aggregation services<br>• Direct 3rd party vendor to the RCI Contact Line: 937-485-0402<br>• FAQs |
| **CDK OEM Announcement Letter**<br><br>**Participants:**<br>**CDK and Reynolds** | **Reynolds:** Review /<br>Approve<br><br>**CDK:**<br>OEM Letter | Reynolds:<br>Executive Mgmt<br>Marketing<br>OEM Executives<br><br>CDK:<br>Executive Mgmt<br>Marketing<br>OEM Executives | Shortly after signing | **Scenario:** OEM has questions for their Reynolds or CDK OEM Executives about the transition from DMI polling to Reynolds providing the data feed<br>**Response:**<br>• DMI business decision to wind down the Reynolds DMS data exchange services<br>• Processes are in place to minimize disruptions to the OEM data feed<br>• CDK and Reynolds agree on the benefits of the dealer's DMS vendor providing data<br>• OEM vendor questions regarding the CDK decision should be directed to DMI<br>• FAQs |
| **New Clients Who Contact CDK** | Reynolds: N/A | **Reynolds:**<br>RCI Contact Line | Shortly after signing | **Scenario:** New 3rd party vendor contacts CDK<br>**Response:**<br>• DMI business decision to wind down the Reynolds DMS data exchange services |

CX4176-004

**FTC-0000426**

| | | | | |
|---|---|---|---|---|
| **Participants:**<br>**CDK and Reynolds** | **Reynolds:** N/A<br><br><br>**CDK:**<br>Direct 3rd Party Client to contact RCI Contact Line | **Reynolds:**<br>RCI Contact Line<br><br>**CDK:** TBD | Shortly after signing | **Scenario:** New 3rd party vendor contacts CDK<br>**Response:**<br>• DMI business decision to wind down the Reynolds DMS data exchange services<br>• Processes are in place to minimize disruptions to the dealer business<br>• DMI will continue to provide data cleansing, standardization, aggregation services<br>• CDK and Reynolds agree on the benefits of the dealer's DMS vendor providing data<br>• Direct 3rd party vendors to the RCI Contact Line: 937-485-0402 |
| **RCI Updates & 3PA Updates**<br><br><br><br>**Participants:**<br>**CDK and Reynolds** | **Reynolds:**<br>Sales Exchange articles<br><br><br>**CDK:** TBD | **Reynolds:**<br>Marketing<br><br><br>**CDK:**<br>Marketing | Ongoing once approval is OK'd (by CDK and Reynolds) to allow Reynolds to list on the RCI Certified Vendor List.<br><br>Likewise, Reynolds companies should be listed on CDK's 3PA Vendor Approved List | **Scenario:** CDK 3rd party vendors join the RCI program.<br>**Response:**<br>• Reynolds will regularly communicate to Sales new/high profile RCI certifications<br>• Update Reynolds RCI Certified Vendor List as CDK clients are RCI Pre-Certified and RCI Certified<br><br>**Scenario:** Reynolds companies achieve CDK Approved Status in the 3PA program<br>**Response:**<br>• Update CDK's 3PA list of Approved Vendors with Reynolds entities.<br>• 3PA Pre-Approved Vendors:<br>  – Naked Lime Web, Naked Lime Marketing, Reminder Trax, iMake News (Loyalty Drive, Loyalty Premier, xTream, AIM Data, Key Vault, Key Track (Auto, Service), Key Register |

CX4176-005

FTC-0000427

CDK Deal Information – February 2015

**Summary**

The Reynolds – CDK agreement executed on February 18, 2015 consists of three (3) separate agreements, known individually as the Data Exchange Agreement, Reynolds Interface Agreement, and the 3PA Agreement. It's imperative that the transition to these agreements be transparent and a non-event for each company's automotive manufacturers, other third parties, and dealers and that any communications about the changes be communicated accurately and consistently from either Reynolds or CDK. The Reynolds – CDK agreement is a five (5) year term with one (1) year renewals after that.

The Data Exchange Agreement – Wind Down

DMI provides their third party vendors (DMI Clients) with a data service that involves the polling of data from the Reynolds DMS by CDK's DMI and Integralink (collectively "DMI") for use by automotive manufacturers or other third parties (collectively "clients"). **Effective with the execution of this agreement, DMI is winding down their data polling from Reynolds DMS systems.** DMI and Reynolds will work together to minimize interruptions to the dealer's business. There are approximately 115 DMI clients.

*Major Points of the Data Exchange Agreement*

  A. DMI is no longer accessing the Reynolds DMS for data extraction
      a. This means at least 115 third party vendors will be offered the opportunity to join the RCI program to continue business relations with Reynolds dealers.
          i. With the exception of 5 clients, all the DMI client terms end in 2015
      b. DMI has 60 days from the execution of the agreement to provide Reynolds with the list DMI clients DMI is currently polling data for
          i. After 60 days, Reynolds is not obligated to continue to protect the DMI client's access to the Reynolds DMS
      c. The list of DMI clients will be protected for the remainder of their term (with DMI) or until an RCI agreement is reached and the client obtains RCI certification
      d. If an RCI agreement between the DMI client and Reynolds is not achieved (for many possible reasons), then it's business as usual for Reynolds
          i. Protection will be removed for the DMI client
  B. DMI's rollout announcement of the CDK – Reynolds agreement to their DMI clients
      a. Starting March 2, 2015
          i. Letter

Confidential. Property of Reynolds and Reynolds Company. Do not duplicate or distribute.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0675485
CX4182-001

FTC-0000428

C. Data Exchange Agreement – Communications Coverage
   a. Communications for Reynolds Sales (Acct. Mgrs, BDC)
      i. *Scenario:* Reynolds dealer asks their Reynolds Sales person about a communications they received from their 3rd party vendor regarding a transition to the Reynolds RCI program.
      ii.     *Response:*
          1. DMI business decision to wind down the Reynolds DMS data exchange services
          2. Processes are in place to minimize disruptions to the dealer business
          3. CDK and Reynolds agree on the benefits of the dealer's DMS vendor providing data
          4. Direct the dealer to contact their 3rd party vendor
          5. If the Reynolds dealership has questions regarding the RCI program, the dealer will be directed to contact the RCI Contact Line: 937-485-0402
   b. Communications for the TAC (including field support)
      i. *Scenario:* Reynolds dealer asks Reynolds Support (TAC) about a communications they received from their 3rd party vendor regarding a transition to the Reynolds RCI program
      ii.     *Response:*
          1. Dealer will be directed to contact the RCI Contact Line: 937-485-0402
   c. Communications for RSS and Consulting Services
      i. *Scenario:* Reynolds Field Sales / Consulting Services person is asked about a communications they received about a transition to the Reynolds RCI program.
      ii.     *Response:*
          1. DMI business decision to wind down the Reynolds DMS data exchange services
          2. Processes are in place to minimize disruptions to the dealer business
          3. CDK and Reynolds agree on the benefits of the dealer's DMS vendor providing data
          4. DMI will continue to provide data cleansing, standardization, aggregation services
          5. Direct the dealer to contact their 3rd party vendor (unless it's a CDK owned entity)
          6. If the Reynolds dealership has questions regarding the RCI program, direct the dealer to contact the RCI Contact Line: 937-485-0402

Confidential. Property of Reynolds and Reynolds Company. Do not duplicate or distribute.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0675486
CX4182-002

FTC-0000429

D. Several CDK products will join the RCI Program:
   a. PartsVoice
   b. MenuVantage
   c. Cobalt
   d. Lot Management
   e. One-Eighty Corp (already RCI Certified)
   f. F&I Results (formerly IntraVision - already RCI Certified)
   g. Likewise, several Reynolds and Naked Lime solutions will begin receiving data directly from CDK DMS.
      i. IMN, Web Services, XtreamService, Targeted Marketing, ReminderTrax, and the Key companies
   h. User IDs will be protected, but not considered pre-certified.
      i. Challenge: How and whether to equip sales with the information on vendors that are in this camp – unregistered URL with information on site, or have them call into RCI hotline for each instance?
E. Reynolds will form similar relationships with other DMS providers, such as Dealertrack and AutoSoft.

Key Messages

1. Reynolds has long led the way in the battle on DMS security. In doing so, other DMS providers are finally acknowledging that the safest – and correct – way to move data between parties is to have the DMS push the data.

2. CDK is finally acknowledging that they need to move forward with securing their DMS. However, we know how rough a road this is to travel. It's taken us more than seven years to get to where we finally feel like we've made it in the world of security. How long will it take CDK, and what will the customer perception be in the mean time?

Important to Note

All of the third parties that have a relationship with DMi/IntegraLink and Reynolds customers will be protected now that the deal has been signed. CDK has 30 days from the signing to provide the names of all of the third parties so we can communicate accordingly. The next, and final, security update will be released on March 9, meaning a number of users will be broken. Until we get the names of all of the third party companies, we will not know immediately whether these parties are supposed to be broken or not.

Frequently Asked Questions

Confidential. Property of Reynolds and Reynolds Company. Do not duplicate or distribute.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0675487
CX4182-003

FTC-0000430

CDK Deal Information – February 2015

Q: My dealer says he's been locked out of the system. Is this part of the security enhancement?

A.


Q. Now that my data isn't automatically pulled by a third party, what are my options?

A. You can partner with a third party that is RCI certified, or you can manually download your data and push it to the respective third parties.



Confidential. Property of Reynolds and Reynolds Company. Do not duplicate or distribute.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0675488
CX4182-004

From: Hill, Keith
Sent: Thursday, March 19, 2015 6:45 PM
To: 'Schwager, David'
CC: 'Couch, Todd A'
Subject: 6240's
Attachments: data security.docx; It is my data.docx; Over 10 years ago.docx

Dave,

Here is what I'd like the email to say. Todd – any thoughts?

Team,

In an effort to help your discussions with customers regarding data security and unattended automated access, we are sending each of you the attached examples of insights – developed during our challenger coaching sessions. In addition, you will receive certain 6240 reports for customers who may have third parties accessing their servers.

Utilize these tools to educate your customer and reframe discussions around data security. Practice the messages and isolate these third parties who ARE NOT in step with the industry.

**Keith Hill - 281-380-9574**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0577749
CX4038-001

The movement of information and information security are topics we discuss with dealers all over the country. It remains a hot topic these days. You can't go a day without reading an article about security breaches. Companies with complex IT infrastructure – such as Target and Home Depot – have lost millions because of security breaches. Given the vast amounts of NPPI that dealers house, this has to be a major concern.

- Reynolds has been the leader in recognizing the potential risks to dealers and has set the standard in ensuring compliance. Most recently, -OEMs have followed suit by agreeing with our changes and partnering with us,
- The FTC has clearly stated what is at stake
- NADA made clear statements with regard to the danger
- In excess of 200 third parties have joined the RCI program
- CDK and Reynolds have partnered together to push data securely – thus 85% of the market is now in agreement with our stance
- CDK subsidiaries, DMI and Integralink, are changing their business model – a very profitable model – away from data brokerage. They now see the risk inherent in facilitating unattended automated data extraction.

The real question is, why is this particular vendor the outlier????

That vendor needs to call Reynolds and CDK and join the rest of the industry, doing what is right for their customers.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Here is a different version -

We agree that it is your data. We also agree that as long as the customer has given you permission to share that data, you have the right to do just that.

However, when someone accesses a Reynolds server, the law states that Reynolds is now a party to that transaction. NADA issued a statement in 2013 that automated access to the DMS was a violation of federal law and needed to be eliminated.

All of the OEMs have recognized this fact and have moved to a secure method of data extraction to ensure legal compliance. Additionally, more than 85% of third party vendors have also complied with these regulations. Most recently, ADP/CDK/DMI/Integralink have come to the same conclusion and have abandoned the idea of unattended automated access to the DMS.

All of those groups I just mentioned — NADA, OEMs, ADP/CDK/DMI/Integralink and 85% of the third parties agree that unattended, automated access to customer data is no longer an acceptable way to conduct business. I think it would be a better question to ask your 3rd party why they are putting you at risk by remaining behind the curve on security.

We remain ready to work with your vendor and will act quickly to provide a secure communication path. We are encouraging you and their other customers to ask them to get in step with the rest of the industry and give us a call to get this moving.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0577751
CX4038-003

Over 10 years ago, Reynolds announced the end of life of modem access to ERA servers. At that point, we made it clear that unattended automated access to Reynolds servers would eventually go away. As we moved forward with securing your valuable data, we added secure data servers, moved from ERAlink to ERA Access. Thereafter, we added CAPCHA to our software - which is standard for all secure data access.

Most importantly, we built a secure, fast and economical way for 3rd parties and OEM's to be able to enable real-time or batch, single or bi-directional data feeds to support their business initiatives. It is called the Reynolds Certified Interface program (RCI). This program currently has well over 200 OEM's and 3rd parties participating which demonstrates that Reynolds long-term vision for securing dealers data was the right one .

As the wave of publicly reported data breaches like Target and Home Depot continued, the FTC and even NADA released statements which clearly supported our position. Last year, CDK finally announced that data security enhancements were coming that would affect the methods in which their dealers extracted and delivered data to 3rd parties.

Last month, in the best Interest of all dealers, CDK and Reynolds partnered together in support of the fact that both companies believe "pushing" data is the only secure methodology for data transmission. Now over 85% of the industry has adopted our plan.

Given the timeline, wouldn't it have made sense for this vendor to have addressed this MANY months ago? Who's security are they really worried about?

We remain ready to work with your vendor and will act quickly to provide a secure communication path. We are encouraging you and their other customers to ask them to get in step with the rest of the industry and give us a call to get this moving.

From: Barras, Tommy
Sent: Monday, November 21, 2016 8:56 PM
To: 'Schaefer, Robert'; 'Bob Brockman'
Subject: FW: SysCheck
Attachments: Vendors_11_13_16.xlsx

**Bob, Bob**

**Syscheck was built to honor the AUR exemption.   If we removed there will be over 1000 exemptions that will loss ability to run reports during business hours**

**It was agreed by all when Syscheck was built that Schaefer needed away to bypass – AUR exemption was the decision.   I look for email – was able to find this one between the Developer and Eric on how to deploy.**

**If we remove the screaming will cause us to restore.**

**We has drop 300+ exemption in the past 3 weeks – total down to 1684.   We should remain aggressive at eliminating AUR exemptions and not mess with Syscheck at this point.   We are headed down the home stretch – let's not get distracted….**

**That's my take on this subject**

**Tommy**

---

From: Edwards, Eric [mailto:eric_edwards@reyrey.com]
Sent: Monday, November 21, 2016 11:35 AM
To: 'Barras, Tommy'
Subject: FW: SysCheck

While it isn't really the main subject here, it does have wording (highlighted below) that AUR reports are exempt from Syscheck. I was thinking you may have sent it on to Bob.

Anyway, this is a year ago and, as expected, AUR applying to Syscheck was clear.

Eric

From: Tommy Barras [mailto:tommybarras@earthlink.net]
Sent: Tuesday, December 15, 2015 1:08 PM
To: 'Eric Edwards' <eric_edwards@reyrey.com>
Subject: RE: SysCheck

Instead of .8 let's set .5 for 25,500

From: Eric Edwards [mailto:eric_edwards@reyrey.com]
Sent: Tuesday, December 15, 2015 11:48 AM
To: Barras, Tommy
Subject: FW: SysCheck

This was a 3 day sampling. I'm bumping 305 and 306 from the planned 1.5 number to 1.0 and then on 25,500 taking it to .8.

It has been 2.0 up until now.

This will be done across the board, not just for Canada. You can see the number of systems below, less than 150.

Eric

From: Trapp, Timothy D [mailto:timothy_trapp@reyrey.com]
Sent: Tuesday, December 15, 2015 12:02 PM
To: Edwards, Eric <Eric_Edwards@ReyRey.com>
Subject: SysCheck

Eric,

I used the data that reports back from the SysCheck process to build this table.  Also I checked and a majority of the systems left were all installed during a time where these systems had larger hard drives so the size of the RES most likely won't help with these either.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0186574
CX4459-001

| Country | Platform | # of Systems | Total | # Reports | # AUR Exempt | Possible Fails | Busy Messages | Highest Recorded Load | # w/load > 1.0 |
|---------|----------|--------------|-------|-----------|--------------|----------------|---------------|-----------------------|----------------|
| CA | 305 | 0 | | | | | | | |
| CA | 305 | 6 | 200 | 48 | 20 | 28 | 0 | 0.46 | 0 |
| CA | 306m | 27 | 1030 | 513 | 18 | 495 | 0 | 1.16 | 2 |
| US | 305 | 13 | 337 | 76 | 4 | 72 | 4 | 4.31 | 9 |
| US | 308 | 57 | 2018 | 624 | 273 | 351 | 0 | 0.6 | 0 |
| US | 306m | 54 | 2646 | 1080 | 590 | 470 | 0 | 1.5 | 4 |

Total - Total number of recorded SysCheck calls during a 3 day

# of Reports - Subset of the Total that occurred during the hours of 8am-5pm which could be blocked

# AUR Exempt - Subset of # of Reports that were auto-exempted by AUR exemption.

Possible Failures - Subset of # of Reports that could have been stopped if the load was high enough.

Busy Messages - Number of reports blocked and users given busy message

Highest Records Load - The highest recorded load during 8-5 time frame when reports were executing.

# w/Load > 1.0 - Number of checks where load average was above 6.0 (current setting for 25.250 is 1.5)

**Tim Trapp - S0498**

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0186575
CX4459-002

Produced as Native

REYCID0186576
Vendors_11_13_16.xlsx
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

CX4459-003

FTC-0000448

| Template | LMs across past 90 days | LMs not across ERA in past 90 days | >12 months | >6 months | >3 months | <3 months | Total | Change | Oldest | Newest | Contract Expiration | CPM Number | Pending PMO Number | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AMSI | 27 | 0 | 27 | 0 | 0 | 0 | 27 | 0 | 11/26/2013 | 9/22/2015 | | | | 12/22 – Agreement to protect AMSI Uses ID's. |
| ATLANTIC-AUTOMOT VE | 3 | -5 | 2 | 1 | -1 | 0 | 3 | | 9/23/2015 | 12/11/2015 | | | | 11/3 – Agreement to exempt Atlantic Automotive Uses ID's. |
| AUTOLOOP-DNA | 146 | 1 | 132 | 7 | 5 | 2 | 146 | -1 | 7/24/2013 | 10/17/2016 | | | | 11/3 – Pilots currently on hold due to new PCR submissions from Subaru. |
| BAY-RIDGE | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 6/23/2015 | 6/23/2015 | | | | 11/3 – Agreement to exempt Bay Ridge User ID's. |
| BOBBY-RAHAL | 4 | 0 | 4 | 0 | 0 | 0 | 4 | 0 | 12/12/2013 | 4/1/2015 | | | | 11/3 – Agreement to exempt Rahal User ID's. |
| CASEY | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 11/25/2013 | 11/10/2013 | | | | 11/3 – Agreement to exempt Casey Automotive Uses ID's. |
| CDK-DIGITAL-ADS-SPARKE | 101 | 0 | 61 | 20 | 6 | 6 | 101 | -4 | 4/23/2015 | 11/1/2015 | 1/9/2017 | | | |
| CDK-DIGITAL-MARKETING | 185 | 1 | 89 | 64 | 17 | 17 | 187 | -2 | 9/8/2014 | 11/2/2016 | 12/19/2016 | 343972 / 344758 / 344759 / 345012 / 346059 / 349550 / 345564 / 346827 / | | 10/27 – Extending to 12/15 to allow for amendment to be reviewed. |
| CDK-REXHALL | 7 | 0 | 3 | 4 | 0 | 0 | 7 | -1 | 2/24/2015 | 5/12/2016 | 2/1/2017 | 139192 / 135580 / 311869 / 348104 / 154105 / 175438 / 154100 / 175443 / 154105 / 175411 / 118176 / 175472 / | 379474 | 10/27 – Extending to 2/1/17 to allow for project time. |
| CDK-ROS-MARKETING | 17 | 1 | 7 | 15 | 0 | 2 | 15 | -2 | 2/24/2015 | 10/20/2016 | 2/1/2017 | 125973 / 120155 / | | 10/27 – Extending to 2/1/17 to allow for project time. |
| CDK-HYUNDAI-CAN | 31 | 0 | 3 | 10 | 5 | 4 | 33 | -1 | 2/24/2015 | 11/7/2016 | 2/1/2017 | 125036 | 359521 | 10/23 – Extending to 2/1/17 to allow for project time. |
| CDK-HANDLE-MARKETING | 82 | 1 | 37 | 17 | 12 | 37 | 83 | -18 | 7/28/2014 | 11/4/2016 | 12/15/2016 | 378814 / 132944 / 339915 / 133947 / 370916 / 136644 / 349917 / 136045 / 349918 / 136065 / 372501 / | | |
| CDK-KIA-CAN | 27 | 0 | 24 | 2 | 1 | 0 | 27 | 0 | 2/24/2015 | 8/28/2016 | 1/1/2017 | 339967 / 132417 / 132438 / 128494 / 132436 / 128096 / | 371309 | 11/3 – Extended to 2/1/2017 to allow for project time. |
| CDK-MITSUBISHI | 65 | 0 | 56 | 3 | 6 | 4 | 65 | -7 | 2/24/2014 | 10/25/2016 | 2/1/2017 | 134834 | 358470 | 11/3 – Extending to 2/1/17 to allow for project time. |
| CDK-PEARL-TECH | 56 | 0 | 7 | 32 | 10 | 7 | 56 | -8 | 2/24/2014 | 10/11/2015 | | | | 11/3 – Exemptions are for VAN3 and VehicleXchange. Templates requested for those two new projects based on signed CDK Risk Assessment just executed on 11/1/16 by EDL. Will migrate to 'new' templates soon and then will request removal CDK-PEARL-TECH. |
| CDK-SUMMIT | 132 | 31 | 93 | 24 | 6 | 12 | 135 | -1 | 2/24/2014 | 11/9/2016 | 1/1/2017 | 128641 | 338807 | 10/27 – Batch Parts Invoice PMO 338807 is "Pending – PMO Design". Extending to 2/1/17 to allow for project time for Batch Parts Invoice fixes. |
| DYNAMIC-REPORTING | 5 | 0 | 0 | 4 | 4 | 0 | 5 | 0 | 4/1/2015 | 7/22/2016 | | | | 11/3 – PMO's 1186344 / 1187078 / 1189281 / 1143917 / 1145063 all interrelated to the export functionality of an IDM report the customer needs. We have yet to satisfy the output needs of this report. This needs escalated. |
| FLOW | 5 | 0 | 5 | 0 | 0 | 0 | 5 | 0 | 8/5/2013 | 9/4/2015 | | | | |
| GABRE | 206 | 2 | 171 | 32 | 7 | 0 | 210 | 0 | 11/29/2013 | 8/29/2016 | | | | 11/3 – Analysis completed and sent to OSV Management to approve template proposal. Once approved, will get with Development to implement changes. |
| QUICKTRAQ | 4 | 2 | -0 | 0 | 6 | 0 | 4 | 0 | 6/28/2015 | 6/28/2016 | | | | |
| RMB | 65 | 0 | 44 | 22 | 5 | 0 | 71 | 0 | 10/11/2013 | 6/30/2016 | | | | |
| JEFF-WYLER | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 10/20/2014 | 10/20/2014 | | | | 11/3 – Agreement to protect Jeff Wyler User ID's. |
| JSF | 2 | 1 | 1 | 0 | 0 | 0 | 2 | 0 | 3/17/2014 | 2/24/2015 | | | | 11/3 – Agreement to protect JSF User ID's. |
| MCKNIES-IMPORTS | 11 | 0 | 6 | 5 | 0 | 0 | 11 | 0 | 11/26/2013 | 4/27/2015 | | | | 11/3 – Agreement to protect Mcknies Imports as lead Dynamic Reporting corrections are completed. |
| MOSS-BROTHERS | 2 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 9/4/2014 | 9/4/2014 | | | | 11/3 – Agreement to protect Moss Brothers Uses ID's. |
| OPENROAD-TOYOTA | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 5/21/2013 | 9/10/2013 | | | | 11/3 – Agreement to protect OpenRoad Uses ID's. |
| PAG | 49 | 1 | 29 | 16 | 2 | 2 | 48 | -1 | 6/3/2014 | 9/22/2016 | | | | |
| ROTHROCK-MOTORS | 3 | 0 | 3 | 0 | 0 | 0 | 3 | 0 | 12/2/2014 | 12/2/2014 | | | | 11/3 – Agreement to protect Rothrock user ID. |
| RUDY-LUTHER | 46 | 0 | 46 | 0 | 0 | 0 | 46 | 0 | 12/12/2013 | 11/2/2015 | | | | 11/3 – Agreement to protect Rudy Luther User ID's. |
| SCHAUMBURG | 3 | 0 | 3 | 0 | 0 | 0 | 3 | 0 | 8/26/2016 | 8/26/2014 | | | | 11/3 – Agreement to protect Schaumburg User ID. |
| SET | 98 | 0 | 77 | 19 | 4 | 2 | 55 | 0 | 7/22/2013 | 11/8/2016 | 1/18/2017 | 128544 | 362801 / 358369 | 10/27 – Batch Parts Invoice PMO 358369 is "Pending – PMO Design". Extending to 1/18/17 to allow for project time for Batch Parts Invoice fixes. |
| SMARTCO-PAYSEY(SVS) | 167 | 1 | 148 | 3 | 4 | 3 | 165 | 1 | 5/6/2013 | 11/1/2016 | | | | 11/3 – Pilots currently on hold due to new PCR submissions from Subaru. |
| STONEEAGLE | 113 | 0 | 105 | 3 | 1 | 2 | 111 | 0 | 4/8/2013 | 5/3/2016 | | 95916 / 123405 / 123406 / 123408 / 123411 / 123413 / | | 11/3 – PMR's 1080216 / 1069956 in review with executive management. |
| SUBARU | 49 | 0 | 41 | 2 | 2 | 3 | 46 | 0 | 8/22/2013 | 10/17/2016 | | 123413 | None | 11/3 – Pilots currently on hold due to new PCR submissions from Subaru. |
| SUNSET-AUTOMOTIVE | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 12/12/2013 | 12/12/2013 | | | | 11/3 – Agreement to protect Sunset Auto User ID. |
| UPTIME | 5 | 0 | 4 | 0 | 1 | 0 | 5 | 0 | 7/29/2014 | 7/9/2015 | | | | 11/3 – Agreement to protect Uptime User ID's. |
| UNIVERSAL-CITY-NISSAN | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1/24/2014 | 1/24/2014 | | | | 11/3 – Agreement to protect Universal User ID. |
| WILSON-TOYOTA | 3 | 0 | 3 | 0 | 0 | 0 | 3 | 0 | 3/26/2014 | 2/24/2015 | | | | 11/3 – Agreement to protect Wilson Toyota User ID. |
| Totals | 2,051 | 21 | 1,568 | 355 | 103 | 106 | 2,032 | -49 | 11/26/2013 | 11/9/2016 | | | | |

CX4459-004

FTC-0000449

| WeekEnding | >12 months | >6 months | >3 months | <3 months | Total | Change | UIDs access ERA in past 30 days | UIDs not access ERA in past 30 days |
|---|---|---|---|---|---|---|---|---|
| Totals - Week end Nov 13, 2016 | 1,144 | 317 | 111 | 112 | 1,684 | -44 | 1,661 | 23 |
| Totals - Week end Nov 06, 2016 | 1,151 | 333 | 109 | 135 | 1,728 | -8 | 1,721 | 7 |
| Totals - Week end Oct 30, 2016 | 1,266 | 420 | 111 | 140 | 1,937 | -232 | 1,913 | 24 |
| Totals - Week end Oct 23, 2016 | 1,355 | 455 | 164 | 195 | 2,169 | -129 | 2,127 | 42 |
| Totals - Week end Oct 16, 2016 | 1,432 | 468 | 221 | 177 | 2,298 | -78 | 2,250 | 48 |
| Totals - Week end Oct 09, 2016 | 1,471 | 466 | 256 | 203 | 2,396 | -30 | 2,365 | 31 |
| Totals - Week end Oct 02, 2016 | 1,474 | 451 | 286 | 247 | 2,458 | -249 | 2,435 | 23 |
| Totals - Week end Sep 25, 2016 | 1,555 | 480 | 333 | 340 | 2,708 | -141 | 2,673 | 35 |
| Totals - Week end Sep 18, 2016 | 1,584 | 450 | 397 | 420 | 2,851 | 148 | 2,818 | 33 |
| Totals - Week end Sep 11, 2016 | 1,574 | 453 | 398 | 278 | 2,703 | -219 | 2,665 | 38 |

CX4459-005

FTC-0000450

CX4459-006

| System Number | System Name | Country | Exemption Date | User ID | User Name | Added Date | Template | Last Login |
|---|---|---|---|---|---|---|---|---|

CX4459-007

FTC-0000452

| System Number | System Name | Country | Exemption Date | User Id | User Name | Added Date | Formsite | Last Login |
|---|---|---|---|---|---|---|---|---|
| 53863 | Gates Chevrolet Corporation | U | | DAS5015 | DIGITAL AIR STRIKE | 11/6/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 57247 | Durham Chrysler Dodge Jeep Ram Ltd | C | | DAS6752 | DIGITAL AIR STRIKE | 10/29/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70210 | Glewed 1, Inc | U | | DAS9534 | DIGITAL AIR STRIKE | 11/3/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70578 | Perkins Motor Company, Inc | U | | DAS4385 | DIGITALAIRSTRIKE | 10/27/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70860 | RR Reop, Inc | U | | DAS9051 | DIGITAL AIRSTRIKE | 10/27/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70639 | Northside Imports, LLC | U | | DAS2016 | DIGITAL AIRSTRIKE | 10/26/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 53860 | Direct Automotive Management, Inc | U | | DAS1234 | DIGITAL AIR STRIKE | 10/22/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 58700 | Ware Chevrolet Company Inc | U | | DAS9875 | DIGITAL AIRSTRIKE | 10/20/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 53020 | MORRIS MOORE CHEV BUICK INC | U | | DAS1665 | DIGITAL AIR STRIKE | 10/15/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61005 | St Johnsbury Automobile Company, LLC | U | | DAS2016 | DIGITAL AIR STRIKE | 10/11/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70032 | Palm Chev Of Gainesville LLC | U | | DAS0005 | DIGITAL AIR STRIKE | 10/1/2016 | CDK-DIGITAL-AIR-STRIKE | 11/8/2016 |
| 60253 | Wiseman Enterprises Inc | U | | DAS1234 | DIGITAL AIRSTRIKE | 9/1/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61850 | Barton Automotive Inc | U | | DAS1234 | CDK GLOBAL | 8/31/2016 | CDK GLOBAL | 11/12/2016 |
| 61883 | Coleman Cadillac Company | U | | DAS12600 | DIGITAL AIRSTRIKE | 9/1/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70500 | ANTWERPEN MOTORCARS LTD | U | | DAS0301 | DIGITAL AIRSTRIKE | 8/25/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70120 | Rohrich Auto Holdings Inc | U | | DAS9525 | CDK-DIGITAL AIR STRIKE | 8/18/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61398 | Rudisermen Auto Mall Inc | U | | DAS02010 | ANTHONY GULLO | 8/10/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 58413 | Lawrence Hall Chevrolet Inc | U | | DAS12309 | DIGITAL AIR STRIKE | 8/8/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 58492 | Markley Motors, Inc | U | | DAS1234 | DIGITAL AIRSTRIKE | 8/8/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61024 | HAWAII NISSAN INC | U | | DAS0515 | DIGITAL AIRSTRIKE | 7/31/2015 | CDK-DIGITAL-AIR-STRIKE | 11/10/2016 |
| 70974 | SPARK OAKS CHRYSLER JEEP INC | U | | DAS5252 | CDK GLOBAL | 7/29/2015 | CDK-DIGITAL-AIR-STRIKE | 11/10/2016 |
| 56974 | BEST CHEVROLET INC | U | | DAS9725 | DAS CARY REP MGT | 7/24/2015 | CDK-DIGITAL-AIR-STRIKE | 11/10/2016 |
| 65798 | Kaloel Chevrolet Inc | U | | DAS6752 | DIGITAL AIR STRIKE | 7/22/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70120 | Rohrich Auto Holdings Inc | U | | DAS1234 | INTEGRATION DARISTX | 7/17/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70080 | Radlou Imports Inc | U | | DAS14700 | DIGITAL AIRSTRIKE | 7/17/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70224 | Spicer Management Inc | U | | DASMVINTEGRA | DIGITAL AS ARV | 7/17/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61394 | Circle Motors, Inc | U | | DAS1341 | DIGITAL AIRSTRIKE | 7/15/2015 | CDK-DIGITAL-AIR-STRIKE | 11/18/2016 |
| 61236 | Pratztown Auto Sales Inc | U | | DAS2016 | DAS | 7/14/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 57874 | Byron Automotive, LLC | U | | DAS2015 | DIGITAL AIRSTRIKE | 7/10/2015 | CDK-DIGITAL-AIR-STRIKE | 11/11/2016 |
| 50570 | Al Piemonte Nissan Inc | U | | DASDIGITAL | DIGITAL AIR STRIKE | 7/9/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61338 | Penfield Auto Group, Inc | U | | DAS2016 | DAS TOYOTA | 7/7/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 58021 | Dachnowicz Automotive Inc | U | | DASSTRIKE | DIGITAL AIR STRIKE | 6/29/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 62769 | TFV Motors Inc | U | | DAS2016 | DIGITAL AIR STRIKE | 6/28/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70653 | Lochner Nissan, LLC | U | | DAS8922 | DIGITAL AIR STRIKE | 6/25/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 57912 | JACK SHERMAN INC | U | | DAS2015 | DAVID JOHNSON | 6/17/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61883 | Coleman Cadillac Company | U | | DAS0015 | DIGITAL AIRSTRIKE | 6/17/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70080 | PHIL SMITH MANAGEMENT INC | U | | DAS1075 | DIGITAL AIR STRIKE | 6/15/2015 | CDK-DIGITAL-AIR-STRIKE | 11/11/2016 |
| 70064 | TT OF TAMARAC, INC | U | | DAS2016 | FT KULL HYUNDAI | 6/9/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 59865 | TEAM NAHAL OF DAYTON INC | U | | DAS1695 | DIGITAL AIRSTRIKE | 6/8/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70000 | PHIL SMITH MANAGEMENT INC | U | | DAS2016 | DIGITAL AIR STRIKE | 6/8/2015 | CDK-DIGITAL-AIR-STRIKE | 11/11/2016 |
| 66634 | INCOME MOTIVCE FORD INC | U | | DAS | DIGITAL AIR STRIKE | 6/3/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 59006 | Van Syckle Inc | U | | DASCXXDIGITAL | CDK GLOBAL | 5/28/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61560 | NuCar Connection, Inc | U | | DASMAZDA | DIGITAL AIR STRIKE | 5/21/2015 | CDK-DIGITAL-AIR-STRIKE | 11/18/2016 |
| 57982 | SUPERIOR IMPORTS INC | U | | DASMVINTEGRA | DIGITAL AIR STRIKE | 5/21/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 59158 | Landmark Dodge Chrysler Jeep, LLC | U | | DASMC | DIGITAL AIR STRIKE | 5/21/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61058 | GREENE MOTORS INC | U | | DAS | ANTHONY MCKINLEY | 5/20/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 57836 | Orland Park Import Motor Sales Inc | U | | DAS2016 | SKG AIRSTRIKE | 5/19/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 58737 | Charles Daher's Commonwealth Motors | U | | DAS1234 | DIGITAL AIR STRIKE | 5/18/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61089 | Gordon Chevrolet, Inc | U | | DAS2016 | DIGITAL AIR STRIKE | 5/18/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 58678 | Blaise Alexander Chevrolet, Buick, Inc | U | | DASTOYOTA | DAS TOYOTA | 5/15/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61382 | Hardeybrandt Import Auto, Inc | U | | DAS1234 | MACKENZIE INTEGRA | 5/15/2016 | CDK-DIGITAL-AIR-STRIKE | 11/11/2016 |
| 58678 | Melbourne Auto Imports LLC | U | | DAS040 | INTEGRALHK/DIG AIR | 5/14/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70637 | Keffer, Inc | U | | DASGFF | INTEGRALINK | 5/11/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70609 | Fox Motor Group LLC | U | | DAS0101 | DIGITAL AIR STRIKE | 5/11/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 54360 | JIM ROBINSON INC | U | | DAS1234 | DIGITAL AIRSTRIKE | 5/9/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 60954 | CADILLAC OF MAHWAH LLC | U | | DAS2015 | DIGITAL AIR STRIKE | 5/6/2016 | CDK-DIGITAL-AIR-STRIKE | 11/6/2016 |
| 70620 | Bloomhead Auto Mall Ltd | U | | DAS112 | DIGITAL AIRSTRIKE | 5/6/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61238 | Archer Volkswagen, Inc | U | | DASTIREES | DIGITAL AIR STRIKE | 5/1/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 55311 | MCGEE MOTORS LTD | C | | DASAIRSTRIKE | DIGITAL AIR STRIKE | 4/29/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 59615 | MONTA RANCH INC | U | | DAS | DIGITAL AIR STRIKE | 4/28/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 58490 | John Bear Buick Chevrolet GMC Cadillac Inc | C | | DASAIRSTRIKE | DASAIRSTRIKE | 4/27/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 58811 | DISCOUNT MOTORS | U | | DAS0205 | DIGITAL DEALER | 4/26/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 58920 | Pearsons Enterprises, Inc | U | | DAS0202 | TOYOTA DIGITAL AIR | 4/25/2016 | CDK-DIGITAL-AIR-STRIKE | 11/10/2016 |
| 58496 | John Bear Buick Chevrolet GMC Cadillac Ltd | C | | DASSURVEY | DIGITAL AIR STRIKE | 4/24/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 54924 | Del Toyota Inc | U | | DASONGAIR | DIGITAL AIRSTRIKE | 4/24/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 59441 | Universal City Nissan | U | | DASWECO | DIGITAL MOTORWORKS | 4/24/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 58496 | John Bear Buick Chevrolet GMC Cadillac Ltd | C | | DASSURVEY1 | DIGITAL AIR STRIKE | 4/23/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61176 | Futrallo Chevrolet Buick, Inc | U | | DAS014 | DIGITAL AIR INTEGRA | 4/21/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 57211 | STARK AUTO SALES INC | U | | DAS6388 | INTEGRA LINE | 4/21/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61290 | Brown Automotive Group LTD | U | | DASBROWNS | DIGITAL AIRSTRIKE | 4/21/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61000 | Solano Lincoln Mercury Inc | U | | DASMVINS | DIGITAL MOTORWORKS | 4/21/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61246 | L B TOYOTA OF BECKLEY | U | | DASBECKLEY | DASBECKLEY | 4/21/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61307 | James Wood Motors Inc | U | | DAS | DAS REPUTATION MGMT | 4/21/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 56000 | Hiland Auto Sales Inc | U | | DAS2016 | DAS | 4/20/2015 | CDK-DIGITAL-AIR-STRIKE | 11/11/2016 |
| 61329 | Gilbert Tillery Co | U | | DAS1234 | CDK GLOBAL DAS | 4/20/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61647 | Alfateel Motors, Inc | U | | DASTINGAS | DAS STRONG-COM | 4/16/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 60976 | ICR, Inc | U | | DAS27247 | DIGITAL AIRSTRIKE | 4/16/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 58948 | JD Acquisitions, Inc | U | | DAS6388 | DIGITAL AIR STRIKE | 4/16/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70013 | Fred Raulis III Inc | U | | DASEMSION | CARRAK | 4/15/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 60964 | ABC Automotive Investments, Inc | U | | DAS0801 | DIGITAL AIRSTRIKE | 4/15/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 60987 | Hobson Lake Ford, Inc | U | | DAS1234 | DIGITAL AIR STRIKE | 4/15/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 58183 | Hawthorne Enterprises, Inc | U | | DAS2016 | DAS | 3/24/2015 | CDK-DIGITAL-AIR-STRIKE | 11/13/2016 |
| 58098 | Hill Folly Dodge Inc | U | | DAS2016 | DIGITAL AIRSTRIKE | 3/18/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61498 | Burnsville Automotive Inc | U | | DAS2016 | DIGITAL AIR STRIKE | 3/18/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 61880 | Everett Buick GMC, LLC | U | | DAS2016 | DIGITAL AIRSTRIKE | 3/16/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 58921 | DISCOUNT MOTORS | U | | DAS2014 | DIGITAL MARKETING | 3/13/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 58956 | H&S Hyundai INC | U | | DAS2016 | INTEGRA LINE | 3/8/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 60932 | Black Automotive Group, Inc | U | | DAS2016 | DIGITAL AIRSTRIKE | 3/6/2015 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 70517 | TT of Daytona Beach, LLC | U | | DAS1892 | DIGITAL AIRSTRIKE | 3/2/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 60985 | SAI AUTOMOTIVE MANAGEMENT LLC | U | | DAS8389 | DIGITAL AIR STRIKE | 2/25/2015 | CDK-DIGITAL-AIR-STRIKE | 11/8/2016 |
| 70227 | Butler Motors Inc | U | | DAS10007 | DIGITAL AIR STRIKE | 2/24/2016 | CDK-DIGITAL-AIR-STRIKE | 11/8/2016 |
| 70217 | Butler Motors Inc | U | | DASTOY | DIGITAL AIR STRIKE | 2/24/2016 | CDK-DIGITAL-AIR-STRIKE | 11/8/2016 |
| 70227 | Butler Motors Inc | U | | DAS10016 | DIGITAL AIR STRIKE | 2/24/2016 | CDK-DIGITAL-AIR-STRIKE | 11/8/2016 |

CX4459-008

FTC-0000453

| System Number | System Name | Country | Exemption Date | User Id | User Name | Added Date | Template | Last Login |
|---|---|---|---|---|---|---|---|---|
| 70127 | Butler Motors Inc | U | | DASINGH1 | DIGITAL AIR STRIKE | 2/18/2016 | CDK-DIGITAL-AIR-STRIKE | 12/8/2016 |
| 61232 | Star Buick GMC, Inc | U | | DAS1234 | DIGITAL AIR STRIKE | 2/17/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 58353 | FOX CHRYSLER DODGE JEEP INC | U | | DASDIGITAL | AIR STRIKE | 2/16/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 63036 | Lacona Chevrolet Buick, Inc | U | | DAS0487 | DIGITAL AIR STRIKE | 1/27/2016 | CDK-DIGITAL-AIR-STRIKE | 11/12/2016 |
| 60994 | CADILLAC OF MARKHAM LLC | U | | DMK1234 | TIM DUMLER | 12/31/2015 | CDK-DIGITAL-MARKETING | 12/8/2016 |
| 57886 | BENNETT CHEVROLET CADILLAC BUICK GMC LTD | C | | DMK8579R | DRAKES79R | 11/29/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 57561 | Jennings Chevrolet Inc | U | | DMK1237 | CDBALT | 12/18/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58851 | DISCOUNT MOTORS | U | | DMK1237 | CDBALT | 12/17/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61999 | Bay Ridge Automotive Company, LLC | U | | DMK0606 | CDK GLOBAL | 12/15/2015 | CDK-DIGITAL-MARKETING | 12/6/2016 |
| 58696 | Taylor Cadillac, Inc | U | | DMK2013 | COBALT | 12/14/2015 | CDK-DIGITAL-MARKETING | 11/9/2016 |
| 61345 | Nucleans Motor Cars, Inc | U | | DMK7323 | CDK | 12/9/2015 | CDK-DIGITAL-MARKETING | 12/11/2016 |
| 61737 | International Motor Cars Inc | U | | DMK6001 | CDK DIGITAL MOTORS | 11/27/2015 | CDK-DIGITAL-MARKETING | 11/18/2016 |
| 70106 | ANTWERPEN AUTOWGAS LTD | U | | DMK0060 | COBALT DIGITAL | 11/16/2015 | CDK-DIGITAL-MARKETING | 11/11/2016 |
| 61004 | Newwine Chevrolet, Inc | U | | DMK8888 | COBALT | 11/13/2015 | CDK-DIGITAL-MARKETING | 11/11/2016 |
| 61107 | F.F Barton Company, Inc | U | | DMK0105 | CDK COBALT PROGRAM | 11/11/2015 | CDK-DIGITAL-MARKETING | 11/11/2016 |
| 54859 | DGA Enterprises, Inc | U | | DMK4989 | CDK DIGITAL MARKET | 11/11/2015 | CDK-DIGITAL-MARKETING | 11/11/2016 |
| 70035 | Al Serra, Inc | U | | DMK0013 | DIGITAL MOTOR WORKS | 11/5/2015 | CDK-DIGITAL-MARKETING | 11/11/2016 |
| 53089 | Strickland Chevrolet Inc | U | | DMK1101 | CDK GLOBAL | 11/2/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 59338 | Prenevoste Imports, LLC | U | | DMK2155 | CDK | 11/1/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 59787 | Sansarics Buick GMC, Inc | U | | DMK1111 | CDK | 10/31/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70571 | Wilcox Automotive LLC | U | | DMK1716 | CDK Data Services | 10/29/2016 | CDK-DIGITAL-MARKETING | 11/11/2016 |
| 56562 | New Imports Inc | U | | DMK1234 | BRUCE MEYERS | 10/27/2016 | CDK-DIGITAL-MARKETING | 11/18/2016 |
| 61843 | Randy Marion Chevrolet Buick Cadillac, LLC | U | | DMK8234 | COBALT | 10/19/2016 | CDK-DIGITAL-MARKETING | 12/12/2016 |
| 61207 | James Wood Motors Inc | U | | DMK2056 | CDK | 10/14/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58118 | M M Dodge Inc | U | | DMK1231 | CDK GLOBAL | 10/14/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58002 | Hutch Chevrolet Buick GMC, Inc | U | | DMK2015 | GMSTATION | 10/13/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70224 | Spicker Management Inc | U | | DMK0092 | CDK GLOBAL INF | 10/11/2016 | CDK-DIGITAL-MARKETING | 11/11/2016 |
| 61382 | Mesa Buick GMC Cadillac, Inc | U | | DMK0063 | COBALT | 10/8/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70629 | Riverhead Auto Mall Ltd | U | | DMK2015 | DMK | 10/7/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70629 | Riverhead Auto Mall Ltd | U | | DMK0569 | DMK | 10/7/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61249 | Bergen Auto Enterprises LLC | U | | DMK1234 | INTEGRALINK | 10/1/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 60941 | Norman Gene Buick GMC Corp | U | | DMK1234 | CDK GLOBAL | 9/30/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70259 | Gwinnett Automotive Co | U | | DMK159 | CDK GLOBAL | 9/24/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 60990 | HST Chantilly, L.C | U | | DMK0405 | DMK 0405 INV 1001 H | 9/23/2016 | CDK-DIGITAL-MARKETING | 12/11/2016 |
| 61706 | Boardwalk Auto Center, Inc | U | | DMK0405 | INTERFACE OF BRENDAN | 9/23/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58672 | Stanley Chevrolet, Inc | U | | DMK0818 | COBALT | 9/20/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 57058 | McGuire Chevrolet | U | | DMK7027 | CYBOLT | 9/13/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 61638 | Sacramento Infiniti Inc | U | | DMK1234 | CDK | 9/11/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 51489 | MARIO GAGGIANO BUICK INC | U | | DMK1234 | SMART R INTEGRALINK | 9/9/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70074 | Millennium Super Store 1, LTD | U | | COBALT | COBALT VW | 9/8/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61847 | Suburban Imports of Farmington Hills, Inc | U | | DMK0014 | CDK DIGITAL MARKETING | 9/3/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 51207 | Miller Buick GMC, Inc | U | | DMK1234 | CDK DATA | 9/1/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58733 | HERRINGHAUS CHEVROLET CO, INC | U | | DMK6910 | CDK DIGITAL MARKETING | 9/1/2015 | CDK-DIGITAL-MARKETING | 11/19/2016 |
| 58603 | RAOS INC | U | | DMK1234 | VIP INTEGRALINK | 8/31/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70255 | Key Canova Motor Car Corporation | U | | KYLED | KYLE D | 8/28/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70594 | KANSAS CITY AUTOMOTIVE CO LP | U | | HGMOBALT | Cobalt | 8/25/2015 | CDK-DIGITAL-MARKETING | 12/11/2016 |
| 51646 | MONTEBELLO AUTO GROUP, LLC | U | | DMKONSTATION | GMSTATION | 8/18/2015 | CDK-DIGITAL-MARKETING | 11/26/2016 |
| 61527 | Foster Auto, Inc | U | | DMK0105 | INTEGRALINK | 6/14/2015 | CDK-DIGITAL-MARKETING | 11/18/2016 |
| 70254 | KANSAS CITY AUTOMOTIVE CO LP | U | | TVOGOBALT | Cobalt Group | 8/14/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70524 | Spitzer Management Inc | U | | GMGMRM | GM REP MANAGE ADM | 8/13/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58559 | Alexandria Motor Company | U | | DMK1234 | CDK | 8/12/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 61900 | Les Stanford Chevrolet Cadillac Inc | U | | DMK1234 | CDK DIGITAL MOTOR | 8/11/2016 | CDK-DIGITAL-MARKETING | 11/30/2016 |
| 70235 | Flowserson Automotive Co | U | | BBBCOBALT | COBALT POLLING WEB | 8/10/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61805 | Jack Winegardner Chevrolet Inc | U | | DMK1234 | INTEGRALINK | 8/9/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58976 | Bow-Foss Chevrolet Inc | C | | DMK0021 | CDK INVENTORY ID | 8/9/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 60980 | SAN LEANDRO MOTOR CORP | U | | DMK0202 | INTEGRALINK DRAFTR | 8/5/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 56036 | Malloy Woodbridge LLC | U | | DMK7913 | COBALT | 8/3/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58002 | Lawrence Hall Chevrolet Buick Inc | U | | DMK1234 | COBALT | 8/3/2016 | CDK-DIGITAL-MARKETING | 12/11/2016 |
| 61392 | MANSFIELD CHEVROLET BUICK, INC | U | | DMK0101 | CDK | 8/3/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 70068 | PHIL SMITH MANAGEMENT INC | U | | DMK1075 | COBALT | 7/28/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70206 | Coral Springs #708, Inc | U | | DMK7095 | COBALTAVIP | 7/27/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58537 | Lively Cadillac GMC Co Inc | U | | DMK1213 | CDK | 7/23/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70071 | Ed Martin East Inc | U | | DMK1321 | GM DATA | 7/27/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70254 | KANSAS CITY AUTOMOTIVE CO LP | U | | VMVCOBALT | THE COBALT GROUP | 7/17/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70254 | Spitzer Management Inc | U | | COBALTVW | COBALT VW | 7/17/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70534 | Matt Castucci Inc, Il | U | | COBALT | COBALT | 7/17/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70115 | SPRINGDELL AUTOMOTIVE INC | U | | COBALT1 | COBALT | 7/17/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 60804 | TEAMROSS INC | U | | DMKINVGMRPT | INTEGRALINK COBALT | 7/17/2015 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 70065 | Gwinnett Automotive Co | U | | HARDRIP | AUP COBALT | 7/17/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70120 | Rebich Auto Holdings Inc | U | | DMK0215 | NASSDA GMSTATION | 7/15/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61155 | Blackwell Motors, Inc | U | | DMK1234 | DONALD KNOWLES | 7/11/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 60532 | Joseph Chevrolet Company | U | | DMK1234 | CDK DIGITAL MARKETING | 7/8/2015 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 61348 | WEST BROTHERS FORD INC | U | | DMK1234 | DIGITAL | 7/8/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58650 | Kings Nissan Inc | U | | DMK1234 | CDK USER | 6/24/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61642 | Suburban Imports of Farmington Hills, Inc | U | | DMK0310 | COBALT GMSTATION | 6/24/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 57543 | Frank Porth Chevrolet Inc | U | | DMK0310 | REYNOLDS | 6/23/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 56282 | OAKES AUTOMOTIVE INC | U | | GMR2016 | COBALT | 6/23/2016 | CDK-DIGITAL-MARKETING | 11/21/2016 |
| 60673 | Holiday Chevrolet, LLC | U | | DMK3800 | GMR REP ID | 6/21/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 60572 | Holiday Chevrolet, LLC | U | | GMR13135 | DMK ORLANDO | 6/21/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61135 | National Automotive Group, Inc | U | | DMK1234 | VIP | 6/18/2015 | CDK-DIGITAL-MARKETING | 11/11/2016 |
| 60573 | Holiday Chevrolet, LLC | U | | DMK1960 | DMK ST CLOUD | 6/17/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58681 | AJ DOHANIAN CHEVROLET CADILLAC, INC | U | | DMK1982 | CDK | 6/17/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70197 | F R Imports LTD | U | | DMK0018 | CDK | 6/9/2016 | CDK-DIGITAL-MARKETING | 11/19/2016 |
| 60892 | HAWTHORNE AUTOMOBILE SALES COMPANY | U | | DMK1234 | CONSUGNAL | 6/6/2016 | CDK-DIGITAL-MARKETING | 10/26/2016 |
| 60904 | TEAMROSS INC | U | | DMK1234 | CDK Cobalt | 6/2/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 60884 | Frank Santamaria Buick GMC, Inc | U | | DMK1234 | INTEGRALINK VIP | 5/22/2015 | CDK-DIGITAL-MARKETING | 11/19/2016 |
| 70197 | Stillwater Mazoo Co | U | | DMK1911 | DMKISTULL | 5/21/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61543 | Stokes Automotive, Inc | U | | DMK1770 | VEHICLE INVENTORY | 5/14/2015 | CDK-DIGITAL-MARKETING | 11/11/2016 |
| 61395 | Fricebrostini Dodge Inc | U | | DMKVW0093 | TERESA GLOSSMAN | 5/14/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58613 | Frank Kent Cadillac Inc | U | | DMK2015 | COBALT DATA | 5/13/2015 | CDK-DIGITAL-MARKETING | 11/19/2016 |
| 58650 | Gaelyn O Sheltno Inc | U | | DMK1234 | INTEGRA-COBALT | 5/11/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61044 | Empire Hyundai | U | | DMK1234R | COBALT REP MGMT | 5/8/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 60032 | McCarty CMPO, LLC | U | | DMK2015 | GMSTATION DATA | 5/8/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |

CX4459-009

**FTC-0000454**

| System Number | System Name | Country | Exemption Date | Used Id | User Name | Added Date | Template | Last Login |
|---|---|---|---|---|---|---|---|---|
| 60902 | Keller of Independence LLC | U | | 0ANK2016 | COBALT INTEGRA | 5/2/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 58372 | REIHLE CHEVROLET INC | U | | 0MK0601 | COBALT | 4/29/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 60974 | Hometown Nissan of South Carolina, LLC | U | | 0ANK1234 | REPUTATION MANAGEMENT | 4/29/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 64589 | Snyer Automotive, Inc | U | | 0MK2015 | COBALT | 4/27/2015 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 60900 | RAY HUFFINES CHEVROLET INC | U | | 0ANK2016 | CDK | 4/26/2016 | CDK-DIGITAL-MARKETING | 11/6/2016 |
| 58363 | RMR NO 1 LLC | U | | 0MK1234 | CDK HYUNDAI | 4/26/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61896 | Carolina Nissan Inc | U | | 0MK1234 | COBALT | 4/26/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 63031 | Central Nissan Inc | U | | 0MK0601 | VW MARKETING | 4/21/2016 | CDK-DIGITAL-MARKETING | 11/11/2016 |
| 54878 | Selman Chevrolet Company | U | | 0MK0678 | CDK MARKETING | 4/20/2016 | CDK-DIGITAL-MARKETING | 13/12/2016 |
| 70515 | GAINESVILLE MOTORS INC | U | | 0MK1234 | CDK | 4/20/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 61419 | SYRO CHEV JEEP DODGE INC | U | | 0MK2016 | DAN CUNNINGHAM | 4/20/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 55585 | DArcy Buick GMC, Inc | U | | 0MK0611 | DIGITAL MTA WORKS | 4/20/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 70288 | HARBOR MOTORS CO INC | U | | 0MK1234 | CDK DIGITAL MARKET | 4/20/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61302 | Karl Chevrolet, Inc | U | | 0MK3813 | CDK PROGRAM | 4/20/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 61566 | Ed Reike Chevrolet Buick GMC Co | U | | SANI | SAMI CLARK | 4/20/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58035 | The AndrewWain Chevrolet, Inc | U | | A0K7045 | AMIC Integralink | 4/20/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61884 | Lowery Bros Chrysler Jeep Inc | U | | 0MK2016 | DIGITAL MARKETING | 4/19/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58186 | Love Motors, Inc | U | | 0MK1234 | CDK DIGITAL | 4/19/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 61763 | Verdley Car Company | U | | 0MK1234 | INTEGRELINK | 4/18/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 59006 | Goodview Chevrolet Co | U | | 0MK1234 | DARK | 4/15/2016 | CDK-DIGITAL-MARKETING | 13/12/2016 |
| 59442 | Ken Barnett Chev Olds Cad Inc | U | | 0MK2016 | CDK CARFAX | 4/15/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61064 | LUC INC | U | | 0MK6098 | AUTOALERT | 4/14/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58516 | Ron Westott ChevroletCadillac Inc | U | | 0MK1310 | CDK MARKETING | 4/14/2016 | CDK-DIGITAL-MARKETING | 13/12/2016 |
| 70357 | FRANKLIN SUSSEX AUTO MALL, INC | U | | 0MK1234 | JOE MILLER-GM | 4/13/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61565 | Classic Chevrolet Inc | U | | 0MK2016 | DIGITAL MARKETING | 4/13/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 62195 | MARTIN MOTORS OF PENNSYLVANIA INC | U | | 0MK3028 | CDK 855-864-3029 | 4/13/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58390 | Bellingham Auto Management, Inc | U | | 0MK7065 | CDKDIGITAL | 4/13/2016 | CDK-DIGITAL-MARKETING | 11/10/2016 |
| 60979 | RJR, Inc | U | | 0MK5134 | DARK | 4/12/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 54968 | Peruzzi Pontiac GMC Truck Inc | U | | 0MK1234 | CDK MARKETING | 4/12/2016 | CDK-DIGITAL-MARKETING | 11/11/2016 |
| 64071 | Accentwiller Chevrolet Co Inc | U | | 0MK3134 | DATA EXCHANGE | 4/12/2016 | CDK-DIGITAL-MARKETING | 13/12/2016 |
| 59435 | Santa Cruz Nissan | U | | 0MK2016 | CDK GLOBAL | 4/12/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61695 | Tallahassee Dodge Chrysler Jeep, LLC | U | | 0MK3087 | INTEGRALINK | 4/11/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 60960 | LESLIE MOTORS INC | U | | 0MK1721 | CDK DIGITAL MARKETG | 4/11/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 60286 | U J Chevrolet Co Inc | U | | 0MK1144 | CDK DIGITAL MKTG | 4/8/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58856 | The AndrewWain Chevrolet, Inc | U | | N035685 | N/S INTEGRALINK | 4/8/2016 | CDK-DIGITAL-MARKETING | 13/12/2016 |
| 57680 | Watson Automind, Inc | U | | 0MK1234 | DARK | 4/8/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 58307 | Central Chevrolet Company, Inc | U | | 0ARK4677 | CDK DIGITAL MARKET | 4/7/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61099 | Gordon Chevrolet, Inc | U | | 0MK0508 | COBALT | 4/7/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70115 | SPRINGHILL AUTOMOTIVE INC | U | | 0MK1234 | CDK MARKETING | 4/7/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 70277 | Gateway Chevrolet Inc | U | | 0MK0901 | CDK DITGAL MARKETIN | 4/7/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 62397 | AVERDA PARTNERS INC | U | | 0ARK0523 | DARK | 4/7/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61730 | Beaumont Motor Co | U | | 0MK1236 | CDK GLOBAL | 4/7/2016 | CDK-DIGITAL-MARKETING | 11/11/2016 |
| 70357 | MOORE CADILLAC COMPANY | U | | 0ANK1234 | 0MK1234 | 4/6/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58277 | T V S INC | U | | 0MK3422 | CDK | 4/6/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70278 | New World Auto Imports Inc | U | | 0ANK0905 | DARK | 4/5/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 58374 | Automaster Motor Company, Inc | U | | 0MK2015 | BMW MINI | 4/5/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70613 | Fred Smith III Inc | U | | 0MK1234 | EURO FUZ | 4/5/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 63213 | Key Buick Company | U | | 0MK4660 | BUICK GMC CDK | 4/5/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 62128 | Colandrea BuickGMC, Inc | U | | 0ANK1234 | MATT COBALT | 4/5/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61693 | Bill Pierre Lease Inc | U | | 0MK1028 | DOUG MABRY | 4/5/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61800 | McGuire Cadillac Inc | U | | 0MK0870 | COBALT GLOBAL | 4/4/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61374 | R J SURESKY SONS INC | U | | 0MK7737 | CDK | 4/1/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 60904 | TEAMROSS INC | U | | 0MK2016 | INTEGRALINK | 4/1/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 60907 | KING OROURKE CADILLAC INC | U | | 0MK1234 | CDK | 4/1/2016 | CDK-DIGITAL-MARKETING | 11/13/2016 |
| 61017 | Liberty GMC, Inc | U | | 0MK4467 | CDK CARFAX | 4/1/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61051 | LYNNES NISSAN CITY INC | U | | 0MK5678 | DON PAID | 4/1/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 57525 | DAVE TOWELL CADILLAC INC | U | | 0NK8182 | DMK DIGITAL | 4/1/2016 | CDK-DIGITAL-MARKETING | 13/12/2016 |
| 62297 | Putnam Automotive, Inc | U | | COBALT | COBALT | 3/30/2021 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61216 | Pottstown Auto Sales Inc | U | | 0MK2016 | VW ONSTATION | 3/23/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61192 | Triangle Auto Center Inc | U | | 0MK0701 | COBALT INVENTORY LPP | 3/22/2016 | CDK-DIGITAL-MARKETING | 13/12/2016 |
| 62166 | D-P AUTO SALES INC | U | | 0MK4870 | ALICE SMEDLEY | 3/18/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 57982 | SUPERIOR IMPORTS INC | U | | JULIAS | JULIA SIMMONS | 3/16/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 57067 | OMAGRA FORD CENTER INC | U | | MGEISER | MIKE GEISER | 2/26/2015 | CDK-DIGITAL-MARKETING | 11/9/2016 |
| 55050 | TNK MOTORS INC | U | | COBALT | COBALT | 2/26/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 52030 | Van Devere, Inc | U | | 0XLTK | KEN F COBALTINK | 2/25/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 59439 | Rowand Auto Group, Inc | U | | PATO | PAT GLEARY | 2/25/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 62122 | YMRKS Motors INC | U | | 0MK2016 | COBALT OWNER MKTR | 2/25/2015 | CDK-DIGITAL-MARKETING | 11/6/2016 |
| 58414 | COLEMAN BUICK GMC CADILLAC INC | U | | JILL | JILL LENNON | 2/25/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58715 | Simpon Cadillac Co | U | | MARKS2 | MARCUS STERNBURG | 2/25/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 59877 | Stanley Chevrolet, Inc | U | | MATTMEWS | DAVE MATTHEWS | 2/25/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58753 | ADAMS AUTOMOTIVE | U | | KYLE2 | KYLE | 2/25/2015 | CDK-DIGITAL-MARKETING | 11/10/2016 |
| 54633 | GPS Enterprises, Inc | U | | MAK32 | SURBANWAR | 2/25/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 60596 | Chapman Ford Sales, Inc | U | | 1CGNCHAP | CHAPMAN CHEVS | 2/25/2016 | CDK-DIGITAL-MARKETING | 13/12/2016 |
| 60596 | Chapman Ford Sales, Inc | U | | CHAPCHEVY16 | CHAPMAN CHEVY | 2/25/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58046 | Princeton Chevrolet, Inc | U | | COBALT | COBALT MARKETING | 2/25/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70074 | Millenilum Super Store 1, LTD | U | | COBALTVG | COBALT VW S | 2/25/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70074 | Millenilum Super Store 1, LTD | U | | COBALTZR | COBALT VS HYUNDAI | 2/25/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70074 | Millenilum Super Store 1, LTD | U | | COBALT | COBALT INC | 2/25/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 60010 | Parker Cadillac Inc | U | | RANDYP | RANDY PARSLEY JD | 2/25/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61899 | Les Stanford Chevrolet Cadillac Inc | U | | LOUISASMITH | LOUISE SMITH | 2/24/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 54266 | Oni Inc | U | | MARY | MARY H | 2/24/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61467 | Charles Clark Chevrolet Co | U | | INTBS | INTEGRA | 2/24/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61264 | HUDSON VALLEY VT INVESTMENTS INC | U | | COBALT | COBALT 1 | 2/24/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 58429 | Spach ChevroletBuickGMC, Inc | U | | COBALT | JOHN SANDER | 2/24/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61316 | Rogers Dabbs Chevrolet, Inc | U | | VOLT | VOLT 1 | 2/24/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 56152 | City Chevrolet Volkswagen VW Sales | U | | FROCCO | PREFERRED ROCCO | 2/24/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61407 | Hutchinson Automotive, Inc | U | | DANI | DANBRUM | 2/24/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 70155 | Bay Celeno Motor Car Corporation | U | | COBALTMIN | COBALT MINI WEBSITE | 2/24/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 62297 | Putnam Automotive, Inc | U | | INTEGRHYUN | INTEGRHUYN-TOYOTA | 2/24/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 61368 | Bill Hodges Automotive, Inc | U | | COBALT | COBALT | 2/24/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 56258 | Bill Marine Auto Center, Inc | U | | HARLEY | HARLEY | 2/24/2015 | CDK-DIGITAL-MARKETING | 11/9/2016 |
| 60989 | Oceandale Auto-Country Inc | U | | LCG01 | LCSK SON | 2/24/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 60989 | Oceandale Auto Country Inc | U | | LCOBALT | LEXUS COBALT | 2/24/2015 | CDK-DIGITAL-MARKETING | 11/12/2016 |

| System Number | System Name | Country | Exemption Date | User Id | User Name | Added Date | Template | Last Login |
|---|---|---|---|---|---|---|---|---|
| 59521 | Vyletel Group Inc | U | | DONNA | DONNA SEXTON | 2/24/2015 | CDK-DIGITAL-MARKETING | 11/17/2016 |
| 61022 | NICK ALEXANDER IMPORTS | U | | COBALT | COBALT WEBSITE | 1/31/2016 | CDK-DIGITAL-MARKETING | 11/11/2016 |
| 61530 | Mark Christopher Chevrolet Inc | U | | 2MSK12RA | M&R | 2/15/2016 | CDK-DIGITAL-MARKETING | 11/12/2016 |
| 60971 | LAFFERTY CHEVROLET | U | | DMSK1949 | DANNY | 2/15/2016 | CDK-DIGITAL-MARKETING | 11/11/2016 |
| 57360 | Suburban Subaru Automotive Inc | U | | 2MSK17RA | INTEGRAMARK | 1/25/2016 | CDK-DIGITAL-MARKETING | 11/11/2016 |
| 58888 | Passione Passas LLC | U | | PMSK128 | DIGITAL | 10/1/2015 | CDK-FERRARI | 11/7/2016 |
| 53679 | MARANELLO MOTORS LTD | C | | FMSK234 | MARLINK | 8/21/2015 | CDK-FERRARI | 11/7/2016 |
| 70405 | FERRARI OF CENTRAL FLORIDA INC | U | | FMSK1234 | FERRARI MASERATI | 5/31/2016 | CDK-FERRARI | 11/10/2016 |
| 59851 | Boardwalk Automotive Palo Alto, LLC | U | | SMFERRARIPARTS | SAN FERRARI PARTS | 2/24/2015 | CDK-FERRARI | 11/11/2016 |
| 58968 | Passione Passas LLC | U | | FMSK135 | DIGITAL | 1/26/2015 | CDK-FERRARI | 11/7/2016 |
| 60934 | Penske Automotive Group Inc | U | | 376FERRARI | V-ADM FERRARI MASERA | 3/13/2016 | CDK-FERRARI | 13/16/2016 |
| 60992 | Classic Auto Group Inc | U | | 38FERRARI | V-ADM FERRARI MASERA | 1/13/2016 | CDK-FERRARI | 11/10/2016 |
| 61530 | Family Toyota of Burleson | U | | 61MO102 | GST INTEGRALIST | 10/10/2016 | CDK-GS-MARKETING | 10/31/2016 |
| 61500 | Allen Automotive, Inc | U | | 85STANLEY | BOB STANLEY | 2/25/2016 | CDK-GS-MARKETING | 11/21/2016 |
| 65477 | Carl Hogan Automotive, Inc | U | | 2SPARTO3 | GST PARTS | 2/25/2016 | CDK-GS-MARKETING | 11/11/2016 |
| 60916 | Price Lebanon, L C | U | | GST1701 | GULF STATE TOYOTA | 2/25/2016 | CDK-GS-MARKETING | 8/28/2016 |
| 60972 | Reike Calvert, Inc | U | | DIGITAL | DIGITAL MOTORWORKS | 2/25/2016 | CDK-GS-MARKETING | 11/11/2016 |
| 60616 | Hardburg Chevrolet, Inc | U | | GSTPARTS | GST PARTS LOCATOR | 2/26/2016 | CDK-GS-MARKETING | 11/21/2016 |
| 70316 | Gorl Lyon, LLC | U | | TAYLOR123 | | 2/25/2016 | CDK-GS-MARKETING | 11/11/2016 |
| 70360 | John Eagle Lincoln Mercury LLP | U | | 66GST | GST SUPPORT EAGLE | 2/25/2016 | CDK-GS-MARKETING | 11/22/2016 |
| 59132 | OAKES AUTOMOTIVE INC | U | | GULF123 | GULF STATES | 2/25/2016 | CDK-GS-MARKETING | 11/21/2016 |
| 59700 | J G Autoglobal, Inc | U | | CARIBBE | CARIBE CARUTHER 1,111 | 2/25/2016 | CDK-GS-MARKETING | 11/11/2016 |
| 60597 | CLASSIC MOTORS OF TEXARKANA INC | U | | JESSEM | JESSE MICHAEL | 2/25/2016 | CDK-GS-MARKETING | 11/11/2016 |
| 60892 | CLASSIC MOTORS OF TEXARKANA INC | U | | CARLOS5 | CARLOS LOPEZ | 2/26/2016 | CDK-GS-MARKETING | 11/21/2016 |
| 63038 | DON MATORS OF WEST HOUSTON LTD | U | | SNITAB | NITA BARR | 2/25/2016 | CDK-GS-MARKETING | 11/11/2016 |
| 63019 | DON MODEL OF WEST HOUSTON LTD | U | | 1TARMY95 | DIGITAL MOTOR WORKS | 2/25/2016 | CDK-GS-MARKETING | 11/21/2016 |
| 70260 | John Eagle Lincoln Mercury LLP | U | | 8OYOTATA | GST Data EAGLE | 3/24/2016 | CDK-GS-MARKETING | 11/21/2016 |
| 60588 | Penske Automotive Group Inc | U | | 78TOYOTTA | V-ADM GST IN TOUCH | 2/04/2016 | CDK-GS-MARKETING | 13/16/2016 |
| 61201 | Yokem Motors Inc | U | | ALLENM | ALLEN NAVAGEN | 2/24/2016 | CDK-GS-MARKETING | 11/17/2016 |
| 57592 | NAUSSON PATOUT AUTOMOTIVE GROUP INC | U | | 18ANGRIDGE | LINDA SANDRIDGE | 2/24/2016 | CDK-GS-MARKETING | 9/29/2016 |
| 54926 | VanDove LLC | U | | SANDI | SANDI | 2/24/2016 | CDK-GS-MARKETING | 11/11/2016 |
| 59879 | EASTGATE FORD GS SERV &2 CO | C | | HYC3016 | SAM COLLINS | 12/8/2015 | CDK-HYUNDAI-CAN | 11/11/2016 |
| 60314 | OPENROAD AUTO GROUP LTD | C | | HYC1288 | HYUNDAI CANADA | 12/8/2015 | CDK-HYUNDAI-CAN | 11/11/2016 |
| 69914 | DRD Auto Inc | C | | HYC2015 | HYUNDAI PARTS BRIDGE | 12/8/2015 | CDK-HYUNDAI-CAN | 11/11/2016 |
| 57984 | TRAVIS COMMUNICATIONS LTD | C | | HYC2015 | HYUNDAI | 12/8/2015 | CDK-HYUNDAI-CAN | 11/10/2016 |
| 59203 | 5981805 ONTARIO INC | C | | HYC2015 | PARTS BRIDGE | 12/8/2015 | CDK-HYUNDAI-CAN | 11/11/2016 |
| 59400 | 1922005 Ontario Limited | C | | HYC2015 | AUTO PARTS BRIDGE | 12/4/2015 | CDK-HYUNDAI-CAN | 11/10/2016 |
| 61645 | 1435415 Alberta Ltd | C | | HYC2015 | CDK PARTS INVENTORY | 12/8/2015 | CDK-HYUNDAI-CAN | 11/11/2016 |
| 60154 | DRD Auto Inc | C | | HYC2016 | HYUNDAI DMS REPORT | 12/8/2015 | CDK-HYUNDAI-CAN | 11/11/2016 |
| 60905 | Wesra Canada Inc | C | | HYC2016 | DIGITAL MOTORWORKS | 11/4/2015 | CDK-HYUNDAI-CAN | 11/10/2016 |
| 59187 | Blue Dodge Chrysler 1891 Inc | C | | HYC21049 | DMI | 10/22/2015 | CDK-HYUNDAI-CAN | 11/11/2016 |
| 59679 | EASTGATE FORD GS SERV &2 CO | C | | HYC3016 | HYUNDAI CANADA | 10/12/2015 | CDK-HYUNDAI-CAN | 11/30/2016 |
| 56094 | OPENROAD AUTO GROUP LIMITED | C | | HYC2111 | HYUNDAI CANADA | 8/12/2016 | CDK-HYUNDAI-CAN | 11/10/2016 |
| 57523 | JIM FITZGUN INDUSTRIES LTD | C | | HYC61042 | CDK DATA SERVICES | 8/9/2015 | CDK-HYUNDAI-CAN | 11/10/2016 |
| 61286 | DIRECT MOTOR COMPANY LTD | C | | HYC2788 | DIGITAL MOTORWORKS | 11/10/2015 | CDK-HYUNDAI-CAN | 11/10/2016 |
| 61288 | DIRECT MOTOR COMPANY LTD | C | | HYC3038 | DMI MOTORWORKS HONC | 6/23/2015 | CDK-HYUNDAI-CAN | 11/10/2016 |
| 61129 | SHERWOOD PARK AUTO SALES LTD | C | | HYC0703 | HYUNDAI SERVICE | 6/8/2016 | CDK-HYUNDAI-CAN | 11/7/2016 |
| 70272 | FFUN ENTERPRISES INC | C | | HYC1010 | HYUNDAI CANADA | 5/17/2016 | CDK-HYUNDAI-CAN | 11/8/2016 |
| 53002 | 1342805 ONTARIO INC | C | | RYC0123 | DMI | 4/28/2016 | CDK-HYUNDAI-CAN | 11/7/2016 |
| 70712 | Canadian Premier Automotive Ltd | C | | HYC5460 | HOT DMS RO SHARING | 4/19/2015 | CDK-HYUNDAI-CAN | 11/7/2016 |
| 61645 | 1435415 Alberta Ltd | C | | HYC0578 | CDK | 4/19/2010 | CDK-HYUNDAI-CAN | 11/11/2016 |
| 59123 | TRIMAC TOYOTA LTD | C | | HYC7102 | CDK GLOBAL | 3/29/2016 | CDK-HYUNDAI-CAN | 11/7/2016 |
| 59104 | Garage Recson Toy Inc | C | | HYUNDAIFORCE | AUTO PARTS BRIDGE | 8/28/2015 | CDK-HYUNDAI-CAN | 11/11/2016 |
| 60542 | Auto Group Newmarket Inc | C | | HYCA10SSA | X-TIME HYUNDAI | 2/26/2016 | CDK-HYUNDAI-CAN | 11/8/2016 |
| 60542 | Auto Group Newmarket Inc | C | | HYCM1025 | X-TIME HYUNDAI | 2/28/2016 | CDK-HYUNDAI-CAN | 11/8/2016 |
| 58567 | PACIFIC MAINLAND HOLDINGS LTD | C | | HYHNDAIPB | HYUNDAI PARTS BRIDGE | 11/4/2016 | CDK-HYUNDAI-CAN | 11/11/2016 |
| 51081 | CHREVROLET AUTO GROUP I TD | C | | HYC2788 | HYUNDAI CANADA | 2/24/2016 | CDK-HYUNDAI-CAN | 11/11/2016 |
| 70223 | FFUN ENTERPRISES INC | C | | KIAF123 | KIA CANADA | 2/24/2015 | CDK-HYUNDAI-CAN | 11/11/2016 |
| 70272 | FFUN ENTERPRISES INC | C | | RYC2938 | DMI | 2/18/2016 | CDK-HYUNDAI-CAN | 11/8/2016 |
| 53679 | Maaco Cadillac Chevrolet Inc | C | | HYC3016 | DMI | 3/7/2016 | CDK-HYUNDAI-CAN | 11/10/2016 |
| 59689 | 1942028 Ontario Limited | C | | RYC2940 | HAC DMS DATA | 2/26/2016 | CDK-HYUNDAI-CAN | 11/10/2016 |
| 65125 | SHERWOOD PARK AUTO SALES LTD | C | | HYC3038 | RYUNDAI | 2/17/2016 | CDK-HYUNDAI-CAN | 11/11/2016 |
| 61082 | Lawlor Sierra Buick Inc | U | | JNG3123 | JNC INAMK | 12/22/2015 | CDK-J AND L-MARKETING | 11/30/2016 |
| 18059 | Union Park Auto Group Inc | U | | JNG0707 | JANDL MARKETING | 11/25/2015 | CDK-J AND L-MARKETING | 11/9/2016 |
| 70839 | Village Motors Inc | U | | JNL1706 | JNG MARKETING | 11/4/2016 | CDK-J AND L-MARKETING | 11/30/2016 |
| 60622 | Classic Auto Group Inc | U | | 63ANGL | V-AM J AND L SRARKET | 11/4/2016 | CDK-J AND L-MARKETING | 11/10/2016 |
| 61800 | Roreshbad Auto B&R LTD | U | | JNL1809 | JNL SALES | 11/3/2016 | CDK-J AND L-MARKETING | 11/11/2016 |
| 70356 | Maryland Motorcycle Investors LP | U | | RACEJMARKET | J&L MARKETING | 11/7/2016 | CDK-J AND L-MARKETING | 11/32/2016 |
| 50015 | Blue Grass Automotive, Inc | U | | JNL1705 | J&L MARKETING | 10/31/2016 | CDK-J AND L-MARKETING | 11/4/2016 |
| 60588 | Penske Automotive Group Inc | U | | 64JANDL | V-AM J AND L MARKETG | 10/31/2016 | CDK-J AND L-MARKETING | 13/8/2016 |
| 50588 | Penske Automotive Group Inc | U | | 116JANDL | V-AM J AND L MARKETG | 10/31/2016 | CDK-J AND L-MARKETING | 11/10/2016 |
| 70053 | SAAB LEXHAM 1 LLC | U | | JNL2468 | JNL | 10/21/2016 | CDK-J AND L-MARKETING | 11/10/2016 |
| 60903 | FLOYD TRAYLOR MOTOR CO, INC | U | | JNL3025 | JNL | 10/28/2016 | CDK-J AND L-MARKETING | 11/21/2016 |
| 70629 | Blakenhead Auto Mall Ltd | U | | JNL1797 | J L MARKETING | 10/26/2016 | CDK-J AND L-MARKETING | 11/8/2016 |
| 70252 | Voss Chevrolet Inc | U | | JNL3025 | J&L MARKETING 2016 | 10/27/2016 | CDK-J AND L-MARKETING | 11/8/2016 |
| 60508 | UMG Escondido HL, Inc | U | | 1735ANDL | V-AM ANBL MARKETING | 10/25/2016 | CDK-J AND L-MARKETING | 11/8/2016 |
| 55255 | THOMAS & MOORHEAD INC | U | | JNL8688 | CURRY WRIGHT J1 | 10/23/2016 | CDK-J AND L-MARKETING | 11/7/2016 |
| 70165 | RICK HENDRICK CHEV AUTO CO | U | | RHDHANDL | J AND L MARKETING | 10/18/2016 | CDK-J AND L-MARKETING | 11/17/2016 |
| 81083 | Dynamic Automotive LLC | U | | JNL3038 | J&L MARKETING | 10/25/2016 | CDK-J AND L-MARKETING | 11/11/2016 |
| 61801 | Sale Auto Mall Inc | U | | JNL6321 | J&L MARKETING | 10/18/2015 | CDK-J AND L-MARKETING | 11/21/2016 |
| 60598 | UMG Escondido HL, Inc | U | | 177JANDL | V-AM J AND L MARKETG | 10/25/2016 | CDK-J AND L-MARKETING | 11/8/2016 |
| 70074 | Millennium Super Store 1, LTD | U | | JNL1701 | J AND L MARKETING | 10/6/2016 | CDK-J AND L-MARKETING | 11/9/2016 |
| 61302 | PAUL BROWN MOTORS INC | U | | JNL2018 | JERRY LANE | 10/4/2016 | CDK-J AND L-MARKETING | 11/7/2016 |
| 70908 | East Tennessee Nissan Inc | U | | JNL9008 | J&L MARKETING | 10/3/2015 | CDK-J AND L-MARKETING | 11/7/2016 |
| 70308 | East Tennessee Nissan Inc | U | | JNL9968 | J&L MARKETG | 10/3/2016 | CDK-J AND L-MARKETING | 11/6/2016 |
| 60598 | UMG Escondido HL, Inc | U | | 2371ANDL | V-AM J AND L MARKETG | 10/6/2016 | CDK-J AND L-MARKETING | 10/10/2016 |
| 60892 | Classic Auto Group Inc | U | | 41ANDL | V-AM J AND L MARKET6 | 9/27/2016 | CDK-J AND L-MARKETING | 11/3/2016 |
| 70165 | Ray Catena Motor Car Corporation | U | | JNL2015 | J&L MARKETING | 9/29/2016 | CDK-J AND L-MARKETING | 11/17/2016 |
| 70827 | Walker Automotive, Inc | U | | JNL2018 | J&L MARKETING MR-88AM | 9/28/2016 | CDK-J AND L-MARKETING | 11/8/2016 |
| 61177 | HAYES CHRYSLER DODGE JEEP INC | U | | JNL6010 | JANDL | 9/26/2016 | CDK-J AND L-MARKETING | 11/9/2016 |
| 59574 | Star Harrison, Inc | U | | JNL3038 | J&L MARKETING | 9/26/2016 | CDK-J AND L-MARKETING | 11/7/2016 |
| 60589 | D Young Chevrolet, LLC | U | | 25JANDL | V-AM J AND L MARKET2 | 9/22/2016 | CDK-J AND L-MARKETING | 11/7/2016 |
| 70308 | East Tennessee Nissan Inc | U | | 891LMARK07 | JL MARKETING PORT BI | 9/26/2016 | CDK-J AND L-MARKETING | 11/7/2016 |

CX4459-011

| System Number | System Name | Country | Exemption Date | User Id | User Name | Added Date | Template | Last Login |
|---|---|---|---|---|---|---|---|---|
| 70935 | East Tennessee Nissan Inc | U | | JN08936 | J&L MARKETING FOLSOM | 9/12/2016 | CDK-J-AND-L-MARKETING | 11/7/2016 |
| 57385 | Wright Automotive Group | U | | JNG0729 | JNL | 9/21/2015 | CDK-J-AND-L-MARKETING | 11/9/2016 |
| 57365 | Wright Automotive Group | U | | JN13234 | JNL CHEVY | 9/21/2015 | CDK-J-AND-L-MARKETING | 11/8/2016 |
| 57385 | Wright Automotive Group | U | | JNG4567 | JNL | 9/26/2015 | CDK-J-AND-L-MARKETING | 11/9/2016 |
| 57930 | JD Associates of Watertown LLC | U | | JNL0500 | J&L MARKETING | 9/19/2016 | CDK-J-AND-L-MARKETING | 11/11/2016 |
| 57233 | CELEBRITY OF SPRINGFIELD, LLC | U | | JNG0391 | JOHN MARKETING | 6/16/2015 | CDK-J-AND-L-MARKETING | 11/7/2016 |
| 62189 | Schlossmann Dodge City Chrysler Jeep, Inc | U | | JN0501 | J&L MARKETING | 8/25/2015 | CDK-J-AND-L-MARKETING | 11/11/2016 |
| 61797 | Estale Motors Ltd | U | | JNG0525 | JNL | 9/11/2015 | CDK-J-AND-L-MARKETING | 11/12/2016 |
| 70250 | Maryland Motorcycle Investors LP | U | | PBARLMARKET | JL MARKET | 9/8/2016 | CDK-J-AND-L-MARKETING | 11/18/2016 |
| 61642 | CROSSROADSE MOTOR CAR INC | U | | JNG0890 | JNL | 9/6/2016 | CDK-J-AND-L-MARKETING | 11/13/2016 |
| 60947 | CLASSIC MOTORS OF TEXARKANA INC | U | | JNL0601 | MARKER | 9/8/2016 | CDK-J-AND-L-MARKETING | 11/17/2016 |
| 62098 | UAG Escondido #2, Inc | U | | 233VAHOL | V-AIN J AHDL MARKETIN | 9/1/2016 | CDK-J-AND-L-MARKETING | 11/9/2016 |
| 70628 | THE BARAN COMPANY LLC | U | | JNL1234 | J&L MARKETING | 9/1/2016 | CDK-J-AND-L-MARKETING | 11/18/2016 |
| 70257 | M3 Motors, Inc | U | | JNL2015 | J&L MARKETING | 8/31/2016 | CDK-J-AND-L-MARKETING | 11/12/2016 |
| 60983 | Classic Auto Group Inc | U | | 12JAHDL | V-AIN J AND L MARKET | 8/28/2016 | CDK-J-AND-L-MARKETING | 11/8/2016 |
| 60992 | Classic Auto Group Inc | U | | 5JAHDL | V-AIN J AND L MARKET | 8/16/2016 | CDK-J-AND-L-MARKETING | 11/7/2016 |
| 58994 | Heritage Chevrolet Buick, Inc | U | | 001LM | J MARK | 8/14/2016 | CDK-J-AND-L-MARKETING | 12/12/2016 |
| 61708 | ATLANTA TOYOTA INC | U | | 131JAHDL | V-AIN J AND L MARKETG | 8/9/2016 | CDK-J-AND-L-MARKETING | 11/7/2016 |
| 60904 | Pasolie Automotive Group Inc | U | | 158JAHDL | V-AIN J AND L MARKET | 8/8/2016 | CDK-J-AND-L-MARKETING | 11/9/2016 |
| 60892 | Classic Auto Group Inc | U | | 5JAHDL | V-AIN J AND L MARKETG | 7/29/2016 | CDK-J-AND-L-MARKETING | 11/7/2016 |
| 60908 | Pasolie Automotive Group Inc | U | | 288JAHDL | V-AIN J AND L MARKTG | 7/29/2016 | CDK-J-AND-L-MARKETING | 11/11/2016 |
| 70908 | East Tennessee Nissan Inc | U | | 9014MAR519 | J MARK CANTON | 7/17/2016 | CDK-J-AND-L-MARKETING | 11/17/2016 |
| 69723 | International Motor Cars Inc | U | | JNG0191 | JANNL M&RKETING | 7/9/2015 | CDK-J-AND-L-MARKETING | 11/11/2016 |
| 70908 | East Tennessee Nissan Inc | U | | JN8913 | J&L MARKETG | 6/30/2016 | CDK-J-AND-L-MARKETING | 11/7/2016 |
| 69757 | McKinney Guns Inc | U | | JNL2015 | J&L MARKETING | 6/30/2015 | CDK-J-AND-L-MARKETING | 11/12/2016 |
| 61647 | Suburban Imports of Farmington Hills, Inc | U | | JNL1234 | J&L MARKETING | 6/29/2016 | CDK-J-AND-L-MARKETING | 11/13/2016 |
| 69158 | Gary Miller Motors, Inc | U | | JNG0709 | JANNL MARKTG | 6/24/2015 | CDK-J-AND-L-MARKETING | 11/13/2016 |
| 61757 | McKinney Guns Inc | U | | JN0707 | J&L MARKETING | 6/16/2016 | CDK-J-AND-L-MARKETING | 11/7/2016 |
| 58994 | Tom Masano Inc | U | | JNG65A | JL MARKET | 6/16/2015 | CDK-J-AND-L-MARKETING | 11/5/2016 |
| 60982 | Classic Auto Group Inc | U | | 283AHDL | V-AIN J AND L MARKET | 6/7/2016 | CDK-J-AND-L-MARKETING | 11/11/2016 |
| 58011 | Phil Wright Autoplex, Inc | U | | JNL1234 | J&L MARKETING | 5/6/2015 | CDK-J-AND-L-MARKETING | 11/9/2016 |
| 60989 | O Young Chevrolet, LLC | U | | 243AHDL | V-AIN J AND L MARKETG | 5/4/2016 | CDK-J-AND-L-MARKETING | 11/8/2016 |
| 70628 | Riverhead Auto Mall Ltd | U | | JN0370 | JNL | 5/21/2015 | CDK-J-AND-L-MARKETING | 11/7/2016 |
| 57011 | Bennett T LLC | U | | JNL1234 | J AND L | 5/9/2016 | CDK-J-AND-L-MARKETING | 11/8/2016 |
| 61035 | Bay Ridge Automotive Company, LLC | U | | JNG0891 | J AND L MARKETING | 4/29/2015 | CDK-J-AND-L-MARKETING | 11/7/2016 |
| 61972 | Willis Cadillac, Inc | U | | JNL0415 | J&L MARKETING | 4/27/2016 | CDK-J-AND-L-MARKETING | 11/8/2016 |
| 54808 | RM ROBINSON INC | U | | JNL2016 | J AND L MARKETING | 4/26/2016 | CDK-J-AND-L-MARKETING | 11/12/2016 |
| 58762 | LW CARS LLC | U | | JNL1234 | J & L MARKETING | 4/25/2016 | CDK-J-AND-L-MARKETING | 11/9/2016 |
| 60887 | 24TH STREET CADILLAC CORP | U | | JNL1284 | J&L MARKETING | 4/21/2016 | CDK-J-AND-L-MARKETING | 11/9/2016 |
| 58980 | SMG Management Corporation | U | | JNL0705 | JL Marketing JAG | 4/21/2016 | CDK-J-AND-L-MARKETING | 11/7/2016 |
| 61050 | Triangle Dealers Inc | U | | 51JAHDL | V-AIN J AND L MARKET | 4/18/2016 | CDK-J-AND-L-MARKETING | 11/7/2016 |
| 61050 | Triangle Dealers Inc | U | | 52JAHDL | V-AIN J AND L MARKET | 4/18/2016 | CDK-J-AND-L-MARKETING | 11/7/2016 |
| 61050 | Triangle Dealers Inc | U | | 58JAHDL | V-AIN J AND L MARKET | 4/18/2016 | CDK-J-AND-L-MARKETING | 11/8/2016 |
| 61050 | Triangle Dealers Inc | U | | 561AHDL | V-AIN J AND L MARKET | 4/18/2016 | CDK-J-AND-L-MARKETING | 11/7/2016 |
| 61983 | Dynamic Automotive LLC | U | | JNG0353 | J&L MARKETING | 3/30/2015 | CDK-J-AND-L-MARKETING | 11/11/2016 |
| 50944 | American Service Center Associates, LLC | U | | JNL2842 | J&L MARKETING | 3/22/2016 | CDK-J-AND-L-MARKETING | 11/11/2016 |
| 60889 | O Young Chevrolet, LLC | U | | 1DJAHDL | V-AIN J AND L MARKTG | 3/18/2016 | CDK-J-AND-L-MARKETING | 11/9/2016 |
| 54724 | the Toyota Inc | U | | MARKEL | MARK JL | 2/25/2016 | CDK-J-AND-L-MARKETING | 11/18/2016 |
| 60458 | Don Nabol Resorts, Inc | U | | GFOSANDM | MARK GROGAN | 2/25/2015 | CDK-J-AND-L-MARKETING | 11/13/2016 |
| 57011 | Bennett T LLC | U | | JLMARK | J AND L | 2/25/2015 | CDK-J-AND-L-MARKETING | 11/7/2016 |
| 60889 | O Young Chevrolet, LLC | U | | 2DJAHDL | V-AIN J AND L MARKET | 2/18/2015 | CDK-J-AND-L-MARKETING | 11/9/2016 |
| 60592 | Classic Auto Group Inc | U | | 16JAHDL | V-AIN J AND L MARKETG | 2/18/2016 | CDK-J-AND-L-MARKETING | 11/8/2016 |
| 58669 | 1780998 Ontario Inc | C | | KC0301L | KIA CANADA-GTK | 10/12/2015 | CDK-KIA-CAN | 10/24/2016 |
| 61685 | 2022816 ONTARIO INC | C | | KC0567 | KIA CANADA | 10/8/2015 | CDK-KIA-CAN | 11/11/2016 |
| 57398 | 1012279015 SASKATCHEWAN LTD | C | | KC0108 | INTEGRALINK | 10/4/2015 | CDK-KIA-CAN | 11/13/2016 |
| 62058 | Chaccasburg Automobiles LTEE | C | | KC0003 | KIA INTEGRALINK | 8/27/2015 | CDK-KIA-CAN | 11/12/2016 |
| 58612 | 9138878826 Quebec Inc | C | | KC0401 | KIA INTEGRALINK | 6/26/2015 | CDK-KIA-CAN | 11/12/2016 |
| 62082 | 6899515 Canada Ltd | C | | KMC0567 | KIA CANADA | 8/21/2015 | CDK-KIA-CAN | 11/13/2016 |
| 58665 | 1780998 Ontario Inc | C | | KC01701 | KIA CANADA-GRIMSBY | 3/14/2016 | CDK-KIA-CAN | 20/15/2016 |
| 61988 | CHRIST MOTOR COMPANY LTD | C | | KC0401 | KIA INTEGRA LINK | 2/25/2015 | CDK-KIA-CAN | 11/11/2016 |
| 61746 | 44813 Newfoundland and Labrador Inc | C | | GORD | GORD | 2/25/2015 | CDK-KIA-CAN | 11/9/2016 |
| 60936 | Jago Auto Ltd | C | | DAVEFCAVER | DAVEFCAVER | 2/25/2015 | CDK-KIA-CAN | 11/12/2016 |
| 61975 | SHERWOOD PARK AUTO SALES LTD | C | | KC0201L | INTEGRALINK IG | 2/25/2015 | CDK-KIA-CAN | 11/12/2016 |
| 59816 | Northland Kia | C | | KC0601L | INTEGRALINK | 2/25/2015 | CDK-KIA-CAN | 11/13/2016 |
| 61976 | Katrie Inc | C | | KC0101L | KIA-INTEGRALINK | 2/24/2015 | CDK-KIA-CAN | 11/13/2016 |
| 60917 | 864475 ALBERTA LTD | C | | KC0901L | KIA INTEGRALINK | 2/24/2015 | CDK-KIA-CAN | 11/12/2016 |
| 60959 | 1736856 ONTARIO INC | C | | KC0201L | KCI-DEALER | 2/24/2015 | CDK-KIA-CAN | 11/12/2016 |
| 61884 | 1841620 ALBERTA LTD | C | | KC0501L | INTEGRALINK ID | 2/24/2015 | CDK-KIA-CAN | 11/13/2016 |
| 59014 | Garage Regian Tay Inc | C | | 13A123456 | UM MOTSU DATA | 12/9/2015 | CDK-MITSUBISHI | 11/12/2016 |
| 58868 | 1409075 Ontario Ltd | C | | KC0101L | KCI INTEGRA LINK | 2/24/2015 | CDK-KIA-CAN | 11/12/2016 |
| 61754 | Leggat Chevrolet Cadillac Buick GMC LTD | C | | KC0501 | KIA CANADA | 2/24/2015 | CDK-KIA-CAN | 11/13/2016 |
| 59197 | ALBI LE GEANT INC | C | | KC0908 | KIA INTEGRALINK | 2/24/2015 | CDK-KIA-CAN | 11/12/2016 |
| 58137 | ALBI LE GEANT INC | C | | KZ0201 | KIA INTEGRALINK | 2/24/2015 | CDK-KIA-CAN | 11/27/2016 |
| 60868 | 514959 ONTARIO LTD | C | | DMW | DIGITAL MOTORWORKS | 2/24/2015 | CDK-KIA-CAN | 10/27/2016 |
| 60888 | 514959 ONTARIO LTD | C | | KC0201L | KIA INTEGRALINK | 2/24/2015 | CDK-KIA-CAN | 11/12/2016 |
| 58892 | West Coast Motors LTD | C | | KC0501 | KIA INTEGRA LINK | 2/24/2015 | CDK-KIA-CAN | 11/14/2016 |
| 57080 | 81254383 QUEBEC INC | C | | KC1101 | KIA INTEGRALINK | 2/24/2015 | CDK-KIA-CAN | 11/13/2016 |
| 61904 | MILTON CHRYSLER DODGE LTD | C | | KC0501 | KCI-INTEGRALINK | 2/24/2015 | CDK-KIA-CAN | 11/12/2016 |
| 61726 | Competition Toyota Ltd | C | | KC0401 | KCI-KIA OF MARKETON | 2/22/2016 | CDK-KIA-CAN | 11/12/2016 |
| 62510 | K D F AUTOMOTIVE GROUP INC | C | | M07161 | DSM GERMANIA | 12/11/2015 | CDK-MITSUBISHI | 11/12/2016 |
| 68184 | REGNORAL MOTORS INC | C | | M111215 | UM MOTSU DATA | 12/9/2015 | CDK-MITSUBISHI | 11/12/2016 |
| 60692 | McLarry CMPO, LLC | C | | MSRNA | SARINA MOD | 11/25/2015 | CDK-MITSUBISHI | 11/13/2016 |
| 58623 | Alan Vines Automotive of Jackson, LLC | C | | M0191 | MAY7 | 11/24/2015 | CDK-MITSUBISHI | 11/13/2016 |
| 62510 | UNIVERSAL AUTO GROUP | C | | M05362 | FORY DOMINGURZ | 10/21/2015 | CDK-MITSUBISHI | 11/13/2016 |
| 70267 | VANN YORK AUTO CITY | C | | M0151 | MITSU SABRINA | 10/13/2015 | CDK-MITSUBISHI | 11/12/2016 |
| 63472 | Moore Buick Pontiac GM Trk Inc | C | | M07265 | MITSUBISHI | 10/7/2015 | CDK-MITSUBISHI | 11/7/2016 |
| 61424 | Broadway Lane Star Ltd | C | | MIT4191J | test | 9/7/2016 | CDK-MITSUBISHI | 11/12/2016 |
| 61167 | Berkes Automotive Corp | C | | MSRNA | MITSUBISHI | 8/28/2015 | CDK-MITSUBISHI | 11/13/2016 |
| 61216 | Prestissm Auto Sales Inc | C | | MIT1601 | CDK DATA SERVICES | 8/17/2016 | CDK-MITSUBISHI | 11/13/2016 |
| 70024 | Sutton Management Inc | C | | MIT1312 | SARING SAHELMER AGT | 8/17/2016 | CDK-MITSUBISHI | 11/12/2016 |
| 70686 | Reagor Auto Mall, Ltd | C | | 82ABIT11234 | SAARLINK-UM7SH | 8/9/2016 | CDK-MITSUBISHI | 11/11/2016 |
| 70572 | Walker Automotive, Inc | C | | MIT1234 | MITSUBISHI USM | 7/28/2016 | CDK-MITSUBISHI | 11/12/2016 |
| 70008 | GIBSON IMPORTS INC | C | | MIT1601 | MITS NORMAL | 7/16/2016 | CDK-MITSUBISHI | 11/12/2016 |

CX4459-012

FTC-0000457

| System Number | System Name | Country | Exemption Date | User Id | User Name | Added Date | Template | Last Login |
|---|---|---|---|---|---|---|---|---|
| 55989 | RJM Automotive Group LLC | U | | MIT1234 | SAFELINK | 7/14/2015 | CDK-MITSUBISHI | 11/10/2016 |
| 55834 | VICTORY AUTO GROUP LLC | U | | MIT1234 | MITSUBISHI | 7/12/2016 | CDK-MITSUBISHI | 11/12/2016 |
| 61725 | Andy Mohr Speedway Chevrolet, Inc | U | | MIT1234 | MITSU PARTS | 7/8/2015 | CDK-MITSUBISHI | 11/7/2016 |
| 61780 | Heritage on Lanier Inc | U | | MIT2015 | MITSU DATA | 7/6/2015 | CDK-MITSUBISHI | 11/10/2016 |
| 63450 | Mountaineer Automotive LLC | U | | MIT0016 | MITS POD | 6/30/2016 | CDK-MITSUBISHI | 11/12/2016 |
| 56236 | Mentor Imports Inc | U | | MIT2014 | X | 6/29/2016 | CDK-MITSUBISHI | 10/27/2016 |
| 56881 | P R Holdings Inc | U | | MIT1234 | DIGITAL MOTOR WORKS | 6/26/2015 | CDK-MITSUBISHI | 11/12/2016 |
| 70082 | TW Noblesville Imports, Inc | U | | MIT0601 | MITSUBISHI CDK SVC | 6/23/2016 | CDK-MITSUBISHI | 11/11/2016 |
| 70250 | International Cars LTD | U | | MIT2015 | MITSUBISHI SVC PTS | 4/13/2015 | CDK-MITSUBISHI | 10/20/2016 |
| 61692 | Bill Pierre Lease Inc | U | | MMSA | MMSA POD | 4/13/2015 | CDK-MITSUBISHI | 11/13/2016 |
| 61189 | Schlossmanns Dodge City Chrysler Jeep, Inc | U | | MIT0401 | MITSUBISHI DMI | 4/10/2014 | CDK-MITSUBISHI | 11/11/2016 |
| 59764 | INDICAR OF DAYTONA INC | U | | MIT0101 | MITSUNISHI | 4/10/2014 | CDK-MITSUBISHI | 11/12/2016 |
| 58701 | Autos Etc Management LLC | U | | MIT0101 | MITSUBISHI DMI | 4/10/2014 | CDK-MITSUBISHI | 11/11/2016 |
| 56857 | Gladding Chevrolet Inc | U | | MIT0101 | MITSUBISHI PARTS | 4/7/2014 | CDK-MITSUBISHI | 11/11/2016 |
| 56564 | ARROW FORD INC | U | | VOICES1 | FVOICE4 | 4/7/2014 | CDK-MITSUBISHI | 11/13/2016 |
| 61502 | Quebedeaux BuickGMC, Inc | U | | MIT0102 | CDK | 4/1/2016 | CDK-MITSUBISHI | 11/13/2016 |
| 54052 | Zimmerman Auto Center, Inc | U | | MIT0101 | MITSU | 3/24/2014 | CDK-MITSUBISHI | 11/10/2016 |
| 58986 | Hi Country Chevrolet, Inc | U | | MMNA1 | MITSU | 3/17/2014 | CDK-MITSUBISHI | 11/13/2016 |
| 55294 | Signature Automotive Group Inc | U | | MIT2014 | MMSA | 2/25/2015 | CDK-MITSUBISHI | 11/12/2016 |
| 56581 | P R Holdings Inc | U | | MIT2015 | MITSUBISHI | 2/25/2015 | CDK-MITSUBISHI | 11/12/2016 |
| 59856 | HUB Hyundai INC | U | | MMNA | MMNA | 2/25/2015 | CDK-MITSUBISHI | 11/11/2016 |
| 61136 | DAmbrosios Dodge Inc | U | | MIT0714 | RICH GOERK | 2/25/2015 | CDK-MITSUBISHI | 11/8/2016 |
| 61565 | Classic Chevrolet Inc | U | | MIT2014 | MIT CPRO | 2/25/2015 | CDK-MITSUBISHI | 11/10/2016 |
| 61617 | PINELLAS MOTOR CARS LLC | U | | MIT2014 | DMI | 2/25/2015 | CDK-MITSUBISHI | 11/10/2016 |
| 56863 | Hampton Automotive Inc | U | | MIT0102 | MITSUBISHI | 2/25/2015 | CDK-MITSUBISHI | 11/4/2016 |
| 58627 | Northtowne LincolnMercury, Inc | U | | MITSU | | 2/25/2015 | CDK-MITSUBISHI | 11/11/2016 |
| 61176 | Fuccillo Chevrolet Buick, Inc | U | | MIT0501 | MITSU DMI | 2/25/2015 | CDK-MITSUBISHI | 11/12/2016 |
| 61539 | Ray Skillman Olds GMC TRK INC | U | | MIT0201 | MITSU PARTS DMI | 2/25/2015 | CDK-MITSUBISHI | 11/11/2016 |
| 61539 | Ray Skillman Olds GMC TRK INC | U | | MIT0101 | MITSU PARTS DMI | 2/25/2015 | CDK-MITSUBISHI | 11/12/2016 |
| 61539 | Ray Skillman Olds GMC TRK INC | U | | MIT0303 | MITSU PARTS DMI | 2/25/2015 | CDK-MITSUBISHI | 11/13/2016 |
| 70082 | TW Noblesville Imports, Inc | U | | 15MMNA | MIT PARTS ON DEMAND | 2/25/2014 | CDK-MITSUBISHI | 11/11/2016 |
| 56381 | IMPERIAL IMPORTS INC | U | | MMNACP | MITS CUSTOMER PAY | 2/25/2014 | CDK-MITSUBISHI | 11/13/2016 |
| 57203 | Pete Moore Chev Inc | U | | MIT0201 | CPRO and Parts Loc | 2/24/2015 | CDK-MITSUBISHI | 11/13/2016 |
| 61367 | Secors Auto Center | U | | MIT2014 | MITSUBISHI | 2/24/2015 | CDK-MITSUBISHI | 11/9/2016 |
| 59833 | Hoover Motors, Inc | U | | MIT2015 | MITSUBISHI DM | 2/24/2015 | CDK-MITSUBISHI | 11/10/2016 |
| 57374 | Byron Automotive, LLC | U | | MIT2014 | MITSUBISHI LOGIN | 2/24/2015 | CDK-MITSUBISHI | 11/11/2016 |
| 54068 | Peruzzi Pontiac GMC Truck Inc | U | | MIT0102 | MITSUBISHI | 2/24/2015 | CDK-MITSUBISHI | 11/12/2016 |
| 54068 | Peruzzi Pontiac GMC Truck Inc | U | | MIT0202 | MITSUBISHI | 2/24/2015 | CDK-MITSUBISHI | 11/13/2016 |
| 70081 | Schworer Motor Co | U | | JERRI | | 2/24/2014 | CDK-MITSUBISHI | 11/10/2016 |
| 58856 | Vallejo Imports, LLC | U | | 96DOM | DOMINICK | 2/24/2014 | CDK-MITSUBISHI | 11/8/2016 |
| 60637 | Charles Motor Mall Inc | U | | MMSA001 | MITSUB PTS SVC | 2/24/2014 | CDK-MITSUBISHI | 11/12/2016 |
| 61365 | Joe Pecheles Volkswagen Inc | U | | MITSU01 | MITSUBISHI | 2/24/2014 | CDK-MITSUBISHI | 11/12/2016 |
| 58885 | Ourisman Chevrolet Co Inc | U | | TAMMIE | TAMMIE FAUST | 2/24/2014 | CDK-MITSUBISHI | 11/12/2016 |
| 61692 | Bill Pierre Lease Inc | U | | HMIKE1 | MIKE JEFFREY | 2/24/2014 | CDK-MITSUBISHI | 11/11/2016 |
| 61018 | Firkins Acquisitions, Inc | U | | DAVID | DAVID LOPEZ | 2/24/2014 | CDK-MITSUBISHI | 11/10/2016 |
| 54091 | Attenhoffer Chevrolet Co Inc | U | | MISC20 | MISC20 | 2/24/2014 | CDK-MITSUBISHI | 11/12/2016 |
| 57025 | Long Lewis Ford of the Shoals Inc | U | | MMSA | MMSA POD | 2/24/2014 | CDK-MITSUBISHI | 11/13/2016 |
| 60297 | Mike Miller Automotive Inc | U | | 55MPS | | 2/24/2014 | CDK-MITSUBISHI | 11/13/2016 |
| 53675 | Bacoft Automotive LLC | U | | MITSUPARTS1 | MITSUBISHIPARTS | 2/24/2014 | CDK-MITSUBISHI | 11/10/2016 |
| 60935 | MK AUTOMOTIVE MANAGEMENT LLC | U | | MMOTORS13 | MITSUBISHI MOTORS | 2/24/2014 | CDK-MITSUBISHI | 11/12/2016 |
| 58401 | MDS INC | U | | MMNA | MMNA PARTS ON DEMAND | 2/24/2014 | CDK-MITSUBISHI | 11/11/2016 |
| 53806 | Marina Dodge Inc | U | | 19080 | BOB COLE | 2/24/2014 | CDK-MITSUBISHI | 11/1/2016 |
| 59493 | The Walker Auto Group Inc | U | | JULIER | JULIE ROMEO | 2/24/2014 | CDK-MITSUBISHI | 11/12/2016 |
| 62270 | DElla BuickGMCCadillac, Inc | U | | RHOLMES | RICHARD HOLMES | 2/24/2014 | CDK-MITSUBISHI | 11/12/2016 |
| 61977 | Liberty Chrysler Center LLC | U | | MMNA | MMNA POD | 2/24/2014 | CDK-MITSUBISHI | 11/13/2016 |
| 56059 | Merced Chevrolet, Inc | U | | PRL1234 | VEHICLE XCHANGE | 12/28/2015 | CDK-PEARL-TECH | 11/12/2016 |
| 70390 | Limbaugh Motors, Inc | U | | PRL01051 | JMnA Group | 12/21/2015 | CDK-PEARL-TECH | 11/12/2016 |
| 70368 | WAYNE COUNTY MOTOR SALES INC | U | | PRL | PRL | 12/15/2015 | CDK-PEARL-TECH | 11/12/2016 |
| 70622 | GTR ENTERPRISES INC | U | | PRL3999 | AUTO SALES | 12/11/2015 | CDK-PEARL-TECH | 11/12/2016 |
| 57595 | CROWN BUICK INC | U | | PRL1234 | PEARL SOLUTIONS | 12/10/2015 | CDK-PEARL-TECH | 11/12/2016 |
| 70278 | New World Auto Imports Inc | U | | PRL1234 | JMAGROUP | 12/8/2015 | CDK-PEARL-TECH | 11/12/2016 |
| 61880 | Everett Buick GMC, LLC | U | | PRL9876 | PEARL TECHNOLOGIES | 12/7/2015 | CDK-PEARL-TECH | 11/12/2016 |
| 61102 | ROUNDTREE COVINGTON, LLC | U | | VHX1234 | VHX JMA | 10/31/2016 | CDK-PEARL-TECH | 10/26/2016 |
| 60979 | JDS, Inc | U | | PRL6789 | AutoSales2 | 10/24/2015 | CDK-PEARL-TECH | 11/12/2016 |
| 56460 | LAS CRUCES AUTOMOTIVE GROUP INC | U | | PRL1234 | VEHICLE EXCHANGE | 10/24/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 60954 | CADILLAC OF MAHWAH LLC | U | | PRL4567 | VEHICLEXCHANGE | 10/21/2015 | CDK-PEARL-TECH | 11/7/2016 |
| 61186 | MEMORIAL MOTORS INC | U | | PRL1616 | SARAG DOLMAN | 10/21/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 61762 | Country Chevrolet Inc | U | | PRL2015 | VEHICLE EXCHANGE | 10/16/2015 | CDK-PEARL-TECH | 11/12/2016 |
| 57990 | Pride Hyundai | U | | VHX2345 | SUSAN ROUSH | 10/10/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 60483 | REINHARDT MOTORS INC | U | | VHX2016 | AS2 JMAGROUP | 9/8/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 61880 | Everett Buick GMC, LLC | U | | PRL1234 | PEARL TECHNOLOGIES | 8/27/2015 | CDK-PEARL-TECH | 11/12/2016 |
| 60963 | Muzi Motors Inc | U | | VHX2016 | PEARL TECHNOLOGY | 8/11/2016 | CDK-PEARL-TECH | 11/11/2016 |
| 56858 | Watson Chevrolet, Inc | U | | VHX0625 | VehicleXchange | 8/8/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 70009 | PHIL SMITH MANAGEMENT INC | U | | PRL0716 | JMA PRL | 8/1/2016 | CDK-PEARL-TECH | 11/10/2016 |
| 61115 | WordenMartin, Inc | U | | VHX1234 | FORD VEHICLE X | 8/1/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 61708 | McCarthy Chevrolet, Inc | U | | PRL2222 | VEGIXLE EXCHANGE | 8/1/2016 | CDK-PEARL-TECH | 11/11/2016 |
| 61708 | McCarthy Chevrolet, Inc | U | | PRL5555 | VEHICLE EXCHANGE | 7/29/2016 | CDK-PEARL-TECH | 11/10/2016 |
| 61018 | Firkins Acquisitions, Inc | U | | VHX2016 | VIVIAN FROST | 7/28/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 70048 | DAYTONA BRGD INC | U | | VHX6872 | AUTO SALES SQUARED | 7/18/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 70259 | DE PAULA CHEVROLET INC | U | | ANDREAB | ANDREA BRENNAN | 7/17/2015 | CDK-PEARL-TECH | 11/12/2016 |
| 62232 | Page Imports, Inc | U | | PRL0711 | PEARL TECH/VEH XCHNG | 7/12/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 61658 | Beaver Motors, Inc | U | | VHX1234 | AS2 ACCOUNT | 6/24/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 61232 | MODERN AUTO COMPANY | U | | PRL1234 | VehicleXchange | 5/29/2015 | CDK-PEARL-TECH | 11/3/2016 |
| 55848 | DELACY FORD INC | U | | PRL3061 | CDK VEHICLE EXCHANGE | 5/23/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 55025 | Milton Chevrolet, Inc | U | | VHX8000 | PEARL TECHNOLOGY | 5/10/2016 | CDK-PEARL-TECH | 11/6/2016 |
| 61115 | WordenMartin, Inc | U | | PRL0201 | VEHICLEXCHANGE | 4/19/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 70344 | Gettel Enterprise Inc | U | | VHX1234 | VEHICLE EXCHANGE | 4/15/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 61184 | MEMORIAL MOTORS INC | U | | VHX0416 | VEH XCHANGE | 4/14/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 70256 | Maryland Motorcycle Investors LP | U | | PRL1234 | AS2 | 4/1/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 55670 | Pohlich Chevrolet, Inc | U | | VEHEXCHG | VEHICLE EXCHANGE | 3/31/2015 | CDK-PEARL-TECH | 11/12/2016 |
| 56302 | DIXIE BUICK GMC TRUCK INC | U | | RBUMP | RBUMP | 3/27/2015 | CDK-PEARL-TECH | 11/12/2016 |
| 61115 | WordenMartin, Inc | U | | PRL2016 | VEHICLEXCHANGE | 3/22/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 54091 | Attenhoffer Chevrolet Co Inc | U | | PRL1234 | DATA EXCHANGE | 3/10/2016 | CDK-PEARL-TECH | 11/12/2016 |

CX4459-013

FTC-0000458

| System Number | System Name | Country | Exemption Date | User Id | User Name | Added Date | Template | Last Login |
|---|---|---|---|---|---|---|---|---|
| 25608 | Southern Automotive Enterprises, LLC | U | U | PRL2477 | A52 | 3/10/2016 | CDK-PEARL-TECH | 11/11/2016 |
| 70386 | PHILLIPS SALES INC | U | U | PRL1234 | AUTOSALES2 | 2/4/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 70178 | New World Auto Imports Inc | U | U | PRU5001 | JMA | 2/25/2016 | CDK-PEARL-TECH | 11/11/2016 |
| 70276 | New World Auto Imports Inc | U | U | PRL1234 | JMA | 2/25/2016 | CDK-PEARL-TECH | 11/11/2016 |
| 70310 | Triangle Motor Sales Inc | U | U | PRL1234 | JMA | 2/25/2016 | CDK-PEARL-TECH | 11/11/2016 |
| 57048 | MonBs Chevrolet Sales Service, INC | U | REDBUMP | RED BUMPER | 2/25/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 70018 | Ernie Palmer, Inc | U | PRL1310 | AUTOSALES2 | 2/18/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 58694 | Heritage Chevrolet Buick, Inc | U | PRU2001 | PEARL TOOLHOUSE | 2/15/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 70168 | GULF COAST MOTORS SALES INC | U | PRL8888 | AUTO SALES 2 | 2/12/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 61708 | McCarthy Chevrolet, Inc | U | PRL7777 | LS VEHICLE EXCHANGE | 2/7/2016 | CDK-PEARL-TECH | 11/11/2016 |
| 70031 | Gaston County Cars Inc | U | PRU0210 | AUTO SALES 2 | 2/12/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 70520 | Carl Springs R&R, Inc | U | PRL1234 | JMBA AS2 | 2/4/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 61642 | Suburban Imports of Farmington Hills, Inc | U | PRL1401 | VEHICLEXCHANGE | 1/25/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 57728 | MDA SERVICES, CORP | U | PRL1234 | AUTO EXCHANGE | 1/21/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 57461 | Krystal Cadillac Inc | U | PRU6029 | VehicleXchange | 1/20/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 61300 | Patterson Auto Center Inc | U | PRL1234 | Peter Technology | 1/18/2016 | CDK-PEARL-TECH | 11/11/2016 |
| 70365 | DELUCA INC | U | PRU9060 | AUTOSALES2 | 1/12/2016 | CDK-PEARL-TECH | 11/12/2016 |
| 58735 | Crawford Buick GMC, LP | U | PRL1234 | PEARLSOLUTION CORP | 1/8/2016 | CDK-PEARL-TECH | 11/10/2016 |
| 61191 | Benge Ford Inc | U | SUM1234 | SUMMIT | 12/15/2015 | CDK-SUMMIT | 11/11/2016 |
| 57989 | COUNSELL HAPPY TOWN USA INC | U | SUM1234 | SUMMIT | 12/16/2015 | CDK-SUMMIT | 11/09/2016 |
| 57592 | MATSON PATRIOT AUTOMOTIVE GROUP INC | U | SUM2016 | SUMMIT INTERLINE | 12/15/2015 | CDK-SUMMIT | 11/11/2016 |
| 57324 | CELEBRITY OF SPRINGFIELD, LLC | U | SUM38910 | SUMMIT GROUP | 12/8/2015 | CDK-SUMMIT | 11/11/2016 |
| 69090 | BAPTISM FORD COMPANY | U | SUM1234 | INTEGRALINE | 12/2/2015 | CDK-SUMMIT | 11/11/2016 |
| 61702 | International Motor Cars Inc | U | SUM0903 | Summit | 11/23/2015 | CDK-SUMMIT | 11/11/2016 |
| 58268 | BUSS Inc | U | SUM1234 | Summit | 11/23/2015 | CDK-SUMMIT | 11/10/2016 |
| 61866 | Altos Imports LTD Inc | U | SUM0101 | TMS STAR ELITE PSX | 11/8/2016 | CDK-SUMMIT | 11/7/2016 |
| 58174 | QUALITY JEEPCHRYSLER, INC | U | SUM7901 | PSX | 11/9/2016 | CDK-SUMMIT | |
| 61667 | City Chevrolet LLC | U | SUM1234 | SUMMIT CONSULTING | 11/5/2015 | CDK-SUMMIT | 11/11/2016 |
| 61548 | Ed Rinke Chevrolet Buick GMC Co | U | SUM2015 | SUMMIT CONSULTING | 11/4/2015 | CDK-SUMMIT | 11/11/2016 |
| 61917 | TM Automotive, Inc | U | SUM0417 | INTEGRALINK | 11/4/2015 | CDK-SUMMIT | 11/12/2016 |
| 70657 | WOLF MOTORS OF HABERFIELD INC | U | SUM1234 | SCG | 10/20/2016 | CDK-SUMMIT | 11/11/2016 |
| 70308 | East Tennessee Nissan Inc | U | SUM0089 | HARROLD FORD WHOL | 10/18/2016 | CDK-SUMMIT | 11/9/2016 |
| 61101 | Shakopee Valley Ford Inc | U | SUM0062 | SUM PSX USER | 9/25/2015 | CDK-SUMMIT | 11/7/2016 |
| 70431 | FLOW MOTORS OF STATESVILLE, LLC | U | SUM1234 | PSX TOYOTA | 10/17/2016 | CDK-SUMMIT | 11/11/2016 |
| 56861 | IMPERIAL IMPORTS INC | U | SUM0105 | TMS SUMMIT CONSULLYN | 20/13/2016 | CDK-SUMMIT | 11/11/2016 |
| 62179 | PARADISE CHEVROLET CADILLAC | U | SUM1234 | SUMMIT CONSULTING | 10/7/2016 | CDK-SUMMIT | 11/12/2016 |
| 60569 | D Young Chevrolet, LLC | U | 250SUMMIT | V-RIN SUMMIT CONSULT | 10/7/2016 | CDK-SUMMIT | 11/9/2015 |
| 56940 | Skyhawk Automotive Group, Inc | U | SUM1234 | SUM1234 | 10/5/2016 | CDK-SUMMIT | 11/9/2016 |
| 54058 | CAPITAL FORD LINCOLN SALES WORSHIPS INC | U | SUM1000 | Summit | 10/5/2016 | CDK-SUMMIT | 11/6/2016 |
| 58274 | Capital GMC Buick Cadillac Ltd | C | SUM1000 | SUM | 10/5/2016 | CDK-SUMMIT | 11/11/2016 |
| 58990 | Leonard Automotive Enterprises, Inc | U | SUM6000 | SUMMIT INTEGRALINK | 10/5/2016 | CDK-SUMMIT | 11/8/2016 |
| 61492 | Burnsville Automotive Inc | U | SUM1112 | PSX | 9/21/2016 | CDK-SUMMIT | 11/12/2016 |
| 58872 | Bruce Lowrie Chevrolet, Inc | U | SUM0815 | SUMMIT PSX | 9/18/2015 | CDK-SUMMIT | 11/11/2016 |
| 54530 | Street Automotive, Inc | U | SUM1234 | EXPRESS MAINT | 9/17/2015 | CDK-SUMMIT | 11/11/2016 |
| 70023 | Ernie Palmer, Inc | U | SUM1234 | SUM ACCOUNT | 9/14/2015 | CDK-SUMMIT | 11/12/2016 |
| 70288 | Tach Automotive, LLC | U | SUM1234 | SUMMIT | 9/8/2015 | CDK-SUMMIT | 11/13/2016 |
| 55755 | Tarbox Management LLC | U | SUM6444 | SUMMIT | 9/1/2015 | CDK-SUMMIT | 11/11/2016 |
| 61698 | A1 AUTO SERVICE INC | U | SUM1010 | SUM1010 | 8/31/2016 | CDK-SUMMIT | 11/9/2016 |
| 58401 | M&R INC | U | SUM1941 | SUMMIT | 8/29/2015 | CDK-SUMMIT | 11/12/2016 |
| 55090 | TM MOTORS INC | U | SUM2016 | SUMMIT CONSULTING | 8/25/2015 | CDK-SUMMIT | 11/12/2016 |
| 70074 | Millennium Super Store 1, LTD | U | SUM1701 | COM SUMMIT HGHT TOY | 8/20/2015 | CDK-SUMMIT | 11/11/2016 |
| 60016 | WW MAGNESS CO INC | U | SUM2016 | SUMMIT | 8/25/2015 | CDK-SUMMIT | |
| 61184 | MEMORIAL PONTIAC INC | U | SUM8679 | SUMMIT CONSULTING | 8/19/2015 | CDK-SUMMIT | 11/11/2016 |
| 70186 | GULF COAST MOTOR SALES INC | U | SUM1234 | SUMMIT | 8/28/2015 | CDK-SUMMIT | 11/10/2016 |
| 70355 | SPRINGHILL AUTOMOTIVE INC | U | SUM2015 | SUMMIT | 8/17/2015 | CDK-SUMMIT | 11/11/2016 |
| 70257 | KING PONTIAC INC | U | SUM2670 | SUMMIT CONSULTING | 8/14/2015 | CDK-SUMMIT | 11/11/2016 |
| 70173 | Vineland Motor Sales, LLC | U | SUM00723 | INTEGRALINE | 8/13/2015 | CDK-SUMMIT | 11/11/2016 |
| 60572 | Mike Calvert, Inc | U | SUM03932 | INTEGRALINK MRTIFS | 8/31/2015 | CDK-SUMMIT | 11/19/2016 |
| 58707 | Central Chevrolet Company, Inc | U | SUM2166 | US1 TRANSACTIONAL | 8/10/2015 | CDK-SUMMIT | 11/11/2016 |
| 53634 | Davey Buick GMC, Inc | U | SUM7504 | SUMMIT SERVICE | 8/4/2015 | CDK-SUMMIT | 11/11/2016 |
| 60905 | Price Lebrace, LLC | U | SUM2015 | SUMMIT TOYOTA | 7/30/2015 | CDK-SUMMIT | 11/11/2016 |
| 70201 | K Motors, Inc | U | SUM2015 | SUMMIT | 7/29/2015 | CDK-SUMMIT | 11/10/2016 |
| 70113 | JA SALES INC | U | SUM1234 | Skivvy Kimbed | 7/24/2015 | CDK-SUMMIT | 11/30/2016 |
| 70213 | JM BARKLEY ASHEVILLE INC | U | SUM2015 | SUMMIT PSX | 7/24/2015 | CDK-SUMMIT | 11/11/2016 |
| 70420 | MORRIS AUTOMOTIVE, INC | U | SUM6978 | SUMMIT CONSULTING | 7/24/2015 | CDK-SUMMIT | 11/11/2016 |
| 60815 | Capital Motor Sales, Inc | U | SUM2015 | SUMMIT PSX | 7/24/2015 | CDK-SUMMIT | 11/10/2016 |
| 62098 | Sandy Sansing Chevrolet Inc | U | SUM2865 | GULF STATES TOYOTA | 7/23/2015 | CDK-SUMMIT | 11/11/2016 |
| 57030 | Nordtech Chevrolet/Buick, LLC | U | SUM2016 | SUMMIT | 7/22/2015 | CDK-SUMMIT | 11/11/2016 |
| 70627 | Weldon Automotive, Inc | U | SUM2015 | SUMMIT INTEGRALINK | 7/22/2015 | CDK-SUMMIT | 11/11/2016 |
| 57858 | CM MOTORS LLC | U | SUM1234 | INTEGRALINK | 7/22/2016 | CDK-SUMMIT | 11/11/2016 |
| 70067 | N S S ACQUISITION CORP | U | SUM1234 | SE1 | 7/21/2015 | CDK-SUMMIT | 11/11/2016 |
| 60697 | CLASSIC MOTORS OF TEXARKANA INC | U | SUM0730 | SMELPF SHAME | 7/22/2015 | CDK-SUMMIT | 11/11/2016 |
| 60919 | DON MCGILL OF WEST HOUSTON LTD | U | SUM0760 | SUMMIT CONSULTING | 7/22/2015 | CDK-SUMMIT | 11/11/2016 |
| 61271 | Yokem Motors Inc | U | SUM4567 | SUMMIT | 7/21/2015 | CDK-SUMMIT | 11/12/2016 |
| 62347 | Alamo City Motors, Inc | U | SUM3564 | SUMMIT CONSULTING | 7/17/2015 | CDK-SUMMIT | 11/11/2016 |
| 70254 | KANSAS CITY AUTOMOTIVE CO LP | U | SUMPSX | PSX | 7/17/2016 | CDK-SUMMIT | 11/10/2016 |
| 70451 | RALPH HAYES MOTORS | U | SUM2015 | SUMMIT | 7/18/2015 | CDK-SUMMIT | 11/11/2016 |
| 57041 | Rye Automotive Group, Inc | U | SUM1234 | Sheila SCI | 7/17/2015 | CDK-SUMMIT | 11/11/2016 |
| 70590 | Don Sanderson Ford, Inc | U | SUM2015 | ORBITAL MOTORWORKS | 7/17/2015 | CDK-SUMMIT | 11/11/2016 |
| 70680 | Vineland Motor Sales Inc | U | SUM1234 | INTEGRALINE | 7/17/2015 | CDK-SUMMIT | 11/11/2016 |
| 58759 | MOORE MOTORCARS INC | U | SUM6769 | SUMMIT | 7/16/2015 | CDK-SUMMIT | 11/8/2016 |
| 58628 | Jeff Hunter Motors Inc | U | SUM1440 | TXM | 7/15/2015 | CDK-SUMMIT | 11/11/2016 |
| 55798 | Swope Auto Company, LLC | U | SUM1234 | JM | 7/15/2015 | CDK-SUMMIT | 11/8/2016 |
| 69608 | Hardburg Chevrolet, LLC | U | SUM0101 | FGOOD STAR | 7/15/2015 | CDK-SUMMIT | 11/11/2016 |
| 61577 | Carl Hogan Automotive, Inc | U | SUM1234 | STI REPORTING | 7/15/2015 | CDK-SUMMIT | 11/09/2016 |
| 70173 | Vineland Motor Sales, LLC | U | SUM0315 | SUMMIT PSX | 7/15/2015 | CDK-SUMMIT | 11/11/2016 |
| 61736 | Beaumont Motor Co | U | SUM1234 | SUMMIT CONSULTING | 7/14/2015 | CDK-SUMMIT | 11/11/2016 |
| 61168 | McCurdy FFC, LTD | U | SUM0308 | SUMMIT CONS RMT UT | 7/13/2015 | CDK-SUMMIT | 11/11/2016 |
| 61477 | FISH Automotive, Inc | U | SUM2015 | SUMMIT TOYOTA | 7/13/2015 | CDK-SUMMIT | 11/11/2016 |
| 58928 | Paramount Nissan, LLC | U | SUM1234 | SERVICE TRACK | 7/13/2016 | CDK-SUMMIT | 11/11/2016 |
| 58896 | Cspac, Inc | U | SUM3113 | TXM KPI | 7/10/2015 | CDK-SUMMIT | 11/15/2016 |
| 58966 | J D Acquisitions, Inc | U | SUM0910 | TOYOTA EXP MAINT | 7/10/2015 | CDK-SUMMIT | 11/10/2016 |
| 70849 | Bell Ford Inc | U | SUM2015 | SUMMIT CONS | 7/10/2016 | CDK-SUMMIT | 11/13/2016 |

CX4459-014

**FTC-0000459**

| System Number | System Name | Country | Exemption Date | User id | User Name | Added Date | Template | last login |
|---|---|---|---|---|---|---|---|---|
| 70648 | DAYTONA OHIO INC | US | | SUMORB15 | SUMMIT CONSULTING | 7/10/2015 CDK-SUMMIT | | 11/19/2016 |
| 60461 | Curtis Green Clay Green Inc | US | | SUMXY251 | SUMO751 | 7/10/2015 CDK-SUMMIT | | 11/19/2016 |
| 58106 | Conaway AG LLC | US | | SUM0N101 | SUMMIT | 7/10/2015 CDK-SUMMIT | | 11/19/2016 |
| 61067 | Palace of Cherry Hill Road, Inc | US | | | Joseph SumCon T66xM | 7/10/2015 CDK-SUMMIT | | 11/11/2016 |
| 55517 | TERAKE FORD LINCOLN INC LLC | US | | SUM43803 | SUM1980 | 7/9/2015 CDK-SUMMIT | | 11/12/2016 |
| 60532 | Joseph Chevrolet Company | US | | SUMCON6 | SUMCON | 7/8/2015 CDK-SUMMIT | | 11/10/2016 |
| 70280 | COVERT FORD INC | US | | SUM6903 | FORD WHOLE GROWTH | 7/6/2016 CDK-SUMMIT | | 11/11/2016 |
| 61132 | SNIDER MOTORS INC | US | | SUM44283 | SUMMIT TOYOTA | 7/6/2016 CDK-SUMMIT | | 11/16/2016 |
| 61496 | LV TOY OPERATIONS, LLC | US | | SUM61101 | SUMMIT | 7/2/2015 CDK-SUMMIT | | 11/11/2016 |
| 58500 | Bert Ogden Chevrolet Inc | US | | SUM21294 | SUMMIT TOYOTA SERVIC | 6/29/2015 CDK-SUMMIT | | 11/11/2016 |
| 61411 | Ocean Ford LLC | US | | SUM01181 | SUMMIT (PARTS) | 6/24/2015 CDK-SUMMIT | | 11/11/2016 |
| 61623 | Boerman Motor Company LLC | US | | SUM42019 | FORD WHOLESALE PARTS | 6/22/2015 CDK-SUMMIT | | 11/11/2016 |
| 56452 | HOBBS AUTOMOTIVE INC | US | | SUM01101 | INTEGRABANK | 6/19/2015 CDK-SUMMIT | | 11/31/2016 |
| 61802 | Robbins Motor Company, Inc | US | | SKM1111 | ST360 | 6/19/2015 CDK-SUMMIT | | 11/11/2016 |
| 56840 | Car Masters of Greenville Inc | US | | SUM2015 | SUMMIT 360 | 6/5/2015 CDK-SUMMIT | | 11/31/2016 |
| 59130 | Stadium Inc | US | | SUM12884 | INTEGRALINE/SUMMIT | 6/5/2015 CDK-SUMMIT | | 11/19/2016 |
| 60447 | Patterson Motors of Marshall, Inc | US | | SUM2015 | SUMMIT | 6/4/2015 CDK-SUMMIT | | 11/31/2016 |
| 70215 | Gwinnett Automotive Co | US | | SUM1234 | SNDTY-SUMMIT | 5/29/2015 CDK-SUMMIT | | 11/11/2016 |
| 60580 | Family Toyota of Burleson | US | | SUMM015 | SUMMIT | 5/29/2015 CDK-SUMMIT | | 11/31/2016 |
| 61284 | Arrow Properties Inc | US | | SUM44228 | SUMMER SMITH | 5/22/2015 CDK-SUMMIT | | 11/11/2016 |
| 70394 | HEMPSTEAD LINK ARERC MOTOR CORP | US | | SUM42360 | ST360 | 5/22/2015 CDK-SUMMIT | | 11/11/2016 |
| 56287 | OAKES AUTOMOTIVE INC | US | | SUM44452 | DEALER LINK | 5/21/2015 CDK-SUMMIT | | 11/11/2016 |
| 54681 | The Loving Way, Inc | US | | SUM21015 | JEREMY THOMAS | 5/18/2015 CDK-SUMMIT | | 11/11/2016 |
| 58575 | Time Auto Sales Inc | US | | SUM1234 | SUMMIT CONSULTING | 5/18/2015 CDK-SUMMIT | | 11/11/2016 |
| 58648 | Dutch Ford Lincoln Inc | US | | SUM1288 | Summit PSX | 5/18/2015 CDK-SUMMIT | | 11/11/2016 |
| 70009 | PHIL SMITH MANAGEMENT INC | US | | SUM42015 | SUMMIT | 5/12/2015 CDK-SUMMIT | | 11/11/2016 |
| 62031 | Central Nissan Ltd | US | | SUM2167 | SUMMIT | 5/12/2016 CDK-SUMMIT | | 11/11/2016 |
| 58570 | Kandel Imports LLC | US | | SUM07618 | PARTS SALES ECELLERA | 5/2/2016 CDK-SUMMIT | | 11/11/2016 |
| 57501 | Automotive Operations LP | US | | SUM1234 | SUMMIT | 4/30/2015 CDK-SUMMIT | | 11/11/2016 |
| 59783 | HERRINGEAR CHEVROLET CO, INC | US | | SUM1234 | SUMMIT 360 | 4/27/2015 CDK-SUMMIT | | 11/11/2016 |
| 61057 | TM Automotive, Inc | US | | SUM21234 | SUMMIT CONSULTING | 4/27/2015 CDK-SUMMIT | | 11/10/2016 |
| 62118 | Big Valley Ford Inc | US | | SUM05424 | INTEGRALINE SUMMIT | 4/26/2015 CDK-SUMMIT | | 11/10/2016 |
| 58683 | Hampton Automotive Inc | US | | SUM21248 | SUMMIT SERVICE TRACK | 4/24/2015 CDK-SUMMIT | | 11/11/2016 |
| 62090 | WADE OF WEST ALLIS INC | US | | SUM0101 | SUMMIT CONSULT TOY | 4/19/2015 CDK-SUMMIT | | 11/11/2016 |
| 62287 | BIVER INC | US | | SUM4888 | SUMMIT | 4/18/2015 CDK-SUMMIT | | 11/11/2016 |
| 61514 | Jim Brown Chevrolet Inc | US | | TM5 | TOYOTA MOTOR | 4/16/2015 CDK-SUMMIT | | 11/10/2016 |
| 56000 | Niland Auto Sales Inc | US | | SUM2016 | Summit Com | 4/14/2015 CDK-SUMMIT | | 11/11/2016 |
| 58270 | Jackson Automotive Investments LLC | US | | SUM1234 | SUMMIT | 4/11/2015 CDK-SUMMIT | | 11/11/2016 |
| 61658 | Beaver Motors, Inc | US | | SUM1234 | SUMMIT | 4/7/2015 CDK-SUMMIT | | 11/11/2016 |
| 61707 | PMG Auto Sales of South Dallas, LLC | US | | SBRODIE | BRODIE SUMMIT | 4/7/2015 CDK-SUMMIT | | 11/11/2016 |
| 60520 | Harlow of Beaver City Inc | US | | SUM5878 | Summit | 4/6/2015 CDK-SUMMIT | | 11/11/2016 |
| 61928 | Schaumburg Toyota Inc | US | | SUM1234 | SUMMIT CONSULT ST | 4/6/2016 CDK-SUMMIT | | 11/10/2016 |
| 61294 | MRG LLP | US | | SUM0000 | SUMMIT CONSULTING | 4/6/2015 CDK-SUMMIT | | 11/31/2016 |
| 61512 | Zaremba Automotive Group | US | | INTL | INTEGRABANK | 4/6/2015 CDK-SUMMIT | | 11/31/2016 |
| 54656 | VanTrow LLC | US | | SUM1234 | SUMMIT | 4/4/2015 CDK-SUMMIT | | 11/11/2016 |
| 60600 | RAY HUFFINES CHEVROLET INC | US | | SUM2016 | SUMMIT CONSULTING | 4/1/2016 CDK-SUMMIT | | 15/9/2016 |
| 61648 | NuCar Connection, Inc | US | | ITAYLOR | OLIVIA TAYLOR | 4/1/2015 CDK-SUMMIT | | 11/11/2016 |
| 58891 | Classic Olds Pont GMC Truck LTD | US | | 2496VMMIT | V JAN SUMMIT CONSULT | 3/24/2014 CDK-SUMMIT | | 11/9/2016 |
| 62336 | MRZME LLC | US | | SUM5101 | SUMMIT | 3/14/2015 CDK-SUMMIT | | 12/8/2016 |
| 79617 | TV of Daytona Beach, LLC | US | | SUM1234 | DMV/INTEGRALINT | 3/8/2016 CDK-SUMMIT | | 11/12/2016 |
| 61537 | Titus Will Ford Sales Inc | US | | SEAHR | SEAH RON | 2/25/2015 CDK-SUMMIT | | 11/11/2016 |
| 61990 | Allen Automotive, Inc | US | | RBARNETT | FOSS BARNETT | 2/25/2015 CDK-SUMMIT | | 11/10/2016 |
| 61176 | Hazelton Chevrolet Inc | US | | DANDYK | ANDERSON KYLE | 2/25/2015 CDK-SUMMIT | | 11/10/2016 |
| 62082 | FREEMAN MOTORS | US | | SERVICEINFO | SERVICE DEPT | 2/25/2015 CDK-SUMMIT | | 11/11/2016 |
| 56547 | Copeland Enterprises Inc | US | | JWILLIAMS | JUSTIN WILLIAMS | 2/24/2015 CDK-SUMMIT | | 11/20/2016 |
| 61909 | John Greek Johnson Motor Co | US | | SUM4898 | SUMMIT | 2/18/2016 CDK-SUMMIT | | 11/10/2016 |
| 58012 | Phil Wright Autoplex Inc | US | | SUM1234 | SUMMIT | 2/8/2015 CDK-SUMMIT | | 11/11/2016 |
| 61680 | Everett Buick GMC, LLC | US | | SBUM42385 | SUMMIT PROGRAM | 2/8/2016 CDK-SUMMIT | | 11/11/2016 |
| 15344 | Napleton Master Sales Inc | US | 4/6/2017 | JOSHUADGMGMC | JEREMY | 7/13/2015 DYNAMIC-REPORTING | | 11/11/2016 |
| 61180 | Arbor Tree Management, Inc | US | 2/16/2017 | JCHRISH | CHRIS BELL | 6/1/2016 DYNAMIC-REPORTING | | 13/16/2016 |
| 61180 | Arbor Tree Management, Inc | US | 2/16/2017 | YSHELLYD | SHELLY DAVIS | 6/1/2016 DYNAMIC-REPORTING | | 11/11/2016 |
| 61180 | Arbor Tree Management, Inc | US | 2/16/2017 | YSARBIEG | KARRIE GLENN | 6/1/2016 DYNAMIC-REPORTING | | 13/17/2016 |
| 61180 | Arbor Tree Management, Inc | US | 8/4/2017 | YKYBINS | R SKYALL WOOD | 6/1/2016 DYNAMIC-REPORTING | | 31/11/2016 |
| 61180 | Arbor Tree Management, Inc | US | 8/6/2017 | YLYRDAM | LYKDA MOORE | 6/1/2016 DYNAMIC-REPORTING | | 11/31/2016 |
| 61180 | Arbor Tree Management, Inc | US | 8/4/2017 | RAPRILY | APRIL YORK | 6/1/2016 DYNAMIC-REPORTING | | 11/11/2016 |
| 61180 | Arbor Tree Management, Inc | US | 8/8/2017 | YBSARBSH | BSARCIA BURSS | 6/1/2015 DYNAMIC-REPORTING | | 13/11/2016 |
| 56983 | Flow Automotive Center of Winston-Salem, LLC | US | 11/27/2016 | GMPARTS13 | GMPARTS 13 | 11/4/2016 FLOW | | 11/22/2016 |
| 56983 | Flow Automotive Center of Winston-Salem, LLC | US | 11/27/2016 | GMPARTS6 | GM PARTS WAREHOUSE | 11/4/2016 FLOW | | 13/17/2016 |
| 56983 | Flow Automotive Center of Winston-Salem, LLC | US | 5/8/2017 | JTEXTRACT3 | JVEXTRACT3 | 8/5/2015 FLOW | | 11/11/2016 |
| 56983 | Flow Automotive Center of Winston-Salem, LLC | US | 5/9/2017 | RJAW | BUTHIE JAW | 8/4/2015 FLOW | | 13/11/2016 |
| 56983 | Flow Automotive Center of Winston-Salem, LLC | US | 5/8/2017 | JTEXTRACT | EXTRACT | 7/29/2015 FLOW | | 11/11/2016 |
| 70421 | FLOW MOTORS OF STATESVILLE, LLC | US | 5/9/2017 | JTEXTRACT | | 5/1/2014 FLOW | | 13/17/2016 |
| 70160 | Kaza Management Inc | US | 5/5/2017 | JACSASON | JONATHAN ALONSO | 12/30/2015 GABRF | | 13/11/2016 |
| 70160 | Kaza Management Inc | US | 5/5/2017 | JBOULMEITMC | CHRIS BOULMEITS | 12/30/2015 GABRF | | 13/12/2016 |
| 70634 | GL Orange LLC | US | 5/8/2017 | GABRFEXTRA | GABRF DATA EXTRACT | 9/30/2015 GABRF | | 11/11/2016 |
| 61826 | MOORES MINNETONKA SUBARU, LLC | US | 5/23/2017 | YBIN | VIN | 11/17/2015 GABRF | | 10/10/2016 |
| 61625 | MOORES MINNETONKA SUBARU, LLC | US | 5/23/2017 | JDMRR | TEST | 11/17/2015 GABRF | | 11/16/2016 |
| 70634 | GL Orange LLC | US | 5/9/2017 | 99MATTWRPT | MATT WILKINSON - RPT | 10/1/2014 GABRF | | 11/7/2016 |
| 60878 | Garff Enterprises Inc | US | 5/8/2017 | 99MATTWRPT | MATT WILKINSON - RPT | 10/1/2014 GABRF | | 13/2/2016 |
| 70269 | GL Cash, LLC | US | 5/9/2017 | 99MATTWRPT | MATT WILKINSON - RPT | 10/1/2014 GABRF | | 13/2/2016 |
| 70634 | GL Orange LLC | US | 2/27/2017 | SMARINI | MARY KAY MARIN | 9/29/2015 GABRF | | 11/7/2016 |
| 60878 | Garff Enterprises Inc | US | 2/27/2017 | 1STRACIE | TRACIE KLASER | 9/8/2015 GABRF | | 11/16/2016 |
| 60878 | Garff Enterprises Inc | US | 6/25/2017 | 1GRIS | SUSAN STRONG | 8/29/2015 GABRF | | 11/16/2016 |
| 60878 | Garff Enterprises Inc | US | 6/25/2017 | 72CHAD | CHAD NALDER | 8/27/2015 GABRF | | 11/3/2016 |
| 60878 | Garff Enterprises Inc | US | 8/6/2017 | 99ANDYO | ANDY UTSMARER | 8/27/2015 GABRF | | 11/11/2016 |
| 70634 | GL Orange LLC | US | 8/6/2017 | 7DMARER | MARK BIGGER | 8/27/2015 GABRF | | 13/18/2016 |
| 70249 | GL Cash, LLC | US | 8/6/2017 | 70MARKER | MARK BIGGER | 8/27/2015 GABRF | | 13/18/2016 |
| 60878 | Garff Enterprises Inc | US | 8/6/2017 | 70MARKER | MARK BIGGER | 8/27/2015 GABRF | | 13/18/2016 |
| 70249 | GL Cash, LLC | US | 8/8/2017 | 90CORDO | CORY OSTMARK | 8/20/2015 GABRF | | 13/18/2016 |
| 70634 | GL Orange LLC | US | 8/8/2017 | 10CODAVO | CODY COTTMARK | 8/20/2015 GABRF | | 11/10/2016 |
| 60878 | Garff Enterprises Inc | US | 8/6/2017 | 71SADNE | SADIE MERKS | 8/20/2015 GABRF | | 11/11/2016 |
| 60878 | Garff Enterprises Inc | US | 8/25/2017 | GRAUNE | ERLLINK REYNOLLOADS | 8/14/2015 GABRF | | 11/2/2016 |
| 60878 | Garff Enterprises Inc | US | 6/25/2017 | 99MATTW | MATT WILKINSON | 8/14/2015 GABRF | | 11/2/2016 |

CX4459-015

| System Number | System Name | Country | Exemption Date | User Id | User Name | Added Date | Template | Last Login |
|---|---|---|---|---|---|---|---|---|
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 72TGOD | TODD SNOW | 8/13/2016 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 90LAGGE | LAURIE GARDNER | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 2GRBN | BEN PACE | 8/6/2015 | GARRF | 11/11/2016 |
| 60979 | Garff Enterprises Inc | U | 8/5/2017 | 72PHILH | PHIL HALLINA | 8/6/2015 | GARRF | 11/13/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 72KRLBV1 | KRLBY SAXTON | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 63GAYB | GAYLENE BARNES | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 63FODP | FOD PETERSON | 8/6/2015 | GARRF | 11/12/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 71DENOCBN | DENICE NOLESON | 8/6/2015 | GARRF | 11/12/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 10CYBYO | COBY OSFMARK | 8/6/2015 | GARRF | 11/10/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 70JBFJB | JEBF BAUR | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 10BBANDHG | BRANDH FULLLNER | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 72KARLL | KARL LUTZ | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 73DAVDS | DAVID SHAKESPEAR | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 72CBRAW | CHERA WEBBREN | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 50DEEANNC | DEEANN CAPENTER | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 16SHERCZBH | SHERICE HENRIQUEZ | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 72CRSTALT | CRYSTAL TRACY | 8/6/2015 | GARRF | 12/10/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 72DANB | DANIEL BALDWIN | 8/6/2015 | GARRF | 11/12/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 70KARENB | KAREN BROWN | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 41LDBN | LORI BENSON | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 72EDA | ED ALLEN | 8/8/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 80LISA | LISA NIELSON | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 72BRIARK | BRIAN KIMS | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 10TIFHARGR | TIFFANY HARGRAVES | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 71SCOTTVB | SCOTT NILES | 8/8/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 70SFONCLRC | SPENCER CASTLE | 8/6/2015 | GARRF | 11/12/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 10REBECCAP | REBECCA PEARS | 8/8/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 10KIMG | KIM GARDNER | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 70CYNGOD | CYRDN DUKE | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/5/2017 | 72JOHANTHAN | JONATHAN HARRISON | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 70MARCHD | MARCI JACOBSEN | 8/8/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 43ROBB | ROB BAGLEY | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 43LISG | LIR GALUDIA | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 70SHERRY | SHERRY ALLRED | 8/6/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 8/8/2017 | 99MATTWDM | MATT WILKINSON | 8/6/2015 | GARRF | 11/11/2016 |
| 70634 | GL Orange LLC | U | 8/8/2017 | 10TAYSB | Stacey Reynolds | 8/6/2015 | GARRF | 11/11/2016 |
| 70634 | GL Orange LLC | U | 8/7/2017 | 71BWARAM | TIMWARA SKOMDRES | 8/9/2015 | GARRF | 11/11/2016 |
| 70634 | GL Orange LLC | U | 8/6/2017 | 51FLODH | FLOYD HATCH | 8/8/2015 | GARRF | 11/11/2016 |
| 70634 | GL Orange LLC | U | 8/7/2017 | 51UHANF | Uliana Franz | 8/8/2015 | GARRF | 11/11/2016 |
| 70634 | GL Orange LLC | U | 8/6/2017 | 4DANG | JOSE DAN GOMEZ | 8/9/2015 | GARRF | 11/11/2016 |
| 70634 | GL Orange LLC | U | 8/7/2017 | 41CARLOS3 | 12CARLOS SERVIN | 8/7/2015 | GARRF | 11/11/2016 |
| 70634 | GL Orange LLC | U | 8/8/2017 | 51LSS | Lea Sanders | 8/4/2015 | GARRF | 11/11/2016 |
| 70634 | GL Orange LLC | U | 8/8/2017 | 5MKEP | Mike Partridge | 8/9/2015 | GARRF | 11/11/2016 |
| 70634 | GL Orange LLC | U | 8/7/2017 | 51FRZF | STEVE FRAZELL | 8/9/2015 | GARRF | 11/11/2016 |
| 70040 | GL Cross, LLC | U | 8/8/2017 | 5BENDRA | BRENDA ADKISSON | 8/5/2015 | GARRF | 12/12/2015 |
| 60976 | UPT OF CHEVROLET CXUS INC | U | 5/23/2017 | 7PATMC | PATRICK MCKINLEY | 7/6/2015 | GARRF | 11/13/2016 |
| 61104 | JONES JUNCTION INC | U | 7/27/2017 | 5DBRAC | DEBRA MCCOLLUM | 7/6/2016 | GARRF | 11/11/2016 |
| 61104 | JONES JUNCTION INC | U | 7/26/2017 | 5MRBINO | MICHELLE RUBINO | 7/6/2015 | GARRF | 11/11/2016 |
| 61104 | JONES JUNCTION INC | U | 7/26/2017 | 5MSIGNS | MEGAN SIGMOND | 7/6/2016 | GARRF | 11/11/2016 |
| 70634 | GL Orange LLC | U | 7/26/2017 | 1LARKOT | TARA BRUNO | 7/6/2015 | GARRF | 11/11/2016 |
| 70634 | GL Orange LLC | U | 6/27/2017 | 5ESTHERK | ESTHER KRVNSKY | 6/5/2015 | GARRF | 11/11/2016 |
| 70634 | GL Orange LLC | U | 6/27/2017 | 5KVLEHSON | KYLE HENSON | 6/5/2015 | GARRF | 11/12/2016 |
| 70634 | GL Orange LLC | U | 6/27/2017 | 5CHRISTINA | CHRISTINA DININKO | 6/5/2015 | GARRF | 11/11/2016 |
| 70634 | GL Orange LLC | U | 6/27/2017 | 5MARTTW | MARTY WILKINSON | 6/5/2015 | GARRF | 12/8/2016 |
| 60978 | Garff Enterprises Inc | U | 6/27/2017 | 7ANNKBF | JANICE FRITZ | 6/5/2015 | GARRF | 11/16/2016 |
| 60978 | Garff Enterprises Inc | U | 6/25/2017 | 70LYNNBG | LYNNE GRAU | 6/5/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 6/25/2017 | 50DAVDS | DAVE SPRINGER | 6/5/2015 | GARRF | 12/10/2016 |
| 60978 | Garff Enterprises Inc | U | 6/25/2017 | 43JEANNBG | JEANNE GREGORY | 6/5/2015 | GARRF | 11/10/2016 |
| 60978 | Garff Enterprises Inc | U | 6/25/2017 | 90SAMMIEB | SAMMIE BAGLEY | 6/5/2015 | GARRF | 11/10/2016 |
| 60978 | Garff Enterprises Inc | U | 6/25/2017 | 5KENSON | KYLE HENSON | 6/5/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 6/25/2017 | 10RENEK | RENEE KENNEDY | 6/5/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 6/25/2017 | 99BECKYS | BECKY STARSBURG | 6/5/2015 | GARRF | 11/7/2016 |
| 60978 | Garff Enterprises Inc | U | 6/25/2017 | 43SHELLYO | SHELLY OLSEN | 6/5/2015 | GARRF | 11/11/2016 |
| 60978 | Garff Enterprises Inc | U | 6/25/2017 | 41KIM | KIM STRASBURG | 6/5/2015 | GARRF | 11/10/2016 |
| 70249 | GL Cross, LLC | U | 6/27/2017 | 98MATTW | MATT WILKINSON | 6/5/2015 | GARRF | 11/4/2016 |
| 70249 | GL Cross, LLC | U | 6/27/2017 | 4KIMG | KIM GOONSON | 6/5/2015 | GARRF | 11/11/2016 |
| 70249 | GL Cross, LLC | U | 6/27/2017 | 51CORDDLLO | CORDELL BENNETT | 6/5/2015 | GARRF | 11/11/2016 |
| 70249 | GL Cross, LLC | U | 6/27/2017 | 5DAVDS | DAVE SPRINGER | 6/5/2015 | GARRF | 11/8/2016 |
| 61626 | MORRIES MINNETONKA SUBARU, LLC | U | 5/28/2017 | 5ANFRZ | RO BERT ZUNIGA | 4/27/2016 | GARRF | 11/11/2016 |
| 61626 | MORRIES MINNETONKA SUBARU, LLC | U | 5/23/2017 | 4AMYC | BO 1618 AMY CHAPUT | 4/27/2016 | GARRF | 11/11/2016 |
| 61626 | MORRIES MINNETONKA SUBARU, LLC | U | 5/23/2017 | 5NANCYK | BL 1340 NANCY KRIEKS | 4/27/2016 | GARRF | 11/11/2016 |
| 61626 | MORRIES MINNETONKA SUBARU, LLC | U | 5/23/2017 | 1YNKK | BO 1616 MGHUN | 4/27/2016 | GARRF | 11/11/2016 |
| 61626 | MORRIES MINNETONKA SUBARU, LLC | U | 5/23/2017 | 1TRISHAP | BO 1614 PAZL | 4/27/2016 | GARRF | 11/11/2016 |
| 61626 | MORRIES MINNETONKA SUBARU, LLC | U | 5/23/2017 | 5IKWK | STICKAR MISMAT VARITIEB | 4/27/2016 | GARRF | 10/26/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 72MILSSCM | MICHAEL HALSEY | 3/2/2016 | GARRF | 11/11/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 7HALLSV | VICKI HALES | 3/2/2016 | GARRF | 11/11/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 72HLLN | NOREEN HILLS | 3/2/2016 | GARRF | 11/11/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 5TSCHAUB | ANSHANNA TSCHAU | 3/2/2016 | GARRF | 11/11/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 72KRmamuTHF | THRESSA RAMMANTTH | 3/2/2016 | GARRF | 11/4/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 4BLANKETTB | RUNANSKY BLANKETT | 3/2/2016 | GARRF | 11/11/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 12KHESTERK | KAREN HESTER | 3/2/2016 | GARRF | 11/11/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 75ZSASH1 | JOE SAXON | 3/2/2016 | GARRF | 10/26/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 2ROCKMERT | TORKRY BROOMER | 3/2/2016 | GARRF | 11/11/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 5SCHILRN | VICKIE SCHULER | 3/2/2016 | GARRF | 11/11/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 7FRBERMUTHK | JOHN FATBERMUTH | 3/2/2016 | GARRF | 11/9/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 1LFALGARDNER | RACHEL ALGARDNER | 3/2/2016 | GARRF | 11/9/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 72MATTHEWC | CHERB MATTHEW | 3/2/2016 | GARRF | 11/7/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 5NEVRMAHA | AMY NEVRMAN | 3/2/2016 | GARRF | 11/11/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 5BISHOPPZ | CHERYL BISHOPP | 3/2/2016 | GARRF | 11/11/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 5SHETHP | FRNCHI SHETH | 3/2/2016 | GARRF | 11/6/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 72MCGARINE | SARA MCGRATIN | 3/2/2016 | GARRF | 11/1/2016 |
| 70160 | Kapa Management Inc | U | 6/27/2017 | 795NCKM | KRARIJA ROLICK | 3/2/2016 | GARRF | 11/6/2016 |

CX4459-016

**FTC-0000461**

| System Number | System Name | Country | Exemption Date | User Id | User Name | Added Date | Terephone | Last Login |
|---|---|---|---|---|---|---|---|---|
| 70120 | Kaga Management Inc | U | 6/27/2017 | 67MCMILLENW | WENDY MCMILLEN | 9/2/2015 GARRF | | 11/11/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/21/2017 | 72WILLIAMS | STEVEN WILLIAMS | 2/16/2015 GARRF | | 11/11/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 79MALESV | VICKI MALES | 2/16/2015 GARRF | | 11/10/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 75SANTIAGOW | WALEESKA SANTIAGO | 2/16/2015 GARRF | | 12/8/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 70WYEROB | ELIZABETH OWENS | 2/18/2015 GARRF | | 09/29/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 75SHETHP | PROCHI SHETH | 2/16/2015 GARRF | | 10/8/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 70CROSBYR | RON CROSBY | 2/18/2015 GARRF | | 15/12/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 70MATTHEWC | CHERIE MATTHEW | 2/16/2015 GARRF | | 15/12/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 70CROSBYR | RON CROSBY | 2/18/2015 GARRF | | 15/11/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 75SHETHP | PROCHI SHETH | 2/16/2015 GARRF | | 15/12/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 72ZALESYM | MICHAEL ZALESKY | 2/16/2015 GARRF | | 15/7/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 7MILLARM | SATS | 2/16/2015 GARRF | | 10/11/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 78RAMNAUTHT | THELMA RAMNAUTH | 2/18/2015 GARRF | | 11/4/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 78OURMEYSC | CHRIS BOURMEYIS | 2/16/2015 GARRF | | 12/8/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 70ALONSOJ | JONATHAN ALONSO | 2/18/2015 GARRF | | 11/9/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 79BOUCKM | MARIA BOUCK | 2/16/2015 GARRF | | 11/8/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 75SANTIAGOW | WALEESKA SANTIAGO | 2/16/2015 GARRF | | 11/10/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 70FERAN | NANCY FERA | 3/16/2015 GARRF | | 11/9/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 79OTELLAR | ROBERT ROTELLA | 3/16/2015 GARRF | | 10/31/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 75HETHP | PROCHI SHETH | 3/16/2015 GARRF | | 13/11/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 7ARMONDC | CHRIS RAYMOND | 3/16/2015 GARRF | | 11/21/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 70COOPERC | CHRISTINA COOPER | 3/16/2015 GARRF | | 10/8/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 79OUCKM | MARCIA BOUCK | 2/16/2015 GARRF | | 12/8/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 7PLANTEA | ARLYN PLANTE | 3/16/2015 GARRF | | 13/11/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 72WILLIAMSS | STEVEN WILLIAMS | 2/16/2015 GARRF | | 13/12/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 73HOLLINGSWOR | VICKIE HOLLINGSWORTH | 2/16/2015 GARRF | | 11/6/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 7ZALONSOJ | JONATHAN ALONSO | 2/16/2015 GARRF | | 11/9/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 7MATTHEWC | CHERIE MATTHEW | 2/18/2015 GARRF | | 15/12/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 72ALESKYM | MICHAEL ZALESKY | 2/16/2015 GARRF | | 15/7/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 7RAMNAUTHJ | JOHN FREDERMUTH | 2/18/2015 GARRF | | 11/9/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 78OURMEYSC | CHRIS BOURMEYIS | 2/16/2015 GARRF | | 13/11/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 70SASSIN | JOE SASSIN | 2/16/2015 GARRF | | 13/7/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 78RAMNAUTH | THELMA RAMNAUTH | 2/16/2015 GARRF | | 15/7/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 70CROSBYR | RON CROSBY | 2/18/2015 GARRF | | 13/11/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 780MERT | TORREY BOOMER | 2/16/2015 GARRF | | 13/13/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 78ROWNM | NATASHA BROWN | 2/18/2015 GARRF | | 13/11/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 75HUTEK | KEN SHUTE | 2/16/2015 GARRF | | 15/4/2016 |
| 70026 | AUTOMOTIVE MANAGEMENT SERVICES, INC | U | 2/28/2017 | 70WERSE | VICKY HOLLINGSWORTH | 9/16/2015 GARRF | | 15/7/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 7PLANTEA | ARLYN PLANTE | 2/16/2015 GARRF | | 13/10/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 7REDERMUTHJ | JOHN FREDERMUTH | 2/16/2015 GARRF | | 11/9/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 70SASSIN | JOE SASSIN | 2/18/2015 GARRF | | 13/11/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 78ROWNN | NATASSA BROWN | 2/16/2015 GARRF | | 13/11/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 72ALESKYM | MICHAEL ZALESKY | 2/16/2015 GARRF | | 15/7/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 780OMERT | TORREY BOOMER | 2/16/2015 GARRF | | 13/7/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 78RAMNAUTHT | THELMA RAMNAUTH | 2/16/2015 GARRF | | 15/4/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 7SMITHI | IAN SMITH | 2/16/2015 GARRF | | 13/11/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 78OULMETSC | CHRIS BENAMETIS | 2/16/2015 GARRF | | 13/12/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 78OUCKM | MARIA BOUCK | 2/16/2015 GARRF | | 13/9/2016 |
| 70617 | TT of Daytona Beach, LLC | U | 2/28/2017 | 7ZALONSOJ | JONATHAN ALONSO | 2/16/2015 GARRF | | 11/9/2016 |
| 70644 | TT of TAMIAMI, INC | U | 3/13/2017 | 72WILLIAMSS | STEVEN WILLIAMS | 2/16/2015 GARRF | | 10/10/2016 |
| 70158 | TT of Littleton Inc | U | 2/28/2017 | 73HOLLINGSWOR | VICKI HOLLINGSWORA | 2/16/2015 GARRF | | 11/11/2016 |
| 70133 | TT of Littleton Inc | U | 2/28/2017 | 7ALONSOJ | JONATHAN ALONSO | 2/18/2015 GARRF | | 11/10/2016 |
| 70133 | TT of Littleton Inc | U | 2/28/2017 | 7MATTHEWC | CHERIE MATTHEW | 2/16/2015 GARRF | | 10/10/2016 |
| 70644 | TT OF TAMIAMI, INC | U | 3/13/2017 | 7MATTHEWC | CHERIE MATTHEW | 2/16/2015 GARRF | | 11/2/2016 |
| 70644 | TT OF TAMIAMI, INC | U | 3/13/2017 | 7CROSBYR | RON CROSBY | 2/18/2015 GARRF | | 13/9/2016 |
| 70644 | TT OF TAMIAMI, INC | U | 3/13/2017 | 7SHETHP | PROCHI SHETH | 2/16/2015 GARRF | | 11/11/2016 |
| 70644 | TT OF TAMIAMI, INC | U | 3/13/2017 | 78OURMETISC | CHRIS BOURMEYIS | 2/16/2015 GARRF | | 13/12/2016 |
| 70644 | TT OF TAMIAMI, INC | U | 3/13/2017 | 78OUCKM | MARCIA BOUCK | 2/16/2015 GARRF | | 15/9/2016 |
| 70644 | TT OF TAMIAMI, INC | U | 3/13/2017 | 7ALONSOJ | JONATHAN ALONSO | 2/16/2015 GARRF | | 11/9/2016 |
| 70644 | TT OF TAMIAMI, INC | U | 3/13/2017 | 73HOLLINGSWOR | VICKIE HOLLINGSWORTH | 2/16/2015 GARRF | | 11/11/2016 |
| 70644 | TT OF TAMIAMI, INC | U | 3/13/2017 | 7FREDERMUTHJ | JOHN FREDERMUTH | 2/16/2015 GARRF | | 11/11/2016 |
| 70644 | TT OF TAMIAMI, INC | U | 3/13/2017 | 7PLANTEA | ARLYN PLANTE | 2/16/2015 GARRF | | 11/11/2016 |
| 70644 | TT OF TAMIAMI, INC | U | 3/13/2017 | 70SASSIN | JOE SASSIN | 2/18/2015 GARRF | | 11/8/2016 |
| 70644 | TT OF TAMIAMI, INC | U | 3/13/2017 | 7THOMPSONL | LIZ THOMPSON | 2/16/2015 GARRF | | 11/9/2016 |
| 70644 | TT OF TAMIAMI, INC | U | 3/13/2017 | 72ALESKYM | MIKE ZALESKY | 2/16/2015 GARRF | | 11/11/2016 |
| 70644 | TT OF TAMIAMI, INC | U | 3/13/2017 | 780OMERT | TORREY BOOMER | 2/16/2015 GARRF | | 13/11/2016 |
| 70644 | TT OF TAMIAMI, INC | U | 3/13/2017 | 78AMNAUTH | THELMA RAMNAUTH | 2/16/2015 GARRF | | 11/12/2016 |
| 70133 | TT of Littleton Inc | U | 2/28/2017 | 70SASSIN | JOE SASSIN | 2/18/2015 GARRF | | 11/12/2016 |
| 70133 | TT of Littleton Inc | U | 2/28/2017 | 72ALESKYM | KELLY POPWELL | 2/18/2015 GARRF | | 11/9/2016 |
| 70133 | TT of Littleton Inc | U | 2/28/2017 | 7POPWELLK | IAN SMITH | 2/18/2015 GARRF | | 11/11/2016 |
| 70133 | TT of Littleton Inc | U | 2/28/2017 | 7SMITHI | MARY BOUCK | 2/16/2015 GARRF | | 15/4/2016 |
| 70133 | TT of Littleton Inc | U | 2/28/2017 | 78OULCKM | ARLYN PLANTE | 2/16/2015 GARRF | | 13/11/2016 |
| 70133 | TT of Littleton Inc | U | 2/28/2017 | 7PLANTEA | VENNIE HAMES | 2/16/2015 GARRF | | 11/11/2016 |
| 70133 | TT of Littleton Inc | U | 2/28/2017 | 7AMESV | JOHN FREDERMUTH | 2/18/2015 GARRF | | 11/19/2016 |
| 70133 | TT of Littleton Inc | U | 2/28/2017 | 7FREDERMUTHJ | CHRIS BOURMEYIS | 2/16/2015 GARRF | | 13/4/2016 |
| 70133 | TT of Littleton Inc | U | 2/28/2017 | 78OTELLAR | ROBERT ROTELLA | 2/18/2015 GARRF | | 11/9/2016 |
| 70133 | TT of Littleton Inc | U | 2/28/2017 | 78RAMNAUTHT | THELMA RAMNAUTH | 2/18/2015 GARRF | | 15/4/2016 |
| 70133 | TT of Littleton Inc | U | 2/28/2017 | 7CROSBYR | RON CROSBY | 2/16/2015 GARRF | | 13/11/2016 |
| 70133 | TT of Littleton Inc | U | 2/28/2017 | 75HUTEK | KEN SHUTE | 2/16/2015 GARRF | | 15/4/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 7THOMPSONL | LIZ THOMPSON | 2/18/2015 GARRF | | 11/7/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 7MATTHEWC | CHERIE MATTHEW | 2/16/2015 GARRF | | 11/9/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 73HOLLINGSWOR | VICKIE HOLLINGSWORTH | 2/16/2015 GARRF | | 11/11/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 7ROTELLAR | ROBERT ROTELLA | 2/16/2015 GARRF | | 13/4/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 7FREDERMUTHJ | JOHN FREDERMUTH | 2/16/2015 GARRF | | 11/9/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 7PLANTEA | ARLYN PLANTE | 2/18/2015 GARRF | | 15/11/2016 |
| 70645 | TT of Conyers Inc | U | 3/13/2017 | 70SASSIN | JOE SASSIN | 2/18/2015 GARRF | | 11/8/2016 |
| 70089 | So Inc, LLC | U | 8/6/2017 | GARRF | KIN GARRF AUTOMOTIVE | 2/7/2015 GARRF | | 11/11/2016 |
| 70159 | Kaga Management Inc | U | 6/27/2017 | 7CROSBYR | RON CROSBY | 1/25/2016 GARRF | | 11/11/2016 |
| 60978 | Gerff Enterprises Inc | U | 6/25/2017 | 7ADAMSG | ADAM GERBER | 1/11/2016 GARRF | | 12/32/2016 |
| 60978 | Gerff Enterprises Inc | U | 6/25/2017 | 7CURTISB | CURTIS BRACKLEY | 1/12/2016 GARRF | | 11/32/2016 |

CX4459-017

FTC-0000462

| System Number | System Name | Country | Registration Date | User Id | User Name | Added Date | Template | Last Login |
|---|---|---|---|---|---|---|---|---|
| 60928 | Garff Enterprises Inc | U | 8/25/2017 | BRENTB | BRENT ROGERS | 1/11/2016 GRRFF | | 11/11/2016 |
| 60976 | Garff Enterprises Inc | U | 4/25/2017 | PATRICKB | PATRICK BEACKLEY | 1/11/2016 GRRFF | | 11/11/2016 |
| 70133 | TT of Linkston Inc | U | 8/28/2017 | 7FROSTK | KEVIN FROST | 5/6/2015 GRRRF | | 11/10/2016 |
| 81192 | Triangle Auto Center Inc | U | 8/25/2017 | GUESTTRAQ | GUEST TRAQ | 6/28/2016 GUESTTRAQ | | 10/13/2016 |
| 63192 | Triangle Auto Center Inc | U | 8/25/2017 | 63GUESTFI | GUEST TRAQ FINANCE | 6/28/2016 GUESTTRAQ | | 10/18/2016 |
| 81192 | Triangle Auto Center Inc | U | 8/25/2017 | 63GUESTF1 | LWM GUEST TRAQ FIN | 6/28/2016 GUESTTRAQ | | 10/12/2016 |
| 63190 | Triangle Auto Center Inc | U | 8/25/2017 | 63GUESTSERV | GUEST TRAQ SERVICE | 6/28/2016 GUESTTRAQ | | 10/18/2016 |
| 70517 | Robert L Lipton Inc | U | 8/25/2017 | G63ESTFI | GUEST TRAQ | 6/28/2016 GUESTTRAQ | | 12/12/2016 |
| 70517 | Robert L Lipton Inc | U | 8/25/2017 | GUESTSERV | GHEST TRAQ | 6/28/2016 GUESTTRAQ | | 11/12/2016 |
| 70032 | Traders Chevrolet LLC | U | 5/8/2017 | 7LTC05AUT2 | CDNA 1 | 12/14/2015 HAG | | 11/14/2016 |
| 70265 | Gwinnett Automotive Co | U | 8/5/2017 | MONCOMGLOBAL | CDK GLOBAL | 12/9/2015 HAG | | 11/14/2016 |
| 70266 | Gwinnett Automotive Co | U | 7/28/2017 | 6PHAGDSRC | ADVANTAGE DEALER SVC | 11/25/2015 HAG | | 11/7/2016 |
| 70152 | Wilmington ATMTV Invstrs Co LLC | U | 3/28/2017 | 6XC05BATZ | CDNA 1 | 11/25/2015 HAG | | 11/12/2016 |
| 70236 | Pleasanton Automotive Co | U | 7/28/2017 | EXPC05 | CDNA GLOBAL | 10/15/2015 HAG | | 11/12/2016 |
| 70152 | City Chevrolet Automotive Co | U | 8/28/2017 | KRMCDRALY | CDNA1 BMW | 10/15/2015 HAG | | 11/13/2016 |
| 70265 | Gwinnett Automotive Co | U | 7/28/2017 | 5WNCDA | CDK GLOBAL | 9/24/2015 HAG | | 11/12/2016 |
| 70265 | Pleasanton Automotive Co | U | 7/28/2017 | 6UPCDK | CDK GLOBAL | 9/24/2015 HAG | | 11/12/2016 |
| 70264 | KANSAS CITY AUTOMOTIVE CO LP | U | 8/27/2017 | FINA | HAG CORP FIN ANALYST | 9/1/2015 HAG | | 11/9/2016 |
| 70182 | City Chevrolet Automotive Co | U | 8/27/2017 | FINA | CORP FIN ANALYSIS | 8/28/2015 HAG | | 10/20/2016 |
| 70265 | Gwinnett Automotive Co | U | 8/27/2017 | 6XTERAUTO | EXTERES AUTO | 8/20/2015 HAG | | 11/13/2016 |
| 70254 | KANSAS CITY AUTOMOTIVE CO LP | U | 8/27/2017 | 7VBERAUTO | EXTERES AUTO | 8/20/2015 HAG | | 11/13/2016 |
| 70196 | RICK HENDRICK CHEV AUTO CO | U | 8/27/2017 | RHCTCDK | CDK GLOBAL | 8/7/2015 HAG | | 11/13/2016 |
| 70252 | Wilmington ATMTV Invstrs Co LLC | U | 8/31/2017 | FINA | HAG CORP FIN ANALYST | 7/23/2016 HAG | | 11/9/2016 |
| 70152 | Wilmington ATMTV Invstrs Co LLC | U | 7/23/2017 | FINA | CORP FIN ANALYSIS | 7/21/2016 HAG | | 10/11/2016 |
| 70152 | Wilmington ATMTV Invstrs Co LTD | U | 6/27/2017 | AUTOGUARD | HAG CORP AUTOGUARD | 7/18/2015 HAG | | 11/10/2016 |
| 70505 | SOUTH BOULEVARD AUTO INV LTD | U | 8/27/2017 | AUTOGUARD | CORP FIN ANALYSIS | 7/18/2015 HAG | | 10/31/2016 |
| 70905 | SOUTH BOULEVARD AUTO INV LTD | U | 8/27/2017 | AUTOGUARD | HAG CORP AUTOGUARD | 7/18/2015 HAG | | 11/10/2016 |
| 70506 | SOUTH BOULEVARD AUTO INV LTD | U | 8/27/2017 | FINA | HAG CORP FIN ANALYSIS | 7/16/2015 HAG | | 11/7/2016 |
| 70254 | KANSAS CITY AUTOMOTIVE CO LP | U | 8/27/2017 | FINA | CORP FIN ANALYSIS | 7/13/2015 HAG | | 10/11/2016 |
| 70254 | KANSAS CITY AUTOMOTIVE CO LP | U | 8/27/2017 | AUTOGUARD | HAG CORP AUTOGUARD | 7/16/2015 HAG | | 11/20/2016 |
| 70195 | RICK HENDRICK CHEV AUTO CO | U | 8/27/2017 | AUTOGUARD | HAG CORP AUTOGUARD | 7/13/2015 HAG | | 11/10/2016 |
| 70198 | RICK HENDRICK CHEV AUTO CO | U | 8/27/2017 | FINA | HAG CORP FIN ANALYSIS | 7/13/2015 HAG | | 11/7/2016 |
| 70182 | City Chevrolet Automotive Co | U | 8/27/2017 | AUTOGUARD | HAG CORP AUTOGUARD | 7/13/2015 HAG | | 11/29/2016 |
| 70182 | City Chevrolet Automotive Co | U | 8/27/2017 | FINA | HAG CORP FIN ANALYSIS | 7/13/2015 HAG | | 11/9/2016 |
| 70265 | Gwinnett Automotive Co | U | 8/27/2017 | FINA | HAG CORP FIN ANALYSIS | 7/13/2015 HAG | | 10/11/2016 |
| 70265 | Gwinnett Automotive Co | U | 8/27/2017 | FINA | HAG CORP FIN ANALYSIS | 7/13/2015 HAG | | 11/28/2016 |
| 70236 | Maryland Motorcycle Investors LP | U | 8/27/2017 | FINA1 | HAG CORP FIN ANALYSIS | 7/13/2015 HAG | | 11/10/2016 |
| 70032 | Traders Chevrolet LLC | U | 6/28/2017 | FINA | CORP FIN ANALYSIS | 7/13/2015 HAG | | 10/11/2016 |
| 70032 | Traders Chevrolet LLC | U | 8/26/2017 | AUTOGUARD | HAG CORP AUTOGUARD | 7/13/2015 HAG | | 11/20/2016 |
| 70002 | Traders Chevrolet LLC | U | 6/28/2017 | FINA | CORP FIN ANALYSIS | 7/13/2015 HAG | | 10/11/2016 |
| 70236 | Maryland Motorcycle Investors LP | U | 8/27/2017 | FINA | HAG CORP FIN ANALYSIS | 7/13/2015 HAG | | 11/9/2016 |
| 70236 | Pleasanton Automotive Co | U | 8/27/2017 | FINA | HAG CORP FIN ANALYSIS | 7/13/2015 HAG | | 11/20/2016 |
| 70235 | Pleasanton Automotive Co | U | 6/27/2017 | AUTOGUARD | CORP FIN ANALYSIS | 7/13/2015 HAG | | 10/11/2016 |
| 70235 | Pleasanton Automotive Co | U | 8/27/2017 | AUTOGUARD | HAG CORP AUTOGUARD | 7/13/2015 HAG | | 11/30/2016 |
| 70180 | RICK HENDRICK CHEV AUTO CO | U | 8/27/2017 | FINA | CORP FIN ANALYSIS | 7/13/2015 HAG | | 10/11/2016 |
| 70235 | Pleasanton Automotive Co | U | 3/27/2017 | EXECEYEDNB | DASHBOARD DYNAMIC RE | 6/30/2016 HAG | | 11/8/2016 |
| 70152 | Wilmington ATMTV Invstrs Co LLC | U | 3/27/2017 | EXECEYE3 | EXECEYE | 6/30/2016 HAG | | 11/13/2016 |
| 70082 | Traders Chevrolet LLC | U | 3/21/2017 | EXECEYE3 | EXECEYE | 6/24/2016 HAG | | 11/13/2016 |
| 70005 | SOUTH BOULEVARD AUTO INV LTD | U | 8/28/2017 | HDMEXTERES | EXTERES AUTO | 5/20/2016 HAG | | 11/6/2016 |
| 70152 | Wilmington ATMTV Invstrs Co LLC | U | 6/27/2017 | EXECEYEDNB | EXECEYE EYE DYNRED | 4/25/2016 HAG | | 11/13/2016 |
| 70265 | Gwinnett Automotive Co | U | 8/4/2017 | EXECEYEDNS | EXECUTIVE EYE DYNAME | 4/25/2016 HAG | | 11/4/2016 |
| 70265 | Gwinnett Automotive Co | U | 8/4/2017 | EXECEYEDN3 | EXECUTIVE EYE DYNAME | 4/25/2016 HAG | | 11/13/2016 |
| 70274 | Maryland Motorcycle Investors LP | U | 8/4/2017 | EXECEYEDNBQ | DASHBOARD BACKUP OR | 4/25/2016 HAG | | 11/13/2016 |
| 70196 | Maryland Motorcycle Investors LP | U | 8/4/2017 | EXECEYEDN8 | DASHBOARD DYNAMIC RE | 4/25/2016 HAG | | 11/9/2016 |
| 70196 | RICK HENDRICK CHEV AUTO CO | U | 8/27/2017 | EXECEYEDN4 | DASHBOARD DYNAMIC RE | 4/25/2016 HAG | | 11/7/2016 |
| 70190 | RICK HENDRICK CHEV AUTO CO | U | 3/13/2017 | 9HRCARPEOPLE | CAR PEOPLE MARKETING | 3/10/2015 HAG | | 11/12/2016 |
| 70095 | Cosmo Automotive Co LLC | U | 3/29/2017 | 9COFINSCARS | PUREKARS | 3/10/2015 HAG | | 11/12/2016 |
| 70250 | Maryland Motorcycle Investors LP | U | 3/13/2017 | 7MCCPEOPLE | CAR PEOPLE | 3/10/2015 HAG | | 11/12/2016 |
| 70255 | Gwinnett Automotive Co | U | 7/28/2017 | 9HGAUTOARMED | AUTO ARMANDO | 3/10/2015 HAG | | 11/04/2016 |
| 70265 | Gwinnett Automotive Co | U | 7/28/2017 | 6PCAUTOARMED | AUTOARMED | 3/10/2015 HAG | | 11/7/2016 |
| 70182 | City Chevrolet Automotive Co | U | 7/28/2017 | 6CMAUTOARMOR | AUTOARMED | 3/10/2015 HAG | | 11/13/2016 |
| 70196 | RICK HENDRICK CHEV AUTO CO | U | 3/13/2017 | RHGCARPEOPLE | CARPEOPLE MARKETING | 3/10/2015 HAG | | 11/22/2016 |
| 70196 | Maryland Motorcycle Investors LP | U | 3/13/2017 | 9RHAUTHENTIC | AUTHENTICON | 3/10/2015 HAG | | 11/13/2016 |
| 70196 | Maryland Motorcycle Investors LP | U | 6/27/2017 | EXECEYE3 | EXECEYE | 2/26/2016 HAG | | 11/13/2016 |
| 70265 | Gwinnett Automotive Co | U | 6/27/2017 | EXECEYE3 | EXECEYE | 2/26/2016 HAG | | 11/13/2016 |
| 70266 | Gwinnett Automotive Co | U | 6/27/2017 | EXECEYE3 | EXECEYE | 2/26/2016 HAG | | 11/13/2016 |
| 70254 | KANSAS CITY AUTOMOTIVE CO LP | U | 6/27/2017 | EXECEYE3 | EXECEYE | 2/26/2016 HAG | | 11/13/2016 |
| 70254 | KANSAS CITY AUTOMOTIVE CO LP | U | 6/27/2017 | EXECEYE3 | EXECEYE | 2/26/2016 HAG | | 11/13/2016 |
| 70254 | KANSAS CITY AUTOMOTIVE CO LP | U | 6/27/2017 | EXECEYEDN3 | DASHBOARD DYNAMIC RE | 2/8/2016 HAG | | 11/5/2016 |
| 70254 | KANSAS CITY AUTOMOTIVE CO LP | U | 6/27/2017 | EXECEYEDN3 | DASHBOARD DYNAMIC RE | 2/8/2016 HAG | | 11/28/2016 |
| 70506 | SOUTH BOULEVARD AUTO INV LTD | U | 5/8/2017 | 9JAGMSWCE | JAGCOR COMBO2 | 2/8/2016 HAG | | 11/13/2016 |
| 70633 | Traders Chevrolet LLC | U | 6/27/2017 | EXECEYEDN3 | DASHBOARD DYNAMIC RE | 2/8/2016 HAG | | 11/13/2016 |
| 70182 | City Chevrolet Automotive Co | U | 6/27/2017 | EXECEYE3 | EXECEYE | 2/8/2016 HAG | | 11/13/2016 |
| 70182 | City Chevrolet Automotive Co | U | 6/27/2017 | EXECEYEDN3 | EXECUTIVE EYE DYNAMS | 2/8/2016 HAG | | 11/13/2016 |
| 70182 | City Chevrolet Automotive Co | U | 6/27/2017 | EXECEYE3 | EXECEYE | 2/8/2016 HAG | | 11/13/2016 |
| 70235 | Pleasanton Automotive Co | U | 5/29/2017 | EXECEYE3 | EXECEYE | 2/8/2016 HAG | | 11/12/2016 |
| 61176 | Jeff Wyler Navigate, Inc | U | 5/23/2017 | BRIANHOFFMAN | BRIAN HOFFMAN | 2/16/2016 JEFF WYLER | | 11/13/2016 |
| 61172 | J J F MANAGEMENT SERVICES INC | U | 5/20/2017 | EDMSJ3 | EDMS69 | 3/21/2016 J4F | | 10/14/2016 |
| 61172 | J J F MANAGEMENT SERVICES INC | U | 5/20/2017 | EDMS10 | EDMS69 | 8/27/2014 J4F | | 9/20/2016 |
| 61172 | J J F MANAGEMENT SERVICES INC | U | 5/20/2017 | EDMS69 | EDMS69 | 8/27/2014 J4F | | 11/13/2016 |
| 61636 | MORRIES MINNETONKA SUBARU, LLC | U | 5/23/2017 | 8SACTC005 | 8SACCTC05 | 11/28/2013 MORRIES-IMPORTS | | 11/12/2016 |
| 63628 | MORRIES MINNETONKA SUBARU, LLC | U | 5/23/2017 | VIN | VIN | 11/26/2013 MORRIES-IMPORTS | | 11/12/2016 |
| 63636 | MORRIES MINNETONKA SUBARU, LLC | U | 5/23/2017 | 8SALES03 | 8SALES03 | 11/26/2013 MORRIES-IMPORTS | | 11/12/2016 |
| 63628 | MORRIES MINNETONKA SUBARU, LLC | U | 5/23/2017 | 8SFANDO01 | 8SFANDO01 | 11/26/2013 MORRIES-IMPORTS | | 11/12/2016 |
| 63636 | MORRIES MINNETONKA SUBARU, LLC | U | 5/23/2017 | VIN | TEST | 11/27/2016 MORRIES-IMPORTS | | 11/26/2016 |
| 63636 | MORRIES MINNETONKA SUBARU, LLC | U | 5/23/2017 | NANCYE | 8L1369 NANCY BRICKS | 4/27/2016 MORRIES-IMPORTS | | 11/11/2016 |
| 63628 | MORRIES MINNETONKA SUBARU, LLC | U | 5/23/2017 | TRIEHAR | 8D 3024 PAAL | 4/29/2016 MORRIES-IMPORTS | | 11/11/2016 |
| 61636 | MORRIES MINNETONKA SUBARU, LLC | U | 5/23/2017 | JRANBERZ | 8Z 2587 ZUMIGA | 4/27/2016 MORRIES-IMPORTS | | 11/11/2016 |
| 61636 | MORRIES MINNETONKA SUBARU, LLC | U | 5/23/2017 | LYRBR | 80 3625 ROBSON | 4/29/2016 MORRIES-IMPORTS | | 11/11/2016 |

CX4459-018

**FTC-0000463**

| System Number | System Name | Country | Exemption Date | User Id | User Name | Added Date | Template | Last Login |
|---|---|---|---|---|---|---|---|---|
| 61626 | MORRIES MINNETONKA SUBARU, LLC | U | 5/29/2017 | AMYC | NQ 1408 AMY CHAPUT | 4/27/2016 | MORRIES-IMPORTS | 11/11/2016 |
| 61626 | MORRIES MINNETONKA SUBARU, LLC | U | 5/29/2017 | AMWR | STICKER NIGHT WRITER | 4/1/2015 | MORRIES-IMPORTS | 11/11/2016 |
| 70111 | JR MOYS INC | U | 5/20/2017 | ITREPORTS | IT REPORTS | 6/4/2014 | MOSS-BROTHERS | 11/11/2016 |
| 70111 | JR MOSS INC | U | 5/20/2017 | CROREPORTS | CRO REPORTS | 8/4/2014 | MOSS-BROTHERS | 11/11/2016 |
| 61681 | GREENROAD AUTO GROUP LTD | C | 5/30/2017 | CUSTOMER | CUSTOMER RELATIONS | 5/22/2015 | GREENROAD-TOYOTA | 11/9/2016 |
| 61209 | ATLANTA TOYOTA INC | U | 5/19/2017 | 95PURECARS | V-AUU PURE CARS LTC | 12/2/2015 | PAG | 11/11/2016 |
| 58867 | Penske Automotive Group, Inc | U | 5/25/2017 | 909PACKET | V-AHU AUTO PACKET | 8/28/2015 | PAG | 11/3/2016 |
| 60592 | Classic Auto Group Inc | U | 6/28/2017 | 96DOMINION | V-ASU DOMINION | 9/22/2016 | PAG | 11/11/2016 |
| 60592 | Classic Auto Group, Inc | U | 6/17/2017 | 19AUGO | V-AHU MUSO ADVERTISE | 5/22/2016 | PAG | 11/12/2016 |
| 58891 | D Young Chevrolet, LLC | U | 2/28/2017 | 19MASTERMIND | V-AHU AUTO MASTERMIND | 9/23/2015 | PAG | 11/11/2016 |
| 60589 | Penske Automotive Group, Inc | U | 2/28/2017 | 90RIPACKET | V-AHU AUTO RPACKET | 9/17/2015 | PAG | 11/12/2016 |
| 60589 | D Young Chevrolet, LLC | U | 5/2/2017 | 29ONEVIEW | V-ASE ONEVIEW | 8/5/2016 | PAG | 11/11/2016 |
| 60588 | Penske Automotive Group, Inc | U | 5/2/2017 | 18ADVIEW | V-ASE GNEVIEW | 8/5/2016 | PAG | 11/11/2016 |
| 54404 | Penske Automotive Group, Inc | U | 5/13/2017 | AO949920 | ADAMS LORRAINE TORSA | 7/31/2015 | PAG | 11/30/2015 |
| 54404 | Penske Automotive Group, Inc | U | 5/13/2017 | ADAM903 | ADAMS - USA MONTHLY | 7/31/2015 | PAG | 11/21/2016 |
| 61203 | ATLANTA TOYOTA INC | U | 2/28/2017 | 1331PFAFRC | V-FRAFRC BUILDERS | 7/31/2015 | PAG | 11/12/2016 |
| 60604 | Penske Automotive Group, Inc | U | 8/8/2017 | 19BMASTERMND | V-AHU AUTO MASTERMIND | 7/31/2015 | PAG | 11/11/2016 |
| 60589 | D Young Chevrolet, LLC | U | 6/25/2017 | 19MASTERMIND | V-AHU AUTO MASTERMIND | 7/28/2015 | PAG | 11/11/2016 |
| 58891 | Classic Auto Group Inc | U | 4/24/2017 | 28DSEVIEW | V-ASE ONEVIEW | 7/31/2015 | PAG | 11/11/2016 |
| 58887 | Penske Automotive Group, Inc | U | 4/15/2017 | 909MASTERMND | V-AHU AUTO MASTERMIND | 7/29/2016 | PAG | 11/12/2016 |
| 60589 | D Young Chevrolet, LLC | U | 6/25/2017 | 214ASTERMND | V-AHU AUTO MASTERMIND | 7/31/2015 | PAG | 11/12/2016 |
| 60592 | Classic Auto Group Inc | U | 6/25/2017 | 16TERMN | V-AHU TERM VELOCITY | 6/23/2015 | PAG | 11/11/2016 |
| 60592 | Classic Auto Group Inc | U | 2/23/2017 | 282MASTERMND | V-AHU AUTO MASTERM | 5/31/2016 | PAG | 11/13/2016 |
| 60592 | Classic Auto Group Inc | U | 2/23/2017 | 327MASTERMND | V- AHU AUTO MASTERM | 5/21/2016 | PAG | 11/17/2016 |
| 61209 | ATLANTA TOYOTA INC | U | 6/26/2017 | 89MASTERMND | V- AHU AUTO MASTERM | 5/6/2015 | PAG | 11/13/2016 |
| 61203 | ATLANTA TOYOTA INC | U | 6/26/2017 | 146MASTERMND | V-AHU AUTO MASTERM | 4/20/2015 | PAG | 11/12/2016 |
| 58887 | Penske Automotive Group, Inc | U | 5/2/2017 | 809MASTERMND | V-AHU AUTO MASTERMIN | 4/22/2015 | PAG | 11/11/2016 |
| 61209 | ATLANTA TOYOTA INC | U | 8/8/2017 | 147MASTERMND | V-AHU AUTO MASTERMND | 4/15/2016 | PAG | 11/11/2016 |
| 60589 | D Young Chevrolet, LLC | U | 6/25/2017 | 280MASTERMND | V-AHU AUTO MASTERMIN | 4/22/2015 | PAG | 11/11/2016 |
| 58891 | Classic fords Point GMC Truck LTD | U | 3/19/2017 | 245MYCDATA | V-AHU NFT CUSTOMER DA | 3/22/2015 | PAG | 11/11/2016 |
| 58891 | Classic Fords Point GMC Truck LTD | U | 3/19/2017 | 245MYCDATA | V-AHU AHV CUSTOMER DA | 3/29/2015 | PAG | 11/12/2016 |
| 61203 | ATLANTA TOYOTA INC | U | 2/28/2017 | 1415TEAMV | V-AHU TEAM VELOCITY | 3/20/2015 | PAG | 11/12/2016 |
| 61203 | ATLANTA TOYOTA INC | U | 2/28/2017 | 91INTELL | V-AHU INTELL MKTG SV | 3/19/2015 | PAG | 10/31/2016 |
| 60592 | Classic Auto Group Inc | U | 2/28/2017 | 94PURECARS | V-AU PURE CARS LTC | 3/10/2015 | PAG | 11/12/2016 |
| 60592 | Classic Auto Group Inc | U | 2/28/2017 | 16PARTSEYE | V-AHU PARTSEYE 84 | 3/19/2015 | PAG | 10/28/2015 |
| 60592 | Classic Auto Group Inc | U | 2/28/2017 | 9TEAMV | V-AHU TEAM VELOCITY | 3/10/2015 | PAG | 11/12/2016 |
| 60592 | Classic Auto Group Inc | U | 2/28/2017 | 98NTELSYS | V-AHU SPECTRUM INTEL | 3/19/2015 | PAG | 11/13/2016 |
| 58891 | Classic Fords Point GMC Truck LTD | U | 3/19/2017 | 427INTELSYS | V-AHU SPECTRUM INTEL | 8/31/2015 | PAG | 11/11/2016 |
| 58887 | Penske Automotive Group, Inc | U | 2/28/2017 | 909RPMO | V-AHU REUD MARKETING | 5/31/2015 | PAG | 10/31/2015 |
| 60588 | Penske Automotive Group, Inc | U | 2/28/2017 | 60AUTHENTICO | V-AHU CAPS INTERFACE | 5/31/2015 | PAG | 11/12/2016 |
| 60588 | Penske Automotive Group, Inc | U | 2/28/2017 | 97AUTHENTICO | V-AUU CAPS INTERFACE | 5/31/2015 | PAG | 11/3/2016 |
| 58350 | Triangle Dealers Inc | U | 2/28/2017 | 151DOMINION | V-AHU DOMINION | 8/30/2015 | PAG | 11/11/2016 |
| 58867 | Penske Automotive Group, Inc | U | 6/25/2017 | 909MASTERMND | V- AHU AUTO MASTERMIN | 5/4/2016 | PAG | 10/17/2016 |
| 60592 | Classic Auto Group Inc | U | 6/25/2017 | 316MASTERMND | V-AHU AUTO MASTERM | 3/4/2016 | PAG | 11/11/2016 |
| 60592 | Classic Auto Group Inc | U | 6/25/2017 | 798MASTERMND | V-AHU AUTO MASTERMIN | 5/4/2016 | PAG | 11/11/2016 |
| 61203 | ATLANTA TOYOTA INC | U | 8/25/2017 | 99MASTERMND | V- AHU AUTO MASTERMIN | 8/4/2016 | PAG | 11/11/2016 |
| 58891 | Classic Chis Point GMC Truck LTD | U | 2/28/2017 | 29ONEVIEW | V-ASE ONEVIEW | 8/30/2016 | PAG | 11/9/2016 |
| 58897 | Penske Automotive Group, Inc | U | 8/25/2017 | 101MASTERMND | V- AHU AUTO MASTERMIND | 2/17/2016 | PAG | 11/12/2016 |
| 58887 | Penske Automotive Group, Inc | U | 6/25/2017 | 16APARTSEYE | V-AHU PARTSEYE 84 | 3/19/2016 | PAG | 11/11/2016 |
| 60592 | Classic Auto Group Inc | U | 6/25/2017 | 19PARTSEYE1 | V-AHU PARTSEYE 09 | 2/11/2015 | PAG | 11/11/2016 |
| 60592 | Classic Auto Group Inc | U | 6/25/2017 | 12PARTSEYE1 | V-AHU PARTSEYE 09 | 3/19/2016 | PAG | 11/11/2016 |
| 58887 | Penske Automotive Group, Inc | U | 6/25/2017 | 314PARTSEYE5 | V-AUU PARTSEYE 09 | 2/9/2016 | PAG | 11/11/2016 |
| 60604 | Penske Automotive Group Inc | U | 6/25/2017 | 49INNOVATE2 | V-IPS SCAN FT PARTS | 3/4/2016 | PAG | 11/11/2016 |
| 61586 | Rockrmck Mister Sales Inc | U | 5/20/2017 | QUERIES | REPORT QUERIES | 12/2/2014 | ROTHROCK-MOTORS | 11/11/2016 |
| 61304 | RL Imports, Inc | U | 5/20/2017 | CVERAT127 | CLINTON VERAT 127 | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/20/2017 | SVERAT101 | SAM VERAT 101 | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/20/2017 | CVERAT109 | CASEY VERAT 109 | 12/13/2013 | RUDY-LUTHER | 11/12/2016 |
| 61586 | RL Imports, Inc | U | 5/20/2017 | XVERAT121 | XAVIER VERAT 121 | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/20/2017 | AVERAT125 | ALEX VERAT 125 | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/20/2017 | AVERAT106 | ALEX VERAT 106 | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/20/2017 | MVERAT114 | MYRTTLE VERAT 114 | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/20/2017 | FVERAT131 | FRANK VERAT 131 | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/20/2017 | DVERAT102 | DJ VERAT 102 | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/20/2017 | JVERAT103 | JOSH VERAT 103 YCUST | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/20/2017 | BVERAT126 | BRICE VERAT 126 | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/30/2017 | GVERAT132 | GIMORE VERAT 132 | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/30/2017 | GVERAT135 | GEORGE VERAT 135 | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/30/2017 | LVERAT106 | LISA VERAT 106 | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/30/2017 | EVERAT133 | EDSALA VERAT 133 | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/30/2017 | EVERAT104 | ETHAN VERAT 104 | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | SVERAT101 | SAM VERAT 101 | 12/18/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | CVERAT109 | CASEY VERAT 109 | 12/18/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | XVERAT121 | XAVIER VERAT 121 | 12/18/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | AVERAT125 | ALLIE VERAT 125 | 12/18/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | GVERAT115 | GIHEEN VERAT 115 | 12/18/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | AVERAT106 | ALEX VERAT 106 | 12/18/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | CVERAT127 | CLINTON VERAT 127 | 12/18/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | UVERAT114 | URSALIE VERAT 114 | 12/18/2013 | RUDY-LUTHER | 10/15/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | KVERAT104 | KEHAN VERAT 104 | 12/18/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | JVERAT124 | ZACH VERAT 124 | 12/18/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | JVERAT120 | JOSH VERAT 120 YCUST | 12/18/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | MVERAT114 | MYRTTLE VERAT 114 | 12/18/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | DVERAT102 | DJ VERAT 102 | 12/18/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | GVERAT132 | GIMORE VERAT 132 | 12/18/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | WVERAT136 | WINSTON VERAT 136 | 12/18/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | GVERAT135 | GILMOSE VERAT 135 | 12/18/2013 | RUDY-LUTHER | 11/12/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | EVERAT133 | ERA VERAT 135 | 12/18/2013 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/20/2017 | IVERAT118 | INEZ VERAT 118 | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 63034 | LL Glenn Food Ltd | U | 5/20/2017 | VVERAT129 | VICTORIA VERAT | 12/13/2013 | RUDY-LUTHER | 11/11/2016 |
| 61589 | STC Motors, LLC | U | 5/20/2017 | MVERAT136 | MURPHY VERAT 136 | 8/30/2014 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/20/2017 | WVERAT138 | WHITNEY VERAT 136 | 8/30/2014 | RUDY-LUTHER | 11/11/2016 |
| 61586 | RL Imports, Inc | U | 5/20/2017 | CVERAT142 | CHRIS VERAT 142 | 7/31/2015 | RUDY-LUTHER | 11/12/2016 |
| 61586 | RL Imports, Inc | U | 5/20/2017 | YVERAT138 | YES VERAT 138 | 7/13/2015 | RUDY-LUTHER | 11/11/2016 |

**FTC-0000464**

| System Number | System Name | Country | Resumption Date | User Id | User Name | Added Date | Template | Last Login |
|---|---|---|---|---|---|---|---|---|

CX4459-020

FTC-0000465

| System Number | System Name | Country | Exemption Date | User Id | User Name | Added Date | Template | Last Login |
|---|---|---|---|---|---|---|---|---|
| 60979 | 20/6, Inc | U | 2/28/2017 DML | | INTEGRALINK | 4/7/2016 SET | | 11/17/2016 |
| | GVR ENTERPRISES INC | U | 4/6/2016 SET2016 | | SETDATA | 4/14/2016 SET | | 11/12/2016 |
| 70517 | Robert L Lipton Inc | U | 8/6/2017 SET123M | | CDK GLOBAL | 4/18/2016 SET | | 11/17/2016 |
| 70145 | Pitts Automotive Group, INC | U | 8/6/2017 SET5998 | | SET | 4/13/2016 SET | | 11/12/2016 |
| 70099 | GREEN IMPORTS INC | U | 8/6/2017 SET1133 | | TOYOTA | 4/13/2016 SET | | 11/12/2016 |
| 70951 | RALPH HAYES MOTORS | U | 8/6/2017 SET1394 | | SET DATA PULL | 4/11/2016 SET | | 11/12/2016 |
| | RUBRIX AUTOMOTIVE, INC | U | 8/6/2017 SET2468 | | INTEGRALINK | 4/7/2016 SET | | 11/11/2016 |
| 70179 | Vossland Motor Cars, LLC | U | 8/6/2017 SET2468 | | INTEGRALINK | 4/7/2016 SET | | 11/11/2016 |
| 58267 | Stones Motors Inc | U | 8/6/2017 SET590586 | | SB TOYOTA | 4/7/2016 SET | | 31/12/2016 |
| 61856 | Beaver Motors, Inc | U | 8/6/2017 SET1394 | | SET - CARFAX | 4/6/2016 SET | | 11/12/2016 |
| 61252 | Triangle Auto Center Ind | U | 8/6/2017 SET10701 | | S.E.T. YOM | 3/22/2016 SET | | 31/12/2016 |
| 60985 | NK AUTOMOTIVE MANAGEMENT LLC | U | 8/6/2017 SETDATA | | INTEGRALINK | 2/25/2016 SET | | 11/11/2016 |
| 70532 | AI Hendrickson Jr Enterprises Inc | U | 8/13/2017 SW2009 | | SYSTEM 2000 LOGIN | 2/26/2017 SET | | 11/13/2016 |
| 58966 | NSS Automotive, LLC | U | 6/25/2017 SCD501 | | SMART CO | 12/26/2018 SMARTCO-PARTSEYE(SIS) | | 31/12/2016 |
| 70037 | New Motors Inc | U | 8/13/2017 SCD200 | | | 12/20/2015 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 70073 | Littia of Yorkville 2, LLC | U | 2/19/2017 SCD0584 | | SUBARU SMARTCO DONS | 11/30/2015 SMARTCO-PARTSEYE(SIS) | | 9/30/2016 |
| 62107 | YHMA Motors LLC | U | 2/27/2017 SCD7594 | | ERIN | 11/24/2015 SMARTCO-PARTSEYE(SIS) | | 11/12/2016 |
| 61588 | Glads Imports Inc | U | 6/25/2017 SCD379 | | SUIP SMARTCO-PEYE | 11/24/2015 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 62127 | Pavlan of Fairfax, Inc | U | 8/28/2017 PARTSEYE | | SUBARUPARTSEYE | 11/19/2014 SMARTCO-PARTSEYE(SIS) | | 11/12/2016 |
| 61588 | TSWG, LLC | U | 6/25/2017 SCD6901 | | SMART | 11/18/2014 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61818 | DELLENBACH CHEVROLET INC | U | 8/28/2017 SCD2820 | | SUBARU PARTS EYE | 11/19/2014 SMARTCO-PARTSEYE(SIS) | | 11/12/2016 |
| 58994 | Heritage Chevrolet Buick, Inc | U | 8/4/2017 SCD2080 | | SUBARU PARTS | 11/7/2014 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61755 | Dick Dewan BuickCadillac Inc | U | 6/26/2017 SUBARUCAB04 | | SUBARU PARTS | 11/5/2014 SMARTCO-PARTSEYE(SIS) | | 11/12/2016 |
| 68028 | KARL TINGOS FORD INC | U | 6/25/2017 SCD4168 | | FORD PARTSEYE | 10/28/2014 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 62115 | Mazen Chrysler Jeep Inc | U | 2/11/2017 SCD6802 | | PARTS EYE | 10/26/2015 SMARTCO-PARTSEYE(SIS) | | 11/12/2016 |
| 61235 | National Automotive Group, Inc | U | 6/25/2017 NATIONAL3 | | PARTSEYE | 10/27/2015 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 58994 | Heritage Chevrolet Buick, Inc | U | 6/24/2017 SMARTCO | | SUBARU PRIME | 10/12/2016 SMARTCO-PARTSEYE(SIS) | | 11/12/2016 |
| 61403 | LARKIN AUTOMOTIVE GROUP, INC | U | 9/2/2017 SUBCU8 | | SUBARU CARE | 10/10/2015 SMARTCO-PARTSEYE(SIS) | | 11/13/2016 |
| 70140 | Ed Sholts Chevrolet, Inc | U | 6/27/2017 SBCM0CKEY9 | | SH PARTSEYE | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/13/2016 |
| 70082 | TW Sonicville Imports, Inc | U | 8/8/2017 SBFM80 | | SUB PRIME PARTSEYE | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/13/2016 |
| 63580 | Arbor Tree Management, Inc | U | 6/26/2017 SMARTCO | | PARTSEYE SUBARU | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 58253 | FOX CHRYSLER DODGE JEEP INC | U | 6/25/2017 SCD0184 | | SUBARU | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 57992 | RAF Inc | U | 6/25/2017 SCD0313 | | SUBARU | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 55382 | Kent Madical Enterprises Inc | U | 6/25/2017 MATILDA | | MATILDA SMART | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/12/2016 |
| 61051 | LYNNEL NISSAN CITY INC | U | 6/28/2017 CHEM5 | | CHERYL BEYEAU | 10/25/2013 SMARTCO-PARTSEYE(SIS) | | 11/12/2016 |
| 63056 | DuToto Chevrolet Col Inc | U | 6/26/2017 SMART | | SMARTCO PARTSEYE | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 63178 | Fuccillo Chevrolet Buick, Inc | U | 6/26/2017 ASFINB08 | | SUBARU PARTS PRIME | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 56610 | Stevenson Automotive Group Inc | U | 6/26/2017 ASFINB08 | | SMARTCO SERVICE INC | 10/16/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 58178 | SEVILLE CORPORATION | U | 6/25/2017 SMART | | SMARTCO SERVICES LLC | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61020 | UNIVERSAL AUTO GROUP | U | 6/28/2017 PARTSE | | SUPERIOR | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 31/12/2016 |
| 62028 | FEASTERVILLE AUTO CENTER INC | U | 6/25/2017 SMARTCO | | PARTSEYE | 10/14/2013 SMARTCO-PARTSEYE(SIS) | | 11/12/2016 |
| 60598 | Hartburg Chevrolet, LLC | U | 6/28/2017 PART | | PARTSEYE SUBARU | 10/14/2013 SMARTCO-PARTSEYE(SIS) | | 31/12/2016 |
| 59725 | The Frederick Motor Company | U | 3/10/2017 PRIME | | PRIME | 10/11/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 70020 | Fox Motor Group LLC | U | 6/27/2017 PMF | | SMARTCO - SUBARU PYS | 10/11/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 70258 | Maryland Motorcycle Investors LP | U | 6/27/2017 PBMSMART | | SMART CO | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/13/2016 |
| 62982 | Fresno Securities Inc | U | 6/26/2017 PARTEYE | | PARTSEYE | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61194 | Competition Imports Inc | U | 6/26/2017 PARTSEYES | | PARTS EYE - SUB | 10/11/2014 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61598 | Putnam Automotive, Inc | U | 6/26/2017 SMARTCO | | SMARTCO-SUBARU | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 63035 | Star Nissan Inc | U | 2/23/2017 SMARTCO | | SMARTCO | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 56544 | GRESHAM AUTOMOTIVE HOLDINGS, LLC | U | 6/25/2017 SMARTCO | | SMARTCO SUBARU PRIME | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 63256 | Royal Moore Buick GMC Inc | U | 6/25/2017 SMARTCO | | SMARTCO | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 62182 | Lester Glenn Buick Inc | U | 3/19/2017 SMARTCO | | SMARTCO PARTSEYE | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/12/2016 |
| 56657 | Doyle Chevrolet, Inc | U | 6/26/2017 SMARTCO | | SMARTCO PARTSEYE | 10/14/2015 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 62426 | MORRIES MINNETONKA SUBARU, INC | U | 6/26/2017 SUPRIME | | SUBARU PRIME BR 149 | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 57958 | CLIO BAY IMPORTS, INC | U | 6/25/2017 SCD2882 | | SMARTS EYE SUBARU | 10/15/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 70099 | GREEN IMPORTS INC | U | 2/18/2017 SMARTCO | | SMARTCO SUBARU | 10/15/2015 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 58850 | Bert Ogden Chevrolet Ind | U | 6/25/2017 SCD2743 | | PARTSEYE SUBARU | 10/31/2016 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 58648 | Liberty Auto City Ind | U | 6/25/2017 SMARTCO | | SMARTCO SUBARU | 10/15/2014 SMARTCO-PARTSEYE(SIS) | | 11/12/2016 |
| 61907 | Hersberger Motors | U | 6/26/2017 SCD0180 | | SCD0180 | 10/30/2014 SMARTCO-PARTSEYE(SIS) | | 11/12/2016 |
| 61991 | Annapolis, Cars Inc | U | 6/26/2017 PARTSEYE4 | | PARTSEYE4 | 10/9/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 58029 | TROMLAKES AUTOMOTIVE GROUP, INC | U | 6/25/2017 SCD0895 | | PARTSEYE | 10/9/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 70150 | Hunter Christadian | U | 6/27/2017 IGNICE1 | | PARTSEYE | 10/9/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 57638 | Downing Motors, Inc | U | 6/25/2017 SCD123m | | SMART CO | 10/9/2014 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61938 | Stapleton Volkswagen, Inc | U | 6/26/2017 PARTSEYE | | PARTS EYE SMARTCO | 10/9/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 70651 | New River Outlet Mall | U | 4/27/2017 SMARTCO | | SMARTCO SERVICES LLC | 10/9/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61999 | Peninsula Subaru Inc | U | 6/26/2017 PARTSEYE | | PARTSEYE | 10/9/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61052 | ALBANY FORD INC | U | 6/28/2017 SCD0620 | | PARTS EYE | 10/9/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 58888 | FRANK RAGTORS HYUNDAI | U | 6/26/2017 SUBARU | | DREWETT SUBARU | 10/9/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 56641 | RIVERSIDE MOTORS INC | U | 6/25/2017 SCD0573 | | PARTSEYE | 10/4/2013 SMARTCO-PARTSEYE(SIS) | | 11/12/2016 |
| 61991 | Annapolis, Cars Inc | U | 6/26/2017 SCD0573 | | PARTSEYE | 10/9/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 54283 | Stratker Chevrolet, Inc | U | 6/25/2017 STOCKEP | | SUBSTOCK | 10/3/2013 SMARTCO-PARTSEYE(SIS) | | 11/13/2016 |
| 57925 | Subaru of Plano LTD | U | 6/25/2017 SCD789q | | PARTS EYE | 10/3/2013 SMARTCO-PARTSEYE(SIS) | | 11/13/2016 |
| 58272 | B Falcone Automotive, Inc | U | 6/25/2017 SCD789q | | PARTS EYE | 10/3/2013 SMARTCO-PARTSEYE(SIS) | | 11/13/2016 |
| 58182 | RIEHLE CHEVROLET INC | U | 6/26/2017 SCD0596 | | SMARTCO | 10/3/2015 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61387 | Fringle Auto Center Inc | U | 6/26/2017 SCD0480 | | PARTSEYE | 10/3/2014 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61189 | Schlossmans Dodge City Chrysler Jeep, Inc | U | 6/26/2017 SCD6589 | | PARTSEYE | 10/1/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61839 | Shottropp Volkswagen, Inc | U | 6/26/2017 SCD9835 | | SUB PARTS EYE SMARTC | 10/1/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 63744 | Lewis Thodrson Subaru Inc | U | 6/27/2017 SCD5985 | | SCOTT | 9/30/2013 SMARTCO-PARTSEYE(SIS) | | 11/13/2016 |
| 61052 | Littia of Yorkville 2, LLC | U | 6/27/2017 SCD1075 | | SUBARU SMARTCO TROY | 9/30/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 62001 | Budget Leasing, Inc | U | 6/26/2017 SCD6589 | | SGA SMARTCO | 9/29/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 70086 | All Ferris, Inc | U | 6/26/2017 SCD1130 | | SUBARU PARTS EYE | 8/20/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 58381 | IMPERIAL IMPORTS INC | U | 6/26/2017 SCD0315 | | PARTSEYE | 8/20/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61504 | Sumpura Buick Inc | U | 6/26/2017 SCD6891 | | PARTS EYE | 8/29/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61058 | AUTOBAHN 202, LLC | U | 6/26/2017 SCD8P9R | | PARTSEYE | 8/28/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61709 | Drewer Bellmobile Inc | U | 3/18/2017 SMARTCO | | SMARTCO | 8/24/2015 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 70091 | Pallier Chevrolet, Inc | U | 6/27/2017 +FE84R9 | | PARTSEYE SOA | 8/22/2013 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 58029 | TROMLAKES AUTOMOTIVE GROUP, INC | U | 6/25/2017 SCU4848 | | PARTSEYE CUMMING | 8/15/2014 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61403 | LARKIN AUTOMOTIVE GROUP, INC | U | 6/26/2017 SCD0198 | | SMARTCO | 8/15/2014 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 70001 | Gao Byers Sons Holding, Inc | U | 6/26/2017 SCD7486 | | PARTSEYE MAT SUBARU | 8/11/2015 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61806 | METRO IMPORTS, INC | U | 4/26/2017 SCD0350 | | CARSCONNECTS | 8/10/2016 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 70001 | Gao Byers Sons Holding, Inc | U | 6/26/2017 SCD5565 | | PARTS EYE | 8/7/2015 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 60088 | Bob Townes Ford, Inc | U | 4/26/2017 SMC5051 | | SUPERIOR BKC | 8/3/2016 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |
| 61830 | Gregson Motors Inc | U | 4/26/2017 SCD2188g | | SUBARU | 7/17/2015 SMARTCO-PARTSEYE(SIS) | | 11/11/2016 |

CX4459-021

**FTC-0000466**

| System Number | System Name | Country | Expiration Date | User Id | User Name | Added Date | Template | Last Login |
|---|---|---|---|---|---|---|---|---|

The table body is too low-resolution to transcribe reliably.

CX4459-022

FTC-0000467

| System Number | System Name | Country | Exemption Date | User Id | User Name | Added Date | Template | Last Login |
|---|---|---|---|---|---|---|---|---|
| 70256 | Maryland Motorcycle Investors LP | U | 2/28/2017 | PBMSTONEAGLE | STONE EAGLE | | 7/15/2014 STONEEAGLE | 11/22/2016 |
| 70256 | Maryland Motorcycle Investors LP | U | 2/28/2017 | PMCSTONEAGLE | STONE EAGLE | | 7/15/2014 STONEEAGLE | 11/12/2016 |
| 70156 | RICK HENDRICK CHEV AUTO CO | U | 8/13/2017 | FORSTONEAGLE | STONE EAGLE | | 7/15/2014 STONEEAGLE | 11/22/2016 |
| 70698 | RICK HENDRICK CHEV AUTO CO | U | 8/13/2017 | HGCSTONEAGLE | STONE EAGLE | | 7/15/2014 STONEEAGLE | 11/12/2016 |
| 70152 | Wilmington AEMTV Invst Co, LLC | U | 8/13/2017 | HGCSTONEAGLE | STONE EAGLE | | 7/15/2014 STONEEAGLE | 11/12/2016 |
| 70235 | Pleasanton Automotive Co | U | 2/28/2017 | HGCSTONEAGLE | STONE EAGLE | | 7/14/2014 STONEEAGLE | 11/12/2016 |
| 70286 | Pleasanton Automotive Co | U | 2/28/2017 | DBHSTONEAGLE | STONE EAGLE | | 7/14/2014 STONEEAGLE | 11/12/2016 |
| 70235 | Pleasanton Automotive Co | U | 2/28/2017 | HGCSTONEAGLE | STONE EAGLE | | 7/14/2014 STONEEAGLE | 11/12/2016 |
| 70236 | Pleasanton Automotive Co | U | 2/28/2017 | HOPSTONEAGLE | STONE EAGLE | | 7/14/2014 STONEEAGLE | 11/12/2016 |
| 70235 | Pleasanton Automotive Co | U | 2/28/2017 | LIPSTONEAGLE | STONE EAGLE | | 7/14/2014 STONEEAGLE | 11/12/2016 |
| 70286 | Pleasanton Automotive Co | U | 2/28/2017 | HOWSTONEAGLE | STONE EAGLE | | 7/14/2014 STONEEAGLE | 11/12/2016 |
| 70235 | Pleasanton Automotive Co | U | 2/28/2017 | HGCSTONEAGLE | STONE EAGLE | | 7/14/2014 STONEEAGLE | 11/12/2016 |
| 70286 | Gwinnett Automotive Co | U | 2/28/2017 | MHSTONEAGLE | STONE EAGLE | | 7/14/2014 STONEEAGLE | 11/12/2016 |
| 70182 | City Chevrolet Automotive Co | U | 2/28/2017 | HLKSTONEAGLE | STONE EAGLE | | 7/14/2014 STONEEAGLE | 11/12/2016 |
| 70182 | City Chevrolet Automotive Co | U | 2/28/2017 | MRMSTONEAGLE | STONE EAGLE | | 7/14/2014 STONEEAGLE | 11/12/2016 |
| 70182 | City Chevrolet Automotive Co | U | 2/28/2017 | MRCSTONEAGLE | STONE EAGLE | | 7/14/2014 STONEEAGLE | 11/12/2016 |
| 70182 | City Chevrolet Automotive Co | U | 2/28/2017 | HALSTONEAGLE | STONE EAGLE | | 7/14/2014 STONEEAGLE | 11/12/2016 |
| 70182 | City Chevrolet Automotive Co | U | 2/28/2017 | UKCSTONEAGLE | STONE EAGLE | | 7/14/2014 STONEEAGLE | 11/12/2016 |
| 70685 | City Chevrolet Automotive Co | U | 2/28/2017 | HCFSTONEAGLE | STONE EAGLE | | 7/14/2014 STONEEAGLE | 11/12/2016 |
| 70285 | Gwinnett Automotive Co | U | 2/28/2017 | PCMSTONEAGLE | STONE EAGLE | | 7/14/2014 STONEEAGLE | 11/12/2016 |
| 70182 | City Chevrolet Automotive Co | U | 2/28/2017 | CKSTONEAGLE | STONE EAGLE | | 7/8/2014 STONEEAGLE | 11/12/2016 |
| 70182 | City Chevrolet Automotive Co | U | 2/28/2017 | CKSTONEAGLE | STONE EAGLE | | 7/8/2014 STONEEAGLE | 11/12/2016 |
| 70182 | City Chevrolet Automotive Co | U | 2/28/2017 | COMSTONEAGLE | STONE EAGLE | | 7/8/2014 STONEEAGLE | 11/22/2016 |
| 70182 | City Chevrolet Automotive Co | U | 2/28/2017 | HLKSTONEAGLE | STONE EAGLE | | 7/7/2014 STONEEAGLE | 11/12/2016 |
| 70182 | City Chevrolet Automotive Co | U | 2/28/2017 | HKCSTONEAGLE | STONE EAGLE | | 7/7/2014 STONEEAGLE | 11/22/2016 |
| 70182 | City Chevrolet Automotive Co | U | 2/28/2017 | HALSTONEAGLE | STONE EAGLE | | 7/7/2014 STONEEAGLE | 11/12/2016 |
| 70182 | City Chevrolet Automotive Co | U | 2/28/2017 | NBKSTONEAGLE | STONE EAGLE | | 7/7/2014 STONEEAGLE | 11/12/2016 |
| 70182 | City Chevrolet Automotive Co | U | 2/28/2017 | HCFSTONEAGLE | STONE EAGLE | | 7/7/2014 STONEEAGLE | 11/12/2016 |
| 70182 | City Chevrolet Automotive Co | U | 2/28/2017 | HLASTONEAGLE | STONE EAGLE | | 7/7/2014 STONEEAGLE | 11/22/2016 |
| 58861 | Jim Hudson Cars of Lexington, SC, LLC | U | 6/25/2017 | STONEKEY | SECURE USER JIMA | | 6/17/2014 STONEEAGLE | 11/12/2016 |
| 70285 | Gwinnett Automotive Co | U | 4/28/2017 | DWBSTONE | STONE EAGLE | | 6/9/2015 STONEEAGLE | 11/12/2016 |
| 62645 | The Rosebrook Motor Company | U | 6/25/2017 | STONEKEY1 | STONE EAGLE JIMA | | 4/23/2014 STONEEAGLE | 11/12/2016 |
| 70596 | Al Serra, Inc | U | 6/26/2017 | STONEKEY1 | STONEEAGLE | | 4/21/2014 STONEEAGLE | 11/17/2016 |
| 70256 | Maryland Motorcycle Investors LP | U | 3/30/2017 | SCFSTONE | STONE EAGLE | | 3/31/2015 STONEEAGLE | 10/30/2016 |
| 62040 | Route 1 Toyota | U | 6/26/2017 | STONEKEY | STONE EAGLE | | 3/25/2014 STONEEAGLE | 10/30/2016 |
| 63047 | Chassis of Cherry Hill Road, Inc | U | 2/28/2017 | TOVRPRS63 | Fi PRES Menu 2036A | | 2/24/2015 STONEEAGLE | 11/12/2016 |
| 63047 | Curozns of Cherry Hill Road, Inc | U | 2/28/2017 | TOVRPRS63 | Stoneagle system 4 | | 2/24/2015 STONEEAGLE | 11/12/2016 |
| 63047 | Chassis of Cherry Hill Road, Inc | U | 2/28/2017 | TOVRPRS63 | STONEEAGLE NO 2 | | 2/24/2015 STONEEAGLE | 11/12/2016 |
| 70505 | SOUTH BOULEVARD AUTO INV LTD | U | 8/13/2017 | HOBSTONEAGLE | STONE EAGLE | | 2/28/2015 STONEEAGLE | 11/12/2016 |
| 70505 | SOUTH BOULEVARD AUTO INV LTD | U | 8/13/2017 | HWYSTONEAGLE | STONE EAGLE | | 2/25/2015 STONEEAGLE | 11/12/2016 |
| 70505 | SOUTH BOULEVARD AUTO INV LTD | U | 8/13/2017 | CMRSTONEAGLE | STONE EAGLE | | 2/25/2015 STONEEAGLE | 11/12/2016 |
| 70505 | SOUTH BOULEVARD AUTO INV LTD | U | 8/13/2017 | HSCSTONEAGLE | STONE EAGLE | | 2/23/2015 STONEEAGLE | 11/12/2016 |
| 70505 | SOUTH BOULEVARD AUTO INV LTD | U | 8/13/2017 | HSCSTONEAGLE | STONE EAGLE | | 2/28/2015 STONEEAGLE | 11/12/2016 |
| 62879 | Croes Automotive Holdings LLC | U | 6/26/2017 | STONEKEY | STONE EAGLE | | 2/4/2016 STONEEAGLE | 11/12/2016 |
| 70254 | KANSAS CITY AUTOMOTIVE CO LP | U | 8/27/2017 | KAFSTONE | STONE EAGLE | | 2/2/2016 STONEEAGLE | 11/12/2016 |
| 70037 | New Motors Inc | U | 3/18/2017 | SUB0101 | | | 12/20/2013 SUBARU | |
| 81425 | TSMC, LLC | U | 6/25/2017 | SUB0101 | | | 11/21/2016 SUBARU | 11/12/2016 |
| 60637 | Charles Motor Mall Inc | U | 6/25/2017 | SUB0201 | SUBARU US | | 11/13/2014 SUBARU | 11/11/2016 |
| 57992 | RAF Inc | U | 6/25/2017 | SUB0151 | CARE CONNECT | | 11/17/2014 SUBARU | |
| 63036 | Dick Dwroe BuickCadillac Inc | U | 6/26/2017 | SUBARUCMP4 | SUBARU PARTS | | 11/3/2014 SUBARU | |
| 63078 | EARL TINDOL FORD INC | U | 6/19/2017 | SCG0464 | FORD PARTSEYE | | 10/28/2015 SUBARU | 11/11/2016 |
| 63235 | National Automotive Group, Inc | U | 6/26/2017 | NATIONAL3 | PARTSEYE | | 10/23/2013 SUBARU | |
| 62241 | McLaughlin Chevrolet Inc | U | 2/28/2017 | AU1 | RBR ID | | 10/21/2013 SUBARU | 11/7/2016 |
| 58934 | Heritage Chevrolet Buick, Inc | U | 6/25/2017 | SMG0710 | SUBARU PRIME | | 10/13/2016 SUBARU | 11/12/2016 |
| 61402 | LARICHE AUTOMOTIVE GROUP, INC | U | 5/2/2017 | SUB0136 | SUBARU CARE | | 10/7/2015 SUBARU | 11/11/2016 |
| 61059 | Peninsula Subaru Inc | U | 6/26/2017 | SUBCARE | SUBARU CARE | | 10/7/2015 SUBARU | 11/12/2016 |
| 70082 | TW Nickasville Imports, Inc | U | 5/5/2017 | SEUMARND | SUBARU CARE 2 | | 10/16/2015 SUBARU | 11/12/2016 |
| 61508 | Knouett LincolnMercury Sales, Inc | U | 6/26/2017 | CARECONNECT | SUBARU CARE CONNECT | | 10/15/2018 SUBARU | 11/11/2016 |
| 70001 | Geo Byers Soox Holding, Inc | U | 6/28/2017 | RKA57 | RZ EAST | | 10/15/2023 SUBARU | 11/12/2016 |
| 70019 | OBRIEN IMPORTS INC | U | 6/27/2017 | SUBARU | CARE CONNECT | | 10/14/2013 SUBARU | |
| 61182 | Triangle Auto Center Inc | U | 6/28/2017 | SUB1101 | SUBARU CONNECT | | 10/9/2024 SUBARU | 11/12/2016 |
| 61839 | Snohman Volkswagen, Inc | U | 6/28/2017 | SUB1006 | PARTS EYE SMARTCO | | 10/9/2024 SUBARU | |
| 61026 | MORRIES MINNETONKA SUBARU, LLC | U | 6/28/2017 | SUBARUCARE84 | CARE CONNECT R4 84 | | 10/9/2024 SUBARU | 11/11/2016 |
| 61001 | Annapolis, Cars Inc | U | 6/26/2017 | SCG5775 | PARTSEYE | | 10/4/2013 SUBARU | 11/12/2016 |
| 54223 | Stocker Chevrolet, Inc | U | 6/25/2017 | SFOCESP | SUBSFOCAP | | 10/3/2023 SUBARU | |
| 62127 | Parrish of Fairfax, Inc | U | 6/25/2017 | SUBARUCARE60 | SUBARU CARE CONNECT | | 10/3/2013 SUBARU | 11/12/2016 |
| 56182 | MIKKE CHEVROLET INC | U | 6/25/2017 | SCG0206 | SMARTCO | | 10/3/2013 SUBARU | 11/12/2016 |
| 61187 | Triangle Auto Center Inc | U | 6/26/2017 | SCG7600 | SUBARU PARTS EYE | | 10/2/2013 SUBARU | |
| 61189 | Schussmann Dodge City Chrysler Jeep, Inc | U | 6/28/2017 | SCG0087 | PARTSEYE | | 10/2/2013 SUBARU | 11/11/2016 |
| 61059 | Gordon Chevrolet, Inc | U | 5/2/2017 | SUBARUNE | SUBARU NEW ENGLAND | | 10/2/2013 SUBARU | 11/11/2016 |
| 61839 | Stohlman Volkswagen, Inc | U | 6/26/2017 | SUB0435 | SUB PARTS EYE SMARTC | | 10/2/2013 SUBARU | |
| 61744 | Louis Thomas Subaru Inc | U | 6/26/2017 | SCG6120 | SCOTT | | 10/2/2013 SUBARU | 11/11/2016 |
| 79991 | Peltier Chevrolet, Inc | U | 2/28/2017 | CARECONNECT | SUBARU CARE CONNECT | | 10/2/2023 SUBARU | 11/12/2016 |
| 70072 | Lithia of Yorkville 2, LLC | U | 6/26/2017 | SUB0220 | SUBARU DATA GOINS | | 9/29/2013 SUBARU | |
| 70072 | Lithia of Yorkville 2, LLC | U | 6/27/2017 | SUB0305 | SUBARU DATA TROY | | 9/30/2016 SUBARU | 11/11/2016 |
| 61744 | Louis Thomas Subaru Inc | U | 6/26/2017 | AUL0277 | HANSEL | | 9/29/2013 SUBARU | |
| 79595 | AI Serra, Inc | U | 6/27/2017 | SUB0120 | SUBARU PARTS EYE | | 9/29/2013 SUBARU | 11/11/2016 |
| 56893 | IMPERIAL IMPORTS INC | U | 6/25/2017 | SCG0035 | PARTSEYE | | 9/20/2013 SUBARU | 11/11/2016 |
| 63078 | EARL TINDOL FORD INC | U | 2/27/2023 | SUBARU | TINDOL SUBARU SC | | 9/9/2023 SUBARU | 11/12/2016 |
| 60636 | VALENTS OF WESTERLY INC | U | 6/25/2017 | SUBARUAMERICA | SUBARU OF AMERICA | | 8/16/2013 SUBARU | |
| 54893 | VHBKR Motors LLC | U | 7/27/2023 | HANSEL | KEN | | 8/29/2015 SUBARU | 11/7/2016 |
| 70093 | Peltier Chevrolet, Inc | U | 6/27/2017 | FEDABARY | SUBARU SOA | | 8/27/2013 SUBARU | 11/11/2016 |
| 61595 | JB Johnsbury Automobile Company, LLC | U | 5/8/2017 | SUB0220 | SUBARU OC AND AM | | 8/12/2016 SUBARU | 11/11/2016 |
| 61896 | METRO IMPORTS, INC | U | 5/7/2017 | SUB0101 | CARECONNECT 1 | | 8/10/2016 SUBARU | 11/11/2016 |
| 61538 | Gordo Imports Inc | U | 6/26/2017 | SUB0750 | SU CARE CON | | 8/9/2015 SUBARU | 11/11/2016 |
| 61598 | Bob Thomas Ford, Inc | U | 4/28/2017 | SUB0101 | SUPERIOR SFA | | 8/1/2014 SUBARU | |
| 58798 | Steve Lewis Subaru Inc | U | 6/25/2017 | SUB0128 | FRED LEWIS | | 6/4/2015 SUBARU | 11/11/2016 |
| 79640 | Bill Kopp, Inc | U | 2/16/2017 | SHAG001 | SHAG001 | | 5/30/2016 SUBARU | 11/11/2016 |
| 63862 | GLENCULMOVILLE MOTOR CAR INC | U | 8/6/2017 | SUB0206 | SUB0221 | | 5/5/2016 SUBARU | 11/11/2016 |
| 57376 | Clay Chevrolet Inc | U | 6/25/2017 | SNO0101 | SUBARU NE | | 4/30/2015 SUBARU | 11/11/2016 |
| 62297 | Putnam Automotive, Inc | U | 6/26/2017 | SUBARU | SUBARU BOC | | 4/29/2015 SUBARU | 11/11/2016 |
| 63036 | Dick Dwroe BuickCadillac Inc | U | 2/28/2017 | SUD0G15 | SUBARU CONNECT | | 5/27/2014 SUBARU | 11/11/2016 |

**FTC-0000468**

| System Number | System Name | Country | Exemption Date | User Id | User Name | Added Date | Template | Last Login |
|---|---|---|---|---|---|---|---|---|
| 57878 | Clay Chevrolet Inc | U | 2/27/2017 | PETTEAM | PETTER MARY | 3/19/2014 | SUBARU | 11/12/2016 |
| 58598 | Title Enterprises, Inc. | U | 2/21/2017 | SUBROBS | SUBARU OF AMERICA | 3/6/2015 | SUBARU | 11/12/2016 |
| 61180 | Arbor Tree Management, Inc | U | 3/29/2017 | REPORTS | REPORTS PUSH | 12/23/2013 | WIDGET AUTOMOTIVE | 11/12/2016 |
| 61056 | UPTRING CHEVROLET OLDS INC | U | 3/23/2017 | WEBSERVER | WEB SERVER | 7/29/2014 | UPTRING | 11/6/2016 |
| 61056 | UPTRING CHEVROLET OLDS INC | U | 3/23/2017 | SUPERSHORTS | SUPERSHORTS | 7/28/2014 | UPTRING | 11/13/2015 |
| 61056 | UPTRING CHEVROLET OLDS INC | U | 3/23/2017 | SUPERREPORT | SUPER REPORT CURRY | 7/28/2014 | UPTRING | 11/10/2016 |
| 61056 | UPTRING CHEVROLET OLDS INC | U | 3/23/2017 | QMLFTP | QUERY FTP | 7/28/2014 | UPTRING | 11/13/2016 |
| 61056 | UPTRING CHEVROLET OLDS INC | U | 3/23/2017 | PATNC | PATRICK MCKINLEY | 7/8/2016 | UPTRING | 11/13/2016 |
| 61841 | Universal City Nissan | U | 3/29/2017 | KENL | KEN LENTZ | 3/24/2014 | UNIVERSAL CITY NISSAN | 11/13/2016 |
| 53836 | Bellingham Auto Management, Inc | U | 3/23/2017 | PIMD | PAYMENT INSURED PLAN | 3/28/2014 | WILSON-TOYOTA | 10/14/2016 |

CX4459-024

FTC-0000469

From: Schaefer, Robert
Sent: Tuesday, November 1, 2016 8:44 PM
To: 'Bob Brockman'
Subject: StoneEagle request for changes

Bob,

As we discussed the other day, Stoneagle still has multiple exemptions for Hendrick and some other dealers. At the time we stopped the process and agreed to continue the exemptions for Stoneagle until they moved their systems to CDK. Now that we are planning to move forward with Hendrick I am recommending we make the changes in ERA needed to replace the Stoneagle interface.

There are three outstanding PMR's
1) PMR 1046216 – Add Product-Only deals to F&I Interface
   a. Stoneagle has two F&I Deal packages (Publish and Batch) they currently offer to dealers. The request is to include product only deals in both data feeds.
      i. A "product only deal" is when a consumer purchases a service (i.e. Extended Warranty) after the car was purchased. When the consumer purchases the Extended Warranty service the paperwork is run through the F&I process, paperwork is signed and sent to accounting. Today we do not send F&I information unless it is attached to a specific vehicle. The change will allow the Precut Only Deals to be sent to Stoneagle and other third party providers in order to have a complete picture of F&I reporting.

2) PMR 1049956 RCI- Deal Reversal Notification (ERA)
   a. Multiple partners in the RCI Program have requested to receive notification in their current F&I interfaces when an F&I deal has been reversed. This deal reversal notification exists today in our Reynolds CM application. The notification is the deal number and status = "Reversed".

   b. Requesting to add this Deal Reversal notification to the Publish F&I Deal, Batch Closed F&I Deals, Search F&I Deals, Publish Vehicle Sales and Batch Vehicle Sales interfaces (F&I sales information without the finance data – used for CM vendors to let them know a car was purchased or reversed) for the ERA platform within the RCI Program.

Please approve this email so we can move forward in removing exemptions for Hendrick, AMSI, PAG, etc.

From: Schaefer, Robert [mailto:Robert_Schaefer@ReyRey.com]
Sent: Tuesday, March 15, 2016 2:54 PM
To: 'Bob Brockman' <bob1_brockman@reyrey.com>
Subject: RE: Deal Reversal to RCI? for StoneEagle

Bob,

StoneEagle executes this process today using their interface

Can you please approve this email so I can get Scott to move forward

As a footnote: We have received the latest enhancements for Stoneagle that allow us to replace the StoneEagle hostile interface, however we tested and returned it to development to fix. We are in Pilot for POWER with 4 dealers but waiting on ERA

From: Bob Brockman [mailto:bob_brockman@reyrey.com]
Sent: Sunday, January 3, 2016 6:28 PM
To: 'Schaefer, Robert'
Subject: RE: Deal Reversal to RCI?

Bob,

A clarification question....

Have they ever gotten this information before?

Bob

From: Schaefer, Robert [mailto:Robert_Schaefer@ReyRey.com]
Sent: Saturday, January 02, 2016 1:28 PM
To: 'Schaefer, Robert'; 'Bob Brockman'
Subject: RE: Deal Reversal to RCI?

Bob,

Based on our conversation

Has the direction changed?

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0186518
CX4420-001

From: Schaefer, Robert [mailto:Robert_Schaefer@RcyRey.com]
Sent: Tuesday, December 29, 2015 2:38 PM
To: 'Bob Brockman'
Subject: RE: Deal Reversal to RCI?

Bob,

This is a RollballA interface.

Multiple RCI Certified partners have expressed concern around this F&I Deal interfaces. The concern these partners have is they receive notifications when the F&I Deal is closed (C), Sold-Fixed (F) in Accounting and in Publish transactions spot delivered (E), but currently are not ever notified if an F&I Deal is "unwound" or reversed in the DMS. This is causing their reporting data to be off at the end of their specific reporting timeframe, with several partners reporting that dealers continue to lose confidence in their reporting applics from dues to the mismatch of deal information.

The vendor then states that Reynolds is not providing the information and dealers get upset when Reynolds does not provide the information that is needed to allow accurate reporting.

There are no plans to provide this to CRM vendors only to those vendors that need the information for reporting purposes. Below are the list of vendors who have requested the interface for their reporting purposes.

• StoneEagle, Ethos Group, IAS and Wilson

I plan to send you a fact sheet for each vendor we plan to add the interface to and provide the pricing for the interface.

As an FYI the deal reversal notification exists currently within the Reynolds CM application and provides the deal # and status = "Reversed"

Without us providing this information to these specific vendors reporting is not accurate which is a direct reflection on the accuracy of the data we are providing through RCI.

Special additional information:
Hendrick has stated that they will not move off the book in StoneEagle interface unless this is fixed. Both this was a miss when we built the interfaces and now that we are into certifying vendors who provide reports to dealers this has become an issue.

I am recommending that we implement the interface (which is already built) and we will send you Fact Sheets for each vendor that is requiring the data and charge for the new interface.

If we do not provide this interface it will be a problem for those dealers who are using the reporting capabilities of the vendors I listed. The reports will not be accurate.

Please reconsider your decision to provide this interface and we will write up the Fact Sheets for your review and approval. This interface in my opinion needs to be available to RCI vendors so we can provide the right data for reports for our dealers.

From: Bob Brockman [mailto:Bob_Brockman@reyrey.com]
Sent: Tuesday, December 29, 2015 11:08 AM
To: 'Barr, Scott'; 'Barras, Tommy'; Bob Schaefer
Subject: RE: Deal Reversal to RCI?

**Bob.**

**I see no reason to extend this capability to 3rd Party RCI customers.**

Bob

Cc Scott, Tommy

From: Barr, Scott [mailto:scott_barr@reyrey.com]
Sent: Tuesday, December 29, 2015 9:56 AM
To: 'Bob Brockman'
Cc: 'Barras, Tommy'
Subject: Deal Reversal to RCI?

Bob,

I have PMRs for both POWER and ERA from Bob Schaefer's group to add the RIH Deal Reversal transaction to the RCI program. Below is a screenshot of the POWER PMR.

This Deal Reversal transaction is currently sent from both DMS's and only to Contact Management. Making it available for RCI will allow more seamless deal integration with our DMS's, giving up an advantage of using CM.

Are you ok with allowing RCI partners to get this transaction? It's not difficult to do but I wanted to check with you before we give more functionality to 3rd parties.

Thanks,
Scott

cc: Tommy - fyi...

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0186519
CX4420-002

| PMR #: 1043957 | | |
|---|---|---|
| Product Manager: WENCLEBA | Priority: 8 - Med - Normal | Status: In Review |

| Inhouse: | REY001 | Supervisor: | FOERSTJI FOERSTER, JIM |
|---|---|---|---|
| Client: | REY001 Reynolds and Reynolds | Client Res: | |
| System ID: | | Hit Count: | 0 |
| Contact: | | Phone: | (713) 718-1800 |
| Submitter: | BOUGHATI BOUGHAN, TIM 52487 | Added: | 05/20/15 |
| Vend/Mfg: | | Program: | RCI |
| Platform: | POWER | Product: | RCI - Reynolds Certified Interfaces |
| SubProduct: | | App Area: | |
| Summary: | RCI- Deal Reversal Notification (POWER) | | |

Description:

Multiple partners in the RCI Program have requested to receive notification in their current F&I interfaces when an F&I deal has been reversed. This deal reversal notification exists today in our Reynolds CM application. The notification is the deal number and status = "Reversed".

Requesting to add this Deal Reversal notification to the Publish F&I Deal, Batch Closed F&I Deals, Search F&I Deals, Publish Vehicle Sales and Batch Vehicle Sales interfaces for the POWER platform within the RCI Program.

Notes:

12/29/15 09:25:12     FOERSTJI
Request to add a NEW TRANSACTION into the RCI suite.  Need approval.

12/29/15 10:27:49     BRAUNMIK
Jim, this would be a new transaction for RCI.  Currently CM is getting the transaction

09/14/15 10:32:03     SHAHDEVX
Updated supporting docs attached to CPM

08/17/15 14:38:40     BRAUNMIK
Dev - We need to create the supporting documents for this.  Word spec, mapping, schema.

06/10/15 14:14:34     SCHAEFRO
Approved

05/22/15 13:54:37     MARTINJO
Bob - This is the PMR to add deal reversal to the current F&I interfaces    You have already approved a Fact Sheet on this.  Please add your approval and send on to Barb W.  Thanks - Jon

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0186520
CX4420-003

FTC-0000445

From: Barras, Tommy
Sent: Tuesday, August 1, 2017 5:16 PM
To: Brockman, Bob
Subject: FW: FW:

**Bob**

**I asked Schaefer to revise his StoneEagle update to you – the information he sent was not accurate. I do not know if he corrected this update but I could no longer allow you to have mis-information**

**StoneEagle exemptions go beyond Hendrick – 3rd party has 100 exemptions into our ERA systems. DSV been talking about removing for years now – no end insight**

**Tommy**

From: Schaefer, Robert G [mailto:Robert_Schaefer@reyrey.com]
Sent: Thursday, July 27, 2017 5:03 PM
To: Barras, Tommy
Subject: Re: FW:

Thanks Tommy

I will get to the bottom of it

Sent from my iPhone

Bob Schaefer

On Jul 27, 2017, at 5:24 PM, Barras, Tommy <Tommy_Barras@reyrey.com> wrote:

**Bob -- someone must have given you the wrong information. Please correct your update to Bob…**

**Tommy**

From: Adams, Dana M [mailto:Dana_Adams@reyrey.com]
Sent: Thursday, July 27, 2017 3:32 PM
To: Barras, Tommy
Subject: RE:

Tommy,

I have verified that the HAG systems are not the only systems that still need exemptions for Stone Eagle. Heritage, Crain and DanCars still need to have their exemptions remain as well

When I send out the weekly report, I will not alter DSV's comments, but will add a note in my email under Additional Information regarding this information.

Thanks,

**Dana Adams - OHA1 03-01 - 51224**

From: Brockman, Bob [mailto:Bob_Brockman@reyrey.com]
Sent: Wednesday, July 26, 2017 8:53 AM
To: Barras, Tommy
Subject: FW:

From: Schaefer, Robert G [mailto:Robert_Schaefer@reyrey.com]
Sent: Tuesday, July 25, 2017 1:53 PM
To: Brockman, Bob
Subject: RE:

Stoneagle is complete with the exception of Hendrick. Stoneagle wanted to move Hendrick last. Hendrick's CFO was on vacation asked to not move forward until next week. We should be done by the end of next week. Hendrick would be the only reason we do not get it done. We are working will be working with our internal team to get this done ASAP.

SET – Says they will be testing next week with DMI. We are monitoring the progress

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0265394
CX4463-001

From: Bruckman, Bob [mailto:Bob_Bruckman@reyeye.com]
Sent: Tuesday, July 25, 2017 2:46 PM
To: Schaefer, Robert G <Robert_Schaefer@reyeye.com>
Subject:

Bob,

What is the situation with Stone Eagle?

What is happening with RO Close Time request from SET?

Bob
«
»

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REYCID0265395
CX4463-002