

THE FORENSIC PANEL
TEL: 212.535.9286   FAX: 212.535.3259   MICHAEL WELNER, M.D., CHAIRMAN

James Loonam, Esq.
Jones Day
250 Vesey Street
New York, NY 10281

**Re: U.S. v. Robert T. Brockman**

August 6, 2021

Dear Mr. Loonam,

Pursuant to your request, I have conducted a neurology review of pertinent evidence from the above defendant. Robert Brockman, 80, is the former CEO of a software company. In October 2020, a federal grand jury indicted him on 39 counts relating to a complex series of actions and transactions involving a variety of corporate entities and several countries and including people he is alleged to have directed in various financial activities that prosecutors charge evaded taxes or were otherwise illegal.

For a number of years, Mr. Brockman expressed concerns about his memory and decline. He had a number of medical problems for which he received treatment from physicians, but did not seek medical attention for memory impairment until 2017. The ensuing workup sparked concerns in 2018 over neurologic symptoms suggesting that he had Parkinson's Disease. This diagnosis was confirmed by neuroimaging in in 2019.

While he received treatment for the movement symptoms, the workup of Mr. Brockman's cognitive problems came to the fore in 2019, when he was first neuropsychologically tested in March. At that point, he was diagnosed with dementia. He has been worked up in the Baylor system and elsewhere in the Houston area, where doctors state that his cognitive impairment and other symptoms are consistent with Parkinson's disease, parkinsonism, mild cognitive impairment, Lewy body dementia, or a combination thereof.

Mr. Brockman's diagnosis became relevant to his being under investigation when his attorneys, who described his great difficulty being able to recall pertinent information to aid their handling of their complex investigation. When the attorneys learned in July 2019 that he had been diagnosed with dementia, they obtained records and obtained more information about his workup the issue for several months and then, notified investigators in April 2020.

Prosecutors then indicted Mr. Brockman in October 2020 with concerns over Mr. Brockman's handicaps, and his ability to work with attorneys, unresolved. On December 8, 2020, Kathryn Keneally submitted a Declaration in support of Mr. Brockman's motion for a hearing to determine whether Mr. Brockman is competent to assist in his defense. As

BEHAVIORAL SCIENCES   •   FORENSIC SCIENCES   •   PEER REVIEWED
WWW.FORENSICPANEL.COM   •   EMAIL: INFO@FORENSICPANEL.COM

US v. Brockman
**DX-24**
Case No: 4:21-cr-0009

Re: U.S. v. **Robert T. Brockman**
***The Forensic Panel – Thomas Wisniewski, M.D.***
August 6, 2021

Page **2** of **6**

stated, Mr. Brockman's cognitive impairment makes him incapable of assisting in his defense. According to, Mr. Brockman's attorneys, he had been unable to relate important information from the past, to review and evaluate documents, or to retain information that counsel tells him. He repeatedly provides the same information, regardless of relevance. Further, noted Ms. Keneally, the government had estimated that it would produce possibly tens of millions of documents of which Mr. Brockman cannot help counsel understand the charges or the evidence.

December 8, 2020, Ms. Keneally's co-counsel Peter J. Romatowski submitted a Declaration in support of a hearing to determine whether Mr. Brockman is competent to assist in his defense. According to Mr. Romatowski, Mr. Brockman has consistently been unable to assist in his defense, being unable to review and evaluate documents. Mr. Romatowski expressed concern that Mr. Brockman is unable to provide specific contextual details and does not provide fully accurate information.

In May 2021, three doctors were appointed to examine Mr. Brockman. One of them, neurologist Ryan Darby, M.D. diagnosed him with Parkinson's Disease and mild cognitive impairment. Dr. Darby was working with a neuropsychologist, Dr. Robert Denney, who tested Mr. Brockman and opined that he was malingering cognitive impairment.

The case was referred to The Forensic Panel to and to me in order to review the available evidence pertinent to my expertise and training as a neurologist and to address the following question:

> ***What is (are) Robert Brockman's diagnosis (es)? What evidence is the basis of your neurology opinion? Are there other diagnoses referenced in other reports that Mr. Brockman does not have? What does the clinical data reflect on the disease course of the diagnosis?***

**SOURCES OF INFORMATION**

1) Declaration of Dr. James Pool, MD., November 25, 2020
2) Declaration and exhibits of Kathryn Keneally, December 8, 2020
3) Declaration of Peter J. Romatowski, December 8, 2020
4) Draft Declaration of Ryan Darby, M.D. February 28, 2021
5) U.S Expert Notice, February 17, 2021
6) Response to U.S. Expert Notice with exhibits, February 22, 2021
7) Mr. Brockman's personal writings of health concerns, December 2004-2018
8) Metadata authenticating Mr. Brockman's personal health writings
9) Dr. Jankovic's report of office visit, January 30, 2019
10) Diagnostic Report re: NM Datscan, Brain SPECT, February 14, 2019
11) Dr. Michele York Neuro-psychological evaluation, March 1, 2019
12) Dr. Yu Notes from Mr. Brockman's appointment, March 20, 2019
13) Report of Dr. Pool's Annual Physical, October 1, 2019

Re: U.S. v. **Robert T. Brockman**
**The Forensic Panel – Thomas Wisniewski, M.D.**
August 6, 2021

Page **3** of **6**

14) Dr. York Forensic Evaluation, December 3, 2019
15) Dr. Pool's examination, October 5, 2020
16) Dr. York's neuropsychological exam, October 7, 2020
17) Notice and Motion for Competency Hearing, December 8, 2020
18) Government's Response to Motion for Competency Hearing, December 15, 2020
19) Mr. Brockman's reply and exhibits to Government's Opposition, December 21, 2020
20) Video and transcript of Dr. Darby's evaluation, May 5, 2021
21) Dr. Ryan Darby's report, June 18, 2021
22) Dr. Park Dietz report, June 21, 2021
23) Dr. Robert Denney's report, June 21, 2021
24) Video and transcript of Dr. Dietz and Dr. Denney's evaluation, May 18, and May 20, 2021
25) Dr. Denney test data, May 19, 2021
26) Dr. York test data, March 1, 2019, December 3, 2019, October 7, 2020
27) Fondren Orthopedic Group medical records July 12, 1999, April 3, 2014, November-December 2017
28) Methodist hospital records for infectious disease, May 31-June 11, 2021
29) Methodist hospital records for infectious disease, March 15-19, 2021
30) Transcript and video of Mr. Brockman's deposition, Dealer Management Systems Antitrust Litigation, January 16 and 17, 2019
31) Transcript of Mr. Brockman's deposition -- CDK Global & Reynolds and Reynolds, September 18 and 19, 2019
32) Email between Dr. Yudofsky and Mr. Brockman regarding memory problems, May 3-4, 2017
33) Dr. Yudofsky consultation notes, October 20, 2018 – October 23, 2020
34) PET scan results, March 12, 2021
35) Peer oversight call with Thomas Guilmette, Ph.D., Michael Welner, M.D., Marc Agronin M.D.., Elkhonon Goldberg, Ph.D., James Seward, Ph.D., Bernice Marcopulos, Ph.D., June 24, 2021
36) Peer oversight call with Thomas Guilmette, Ph.D., Elkhonon Goldberg, Ph.D., Bernice Marcopulos, Ph.D., James Seward, Ph.D., and Michael Welner, M.D., June 28, 2021
37) Peer oversight call with Thomas Guilmette, Ph.D., Michael Welner, M.D., Christopher Whitlow, M.D., Marc Agronin, M.D., Timothy Shepherd, Ph.D., M.D., July 30, 2021
38) Amyloid PET scan results, July 28, 2021
39) Brain MRI results, July 30, 2021
40) Transcript of Dr. Guilmette interview of Mr. Brockman, July 16, 2021
41) Transcript of Dr. Agronin interview of Mr. Brockman, July 13, 2021
42) Report of Thomas Guilmette, Ph.D. August 6, 2021
43) Report of Marc Agronin, M.D., August 6, 2021
44) Report of Christopher Whitlow, M.D., August 6, 2021

Re: U.S. v. **Robert T. Brockman**
*The Forensic Panel – Thomas Wisniewski, M.D.*
August 6, 2021

Page **4** of **6**

## FORENSIC NEUROLOGY ASSESSMENT

***What is (are) Robert Brockman's diagnosis (es)? What evidence is the basis of your neurology opinion? Are there other diagnoses referenced in other reports that Mr. Brockman does not have? What does the clinical data reflect on the disease course of the diagnosis?***

Robert Brockman's diagnosis is **dementia**, most likely due to Parkinson's Disease but also with possible likely co-occurrence of Alzheimer's Disease.

The diagnosis of Parkinson's Disease is made clinically. Mr. Brockman began presenting with symptoms of Parkinsonism no later than in 2018. The DatScan ordered in February 2019 confirms clinical diagnosis.

Dementia is likewise a clinical diagnosis. Robert Brockman has reported and has demonstrated a decline in memory and a decline in other cognitive abilities. Dementia is diagnosed rather than Mild Cognitive Impairment when one experiences functional decline along with memory and other cognitive decline. Mr. Brockman has suffered a significant decline across several modalities.

While not completely dependent, he requires assistance with numerous activities of daily living. Because of those functional limitations, his manifest confusion, and very poor judgment, he would not be able to live independently. That marginal function is a steep decline from his industrious, multi-talented, expansive, social baseline. Family and close acquaintances interviewed by psychiatrist Marc Agronin, M.D. and neuropsychologist Tom Guilmette, Ph.D. have detailed their witnessing his functional decline for two to five years and more.

Mr. Brockman maintained notes of personal reflections that he notated every year from 2004 to 2018. The notes have been digitally authenticated to have made the observations at the time he made them. From 2004, Robert Brockman was describing memory and other cognitive problems. He appraised them to be static at times, progressing at others, but they were present.

In my professional experience, and in treating highly educated and hard driving individuals, people with cognitive problems are aware that there is something wrong. They may be the first to notice, and these problems become exposed by multitasking demands that they were used to and that were once manageable but one no longer has the ability for. Given their self-expectations, and awareness of the poor prognosis of dementia, they may keep such concerns to themselves, but realize they are not as sharp.

Re: U.S. v. **Robert T. Brockman**
***The Forensic Panel – Thomas Wisniewski, M.D.***
August 6, 2021

Page **5** of **6**

The presence of such a series of private notes is not so surprising. Nor are efforts to compensate for one's sense of decline. Robert Brockman had a highly regarded rigorous work ethic that was a great source of pride and example for his company, even as he noted and was frustrated by his memory impairment and his fatigue. His being a business leader was thus very important to him, even when his cognition had declined to the point that neuropsychological testing revealed dementia.

Furthermore, Mr. Brockman's slow decline from quiet cognitive concerns into dementia years later is also a common experience. The progression from first notice of cognitive slippage to dementia may span ten to fifteen years or more, depending on the individual.

Lewy body dementia (LBD) or Parkinson's dementia is a more likely diagnosis when the dementia establishes itself within a year of the Parkinson's diagnosis. Mr. Brockman's dementia was diagnosed a little over a year after the Parkinson's diagnosis. Mr. Brockman's cognitive testing is consistent with dementia, and has been confirmed by multiple examiners.

The diagnosis of Parkinson's Disease is supported by the presence and prevalence of executive function deficits, which are consistently found in Parkinson's Disease Dementia than in those with Alzheimer's. Alzheimer's Disease, however, frequently co-occurs with Parkinson's Disease dementia – as much as 80 percent of those with Parkinson's Disease Dementia.

The tests conducted by Dr. Guilmette are comprehensive and indicate multiple cognitive impairments and also confirm dementia. Dr. Denney and Dr. Darby's conclusions diagnosed mild cognitive impairment, which is simply not consistent with all of Mr. Brockman's other workups. Mr. Brockman's somewhat preserved sociability, social grace, easy communication do not negate the multiple of cognitive domains and that have been repeatedly tested and demonstrated to be highly impaired.

Mr. Brockman has been diagnosed by PET Amyvid on July 28, 2021 with moderate to frequent beta-amyloid and neuritic plaque deposits. That, along with the clinical findings and neuropsychological testing data and pronounced temporal and parietal lobe neuronal loss presenting in the brain MRI of July 30, 2021 strongly supports the co-occurrence of Alzheimer's Disease with Parkinson's Disease dementia. The diagnosis itself contributes to a dismal cognitive prognosis.

This condition is permanent. Neuroimaging shows clear degeneration, and significant brain shrinkage. This condition is progressive, Mr. Brockman will get more impaired and more dependent. There is no treatment to reverse this condition. Mr. Brockman will not return to "normal" as indicated by court appointed expert, Dr. Darby. The imaging data reflects the pathology identified by all the testing psychologists, the experiences noted by

Re: U.S. v. **Robert T. Brockman**
*The Forensic Panel – Thomas Wisniewski, M.D.*
August 6, 2021

Page **6** of **6**

those close to Mr. Brockman, his presentation in interviews, as well as Mr. Brockman's functional decline.

A significant change in his environment can increase the likelihood of delirium. Right now, Mr. Brockman has support systems in place to lessen his functional deficits. A different, unfamiliar setting would likely exacerbate his symptoms. One should not be surprised when he becomes delirious in a hospital, whether it is because of an infection or not.

His dementia will make him vulnerable to developing delirium and becoming more impaired when, for example, he is hospitalized with medical problems. The decline reported is consistent with the accelerating decline of Robert Brockman's condition, and also reflective of how when delirium subsides in those with dementia, residual decline is commonly irreversible and additive to the pre-existing cognitive handicaps.


Thomas Wisniewski, M.D.
Gerald J. and Dorothy R. Friedman Professor
of the New York University Alzheimer's Disease Center
Professor of Neurology, Pathology and Psychiatry
New York University School of Medicine