**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal No. 4:21-cr-00009** |
| | § | |
| **ROBERT T. BROCKMAN** | § | |

**DEFENDANT ROBERT T. BROCKMAN'S
REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR A
DETERMINATION THAT HE
<u>IS NOT COMPETENT TO ASSIST IN HIS DEFENSE</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. - 1 -

ARGUMENT ........................................................................................ - 4 -

I.    The Evidence Refutes The Government's Timeline Argument ................... - 4 -

    A.    The Government Ignores Evidence That Mr. Brockman Raised Cognitive Concerns Years Earlier Than Its Purported Timeline .... - 5 -

    B.    The Government Ignores Evidence That Mr. Brockman Sought Further Treatment In 2018 Based On Medical Advice ..................... - 6 -

    C.    The Government's Citations To Mr. Brockman's Speeches, Depositions, And Emails Between 2017–2020 Do Not Support A Finding Of Competence In 2022 ......................................................... - 8 -

        1.    The Government Materially Misrepresents Defense Expert Opinions ...................................................................... - 8 -

        2.    The Government's Depiction Of Mr. Brockman's Speeches, Depositions, And Emails Has Little Bearing On The Issue Of His Present Competency .................................... - 10 -

    D.    The Government Ignores Evidence Of Mr. Brockman's Incompetence In 2021 And The Ongoing Progression Of His Condition ................................................................................................ - 12 -

        1.    The Government Fails To Address The Impact Of Mr. Brockman's Repeated Episodes Of Delirium ................ - 12 -

        2.    The Government Wrongly Dismisses Evidence And Testimony Of Mr. Brockman's Treating Physicians, Caregiver, And Counsel.......................................................... - 13 -

II.    The Factors Cited By The Government Demonstrate That Mr. Brockman Is Not Competent And He Is Not Malingering ................. - 16 -

    A.    Mr. Brockman's Performance On Competency Assessment Tests Demonstrates He Cannot Assist Properly In His Defense............... - 17 -

    B.    PVT Scores Demonstrate Mr. Brockman Suffers From Genuine Cognitive Impairment And Is Not Malingering Cognitive Incapacitation ................................................................................... - 20 -

    C.    Mr. Brockman's Presentation During Interviews Demonstrates He Is Incompetent ................................................................................ - 20 -

    D.    Neuroimaging Scans Confirm Mr. Brockman Has Dementia ........ - 22 -

## TABLE OF CONTENTS
(continued)

Page

**III.    In The Alternative, The Court Should Appoint Neutral Experts**.............. - 25 -

**CONCLUSION** ........................................................................................ - 25 -

## INTRODUCTION

Mr. Brockman is incompetent to stand trial. Objective neuroimaging studies, neuropsychological test results, re-occurring bouts of delirium, and observations by Mr. Brockman's treating physicians, caregiver, defense counsel, and qualified experts all confirm that he has dementia that renders him incompetent to assist in his defense. *See* Def. Robert T. Brockman's Proposed Findings of Fact and Conclusions of Law Regarding the Competency Determination, Dkt. No. 239 at ¶¶ 137–151 (hereinafter "Def. Post-Hr'g Br."). The causes of Mr. Brockman's dementia are Parkinson's disease and Alzheimer's disease—permanent, progressive, and incurable diseases that will only lead to further cognitive and physical deterioration and, in the case of Alzheimer's disease, ultimately death. *Id.* at ¶ 151. And the evidence establishes the progression of Mr. Brockman's cognitive impairment is accelerating. *Id.* at ¶¶ 8, 58.

But the burden is not on Mr. Brockman to prove he is incompetent. Rather, the government must prove Mr. Brockman is presently competent to proceed to trial. The government cannot meet this burden and instead attempts to re-cast the "central" issue as whether Mr. Brockman exaggerated his symptoms to doctors between September 2018 and November 2020. United States' Post-Hr'g Br. on Competency, Dkt. No. 238 at 5 (hereinafter "U.S. Post-Hr'g Br."). The government's argument is deeply flawed.

The government ignored the advice of its own expert, Dr. Park Dietz, by refusing to retain a geriatric psychiatrist. 11/19/2021 PM Tr. at 35:16–36:5 (Dietz). The government's inexplicable refusal to engage an expert with the required expertise, by itself, undermines the government's entire position.

Moreover, the government's tunnel vision on the time period between September 2018 and November 2020 wholly ignores the progression of Mr. Brockman's neurodegenerative diseases in 2021, including the significance of Mr. Brockman's hospitalizations and re-occurring bouts of delirium.  All experts agree that delirium can itself cause permanent cognitive dysfunction and accelerate the progression of Mr. Brockman's neurodegenerative diseases, but the government's 50-page memorandum is devoid of any mention of delirium.  The government cannot meet its burden by burying its head in the sand and ignoring the evidence introduced at the competency hearing.

Tellingly, two of the three experts called by the government, Dr. Ryan Darby and Dr. Park Dietz, acknowledged that the government cannot meet its burden.  Gov't Ex. 39, Dr. Darby Suppl. Report, Dkt. No. 177 at 9 ("[a]t [Mr. Brockman's] level of cognitive impairment expected based on the natural disease course and Mr. Brockman's neuroimaging, Mr. Brockman could be either competent or incompetent to assist in his defense.  I do not think this can be determined currently"); 11/19/2021 AM Tr. at 92:14–92:24 (Dietz) ("I couldn't tell whether this was genuine cognitive impairment to a degree that could make this man incompetent or whether this was malingering."); *see* Gov't Ex. 84, Dr. Dietz Suppl. Report, Dkt. No. 176 at 20.[1]  Dr. Dietz further undercut the government's narrative, stating that for Mr. Brockman to malinger the extent of his

---

[1] Dr. Dietz modified his position in his second supplemental report, but Dr. Dietz's contention that Mr. Brockman is malingering should be given no weight given that Dr. Dietz admitted that his conclusions are not based on his own expertise in dementia, neuroimaging, or neuropsychological testing, 11/19/2021 AM Tr. at 16:2–16:7 (Dietz); see also Def. Post-Hr'g Br. at ¶ 90, and based his finding in his second supplemental expert report instead on information he received from Drs. Denney and Darby.  Gov't Ex. 88, Dr. Dietz Second Suppl. Report, Dkt. No. 185 at 2.

cognitive impairments would be a "Herculean task." Gov't Ex. 84, Dr. Dietz Suppl. Report, Dkt. No. 176 at 18–20; Def. Post-Hr'g Br. at ¶ 2.

Rather than assemble a team of experts that possessed the appropriate expertise to objectively analyze the evidence concerning Mr. Brockman's current cognitive abilities, the government attempts to shoehorn the record into its predetermined conclusion that it has rigidly adhered to for the last thirteen months. From at least December 2020—despite notice from the defense eight months earlier and without consulting with a single doctor who had examined Mr. Brockman—the government adopted a strategy to argue that Mr. Brockman began malingering in September 2018. *See, e.g.*, United States' Resp. to Def.'s Mot. for a Competency Hr'g, Dkt. No. 1-3 at 197 (filed December 15, 2020). The timeline upon which the government has relied, however, is flatly wrong: the evidence establishes that Mr. Brockman raised concerns about his cognition years before 2018. *See Infra* Section I.A. Despite its own medical evidence, the government adheres to its contention that Mr. Brockman is faking his dementia, and along the way not only ignores the conclusions of its own experts, but also creates legal standards out of whole cloth,[2] and materially misrepresents defense expert opinions. The government has not and cannot meet its burden of proving that Mr. Brockman is presently competent.

---

[2] The government claims that "continued malingering is itself evidence of competence," U.S. Post-Hr'g Br. at 23, citing *United States v. Simpson*, 645 F.3d 300, 306-07 (5th Cir. 2011), and *United States v. Dockins*, 986 F.2d 888, 892 (5th Cir. 1993). Nothing in either case supports this contention. The appellate court in *Simpson* stated that the record in that case "reveals . . . a great deal of evidence to support a finding that Simpson was purposefully engaging in manipulative conduct," *Simpson*, 645 F.3d at 307, and the panel in *Dockins* extensively detailed evidence of malingering. *See Dockins*, 986 F.2d at 891–92. In neither *Simpson* nor *Dockins*, however, did the court suggest (much less hold), as the government erroneously contends, that a finding of malingering, standing alone, is affirmative evidence of competence. *See* U.S. Post-Hr'g Br. at 4, 23 n.15.

## ARGUMENT

### I.     The Evidence Refutes The Government's Timeline Argument

Defense counsel raised concerns about Mr. Brockman's cognitive deficits in April 2020, nearly six months prior to the Indictment.  Gov't Exs. 81–82.  Defense counsel provided the government with HIPAA waivers to obtain medical records and to allow the government to engage in discussions (without participation of defense counsel) with Mr. Brockman's treating physicians, and offered to have Mr. Brockman undergo additional medical examinations by physicians of the government's choosing.  11/24/2021 AM Tr. at 89:23–91:8, 91:24–92:12 (Romatowski).

Rather than investigate Mr. Brockman's medical conditions, the government admittedly "spurned" defense counsel's offers.[3]  Instead, the government fixated upon a timeline to claim that Mr. Brockman began malingering in September 2018, and has repeated this timeline in multiple filings from December 2020 onward.[4]

In its post-hearing brief, the government yet again recycles this timeline.  U.S. Post-Hr'g Br. at 9.  In so doing, the government wholly fails to address evidence presented at the competency hearing, including by its own witnesses, that directly contradicts its would-be timeline.  As the evidence establishes, Mr. Brockman raised cognitive concerns with his

---

[3] At a hearing prior to the transfer of this case from the Northern District of California, the following exchange occurred between Judge William Alsup and the prosecutor:  The Court: "is it true that they [the defense] offered to let you [the government] talk to the medical people without even the defense being there and you spurned that opportunity?"  AUSA Pitman:  "That is true, Your Honor."  Dec. 15, 2020 Hr'g Tr. at 33:1–33:4; *see also* Order Granting Rule 21(b) Mot. to Transfer, Dkt. No. 1–3 at 768 ("Counsel for Brockman offered the government the chance to interview Brockman's doctors prior to the indictment to understand his health for themselves.  The government spurned the offer during the months in which it remained open.").

[4] *See, e.g.*, United States' Resp. to Def.'s Mot. for a Competency Hr'g, Dkt. No. 1-3 at 201; United States' Mot. for Disc. Order Under Rule 17(C) and 45 CFR 164.512(e)(1)(i), Dkt. No. 26 at 11; United States' Opp'n to Def.'s Mot. to Exclude Test. and Appoint More Experts, Dkt. No. 113 at 11–12.

doctor years before September 2018; he sought treatment in 2018 for cognitive impairment upon the advice of his treating physicians; and his apparent functionality in years past is consistent with the disease course of dementia. The prosecution's preoccupation with a segment of history from 2018 to 2020 is not only mistaken, it is beside the point. The government gives no attention to Mr. Brockman's current condition and his present competency—the sole issue before this Court.

### A.   The Government Ignores Evidence That Mr. Brockman Raised Cognitive Concerns Years Earlier Than Its Purported Timeline

The government's argument that Mr. Brockman is malingering starts with its contention that "from the time [he] learned about the search warrants" on August 15th and September 5th, 2018, "he began a campaign of feigning mental incompetency to avoid prosecution." U.S. Post-Hr'g Br. at 1. That timeline has been proven false.

The government contends that Mr. Brockman's "first complaints to a medical professional about 'cognitive problems' came immediately after the September 5, 2018 search warrant in Bermuda of Evatt Tamine's home."[5] U.S. Post-Hr'g Br. at 40. In fact, Mr. Brockman raised concerns about his cognition to his former primary care physician, Dr. Scott Lisse, in 2015, three years prior to the 2018 search warrants. Gov't Ex. 153.

---

[5] The government contends that the evidence that it has obtained from Mr. Tamine gave Mr. Brockman "a strong motive to malinger." *See* U.S. Post-Hr'g Br. at 5–8. Yet Mr. Tamine himself vigorously disputes the prosecution's theory of wrongdoing by Mr. Brockman that could give rise to a motive to fake incompetency. The government ignores Mr. Tamine's testimony that he believes Mr. Brockman is innocent of the charges in the Indictment, 11/17/2021 PM Tr. at 25:2-28:11 (Tamine); that he did not believe Mr. Brockman engaged in tax evasion, money laundering, or bank fraud, *id.* at 25:16–25:25, 27:7–27:11, 27:25–28:11; and that information contained in the Indictment is incorrect. *Id.* at 27:22–27:24. The government also misstates the scienter requirement in criminal tax cases. The government's contention that Mr. Brockman and Mr. Tamine "acted with criminal intent" because they purportedly "acted like criminals," *see* U.S. Post-Hr'g Br. at 7, is not only refuted by Mr. Tamine's testimony, but cannot in any case establish a "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991) (quoting *United States v. Pomponio*, 429 U.S. 10, 12 (1976)).

Mr. Brockman provided Dr. Lisse—a witness called by the government—with notes in September 2015 that his "mental processes [were] not as good," his "memory continues to get poorer, especially with names of people that I know well and should remember easily," and that "something is really wrong with me." Gov't Ex. 153 at 4. The government's expert Dr. Dietz also acknowledged that prior to the 2018 search warrants, Mr. Brockman provided health notes raising cognitive issues to medical professionals in addition to Dr. Lisse. 11/19/2021 PM Tr. at 114:3–114:25 (Dietz). In fact, Mr. Brockman reported to Dr. William Obenour (his general practitioner prior to Dr. Lisse) similar concerns about his cognitive abilities in 2011 and 2012. *See* 11/23/2021 PM Tr. at 202:22–203:2 (Agronin); *see also* Gov't Ex. 1, Dr. Denney Report, Dkt. No. 79 at 7.

### B. The Government Ignores Evidence That Mr. Brockman Sought Further Treatment In 2018 Based On Medical Advice

The lynchpin of the government's claimed timeline—that Mr. Brockman's appointment with Dr. Seth Lerner was the direct result of the September 5, 2018 search warrant and a first step in a purported scheme to malinger—similarly fails upon a review of the evidence. *See* U.S. Post-Hr'g Br. at 7.

Mr. Brockman began experiencing a urinary tract infection in July 2018. Gov't Ex. 50. Mr. Brockman then met with Dr. Lisse on August 31, 2018, five days prior to the execution of the September search warrant, to seek treatment for his urinary tract infection. Gov't Exs. 50, 95. Dr. Lisse advised Mr. Brockman to "See Dr. Lerner – urologist if [his] symptoms persist." Gov't Ex. 95 at 5; *see also* 11/18/2021 PM Tr. at 148:17–148:25 (Lisse). On September 6, 2018, Mr. Brockman emailed Dr. Lerner, who had been his long-

time treating urologist, to schedule an overdue cystoscopy, and raised Dr. Lisse's concern about his persistent urinary tract infection.  Gov't Ex. 50.  As the prosecution's expert Dr. Dietz acknowledged, Mr. Brockman did not "need a ruse to reach out to Dr. Lerner. He is complaining about urological problems that would be appropriate to see a urologist about."  11/19/2021 PM Tr. at 117:19–117:23 (Dietz).

Dr. Lerner examined Mr. Brockman on September 11, 2018, and noted that Mr. Brockman was "distressed by change in his health and sense of well being."  Def. Ex. 79 at BCM-0001133.  Dr. Lerner referred Mr. Brockman to Dr. James Pool.  *Id.*  Dr. Pool, who remains Mr. Brockman's current general practitioner, ordered a neuropsychological consultation and referred Mr. Brockman to medical experts who ultimately diagnosed him with Parkinson's disease (as confirmed by an objective DaTscan) and dementia.  Def. Ex. 81 at 822; Def. Ex. 37 at BCM-0000744; Gov't Ex. 82.

The government omits this relevant information regarding Mr. Brockman's medical treatment in 2018, and as a result misstates the actual timeline of these events. Mr. Brockman met with Dr. Lerner because that was exactly what Dr. Lisse instructed him to do, and he met with Dr. Pool because that was what Dr. Lerner advised.[6]

---

[6] Dr. Lisse admittedly missed diagnosing Mr. Brockman's Parkinson's disease, which no one disputes, so it is unsurprising Mr. Brockman transitioned to a new primary care physician in 2018.  11/18/2021 PM Tr. at 126:22–126:24, 147:17–148:7, 149:6–149:13 (Lisse).  Yet the government would have the Court draw some nefarious inference from the transition to Dr. Pool, arguably one of the best primary care physicians in the country who previously served as Dr. Michael DeBakey's personal physician.  11/22/2021 AM Tr. at 9:1–9:18 (Pool).

C.   **The Government's Citations To Mr. Brockman's Speeches, Depositions, And Emails Between 2017–2020 Do Not Support A Finding Of Competence In 2022**

The government contends that Mr. Brockman's speeches, depositions, and emails in 2019 and 2020 are current evidence of malingering.  *See* U.S. Post-Hr'g Br. at 8–14. The government materially misstates the defense experts' opinions that Mr. Brockman's activities are consistent with the presence of dementia, and offers no countervailing evidence concerning Mr. Brockman's current cognitive condition.

1.   **The Government Materially Misrepresents Defense Expert Opinions**

The government consistently ignores and misrepresents the extent of the review undertaken by defense experts in reaching their opinions.[7]  Contrary to the government's contentions, defense experts reviewed and considered collateral evidence when opining on Mr. Brockman's competency, including his performance in speeches to Reynolds and Reynolds employees in 2017 to 2019, deposition testimony in 2019, and email exchanges with co-workers and friends.[8]

Defense experts testified that Mr. Brockman's performance in depositions and speeches was consistent with the dementia diagnoses made by his treating doctors in 2019

---

[7] The government seeks to bolster its position by contending that defense experts are inexperienced in "forensic criminal practice," without offering any explanation as to why this matters.  U.S. Post-Hr.g Br. at 38–39. The government's experts, Drs. Dietz and Denney, are professional testifying witnesses, and Dr. Darby specializes in a type of dementia not at issue in this case.  *See* 11/15/2021 PM Tr. at 96:8–97:4 (Darby); 11/16/2021 PM Tr. at 44:22–46:19 (Denney); 11/19/2021 PM Tr. at 40:14–40:21, 43:7–44:1, 47:3–49:1 (Dietz).  In contrast, the defense called as experts leading practitioners who diagnose and treat patients with Parkinson's disease, Alzheimer's disease, and dementia.  11/17/2021 PM Tr. at 56:5–59:15 (Wisniewski); 11/22/2021 PM Tr. at 56:12–59:14 (Guilmette); 11/23/2021 AM Tr. at 6:10–13:6 (Whitlow); 11/23/2021 PM Tr. at 37:18–45:7 (Agronin).

[8] *See, e.g.*, Def. Ex. 24, Dr. Wisniewski Report, Dkt. No. 99 at 3; Def. Ex. 19, Dr. Guilmette Report, Dkt. No. 101 at 3–4; Def. Ex. 12, Dr. Agronin Report, Dkt. No. 102 at 4–5.

and 2020.  Dr. Thomas Guilmette testified that he considered the January and September 2019 depositions and found that they demonstrated "overlearned ideas that allowed [Mr. Brockman] to speak fluently and articulately on these topics.  However, when he was confronted with exams and tests that he had no prior experience with, that were really new and novel to him, that's when his performance really declined."  11/22/2021 PM Tr. at 152:9–152:13 (Guilmette).  Dr. Thomas Wisniewski testified he reviewed Mr. Brockman's depositions and speeches and found the videos were "entirely consistent" with Mr. Brockman's diagnosis of mild to moderate dementia at the time, and that "highly learned information can be quite preserved even in the settings of dementia."  11/17/2021 PM Tr. at 83:16–83:24, 84:1–84:9, 146:11–146:13 (Wisniewski).  Dr. Marc Agronin testified he reviewed the depositions and speeches and found the videos consistent with his observations and diagnoses of Mr. Brockman.  11/23/2021 PM Tr. at 110:4–110:17 (Agronin).  Dr. Agronin explained that the speeches and depositions are not cognitive tests and cannot be used for diagnostic purposes, and that Mr. Brockman is "speaking about overlearned material.  He is doing something that he does well."  11/23/2021 PM Tr. at 110:19–111:8 (Agronin); *see also* Def. Post-Hr'g Br. at ¶ 98.

Moreover, Dr. Guilmette and Dr. Agronin testified that, regardless of how Mr. Brockman performed in speeches and depositions in 2019, he no longer has the ability to perform in the same manner today.[9]  11/22/2021 PM Tr. at 151:16–153:6 (Guilmette); 11/23/2021 PM Tr. at 111:19–112:8 (Agronin).

---

[9] Dr. Wisniewski testified that, even if he were to learn new information concerning Mr. Brockman's conduct in prior years, it would not change his conclusion that Mr. Brockman presently has dementia "[b]ecause there is so

2. **The Government's Depiction Of Mr. Brockman's Speeches, Depositions, And Emails Has Little Bearing On The Issue Of His Present Competency**

Unmoved by these well-qualified medical opinions, the government insists that Mr. Brockman's dementia diagnoses in 2019 are inconsistent with his performance in depositions and speeches.  U.S. Post-Hr'g Br. at 8.  The government's experts claim that Mr. Brockman's depositions and speeches are "demonstrable *objective* information" that Mr. Brockman did not have dementia in 2018 or 2019.  Gov't Ex. 2, Dr. Denney Suppl. Report, Dkt. No. 179 at 16 & n.9 (emphasis added); Gov't Ex. 83, Dr. Dietz Report, Dkt. No. 80 at 14–23.  Drs. Denney and Dietz are not qualified to opine whether Mr. Brockman's activities are consistent with the natural course of dementia.  Dr. Denney lacks expertise in the medical conditions at issue, and during the hearing he demonstrated a profound lack of understanding of Parkinson's disease and Alzheimer's disease.  Def. Post-Hr'g Br. at ¶¶ 127–28 and citations therein.  Dr. Dietz has no training in geriatric psychiatry or neurodegenerative disorders, and candidly admitted that he is "not an expert on dementia, on neuroimaging, or even the elderly."  11/19/2021 AM Tr. at 16:2–16:7 (Dietz); *see also* Def. Post-Hr'g Br. at ¶ 85.  Dr. Dietz recommended to the government that a geriatric psychiatrist is the appropriate expert to analyze this information.  11/19/2021 PM Tr. at 35:16–36:5 (Dietz).  The government ignored its own expert's advice, preferring instead to rely on unqualified interpretations of Mr. Brockman's past

---

much corroborating evidence in terms of imaging and other objective measures."  11/17/2021 PM Tr. at 164:20–165:3 (Wisniewski).

conduct.  *Cf.* 11/22/2021 PM Tr. at 61:25–62:7 (Guilmette); 11/23/2021 PM Tr. at 47:25–48:8 (Agronin).

Moreover, while the government cited select emails sent under Mr. Brockman's name in 2019 and 2020, the government offered no emails from 2021.  As Dr. Dietz testified, the government lacks proof as to Mr. Brockman's "real world" impairment after November 2020.[10]  11/19/2021 AM Tr. at 104:4–105:1 (Dietz); *see also* Def. Ex. 15, Agronin Suppl. Report, Dkt. No. 172 at 5, 22 (describing Mr. Brockman's current inability to use technology and email); Def. Ex. 22, Dr. Guilmette Suppl. Report, Dkt. No. 173 at 7 (same); Def. Post-Hr'g Br. at ¶ 9.  And the government experts failed to obtain available credible evidence of Mr. Brockman's real world impairment in 2021 when they decided not to interview Frank Gutierrez, Mr. Brockman's caregiver, because they supposedly believed it would have been "too intrusive."  11/19/2021 PM Tr. at 120:13–120:21 (Dietz).  Nevertheless, Dr. Dietz explained that he was "look[ing] forward" to hearing Mr. Gutierrez's testimony at the hearing, confirming the importance of Mr. Gutierrez's observations.[11]  11/19/2021 PM Tr. at 120:22–120:24 (Dietz).

---

[10] Notably, Dr. Dietz testified that he had no personal knowledge as to whether Mr. Brockman actually typed the emails he reviewed and stated he was aware Mr. Brockman "was having difficulty with his e-mail and had help from his wife with e-mails."  11/19/2021 PM Tr. at 88:21–88:25 (Dietz).  Dr. Agronin testified he could not use a particular email to opine on Mr. Brockman's diagnosis because he did not know who wrote the email or if someone helped Mr. Brockman write it.  11/23/2021 PM Tr. at 198:4–198:10 (Agronin).

[11] Dr. Denney made no pretense of being interested in Mr. Gutierrez's observations, and simply assumed, without any evidence whatsoever, that Mr. Gutierrez would not provide accurate information.  11/17/2021 AM Tr. at 21:11–21:15 (Denney) ("[Mr. Loonam] [W]hat's your basis to believe that Mr. Brockman's caretaker, Mr. Gutierrez, is not unsullied?  [Dr. Denney]  Well, [he is] very close to Mr. Brockman.  And for [Mr. Gutierrez] specifically, he works for Mr. Brockman.");  *see also* Gov't Ex. 2, Dr. Denney Suppl. Report, Dkt. No. 179 at 20 (claiming Mr. Gutierrez "may not be unsullied").

### D.   The Government Ignores Evidence Of Mr. Brockman's Incompetence In 2021 And The Ongoing Progression Of His Condition

#### 1.   The Government Fails To Address The Impact Of Mr. Brockman's Repeated Episodes Of Delirium

Between March and September 2021, Mr. Brockman was hospitalized four times—for five days in March, twelve days in May–June, overnight in June, and four days in September.  Three of these hospitalizations included bouts of delirium, and the overnight stay in June involved surgery under general anesthesia.  The government's post-hearing brief nowhere uses the term delirium, and the government ignores these 2021 delirium episodes and procedure under general anesthesia and their consequences for Mr. Brockman's present mental condition.

Experts from both sides agree that delirium is a serious medical condition and is a marker for brain vulnerability associated with permanent cognitive damage, accelerated cognitive decline, and increased fatality.[12]  Delirium and dementia commonly co-exist, and a single episode of delirium "can accelerate the course of dementia" and "double the rate of cognitive decline."  11/15/2021 PM Tr. at 51:9–51:18, 52:14–52:15 (Darby); 11/17/2021 PM Tr. at 86:11–86:22 (Wisniewski).

The significance of delirium in assessing Mr. Brockman's current competency is further evidenced by Drs. Darby and Dietz's modifications to their opinions following these episodes.  Gov't Ex. 39, Dr. Darby Suppl. Report, Dkt. No. 177 at 9; Gov't Ex. 84,

---

[12] *See* 11/15/2021 PM Tr. at 48:19–52:15, 131:25–132:9 (Darby); 11/16/2021 PM Tr. at 79:6–79:11, 87:3–87:7 (Denney); 11/17/2021 PM Tr. at 85:24–87:23 (Wisniewski); 11/19/2021 AM Tr. at 49:9–49:10, 82:22–83:1 (Dietz); 11/19/2021 PM Tr. at 87:8–87:22, 131:16–131:22 (Dietz); 11/22/2021 AM Tr. at 57:11–58:9 (Pool); 11/22/2021 PM Tr. at 110:2–112:12, 150:4–150:11 (Guilmette); 11/23/2021 PM Tr. at 55:25–56:4, 85:14–88:7, 132:5–132:11 (Agronin); Def. Post-Hr'g Br. at ¶¶ 8, 25–28, 82–83, 87.

Dr. Dietz Suppl. Report, Dkt. No. 176 at 18.  Dr. Darby recognized in his supplemental report that "[i]t is reasonable given his hospitalizations for delirium, natural disease course, and neuroimaging that Mr. Brockman has progressed to the dementia stage."  Gov't Ex. 39, Dr. Darby Suppl. Report, Dkt. No. 177 at 9.  Dr. Dietz opined that Mr. Brockman's "more recent episodes of delirium, surgery under general anesthesia, and new evidence of brain imaging consistent with early Alzheimer's disease . . . throw into question [his] current cognitive abilities and those aspects of competence to stand trial that require adequate short-term memory."  Gov't Ex. 84, Dr. Dietz Suppl. Report, Dkt. No. 176 at 18.

The record establishes that delirium "has taken a significant toll" on Mr. Brockman such that he is "more impaired" and "there is an acceleration of his overall neurocognitive decline."  11/23/2021 PM Tr. at 85:15–86:16 (Agronin).  The prosecution's omission of any discussion of delirium in its post-hearing submission is a glaring demonstration of its inability to meet its burden of proof.

        **2.**      **The Government Wrongly Dismisses Evidence And Testimony Of Mr. Brockman's Treating Physicians, Caregiver, And Counsel**

Dr. James L. Pool, Mr. Brockman's current primary care physician, testified regarding Mr. Brockman's four hospitalizations in 2021, and how the multiple sepsis and delirium episodes and surgery under anesthesia accelerated Mr. Brockman's dementia. 11/22/2021 AM Tr. at 56:4–65:2 (Pool).  Dr. Pool testified that Mr. Brockman currently has dementia, that he confabulates (meaning that his brain fills in inaccurate information for gaps in cognition or memory), and that he no longer has the capacity to give medical consent.  11/22/2021 AM Tr. at 61:7–61:16, 72:18–72:24, 98:24–99:15 (Pool).  Dr. Pool

testified that Mr. Brockman's cognitive conditions are permanent and progressive, 11/22/2021 AM Tr. at 66:25–67:10 (Pool), and that his predisposition for future infections creates an increased risk for mortality and further permanent cognitive damage. 11/22/2021 AM Tr. at 71:18–72:2 (Pool); s*ee* Def. Post-Hr'g Br. at ¶¶ 23–29.   The government does not directly address this testimony, but instead baselessly accuses Dr. Pool of "prevarication" because he declines to accept the government's speculations as to various events.  *See* U.S. Post-Hr'g Br. at 32–34.

Frank Gutierrez, Mr. Brockman's caregiver, testified that he assists Mr. Brockman with virtually all activities of daily living.  11/22/2021 PM Tr. at 15:23–16:21, 17:8–17:25, 18:8–21:19, 23:4–23:8, 24:10–25:3, 25:22–26:9, 39:15–40:4, 46:15–47:11 (Gutierrez).  He described his observations concerning Mr. Brockman's cognitive impairment, including that Mr. Brockman has difficulty remembering where he is and recognizing his own home. 11/22/2021 PM Tr. at 34:18–40:4, 47:6–47:11 (Gutierrez); *see* Def. Post-Hr'g Br. at ¶¶ 17–22.  Despite Mr. Gutierrez's testimony that he works with Mr. Brockman for twelve hours a day, with two days off every two weeks, 11/22/2021 PM Tr. at 7:10–7:13 (Gutierrez), the government contends, again based on rank speculation, that "Mr. Gutierrez's testimony only presents a carefully chosen snapshot of what the Defendant wishes those outside his inner circle to see."  *See* U.S. Post-Hr'g Br. at 34.

Defense counsel Peter J. Romatowski testified at length as to Mr. Brockman's insufficient present ability to assist counsel with a reasonable degree of rational or factual understanding.  Mr. Romatowski detailed Mr. Brockman's inability to draw inferences, recognize facts that counsel cannot perceive, provide strategy or judgment, drill down on

- 14 -

specific raw material, or analyze documents. 11/23/2021 PM Tr. at 220:15–220:21, 242:1–243:1 (Romatowski); 11/24/2021 AM Tr. at 46:17–46:24 (Romatowski); s*ee* Def. Post-Hr'g Br. at ¶¶ 30–38. As with Dr. Pool, the government in response spins its own theories of historic events, and contends that Mr. Romatowski's "credibility was . . . hurt" because he failed to agree with or anticipate these hypotheses. *See* U.S. Post-Hr'g Br. at 36.

In other words, lacking any real-world evidence as to the current impact of Mr. Brockman's dementia on his ability to function day-to-day, let alone to assist counsel in a complex case, the government asks the Court to disregard these witnesses, as the government itself has done. Indeed, the government would also have this Court ignore the testimony of its own experts as to the importance of the testimony by these three witnesses. 11/15/2021 PM Tr. at 140:15–140:22 (Darby) (testifying that "assistance with his grooming, with his self-care, with using the restroom, having difficulty remembering where he is and recognizing his home" would be "at the moderate to severe stage" of dementia); 11/16/2021 AM Tr. at 76:20–77:1 (Denney) ("[R]eal-world functioning always trumps psychological test result[s].").

The government also offers a complete misreading of the medical records of Dr. Eugene Lai, Mr. Brockman's treating physician for Parkinson's disease. The government initially listed but dropped Dr. Lai as a witness. Instead, the government sets out a strained, if not disingenuous, reading of three medical reports prepared by Dr. Lai in early 2020 and 2021, and would have the Court essentially ignore Dr. Lai's fourth and far more recent October 7, 2021 examination diagnosing Mr. Brockman with "Dementia associated with Parkinson's disease," and observing that Mr. Brockman's "[m]emory is

- 15 -

declining" and his "cognitive function has deteriorated since his last visit. . . . Neurological and cognitive examinations are worse compared to his last visit." Def. Ex. 48 at 3, 6; *see* U.S. Post-Hr'g Br. at 44–45.

In January 2020, Dr. Lai diagnosed Mr. Brockman with Parkinson's disease with "mild to moderate impairment," with differential diagnoses that included dementia with Lewy bodies, a conclusion that is consistent with the conclusions of Mr. Brockman's diagnosing and treating doctors. *See* Def. Ex. 38 at 142; Gov't Ex. 82 at 9, 25, 53, 64. The government states that on October 7, 2021, "Dr. Lai change[d] his diagnosis of [Mr. Brockman] to 'mild dementia,'" as if quoting Dr. Lai's medical records, *see* U.S. Post-Hr'g Br. at 44–45; however, in his October 7, 2021 examination report, Dr. Lai diagnosed Mr. Brockman with "Dementia associated with Parkinson's disease," and nowhere uses the term "mild dementia."[13] *See* Def. Ex. 48 at 6. Again, the government ignores the record evidence, and attempts to substitute what it would prefer the record to show.

## II. The Factors Cited By The Government Demonstrate That Mr. Brockman Is Not Competent And He Is Not Malingering

By the conclusion of the evidence at the November hearing, the government was left with little, if anything, other than Dr. Denney's persistence in his unqualified opinion in support of the prosecution's theory that Mr. Brockman is competent and malingering.

---

[13] Similarly, the government wrongly contends that "Defendant's experts ignored the fact that Defendant's treating neurologist, Dr. Lai, consistently diagnosed [Mr. Brockman] with mild cognitive impairment and *not* dementia between January 2020 and February 2021." *See* Def. Ex. 12, Dr. Agronin Report, Dkt. No. 102, at 13–14; Def. Ex. 19, Dr. Guilmette Report, Dkt. No. 101 at 14–15, 20, 64; Def. Ex. 22, Dr. Guilmette Suppl. Report, Dkt. No. 173 at 8; 11/23/2021 PM Tr. at 180:11–180:19 (Agronin). The government also incorrectly states that Mr. Brockman met with Dr. Lai eleven times in 2020 and 2021. U.S. Post-Hr'g Br. at 14, 44. Dr. Lai's records support that Mr. Brockman met with him four times. Def. Exs. 38, 48.

Dr. Denney purportedly based his opinion on Mr. Brockman's (1) performance on competency assessment tests; (2) scores on performance validity tests ("PVT"); (3) presentation during government expert interviews in May and October; and (4) results on neuroimaging scans. U.S. Post-Hr'g Br. at 15–32. None of these factors support the conclusions that Mr. Brockman is competent and malingering.

### A. Mr. Brockman's Performance On Competency Assessment Tests Demonstrates He Cannot Assist Properly In His Defense

Dr. Denney administered three competency assessment tests: (1) the Competency Assessment Instrument, a recorded interview conducted during Dr. Denney's May 2021 examination; (2) the Evaluation of Competency to Stand Trial-Revised ("ECST-R"), an unrecorded interview conducted during Dr. Denney's October 2021 examination; and (3) a forced-choice test devised by Dr. Denney and administered during the October exam. 11/16/2021 AM Tr. at 7:1–7:8 (Denney); 11/16/2021 PM Tr. at 127:4–127:11 (Denney); Gov't Ex. 2, Dr. Denney Suppl. Report, Dkt. No. 179 at 20–21.

Dr. Denney testified that the Competency Assessment Instrument is designed to examine (among other abilities) Mr. Brockman's understanding of the charges in the Indictment, 11/16/2021 AM Tr. at 7:1–7:8 (Denney),[14] and the government asserts that Mr. Brockman "demonstrated a fluency of the charges[.]" U.S. Post-Hr'g Br. at 16 (citing Gov't Ex. 5 at 128:30–128:32).[15] This claim is baseless.

---

[14] Dr. Denney does not possess even a cursory understanding of the complex charges in the Indictment, and was thus incapable of assessing Mr. Brockman's understanding of these charges. *See* Def. Post-Hr'g Br. at 41 n.11.

[15] The government's citation does not provide any support for the proposition that Mr. Brockman possesses an understanding of the charges against him. In its entirety, the cited portion of the transcript states: "[Robert Denney]: Oh, okay. Oh, very good. Who is the defendant? [Robert Brockman]: You know, the defendant is me." Gov't Ex. 5 at 128:30–128:32.

- 17 -

The transcript from the May interview is replete with examples that illustrate Mr. Brockman does not understand the charges in the Indictment, and is thus incapable of assisting in his defense.[16]   For example, when asked what he had been charged with, Mr. Brockman responded "not filing tax returns[.]"  Gov't Ex. 5 at 118:28–118:31.  Counts 2–8 of the Indictment charge tax evasion under 26 U.S.C. § 7201, Indictment ¶¶ 135–148, not failure to file tax returns, which is an entirely separate crime.  *See* 26 U.S.C. § 7203. In response to Dr. Denney's questions, Mr. Brockman said that he had reviewed the Indictment but could not add anything, that he did not remember the time period referenced in the Indictment (which spans from 1981–2019), and that he could "[n]ot even [describe] very much" of the charges.  Gov't Ex. 5 at 145:1–145:18, 146:1–146:14 (Brockman).[17] Instead, Mr. Brockman resorted to describing Reynolds and Reynolds' business operations, *see* Gov't Ex. 5 at 142:3–143:6, 146:9–146:39 (Brockman), which Dr. Denney acknowledged plays very little role in the Indictment.  11/16/2021 PM Tr. at 122:21–126:7 (Denney); *see also* Def. Post-Hr'g Br. at ¶¶ 35, 98.

After defense experts filed reports detailing Mr. Brockman's inaccurate responses during the May interview (including the examples listed above), all of which impede his "ability to provide his attorneys with accurate information," Dr. Denney changed tactics.

---

[16] In addition to his inability to understand the charges in the Indictment and consult with his attorneys with a reasonable degree of rational understanding, Mr. Brockman's dementia renders him incapable of exercising numerous other capacities required of a criminal defendant, including testifying.  *See* Def. Post-Hr'g Br. at ¶¶ 141–50.

[17] Mr. Brockman further demonstrated his confusion about the proceedings by answering Dr. Denney's question about why he had been "arrested" when he was never arrested in this case. *See* Gov't Ex. 5, 145:31–145:36 ("I'm sure there was a reason, but I don't know what it was."); *see also* 11/16/2021 PM Tr. at 119:24–120:12 (Denney) (Dr. Denney acknowledging that Mr. Brockman was not arrested, and that Dr. Denney "used the word 'arrest,' and that was inappropriate").

- 18 -

Def. Ex. 19, Dr. Guilmette Report, Dkt. No. 101 at 66–68.  During his October interview,
Dr. Denney elected to administer the ECST-R, but unlike the Competency Assessment
Instrument, there is no video recording or transcript from the ECST-R interview.[18]
11/16/2021 PM Tr. at 126:6–128:7 (Denney).   Dr. Denney claims Mr. Brockman
demonstrated an understanding of the charges and an ability to assist counsel, *see*
11/16/2021 AM Tr. at 11:22–13:14 (Denney), but the only information in the record on
this topic is that Mr. Brockman reportedly stated that the charges "revolve[ ] around tax
evasion and [are] very serious."  Gov't Ex. 2, Dr. Denney Suppl. Report, Dkt. No. 179 at
21.  The tax evasion charges alone involve the complex 40-year history of numerous off-
shore entities, yet they comprise less than one-fifth of the 39-count Indictment.  *See* Def.
Post-Hr'g Br. at 41 n.11.

The final competency assessment instrument administered to Mr. Brockman (and
ignored by the government) was a forced-choice test devised by Dr. Denney that purported
to evaluate Mr. Brockman's understanding of the Indictment.  Gov't Ex. 2, Dr. Denney
Suppl. Report, Dkt. No. 179 at 20.[19]  Mr. Brockman "obtained a score of 46%, a random
performance."  *Id.*  In other words, Dr. Denney claims Mr. Brockman can assist in his
defense on the charges in the Indictment when he is capable of responding no better than
someone guessing at random.

---

[18] The only information about Mr. Brockman's performance during the ECST-R interview comes from a
scoring sheet completed Dr. Denney, which provides minimal detail about Mr. Brockman's score, and Dr. Denney's
description in his supplemental report and testimony.  *See* Gov't Ex. 2, Dr. Denney Suppl. Report, Dkt. No. 179 at
20–21; Gov't Ex. 119 (ECST-R scoring sheet); 11/16/2021 AM Tr. at 8:11–13:14 (Denney).

[19] This test was administered to support Dr. Denney's conclusions that Mr. Brockman is competent and
malingering.  *See* Def. Post-Hr'g Br. at 42 n12.

**B.     PVT Scores Demonstrate Mr. Brockman Suffers From Genuine Cognitive Impairment And Is Not Malingering Cognitive Incapacitation**

The government's argument regarding Mr. Brockman's PVT scores is unavailing. As detailed in Mr. Brockman's post-hearing brief, PVT scores demonstrate that he suffers from genuine cognitive impairment and is not malingering.  *See* Def. Post-Hr'g Br. at ¶¶ 101–20.  Nothing in the government's post-hearing brief changes these conclusions.

**C.     Mr. Brockman's Presentation During Interviews Demonstrates He Is Incompetent**

The government implausibly argues Mr. Brockman's performance during the May and October interviews "contradict [his] performance during cognitive testing in which he presented as a severely impaired individual."  U.S. Post-Hr'g Br. at 26, 28.   The government claims that Mr. Brockman is smart enough to produce genuine impairment profiles on certain PVTs—despite Dr. Denney's research finding that 50 graduate psychology students were incapable of achieving this feat—but that he failed to recognize that numerous hours of interviews with the government's experts would inform their opinion of whether he is competent.  *See* 11/16/2021 PM Tr. at 111:18–114:22 (Denney).

Defense experts fully accounted for Mr. Brockman's performance during interviews and testing.  Mr. Brockman has relatively preserved social and verbal skills that can give the perception of intact cognitive function (particularly when discussing overlearned information).  Def. Ex. 22, Dr. Guilmette Suppl. Report, Dkt. No. 173 at 34; *see also* 11/22/2021 PM Tr. at 67:13–67:18, 151:15–153:6 (Guilmette); 11/23/2021 PM Tr. at 109:7–110:3 (Agronin).  But when confronted with unfamiliar tests specifically designed

to evaluate cognitive function, Mr. Brockman's cognitive impairment hindered his performance. *See* 11/22/2021 PM Tr. at 151:16–153:6 (Guilmette).

The government argues that the May 2021 interviews "reveal a man competent to stand trial" and demonstrate that Mr. Brockman understands the "live issues" in the "case-in-chief." U.S. Post-Hr'g Br. at 26. For example, the government claims Mr. Brockman demonstrated an understanding of "transactions at the heart of the wire fraud counts," charges 15–34 in the Indictment. U.S. Post-Hr'g Br. at 27; *see also* Indictment ¶¶ 161–89. The transcripts refute this contention: Mr. Brockman did not even know that the Indictment alleges that there was anything wrong with the manner in which these transactions were executed, evincing no grasp whatsoever of the wire fraud charges. Gov't Ex. 5, 223:5–223:8 (Brockman). When asked specific questions, Mr. Brockman did not know basic factual information related to those charges (e.g., the entities involved or how transactions were conducted); when Mr. Brockman guessed, he provided inaccurate information or was confused. Gov't Ex. 5, 222:12–223:8, 240:19–241:24 (Brockman).[20]

The government asserts Mr. Brockman "changed his performance" for the October interview—failing to acknowledge the intervening episodes of delirium and surgery under general anesthesia—and demonstrated intact cognitive ability by, for example, spelling the word "world" backwards. U.S. Post-Hr'g Br. at 28. The government ignores the testimony of Dr. Dietz, who explained that Mr. Brockman "presented as significantly impaired" in

---

[20] The interview transcript contains numerous other examples. *See, e.g.*, Gov't Ex. 5 at 217:9–217:24, 226:16–226:41 (demonstrating confusion about entities "material to the investigation" and featured throughout the Indictment, as well as the relationship among those entities, including Spanish Steps, UCSH, and Point, among others).

October (particularly in the afternoon), and that he "gave a mixture of correct and absurd answers to mental status examination questions."   11/19/2021 AM Tr. at 91:4–91:25 (Dietz) (citing Mr. Brockman's ability to spell "world" backwards but incorrectly identifying the year as 2051).   Dr. Denney blithely dismisses this exchange by claiming Mr. Brockman provided "ridiculous answers," Gov't Ex. 2, Dr. Denney Suppl. Report, Dkt. No. 179 at 20, but Dr. Dietz questioned whether Mr. Brockman was exhibiting "sundowning," a state of confusion in which people with dementia have a "significant difference in their cognitive function late in the day or after dark or from fatigue." 11/19/2021 AM Tr. at 92:4–92:13 (Dietz).   Dr. Agronin testified that, in his experience as a geriatric psychiatrist, this behavior is "exactly what I often see in individuals who have moderate impairment in the very least," that there is no inconsistency in Mr. Brockman's behavior, and there is nothing to indicate he is malingering. 11/23/2021 PM Tr. at 124:19–126:20 (Agronin).

### D.    Neuroimaging Scans Confirm Mr. Brockman Has Dementia

Finally, the government argues that Mr. Brockman's neuroimaging scans are "inconsistent with the picture of cognitive impairment or dementia Defendant seeks to portray."   U.S. Post-Hr'g Br. at 49.   That statement is contradicted by Drs. Darby and Ponisio—the only government experts qualified to interpret neuroimaging scans—both of whom concluded in their reports that Mr. Brockman's imaging scans are consistent with dementia.[21]

---

[21] *See* Gov't Ex. 39, Dr. Darby Suppl. Report, Dkt. No. 177 at 9 ("It is reasonable given his hospitalizations for delirium, natural disease course, and neuroimaging that Mr. Brockman has progressed to the dementia stage[."]); Gov't Ex. 86, Dr. Ponisio October 25, 2021 Report at 3 ("the findings are most consistent with early dementia in the

The government attempts to minimize the significance of the neuroimaging scans by focusing on Mr. Brockman's premorbid cognitive reserve,[22] claiming that individuals with higher cognitive reserve "can likely better withstand neurodegeneration than a person with a lower cognitive reserve." U.S. Post-Hr'g Br. at 28–29. The government ignores the testimony that cognitive reserve declines with neurodegenerative processes, and that Mr. Brockman's recurring bouts of delirium suggest he presently has very poor cognitive reserve. 11/17/2021 PM Tr. at 86:23–87:12, 100:3–100:6 (Wisniewski).

The government asserts, without citation to the record, that the "mild August FDG-PET does not match Defendant's severe July and October presentation[.]" U.S. Post-Hr'g Br. at 30. That assertion is refuted by the government's neuroradiologist, Dr. Ponisio, who found that the pattern of hypometabolism in Mr. Brockman's August FDG PET scan is consistent with Alzheimer's dementia.[23] The government also asserts, again without citation, that "the minor *change* between the March and August scans do not match the dramatic *change* between Defendant's May and July (and October) presentations." U.S. Post-Hr'g Br. at 30 (emphasis in original). This contention is refuted by the independent radiologist at Houston Methodist Hospital and Dr. Ponisio, who both noted progression

---

correct clinical setting"). The government also attempts to downplay the significance of the neuroimaging studies by focusing on the findings and claiming that they are mild (e.g., "mild imaging data," "mild neurodegeneration"), without revealing what is most important for the present competency determination—how those findings correlate clinically with Mr. Brockman's cognitive dysfunction (i.e., dementia). *See* U.S. Post-Hr'g Br. at 29; Def. Post-Hr'g Br. at ¶¶ 71–80.

[22] Cognitive reserve refers to the ability of the brain to compensate for or overcome insults. *See* 11/15/2021 M Tr. at 100:14–101:2 (Darby); 11/17/2021 PM Tr. at 86:23–87:3 (Wisniewski);

[23] *See* Gov't Ex. 8, Dr. Ponisio September 5, 2021 Report at 2; *see also* Gov't Ex. 86, Dr. Ponisio October 25 Report at 1–2 (noting that both FDG PET scans are most consistent with early Alzheimer's dementia); Def. Post-Hr'g Br. at ¶¶ 55–59.

- 23 -

between the two FDG PET scans taken just five-and-a-half months apart.[24]  And the government fails to address Mr. Brockman's positive amyloid PET scan, that his positive FDG and amyloid PET scans indicate there is near-100% diagnostic certainty that he has Alzheimer's disease as well as diagnosed Parkinson's disease, and that these findings correlate with the presence of significant dementia.  Def. Post-Hr'g Br. at ¶¶ 60–64.

The government's reliance on quantitative analysis of the MRI scans is similarly misplaced.  *See* U.S. Post-Hr'g Br. at 30–32.  Drs. Wisniewski and Whitlow—both of whom hold leadership positions at NIH-funded Alzheimer's disease research centers—explained that the most objective measure of neurodegeneration associated with cognitive deficits is to compare an individual's MRI scans over time, and not, as the government contends, to compare an individual's measurements to absolute numbers generated by a quantitative analysis.  *See* 11/17/2021 PM Tr. at 74:3–75:14 (Wisniewski); *see also* 11/23/2021 AM Tr. at 54:19–55:11; 62:2–62:14 (Whitlow).  As the government rightly concedes, "[t]here is not a one-to-one correlation between neurodegeneration (brain damage) and cognitive dysfunction," U.S. Post-Hr'g Br. at 28; even small changes in an individual's brain can have a profound impact on cognition.[25]  *See* 11/23/2021 AM Tr. at 52:11–52:19, 122:7–122:17 (Whitlow).

---

[24] *Compare* Def. Ex. 39, HMH-0000001 (March FDG PET scan "suggestive of early neurodegenerative disease"), *with* Def. Ex. 45, RTBrockman_Medical_Records_0005258 (August FDG PET scan was "very suggestive of a neurodegenerative disease"); *see also* Gov't Ex. 86, Dr. Ponisio October 25, 2021 Report at 1–2; Def. Post-Hr'g Br. at ¶ 58 and citations therein (explaining that a change this noticeable is unexpected in a short timespan).

[25] Notably, Dr. Whitlow also reviewed the quantitative analyses on which the government would rely, and found that even that evidence is consistent with and supported the findings that Mr. Brockman has neurodegeneration and dementia.  *See* Def. Ex. 29, Dr. Whitlow Suppl. Report, Dkt. No. 100 at 3–4; Def. Ex. 30, Dr. Whitlow Suppl. Report, Dkt. No. 174 at 4; 11/23/2021 AM Tr. at 62:21–64:1 (Whitlow) (describing the quantitative analysis supporting what was already known based on the qualitative assessment).

## III.    In The Alternative, The Court Should Appoint Neutral Experts

Mr. Brockman cannot be found competent to stand trial based on the current record. The government called three experts: Dr. Dietz testified that he is not the right expert to make this determination.  11/19/2021 PM Tr. at 35:16–36:5 (Dietz); *see also* Def. Post-Hr'g Br. at ¶¶ 6, 13, 85–86.  Dr. Darby similarly testified that a competency determination is outside his expertise.  11/15/2021 AM Tr. at 80:2–80:11 (Darby); Gov't Ex. 39, Dr. Darby Suppl. Report, Dkt. No. 177 at 11; *see also* Def. Post-Hr'g Br. at ¶¶ 2, 13.  And Dr. Denney's opinions cannot be accorded any weight, given his repeated machinations designed to support a pre-determined conclusion.  Def. Post-Hr'g Br. at ¶¶ 121–30.  But if the Court concludes that a determination of incompetency cannot be made at this point, the Court should appoint neutral experts to conduct an independent competency examination pursuant to Title 18, United States Code, Sections 4241(b) and 4247(b).  *See* Def. Robert T. Brockman's Mot. for the Appointment of Neutral Ct.-Designated Experts and to Exclude Test. from Dr. Park Dietz, Dr. Robert Denney, and Dr. Ryan Darby, Dkt. No. 105.[26]

## <u>CONCLUSION</u>

Mr. Brockman presently suffers from dementia and is susceptible to recurring bouts of delirium.  The government failed to meet its burden at the competency hearing to prove that Mr. Brockman is competent to stand trial.  The Court should find Mr. Brockman not competent and schedule a status conference to discuss next steps in this case.

---

[26] In so doing, the Court would be following a plan previously proposed by the government.  *See* Dkt. No. 113 at 13 ("If the Court is inclined to consider Defendant's request for the appointment of more experts, the United States suggests it defer making that decision until after the [competency] hearing."); 9/13/2021 Tr. at 25:24–26:9.

Dated:  January 7, 2022

/s/ Jason S. Varnado
Jason S. Varnado
Texas Bar No. 24034722
SDTX Ad. ID No. 32166
Email: jvarnado@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone: 832-239-3939
Facsimile: 832-239-3600

Kathryn Keneally (*Admitted Pro Hac Vice*)
New York Bar No. 1866250
Email: kkeneally@jonesday.com
James P. Loonam (*Admitted Pro Hac Vice*)
New York Bar No. 4035275
Email: jloonam@jonesday.com
Sarah D. Efronson (*Admitted Pro Hac Vice*)
New York Bar No. 5217484
Email:sefronson@jonesday.com
Colleen E. O'Connor (*Admitted Pro Hac Vice*)
New York Bar No. 5764725
Email: colleenoconnor@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212-326-3939
Facsimile: 212-755-7306

Irina K. Bleustein (*Admitted Pro Hac Vice*)
District of Columbia Bar No. 1044772
Email: ibleustein@jonesday.com
Conor G. Maloney (*Admitted Pro Hac Vice*)
District of Columbia Bar No. 1632584
Email: cmaloney@jonesday.com
Patrick J. Manion (*Admitted Pro Hac Vice*)
District of Columbia Bar No. 1615138
Email: pmanion@jonesday.com
Michael R. Tompkins (*Admitted Pro Hac Vice*)
District of Columbia Bar No. 1720349
Email: mtompkins@jonesday.com
JONES DAY

51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: 202-879-3450
Facsimile: 202-626-1700

*Attorneys for Defendant*
*Robert T. Brockman*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on this 7th day of January, 2022, I electronically served this document on all counsel of record.

*/s/ Jason S. Varnado*

Jason S. Varnado